FENNEMORE CRAIG, P.C.
Douglas C. Northup (No. 013987)
Andrea L. Marconi (No. 022577)
2394 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
Telephone: (602) 916-5000
Email: dnorthup@fennemorelaw.com
Email: amarconi@fennemorelaw.com

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Susanna M. Buergel (*pro hac vice*)
David P. Friedman (*pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Email: sbuergel@paulweiss.com
Email: dfriedman@paulweiss.com

*Counsel for Defendants Citigroup Global Markets*
*Inc. and J.P. Morgan Securities LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| In re Carvana Co. Securities Litigation | No. 2:22-cv-2126-PHX-MTL |
|---|---|
| | **JOINDER OF UNDERWRITER DEFENDANTS IN THE CARVANA DEFENDANTS' MOTION TO DISMISS LEAD PLAINTIFFS' CONSOLIDATED COMPLAINT** |
| | **(Oral Argument Requested)** |

Pursuant to Rules 9(b) and 12(g) of the Federal Rules of Civil Procedure, Defendants Citigroup Global Markets Inc. ("Citigroup") and J.P. Morgan Securities LLC ("J.P. Morgan," and, collectively, "Underwriter Defendants") respectfully join in the Motion to Dismiss Lead Plaintiffs' Consolidated Complaint and Memorandum of Points and Authorities filed by Defendants Carvana Co. ("Carvana"), Ernest Garcia III, Mark Jenkins, Ryan Keeton, Benjamin Huston, Stephen Palmer, Michael Maroone, Neha Parikh, Ira Platt, and Greg Sullivan (collectively, "Carvana Defendants") with respect to the claims

asserted against the Underwriter Defendants in the Consolidated Complaint ("Complaint"), including all arguments set forth in the Carvana Defendants' Motion as to such claims. The Underwriter Defendants submit this joinder to further explain how certain arguments for dismissal apply to the claims against them, and respectfully request that the Court dismiss the claims against the Underwriter Defendants with prejudice.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  BACKGROUND

The Underwriter Defendants are financial institutions that contracted with Carvana to sell Carvana shares to investors in connection with a secondary offering in April 2022 (the "Offering").  Compl. ¶ 416.  Only 18 of the Complaint's 477 paragraphs mention the Underwriter Defendants.  *Id.* ¶¶ 18–19, 411, 416–418, 447–456, 462, 469.  In terms of *factual* allegations, Plaintiffs merely describe in generalities the Underwriter Defendants' role as underwriters of the Offering.  *See id.* ¶¶ 451–453.  The Complaint does not allege that the Underwriter Defendants knew of the allegedly untrue statements and omissions contained in the Registration Statement and Prospectus filed with the Offering.  *Id.* ¶ 455. The Complaint also alleges that Plaintiffs purchased Carvana Class A common stock in the Offering from Citigroup.  *Id.* ¶¶ 18–19.  There are no allegations that J.P. Morgan sold Carvana shares to Plaintiffs in the Offering or was involved in soliciting Plaintiffs' alleged purchases of shares in the Offering.

### II.  ARGUMENT

The Underwriter Defendants join in and incorporate by reference the arguments and authorities set forth in the Carvana Defendants' Motion with respect to the claims against the Underwriter Defendants, which are asserted under Sections 11 and 12(a)(2) of the Securities Act of 1933.  *First*, the Section 11 and 12(a)(2) claims fail because Plaintiffs do not plausibly allege facts to establish that any of the challenged statements or alleged omissions were false, misleading, or material.  *See* Carvana Mot. at 35–37.  *Second*, the Section 12(a)(2) claim against at least J.P. Morgan fails for the independent reason that

Plaintiffs do not allege that they purchased from J.P. Morgan in the Offering.[1]

### A.    Plaintiffs Fail to Plead Violations of Sections 11 and 12(a)(2)

Section 11 of the Securities Act creates liability for material misstatements or omissions in a registration statement. *See* 15 U.S.C. § 77k(a). Section 12(a)(2) creates liability only for certain statutory "sellers" in a securities offering for material misstatements or omissions in a prospectus. *See id.* § 77l(a). Plaintiffs allege the same statements were misleading in support of both their Section 11 and Section 12(a)(2) claims. To successfully plead a Section 11 claim, a plaintiff must allege "(1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment." *In re White Elec. Designs Corp. Sec. Litig.*, 416 F. Supp. 2d 754, 764 (D. Ariz. 2006) (internal quotation marks omitted). The same standard applies to Section 12(a)(2) claims. *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *5 (N.D. Cal. July 21, 2020).

Securities Act claims must be pled with the particularity required by Rule 9(b) if, as they do here, the claims "sound[] in fraud." *Rubke* v. *Capital Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009). Where plaintiffs' "Securities Act allegations generally mirror their fraud-based allegations under the Exchange Act," courts apply Rule 9(b) to the Securities Act claims, regardless of whether plaintiffs "disclaim" fraud. *In re Eargo, Inc. Sec. Litig.*, 2023 WL 1997918, at *6 (N.D. Cal. Feb. 14, 2023); *see In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.2 (9th Cir. 1996). So here, as Plaintiffs' Securities Act allegations are premised on the same subjects and theories of falsity as the corresponding portions of their Exchange Act allegations. *Compare* Compl. ¶¶ 229, 231–233 (alleged misstatements regarding "retail unit sales growth," "the benefits of purchasing cars from customers," "nationwide market expansion," and "title and registration practices"), *with* ¶¶ 438–441 (alleged misstatements regarding "retail unit sales growth," "the benefits of purchasing cars

---

[1] The Complaint itself establishes the absence of loss causation, thereby providing another independent basis for dismissal of the Securities Act claims. *See* Carvana Mot. at 37–38.

- 3 -

from customers," "nationwide market expansion," and "title and registration practices"). However, even if Rule 9(b) did not apply, the Securities Act claims still fail because Plaintiffs do not plausibly identify any material misrepresentations or omissions.

As a threshold matter, most of the challenged statements in the Offering materials are classic non-actionable puffery, forward-looking statements, or opinions, or are statements of historical financial results that Plaintiffs do not dispute are accurate. *See* Carvana Mot. at 35–36. Nor do Plaintiffs allege that these challenged statements are false or misleading. There are no allegations that the Offering materials contained affirmative misstatements of fact. Rather, Plaintiffs assert that the Offering materials "omitted material information" when making these statements, ¶¶ 438–441, but "[m]erely mentioning a topic does not require [a] company to disclose every tangentially related fact that might interest investors," *In re Twitter, Inc. Sec. Litig.*, 506 F. Supp. 3d 867, 886 (N.D. Cal. 2020). Moreover, Carvana repeatedly disclosed what was allegedly omitted, including that its growth rates could change, that it planned to increase purchases from customers and that this strategy would result in increased wholesale sales and the attendant higher costs of such sales, and the facts surrounding Carvana's expansion into new markets and Carvana's increased costs associated with transporting cars. *See* Carvana Mot. at 12–18.

Plaintiffs focus on Carvana's risk disclosures (i) warning investors of its reliance on third-party vendors and systems to submit title and registration paperwork to state entities and (ii) that Carvana was subject to state and local laws related to title and registration. *See* Compl. ¶¶ 436–37, 442–446. Again, Plaintiffs do not allege that any of these statements were false. Plaintiffs instead claim that Carvana omitted to disclose that it "was already experiencing widespread issues complying with state and local title registration requirements" as allegedly reflected by a handful of regulatory penalties and settlements. *Id.* ¶¶ 441, 444. But at the time of the Offering, most of those penalties or settlements had not yet occurred, and a duty to disclose does not attach to speculative outcomes. *See Acito* v. *IMCERA Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995) (no duty to disclose negative consequences from a failed factory inspection where it was not a "foregone conclusion"

that consequences would materialize); *Diehl* v. *Omega Protein Corp.*, 339 F. Supp. 3d 153, 165 (S.D.N.Y. 2018). As to the "thousands" of dollars in penalties and minor settlements preceding the Offering, Compl. ¶¶ 176, 186–87, 194–95, Plaintiffs make no attempt to establish that any omission of these developments was material, *see Banerjee* v. *Zhangmen Educ. Inc.*, 2023 WL 2711279, at *11 (S.D.N.Y. Mar. 30, 2023) (omission immaterial as a matter of law where regulatory fine was "negligible" compared to company value). That also squarely forecloses liability under Item 105, which requires disclosure only of "the material factors that make an investment in the registrant or offering speculative or risky." 17 C.F.R. § 229.105.[2]

For these reasons and those set forth in the Carvana Defendants' Motion, the Section 11 and Section 12(a)(2) claims against the Underwriter Defendants should be dismissed.

> **B.** **The Section 12(a)(2) Claim Against J.P. Morgan Also Fails Because Plaintiffs Do Not Allege They Purchased Securities from J.P. Morgan**

To state a claim under Section 12(a)(2), Plaintiffs must allege that a Defendant either (i) directly passed title or interest in the security to Plaintiffs or (ii) directly solicited the sale of the security to Plaintiffs. *See Pinter* v. *Dahl*, 486 U.S. 622, 642–43 (1988).

Here, Plaintiffs do not allege that they purchased Carvana stock from J.P. Morgan in the Offering. *See* Compl. ¶¶ 18–19. Nor do Plaintiffs allege that J.P. Morgan directly solicited the sale of such stock to Plaintiffs. The Supreme Court has held that mere participation in an offering does not suffice to state a Section 12 claim. *Pinter*, 486 U.S. at 650 & n. 27. Rather, a plaintiff must allege "direct and active participation in the solicitation of an immediate sale." *Vanguard Specialized Funds* v. *VEREIT Inc.*, 2016 WL 5858735, at *17 (D. Ariz. Oct. 3, 2016) (internal quotation marks omitted). "To count as 'solicitation,' the seller must, at a minimum, directly communicate with the buyer." *Rosenzweig* v. *Azurix Corp.*, 332 F.3d 854, 871 (5th Cir. 2003); *see also In re Violin Memory Sec. Litig.*, 2014 WL 5525946, at *18 (N.D. Cal. Oct. 31, 2014) ("'Generally,

---

[2] While the Complaint alleges misstatements concerning Carvana's Total GPU metric and various external business factors, those are not alleged to give rise to the Section 11 and 12(a)(2) claims against the Underwriter Defendants.

issuers and underwriters are not sellers within the meaning of Section 12 unless they actively participate in the negotiations with the plaintiff/purchaser.'").

Plaintiffs allege no direct communications or negotiations with J.P. Morgan in connection with their purchase of stock in the Offering. The Complaint asserts only that the Underwriter Defendants "marketed Carvana common stock to potential investors," "caused the Registration Statement to be filed with the SEC and to be declared effective," and "participated in the preparation and dissemination of . . . Offering Documents." Compl. ¶¶ 417, 456, 469. But these "barebones allegations" of participation in preparing the registration statement and marketing the Offering are far too conclusory to support a solicitation theory. *Baker* v. *Seaworld Ent., Inc.*, 2016 WL 2993481, at *18 (S.D. Cal. Mar. 31, 2016). Nor do they allege the requisite solicitation of *Plaintiffs'* purchase. *See Shaw* v. *Digit. Equip. Corp.*, 82 F.3d 1194, 1216 (1st Cir. 1996) ("[N]either involvement in preparation of a registration statement or prospectus nor participation in 'activities' relating to the sale of securities, standing alone, demonstrates the kind of *relationship between defendant and plaintiff* that could establish statutory seller status." (emphasis in original)). Courts routinely dismiss Section 12(a)(2) claims against underwriters who, like J.P. Morgan, are alleged to have participated in an offering but not to have sold to or solicited the plaintiffs' purchase of stock in that offering. *See, e.g.*, *In re AGS, Inc. Sec. Litig.*, 2022 WL 17406100, at *4 (D. Nev. Dec. 2, 2022); *Welgus* v. *TriNet Grp., Inc.*, 2017 WL 167708, at *23 (N.D. Cal. Jan. 17, 2017); *In re Vocera Commc'ns, Inc. Sec. Litig.*, 2015 WL 603208, at *2 (N.D. Cal. Feb. 11, 2015); *Katz* v. *China Century Dragon Media, Inc.*, 2011 WL 6047093, at *5 (C.D. Cal. Nov. 30, 2011).

Because Plaintiffs do not allege that J.P. Morgan is a statutory seller, their Section 12(a)(2) claim against J.P. Morgan must be dismissed for that independent reason.

III.    **CONCLUSION**

For these reasons, and those set forth in the Carvana Defendants' Motion, the Underwriter Defendants respectfully submit that the claims against them be dismissed with prejudice.

DATED this 19th day of April, 2023.

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By:   */s/ Susanna M. Buergel*
Susanna M. Buergel (*pro hac vice*)
David P. Friedman (*pro hac vice*)

FENNEMORE CRAIG, P.C.
Andrea L. Marconi
Douglas C. Northup

*Counsel for Defendants Citigroup
Global Markets Inc. and J.P. Morgan
Securities LLC*

## CERTIFICATE OF NOTICE

Pursuant to LR Civ. 12.1, I hereby certify that, on April 17, 2023, in a telephonic meet and confer, I caused counsel for Plaintiffs to be notified of the issues asserted in the foregoing joinder and no amendment to cure the pleading was proposed by Plaintiffs on which the parties were able to agree.

*/s/ Andrea L. Marconi with permission*
Andrea L. Marconi