FENNEMORE CRAIG, P.C.
Douglas C. Northup (No. 013987)
Andrea L. Marconi (No. 022577)
2394 E. Camelback Road, Suite 600
Phoenix, AZ 85016
Telephone: +1.602.916.5000
Email: dnorthup@fennemorelaw.com
Email: amarconi@fennemorelaw.com

LATHAM & WATKINS LLP
Jeff G. Hammel (*pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200
Email: jeff.hammel@lw.com

LATHAM & WATKINS LLP
Andrew B. Clubok (*pro hac vice*)
Susan E. Engel (*pro hac vice*)
Matthew J. Peters (*pro hac vice*)
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200
Email: andrew.clubok@lw.com
Email: susan.engel@lw.com
Email: matthew.peters@lw.com

*Counsel for Defendants Carvana Co., Ernest Garcia III, Mark Jenkins, Ryan Keeton, Benjamin Huston, Stephen Palmer, Michael Maroone, Neha Parikh, Ira Platt, and Greg Sullivan*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re Carvana Co. Securities Litigation | CASE NO. 2:22-cv-02126-PHX-MTL |
| | **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS LEAD PLAINTIFFS' CONSOLIDATED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES** |
| | Oral Argument Requested |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ........................................................................................................................... 1

I.      THE COMPLAINT SUFFERS THRESHOLD DEFECTS THAT REQUIRE
        DISMISSAL. ................................................................................................................. 1

II.     PLAINTIFFS FAIL TO ALLEGE ANY FALSE OR MISLEADING
        STATEMENT. ............................................................................................................... 3

        A.      Retail Sales (App'x A at 1–9) ........................................................................ 3

        B.      Total GPU Metric (App'x A at 10–11) .......................................................... 5

        C.      Buying Cars from Customers (App'x A at 12–19) ........................................ 6

        D.      Title and Registration (App'x A at 36–46) .................................................... 6

        E.      Nationwide Expansion, Competitive Advantages, External
                Factors (App'x A at 20–35, 47–55) ............................................................... 9

III.    THE COMPLAINT FAILS TO ALLEGE LOSS CAUSATION ON ITS FACE. 11

IV.     PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER.. 13

        A.      Plaintiffs Do Not Allege a Motive to Commit Fraud. .................................. 13

        B.      Plaintiffs Do Not Allege Deliberate Recklessness. ..................................... 15

V.      PLAINTIFFS FAIL TO ALLEGE SCHEME LIABILITY. ................................. 16

VI.     PLAINTIFFS FAIL TO ALLEGE INSIDER TRADING LIABILITY. .............. 17

VII.    PLAINTIFFS FAIL TO ALLEGE THAT HUSTON AND KEETON WERE
        CONTROL PERSONS. ............................................................................................... 18

VIII.   PLAINTIFFS FAIL TO ALLEGE SECURITIES ACT CLAIMS. ..................... 19

CONCLUSION ..................................................................................................................... 19

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

i

# TABLE OF AUTHORITIES

## CASES

*Abbate v. Wells Fargo Bank, N.A.*,
2011 WL 9698215 (C.D. Cal. 2011) ................................................................ 17

*Azar v. Yelp, Inc.*,
2018 WL 6182756 (N.D. Cal. 2018) ............................................................... 13

*Bajjuri v. Raytheon Techs. Corp.*,
2022 WL 17081317 (D. Ariz. 2022) ...................................................... 7, 8, 11

*Borteanu v. Nikola Corp.*,
2023 WL 1472852 (D. Ariz. 2023) ............................................................ 16, 17

*Brodsky v. Yahoo! Inc.*,
630 F. Supp. 2d 1104 (N.D. Cal. 2009) .......................................................... 13

*Brody v. Trans. Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) ............................................................................. 6

*Chapman v. Mueller Water Prods., Inc.*,
466 F. Supp. 3d 382 (S.D.N.Y. 2020) ............................................................... 9

*City of Pontiac Gen. Emps. Ret. Sys. v. First Solar Inc.*,
No. CV-22-00036-PHX-MTL ........................................................................... 2

*Crews v. Rivian Automotive, Inc.*,
2023 WL 4361098 (C.D. Cal. 2023) ............................................................... 11

*Desai v. Deutsche Bank Sec. Ltd.*,
573 F.3d 931 (9th Cir. 2009) ........................................................................... 18

*Doe v. Dickenson*,
2008 WL 4933964 (D. Ariz. 2008) .................................................................... 2

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ......................................................................................... 12

*Gamm v. Sanderson Farms, Inc.*,
944 F.3d 122 (2d Cir. 2019) .............................................................................. 7

*Glazer Cap. Mgmt. v. Forescout Techs.*,
63 F.4th 747 (9th Cir. 2023) ......................................................................... 3, 7

*Golubowski v. Robinhood Mkts., Inc.*,
2023 WL 1927616 (N.D. Cal. 2023) ................................................................. 9

*In re 3Com Sec. Litig.*,
1999 WL 1039715 (N.D. Cal. 1999) ............................................................... 18

*In re AnaptysBio, Inc.*,
2021 WL 4267413 (S.D. Cal. 2021) ................................................................ 13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

*In re BofI Hldg., Inc. Sec. Litig.*,
2017 WL 5973340 (S.D. Cal. 2017) ..................................................................... 13

*In re BofI Hldg., Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020) ............................................................................ 13

*In re Facebook, Inc. Sec. Litig.*,
405 F. Supp. 3d 809 (N.D. Cal. 2019) ................................................................ 7

*In re Hansen Nat. Corp. Sec. Litig.*,
527 F. Supp. 2d 1142 (C.D. Cal. 2007) ............................................................. 15

*In re Impac Mortg. Hldgs., Inc. Sec. Litig.*,
554 F. Supp. 2d 1083 (C.D. Cal. 2008) ............................................................. 18

*In re Int'l Rectifier Corp. Sec. Litig.*,
2008 WL 4555794 (C.D. Cal. 2008) ................................................................. 14

*In re Keyspan Corp. Sec. Litig.*,
383 F. Supp. 2d 358 (E.D.N.Y. 2003) ............................................................... 14

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) ............................................................................ 12

*In re Redback Networks, Inc. Sec. Litig.*,
2007 WL 4259464 (N.D. Cal. 2007), *aff'd*, 329 F. App'x 715 (9th Cir.
2009) ................................................................................................................... 2

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) ............................................................................. 5

*In re Sec. Cap. Assur. Ltd. Sec. Litig.*,
729 F. Supp. 2d 569 (S.D.N.Y. 2010) ............................................................... 12

*In re Vantive Corp. Sec. Litig.*,
283 F.3d 1079 (9th Cir. 2002) .............................................................. 13, 14, 15

*In re Vaxart, Inc. Securities Litigation*,
2023 WL 3637093, No. 3:20-cv-05949 (N.D. Cal. 2023) .................................. 17

*Kang v. PayPal Holdings, Inc.*,
620 F. Supp. 3d 884 (N.D. Cal. 2022) ......................................................... 13, 16

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014) ............................................................................ 12

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) ........................................................................................... 18

*Mehedi v. View, Inc.*,
2023 WL 3592098 (N.D. Cal. 2023) ................................................................. 19

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) ..................................................................... 12, 14

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

iii

*Mineworkers' Pens. Scheme v. First Solar Inc.*,
  881 F.3d 750 (9th Cir. 2018) ...................................................................................... 11

*Nguyen v. Endologix, Inc.*,
  962 F.3d 405 (9th Cir. 2020) ...................................................................................... 16

*Nuveen Mun. High Income Opportunity F. v. City of Alameda.*,
  730 F.3d 1111 (9th Cir. 2013) .................................................................................... 12

*Okla. Firefighters Pension & Ret. Sys. v. Ixia*,
  2015 WL 1775221 (C.D. Cal. 2015) ..................................................................... 14, 15

*Omnicare, Inc. v. Laborers Dist. Council. Const. Indus. Pension Fund*,
  575 U.S. 175 (2015) ...................................................................................................... 3

*Or. Pub. Emps. Ret. F. v. Apollo Grp.*,
  774 F.3d 598 (9th Cir. 2014) ........................................................................................ 5

*Plumber & Steamfitters Loc. 773 Pens. F. v. Danske Bank A/S*,
  11 F.4th 90 (2d Cir. 2021) ............................................................................................ 2

*Plumley v. Sempra Energy*,
  847 F. App'x 426 (9th Cir. 2021) ............................................................................... 16

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) .................................................................................... 16

*Prodanova v. H.C. Wainwright & Co.*,
  993 F.3d 1097 (9th Cir. 2021) .................................................................................... 13

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) ............................................................................... 4, 7, 10

*Rubke v. Capitol Bancorp Ltd.*,
  551 F.3d 1156 (9th Cir. 2009) .................................................................................... 19

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007) .................................................................................................... 16

*Veal v. Lendingclub Corp.*,
  2020 WL 3128909 (N.D. Cal. 2020), *aff'd*, 2021 WL 4281301 (9th Cir.
  Sept. 21, 2021) .............................................................................................................. 9

*Welgus v. TriNet Grp., Inc.*,
  2017 WL 6466264 (N.D. Cal. 2017) ........................................................................... 19

*Williams v. Globus Med., Inc.*,
  869 F.3d 235 (3d Cir. 2017) ......................................................................................... 9

*Wochos v. Tesla*,
  985 F.3d 1180 (9th Cir. 2021) ...................................................................................... 3

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ................................................................................ 14, 16

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iv

**RULES**

Rule 10b-5(a) .............................................................................................................. 16

Rule 10b-5(b) ................................................................................................... 16, 17, 18

Rule 10b-5(c) .............................................................................................................. 16

Rule 8 ........................................................................................................................ 19

Rule 9(b) ................................................................................................................ 1, 19

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

**INTRODUCTION**[1]

Plaintiffs' blunderbuss opposition brief underscores that their claims fail as a matter of law.  It is particularly revealing that, in a case challenging the accuracy of Carvana's disclosures, Plaintiffs insist that the Court cannot consider Carvana's actual disclosures—and instead must rely only on the incomplete snippets Plaintiffs offer in their Complaint.  Blindfolding the Court in this way is not only pleading gamesmanship, it is legal error.

Plaintiffs pursue this tactic because their theory that Defendants engaged in a "pump-and-dump" stock sale scheme—to "conceal" information about the Company's allegedly unsustainable growth—is wildly implausible and refuted by disclosures throughout the Carvana SEC filings they want the Court to ignore.  Those disclosures make clear that Plaintiffs' "pump" consists entirely of accurate statements and of supposed "omissions" that were repeatedly disclosed.  Nor are there any facts supporting a "dump." *Carvana's CEO did not sell a single share*, and the Ninth Circuit has rejected Plaintiffs' effort to allege scienter by pleading an unusually long Class Period and pointing solely to a large amount of stock sales by others.  No other facts support an inference of scienter, much less the PSLRA's requisite "strong" inference.

Plaintiffs' pump-and-dump story is a factually unsupported and legally meritless distraction.  Plaintiffs are left with conclusory accusations that Carvana engaged in "fraudulent business practices," but the promised details of those purported "machinations" are nowhere to be found in the CC—because they do not exist.

**ARGUMENT**

**I.    The Complaint Suffers Threshold Defects That Require Dismissal.**

Plaintiffs' claims suffer threshold fatal defects, all of which Defendants spelled out in the opening Motion:  (i) Plaintiffs' puzzle pleading fails to satisfy the PSLRA and Rule 9(b)'s requirement that Plaintiffs identify the circumstances of the fraud with particularity and explain the reasons a statement is misleading without a particular fact; (ii) Plaintiffs'

---

[1] Unless otherwise stated, capitalized terms have the same meanings as in the Motion to Dismiss, all "¶ " references are to the CC, citations are omitted, and emphases are added.

allegedly omitted facts were actually disclosed throughout the Class Period in Carvana's SEC filings; and (iii) Plaintiffs' challenged statements are inherently inactionable.

Plaintiffs have no meaningful response. Instead, they ask the Court to be willfully ignorant to Defendants' appendices and the disclosures Carvana actually made in SEC filings, all of which belie Plaintiffs' pump-and-dump story and reveal the baselessness of their claims. Opp. 11–12 & n.4. There are no grounds for striking the appendices. Appendix A sets forth the numerous challenged statements by subject matter and pleading defect, in order to facilitate review of Plaintiffs' unwieldy puzzle pleading. Appendix B sets forth judicially noticeable stock prices and trading volumes, Mot. at 1 n.1, that show no suspicious timing of sales and no significant stock drop on the dates Plaintiffs claim the fraud was revealed. Ninth Circuit case law makes clear that a court must, of course, consider the challenged statements "in context," *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 929, 933 (9th Cir. 1996), and this Court's own precedent holds that a court properly takes judicial notice of SEC filings containing the challenged statements and disclosing the alleged omissions, *see City of Pontiac Gen. Emps. Ret. Sys. v. First Solar Inc.*, No. CV-22-00036-PHX-MTL, ECF 17 (Mot. to Dismiss) at 2 n.1, ECF 33 (Order) at 1 n.1, 16 n.4.

Plaintiffs also ignore most of Defendants' arguments that the challenged statements are inactionable. That failure to respond is grounds for dismissal. *See Doe v. Dickenson*, 2008 WL 4933964, at *5 (D. Ariz. 2008). Where they do respond, Plaintiffs are wrong.

***First***, case law nationwide holds that "disclosure of accurate historical data" is not actionable. *Plumber & Steamfitters Loc. 773 Pens. F. v. Danske Bank A/S*, 11 F.4th 90, 99 (2d Cir. 2021). Plaintiffs' cases, Opp. at 17, 24, are inapt because they did not involve historical data (*e.g.*, "Retail units sold in Q1 totaled 52,547," ¶ 200). Plaintiffs do not allege any facts showing the inaccuracy of the challenged data, which therefore cannot be the basis of a claim. *See In re Redback Networks, Inc. Sec. Litig.*, 2007 WL 4259464, at *3 (N.D. Cal. 2007), *aff'd*, 329 F. App'x 715 (9th Cir. 2009); *see also* Mot. at 12, 14, 15, 17.

***Second***, Plaintiffs' argument that some statements are not puffery when "taken as a whole," Opp. at 18, 21, 32, is unsupported and rings hollow given that Plaintiffs object to

Appendix A, which sets out the full statements. *See* Mot. at 12, 14, 15, 17–18, 21, 22, 24.

*Third*, Plaintiffs do not dispute that the dozens of statements Defendants identified as opinion statements were actually opinions, Mot. at 12, 14, 15, 18, 21, 22, 24, including for example, the comments about title and registration, Opp. at 21 (disputing only—and incorrectly—that they are puffery). Yet Plaintiffs do not attempt to argue these opinions are false under the standard set forth in *Omnicare, Inc. v. Laborers Dist. Council. Const. Indus. Pension Fund*, 575 U.S. 175, 176 (2015). Thus, Plaintiffs do not allege any facts showing Defendants did not believe the North Carolina licensing issue was "relatively unusual" and affected only "a small fraction of customers." ¶ 248. To the extent Plaintiffs challenge any other opinion, they argue that *another* part of the statement might not be subjective, *e.g.*, Opp. 19, which only underscores Plaintiffs' puzzle pleading. Or they argue that "undisclosed facts" contradict the statement, *e.g.*, Opp. at 25, which does not satisfy *Omnicare*, 575 U.S. at 176 ("An opinion statement … is not misleading simply because the issuer knows, but fails to disclose, some fact cutting the other way.").

*Fourth*, Plaintiffs do not dispute that the statements Defendants identified as forward looking were forward looking. *See* Mot. at 12, 15, 17–18, 22–24. Instead, they argue without explanation that Carvana's "cautionary language does not meet the Ninth Circuit's 'stringent' standard." *E.g.*, Opp. at 24–25. Plaintiffs are wrong; Carvana's cautionary language listed "specific factors that might affect the company's likelihood of" realizing its forward-looking aspirations. *Glazer Cap. Mgmt. v. Forescout Techs.*, 63 F.4th 747, 774 (9th Cir. 2023); *see also, e.g.*, Ex. 8 (2020 10-K) at 1 (cautionary language incorporating risk factors), 15–45 (detailing factors that could cause actual results to differ from predictions). Plaintiffs' argument is also irrelevant, because even absent cautionary language, Plaintiffs fail to allege any Defendant had *actual knowledge* any forward-looking statement was false. *See Wochos v. Tesla*, 985 F.3d 1180, 1190–92 (9th Cir. 2021).

## II.     Plaintiffs Fail To Allege Any False or Misleading Statement.

### A.     Retail Sales (App'x A at 1–9)

Plaintiffs' argument that they have alleged fraudulent statements about retail sales

is meritless. Opp. at 17-18. They do not point to a single fact showing that retail units sold had **not** increased in the amounts Defendants described, *e.g.*, ¶ 200 (43% increase), that "Q2 was [not] a strong quarter," ¶ 206, or that Carvana had not become "the second largest seller of used cars," ¶ 218. Opp. at 17-18. Instead, Plaintiffs assert that Carvana's car-buying and expansion strategy was not sustainable and would not be profitable. Opp. at 16–17. Plaintiffs' arguments are made in hindsight and ignore Defendant's repeated warnings that Carvana "expect[ed] to continue to incur losses," and its "rate of growth may decline" in light of the fact that, *inter alia*, "rapid growth has placed and may continue to place significant demands on [its] . . . operational and financial resources." *E.g.*, Ex. 8 (2020 10-K) at 18; *see also Ronconi v. Larkin*, 253 F.3d 423, 430 & n.12 (9th Cir. 2001) (claim may not be based on "hindsight").

Plaintiffs fall back on unsupported accusations that Carvana's retail sales were "artificially inflate[d]" because Carvana sold consumers cars Carvana purchased from DriveTime. ¶¶ 153–55; Opp. at 18–19. But Plaintiffs don't explain how Carvana's sales to consumers were "inflated," and they admit that Carvana **disclosed** its purchases from DriveTime—and Plaintiffs do not challenge those disclosures as false. *Id.* Carvana disclosed in the same SEC filing on which Plaintiffs rely not just supposedly "buried data," *id.*, but also its entire arrangement with DriveTime: namely, that Carvana purchased reconditioned vehicles from DriveTime at a "purchase price . . . equal to the wholesale price . . . plus a fee for transportation and reconditioning" *or* "the list price on Carvana.com after a customer has placed an order on the vehicle." Ex. 22 at 50–51.[2] Moreover, contrary to Plaintiffs' conclusory assertion that DriveTime transactions "lacked any economic substance," ¶ 153, Plaintiffs' own allegations recognize that Carvana made money on vehicle sales through "additional revenue streams associated with financing, vehicle services contracts ('VSCs') and trade-in vehicles." ¶ 49; *see also, e.g.*, Ex. 8 (2020 10-K)

---

[2] Plaintiffs argue that Carvana should have disclosed that "pass-through" sales with DriveTime "made up over 600% of Carvana's reported sequential growth." Opp. at 18. This is unsupported fiction, Mot. at 13 & n.8, but regardless, it also ignores the disclosed commissions that Carvana earned.

at 6; Ex. 19 (2021 10-K) at 6.  And Carvana specifically disclosed those additional revenue streams for vehicles it purchased from DriveTime and sold to consumers:  "The Company earns a commission on each VSC sold to its customers . . . ."  *Id.* at 92.  Plaintiffs do not allege any facts suggesting Carvana did not make money from the sale of vehicles it purchased from DriveTime or that the sales from Carvana to consumers did not happen as accounted.  *See Or. Pub. Emps. Ret. F. v. Apollo Grp.*, 774 F.3d 598, 607 (9th Cir. 2014).

### B.    Total GPU Metric (App'x A at 10–11)

Plaintiffs' challenge to statements about GPU fares no better.  Plaintiffs do not allege that any Defendant did not believe there were "exciting trends in retail GPU," ¶ 206, nor do Plaintiffs dispute that Carvana set "a company record in Total GPU" in Q2 2021, *id.* ¶ 242.  Instead, Plaintiffs argue that these statements misled investors about whether Carvana was making a profit—by Plaintiffs' definition—on every sale.  Opp. at 31.  That makes no sense.  The challenged statements in ¶ 206 and ¶ 242 do not say anything about an "actual profit … on each car sold."  Opp. at 31.  Plaintiffs point to the ***2017*** Registration Statement that described the Total GPU metric as a "key measure of … ***long-term*** profitability," Opp. at 31 (citing ¶ 51 & n.24); *see also* ¶ 48, but that is not a challenged statement and does not speak to ***actual*** profitability of car sales.  Plaintiffs also point to Garcia Jr.'s statement on an earnings call, but Garcia Jr. did not mention the Total GPU metric (and instead explained that outbound shipping costs affect the underlying cost of sales).  Opp. at 31 (citing ¶¶ 230, 262[3]).  The fact that Carvana included certain costs in calculating different metrics hardly shows that the Total GPU metric was improperly calculated.  To the extent Plaintiffs claim Defendants should have calculated the Total GPU metric differently from how it was described to investors, Plaintiffs' argument is foreclosed by Ninth Circuit case law.  Mot. at 14 (citing *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 877–78 (9th Cir. 2012) (no claim where allegations reflect disagreement with choice of methodology); Ex. 29 (*Warwick Ret. Sys. v. Carvana* Order) at 17–19.

---

[3] Quoting a November 2022 earnings call:  https://seekingalpha.com/article/4552927-carvana-co-cvna-q3-2022-earnings-call-transcript

## C.    Buying Cars from Customers (App'x A at 12–19)

Plaintiffs also claim that Carvana's car buying statements "created an incomplete impression" about the profitability of its car buying strategy.  Opp. at 27–28. Incompleteness is not securities fraud, *see Brody v. Trans. Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002), and, Plaintiffs do not explain how any reasonable investor could have believed that Carvana's strategy was already profitable, given that it disclosed the opposite. *E.g.*, Ex. 19 (2021 10-K) at 18 ("We have not been profitable since our inception in 2012," and "[w]e expect to continue to incur losses as we invest in and strive to grow our business").  The fact that buying cars from customers was "*more* profitable net of … expenses" than cars bought wholesale—which Plaintiffs do not dispute, Opp. at 27—does not suggest that Carvana's investment in growth had already turned profitable.

Plaintiffs also argue that Carvana's statements about "assess[ing] vehicles on the basis of quality," Opp. at 27, were misleading because Carvana was not buying only the highest quality cars.  But the statement relates to how Carvana determines **how much** to pay for a car, not **whether** to buy a car.  That is made plain by the sentence preceding the challenged statement, which Plaintiffs ignore:  "[f]or vehicles sold to us through our website, we use proprietary algorithms to determine an appropriate **offer**."  *E.g.*, ¶ 202. Plaintiffs do not dispute that Carvana considered vehicle quality in determining how much to offer.  Nor can they dispute that Carvana disclosed it was **intentionally** buying lower quality cars that it either reconditioned for retail or sold at wholesale.  *E.g.*, Ex. 19 (2021 10-K) at 84 (Carvana bought cars that did "not meet the Company's quality standards to list" for retail that it "sold to wholesalers"); ¶ 249 ("you can always wholesale cars that you may not have capacity to recondition or retail at any point in time").

## D.    Title and Registration (App'x A at 36–46)

Plaintiffs' challenges to Carvana's title and registration statements rely on conclusory assertions that Carvana systematically violated the law,  Opp. at 19–22.  But Plaintiffs still do not identify a single title or registration requirement that Carvana supposedly violated, let alone facts suggesting Defendants schemed to do so.  Mot. at 19;

*Gamm v. Sanderson Farms, Inc.*, 944 F.3d 122, 458 (2d Cir. 2019).  Plaintiffs point to CWs, Opp. at 22, but none say that selling cars "before securing title," *e.g.*, Opp. at 22 n.13, was illegal—and Plaintiffs' own *Barron's* article suggests it was not.  June 24, 2022 *Barron's* Article[4] at 5 ("No states are known to have sanctioned Carvana over the practice of selling vehicles without holding titles."); *see also* Ex. 29 (*Warwick Ret. Sys. v. Carvana* Order) at 15, 15 n.10 (certificate of title not required to make sale); *Bajjuri v. Raytheon Techs.*, 2022 WL 17081317, at *5–10, 13 (D. Ariz. 2022)  (no claim if "[CW] allegations . . . do not support Plaintiffs' theory, are insufficiently reliable, or lack specificity.").

Plaintiffs shift focus in their Opposition away from the unsupported scheme, arguing instead that various regulatory penalties were the alleged omissions.  But there is no duty to disclose every potential relevant fact on a topic, *Brody*, 280 F.3d at 1006, and Plaintiffs never identify, as required, any particular statement that was rendered misleading by an allegedly omitted penalty.  Plaintiffs lump together statements that were months (and years) apart.  Opp. at 21 (citing ¶¶248, 258, 275, 278, 280).  That type of scattershot argument does not satisfy Plaintiffs' pleading burden—of alleging particular material facts that contradicted, for example, a statement from August 2021 that, ***at that*** time, a North Carolina suspension was "relatively unusual," ¶ 248, or a statement six months later, that the registration and title team had been "making a lot of progress," ¶ 258.  Plaintiffs claim Defendants are insisting on an "impossibly high burden of falsity."  Opp. at 22 n.12.[5]  But it is black-letter law that Plaintiffs must allege "specific facts" showing that statements were false or misleading ***when made***.  *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 837 (N.D. Cal. 2019).  Plaintiffs also have no meaningful response to case law holding that Carvana had no duty to disclose a penalty ***before*** it was levied.  *See id.* at 836.

[4]   Cited   at,   *e.g.*,   ¶¶ 148,   151,   192,   265,   275,   372–73, http://www.barrons.com/articles/carvana-used-cars-registration-problems-51656111441

[5] Defendants do not suggest that the standard is a "strong inference of fraud," or that scienter and falsity should form part of a "single inquiry," *contra* Opp. at 22 n.12, which is the only part of *Ronconi* that has been abrogated.  *Glazer*, 63 F.4th at 766.  No case has questioned *Ronconi*'s bar on claims that rely on hindsight to form a claim rather than contemporaneous falsity.  *Ronconi*, 253 F.3d 430 & n.12.

Plaintiffs argue that Defendants wrongly characterize the penalties as "de minimis," given that the violations were allegedly occurring "nationwide." Opp. at 22. But the "nationwide" aspect says nothing about the materiality of any penalty. The fact that a number of local and state agencies across the country imposed penalties is also not surprising—Carvana disclosed that it was subject to "a wide range of . . . laws and regulations, many of which have limited to no interpretation precedent as it relates to our business model," *e.g.*, Ex. 8 (2020 10-K) at 24. Nor did Carvana "admit" materiality, as Plaintiffs suggest. Opp. at 22. Plaintiffs point to a complaint for injunctive relief challenging a Michigan suspension order, *id.*—but the fact that Carvana requested injunctive relief to prevent "incalculable and irreparable" harm to its reputation and goodwill only suggests that the potential harm was not quantifiable (and thus qualified for injunctive relief), not that it was material. *See* Mot. for TRO and Injunctive Relief, *Carvana v. Benson*, Case ID 22-000172-MZ (Mich. Ct. Cl.) (Oct. 13, 2022). In any event, the court denied Carvana's motion because the suspension order did not create "sufficient danger of irreparable harm"—Carvana's Michigan-based sales are only "a subset of its overall operations" as the second largest used car retailer, and the suspension only affected sales at one vending machine, "not its overall online sales." Order, *Carvana v. Benson*, Case ID 22-000172-MZ (Mich. Ct. Cl.) (Oct. 19, 2022). Plaintiffs do not and cannot allege any material regulatory damage had materialized (or ever did) by the time of any statement. *See Bajjuri*, 2022 WL 17081317, at *10 ("Plaintiffs must show with particularity how the misconduct affected the company's financial statements and whether they were material in light of the company's overall financial position.").

With regard to Carvana's risk disclosures specifically, Plaintiffs object for the first time in their Opposition to Carvana's warning that the violation of any of these laws or regulations could result in "administrative, civil, or criminal penalties." Opp. at 19–20 & n.10. Plaintiffs' argument fails in the first instance because they did not challenge that language in the CC—it appears unbolded in the middle of long block quotes, ¶¶ 203, 228, and Plaintiffs admit in their Opposition that non-bolded language is not "relevant" to their

claim. Opp. at 12. In any event, that language also does not state a claim for three reasons. **First**, it is forward-looking and protected by the PSLRA safe harbor. *See Wochos*, 985 F.3d at 1195–96. **Second**, "read in context," it "cannot be understood as a guarantee that" Carvana had somehow never been subject to any regulatory investigation or penalty. *Chapman v. Mueller Water Prods., Inc.*, 466 F. Supp. 3d 382, 405–06 (S.D.N.Y. 2020); *see also Veal v. Lendingclub Corp.*, 2020 WL 3128909, at *7 (N.D. Cal. 2020), *aff'd*, 2021 WL 4281301 (9th Cir. Sept. 21, 2021) ("Plaintiffs fail to allege facts demonstrating that [the company] created the impression that it was *not* under FTC scrutiny."). **Third**, Plaintiffs do not allege that the warned-of risks—"damage [to] our reputation" and "a material adverse effect on our business, sales, and results of operations," *e.g.*, ¶ 203—had already materialized. Plaintiffs argue in a footnote that as of August 5, 2021, Carvana had been subject to three penalties. Opp. 20 n.10. But those penalties are not themselves the warned-of risk. *See Williams v. Globus Med., Inc.*, 869 F.3d 235, 243 (3d Cir. 2017). Nor do Plaintiffs allege any facts suggesting those penalties had caused an undisclosed material impact on Carvana's business. Indeed, the North Carolina suspension was also discussed at an investor conference in August 2021 (and announced beforehand), ¶ 248, the May 2021 Michigan fine was $2500, ¶ 188 n.61, and Ohio, *in 2020*, temporarily suspended Carvana's ability to issue temporary tags, but quickly reinstated them, ¶ 197–98.[6]

### E.    Nationwide Expansion, Competitive Advantages, External Factors (App'x A at 20–35, 47–55)

Plaintiffs have no meaningful response to Defendants' argument that they fail to allege the falsity of statements about Carvana's expansion, competitive advantages, and external business factors. *Golubowski v. Robinhood Mkts., Inc.*, 2023 WL 1927616, *10 (N.D. Cal. 2023) ("disagreement about . . . corporate approach" does not state a claim).

---

[6] *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687 (9th Cir. 2021), is distinguishable insofar as it held that a risk disclosure was materially misleading only because the plaintiff alleged that the **warned-of** material impact had materialized. Google had warned that cybersecurity concerns could damage the company's reputation and harm its business, even though a massive software glitch had already occurred, and internal records revealed Google chose not to disclose the glitch to avoid the warned-of consequences, including increased regulatory scrutiny and loss of public trust, that were virtually certain to occur.

On **nationwide expansion**, Plaintiffs offer just two conclusory paragraphs on falsity. Opp. at 23. Plaintiffs argue that "in truth," expansion "required significant infrastructure and capital"—but they again ignore Defendants' extensive disclosures on those subjects. Mot. at 18–19. Plaintiffs also fail to explain how any of the purported omissions contradicted Defendants' statements about expanding geographically and "expect[ing] to launch many small markets near our existing infrastructure," ¶ 204.[7] The fact that Defendants "[a]t the end of the Class Period" changed strategy says nothing about facts that existed at the time of any statement. *Ronconi*, 253 F.3d at 430 & n.12 (claim may not be based on "hindsight"). Nor can Plaintiffs point to costs incurred as undermining Carvana's seemingly obvious statement that "growth enables economies of scale."

On **competitive advantage**, Plaintiffs' only response is that Carvana misstated its competitive advantages over traditional used car retailers because Carvana also has brick-and-mortar infrastructure and CarMax is a traditional used car retailer (and supposedly had lower costs). But Carvana did not say it had no physical infrastructure—it said its online model meant that it did not require brick-and-mortar ***dealerships*** (and it disclosed its IRCs and vending machines). *E.g.*, ¶ 225. And while Plaintiffs single out CarMax, Carvana's statements did not. Plaintiffs do not and cannot allege that CarMax is a ***typical*** traditional used vehicle dealer, as opposed to the "***largest***," ¶ 32. And regardless, Plaintiffs again ignore that Carvana disclosed its costs, Mot. at 23, so no investor could have been misled about its costs versus those of CarMax (or the unalleged costs of typical traditional dealers).

On **external factors**, Plaintiffs' only argument is that it was misleading to say certain factors (*e.g.*, Omicron) impacted the business when Carvana's own actions

---

[7] In footnotes, Plaintiffs challenge Carvana's statement in its May 6, 2020 10-Q that it "expects to launch many small markets near our existing infrastructure soon," arguing that the next day, on May 7, 2020, Carvana launched in 83 markets that "were over 100 miles form an IRC." Opp. at 25 nn.17-18. That statement is protected by the safe harbor, but regardless, Plaintiffs do not allege any facts suggesting that Carvana did not expect exactly what it said. While Plaintiffs seemingly believe "over 100 miles" is not "near," they offer no facts explaining why not—and common sense suggests 100 miles is quite near, given Carvana's disclosure that it was expanding nationwide to reach 95% of the US population (and the US is 3000 miles across). Plaintiffs also do not explain why the May 7 launches are the only relevant ones, and they fail to allege that Carvana did not launch in other markets "near our existing infrastructure" after May 7.

allegedly "drove [poor] results," Opp. at 32 (citing *Glazer*, 63 F.4th at 770). Not so. Carvana did not say that **only** Omicron drove its results, whereas in *Glazer*, the court found it misleading for defendants "to blame the revenue miss *entirely* on EMEA conditions" given that "a significant cause of the missed revenue guidance was the misclassification of illusory deals." 63 F.4th at 770.[8] Regardless, Plaintiffs' falsity theory is also incoherent: The challenged statements focused on lower-than-expected *sales* due to the external factors, *e.g.*, ¶¶ 269–72, yet Plaintiffs' falsity theory is that Carvana was "pump[ing]" sales through these statements, *e.g.*, ¶ 285(a).[9]

### III.    The Complaint Fails to Allege Loss Causation on Its Face.

Both of Plaintiffs' loss causation theories—relating to negative financial results and media reports about title and registration issues at Carvana—are meritless.

***First***, Plaintiffs are wrong in arguing that under *First Solar*, Carvana's disclosure of negative financial results ***alone*** establishes loss causation. Opp. at 47–48 (citing *Mineworkers' Pens. Scheme v. First Solar Inc.*, 881 F.3d 750 (9th Cir. 2018)). *First Solar* held that loss causation ***can*** be pleaded where "the stock price fell upon the revelation of an earnings miss," but ***only*** where the plaintiff pleads facts establishing that "the underlying facts concealed by fraud" ***caused*** the earnings miss. *First Solar*, 881 F.3d at 754; *see also Bajjuri*, 2022 WL 17081317, at *23 (*First Solar* inapplicable where the plaintiffs "faile[d] to connect the 'very facts' [the defendant] allegedly lied about with Plaintiffs' loss").

Plaintiffs offer nothing of the sort. The CC alleges only that the disclosures of negative results were ***themselves*** "partial disclosures ***that revealed*** the nature and effect of Defendants' alleged misconduct," ¶¶ 360, 362, 368–69, 375. The Ninth Circuit has long

---

[8] In fact, Carvana disclosed that "several external and internal factors impacted our financial results." Ex. 24 (Q1 2022 Shareholder Letter) at 1.

[9] *Crews v. Rivian Automotive, Inc.*, 2023 WL 4361098 (C.D. Cal. 2023), cited in Plaintiffs' Notice of Supplemental Authority, ECF 57, is inapposite on both falsity and scienter grounds. The plaintiffs there alleged particular facts showing that the defendants misrepresented vehicle price increases as a possibility due to inflation, when in reality the company's founder and CFO had already decided to increase vehicle prices for a very different reason—material costs exceeded vehicle prices by $40,000 per vehicle—and they had "deliberately avoided doing so until after the IPO." *Id.* at *8–14. No such facts are alleged here.

made clear that plaintiffs fail to allege loss causation where they point to revelations of negative financial results without showing that the alleged misconduct caused the alleged losses.  Mot. at 25; *Loos v. Immersion Corp.*, 762 F.3d 880, 887–88 (9th Cir. 2014); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392, 394 (9th Cir. 2010).  Here, Plaintiffs' failure is particularly great because their allegations identify "far more plausible reason[s]" for the stock drops: disappointing financial results due to poor economic conditions.  *Id.* (quoting *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1065 (9th Cir. 2008)).[10]

    ***Second***, Plaintiffs cannot fall back on the media reports for their title and registration-based challenge because they fail to allege that, ***in context***, the "share price fell significantly after the truth became known."  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).  Plaintiffs focus on the absolute numbers of each stock drop.  Opp. at 49. But context is what matters, and in this case, the context is a total alleged stock price drop of $362.71, while the four disclosures on which Plaintiffs rely *cumulatively* account for a drop of only $15.81, and on days with particularly *low* trading volume.  That is insufficient to establish the necessary "correlation between 'revealed' facts and a decline in [Carvana's] stock price."  Mot. at 26–27 (quoting *In re Sec. Cap. Assur. Ltd. Sec. Litig.*, 729 F. Supp. 2d 569, 599–600 (S.D.N.Y. 2010)).  Even crediting Plaintiffs' multi-day trading windows,[11] the alleged stock drop is only $26.77 from these disclosures, ¶¶ 363, 365, 372, 374, App'x B—a tiny portion of the alleged $362.71 drop.  Mot. at 27.[12]

[10] The Opposition argues in a footnote that a "materialization of the risk" theory supports loss causation, Opp. at 47 n.52.  That theory is completely absent from the CC and cannot be considered.  Even under this theory, Plaintiffs' own case makes clear that the plaintiff "must demonstrate a causal connection between the alleged misrepresented [facts] . . . and the economic loss [plaintiff] suffered.  This critical link is missing."  *Nuveen Mun. High Income Opportunity F. v. City of Alameda*, 730 F.3d 1111, 1121 (9th Cir. 2013) ).

[11] Courts have rejected multi-day loss causation windows because the efficient market that Plaintiffs rest their claims on, ¶ 395, "is said to digest or impound news into the stock price in a matter of minutes." *In re Intuitive Surgical Sec. Litig.*, 2016 WL 7425926, at *14 (N.D. Cal. 2016) (two-day loss causation window inappropriate even where disclosure occurred five minutes before market close).  "Absent unusual circumstances," the efficient market will "quickly incorporat[e]" disclosures.  *Id.* The CC alleges no unusual circumstances. Indeed, the timing of the "disclosures" here do not even present a close call. All relevant disclosures took place either before market open or after market close.  App'x. B.

[12] The Opposition claims that the Motion improperly asks the Court to "conclusively

Also fatal to Plaintiffs' attempt to rely on the media reports is the fact that the market was already well aware of Carvana's title and registration challenges.  Plaintiffs claim that each disclosure "revealed new information," Opp. at 51 (citing *In re BofI Hldg., Inc. Sec. Litig.*, 2017 WL 5973340, at *3 (S.D. Cal. 2017)), but the **Ninth Circuit's** decision in *BofI Holdings* (as opposed to the district court's) holds that, to be a corrective disclosure, the new information must be of a kind "that has not yet been incorporated into the [stock] price." *In re BofI Hldg., Inc. Sec. Litig.*, 977 F.3d 781, 794 (9th Cir. 2020).

## IV.    Plaintiffs Fail to Allege a Strong Inference of Scienter.

The CC fails to allege the requisite "strong inference" of scienter for Plaintiffs' Exchange Act claims.  Mot. at 27–31.  The Opposition does not identify allegations pleading a plausible motive to commit fraud, let alone that Defendants made any statement, or engaged in any act, "with an intent to deceive, manipulate, or defraud, or with deliberate recklessness," *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1106 (9th Cir. 2021); *see also Kang v. PayPal Holdings, Inc.*, 620 F. Supp. 3d 884, 902 (N.D. Cal. 2022) (dismissing scheme liability claims for failure to plead scienter).

### A.    Plaintiffs Do Not Allege a Motive to Commit Fraud.

Plaintiffs put all their eggs in their $3.87 billion stock sale basket.  *E.g.*, Opp. at 34.  But "large numbers" alone are not enough.  *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1093 (9th Cir. 2002).  Large numbers are especially not enough here, where all of Huston's, Jenkins's, and Keeton's sales occurred within predetermined 10b5-1 plans entered while they possessed no MNPI, Mot. at 30, 33.  *See In re AnaptysBio, Inc.*, 2021 WL 4267413, at *9 (S.D. Cal. 2021).[13]  Plaintiffs allege that Defendants modified their 10b5-1 plans once, but that is unsuspicious given the Class Period's 30-month duration, *see In re Int'l*

decid[e] reasons for the market's reaction," Opp. at 50.  Not so.  The Court need not weigh any factual assertions from Plaintiffs and Defendants.  Plaintiffs' allegations taken at face value simply do not establish that the alleged corrective disclosures caused a significant stock drop, as Defendants' authorities make clear.

[13] Plaintiffs contend that the 10b5-1 plans cannot be considered on a motion to dismiss, Opp. at 36 & n.35, but even Plaintiffs' own authority rejects that position as "out of step with the weight of authority in the Ninth Circuit," *Azar v. Yelp, Inc.*, 2018 WL 6182756, at *4 (N.D. Cal. 2018).  Plaintiffs also mention "new rules" for 10b5-1 plans, but Plaintiffs concede that these (unexplained) "new rules" do not apply in this case.  Opp. at 36.

*Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at *19 (C.D. Cal. 2008). Plaintiffs also do not explain how the modifications were suspicious in timing or otherwise. Further precluding an inference of scienter, Huston, Jenkins, and Keeton did not make any alleged misstatements, Mot. at 28–29, while **Garcia Jr. bought 2 million shares and sold none**, *see Okla. Firefighters Pens. & Ret. Sys. v. Ixia*, 2015 WL 1775221, at *39 (C.D. Cal. 2015).

Even putting these pleading defects aside, Plaintiffs fail to allege that any trades were "unusual" or "suspicious," either in timing or as a deviation from prior trading practices, *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1005 (9th Cir. 2009), such as by alleging that Defendants timed their sales to benefit from undisclosed non-public information, Mot. at 29–30. Plaintiffs claim that Huston, Jenkins, and Keeton made 97% to 99% of their Class Period sales prior to the *Wall Street Journal*'s October 22, 2021 "exposé." Opp. at 35. That is misleading—each made half of his sales *more than a year earlier*, in August 2020, and made the rest in subsequent months, with virtually all sales complete many months before the "exposé." Compl. App'x A at 63–65. That timing suggests that Defendants were ***not*** "operating on 'inside knowledge,'" given that the stock price continued increasing for months afterward. *Vantive*, 283 F.3d at 1093–94 (no scienter where most sales occurred a year prior to alleged corrective disclosure and the "overwhelming majority" were sold while the stock price was rising); *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 384 (E.D.N.Y. 2003) ("[S]ales of stock more than a year before [a corrective disclosure] . . . hardly appear timed to . . . realize gains prior to an imminent decrease in the stock's value."). Plaintiffs also argue that Class Period sales were more "condensed" than prior sales. Opp. at 35, 39 (citing ¶¶ 301, 304-305, 310-312). But Plaintiffs' citations concern only Class Period sales—for good reason: Huston, Jenkins, and Keeton sold "almost the same amount" in the 2.5 years preceding the Class Period, Mot. 29, which precludes an inference of fraud. *See Metzler*, 540 F.3d at 1067 (selling 37% to 100% of stock not suspicious where "trading [was] in line with prior patterns").[14]

---

[14] Plaintiffs' cases are distinguishable, as each found sales of 7% to 24% suspicious only where sales were suspiciously timed and deviated from prior trading. Opp. at 35.

Plaintiffs' reliance on stock sales fails for yet another reason. They allege no connection between any sale and any alleged misstatement. Mot. at 28. As the Ninth Circuit held in *Vantive*, stock sales support scienter "only . . . when those sales are able to be related to the challenged statements." 283 F.3d at 1093. Plaintiffs do not show that relationship but instead select "an unusually long class period"—2.5 years as opposed to just 63 weeks in *Vantive*—"to sweep as many stock sales into their totals as possible" in an attempt to "mak[e] the stock sales appear more suspicious than they would be with a shorter class period." *Id.* at 1092. Such allegations are an inadequate substitute for an actual showing of suspicious sales. *See id.* at 1094–95 (rejecting large stock sales that were consistent with prior trading and where insiders had "miss[ed] the boat" by selling at share prices far below the peak price); *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1160 (C.D. Cal. 2007) (dismissing claim where plaintiff "failed to link" statements to sales and merely alleged that "every publicly-filed document . . . contain[ed] misstatements" over an "unusually long" class period); *see also Ixia*, 2015 WL 1775221, at *35–36.

### B.    Plaintiffs Do Not Allege Deliberate Recklessness.

Focused on stock sales, Plaintiffs have little to say in attempting to argue deliberate reckless. The fact that Defendants made statements about, *e.g.*, "retail unit sales" and "buying cars from customers," Opp. 40 & n.42, says nothing about whether any Defendant knew about and concealed specific data contradicting any particular statement. And while Plaintiffs repeat their CW allegations, including that "Carvana lowered its purchasing and verification standards," Opp. at 41–42, they fail to show that any CW account contradicted anything any Defendant said—indeed they fail to point to any CW allegation (because there are none) about, for example, sales of vehicles purchased from DriveTime or any Defendant's alleged scheming to violate title and registration laws. Plaintiffs' argument that certain "issues were made explicitly known to Defendants," Opp. at 42, is conclusory and ignores the black-letter argument in the Motion that group pleading cannot support scienter, Mot. at 32–33. Nor can Plaintiffs fall back on "core operations," which is a theory that succeeds only in "rare circumstances," *Plumley v. Sempra Energy*, 847 F. App'x 426,

431 (9th Cir. 2021), and only if Plaintiffs had "produce[d] either specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations, such as data monitoring, or witness accounts demonstrating that executives had actual involvement in creating false reports," *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014); *see also Plumley*, 847 F. App'x at 431. Sarbanes-Oxley certifications "add nothing substantial to the scienter calculus," *Zucco Partners*, 552 F.3d at 1003–04, nor do vague allegations about an SEC investigation on an unknown topic, *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 418 n.3 (9th Cir. 2020).

Taken individually or together, Plaintiffs' allegations fail to allege a strong inference that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007). All they show is an excited, growing company sincerely reporting on that growth.

## V.      Plaintiffs Fail to Allege Scheme Liability.

The CC does not plead any fraudulent "scheme" distinct from its allegations about fraudulent statements under Rule 10b-5(b). Mot. at 32. The Opposition does not contest that, responding only that "authority holds that this is an insufficient basis to dismiss the claim." Opp. at 14 (citing *Borteanu v. Nikola Corp.*, 2023 WL 1472852, at *21 n.8 (D. Ariz. 2023)). Plaintiffs misconstrue *Borteanu*, which explained that a failure to plead a Rule 10b-5(b) claim does not ***require*** dismissal of scheme liability claims. 2023 WL 1472852, at *21 n.8. In this case, however, neither the CC nor the Opposition put forth a scheme theory distinct from the misstatement claims. The Opposition, for the first time, lays out the conduct that Plaintiffs contend gives rise to scheme liability under Rule 10b-5(a) and (c), citing the 51-paragraph Section VI of the CC. Opp. at 14. But even in that reimagination of the CC, the Opposition does not identify a deceptive act that is not part of the CC's misstatement theories—indeed, in challenging Defendants' statements, the CC pointed to the same Section VI for the reasons the statements were allegedly misleading. *See, e.g.*, ¶ 229(a). So, as in *Kang*, the scheme claim "fails for the same reasons as[] the misstatements," 620 F. Supp. 3d at 902.

Regardless, as Defendants explained, a scheme liability claim must be premised on "conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme." Mot. at 33. Yet in the Opposition's description of the scheme, Opp. at 14, Plaintiffs list conduct that cannot support scheme liability because the conduct is not alleged to have had the principal purpose of deceiving the public (*e.g.*, stock sales, if anything, would make Carvana look weaker) or the principal effect of deceiving the public—the public must have **relied** on the alleged deception, *see Abbate v. Wells Fargo Bank, N.A.*, 2011 WL 9698215, at *2–4 (C.D. Cal. 2011). And as to all the purportedly deceptive conduct, since none of it misled investors, *see* Section IV, *supra*, it could not have had any "effect" of deceiving the public (much less a "principal effect"). Mot. at 33.

Additionally, and just as fatally, to allege a scheme claim, Plaintiffs were required to allege that "**each defendant** committed **their own** deceptive act in furtherance of the scheme," *Borteanu*, 2023 WL 1472852, at *22, which the CC does not do. Mot. at 32–33. The Opposition does not meaningfully respond to Defendants' scheme liability arguments, asserting only that the point "is belied by Plaintiffs' detailed allegations summarized above," again citing Section VI of the CC. Opp. at 15. But other than the statements (which do not support a claim), the CC is devoid of allegations of any purportedly deceptive, public-facing act attributed to any specific Defendant.[15]

## VI.    Plaintiffs Fail to Allege Insider Trading Liability.

In their Opposition, Plaintiffs assert two sources of insider trading liability, Section 20A and Section 10b-5(b). Opp. at 33, 51. All of Plaintiffs' insider trading claims fail because the CC does not plead with particularity that any Defendant was in possession of MNPI at the time of any trade or modification of a 10b5-1 trading plan. Mot. at 33 (citing

---

[15] *In re Vaxart, Inc. Securities Litigation*, 2023 WL 3637093, No. 3:20-cv-05949 (N.D. Cal. 2023), supports Defendants' position. In *Vaxart*, the court found that *non-speaking* defendants were not liable under Rule 10b-5(b), but could be subject to scheme liability for their role in facilitating misstatements made by the speaker and otherwise misleading investors. *Id.* at *1–3. The court reasoned that doing so was appropriate because there (unlike here), the plaintiffs provided detailed allegations regarding the specific individual actions taken by the non-speakers to support misstatements and mislead investors. *See id.* at *3; Dkt. No. 258 (*Vaxart* Complaint) at Section VI (detailing a scheme with specific acts attributed to specific defendants, distinct from misstatement allegations at Section VII).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

17

*In re 3Com Sec. Litig.*, 1999 WL 1039715, at *8 (N.D. Cal. 1999). Plaintiffs also fail to identify any specific allegations that establish Defendants' possession of MNPI. Instead, in trademark fashion, Plaintiffs ask the Court to trust that such allegations are somewhere in Sections V, VI and/or paragraphs 286–313 of the CC. Opp. at 33, 51. But conclusory assertions of possession of MNPI are insufficient, and further, Plaintiffs do not attempt to address the fact that the CC does not tie the possession of MNPI to the time of any trade for any Defendant. *See In re 3Com*, 1999 WL 1039715, at *8.

Plaintiffs also claim that "Defendants failed to address" a theory that the trading Defendants violated Rule 10b-5(b) through their trades on the basis of nonpublic information. Opp. at 33–34. The Motion did not discuss this theory for two reasons. ***First***, it does not appear anywhere in the CC. The CC's Rule 10b-5 count (Count I) does not mention insider trading. CC pp. 170–72. Nor would it make sense if it did, as, in contrast to the Section 20A claim, it is made against all Exchange Act Defendants, many of which did not make any trades. *Id.* at 170–72, 174. ***Second***, there is no insider trading liability under Rule 10b-5(b), which prohibits making "untrue statement[s]" and omitting facts "necessary in order to make the statements made . . . not misleading." 17 CFR § 240.10b-5. The Opposition cites *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 940 (9th Cir. 2009), where the Ninth Circuit used insider trading as an example of a type of actionable omission. Opp. at 33. But *Desai* did not say insider trading was actionable under Rule 10b-5(b), and indeed, the Supreme Court has since clarified that under "Rule 10b-5(b) . . . [d]isclosure is required . . . only when necessary to make statements . . . not misleading." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011).

## VII. Plaintiffs Fail to Allege that Huston and Keeton Were Control Persons.

Plaintiffs' generalized allegations that Huston was "responsible for day-to-day operations," Opp. at 54, are insufficient. Mot. at 34 (quoting *In re Impac Mortg. Hldgs., Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1101 n.12 (C.D. Cal. 2008)). And the CC fails to allege that any statement Keeton made was false, ¶ 226 (not challenging statement in ¶ 216), or that Keeton had any control over any of the challenged statements, as Plaintiffs'

own cases, Opp. at 54, confirm is required.

## VIII.  Plaintiffs Fail to Allege Securities Act Claims.

Plaintiffs admit their Securities Act claims are "substantively the same" as their Exchange Act claims, Opp. 55, and therefore fail for the same reasons.  But Plaintiffs are also wrong that they can avoid Rule 9(b) merely by using the word "negligently."  Opp. at 56–57.  Ninth Circuit authority holds that Rule 9(b) applies where, as here, a plaintiff asserts a non-fraud claim that is based on the same course of conduct as a Section 10(b) claim.  *Mehedi v. View, Inc.*, 2023 WL 3592098, at *13–14 (N.D. Cal. 2023) (citing *Rigel Pharms.*, 697 F.3d at 885 and *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009)).  And even under Rule 8, Plaintiffs do not plead facts plausibly establishing any false statements necessary to support a claim.

Plaintiffs' omission-based claim under Item 105 fares no better.  Plaintiffs admit that the Offering Documents warned of the risk of being subject to a wide array of regulations and the risk of incurring regulatory penalties, *e.g.*, Opp. at 56; ¶¶ 436–37, which defeats their claim, Mot. at 37.  The Opposition complains the Offering Documents still omitted risks "associated with Carvana's mounting titling issues and practice of issuing temporary licenses."  Opp. at 56.  Even assuming Carvana had title issues, the risk would be financial or reputational harm from penalties, which Carvana warned about. ¶ 437; Ex. 19 (2021 10-K) at 24.  Whether a risk disclosure was misleading because a risk materialized, Opp. at 56, is not an Item 105 issue, and the Opposition provides no support otherwise (and in any case, the risk had not materialized, *see* p. 9, *supra*).

Lastly, Plaintiffs' conclusory seller allegations, Opp. at 58–59, fail to identify any facts establishing when or how any Defendant sold or solicited stock from any Plaintiff in the Offering, and are "insufficient" to allege statutory seller liability under Section 12(a)(2).  *Welgus v. TriNet Grp., Inc.*, 2017 WL 6466264, at *31 (N.D. Cal. 2017).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Consolidated Complaint with prejudice.

Dated:  July 10, 2023               Respectfully submitted,

                                    LATHAM & WATKINS LLP

                                    By: /s/ *Susan E. Engel*
                                    Andrew B. Clubok (*pro hac vice*)
                                    Susan E. Engel (*pro hac vice*)
                                    Matthew J. Peters (*pro hac vice*)
                                    555 Eleventh Street, N.W., Suite 1000
                                    Washington, D.C. 20004
                                    Telephone: +1.202.637.2200
                                    Email: andrew.clubok@lw.com
                                    Email: susan.engel@lw.com
                                    Email: matthew.peters@lw.com


                                    LATHAM & WATKINS LLP
                                    Jeff G. Hammel (*pro hac vice*)
                                    1271 Avenue of the Americas
                                    New York, NY 10020
                                    Telephone: +1.212.906.1200
                                    Email: jeff.hammel@lw.com



                                    FENNEMORE CRAIG, P.C.

                                    Douglas C. Northup (No. 013987)
                                    Andrea L. Marconi (No. 022577)
                                    2394 E. Camelback Road, Suite 600
                                    Phoenix, AZ 85016
                                    Telephone: +1.602.916.5000
                                    Email: dnorthup@fennemorelaw.com
                                    Email: amarconi@fennemorelaw.com

                                    *Counsel for Defendants Carvana Co., Ernest
                                    Garcia III, Mark Jenkins, Ryan Keeton, Benjamin
                                    Huston, Stephen Palmer, Michael Maroone, Neha
                                    Parikh, Ira Platt, and Greg Sullivan*