**DLA PIPER LLP (US)**
Craig M. Waugh (Bar No. 026524)
craig.waugh@us.dlapiper.com
Laura Sixkiller (Bar No. 022014)
laura.sixkiller@us.dlapiper.com
Madeline A. Cordray (Bar No. 035788)
madeline.cordray@us.dlapiper.com
2525 East Camelback Road, Suite 1000
Phoenix, Arizona 85016-4232
480.606.5100

John J. Clarke, Jr. (*pro hac vice*)
john.clarke@us.dlapiper.com
1251 Avenue of the Americas
New York, New York 10020
212.335.4500

Yan Grinblat (*pro hac vice*)
yan.grinblat@us.dlapiper.com
444 West Lake Street, Suite 900
Chicago, Illinois 60606
312.368.4000

*Attorneys for Defendant*
*Ernest Garcia II*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| In re Carvana Co. Securities Litigation. | CASE NO. CV-22-2126-PHX-MTL |
|  | **REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS BY DEFENDANT ERNEST GARCIA II** |

Table of Contents

Page

I.     INTRODUCTION ....................................................................................................1

II.    ARGUMENT........................................................................................................1

       A.     Plaintiffs Have Not Alleged a Rule 10b-5 Claim. .......................................1

              1.     The Complaint Does Not Plead an Omissions Claim. ......................1

              2.     There Are No Allegations of a "Deceptive Act" by
                     Mr. Garcia Sr. .................................................................................2

              3.     The Allegations Do Not Support a "Strong Inference"
                     of Scienter. .....................................................................................3

              4.     Plaintiffs Do Not Allege Loss Causation as to Mr. Garcia Sr. ...........6

       B.     The Section 20(a) Control Person Claim Should Be Dismissed. .................7

       C.     The Section 20A Insider Trading Claim Should Be Dismissed. ..................8

III.   CONCLUSION.....................................................................................................8

Table of Authorities

Page(s)

Cases

*Alpine 4 Holdings Inc. v. Finn Mgmt. GP LLC*,
2022 WL 3598246 (D. Ariz. Aug. 23, 2022) ...............................................................2

*Avant-Garde, LLC v. Mountain Spa Properties, LLC*,
2010 WL 4537057 (D. Ariz. Nov. 3, 2010) ................................................................6

*Borteanu v. Nikola Corp.*,
2023 WL 1472852 (D. Ariz. Feb. 2, 2023) .............................................................3, 4

*City of Pontiac Gen. Emps. Ret. Sys. v. First Solar Inc.*,
2023 WL 155861 (D. Ariz. Jan. 11, 2023) (Liburdi, J.) ...........................................5

*Hampton v. Aqua Metals, Inc.*,
2020 WL 6710096 (N.D. Cal. Nov. 16, 2020) ...........................................................6

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000) ...................................................................................7

*In re CytRx Corp. Sec. Litig.*,
2015 WL 5031232 (C.D. Cal. July 13, 2015) ...........................................................1

*In re Galena Biopharma, Inc. Sec. Litig.*,
117 F. Supp. 3d 1145 (D. Or. 2015) .........................................................................3

*In re PetSmart, Inc. Sec. Litig.*,
61 F. Supp. 2d 982 (D. Ariz. 1999) ...........................................................................6

*In re Take-Two Interactive Sec. Litig.*,
551 F. Supp. 2d 247 (S.D.N.Y. 2008) .......................................................................4

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
564 U.S. 135 (2011) ...................................................................................................1

*Lorenzo v. S.E.C.*,
139 S. Ct. 1094 (2019) ...............................................................................................1

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008)...................................................................................6

*Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*,
380 F.3d 1226 (9th Cir. 2004)...................................................................................5

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
96 F.3d 1151 (9th Cir. 1996).....................................................................................7

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001)......................................................................................4

*Shurkin v. Golden State Vintners Inc.*,
471 F. Supp. 2d 998 (N.D. Cal. 2006), *aff'd,* 303 F. App'x 431 (9th Cir. 2008) ..........8

*Stoneridge Inv. Partners, LLC v. Sci. -Atlanta, Inc.*,
552 U.S. 148 (2008) ...................................................................................................1

Page(s)

*Turek v. Orange Cnty. Sheriff's Dep't,*
  2009 WL 4730877 (C.D. Cal. Dec. 4, 2009)................................................................8

*Webb v. Solarcity Corp.,*
  884 F.3d 844 (9th Cir. 2018) .....................................................................................4

*Welgus v. TriNet Grp., Inc.,*
  2017 WL 167708 (N.D. Cal. Jan. 17, 2017) ............................................................7, 8

<u>Statutes, Regulations, and Rules</u>

15 U.S.C. § 78t-1 .........................................................................................................8

15 U.S.C. § 78t(a) .........................................................................................................7

17 C.F.R. § 240.10b-5...........................................................................................1, 3, 6

17 C.F.R. § 240.10b-5(a) .............................................................................................2, 3

17 C.F.R. § 240.10b-5(b) .........................................................................................1, 2, 3

17 C.F.R. § 240.10b-5(c) .............................................................................................2, 3

## I.    INTRODUCTION[1]

Plaintiffs' omnibus opposition only confirms that they have no viable claim against Mr. Ernest Garcia II, who was neither an officer nor a director of Carvana Co., had no involvement in Carvana's management or operations, and did not allegedly make – or even know about – any of the challenged statements at issue. The securities laws do not provide plaintiffs a cause of action based on a person's status as majority stockholder. Nor have plaintiffs shown that the obvious shortcomings in their claims against Mr. Garcia Sr. could be cured by amendment. The claims against Mr. Garcia Sr. should be dismissed with prejudice.

## II.    ARGUMENT

### A.    Plaintiffs Have Not Alleged a Rule 10b-5 Claim.

#### 1.    The Complaint Does Not Plead an Omissions Claim.

Plaintiffs concede that Mr. Garcia Sr. did not make any challenged statements. Doc. 56 ("Opp.") at 34 n.33. Thus, he cannot be liable for such statement under Rule 10b-5(b). *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 143-45 (2011); Doc. 54 ("Br.") at 4-5.

Mr. Garcia Sr.'s opening brief already addressed plaintiffs' response – that they have asserted claims against Mr. Garcia Sr. under Rule 10b-5(b) for alleged "omissions." *See* Opp. at 33-34. Because Mr. Garcia Sr. admittedly did not make the statements in question, he cannot be liable for these statements based on an omissions theory either. *See* Br. at 5 (quoting *In re CytRx Corp. Sec. Litig.,* 2015 WL 5031232, at *7 (C.D. Cal. July 13, 2015) (collecting cases)). Plaintiffs concede this point through their silence, and the opposition does not cite any case in which a defendant was found to have a duty to disclose facts that allegedly were omitted by *others*. *See* Opp. at 16, 32-33. That would amount to a prohibited claim for secondary liability. *See Stoneridge Inv. Partners, LLC v. Sci. -Atlanta, Inc.*, 552 U.S. 148, 158 (2008). Further, *Lorenzo v. S.E.C.*, 139 S. Ct. 1094 (2019), does not support plaintiffs given their failure to allege that Mr. Garcia Sr. was even aware of the challenged statements, much less that he disseminated them or knew facts that called them into question. *Id.* at 1101.

---

[1] Mr. Garcia Sr. incorporates all applicable arguments in the reply filed in support of the motions to dismiss by Carvana and its officers and directors ("Carvana Reply").

Plaintiffs' insider trading arguments similarly cannot salvage their omissions claim under Rule 10b-5(b). *See* Opp. at 33-34. There is no insider trading liability under that provision. *See* Carvana Reply at 18. In any event, plaintiffs have not alleged that Mr. Garcia Sr. actually knew, or traded on, inside information about Carvana. *See* Br. at 13.

**2.    There Are No Allegations of a "Deceptive Act" by Mr. Garcia Sr.**

Plaintiffs insist that their "scheme" liability claim against Mr. Garcia Sr. is not based on impermissible group pleading. Opp. at 13-15. But the three allegations they contend are specific to Mr. Garcia Sr. do not support such a claim – considered alone or together.

*First*, plaintiffs' own complaint forecloses their assertion that Mr. Garcia Sr.'s investment in Carvana stock in a direct offering was part of a fraudulent scheme. *See* Opp. at 14. Plaintiffs allege that the offering occurred "[w]eeks *before* the start of the Class Period," and yet it was not until the "Class Period" that the "scheme to inflate Carvana's retail sales" allegedly began. Compl. ¶¶ 8-9 (emphasis added). Besides, Mr. Garcia Sr.'s injection of $25 million of additional capital into Carvana at the beginning of the Covid-19 pandemic cannot support an inference of fraudulent intent given plaintiffs' allegations that his Carvana stock holdings already were valued in the billions. *See* Compl. ¶¶ 135, 288.

*Second*, and similarly, an alleged "sales arrangement" between Carvana and "Garcia Sr.'s DriveTime" does not support any plausible allegation of a purported "scheme." Opp. at 14. As plaintiffs admit, Carvana disclosed these transactions and that, for some, the "purchase price [paid to DriveTime] is the list price on Carvana.com[.]" Compl. ¶ 153 & n.41; *see* Carvana Reply at 4-5. Plaintiffs have offered no facts and cited no law to support their argument that additional disclosures were required. Nor did Mr. Garcia Sr., as the owner of DriveTime, have an independent duty to disclose the transactions. *See supra* at 1-2.

*Third*, and finally, plaintiffs misstate the law in contending that Mr. Garcia Sr.'s alleged sales of Carvana stock by themselves were fraudulent acts supporting a "scheme" claim. *See* Opp. at 14. "'To be actionable, [stock transactions] must be willfully combined with something more to create a false impression of how market participants value a security.'" Br. at 6 (quoting *Alpine 4 Holdings Inc. v. Finn Mgmt. GP LLC*, 2022 WL 3598246, at *4 (D.

2

Ariz. Aug. 23, 2022)).  Plaintiffs offer no response and cite no authority that would support their claim that merely selling stock can constitute a "deceptive act."  To the contrary, even selling "high volumes" of stock "is not, by itself, manipulative."  *Id.*[2]

Plaintiffs' remaining "scheme" allegations do not concern Mr. Garcia Sr. and instead rely on impermissible group pleading.  A complaint may not "merely alleg[e] that [defendants] *collectively*" participated in a claimed scheme; "facts that show how [defendants] *each individually*" took part are required.  *Borteanu v. Nikola Corp.*, 2023 WL 1472852, at *23 n.10 (D. Ariz. Feb. 2, 2023).  Relying extensively on such impermissible pleading, the opposition shows that plaintiffs cannot make out a claim.  *See, e.g.*, Compl. ¶ 135 ("Defendants knew . . ."); ¶ 137 ("Defendants planned and executed . . ."); ¶¶ 144, 158, 168-69 (generic assertions about what "Defendants" purportedly "knew" and "disregarded"); *see also* Opp. at 13-14 (largely lumping all defendants together).  Those generalizations must be disregarded, and the conduct plaintiffs actually attribute to Mr. Garcia Sr. clearly fails to plausibly allege a claim against him under Rule 10b-5(a) and (c).

### 3.    The Allegations Do Not Support a "Strong Inference" of Scienter.

Mr. Garcia Sr. showed that plaintiffs "did 'not even allege any facts showing that [he was] aware of or received any communications relating to [the alleged] misrepresentations, let alone facts related to [his] knowledge of the true nature' of the facts discussed[.]"  Br. at 7 (quoting *Borteanu*, 2023 WL 1472852, at *31).

Instead of addressing that flaw, plaintiffs argue that Mr. Garcia Sr.'s scienter, a necessary element of their "scheme" claim, may be inferred based on the "core operations" doctrine.  *See* Opp. at 43-45.  But alleging scienter "under the core operations doctrine 'is not easy,' and requires 'either specific admissions by . . . executives of detailed involvement in the minutia of a company's operations, . . . or witness accounts demonstrating that executives

---

[2] Whether a "pump-and-dump" scheme violates Rule 10b-5 is irrelevant.  Opp. at 15. Those schemes require "artificially inflating the price and volume of an owned stock" through "promotional or trading activity" (typically purchases).  *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1196 (D. Or. 2015).  Plaintiffs have not made any such allegations about Mr. Garcia Sr.

had actual involvement in creating false reports[.]'" *Webb v. Solarcity Corp.*, 884 F.3d 844, 857 (9th Cir. 2018) (citation omitted).  In this case, far from alleging his "detailed involvement," plaintiffs admit that Mr. Garcia Sr. was not a Carvana officer or director and do not allege he had any role in the business.  *See id.* ("core operations" doctrine inapplicable where complaint did not allege defendants were "involved in" challenged accounting decisions or "had actual access to the accounting formula").

Plaintiffs' principal argument for inferring Mr. Garcia Sr.'s scienter – his stock sales – is similarly deficient.  *See* Opp. at 34-38.  "[M]otive and opportunity" allegations, standing alone, "are not sufficient to establish a *strong* inference of scienter[.]"  *Borteanu*, 2023 WL 1472852, at *30 (conclusory assertions that defendants "'stood to gain millions, if not billions' from misrepresenting the company, given their ownership of significant amounts of Nikola stock" were not enough); *see* Br. at 8.  Having no response to this point, plaintiffs ignore it.

The stock sale allegations also are insufficient because plaintiffs have not plausibly alleged that the transactions were "calculated to maximize the personal benefit *from undisclosed inside information*."  *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001) (emphasis added); *see* Br. at 8.  Indeed, there are no allegations that Mr. Garcia Sr.'s trades were based on specific Carvana inside information, or that he even knew such information.

The trades also were not "dramatically out of line with" Mr. Garcia Sr.'s "prior trading practices."  *Ronconi*, 253 F.3d at 435; *see* Br. at 9.  Plaintiffs would ignore pre-class period stock sales by Mr. Garcia Sr.'s companies (DriveTime and Verde) when evaluating his trading history.  *See* Opp. at 35, 38.  But the case they cite for that argument contradicts it.  In *In re Take-Two Interactive Sec. Litig.*, the district court considered "300,000 shares held by an entity called Anglo America" that were sold indirectly by a defendant and concluded that plaintiffs "fail[ed] to allege facts demonstrating that the sale of stock by [the defendant] was in any way 'unusual'" given that trading history.  551 F. Supp. 2d 247, 276 (S.D.N.Y. 2008).  The court considered this indirect sale even though the complaint was "devoid of allegations explaining [the defendant's] relationship to Anglo American[.]"  *Id.*  Here, in contrast, plaintiffs admit to Mr. Garcia Sr.'s "indirect[]" control over the 10.9 million Carvana shares sold by DriveTime

4

and Verde. Compl. ¶ 289. When these pre-class period transactions are taken into account, it is even more apparent that Mr. Garcia Sr.'s trading was neither unusual nor suspicious. *See* Br. at 3-4; 8-9. Plaintiffs do not attempt to argue otherwise.

Even without those indirect sales, Mr. Garcia Sr.'s transactions were not suspicious. The sales were made pursuant to a 10b5-1 trading plan, which "mitigate[s] any inference of improper motive" even if "initiated during a class period[.]" *City of Pontiac Gen. Emps. Ret. Sys. v. First Solar Inc.*, 2023 WL 155861, at *9 (D. Ariz. Jan. 11, 2023) (Liburdi, J.).[3] Plaintiffs ask that the Court ignore this exculpatory inference because the plan was "modified." Opp. at 35. This is contrary to the Court's reasoning in *First Solar*, and in any event, unlike plaintiffs' authorities, there are no allegations in this case that Mr. Garcia Sr.'s plan was modified based on inside information. *See* Br. at 10.[4] Moreover, plaintiffs admit that Mr. Garcia Sr. sold roughly the same amount of stock every day for a 10-month period (between 40,000 and 60,000 shares), regardless of what happened with Carvana. *See* Compl. ¶ 288 & App'x A. This further undermines any inference of scienter, Br. at 10, and contradicts plaintiffs' unsupported claim that his "rate of sale peaked just as Carvana's stock did." Opp. at 35.

Plaintiffs' argument that Mr. Garcia Sr.'s sales (less than 20% of his holdings) are suspicious because of the number of shares sold is unsupported by the authority plaintiffs rely on. *See* Opp. at 37 (citing *Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1232 (9th Cir. 2004)). In *Oracle*, unlike here, the sales were by an executive who *admitted* he "was involved in an awful lot" of the challenged transactions and sold his shares outside a trading plan, over the course of just one week. 380 F.3d at 1232.

Finally, Mr. Garcia Sr.'s management of a prior company, Ugly Duckling, does not "support[] scienter." Opp. at 46. That Ugly Duckling's stock price decreased "from $25.00

---

[3] Plaintiffs attempt to distinguish *First Solar* because it "was decided prior to the SEC's new rules [regarding trading plans]" went into effect. Opp. at 36. The rules do not apply here, but in any event, Mr. Garcia Sr.'s transactions also occurred before those rules were enacted.

[4] Plaintiffs ignore their own allegations in suggesting that "a 10b5-1 plan is an affirmative defense." Opp. at 36. The complaint admits the plan's existence, and courts have dismissed cases for lack of scienter based on similar plans. *See* Br. at 10 (collecting cases).

per share" in 1996 to "$2.50 per share" over "a few years" does not remotely suggest that fraud caused the decline.  Compl. ¶ 38.  In any event, this lone allegation does not meet plaintiffs' self-imposed pleading burden.  *See* Opp. at 46 ("regular pattern" of "repeated conduct" required).  Mr. Garcia Sr.'s alleged guilty plea in 1990 is even more inapt.  "[T]he mention of [a] previous conviction does not raise an 'inference of scienter [that is] cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'"  *Avant-Garde, LLC v. Mountain Spa Properties, LLC*, 2010 WL 4537057, at \*6 (D. Ariz. Nov. 3, 2010).[5]

### 4.   Plaintiffs Do Not Allege Loss Causation as to Mr. Garcia Sr.

Plaintiffs concede that to allege loss causation, they were required to plead "a linkage between defendants' alleged fraud and plaintiffs' loss."  Opp. at 46-47.  But there are no allegations that Mr. Garcia Sr.'s stock sales – the only actions attributed to him during the putative class period – artificially inflated Carvana's stock price.  Even if corrective disclosures "need not precisely mirror" alleged misrepresentations, Opp. at 47, none of the alleged corrective disclosures discuss the stock transactions, which already had been disclosed in timely Forms 4.[6]  Plaintiffs' failure to even mention Mr. Garcia Sr. in their loss causation argument only underlines their failure to plead that essential element of their Rule 10b-5 claim against him.  *See* Opp. at 46-51; *see also Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008) (affirming dismissal where complaint "d[id] not allege that the [purported corrective disclosures] disclosed – or even suggested – to the market . . . the fraudulent activity that Metzler contends forced down the stock that caused its losses").

---

[5] Plaintiffs' remaining arguments for scienter – the information in the challenged statements, confidential witness statements, the extent of company reporting, and regulatory investigations, *see* Opp. at 39-43; 45-46, – do not apply to, Mr. Garcia Sr. because they have nothing to do with him.  *In re PetSmart, Inc. Sec. Litig.*, 61 F. Supp. 2d 982, 998 (D. Ariz. 1999) ("scienter [must] be pleaded with particularity as to each 'defendant'").

[6] *Available at* https://tinyurl.com/4y5zt9my.  The Court may take judicial notice of these filings because even though the complaint "does not reference the Form 4's specifically, they necessarily form the basis for [p]laintiffs' allegations regarding [defendants'] stock sales because they are the only public source for the allegations concerning the sale dates, number of shares sold, and price per share, all of which come directly from those Form 4's."  *Hampton v. Aqua Metals, Inc.*, 2020 WL 6710096, at \*4 (N.D. Cal. Nov. 16, 2020).

**B.      The Section 20(a) Control Person Claim Should Be Dismissed.**

Plaintiffs ignore the standard for alleging control person liability, which requires "***specific facts***" demonstrating a defendant's "involvement in the day-to-day affairs of the company or specific control over the preparation and release of the allegedly false . . . statements." *Welgus v. TriNet Grp., Inc.*, 2017 WL 167708, at \*12 (N.D. Cal. Jan. 17, 2017) (emphasis added). Whether allegations of "culpab[le]" participation also are required is beside the point. Opp. at 52-53. Given their allegations that Mr. Garcia Sr. had no direct management role at Carvana and failure to plead that he was even aware of any challenged statements, plaintiffs have not alleged – and cannot – that Mr. Garcia Sr. exercised such control.

Plaintiffs' bald contention that Mr. Garcia Sr. "did in fact control Carvana's operations" is not supported by the allegations they cite for it. Opp. at 54 (citing Compl. ¶¶ 5, 43-46). Those paragraphs allege only that Mr. Garcia Sr. held majority voting power and appointed two directors – Platt and Sullivan – to Carvana's board well before the alleged class period. But plaintiffs' own cases show that a "general level of control" is not enough. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1067 (9th Cir. 2000).[7] They were required to plead that Mr. Garcia Sr. "exercised direct or indirect control over" *specific* challenged statements or was "authorized to act for" Carvana in connection with the events at issue. *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1163-64 (9th Cir. 1996). There are no such allegations as to Mr. Garcia Sr. here. Indeed, the alleged involvement of directors Platt and Sullivan is only discussed in plaintiffs' Securities Act claims, which have not been asserted against Mr. Garcia Sr. *See* Compl. ¶ 415.[8]

Plaintiffs' assertion that control is established merely by pleading majority stock ownership also is mistaken. *See* Opp. at 53-54. Control over a company's daily operations or challenged statements is required because otherwise, a control person claim can be asserted

---

[7] In *Everex*, control was adequately pleaded because the defendant "was authorized to participate in the release of the [challenged] financial statements" and "signed off on the statements as correct." 228 F.3d at 1066. Plaintiffs do not allege either as to Mr. Garcia Sr.

[8] Carvana's publicly disclosed arrangements with DriveTime do not support an inference that Mr. Garcia Sr. (the owner of DriveTime) controlled Carvana. *See* Opp. at 54.

7

against any majority stockholder.  Contrary to the opposition's claim, *see* Opp. at 54 n.65, Mr. Garcia Sr. *did* cite authority for this proposition.  *See* Br. at 12 (citing *Welgus*, 2017 WL 167708).  In *Welgus*, the plaintiffs alleged a defendant "exercised control over" a company because it was "the controlling stockholder" and had "control over two members of the Board of Directors[.]"  2017 WL 167708, at *13.  The court rejected this argument because "there [were] neither factual allegations regarding [the defendant's] authority to exercise decision-making power, nor allegations of its day-to-day involvement in the operation of the Company." *Id.*  Plaintiffs do not, and cannot, plausibly distinguish *Welgus*.[9]

### C.    The Section 20A Insider Trading Claim Should Be Dismissed.

Plaintiffs ignore – and thus concede – Mr. Garcia Sr.'s primary argument for dismissal of the section 20A claim against him: that "[t]here are no allegations that Mr. Garcia had *any* nonpublic information regarding Carvana, much less that he actually traded on it."  Br. at 13. Without such allegations, there is no basis for an insider trading claim.  *Id.* (collecting cases); *see Shurkin v. Golden State Vintners Inc.*, 471 F. Supp. 2d 998, 1025 (N.D. Cal. 2006), *aff'd,* 303 F. App'x 431 (9th Cir. 2008); Carvana Reply at 17-18.  Finally, plaintiffs' cursory argument that they need not "have purchased their shares after and at a lower price than Garcia Sr." misunderstands the law.  Opp. at 52 n.61.  There can be no deception if a plaintiff's purchase pre-dated any sale that was allegedly based on inside information, and there can be no damages if a plaintiff's purchase was made at a lower price than the price at which a defendant sold.  *See* Br. at 11 (collecting cases).  These fundamental principles of causation and damages need not be written into a specific section of the Exchange Act to apply.

### III.    CONCLUSION

The claims against Mr. Garcia Sr. should be dismissed.  Because plaintiffs have not demonstrated that they can cure the complaint's pleading defects, dismissal should be with prejudice.

---

[9] Speculative hearsay from news stories does not establish Mr. Garcia Sr.'s control.  *See* Opp. at 3, 10, 25, 53 (quoting articles about Mr. Garcia Sr. and Carvana).  A complaint's sufficiency cannot be propped up by "facts stated in [news] articles."  *Turek v. Orange Cnty. Sheriff's Dep't*, 2009 WL 4730877, at *3 n.5 (C.D. Cal. Dec. 4, 2009) (collecting cases).

Dated: July 10, 2023

Of Counsel:

John J. Clarke, Jr. (*pro hac vice*)
john.clarke@us.dlapiper.com
1251 Avenue of the Americas
New York, New York 10020
212.335.4500

Yan Grinblat (*pro hac vice*)
yan.grinblat@us.dlapiper.com
444 West Lake Street, Suite 900
Chicago, Illinois 60606
312.368.4000

**DLA PIPER LLP (US)**

By:   */s/ Craig M. Waugh*
      Craig M. Waugh
      craig.waugh@us.dlapiper.com
      Laura Sixkiller
      laura.sixkiller@us.dlapiper.com
      Madeline A. Cordray
      madeline.cordray@us.dlapiper.com
      2525 East Camelback Road, Suite 1000
      Phoenix, Arizona 85016-4232
      480.606.5100

*Attorneys for Defendant Ernest Garcia II*

9

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on July 10, 2023, I electronically filed the foregoing document using the ECF System for the United States District Court for the District of Arizona. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record registered on the ECF system.

*s/ Stephanie Havell*