**DLA PIPER LLP (US)**
Madeline A. Cordray (Bar No. 035788)
madeline.cordray@us.dlapiper.com
2525 East Camelback Road, Suite 1000
Phoenix, Arizona 85016
480.606.5100

Melanie Walker *(pro hac vice)*
melanie.walker@us.dlapiper.com
2000 Avenue of the Stars #400,
Los Angeles, California 90067
310.595.3000

Yan Grinblat (*pro hac vice*)
yan.grinblat@us.dlapiper.com
444 West Lake Street, Suite 900
Chicago, Illinois 60606
312.368.4000

Attorneys for Defendant *Ernest Garcia II*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re Carvana Co. Securities Litigation | CASE NO. 2:22-CV-2126-MTL |
| | **DEFENDANT ERNEST GARCIA II'S MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES** |
| | Oral Argument Requested |

Table of Contents

Page

INTRODUCTION ................................................................................................ 1

BACKGROUND .................................................................................................. 2

ARGUMENT ....................................................................................................... 4

I.      Plaintiffs Fail to Cure Their Impermissible Puzzle Pleading. ................................ 4

II.     Plaintiffs Do Not Plausibly Allege a Section 10(b) Claim Against

        Mr. Garcia Sr. ................................................................................................ 5

        A.      The ACC Does Not Allege a Misstatement or Omission by

                Mr. Garcia Sr. ................................................................................... 5

        B.      Plaintiffs Fail to Allege a "Scheme" Claim Against Mr. Garcia Sr. ............. 5

                1.      The ACC does not allege a deceptive act by Mr. Garcia Sr.

                        on which investors relied in purchasing or selling securities. .......... 7

                2.      The ACC does not allege particularized facts giving rise to

                        a strong inference of scienter on the part of Mr. Garcia Sr. ............. 9

                3.      Plaintiffs Do Not Allege Loss Causation as to Mr. Garcia Sr. ....... 15

        C.      Plaintiffs Cannot Impose Vicarious Liability Under Section 20(a). ........... 16

        D.      The Section 20A Claims Should Be Dismissed. ....................................... 17

CONCLUSION .................................................................................................. 17

Table of Authorities

Page(s)

Cases

*Abbate v. Wells Fargo Bank, N.A.*,
2011 WL 9698215 (C.D. Cal. Nov. 17, 2011) ..................................................................... 6

*Alpine 4 Holdings Inc. v. Finn Mgmt. GP LLC*,
2022 WL 3598246 (D. Ariz. Aug. 23, 2022)................................................................... 8, 16

*Avant-Garde, LLC v. Mountain Spa Properties, LLC*,
2010 WL 4537057 (D. Ariz. Nov. 3, 2010)....................................................................... 15

*Bao v. SolarCity Corp.*,
2015 WL 1906105 (N.D. Cal. Apr. 27, 2015).................................................................... 17

*Borteanu v. Nikola Corp.*,
2023 WL 1472852 (D. Ariz. Feb. 2, 2023) .......................................................... 5, 7, 9, 12

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ............................................................................... 9, 11, 12

*City of Pontiac Gen. Employees Ret. Sys. v. First Solar Inc.*,
2023 WL 155861 (D. Ariz. Jan. 11, 2023) ........................................................................ 14

*Ferraro Fam. Found., Inc. v. Corcept Therapeutics Inc.*,
501 F. Supp. 3d 735 (N.D. Cal. 2020)............................................................................... 10

*Grigsby v. BofI Holding, Inc.*,
979 F.3d 1198 (9th Cir. 2020) .......................................................................................... 16

*Huberman v. Tag-It Pac., Inc.*,
314 F. App'x. 59 (9th Cir. 2009) ...................................................................................... 16

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) .................................................................................................. 9

*In re Alteryx, Inc. Secs. Litig.*,
2021 WL 4551201 (C.D. Cal. June 17, 2021) ................................................................... 13

*In re AnaptysBio, Inc.*,
2021 WL 4267413 (S.D. Cal. Sept. 20, 2021)................................................................... 13

*In re Aspeon, Inc. Secs. Litig.*,
168 F. App'x. 836 (9th Cir. 2006) ..................................................................................... 14

Page(s)

*In re Bank of America Corp.*,
  2011 WL 740902 (N.D. Cal. Feb. 24, 2011) ........................................................................ 8

*In re Conner Peripherals, Inc.*,
  1996 WL 193811 (N.D. Cal. Jan. 18, 1996).......................................................................... 4

*In re CytRx Corp. Sec. Litig.*,
  2015 WL 5031232 (C.D. Cal. July 13, 2015)........................................................................ 5

*In re Downey Sec. Litig.*,
  2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) .................................................................... 17

*In re Herbalife, Ltd. Sec. Litig.*,
  2015 WL 12734014 (C.D. Cal. July 28, 2015)..................................................................... 12

*In re Lululemon Sec. Litig.*,
  14 F. Supp. 3d 553 (S.D.N.Y. 2014)
  *aff'd*, 604 F. App'x 62 (2d Cir. 2015)................................................................................. 14

*In re Merrill Lynch Action Rate Sec. Litig.*,
  704 F.Supp.2d 378 (S.D.N.Y. 2010) ..................................................................................... 8

*In re Parmalat Sec. Litig.*,
  414 F. Supp. 2d 428 (S.D.N.Y. 2006) ................................................................................... 7

*In re Peregrine Sys., Inc.*,
  310 F. App'x. 149 (9th Cir. 2009) ......................................................................................... 6

*In re Peregrine Sys., Inc. Sec. Litig.*,
  2005 WL 8158825 (S.D. Cal. Mar. 30, 2005) ............................................................... 12, 16

*In re Sorrento Therapeutics, Inc. Sec. Litig.*,
  97 F.4th 634 (9th Cir. Mar. 25, 2024) ................................................................................... 9

*In re Take-Two Interactive Sec. Litig.*,
  551 F. Supp. 2d 247 (S.D.N.Y. 2008) ................................................................................. 12

*In re UBS Auction Rate Sec. Litig.*,
  2010 WL 2541166 (S.D.N.Y. June 10, 2010) ....................................................................... 8

*In re Vantive Corp. Sec. Litig.*,
  283 F.3d 1079 (9th Cir. 2002) ....................................................................................... 13, 14

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
  998 F.3d 397 (9th Cir. 2021) ......................................................................................... 15, 16

Page(s)

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011)................................................................................................. 5

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ................................................................................. 9

*Kovtun v. VIVUS, Inc.*,
   2012 WL 4477647 (N.D. Cal. Sept. 27, 2012),
   *aff'd sub. nom. Ingram v. VIVUS, Inc.*, 591 F. App'x. 592 (9th Cir. 2015) ...................... 12

*Mendoza v. HF Foods Gr., Inc.*,
   2021 WL 3772850 (C.D. Cal. Aug. 25, 2021) ................................................................. 4

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ........................................................................ 11, 13

*Meyer v. Organogenesis Holdings, Inc.*,
   2024 WL 1346432 (E.D.N.Y. Mar. 29, 2024)................................................................. 14

*Nursing Home Pension Fund. v. Oracle Corp.*,
   242 F. Supp. 2d 671 (N.D. Cal. 2002).......................................................................... 13

*Prodanova v. H.C. Wainwright & Co., LLC*,
   993 F.3d 1097 (9th Cir. 2021) .................................................................................. 11

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001),
   *abrogated on other grounds, Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551
   U.S. 308 (2007)........................................................................................................ 14

*Ryan v. FIGS, Inc.*,
   2024 WL 187001 (C.D. Cal. Jan. 17, 2024) ............................................................... 12

*S. Ferry LP, No. 2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) ................................................................................... 10

*Santa Fe Indus., Inc. v. Green*,
   430 U.S. 462 (1977).................................................................................................. 7

*ScripsAmerica, Inc. v. Ironridge Glob., LLC*,
   2015 WL 12747908 (C.D. Cal. Mar. 26, 2015)............................................................. 7

*SEC v. Honig*,
   2023 WL 6386918 (S.D.N.Y. Sept. 29, 2023) ............................................................. 9

Page(s)

*Shaw v. Digital Equip. Corp.*,
    82 F.3d 1194 (1st Cir. 1996) ................................................................................................ 12

*Shurkin v. Golden State Vintners, Inc.*,
    471 F. Supp. 2d 998 (N.D. Cal. 2006) ............................................................................... 17

*Simpson v. AOL Time Warner Inc.*,
    452 F.3d 1040 (9th Cir. 2006),
    *vacated on other grounds*, *Simpson v. Homestore.com, Inc.*, 519 F.3d 1041
    (9th Cir. 2008) ................................................................................................................... 5, 7

*Sneed v. AcelRx Pharms., Inc.*,
    2023 WL 4412164 (N.D. Cal. July 7, 2023) ...................................................................... 11

*Stock Unloading and Banker Incentives*,
    112 COLUM. L. REV ............................................................................................................. 9

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
    552 U.S. 148 (2008) ............................................................................................... 1, 5, 6, 8

*Strasburger v. Blackburne & Sons Realty Cap. Corp.*,
    2020 WL 6128223 (C.D. Cal. June 25, 2020) ................................................................... 15

*Teamsters Local 617 Pension & Funds v. Apollo Grp., Inc.*,
    633 F. Supp. 2d 763 (D. Ariz. 2009)
    *vacated in part on other grounds*, 690 F. Supp. 2d 959 (D. Ariz. 2010) .......................... 17

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ....................................................................................................... 9, 15

*Webb v. Solarcity Corp.*,
    884 F.3d 844 (9th Cir. 2018) .............................................................................................. 16

*Weiss v. Amkor Tech., Inc.*,
    527 F. Supp. 2d 938 (D. Ariz. 2007) ................................................................................. 16

*Welgus v. TriNet Grp., Inc.*,
    2017 WL 167708 (N.D. Cal. Jan. 17, 2017) ...................................................................... 16

*Wilson v. Merrill Lynch & Co., Inc.*,
    671 F.3d 120 (2d. Cir. 2011) ............................................................................................... 7

*Zack v. Allied Waste Indus., Inc.*,
    2005 WL 3501414 (D. Ariz. Dec. 15, 2005) ..................................................................... 14

Page(s)

*Zamir v. Bridgepoint Educ., Inc.*,
   2016 WL 3971400 (S.D. Cal. July 25, 2016) ...................................................... 14

*Zucco Partners, LLC v. Digimarc Corp*,
   552 F.3d 981 (9th Cir. 2009) ............................................................................. 11

Statutes, Regulations, and Rules

15 U.S.C. § 78u *et seq* ......................................................................................... 1, 9, 11

15 U.S.C. § 78t-1 ................................................................................................... 2, 3, 17

15 U.S.C. § 78t(a) ................................................................................................... 3, 16

15 U.S.C. § 78u-4(b)(2) .............................................................................................. 9

15 U.S.C. § 78a *et seq* ............................................................................................... 17

15 U.S.C.§ 78j .................................................................................................*passim*

17 C.F.R. § 240.10b-5(b) ............................................................................................ 5

17 C.F.R. § 240.10b-5 ............................................................................................. 3, 6

17 C.F.R. § 240.10b-5(b) ............................................................................................ 5

17 C.F.R. § 240.10b5-1 ................................................................. 1, 3, 7, 8, 14, 15

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 1

Fed. R. Civ. P. 8 ......................................................................................................... 1

Fed. R. Civ. P. 9(b) .................................................................................................. 1, 7

Defendant Ernest Garcia II ("Mr. Garcia Sr.") moves to dismiss all claims asserted against him in the Amended Consolidated Complaint (the "ACC," cited herein as "(¶__)") with prejudice pursuant to Fed. R. Civ. P. 8, 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u *et seq.* ("PSLRA").

**INTRODUCTION**

This Court dismissed plaintiffs' previous, unwieldy 229-page complaint because it was an impermissible puzzle pleading. *See* ECF No. 70 at 20. The 319-page ACC suffers from this same defect. And it fails to plead a cognizable claim against Mr. Garcia Sr. when the pieces of the puzzle are put together in any event. With respect to Mr. Garcia Sr., the ACC appears to assert Exchange Act Section 10(b) liability based on an alleged "scheme" to inflate Carvana's stock price through deceptive acts. But the ACC is ambiguous regarding what deceptive acts *Mr. Garcia Sr.* allegedly engaged in. While in some places the ACC attributes conduct specifically to Mr. Garcia Sr. (*e.g.*, ¶ 127), in other places it vaguely refers to "Defendants" collectively (*e.g.,* ¶ 130). Only when the allegations of fact (*i.e.,* the pieces of the puzzle) are put together is it apparent the ACC does not allege Mr. Garcia Sr. had any involvement whatsoever in the alleged acts attributed to all "Defendants."

Further, the ACC does not explain how the allegedly deceptive acts tied to Mr. Garcia Sr.—facilitating transactions between DriveTime and Carvana, amending his Rule 10b5-1 trading plan, and selling stock—deceived the market. Mr. Garcia Sr. and DriveTime did not make disclosures regarding the Carvana and DriveTime transactions. And *selling* stock does not create a falsely *positive* impression in the market. Because investors could not have relied on any allegedly deceptive act by Mr. Garcia Sr., plaintiffs' claim against him is foreclosed by *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008).

For similar reasons, the ACC fails to allege a strong inference of scienter or loss causation against Mr. Garcia Sr. Plaintiffs do not allege particularized facts showing how and when Mr. Garcia Sr.—who is not an officer, employee, or director of Carvana—obtained knowledge of the alleged scheme, and their conclusory "motive and opportunity" allegations

1

based on his class period stock sales do not fill the gap. As for loss causation, none of the alleged corrective disclosures concern Mr. Garcia Sr.'s alleged acts.

The ACC also fails once again to allege a control person claim against Mr. Garcia Sr. under section 20(a) or an insider trading claim against him under section 20A. For the reasons set forth herein and in the motion to dismiss the ACC filed by the Carvana Defendants ("Carvana Br.")—which Mr. Garcia Sr. hereby incorporates by reference in full—the ACC does not adequately allege a primary violation of the securities laws, and therefore also fails to plead a violation of section 20(a). Further, the ACC does not contain allegations of fact (as opposed to conclusory assertions) that Mr. Garcia Sr. controlled Carvana's operations or disclosures. As for plaintiffs' section 20A claim, Mr. Garcia Sr. pointed out in the motion to dismiss briefing on the original complaint that plaintiffs failed to allege *facts* showing that he possessed material non-public information at the time of his trades, what that information was, and how he obtained it. The ACC does not even attempt to cure this pleading deficiency.

Plaintiffs have now been afforded multiple opportunities to plead a viable claim against Mr. Garcia Sr. and have failed to do so. The case against him should be dismissed with prejudice.

## BACKGROUND

Plaintiffs' allegations remain largely unchanged in the ACC. Mr. Garcia Sr. respectfully refers to the Carvana Defendants' brief for a more fulsome recitation of the allegations. As was the case with plaintiffs' last complaint, many of allegations against Mr. Garcia Sr. pertain to events years—sometimes, decades—prior to the start of the class period. *See, e.g.*, ¶¶ 4, 26, 34-38, 304-305.

As relevant here, plaintiffs allege that Mr. Garcia Sr. and his son, Ernest Garcia III ("Garcia Jr.") founded Carvana as a wholly owned subsidiary of Mr. Garcia Sr.'s privately held car business, DriveTime Automotive Group, Inc. ¶ 4. In April 2017, Carvana was spun off in an initial public offering. ¶¶ 36-37. From the time Carvana went public, Mr. Garcia Sr. has had no role in its management or operations and has not served as a Carvana employee, officer, or director. ¶ 296. The ACC does not allege facts showing Mr. Garcia Sr. was involved in or even

had knowledge of the day-to-day operations at Carvana, or that he had any role in the drafting or issuance of Carvana's public disclosures. Instead, the ACC notes that Mr. Garcia Sr. was Carvana's controlling shareholder, had previous business dealings with two Carvana directors, and lives next door to his son, Mr. Garcia Jr., who is the CEO, President, and Chairman of Carvana. ¶¶ 25-26.

Plaintiffs allege that during the class period, Carvana lowered its purchasing and verification standards to induce trade-in sales, "flout[ed] state title and registration laws," embarked on a "rapid and unsustainable nationwide expansion," and issued "materially misleading statements and omissions." ¶ 125. Stripped of conclusory assertions, the ACC does not allege Mr. Garcia Sr. had any involvement in or knowledge of these alleged matters. With respect to Mr. Garcia Sr., plaintiffs allege he caused Carvana to buy cars from DriveTime, sell the cars on Carvana's website, and pass the proceeds from the sales back to DriveTime. ¶ 127. As the ACC admits, this arrangement was disclosed to investors. ¶¶ 128-29. As the ACC also admits, these transactions allowed Carvana "to capture additional revenue streams associated with financing, vehicle service contracts ('VSCs') and trade-in vehicles." ¶ 41.

The ACC also focuses on Mr. Garcia Sr.'s modifications to his Rule 10b5-1 trading plan and stock sales during the class period. On November 4, 2020 and May 7, 2021, Mr. Garcia Sr. modified his Rule 10b5-1 trading plan to increase the number of shares he could sell each day. ¶¶ 160-61. Consistent with these modified plans, he traded "every single trading day" for nearly a year in amounts of roughly the same size regardless of Carvana's stock price, market events, or contemporaneous Carvana disclosures. ¶ 263. Ultimately, he sold 15 percent of his shareholdings for nearly $3.7 billion in proceeds during the class period. ¶ 262-63. While plaintiffs unsurprisingly focus on the $3.7 billion figure, they downplay that Mr. Garcia Sr. not only retained substantial holdings after the alleged corrective disclosures, but also that he purchased 7.1 million shares during the class period. ¶¶ 266 n.157, 311-19.

Based on these allegations, plaintiffs assert claims against Mr. Garcia Sr. for (1) securities fraud under Exchange Act section 10(b) and Rule 10b-5, (2) secondary liability under Exchange Act sections 20(a), and (3) "insider trading" under Exchange Act section 20A.

## ARGUMENT[1]

### I.    Plaintiffs Fail to Cure Their Impermissible Puzzle Pleading.

As detailed more fully in the Carvana Defendants' brief, the ACC remains an impermissible puzzle pleading. *See* Carvana Br. at 10-12. With respect to Mr. Garcia Sr., the Court admonished plaintiffs for "cross-referenc[ing] throughout the [prior complaint] rather than detail[ing] which misstatements or omissions Garcia Senior made or what the precise deceptive or manipulative act he engaged in regarding Carvana." ECF No. 70, at 20. The ACC repeats this defect, offering irrelevant allegations regarding Mr. Garcia Sr.'s other business ventures "rather than detail his culpable conduct with respect to Carvana." *Id.* And once again, plaintiffs collectively and indivisibly refer to all parties as "Defendants," without noting which defendant is alleged to have committed which allegedly wrongful act. *See, e.g.*, ¶¶ 128, 130, 136, 144, 341-50. Plaintiffs merely state that "each of the Defendants participated directly or indirectly in: (i) Defendants' scheme; ***and/or*** (ii) the preparation and/or issuance of the . . . statements and documents described above[.]" ¶ 344 (emphasis added).[2]

Plaintiffs' claims against Mr. Garcia Sr. should be dismissed as they violate the prohibition against shotgun and puzzle pleading. Forcing the Court and Mr. Garcia Sr. to decipher the ACC's cryptic allegations does not provide adequate notice about the claims and theories asserted. *See Mendoza v. HF Foods Gr., Inc.*, 2021 WL 3772850, at *12 (C.D. Cal. Aug. 25, 2021); *see also In re Conner Peripherals, Inc.*, 1996 WL 193811, at *1 (N.D. Cal. Jan. 18, 1996) ("Judicial resources are too scarce and worthy cases too pressing for a court to spend its time rooting around in bloated complaints drafted by experienced lawyers for a handful of actionable allegations.").

---

[1] To avoid unnecessary repetition, Mr. Garcia Sr. adopts and incorporates the Legal Standards section of the Carvana Defendants' brief. *See* Carvana Br. at 8-10.

[2] Paragraph 151 of the ACC alleges that "Garcia *Senior* and Jenkins" made certain misleading statements to investors and cross-references twenty subsequent paragraphs in the ACC. ¶ 151 (emphasis added). This appears to be a typo. The cross-referenced paragraphs contain no allegations that Mr. Garcia Sr. made, or even knew about, any challenged statements. *See* ¶¶ 191-210. Rather, plaintiffs attribute the statements to Mr. Garcia *Junior* and Mr. Jenkins. *Id.*

**II.    Plaintiffs Do Not Plausibly Allege a Section 10(b) Claim Against Mr. Garcia Sr.**

**A.    The ACC Does Not Allege a Misstatement or Omission by Mr. Garcia Sr.**

Rule 10b-5(b) prohibits "mak[ing] any untrue statement of a material fact or . . . omit[ting] to state a material fact necessary in order to make the statements . . . not misleading[.]" 17 C.F.R. § 240.10b-5(b). For the reasons set forth by the Carvana Defendants, the ACC fails to allege any actionable misstatements or omissions. *See* Carvana Br. at 12-28. To the extent plaintiffs are asserting Rule 10b-5(b) claims against Mr. Garcia Sr. (*see supra*, Section I), those claims fail for the additional and independent reason that Mr. Garcia Sr. is not alleged to have made any of the challenged statements, and therefore cannot be liable for them. *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011); *see also Borteanu v. Nikola Corp.*, 2023 WL 1472852, at *6 (D. Ariz. Feb. 2, 2023) (dismissing "maker" claims because there were no allegations that defendants had "ultimate authority over the [challenged] statement, including its contents and whether and how to communicate it."). Likewise, Mr. Garcia Sr. cannot be held liable on an omission theory, as there is no duty to correct alleged misrepresentations made by others. *In re CytRx Corp. Sec. Litig.*, 2015 WL 5031232, at *7 (C.D. Cal. July 13, 2015) (collecting cases).

**B.    Plaintiffs Fail to Allege a "Scheme" Claim Against Mr. Garcia Sr.**

Given that Mr. Garcia Sr. did not make any of the challenged statements, plaintiffs attempt to pin liability on him for allegedly participating in a "scheme" to inflate Carvana's stock price. To establish scheme liability, plaintiffs must plead all the elements of a claim under Rule 10b-5(b), except rather than a material misrepresentation or omission, plaintiffs must allege "a deceptive or manipulative act in furtherance of the alleged scheme." *Borteanu*, 2023 WL 1472852, at *22 (internal citation omitted). Such acts must have "the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme." *Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1048 (9th Cir. 2006), *vacated on other grounds*, *Simpson v. Homestore.com, Inc.*, 519 F.3d 1041 (9th Cir. 2008).

In *Stoneridge*, 552 U.S. 148 (2008), the Supreme Court cautioned against attempts to transform aiding and abetting claims—for which there is no private right of action under the

5

federal securities laws—into primary violation claims by invoking "scheme" liability. In that case, a public company and one of its suppliers allegedly engaged in transactions with "no economic substance" where the supplier overpaid for the goods and services delivered by the public company with the understanding that the overpayments would be returned at a later date. *Id.* at 154. This alleged scheme permitted the public company to deceive its auditor into approving financial statements showing artificially inflated revenue. *Id.* However, the supplier "had no role in preparing or disseminating [the public company's] financial statements" and there were no allegations that its own financial statements were inaccurate. *Id.* at 155. Plaintiffs sued the supplier under a scheme liability theory, alleging that its participation in these transactions constituted a primary violation of section 10(b) because the false financial statement released by the public company "was a natural and expected consequence of [the supplier's] deceptive acts[.]" *Id.*

The Supreme Court rejected this theory, finding "no authority" for plaintiffs' proposition that "investors rely not only upon the public statements relating to a security but also upon the transactions those statements reflect." *Id.* The Court refused to expand Rule 10b-5 "beyond the securities markets" to cover "purchase and supply contracts—the realm of ordinary business operations," which is "governed, for the most part, by state law." *Id.* at 160-61. Following *Stoneridge*, courts routinely hold that disclosures regarding a public company's transactional relationship with a secondary party are insufficient to establish reliance on the secondary party's alleged conduct. *See, e.g.*, *In re Peregrine Sys., Inc.*, 310 F. App'x. 149, 150-52 (9th Cir. 2009) (statement regarding agreement between primary and secondary actors to purchase software insufficient to establish reliance on secondary actor's conduct); *Abbate v. Wells Fargo Bank, N.A.*, 2011 WL 9698215, at *4-5 (C.D. Cal. Nov. 17, 2011) (statements regarding role of secondary actors in business transaction not enough to establish reliance) (collecting cases).

Here, the ACC fails to allege specific facts supporting any of the elements of a scheme claim against Mr. Garcia Sr. The ACC does not allege that Mr. Garcia Sr. engaged in a deceptive act that investors relied upon, that he acted with scienter, or that his allegedly deceptive acts caused plaintiffs' losses.

6

**1.      The ACC does not allege a deceptive act by Mr. Garcia Sr. on which investors relied in purchasing or selling securities.**

The ACC alleges a seven-part scheme, but alleges Mr. Garcia Sr.'s participation in just three allegedly deceptive acts in furtherance of that scheme: (1) the transactions between DriveTime and Carvana; (2) the modifications to his Rule 10b5-1 trading plan; and (3) his stock sales during the class period. ¶¶ 125, 127-29, 160-65. *See Borteanu*, 2023 WL 1472852, at \*23 (Rule 9(b) requires plaintiffs to allege "what [deceptive or manipulative] acts were performed, which defendants performed them, when the [deceptive or manipulative] acts were performed and what effect the scheme had on the securities at issue.") (quoting *In re Parmalat Sec. Litig.*, 414 F. Supp. 2d 428, 432 (S.D.N.Y. 2006)).

None of Mr. Garcia Sr.'s allegedly deceptive acts created a false appearance of fact in the market or were relied upon by investors. With respect to the transactions between DriveTime and Carvana, plaintiffs do not allege that the *primary purpose* of those transactions was "to create a false appearance of fact" in the market—as opposed creating additional revenue streams for Carvana. *Borteaunu*, 2023 WL 1472852, at \*23; *see also Simpson*, 452 F.3d at 1050 ("Conduct that is consistent with the defendants' normal course of business" not deceptive). Although the ACC asserts in conclusory fashion that "[t]here was no legitimate business purpose for these sham deals," ¶ 127, it then concedes Carvana derived legitimate benefits from them. *See* ¶¶ 128, 299-300; *see also* ¶ 41 (admitting that Carvana's sales of vehicles purchased from DriveTime "allow[] us to capture additional revenue streams associated with financing, vehicle service contracts ('VSCs') and trade-in vehicles").

Further, the DriveTime-Carvana transactions cannot have been "deceptive" because they were publicly disclosed. "[N]ondisclosure is usually essential to the success of a manipulative scheme." *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477 (1977); *see also ScripsAmerica, Inc. v. Ironridge Glob., LLC*, 2015 WL 12747908, at \*11 (C.D. Cal. Mar. 26, 2015) (finding no manipulative conduct when plaintiff could not "plausibly allege that it was unaware" defendant was engaging in the challenged conduct); *Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 130 (2d Cir. 2011) ("[T]he market is not misled when a transaction's terms

are fully disclosed.").[3] As plaintiffs admit, numerous Carvana public filings during the putative class period disclosed that Carvana entered into transactions with DriveTime that were "not negotiated at arm's length." ¶¶ 128, 299-300. These disclosures included that "Carvana purchases reconditioned vehicles from DriveTime" and that Carvana's "purchase price . . . is the list price on Carvana.com[.]" ¶ 128; *see* ¶ 300 (disclosing amounts paid by Carvana to DriveTime entities); *see also* Carvana Br. at 23.

To the extent plaintiffs' "scheme" claim with respect to the DriveTime-Carvana transactions is based on the contention that Carvana's disclosures were inadequate, that theory of liability with respect to Mr. Garcia Sr. is foreclosed by *Stoneridge*. As noted, plaintiffs do not allege that Mr. Garcia Sr. made any statements regarding the DriveTime-Carvana transactions. Like the issuer in *Stoneridge*, Carvana was "free to do as it chose" in disclosing those transactions. 552 U.S. at 774. "In these circumstances the investors cannot be said to have relied upon" Mr. Garcia Sr.'s allegedly deceptive act of causing DriveTime to enter into the transactions with Carvana, and therefore cannot sustain a cause of action against him for a primary violation of the securities laws. *Id.*

Mr. Garcia Sr.'s modifications to his Rule 10b5-1 trading plan and stock sales during the class period likewise are not deceptive acts on which investors could have relied. Selling or purchasing stock – "even in high volumes – is not, by itself, manipulative." *Alpine 4 Holdings Inc. v. Finn Mgmt. GP LLC*, 2022 WL 3598246, at *4 (D. Ariz. Aug. 23, 2022). "To be actionable," stock transactions "must be willfully combined with something more to create a false impression of how market participants value a security." *Id.* The ACC does not even attempt to explain what false impression Mr. Garcia Sr.'s daily stock sales created in the

---

[3] *See also In re UBS Auction Rate Sec. Litig.*, 2010 WL 2541166, at *18 (S.D.N.Y. June 10, 2010) (no manipulative conduct when defendants disclosed they placed support bids in auctions and had an advantage when doing so); *In re Bank of America Corp.*, 2011 WL 740902, at *7-8 (N.D. Cal. Feb. 24, 2011) (no manipulative conduct when defendant disclosed it was permitted to make certain trades, routinely does so in its sole discretion, and "was likely to have an advantage over other bidders"); *In re Merrill Lynch Action Rate Sec. Litig.*, 704 F.Supp.2d 378, 391-92 (S.D.N.Y. 2010) (no manipulative conduct when defendants disclosed they "could engage in the very conduct of which Plaintiff[s] complain[.]").

market. Indeed, as courts and commentators have observed, "disclosure of [an insider's stock sales] may signal to the markets that the [insider] has *negative* information about the firm's future prospects," causing the stock price to *decrease*. *Stock Unloading and Banker Incentives*, 112 COLUM. L. REV. 951, 958-59 (2012) (emphasis added); *see also SEC v. Honig*, 2023 WL 6386918, at \*29 (S.D.N.Y. Sept. 29, 2023) ("[T]o the reasonable investor," insider's stock sales "could signal declining confidence in the company's future").

Because selling stock is not deceptive, plaintiffs attempt to conflate obtaining a financial *benefit* with committing *a deceptive act* in furtherance of the scheme. But mere benefit is not grounds for liability; plaintiffs must allege that a defendant engaged in a *specific* deceptive or manipulative act. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1017 (9th Cir. 2018) (affirming dismissal where complaint did "not specify what steps, if any, [defendants] took in furtherance of the alleged scheme"); *Borteanu*, 2023 WL 1472852, at \*23 (allegations that defendant "stood to benefit" from alleged scheme insufficient). Because the ACC does not allege specific actionable conduct on the part of Mr. Garcia Sr., the section 10(b) claim against him must be dismissed.

### 2. The ACC does not allege particularized facts giving rise to a strong inference of scienter on the part of Mr. Garcia Sr.

The ACC also fails adequately to allege scienter on the part of Mr. Garcia Sr. Under the PSLRA, plaintiffs must "state with particularity facts giving rise to a strong inference" that each defendant acted with scienter with respect to each challenged act or omission. 15 U.S.C. § 78u-4(b)(2); *see also City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 619 (9th Cir. 2017) (citation omitted). The inference of scienter must be "cogent and compelling, thus strong in light of [competing] explanations." *In re Sorrento Therapeutics, Inc. Sec. Litig.*, 97 F.4th 634, 640 (9th Cir. Mar. 25, 2024) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007)). "[M]erely 'reasonable' or 'permissible' inferences are insufficient." *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 701 (9th Cir. 2021) (quoting *Tellabs*, 551 U.S. at 323-24, 326)). Plaintiffs' allegations against Mr. Garcia Sr. fail to meet this high bar.

9

### a)  The ACC does not allege particularized facts showing that Mr. Garcia Sr. had knowledge of the alleged scheme.

As noted, plaintiffs allege an elaborate scheme "to boost Carvana's retail sales – its most important metric – and thus, its stock price" by engaging in a variety of activities, including engaging in "pass-through" sales with DriveTime; lowering Carvana's purchasing and verification standards; "flout[ing]" state title and registration laws, entering into a "rapid and unsustainable nationwide expansion without regard to profitability," and making "materially misleading statements and omissions" to conceal the scheme. ¶ 125. But the ACC does not allege particularized facts showing that Mr. Garcia Sr. even had knowledge of—much less involvement in—this alleged scheme. Although Mr. Garcia Sr. knew of the transactions between Carvana and DriveTime (which investors also knew of from Carvana's disclosures), plaintiffs do not allege he knew that the purpose of these transactions allegedly was to defraud investors, rather than to create revenue streams for Carvana through financing, vehicle service contracts, and trade-ins. *See* ¶ 41; *see also* Carvana Br. at 23.

As for the other components of the alleged scheme, the ACC does not allege any particularized facts showing that Mr. Garcia Sr. had *any* non-public information regarding these matters. None of the confidential witnesses even mention Mr. Garcia Sr., much less provide particularized facts regarding how and when he allegedly obtained any inside information. *See Ferraro Fam. Found., Inc. v. Corcept Therapeutics Inc.*, 501 F. Supp. 3d 735, 765-66 (N.D. Cal. 2020) (no scienter where "none of the CWs allege that the [defendants] knew about the alleged off-label marketing scheme," did not "communicate[] with" the defendants, and had no "personal knowledge of the [defendants'] state of mind") (collecting cases).

Plaintiffs' allegations that Mr. Garcia Sr. was Carvana's majority shareholder, that he lives next door to his son, and had previous business dealings with two Carvana directors also do not suffice to allege Mr. Garcia Sr.'s knowledge. To establish a "strong inference" of scienter, plaintiffs must allege more than the defendant "had an important role" in the company; they must provide "detailed allegations about the defendants' *actual exposure* to information." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784-5 (9th Cir. 2008) (emphasis added). Even

10

"general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the [alleged scheme]." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008) (collecting cases and affirming dismissal).

Rather than provide any particularized allegations as to specific information that was provided to Mr. Garcia Sr., how it was provided, and when, plaintiffs offer only unsupported conclusory assertions. *See, e.g.*, ¶ 160 ("Garcia Senior . . . controlled Carvana" and "was participating in and aware of the fraudulent scheme"); ¶ 296 ("Garcia Senior undoubtedly worked behind the scenes and controlled Carvana and its operations"). These allegations fall far short of plaintiffs' statutory burden. *See Dearborn Heights*, 856 F.3d at 620 (even "actual access to the disputed information" is insufficient without particularized facts to "establish that [defendants] had direct knowledge of [the alleged scheme]"); *Zucco Partners, LLC v. Digimarc Corp*, 552 F.3d 981, 1000-01 (9th Cir. 2009) (allegations that defendants "had access" to purportedly manipulated data and "analyzed [it] closely" insufficient to show defendants were "in a position to know that such data was being manipulated"); *Sneed v. AcelRx Pharms., Inc.*, 2023 WL 4412164, at *11 (N.D. Cal. July 7, 2023) (allegations that defendants were aware of allegedly misleading promotional materials and their use at conferences insufficient to show "that Defendants intended to deceive investors").

**b)     Plaintiffs' "motive and opportunity" allegations are insufficient to allege a strong inference of scienter.**

Unable to allege particularized facts showing that Mr. Garcia Sr. had knowledge of the alleged wrongdoing, plaintiffs instead rely on conclusory claims that Mr. Garcia Sr. had the "motive and opportunity" to commit securities fraud. *See* ¶¶ 261-67. However, the Ninth Circuit has held that motive and opportunity alone is insufficient to allege scienter under the PSLRA. *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021) ("[A] complaint cannot rely on 'mere motive and opportunity or recklessness, but rather, must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent.'") (citation omitted).

Even if considered, Plaintiffs' motive and opportunity allegations are deficient. Plaintiffs focus primarily on Mr. Garcia Sr.'s stock sales. ¶¶ 262-67, 304-05. Stock sales, standing alone, however, do not give rise to the requisite strong inference of scienter. *Borteanu*, 2023 WL 1472852, at *30 (allegations that defendants "'stood to gain millions, if not billions' from misrepresenting the company, given their ownership of significant amounts of [company] stock" insufficient); *In re Peregrine Sys., Inc. Sec. Litig.*, 2005 WL 8158825, at *62 (S.D. Cal. Mar. 30, 2005) ("[t]he mere fact that insider stock sales occurred does not suffice to establish scienter") (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1224 (1st Cir. 1996)).

Instead, "[s]tock sales by corporate insiders [are] suspicious only when [they are] dramatically out of line with prior trading practices at time calculated to maximize the personal benefit from undisclosed inside information." *Ryan v. FIGS, Inc.*, 2024 WL 187001, at *10 (C.D. Cal. Jan. 17, 2024) (quoting *Dearborn Heights*, 856 F.3d at 621) (cleaned up). Here, Mr. Garcia Sr. is *not* a corporate insider, and his stock transactions are not suspicious. First, plaintiffs do not plausibly allege that Mr. Garcia Sr.'s stock sales were out of line with his prior trading. Indeed, the ACC alleges that he sold 13.95 million sales during the nearly three-year class period, whereas he allegedly sold 10.9 million shares "that he owned indirectly through DriveTime" in the three years leading up to the class period.[4] ¶¶ 263-64. This is not nearly the type of "dramatic[]" shift in sales that is required to establish scienter. *See In re Herbalife, Ltd. Sec. Litig.*, 2015 WL 12734014, at *4 (C.D. Cal. July 28, 2015) (2:1 ratio of pre-class period sales to class period sales not suspicious); *Kovtun v. VIVUS, Inc.*, 2012 WL 4477647, at *21 (N.D. Cal. Sept. 27, 2012) (2.5x increase from pre-class period sales to class period sales not suspicious), *aff'd sub. nom. Ingram v. VIVUS, Inc.*, 591 F. App'x. 592 (9th Cir. 2015).

---

[4] In the ACC, Plaintiffs attempt to distinguish between the shares Mr. Garcia Senior sold indirectly through DriveTime and those sold by him directly. *See, e.g.*, ¶ 264 ("Garcia Senior did not sell a single share of his ***Carvana personal holdings***. Rather, he sold fewer than 10.9 million shares of Carvana stock that he ***owned indirectly through DriveTime***[.]") (emphasis modified). However, a court may consider indirect stock sales in its consideration of scienter. *See In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 276 (S.D.N.Y. 2008) (considering defendant's indirect sales through separate entity even when complaint was "devoid of allegations explaining [the defendant's] relationship to [the entity]").

12

Plaintiffs allege that these sales also are suspicious because they amounted to "15% of his substantial shareholdings." ¶ 263. However, the Ninth Circuit requires a "more eye-popping percentage." *In re Alteryx, Inc. Secs. Litig.*, 2021 WL 4551201, at *4 (C.D. Cal. June 17, 2021) (collecting cases). Courts in the Ninth Circuit have routinely refused to infer scienter when defendants have sold similarly small percentages of their stock during the class period. *See, e.g.*, *In re AnaptysBio, Inc.*, 2021 WL 4267413, at *9 (S.D. Cal. Sept. 20, 2021) (no scienter when defendant sold 20 percent of stock); *Metzler*, 540 F.3d at 1067 (no scienter when defendant sold 37 percent of stock); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1093 (9th Cir. 2002) (no scienter when defendant sold 74 percent of stock). Indeed, Mr. Garcia Sr.'s sale of 15% of his holdings is particularly weak evidence of scienter here, given the massive stake he retained in Carvana through the end of the putative class period.

Moreover, this 15% metric is misleading as it fails to take into account the 7.1 million shares that Mr. Garcia Sr. purchased during the class period. ¶ 266 n.157. Once those purchases are considered, his sales during the class period account for only 7% of his holdings. Plaintiffs attempt to obfuscate this fact by misleadingly alleging that Mr. Garcia Sr. made 96% of his class period stock sales prior to the first corrective disclosure. ¶ 263. As plaintiffs themselves note, these stock sales were spread out across nearly a year, with steady trading (averaging 40,000 to 60,000 shares) each day. *Id.* Further, more than half of these trades occurred between October 2020 and March 2021, five months prior to the first alleged corrective disclosure in August 2021. *See* ACC, App'x A; *see also* ¶ 311. This timing is inconsistent with the notion that "the defendants meant to realize profits immediately prior to an expected and dramatic fall in the stock's price." *See Nursing Home Pension Fund. v. Oracle Corp.*, 242 F. Supp. 2d 671, 685 (N.D. Cal. 2002) (no scienter when sales at issue occurred two months prior to the alleged corrective disclosure).

Mr. Garcia Sr.'s class period sales were also not suspiciously timed. As plaintiffs note, Mr. Garcia Sr. "sold every single trading day" for nearly a year. ¶ 263. Many of these sales occurred when Carvana's share price was under $200 and most occurred when Carvana's share price was under $300—far before its peak of $376 in August 2021. *See* ACC, App'x. A. This

13

does not compel any inference of scienter. *Vantive*, 283 F.3d at 1093-94 (finding no scienter where defendant sold 74% of his stock holdings because most of his sales occurred in the first month of the class period, and the stock price continued to increase for several months thereafter); *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001), *abrogated on other grounds*, Tellabs, 551 U.S. at 315-18 ("[S]elling stock for $54, when the price subsequently rises to $74 and then sinks to $49, does not support an inference of knowing falsehood" because "[t]hey sold about what the stock was worth after bad news was public[.]"). Further negating any inference of scienter is that Mr. Garcia Sr. continued to sell stock each day no matter what was occurring at Carvana on that given day. This level of consistency does not support the theory that Mr. Garcia Sr. was strategically timing his trades based upon inside information. Lastly, Mr. Garcia Sr. continued purchasing Carvana stock throughout the class period, which "'giv[es] rise to an inference of good faith,' not scienter." *Zamir v. Bridgepoint Educ., Inc.*, 2016 WL 3971400, at *10 (S.D. Cal. July 25, 2016) (quoting *Zack v. Allied Waste Indus., Inc.*, 2005 WL 3501414, at *14 (D. Ariz. Dec. 15, 2005)); *see also In re Aspeon, Inc. Secs. Litig.*, 168 F. App'x. 836, 840 (9th Cir. 2006) ("[A] stock purchase may indicate that the corporate insider knew or believed that the issued statements were accurate.").

The inference of scienter is further dissipated by the fact that nearly all of Mr. Garcia Sr.'s stock sales during the class period were made pursuant to a 10b5-1 trading plan. *See City of Pontiac Gen. Employees Ret. Sys. v. First Solar Inc.*, 2023 WL 155861, at *9 (D. Ariz. Jan. 11, 2023) (Rule 10b5-1 plans "mitigate any inference of improper motive surrounding [stock] sales" even when "initiated during a class period"). Plaintiffs attack Garcia Sr.'s Rule 10b5-1 trading plan because it was modified, but the ACC lacks any particularized facts showing that a desire to exploit material non-public information was the impetus for the modifications. *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 585 (S.D.N.Y. 2014) (no scienter when plaintiff "pleads no facts that even remotely suggest that [defendant] entered into the Plan 'strategically' so as to capitalize on insider knowledge") *aff'd*, 604 F. App'x 62 (2d Cir. 2015); *see Meyer v. Organogenesis Holdings, Inc.*, 2024 WL 1346432, at *16 (E.D.N.Y. Mar. 29, 2024) (scienter allegations inadequate where plaintiff failed to allege that the defendant's 10b5-1 plan, which

14

was entered into during class period, was enacted for fraudulent purpose).

Plaintiffs' remaining attempts to allege Mr. Garcia Sr.'s scienter likewise fail. Mr. Garcia Sr.'s management of a prior company, Ugly Duckling, does not support scienter. That Ugly Duckling's stock price decreased "from $25.00 per share" to "$2.50 per share" over "a few years" in no way suggests that fraud caused this decline. Moreover, this allegation falls far short of "a regular pattern of related and repeated conduct" that could be indicative of scienter. *Strasburger v. Blackburne & Sons Realty Cap. Corp.*, 2020 WL 6128223, at *6 (C.D. Cal. June 25, 2020) (citation omitted). Mr. Garcia Sr.'s guilty plea 34 years ago also provides no support for plaintiffs' scienter allegations. "[T]he mention of [a] previous conviction does not raise an 'inference of scienter [that is] cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Avant-Garde, LLC v. Mountain Spa Properties, LLC*, 2010 WL 4537057, at *6 (D. Ariz. Nov. 3, 2010) (quoting *Tellabs*, 551 U.S. at 324).

### 3.   Plaintiffs Do Not Allege Loss Causation as to Mr. Garcia Sr.

The section 10(b) claim against Mr. Garcia Sr. should be dismissed for the additional reason that plaintiffs' allegations fail to establish loss causation, which requires showing that the defendants' conduct "artificially inflated the price of stock and that, once the market learned of the deception, the value of the stock declined." *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 407 (9th Cir. 2021) (citation omitted).

Plaintiffs do not plausibly link Mr. Garcia Sr.'s allegedly deceptive conduct to any inflation in Carvana's stock price. The transactions between Carvana and DriveTime cannot have artificially inflated Carvana's stock price because they were disclosed. *Supra* Section II.B.2.a. Mr. Garcia Sr.'s stock sales likewise were disclosed (*see* Ex. 1 (compilation of Form 4 filings on behalf of Mr. Garcia Sr.)) and, as explained, selling stock is more likely to *decrease* a company's stock price rather than inflate it. *See supra*, Section II.B.1.

Plaintiffs also do not allege that Carvana's stock price declined when the alleged truth was revealed. None of the alleged "corrective" disclosures discussed the DriveTime transactions, Mr. Garcia Sr.'s stock trades, the modification of his Rule 10b5-1 plan, or any other conduct attributed to Mr. Garcia Sr. *See* ¶¶ 307-28. Corrective disclosures must "relate

15

back to the [deceptive conduct] and not to some other negative information about the company." *Grigsby v. BofI Holding, Inc.*, 979 F.3d 1198, 1207-08 (9th Cir. 2020). Therefore, plaintiffs have failed to make "any plausible allegation" that Mr. Garcia Sr.'s conduct caused "a decline in the value of [Carvana's] stock, much less any actual economic loss." *Alpine 4 Holdings*, 2022 WL 3598246, at \*4; *see also Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 947 (D. Ariz. 2007) (no loss causation where "corrective" disclosure "says nothing about" the allegedly deceptive conduct); *see also* Carvana Br. at 28-31.

### C.      Plaintiffs Cannot Impose Vicarious Liability Under Section 20(a).

To allege a violation of section 20(a), plaintiffs must establish "(1) a primary violation of federal securities laws," and "(2) that the defendant exercised actual power or control over the primary violator." *Webb v. Solarcity Corp.*, 884 F.3d 844, 858 (9th Cir. 2018); 15 U.S.C. § 78t(a). As set forth herein and in the Carvana Defendants' motion to dismiss, plaintiffs have failed to allege a predicate section 10(b) violation, precluding a section 20(a) claim. *See Or. Pub. Emps. Ret. Fund*, 774 F.3d 598, 610 (9th Cir. 2014); Carvana Br. at 12-42.

Further, plaintiffs fail to allege that Mr. Garcia Sr. is a "control person" who "has power to direct or cause the direction of management, as when day to day oversight of company operations is combined with involvement in the production of financial statements." *Huberman v. Tag-It Pac., Inc.*, 314 F. App'x. 59, 62 (9th Cir. 2009); *see also Peregrine*, 2005 WL 8158825, at \*74 (control person liability requires "particularized allegations" defendant was "active in day-to-day affairs" of company). Here, plaintiffs allege that Mr. Garcia Sr. was a "controlling shareholder," but that does not suffice to show that he controlled Carvana's operations or disclosures. *See Welgus v. TriNet Grp., Inc.*, 2017 WL 167708, at \*13 (N.D. Cal. Jan. 17, 2017) (rejecting section 20(a) claim against controlling shareholder who had "control" over two board members because "there [were] neither factual allegations regarding [the defendant's] authority to exercise decision-making power, nor allegations of its day-to-day involvement in the operation of the Company").

Likewise, plaintiffs' vague allegations that Mr. Garcia Sr. "maintains a close relationship with his son" and that he has business ties to two of Carvana's board members,

¶¶ 26, 37 & n.8, are not specific "factual allegations respecting [Mr. Garcia Sr.'s] power to exercise decision-making power[.]" *Bao v. SolarCity Corp.*, 2015 WL 1906105, at \*5 (N.D. Cal. Apr. 27, 2015) (allegations that defendant was "Chairman of the Board of Directors, own[ed] roughly 30% of [company's] outstanding shares, is related to [the company's] officers, and signed certain of [company's] financial statements" insufficient to allege control).

### D.     The Section 20A Claims Should Be Dismissed.

Because plaintiffs fail to assert a predicate section 10(b) claim, their section 20A fails as well. *Teamsters Local 617 Pension & Funds v. Apollo Grp., Inc.*, 633 F. Supp. 2d 763, 825 (D. Ariz. 2009) *vacated in part on other grounds*, 690 F. Supp. 2d 959 (D. Ariz. 2010) (a section 20A claim requires "a predicate violation of the securities laws").

Separately, Section 20A provides a private right of action against "[a]ny person who violates any provision of" the Exchange Act by "purchasing or selling a security while in possession of material, nonpublic information[.]" 15 U.S.C. § 78t-1. The ACC contains zero non-conclusory allegations that Mr. Garcia Sr. possessed material non-public information. *See supra,* Section II.B.2.a. Again, plaintiffs concede that Mr. Garcia Sr. has never been an officer, director, or employee of Carvana; he is not alleged to have attended any particular Board, executive, or management meeting; he is not alleged to have received any particular internal reports; and he is not alleged to have obtained any specific information from any specific person by any other specific means during the putative class period. *Shurkin v. Golden State Vintners, Inc.*, 471 F. Supp. 2d 998, 1025-26 (N.D. Cal. 2006) (dismissing 20A claim where plaintiff did not allege what material nonpublic information defendant had or when it was received).

### CONCLUSION

After nearly 600 pages of allegations spanning two complaints, plaintiffs still cannot plausibly allege basic elements of their claims against Mr. Garcia Sr. Because plaintiffs are "unable to correct the deficiencies" in their complaint and have provided no reason for this Court to believe they "would be able to remedy these material defects if . . . given yet another opportunity to do so," dismissal should be with prejudice. *In re Downey Sec. Litig.*, 2009 WL 2767670, at \*16 (C.D. Cal. Aug. 21, 2009).

Dated: May 24, 2024

**Of Counsel**
Melanie Walker. (*pro hac vice*)
melanie.walker@us.dlapiper.com
2000 Avenue of the Stars #400
Los Angeles, California 90067
310.595.3000

Yan Grinblat (*pro hac vice*)
yan.grinblat@us.dlapiper.com
444 West Lake Street, Suite 900
Chicago, Illinois 60606
312.368.4000

**DLA PIPER LLP (US)**

By: *s/ Madeline A. Cordray*
    Madeline A. Cordray
    madeline.cordray@us.dlapiper.com
    2525 East Camelback Road, Suite 1000
    Phoenix, Arizona 85016
    480.606.5100

*Attorneys for Defendant*
*Ernest Garcia II*

18

## **<u>CERTIFICATE OF CONFERRAL</u>**

Pursuant to LRCiv 12.1(c), I certify that on May 24, 2024, counsel for Mr. Garcia Sr. notified plaintiffs' counsel via conference call of the issues asserted in Mr. Garcia Sr.'s motion to dismiss. Counsel for plaintiffs indicated that plaintiffs will oppose the motion.

*s/ Madeline A. Cordray*

19

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 24, 2024 I electronically filed the foregoing document using the ECF System for the United States District Court for the District of Arizona. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record registered on the ECF system.

*s/ Madeline A. Cordray*