FENNEMORE CRAIG, P.C.
Douglas C. Northup (No. 013987)
Andrea L. Marconi (No. 022577)
2394 E. Camelback Road
Suite 600
Phoenix, Arizona 85016
Telephone: (602) 916-5000
Email: dnorthup@fennemorelaw.com
Email: amarconi@fennemorelaw.com

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Susanna M. Buergel (*pro hac vice*)
David P. Friedman (*pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Email: sbuergel@paulweiss.com
Email: dfriedman@paulweiss.com

*Counsel for Defendants Citigroup Global Markets Inc. and J.P. Morgan Securities LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re Carvana Co. Securities Litigation, | No. CV-22-2126-PHX-MTL |
| | **JOINDER OF UNDERWRITER DEFENDANTS IN THE CARVANA DEFENDANTS' MOTION TO DISMISS LEAD PLAINTIFFS' AMENDED CONSOLIDATED COMPLAINT** |
| | **(Oral Argument Requested)** |
| This Document Relates to: ALL ACTIONS. | |

Pursuant to Rules 9(b) and 12(g) of the Federal Rules of Civil Procedure, Defendants Citigroup Global Markets Inc. ("Citigroup") and J.P. Morgan Securities LLC ("J.P. Morgan," and, collectively, "Underwriter Defendants") respectfully join in the Motion to Dismiss Lead Plaintiffs' Amended Consolidated Complaint and Memorandum

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX

of Points and Authorities filed by Defendants Carvana Co. ("Carvana"), Ernest Garcia III ("Garcia Junior"), Mark Jenkins, Stephen Palmer, Michael Maroone, Neha Parikh, Ira Platt, and Greg Sullivan (collectively, "Carvana Defendants") with respect to the claims asserted against the Underwriter Defendants in the Amended Consolidated Complaint ("Amended Complaint"), including all arguments set forth in the Carvana Defendants' Motion as to such claims. The Underwriter Defendants submit this joinder to further explain how certain arguments for dismissal apply to the claims against them, and respectfully request that the Court dismiss the claims against the Underwriter Defendants with prejudice.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. BACKGROUND

The Underwriter Defendants are financial institutions that contracted with Carvana to sell Carvana shares to investors in connection with a secondary offering in April 2022 (the "Offering"). Am. Compl. ¶ 371. Only 28 of the Complaint's 448 paragraphs mention the Underwriter Defendants. *Id.* ¶¶ 22–23, 366, 371–72, 400–20, 433, 440. In terms of *factual* allegations, Plaintiffs describe in generalities the Underwriter Defendants' role as underwriters of the Offering. *See id.* ¶¶ 402–09, 420. Plaintiffs further describe a separate Carvana debt offering on which affiliates of the Underwriter Defendants (but not the Underwriter Defendants themselves) allegedly worked. *Id.* ¶¶ 410–13. The Amended Complaint alleges that Plaintiffs purchased Carvana Class A common stock in the Offering from Citigroup. *Id.* ¶¶ 22–23, 366, 433. There are no allegations that J.P. Morgan sold Carvana shares to Plaintiffs in the Offering or was involved in soliciting Plaintiffs' alleged purchases of shares in the Offering.

### II. ARGUMENT

The Underwriter Defendants join in and incorporate by reference the arguments and authorities set forth in the Carvana Defendants' Motion with respect to the claims against the Underwriter Defendants, which are asserted under Sections 11 and 12(a)(2) of the Securities Act of 1933. *First*, the Section 11 and 12(a)(2) claims fail because Plaintiffs do

not plausibly allege facts to establish that any of the challenged statements or alleged omissions were false, misleading, or material. *See* Carvana Mot. to Dismiss at 42–44. Furthermore, the Amended Complaint itself establishes negative causation for the three alleged misstatements, thereby providing another independent basis for dismissal. *See* Carvana Mot. to Dismiss at 44–45. *Second*, the Section 12(a)(2) claim against at least J.P. Morgan fails for the independent reason that Plaintiffs do not allege facts to plead that J.P. Morgan was a statutory seller.[1]

### A.   Plaintiffs Fail to Plead Violations of Sections 11 and 12(a)(2)

Section 11 of the Securities Act creates liability for material misstatements or omissions in a registration statement. *See* 15 U.S.C. § 77k(a). Section 12(a)(2) creates liability only for statutory "sellers" in a securities offering for material misstatements or omissions in a prospectus. *See id.* § 77l(a). Plaintiffs allege the same statements were misleading in support of both their Section 11 and Section 12(a)(2) claims. To successfully plead a Section 11 claim, a plaintiff must allege "(1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment." *In re White Elec. Designs Corp. Sec. Litig.*, 416 F. Supp. 2d 754, 764 (D. Ariz. 2006) (quotation marks omitted). The same standard applies to Section 12(a)(2) claims. *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *5 (N.D. Cal. July 21, 2020); *see also In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1072–73 (N.D. Cal. 2010) (dismissing plaintiffs' Section 12(a)(2) claim because their Section 11 claim had been dismissed for failure to adequately allege the existence of any material misstatements or omissions). Plaintiffs fail to plausibly allege either a Section 11 or 12(a)(2) claim.

#### 1.   Plaintiffs' Securities Act Allegations Must Meet Rule 9(b)'s Pleading Standard

As an initial matter, Plaintiffs' Securities Act claims are subject to Rule 9(b)'s

---

[1] As set forth in the Carvana Defendants' Motion to Dismiss, the Amended Complaint should be dismissed for the threshold reason that it continues to violate Rule 8 and the PSLRA's pleading requirements. Carvana Mot. to Dismiss at 10–12; *see also* Order at 14, 17–18, ECF No. 70.

heightened pleading standard. Securities Act claims must be pled with the particularity required by Rule 9(b) if the claims "sound[] in fraud." *Rubke* v. *Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009). Where plaintiffs' "'[Securities Act] claim merely relies on the same alleged misrepresentations that are central to [p]laintiffs' Section 10(b) fraud claim, [p]laintiffs' [Securities Act] claim is grounded in fraud and must meet Rule 9(b)'s pleading requirements.'" *Alich* v. *Opendoor Techs. Inc.*, 2024 WL 839146, at *16 (D. Ariz. Feb. 28, 2024) (cleaned up) (quoting *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 885–86 (9th Cir. 2012)). Such is the case here, as Plaintiffs' Securities Act allegations are premised on the same subjects and theories of falsity as the corresponding portions of their Exchange Act allegations. *Compare* Am. Compl. ¶ 209 (alleged misstatement No. 18 regarding "vehicle acquisition"), *with* Am. Compl. ¶ 381 (alleged misstatement A regarding "vehicle acquisition"); *compare* Am. Compl. ¶ 214 (alleged misstatement No. 20 regarding retail units sold), *with* Am. Compl. ¶ 383 (alleged misstatement B regarding retail units sold); *compare* Am. Compl. ¶ 184 (alleged misstatement No. 6 regarding risk disclosures), *with* Am. Compl. ¶ 385 (alleged misstatement C regarding risk disclosures). In an attempt to avoid Rule 9(b)'s pleading standards, Plaintiffs state that they "expressly disclaim any allegations of knowing or reckless misconduct or fraud." *Id.* ¶ 365. However, such a disclaimer "does not, on its own, evade Rule 9(b)." *Alich*, 2024 WL 839146, at *16. "Instead, Plaintiffs' reliance on the same false or misleading statements alleged in its Section 10(b) claim controls the outcome." *Id.*

### 2. Plaintiffs Fail to Allege Any Material Misrepresentations or Omissions

Plaintiffs' allegations cannot support a Securities Act claim regardless of which pleading standard applies. Plaintiffs challenge three statements made in the Offering Documents tied to Carvana's vehicle acquisitions, sales, and risks surrounding regulatory compliance. *See* Am. Compl. ¶¶ 381, 383, 385 (Statements A–C). Further, Plaintiffs allege Carvana's Registration Statement violated Item 105 of Regulation S-K because its risk disclosures—Statement C—were purportedly deficient and inaccurate. *Id.* ¶¶ 387–91.

1        Plaintiffs do not allege that any of the three challenged statements were false. Rather, they allege that all three statements contained material omissions that rendered them misleading. However, none of the alleged omissions are actionable.

Statement A relates to the bases on which Carvana "determine[s] an appropriate offer" for a car. Am. Compl. ¶ 381. Plaintiffs allege that the statement omits certain alleged facts, including that Carvana was "intentionally buying lower quality cars," that "Carvana sold cars at wholesale at significantly lower prices than those sold at retail," that Carvana "excluded certain per-vehicle operations expenses from its calculation of wholesale GPU," that Carvana's "'intentionally buying lower quality cars' also led to significant logistics constraints," and that "Carvana lacked critical infrastructure necessary to process the huge surplus of wholesale vehicles." *See* Am Compl. ¶ 382. None of the alleged omissions relate to Statement A because the statement concerns the bases on which Carvana determines *how much* to pay for a car, not *whether to buy* a car or the effect of buying a car on Carvana's sales, profits, or operations. *See also* Carvana Mot. to Dismiss at 19. And none of the alleged omissions correct or contradict Statement A's assertions that Carvana (i) used proprietary algorithms to assess vehicles on certain bases in support of identifying in-demand and profitable vehicles for acquisition, and (ii) used those assessments to determine its offer price. These alleged omissions thus do not render Statement A actionable. *See Ng* v. *Berkeley Lights, Inc.*, 2024 WL 695699, at *8 (N.D. Cal. Feb. 20, 2024) (dismissing omission claim that "fails to adequately allege a link between any of Defendants' specific representations and Plaintiffs' generalized allegations . . . so as to plausibly plead that omitting information regarding these topics affirmatively led Plaintiffs in a wrong direction" (alterations and quotation marks omitted)).

Statement B relates to Carvana's increase in retail units sold from December 2020 to December 2021. Am. Compl. ¶ 383. Plaintiffs again do not allege that the statement was false, but rather allege that the statement was misleading because Carvana failed to disclose that its growth was primarily fueled by: "(i) sales to customers awaiting proper title and registration process, (ii) 'less profitable sales' in 'markets with lower profitability

due to long distance from inventory,' (iii) trade-in sales resulting from Carvana's lowered purchasing and verification standards, (iv) sales, pursuant to a pass-through sales agreement with Garcia Senior's DriveTime that lacked economic substance for Carvana, and (v) 'sales that were less profitable in the immediate period.'" Am. Compl. ¶ 384(a). None of the alleged omissions are actionable. The alleged title and registration omissions are not actionable because Plaintiffs fail to allege how any alleged title and registration issues cited in the Amended Complaint affected retail sales or how any effect on retail sales due to the alleged title and registration issues was material. The alleged omissions related to *profit*, a metric separate and distinct from *sales*, do not render Statement A misleading. The alleged omissions related to so-called "lowered purchasing and verification standards" were not omissions at all, but rather part of Carvana's disclosed business strategy. *See* Carvana Mot. to Dismiss at 5. And Plaintiffs' allegations concerning the purported impact of a "sham passthrough arrangement[s] with DriveTime" on Carvana's retail unit sales, *see* Am. Compl. ¶ 383(a)(v), are wholly conclusory and therefore cannot support a claim. *See* Carvana Mot. to Dismiss at 22–23.

Statement C is Carvana's risk disclosure from its 2021 10-K stating that it was subject to state and local title and registration laws and that its failure to comply with such laws could lead to regulatory penalties and reputational damage which could have a material adverse effect on Carvana. Am. Compl. ¶ 385. Plaintiffs allege that this disclosure failed to disclose that the risk of regulatory action "had already come to fruition" through certain investigations and minor penalties. *Id.* ¶ 386(a). Plaintiffs also argue that such alleged omissions are actionable under Item 105. *Id.* ¶¶ 387–91. But Statement C nowhere suggested that Carvana had *never* been the subject of any regulatory inquiry or action related to the "wide range of federal, state and local laws and regulations" that Carvana disclosed it was subject to. *See* Carvana Mot. to Dismiss at 13–14. And Plaintiffs fail to allege that any of the allegedly omitted regulatory developments were material at the time of the April 2022 Offering. *See Banerjee* v. *Zhangmen Educ. Inc.*, 2023 WL 2711279, at *11 (S.D.N.Y. Mar. 30, 2023) (omission immaterial as a matter of law where regulatory

fine was "negligible" compared to company value); *see* Carvana Mot. to Dismiss at 15. Nor do claims by Plaintiffs' low-level CWs alleging that Carvana was experiencing delays with title and registration render Statement C misleading. Am. Compl. ¶ 386(b). Plaintiffs allege no facts to show that these delays were unlawful or that the delays had a "material adverse effect" on Carvana's business—which is what Carvana warned investors about in Statement C. While Plaintiffs also allege it was misleading to omit that "Carvana was already experiencing damage to its reputation," Am. Compl. ¶ 389, they fail to allege any facts suggesting that the alleged reputational damage was material to Carvana's financials.[2] *Bajjuri* v. *Raytheon Techs. Corp.*, 2023 WL 3650554, at *7 (D. Ariz. May 25, 2023) (conclusory statements and unwarranted inferences insufficient to plead materiality). Indeed, an Arizona state court has already found that a different plaintiff with near-exact alleged omissions regarding Carvana's title and registration challenges failed to allege any omissions of material fact because plaintiff failed to quantify the extent of the title processing delays. Order at 22, *City of Warwick Ret. Sys.* v. *Carvana Co.*, CV 2022-013054 (Sup. Ct. Ariz, Maricopa Cnty. Oct. 26, 2023) (filed as Exhibit A to Defendants' Notice of Supplemental Authority in Support of Defendants' Motion to Dismiss (Oct. 31, 2023), ECF. No. 63.).

Plaintiffs' failure to adequately allege material omissions not only squarely forecloses liability under Sections 11 and 12(a)(2), it also forecloses liability under Item 105, which requires disclosure only of "the material factors that make an investment in the registrant or offering speculative or risky." 17 C.F.R. § 229.105; *Reckstin Family Trust* v. *C3.ai, Inc.*, 2024 WL 734497, at *13 (N.D. Cal. Feb. 22, 2024). The very risk disclosures Plaintiffs challenge themselves explained that Carvana was subject to a "wide range of evolving federal, state, and local laws and regulations," including specifically "state and

---

[2] Plaintiffs allege that Carvana admitted in a October 2022 court filing challenging a Michigan suspension order that damage to Carvana's reputation from the suspension order was "incalculable and irreparable." Am Compl. ¶ 386(c). But the reference to "incalculable and irreparable" harm refers to the inability to quantify the harm and says nothing about whether the harm was material to Carvana. Carvana Defs' Reply ISO Mot. to Dismiss, ECF No. 58, at 8.

local licensing requirements, state laws, regulations, and systems and process requirements related to title and registration." Am. Compl. ¶ 385. Carvana warned that these laws and regulations subjected it to certain risks detailed in the disclosure. *Id*. No more was required under Item 105. *See In re Playtika Holding Corp. Sec. Litig.*, 2024 WL 1174329, at *8 (E.D.N.Y. Mar. 18, 2024) ("Item 105 did not require defendants to disclose those risks at a more granular level because . . . [defendants'] disclosures were broad enough to cover those specific risks." (alterations and quotation marks omitted)). And while Plaintiffs emphasize small fines and temporary suspensions Carvana incurred in a few locations in the years prior to the Offering, they nowhere explain how those minor infractions rendered an investment in Carvana "speculative or risky." *See* Carvana Mot. to Dismiss at 44.

### 3. Plaintiffs' Amended Complaint Pleads Negative Causation

Plaintiffs' Securities Act claims are not actionable for the independent reason that negative causation is apparent from the Amended Complaint. "Although loss causation is not an element of a Section 11 cause of action, defendants are nevertheless afforded an affirmative defense to avoid liability if they can show that, on the face of the complaint, the absence of loss causation is apparent." *Brown* v. *Ambow Educ. Holding Ltd.*, 2014 WL 523166, at *14 (C.D. Cal. Feb. 6, 2014). That is the case here. Plaintiffs' "Loss Causation" Section contains alleged corrective disclosures related to alleged title and registration issues; alleged disappointing 2022 results, including declines in 2022 retail sales from 2021; and employee layoffs, *see* Am. Compl. ¶¶ 307–28, but none of these alleged corrective disclosures reveal anything about Carvana's statements regarding its method for determining the price to pay for cars or Carvana's 2021 retail unit sales. As such, negative causation as to Statements A and B is apparent on the face of the complaint. *In re Shoretel Inc., Sec. Litig*, 2009 WL 248326, at *5–6 (N.D. Cal. Feb. 2, 2009) (plaintiffs' alleged loss causation revealed nothing about the alleged misstatement, thereby establishing negative causation on the face of the complaint); *Brown*, 2014 WL 523166, at *15 (same). And as to Statement C, the two post-April 2022 disclosures relating to title and registration inquiries, Am. Compl ¶¶ 320, 322, did not disclose any new facts that *corrected* Statement

1   C, which itself warned of future potential risks relating to the wide range of title and
2   registration laws to which Carvana was subject. *See* Carvana Mot. to Dismiss at 29–30.
3         For these reasons and those set forth in the Carvana Defendants' Motion, the Section
4   11 and Section 12(a)(2) claims against the Underwriter Defendants should be dismissed.

**B. The Section 12(a)(2) Claim Against J.P. Morgan Also Fails Because Plaintiffs Do Not Allege J.P. Morgan Was a Statutory Seller**

To state a claim under Section 12(a)(2), Plaintiffs must allege that a Defendant either (i) directly passed title or interest in the security to Plaintiffs or (ii) solicited the sale of the security to Plaintiffs. *See Pinter* v. *Dahl*, 486 U.S. 622, 642–43 (1988). Here, Plaintiffs do not—and cannot—allege that J.P. Morgan directly passed title in Carvana stock to Plaintiffs in the Offering. *See* Am. Compl. ¶¶ 22–23, 366, 433.

Nor do Plaintiffs allege that J.P. Morgan solicited the sale of such stock to Plaintiffs. The Supreme Court has held that "participation" in a stock offering does not suffice to state a Section 12 claim. *Pinter*, 486 U.S. at 650, 651 n.27; *see* 15 U.S.C. § 77l(a)(2) (limiting 12(a)(2) liability to claims brought by a "person [who] purchas[ed] such security *from him*" (emphasis added)). But that is all that the Amended Complaint alleges as to J.P. Morgan. The Amended Complaint asserts only that the "Underwriter Defendants," as a group, "marketed Carvana common stock to potential investors," "caused the Offering Documents to be filed with the SEC and to be declared effective," "promoted and sold, for the benefit of themselves and their associates, Carvana common stock," and "participated in the preparation and dissemination of . . . Offering Documents." Am. Compl. ¶¶ 406, 420, 439–40.[3] These generic allegations describe an underwriter's role in any public securities offering; allegations that underwriters "merely did their job and rendered professional services to [the issuer] in connection with a transaction for securities do not amount to allegations that the underwriters are 'sellers' under § 12(a)(2)." *Welgus* v. *TriNet Grp.,*

---

[3] Plaintiffs also assert that the Underwriter Defendants entered into a standard indemnification agreement with the issuer and that affiliates of the Underwriter Defendants acted as financial advisors to the issuer in connection with a debt offering, Am. Compl. ¶¶ 408–13, but none of these allegations are relevant to whether J.P. Morgan passed title in Carvana stock to Plaintiffs or solicited their purchase of Carvana stock.

*Inc.*, 2017 WL 6466264, at *31 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x 239 (9th Cir. 2019). There are no allegations that J.P. Morgan played *any* role in Plaintiffs' purchase of Carvana stock. Courts in the Ninth Circuit routinely dismiss Section 12(a)(2) claims against underwriters who, like J.P. Morgan, are alleged to have participated in an offering but not to have sold to or solicited the plaintiffs' purchase of stock in that offering. *See, e.g.*, *Medhi* v. *View, Inc.*, 2023 WL 3592098, at *12 (N.D. Cal. May 22, 2023); *In re AGS, Inc. Sec. Litig.*, 2022 WL 17406100, at *4 (D. Nev. Dec. 2, 2022); *Welgus*, 2017 WL 167708, at *31; *In re Vocera Commc'ns, Inc. Sec. Litig.*, 2015 WL 603208, at *2 (N.D. Cal. Feb. 11, 2015); *In re Violin Memory Sec. Litig.*, 2014 WL 5525946, at *19 (N.D. Cal. Oct. 31, 2014); *Katz* v. *China Century Dragon Media, Inc.*, 2011 WL 6047093, at *5 (C.D. Cal. Nov. 30, 2011); *In re Bare Escentuals,* 745 F. Supp. 2d at 1073. This Court should do the same here.

Because Plaintiffs do not allege that J.P. Morgan is a statutory seller, their Section 12(a)(2) claim against J.P. Morgan must be dismissed for that independent reason.

## III. **CONCLUSION**

For these reasons, and those set forth in the Carvana Defendants' Motion, the Underwriter Defendants respectfully submit that the claims against them be dismissed with prejudice.

Respectfully submitted this 28th day of May, 2024.

FENNEMORE CRAIG, P.C.

By: *s/ Andrea L. Marconi*
    Douglas C. Northup
    Andrea L. Marconi

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Susanna M. Buergel (*Pro Hac Vice*)
David P. Friedman (*Pro Hac Vice*)

*Counsel for Defendants Citigroup Global Markets Inc. and J.P. Morgan Securities LLC*

**CERTIFICATE OF NOTICE**

Pursuant to LR Civ. 12.1, I hereby certify that, on May 24, 2024, in a telephonic meet and confer, I caused counsel for Plaintiffs to be notified of the issues asserted in the foregoing joinder and no amendment to cure the pleading was proposed by Plaintiffs on which the parties were able to agree.

*/s/ David P. Friedman (with permission)*
David P. Friedman