# EXHIBIT B

2024 WL 3802997

2024 WL 3802997
Only the Westlaw citation is currently available.
United States District Court, N.D. Texas, Dallas Division.

MENDI YOSHIKAWA, et al., Plaintiffs,

v.

EXXON MOBIL CORP., et al., Defendants.

Civil Action No. 3:21-CV-0194-N
|
Filed 08/12/2024

**MEMORANDUM OPINION AND ORDER**

David C. Godbey Chief United States District Judge

**\*1** This Order addresses Defendants Exxon Mobil Corporation ("ExxonMobil") and Melissa Bond's Motion for Judgment on the Pleadings [123]. Because Plaintiffs [1] adequately allege their remaining securities claims, the Court denies the motion.

## I. THE ORIGINS OF THE DISPUTE

As discussed in the Court's prior orders ruling on Defendants' first and second motions to dismiss [88] & [112], this is a federal securities putative class action on behalf of all persons and entities who purchased or otherwise acquired ExxonMobil common stock ("XOM") between March 7, 2018 and January 15, 2021 (the "Class Period"). Order 1, Sept. 29, 2022 ("First MTD Order") [88]; Order 1, Aug. 24, 2023 ("Second MTD Order") [112]. Plaintiffs allege that ExxonMobil portrayed its oil and gas assets in the Permian Basin [2] as more valuable than they were, and when ExxonMobil finally disclosed that its production goals could not be realized, the value XOM shares declined. Second MTD Order 1–2. Plaintiffs initially sued ExxonMobil and several of its personnel under Sections 10(b) and 20(a) of the Securities and Exchange Act (the "Exchange Act") and the related Rule 10b-5(b). *See* § 10, 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5(b); 15 U.S.C. § 78t(a). Plaintiffs allege both affirmative misrepresentations of ExxonMobil's drilling potential in the Permian Basin and omissions of material information about the project's obstacles. *Id.* at 2. The Court initially dismissed Plaintiffs' claims for failure to plead

adequately that any Defendant acted with the requisite state of mind but granted leave to amend. First MTD Order 20, 37–38.

Plaintiffs filed a Second Amended Complaint ("SAC"), omitting several of the original defendants but maintaining the Section 10(b) misrepresentation and omission claims against ExxonMobil and its officers Woods and Mallon, as well as the Section 20(a) control person claim against Woods. *See* SAC ¶¶ 437–40, 448 [92]. In the SAC, Plaintiffs additionally asserted a scheme liability claim against Melissa Bond, the former Senior Manager of Delaware Basin Development, alongside Mallon and ExxonMobil, and named Mallon as a control person. *Id.* ¶¶ 441, 448. The SAC alleged that Bond and Mallon conspired to manipulate the valuation of ExxonMobil's Permian assets, of which Woods either would or should have learned from a meeting with Bond. *Id.* ¶¶ 123–32, 11–63. Specifically, the SAC alleged Bond manipulated learning curve assumptions included in ExxonMobil's 2019 development plan, which increased proved reserves by increasing the number of wells Exxon expected to drill. *Id.* ¶¶ 158, 274. Further, the SAC recounts that ExxonMobil was found liable for unlawfully terminating two whistleblowers who raised concerns about ExxonMobil's valuation of the Permian assets in response to negative press. *Id.* ¶¶ 132–34, 137, 141–43, 146, 151–53, 155–57.

**\*2** In ruling on the motion to dismiss the SAC, the Court dismissed all of Plaintiffs' claims under Section 10(b) of the Exchange Act, and the claims against Mallon under Rule 10b-5(a) and (c) with prejudice. Second MTD Order 22. The scheme liability claims under Rule 10b-5(a) and (c) against Bond and ExxonMobil remain. *Id.* At that stage, the Court determined that Plaintiffs adequately pled facts that created a strong "inference that Bond was at least severely reckless regarding the possibility that falsification of the 2019 Development Plan would mislead investors." *Id.* at 21. Likewise, because Defendants did not assert any deficiency in Plaintiffs' pleading regarding scheme liability against ExxonMobil based on Bond, the Rule 10b-5(a) and (c) claim against ExxonMobil survived the Rule 12(b)(6) challenge. *Id.* at 22. Finally, Plaintiffs' Section 20(a) claims survived the motion to dismiss because Defendants' sole argument for dismissing the control person liability claims was that Plaintiffs did not adequately plead a primary violation — but as of the Order on the second motion to dismiss, primary liability claims survived. *Id.* Now, Defendants move again to dismiss Plaintiffs' remaining claims, seeking a judgment on the pleadings.

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    1

## II. LEGAL STANDARDS

### A. Motion for Judgment on the Pleadings

Any party may move for judgment on the pleadings after the pleadings are closed, as long as the motion does not delay trial. FED. R. CIV. P. 12(c). A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam). When ruling on a Rule 12(c) motion for judgment on the pleadings, the Court applies the same standard as that used for a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

When addressing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-plead facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted). "When reviewing a motion to dismiss, a district court must consider the complaint in its entirety, as well as ... documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (internal quotation marks omitted).

Section 10(b) claims are subject to Rule 9(b)'s heightened pleading standard, which requires that plaintiffs alleging fraud or mistake state their claims with particularity. *Owens v. Jastrow*, 789 F.3d 529, 534–35 (5th Cir. 2015). Specifically, plaintiffs must set forth "the 'who, what, when, where, and how' of the events constituting fraud or mistake." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (quoting *ABC Arbitrage Pls. Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002) (internal quotations omitted)). Plaintiffs also must "distinguish among those they sue and enlighten each defendant as to his or her particular part in the alleged fraud." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 365 (5th Cir. 2004). Allegations against defendants as a group, without more specific connections between an individual Defendant and an allegedly fraudulent act, should be disregarded. *Owens*, 789 F.3d at 537–38. Other inference-based allegations, such as pleading based on a defendant's position, corporate culture, or common knowledge alone, are similarly too vague. *See* First MTD Order 6–8 (citing *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 433 (5th Cir. 2002); *Callinan v. Lexicon Pharma.*, Inc., 479 F.3d 379, 432 (S.D. Tex. 2020) (quoting *In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 245 (S.D.N.Y. 2010)); *Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 537 (5th Cir. 2008)).

### B. Pleading Section 10b-5(a) and (c) Claims

**\*3** Section 10(b) of the Exchange Act, codified at 15 U.S.C. § 78j(b), empowers the SEC to prescribe rules and regulations to protect the public from manipulative and deceptive securities practices. Rule 10b-5, implementing Section 10(b), makes it unlawful: "(a) [t]o employ any device, scheme, or artifice to defraud" and "(c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5. There is "considerable overlap among the subsections of the Rule." *Lorenzo v. SEC*, 587 U.S. 71, 80 (2019). Thus, pleading each type of claim varies only slightly. Rule 10b-5(a) and (c) claims "require allegations 'that the defendant (1) committed a deceptive or manipulative act, (2) with scienter, that (3) the act affected the market for securities or was otherwise in connection with their purchase of [sic] sale, and (4) that the defendant's actions caused the plaintiff's injuries.' " *Ranieri v. AdvoCare Int'l, L.P.*, 336 F. Supp. 3d 701, 720 (N.D. Tex. 2018) (quoting *In re Enron Corp. Sec.*, 529 F. Supp. 2d 644, 678 n.45 (S.D. Tex. 2006)).

The Private Securities Litigation Reform Act ("PSLRA") further heightens the pleading requirements in two ways. Plaintiffs must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Additionally, plaintiffs must, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). The latter "alters the usual contours of a Rule 12(b)(6) ruling" by requiring courts to "take into account plausible inferences opposing as well as supporting a strong inference of scienter." *Cotter v. Gwyn*, 2016 WL 4479510, at *6 (E.D. La. 2016) (quoting *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009)). When viewing the allegations holistically, the inference must be "cogent and compelling, not merely reasonable or permissible, in light of other explanations." *Cotter*, 2016 WL 4479510, at *6 (internal quotations and citations omitted).

### C. Pleading Section 20(a) Claims

Section 20(a) of the Exchange Act "makes those who control others who violate section 10(b) jointly and severally liable 'unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.' " *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 791 (S.D. Tex. 2012) (quoting 15 U.S.C. § 78t(a)). Thus, adequately pleading a primary violation is a prerequisite to stating a controlling person claim. *Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 221 (5th Cir. 2023). Additionally, Plaintiffs must allege "that the controlling person had actual power over the controlled person and induced or participated in the alleged violation." *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d at 791. But unlike Rule 10b-5 claims, "[s]ection 20(a) claims are subject only to the pleading requirements of Rule 8, not the heightened requirements of Rule 9(b)." *Id.* Once plaintiffs have pled a primary violation with sufficient particularity, they "need only provide the defendant fair notice of the [controlling person] claim and the basis of the allegations." *Id.* (citing *Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 620 (5th Cir. 1993)).

### III. THE COURT DENIES THE MOTION

### A. Plaintiffs Pled Adequate Facts to Connect Bond's Allegedly Deceptive Conduct with the Purchase or Sale of a Security

The Court previously held that Plaintiffs' allegations created a strong inference of Bond's scienter of the alleged scheme. Second MTD Order 21. Still, Plaintiffs' scheme liability claim must allege sufficient facts that Bond's allegedly deceptive conduct was "in connection with the purchase or sale of any security" to survive. 17 C.F.R. § 240.10b-5. Plaintiffs make two connections between Bond's allegedly deceptive conduct and the purchase or sale of a security: (1) the scheme bolstered Defendants' public misstatements about false production goals and (2) the fabricated learning curve assumptions were incorporated in the company's reported proved reserves and resource base. *See generally* Pls.' Resp. 12–19 [125].

**\*4** As an initial matter, the Court held in its previous order that Plaintiffs failed to allege facts that support Mallon and Woods's scienter regarding awareness that their statements were misrepresentations. *See* Second MTD Order 12–18. Even so, Plaintiffs continue to argue that Bond's allegedly fraudulent development plan was the basis for public misstatements and omissions. *See* Pls.' Resp. 14. However, the Court severed the connection between Bond's alleged scheme and the public statements made by Woods or Mallon regarding ExxonMobil's prospects for oil production. *See* Second MTD Order 12–18 (Finding that "Plaintiffs still have not pleaded facts connecting Woods to Bond's conduct" or that Mallon's trades during the relevant time period did not establish his scienter of the scheme.). Likewise, Plaintiffs cannot rely on public statement made by Woods or Mallon to plead that Bond's alleged scheme impacted the purchase or sale of any security.

Here, the Court finds that Plaintiffs adequately alleged facts that Bond's deceptive acts were communicated to the public. ExxonMobil maintains that Bond's alleged scheme consisted of entirely internal company conduct. Defs.' Mot. J. Plead. at 6. Plaintiffs argue that Bond's fabricated learning curve assumptions were incorporated into the Company's reported proved reserves and resource basis. *See* Pls.' Resp. 16–19. Plaintiffs' pleadings include the regulatory and accounting standards governing the calculation of proved preserves, SAC ¶¶ 315–38, "which include assumptions about how efficiently

the Company will be able to drill and develop a given area." Pls.' Resp. 17 (citing SAC ¶ 318.). Plaintiffs explain "Exxon's 2019 development plan for the Permian Basin included Bond's manipulated learning curve assumptions, which dramatically increased the number of wells Exxon expected to drill, and thus increased proved reserves" and "Exxon's reported resource base was also inflated by Bond's scheme because proved reserves are a component of the resource base calculation." *Id.* (citing SAC ¶¶ 158, 274; ¶¶ 51, 66–67). Plaintiffs bolster this allegation by citing OSHA's findings of fact that Drs. Gulden and Burch informed ExxonMobil in April 2019 that its 8-K was misleading because the actual drilling-time data yielded lower resource base figures. SAC ¶ 158(c)-(d). Further, Plaintiffs allege that ExxonMobil explained in its 2018 10-K and 2019 10-K that "[p]roved undeveloped reserves are recognized only if a development plan has been adopted indicating that the reserves are scheduled to be drilled within five years, unless specific circumstances support a longer period of time." SAC ¶ 317.

Despite Defendants' insistence that Bond's allegedly fabricated development plant was not incorporated into any public filing, any factual disputes regarding the calculation of reserves cannot be resolved at the pleading stage, and Plaintiffs allege sufficient facts that allow the court to infer that Bond's deceptive acts were communicated to the public through the development plan's incorporation into the public reports.

### B. Plaintiffs Are Entitled to a Presumption of Reliance

Defendants argue that Plaintiffs could not have relied on Bond's allegedly deceptive conduct in their purchase or sale of a security; therefore, Plaintiffs' scheme liability claim against Bond fails as a matter of law. "Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011) (internal quotation marks omitted). "This is because proof of reliance ensures that there is a proper 'connection between a defendant's misrepresentation and a plaintiff's injury.' " *Id.* (quoting *Basic Inc. v. Levinson*, 485 U.S. 224 (1988)). Plaintiffs pled that they are entitled to a presumption of reliance pursuant to the fraud-on-the-market doctrine as outlined in *Basic Inc. v. Levinson* and are also entitled to a presumption of reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128

(1972). At the pleading stage, Plaintiffs allege sufficient facts to establish a presumption of reliance under both theories.

**\*5** ***1. Plaintiffs Are Entitled to* Basic's *Fraud-On-The-Market Presumption of Reliance.*** – In *Basic* the Supreme Court held that in an efficient market, courts may presume that the individual relied on public and material misrepresentations when trading securities. *See Basic*, 485 U.S. at 248 n.27; *see also Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014) ("[A] plaintiff must make the following showings to demonstrate that the presumption of reliance applies in a given case: (1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentation was made and when the truth was revealed."). ExxonMobil can rebut this presumption with "any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price." *Id. Basic* and *Halliburton* both emphasize the importance of the public disclosure component, but both cases focus on misrepresentation claims under Rule 10b–5(b). All that survives in this case are scheme lability claims under Rule 10b–5(a) and (c). The Supreme Court addressed the application of *Basic* to establish a presumption of reliance for scheme liability claims under Rule 10b–5(a) and (c) in *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008). The parties in this case disagree on whether and how *Stoneridge* should apply.

First, contrary to Defendants' position, *Basic's* fraud-on-the-market presumption of reliance applies to scheme liability claims. *See Stoneridge*, 552 U.S. at 161 (applying *Basic* to a scheme liability claim, but concluding "respondents' deceptive acts, which were not disclosed to the investing public, are too remote to satisfy the requirement of reliance"); *see also CP Stone Fort Holdings, LLC v. Doe(s)*, 2017 WL 1093166, at \*5 (N.D. Ill. 2017) ( "*Stoneridge* did not reject the use of a fraud-on-the-market presumption of reliance based on 'deceptive acts.' Rather, it rejected the use because the respondents' acts were not made public." (citation omitted)). Second, contrary to Plaintiffs' position, *Stoneridge* has no language limiting its holding to conduct by third parties. In finding that the essential element of reliance was absent, the Supreme Court in *Stoneridge* explained:

> [Defendants'] deceptive acts were not communicated to the public. No member of the investing public had knowledge, either actual or presumed, of [defendants'] deceptive acts during the relevant times. [Plaintiffs], as a result, cannot show reliance upon any of [defendants'] actions except in an indirect chain that we find too remote for liability.

*Stoneridge*, 552 U.S. at 159.

As stated in Section III.A, *supra*, Plaintiffs allege sufficient facts connecting Bond's deceptive conduct with the purchase and sale of a security. Accordingly, Plaintiffs allege facts sufficient to show that Bond's deceptive acts were communicated to the public to establish, at the pleading stage, a presumption of reliance under *Basic*. Defendants make no arguments regarding the application of *Basic's* other elements or attempts to rebut this presumption.

***2. Plaintiffs Are Entitled to the* Affiliated Ute *Presumption of Reliance. —*** In the Fifth Circuit, to invoke the *Affiliated Ute* presumption of reliance on an omission, "a plaintiff must (1) allege a case primarily based on omissions or non-disclosure and (2) demonstrate that the defendant owed him a duty of disclosure." *Regents of Univ. of California v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372, 384 (5th Cir. 2007). As the Fifth Circuit explained: "[w]here liability is premised on a failure to disclose rather than on a misrepresentation, 'positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision.' " *Id.* at 383–84 (quoting *Affiliated Ute*, 406 U.S. at 153–54 (1972)). Like the presumption outlined in *Basic*, this presumption of reliance is a rebuttable one. *See Smith v. Ayres*, 845 F.2d 1360, 1363 (5th Cir. 1988).

**\*6** Plaintiffs are entitled to the *Affiliated Ute* presumption of reliance for their Rule 10b-5(a) and (c) claims because the claims are primarily based on Bond's nondisclosure of her alleged scheme to fabricate the learning curve assumptions, which, at the pleading stage, Plaintiffs adequately allege were incorporated into ExxonMobil's reports. The Court finds that a reasonable investor may have considered Bond's omissions important in making its decisions in purchasing a security. Defendants make no argument that Bond did not have a duty to disclose or attempt to rebut this presumption of reliance.

### *C. Plaintiffs Adequately Pled that ExxonMobil Acted with Scienter*

Plaintiffs rely on Bond's deceptive conduct to impute scienter onto to ExxonMobil. In this Circuit, to impute scienter onto a corporation, scienter "must be alleged with respect to 'the individual corporate official or officials who make or issue the statement (or order or approve it or its making or issuance, or who furnish information or language for inclusion therein, or the like) ....' " *Alaska Elec. Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975, 982 (5th Cir. 2019) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 367 (5th Cir. 2004)).

Here, Bond allegedly orchestrated and participated in the fraud of artificially inflating the learning curves, which furnished information to inflate publicly reported proved reserves and resource base; therefore, Bond's scienter can be imputed onto ExxonMobil. *See Lee v. Active Power, Inc.*, 29 F. Supp. 3d 876, 882–85 (W.D. Tex. 2014) (imputing scienter on a company whose employee furnished false information, which resulted in the company issuing false public statements about the company's partnership with a corporation); *Kerr v. Exobox Tech's Corp.*, 2012 WL 201872, at \*14 (S.D. Tex. 2012) (imputing scienter on a corporation because the corporation " 'made' the statements contained in the public filings" and "[p]laintiffs need only assert that [the employee] furnished the information or language for inclusion in order to attribute his scienter to" the corporation); *In re Cognizant Tech. Sols Corp. Sec. Litig.*, 2020 WL 3026564, at \*27 (D.N.J. 2020) (imputing scienter when individual defendant approved payments to conceal bribery scheme, furnishing misinformation for inclusion in the company's financial statements); *Knurr v. Orbital ATK Inc.*, 294 F. Supp. 3d 498 (E.D. Va. 2018) (imputing scienter on a corporation which disclosed misrepresentative earnings and estimates because "a corporate defendant can be liable if an agent provides false information to the corporation and its officers intending that the corporation make a false or misleading statement"). Accordingly, Plaintiffs sufficiently pled ExxonMobil's scienter with respect to the alleged scheme.

2024 WL 3802997

***D. The Court Declines to Dismiss Plaintiffs'
Control Person Claims Under Section 20(a)***

As in Defendants' Second Motion to Dismiss, Defendants' sole argument against controlling person liability here is that Plaintiffs have not adequately pled a primary violation. The Court once again rejects this argument. Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' Section 20(a) claims.

**CONCLUSION**

For the reasons set forth above, the Court denies Defendants' motion for judgment on the pleadings in its entirety.

**All Citations**

Slip Copy, 2024 WL 3802997

**Footnotes**

1       "Plaintiffs" refers to co-lead plaintiffs, The State of Rhode Island, Office of the General Treasurer, on behalf of the Employees' Retirement System of Rhode Island ("Rhode Island") and Amalgamated Bank.

2       The Permian Basin is an oil-and-gas rich area in west Texas and southeast New Mexico which also includes the Delaware Basin. SAC ¶ 41.

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.