FENNEMORE CRAIG, P.C.
Douglas C. Northup (No. 013987)
Andrea L. Marconi (No. 022577)
2394 E. Camelback Road
Suite 600
Phoenix, Arizona  85016
Telephone:  (602) 916-5000
Email:  dnorthup@fennemorelaw.com
Email:  amarconi@fennemorelaw.com

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Susanna M. Buergel (*pro hac vice*)
David P. Friedman (*pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Email: sbuergel@paulweiss.com
Email: dfriedman@paulweiss.com

*Counsel for Defendants Citigroup Global Markets
Inc. and J.P. Morgan Securities LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| In re Carvana Co. Securities Litigation, | No. CV-22-2126-PHX-MTL |
|---|---|
| | **JOINDER OF UNDERWRITER DEFENDANTS IN CARVANA DEFENDANTS' REPLY IN FURTHER SUPPORT OF THE MOTION TO DISMISS LEAD PLAINTIFFS' AMENDED CONSOLIDATED COMPLAINT** |
| | **(Oral Argument Requested)** |
| This Document Relates to:<br><br>    ALL ACTIONS. | |

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX

The Underwriter Defendants[1] submit this joinder in further support of the Carvana Defendants' Motion to Dismiss and in response to Lead Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss the Amended Consolidated Complaint ("Opposition" or "Opp.").

### MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs' Opposition does not cure the legal defects mandating dismissal of their claims under Sections 11 and 12(a)(2) of the Securities Act (the only claims against the Underwriter Defendants). Instead, the Opposition lumps the Exchange Act and Securities Act allegations and defendants together, fails to explain how any of the three alleged Securities Act misstatements were false or material, ignores the negative causation apparent from the face of the Amended Complaint, and improperly asserts that J.P. Morgan is a statutory seller by virtue of allegations directed to distinct Defendants.

### A.   Plaintiffs' Securities Act Violations Sound in Fraud.

Plaintiffs' argument that their claims are governed by Rule 8 because they "'expressly plead only negligence' and 'carefully crafted the complaint so that their negligence-based claims are wholly separate from their allegations of fraud'" fails. Opp. 69. Securities Act claims must be pled with the particularity required by Rule 9(b) if the claims "sound[] in fraud." *Rubke* v. *Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009). Securities Act claims sound in fraud when they rely on the same, but not necessarily all, misrepresentations central to their Exchange Act fraud claims. *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 885 (9th Cir. 2012). That is the case here, where Plaintiffs' Securities Act claims are premised on the same (or substantively identical) statements, subjects, and theories of falsity as the corresponding portions of their Exchange Act allegations. *See* Joinder 4. Indeed, in arguing that they have sufficiently alleged falsity, Plaintiffs rely entirely on the same arguments asserted in support of their Exchange Act claims. Opp. 68 (citing arguments made in support of Plaintiffs' Exchange Act claims as

---

[1] Capitalized terms not otherwise defined herein have the meaning set forth in the Joinder of Underwriter Defendants in the Carvana Defendants' Motion to Dismiss Lead Plaintiffs' Amended Consolidated Complaint (the "Joinder") (Dkt. 87).

the sole bases to support Plaintiffs' Securities Act claims).  Plaintiffs' "nominal efforts to disclaim allegations of fraud with respect to [their Securities Act] claims are unconvincing where the gravamen of the complaint is fraud and no effort is made to show any other basis for the claims." *In re Rigel Pharms.,* 697 F.3d at 885.[2]

At bottom, Plaintiffs' "'[Securities Act] claim[s] merely rely on the same alleged misrepresentations that are central to Plaintiffs' Section 10(b) fraud claim," and therefore "Plaintiffs' [Securities Act] claim[s] [are] grounded in fraud and must meet Rule 9(b)'s pleading requirements.'"  *Alich* v. *Opendoor Techs. Inc.*, 2024 WL 839146, at *16 (D. Ariz. Feb. 28, 2024) (cleaned up).[3]

### B.    Plaintiffs Fail to Plead False or Misleading Statements in Violation of Sections 11 and 12(a)(2).

Plaintiffs' Securities Act claims challenge three statements ("Statements A-C") made in the Offering Documents tied to Carvana's vehicle acquisitions, sales, and risks surrounding regulatory compliance.  *See* Joinder 4–8.  In their Opposition, Plaintiffs do not engage with the Underwriter Defendants' arguments that Plaintiffs have failed to plead, whether under Rule 8 or Rule 9(b), that Statements A-C are false or misleading.  Instead, Plaintiffs simply point to their responses to the Carvana Defendants' motion.  *See*. Opp. 68 ("Because the Underwriter Defendants reassert Defendants' baseless challenges to the Exchange Act statements . . . [t]he Securities Act claims survive, regardless of the pleading standard.").  Plaintiffs' failure to respond to the Underwriter Defendants' arguments is reason enough to dismiss Plaintiffs' Securities Act claims against the Underwriter

---

[2] Plaintiffs' cited authorities, *see* Opp. at 69–70, do not support their position that their Securities Act claims are subject to Rule 8.  *See Tsirekidze* v. *Syntax-Brillian Corp.*, 2009 WL 275405 (D. Ariz. Feb. 4, 2009) (predating the Ninth Circuit's guidance in *Rubke* and *Rigel*); *Boston Ret. Sys.* v. *Uber Techs., Inc.*, 2020 WL 4569846, at *4 (N.D. Cal. Aug. 7, 2020) (plaintiffs relied on different alleged statements and theories of falsity for Securities Act and Exchange Act claims); *Cullen* v. *RYVYL*, 2024 WL 898206, at *6 (S.D. Cal. Mar. 1, 2024) (same, *see* Amended Complaint, *Cullen* v. *RYVLL,* No. 3:23-cv-00185-GPC-SBC (S.D. Cal. June 30, 2023), ECF No. 33); *Flynn* v. *Sientra, Inc.*, 2016 WL 3360676, at *17 (C.D. Cal. June 9, 2016) (same; plaintiffs' fraud claims were based on "unique, particularized facts").

[3]  Plaintiffs in *Opendoor*, like Plaintiffs here, argued that their Securities Act claims did not sound in fraud because their complaint segregated their negligence-based Securities Act claims from their fraud-based Exchange Act claims.  2024 WL839146, at *16.

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX

- 2 -

Defendants. *Giorgis* v. *Ogden*, 2009 WL 3571355, at *3 (D. Ariz. Oct. 26, 2009) ("Failure to respond to arguments raised in dispositive motions may be deemed a consent to the granting of the motion.").

**Statement A:** Plaintiffs do not dispute that Statement A concerns the numerous criteria which Carvana assesses to "determine an appropriate offer" for vehicles Carvana purchases through its website. Joinder 5. Instead, Plaintiffs argue that Statement A is misleading because while Carvana stated it used criteria such as "quality" to "identify what we believe represent the most in-demand and profitable vehicles to acquire for inventory," it failed to disclose that it was purchasing lower quality cars. Opp. 29. But Carvana's alleged purchasing of lower quality cars does not render Statement A misleading. Statement A nowhere says that Carvana *did not* purchase lower quality cars. Rather, Carvana listed "quality" as one of six factors it assessed in determining an appropriate offer, AC ¶ 381, and Plaintiffs nowhere allege that Carvana did not assess quality in deciding whether to increase or decrease its offer price for a car. *See Weston Fam. P'ship LLLP* v. *Twitter, Inc.*, 29 F.4th 611, 622 n.5 (9th Cir. 2022) (affirming dismissal where statement was "uncontradicted by any of the plaintiffs' allegations"). Plaintiffs likewise do not allege that Carvana's assessment of these six factors was *not* designed to identify what it "*believe[d]* represent[ed] the most-in demand and profitable vehicles" for its inventory. *See Omnicare, Inc.* v. *Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 184–191 (2015) (statements of opinion not actionable except in limited circumstances). Of course, Carvana may have reasonably believed at the time of Statement A that even "lower quality" cars represented potential opportunities to obtain the "most in demand and profitable" vehicles, including because Carvana would pay less money to acquire those vehicles for resale. Plaintiffs allege no facts to the contrary.

**Statement B:** Plaintiffs do not dispute the Underwriter Defendants' arguments that the alleged omissions regarding Carvana's retail units sold are inactionable because (1) Plaintiffs fail to allege facts reflecting how any alleged title and registration issues cited in the Amended Complaint affected retail sales or how any effect on retail sales due to the

alleged title and registration issues was material; and (2) the alleged omissions relate to the alleged impact of Carvana's retail sales strategy on profits, but Carvana's (lack of) profits was disclosed separate and apart from sales. Joinder 6; Opp. 31–33. And while Plaintiffs do dispute the Underwriter Defendants' arguments that (3) allegations concerning the purported impact of "sham passthrough arrangement with DriveTime" on Carvana's retail unit sales are wholly conclusory and (4) alleged omissions related to so-called "lowered purchasing and verification standards" were not omissions at all, but rather part of Carvana's disclosed business strategy, Plaintiffs' responses do not withstand scrutiny. *See* Joinder 6; Opp. 12, 16, 31–33.

Regarding "DriveTime," Plaintiffs counter that the arrangement was deceptive because "sham transactions accounted for approximately 660% of Carvana's sequential growth in Q4 2021 and 17% of its reported annual FY 2021 growth." Opp. 12. But the numbers Plaintiffs rely on to derive their calculations were *admittedly disclosed*, Opp. 33 n.32, and Plaintiffs have no response to the showing that their calculation grossly overestimates the impact of DriveTime because it conflates "total expenses" and "cost of sales." Carvana Mot. 23 n.19. Plaintiffs' allegations regarding the effect of these alleged transactions on Carvana's reporting of retail unit sales growth are thus too conclusory to support an omission claim.

Next, Plaintiffs contend that Carvana's disclosed business strategy was deceptive because it did not include alleged "undisclosed artifices, including violations of laws and deceptive related-party transactions, that rendered Defendants' statements about Carvana's sales growth misleading." Opp. 33. At the outset, Plaintiffs do not allege facts establishing the impact of these purported "artifices" on Carvana's retail units sold metric or Carvana's financial position. For instance, Plaintiffs allege no facts to establish how the alleged violations of title and registration laws or "increased" trade-ins inflated retail sales—the former is alleged to have occurred post-sale, and the latter is alleged to have resulted in more *wholesale*, not retail, sales. AC ¶¶ 378, 384(i). And far from "undisclosed," Plaintiffs admit that by April 2022—the time Statement B was made—all but one of the purported

legal violations to which they refer, *see* Opp. 22, were public knowledge. AC ¶¶ 146, 313 (citing October 2021 *WSJ* article that reported on Carvana's *de minimis* penalties in Michigan, North Carolina, Florida, and Texas); Carvana Mot. Ex. 14 (October 2021 *WSJ* article); Order at 19–21, *City of Warwick Ret. Sys.* v. *Carvana Co.*, CV 2022-013054 (Sup. Ct. Ariz, Maricopa Cnty. Oct. 26, 2023) (Dkt. 63) (describing the complaints and penalties related to title and registration laws reported in the October 2021 *WSJ* article).[4] Likewise, all of the material terms of the supposedly hidden DriveTime arrangement were publicly disclosed before April 2022. *See* Carvana Mot. 22–23.

**Statement C:** Plaintiffs claim that Carvana's forward-looking risk disclosure warning investors that its failure to comply with title and registration laws could lead to regulatory penalties and reputational damage is misleading because Carvana had already been subject to a few investigations and thousand-dollar fines. Opp. 69. But that argument ignores what Statement C actually says. In warning investors about future risks, Statement C provided that Carvana's failure to comply with state and local title and registration laws "could have a material adverse effect on our business" and could result in various regulatory penalties. AC ¶ 385. Statement C nowhere implied that Carvana was not under investigation in any state or locality, or that it had never been subject to any penalty in any state or locality. Indeed, such a suggestion would be surprising given Statement C's disclosures that Carvana was "subject to a wide range of evolving federal, state, and local laws and regulations, many of which may have limited to no interpretation precedent as it relates to our business model." *Id.* Simply speaking on a topic without disclosing everything about that topic does not render a statement misleading. *See Das* v. *Unity Software Inc.*, 2024 WL 1141733, at *7 (N.D. Cal. Mar. 15, 2024) ("Statements are not actionable merely because they do[] not include all relevant facts" (quoting *Brody* v. *Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002))).

---

[4] As to the Ohio BMV's December 2020 temporary tag suspension, Plaintiffs allege no facts about the impact of the temporary suspension on Carvana's business. Plaintiffs also allege that Illinois suspended Carvana's dealer's license on May 12, 2022, Opp. 22, but that suspension occurred after Statement B was made.

Plaintiffs also do not rebut the Underwriter Defendants' argument that Plaintiffs fail to adequately plead materiality for Statement C. *See* Joinder 6–8. Rather, Plaintiffs assert that materiality should be reserved for the trier of fact. Opp. 24. But even at the pleading stage, Plaintiffs must allege facts to show "how the [alleged] misconduct affected the company's financial statements and whether [it was] material in light of the company's overall financial position." *Bajjuri* v. *Raytheon Techs. Corp.*, 2023 WL 3650554, at *7 (D. Ariz. May 25, 2023) (cleaned up). Plaintiffs make no such showing; they instead rely on conclusory allegations that the alleged omission was material because "a reasonable investor would expect that if the risks associated with breaking the law had come to fruition, Defendants would not speak of those risks as hypotheticals." Opp. 24. But even a claim that there had been allegedly omitted unlawful activity must plead that the alleged omitted penalties of thousand-dollar fines and temporary license suspensions that were no longer in place at the time of the Offering were material in light of Carvana's nearly $14 billion in revenue at the time. *See Bajjuri*, 2023 WL3650554, at *7; *City of Warwick* (Dkt. 63) at 22 (holding that plaintiff failed to allege an omission of material fact related to Carvana's title processing delays and the same minor fines and temporary suspensions). Plaintiffs do no such thing.

Finally, Plaintiffs' failure to adequately allege any material omissions not only forecloses liability under Sections 11 and 12(a)(2), but it also forecloses liability under Item 105, which requires disclosure only of "the *material* factors that make an investment in the registrant or offering speculative or risky." 17 C.F.R. § 229.105; *Reckstin Family Tr.* v. *C3.ai.Inc.*, 2024 WL 734497, at *13 (N.D. Cal. Feb. 22, 2024) (emphasis added).[5] First, Carvana expressly warned investors that it was subject to various specific risks because it was subject to state and local title and registration laws, which is all that Item 105 requires. AC ¶ 385; *In re Progenity, Inc. Sec. Litig.*, 2023 WL 4498502, at *15 (S. D. Cal. July 12, 2023) (Item 105 requires only the disclosure of reasonably known risks).

---

[5] Plaintiffs attempt to dismiss the reasoning in *Bajjuri* by arguing that the case "did not even involve risk warnings." Opp. at 24 n.20. That argument fails, as the only risks that require disclosure are those that are *material*. 17 C.F.R. § 229.105.

Second, Plaintiffs do not plead how any alleged selling of cars before holding title, failure to register cars within the required timeframe, and issuance of out-of-state temporary tags or license plates made an investment in Carvana stock speculative or risky. Opp. 22–23. That is, Plaintiffs fail to allege how the small fines and temporary suspensions Carvana already incurred prior to the April 2022 Offering were material, or that Carvana knew as of April 2022 that any ongoing or future investigations would have any material impact on Carvana's condition (and indeed no investigation or resulting penalty is alleged to have had such an impact). As such, Plaintiffs' reliance on cases where the company did not even disclose the risk at issue,[6] or did not disclose that the risk that would cause it to significantly miss projections had already come to fruition,[7] is misplaced.

### C.      Plaintiffs Plead Negative Causation.

As to each of the three alleged Securities Act misstatements, negative causation is apparent on the face of the Amended Complaint. *See* Joinder 8–9. Plaintiffs' response to the Underwriter Defendants' argument that none of the alleged corrective disclosures reveal anything about Statement A, which concerns Carvana's method for determining the price to pay for cars, or Statement B, which concerns Carvana's 2021 retail unit sales, is buried in a one-sentence footnote. *See* Opp. 70 n.93. While Plaintiffs claim that their alleged corrective disclosures "revealed the underlying costs and logistics constraints concealed by those statements," *id.*, neither Statement A nor Statement B "concealed" anything about "underlying costs" or "logistics constraints." As to Statement C, Plaintiffs fail to show how the two post-April 2022 disclosures relating to title and registration

---

[6] *In re Lyft Inc. Sec. Litig.*, 484 F. Supp. 3d 758, 769 n.4 (N.D. Cal. 2020) (defendant failed to reference "sexual assault" in risk factors despite "rampant" and "increasing" legal complaints of sexual assault committed by its drivers and "severe risk of brand damage that could arise from sexual assault allegations" due to the company's historical "cultivation of an image of a company built on trust, safety, and a dedication to social responsibility—particularly in relation to women").

[7] *Felipe* v. *Playstudios Inc.*, 2024 WL 1380802, at *13 (D. Nev. Mar. 31, 2024) (defendant was "aware of significant financial and timing risks" associated with the delayed launch of its videogame at the time it made revenue projections in its registration statement that less than two weeks later were revealed to be overstated by millions of dollars.).

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX

inquiries, *see* AC ¶¶ 320, 322, revealed anything new about Statement C, which warned of *future* risks relating to the title and registration laws to which Carvana was subject.[8]

### D.  Plaintiffs Fail to Allege that J.P. Morgan Is a Statutory Seller.

To plead a Section 12(a)(2) claim, Plaintiffs must allege facts establishing that each Section 12(a)(2) Defendant either passed title in Carvana stock to Plaintiffs or solicited their purchase of Carvana stock in the Offering. *See* Joinder 9. Plaintiffs do not allege that J.P. Morgan passed title in Carvana stock to Plaintiffs. Rather, they allege that they purchased stock in the Offering from another Defendant. AC ¶¶ 22–23, 366, 433. The Opposition does not dispute this point.

Nor do Plaintiffs sufficiently allege that J.P. Morgan solicited the sale of such stock to Plaintiffs. *See* Opp. 71–72. Plaintiffs rely on *Pino* v. *Cardone Capital, LLC*, 55 F.4th 1253 (9th Cir. 2022), to argue that they need not allege that J.P. Morgan engaged in solicitation of Plaintiffs' purchase of Carvana stock. However, *Pino* concerned what constituted a solicitation of plaintiff's purchase of stock, not whether solicitation of plaintiff's purchase was required. In *Pino*, the Ninth Circuit found that detailed allegations about defendants' "extensive solicitation efforts," including specifically identified social media posts, online videos, and a marketing presentation attended by plaintiff, sufficed to satisfy the solicitation prong under *Pinter* v. *Dahl*, 486 U.S. 622 (1988). *Pino*, 55 F.4th at 1257–60. Here, Plaintiffs do not allege when, where, or how J.P. Morgan allegedly solicited the purchase of Carvana stock. Instead, Plaintiffs rely on entirely conclusory allegations that the "Underwriter Defendants," as a group, "marketed Carvana common stock to potential investors," "caused the offering Documents to be filed with the SEC and to be declared effective," "promoted and sold, for the benefit of themselves and their associates, Carvana common stock," and "participated in the preparation of . . . . Offering

---

[8] Plaintiffs' contention that Defendants have not provided alternative factors for the depreciation of Carvana stock is false. *See* Opp. 70. The Amended Complaint and the documents incorporated therein themselves show that Carvana's stock depreciation was the result of a downturn in the business caused by operational constraints from the COVID-19 pandemic's impact on supply chains and macro factors that left Carvana with high short-term costs that lowered expected profit margins. *See* Carvana Mot. 7–8, 30.

Documents." AC ¶¶ 406, 420, 439–40.  Allegations that an underwriter generally marketed or participated in an offering are too "conclusory and insufficient" to make the underwriter a statutory seller.  *Welgus* v. *TriNet Grp., Inc.*, 2017 WL 6466264, at *31 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x 239 (9th Cir. 2019).

Plaintiffs' other cases are similarly inapposite.  In *Primo* v. *Pacific Biosciences of California*, 940 F. Supp. 2d 1105, 1125–26 (N.D. Cal. 2013), the court held that the signing of the registration statement, along with other factual allegations of active solicitation, was sufficient to "allege[] more than mere participation" in the solicitation.  Plaintiffs have not alleged that J.P. Morgan signed the Registration Statement or alleged any other facts that suggest active solicitation.[9]  In *In re Tezos Securities Litigation*, 2018 WL 4293341, at *2, *9, *12 (N.D. Cal. Aug. 7, 2018), the court found that plaintiff's allegation that defendants—who were not underwriters but rather the holding company and its executives that launched the Initial Coin Offering at issue—had "comprehensive involvement" in the offering and that they effectively controlled, if were not "functionally interchangeable with," the issuer.  Notably, the *Tezos* court *dismissed* Section 12(a)(2) claims against those defendants for whom plaintiff failed to allege—as with J.P. Morgan here—(i) that he was "cognizant of, or influenced by" the defendant in purchasing the stock and (ii) the "requisite nexus between his particular transaction and [the defendant's] desire to serve its own financial interests." *Id.* at *9, *10.

Finally, Plaintiffs rely on *In re Violin Memory, Inc. Securities Litigation*, 2015 WL 1968766, at *4 (N.D. Cal. Apr. 30, 2015), to argue that their alleged purchase of Carvana stock from Citi "suggest[s]" that J.P. Morgan transferred title to other members of the putative class.  Opp. 72.  However, that theory runs counter to the requirement that *named plaintiffs* satisfy the elements of a claim against *each defendant*.  *See Griffin* v. *PaineWebber, Inc.*, 2001 WL 740764, at *2 (S.D.N.Y. June 29, 2001); *see also In re*

---

[9] *Pirani* v. *Slack Techs., Inc.*, 445 F. Supp. 3d 367, 384 (N.D. Cal. 2020), and *In re Charles Schwab Corporation Securities Litigation,* 257 F.R.D. 534, 549–50 (N.D. Cal. 2009), likewise involved the signing of registration statements and other alleged facts to support claims of active solicitation and are thus irrelevant.

*Vocera Commc'ns, Inc. Sec. Litig.*, 2015 WL 603208, at \*2 (N.D. Cal. Feb. 11, 2015) (dismissing Section 12(a)(2) claims against five underwriters where named plaintiff alleged it purchased stock from sixth underwriter).  Plaintiffs' Section 12(a)(2) claim against J.P. Morgan should be dismissed.

## **CONCLUSION**

For these reasons, and all of the reasons set forth in the Carvana Defendants' motion and reply in support of its motion, the Underwriter Defendants respectfully submit that the claims against them be dismissed with prejudice.

Respectfully submitted this 28th day of August, 2024.

FENNEMORE CRAIG, P.C.

By: *andea L Marcais*

Douglas C. Northup
Andrea L. Marconi

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Susanna M. Buergel (*Pro Hac Vice*)
David P. Friedman (*Pro Hac Vice*)

*Counsel for Defendants Citigroup Global Markets Inc. and J.P. Morgan Securities LLC*

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX

- 10 -