**DLA PIPER LLP (US)**
Madeline A. Cordray (Bar No. 035788)
madeline.cordray@dlapiper.com
2525 East Camelback Road, Suite 1000
Phoenix, Arizona 85016
480.606.5100

Melanie Walker (admitted *pro hac vice)*
melanie.walker@dlapiper.com
2000 Avenue of the Stars #400,
Los Angeles, California 90067
310.595.3000

Yan Grinblat (admitted *pro hac vice*)
yan.grinblat@dlapiper.com
444 West Lake Street, Suite 900
Chicago, Illinois 60606
312.368.4000

Attorneys for Defendant *Ernest Garcia II*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re Carvana Co. Securities Litigation | CASE NO. 2:22-CV-2126-MTL |
| | **DEFENDANT ERNEST GARCIA II'S REPLY IN FURTHER SUPPORT OF HIS MOTION TO DISMISS** |
| | Oral Argument Requested |

# **Table of Contents**

**Page**

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................2

    I.    The ACC Is an Impermissible Puzzle Pleading. ......................................2

    II.    Plaintiffs Fail to Allege a Section 10(b) Claim Against Mr. Garcia Sr.................2

        A.    Plaintiffs Fail to Allege an Actionable "Scheme."....................................2

        B.    The Allegations Do Not Support a Strong Inference of Scienter..............5

        C.    Plaintiffs Do Not Allege Loss Causation as to Mr. Garcia Sr...................8

    III.    Plaintiffs Cannot Allege Vicarious Liability Under Section 20(a). ......................9

    IV.    Plaintiffs' Section 20A Insider Trading Claim Should Be Dismissed. ................11

CONCLUSION ..................................................................................................................11

# Table of Authorities

**Page(s)**

**Cases**

*Austin v. Loftsgaarden*,
   675 F.2d 168 (8th Cir. 1982)...............................................................................................8

*Avant-Garde, LLC v. Mountain Spa Properties, LLC*,
   2010 WL 4537057 (D. Ariz. Nov. 3, 2010) ........................................................................8

*Azar v. Yelp, Inc.*,
   2018 WL 6182756 (N.D. Cal. Nov. 27, 2018)......................................................................6

*Baker v. SeaWorld Ent., Inc.*,
   423 F. Supp. 3d 878 (S.D. Cal. 2019) ...............................................................................10

*Batwin v. Occam Networks, Inc.*,
   2008 WL 2676364 (C.D. Cal. July 1, 2008) ...................................................................6, 10

*City of Providence, Rhode Island v. Bats Glob. Markets, Inc.*,
   878 F.3d 36 (2d Cir. 2017) ..................................................................................................4

*Cortina v. Anavex Life Scis. Corp.*,
   2016 WL 7480415 (S.D.N.Y. Dec. 29, 2016)......................................................................7

*Espy v. J2 Glob., Inc.*,
   99 F.4th 527 (9th Cir. 2024)................................................................................................8

*Freundenberg v. E*Trade Fin. Corp.*,
   712 F. Supp. 2d 171 (S.D.N.Y. 2010)..................................................................................5

*Gordon v. Elite Consulting Grp. LLC*,
   2009 WL 4042911 (E.D. Mich. Nov. 19, 2009) ..................................................................4

*In re Edward D. Jones & Co., L.P. Sec. Litig.*,
   2019 WL 2994486 (E.D. Cal. July 9, 2019).........................................................................8

*In re Elan Corp. Sec. Litig.*,
   543 F. Supp. 2d 187 (S.D.N.Y. 2008) ..................................................................................8

*In re Firstenergy Corp.*,
   2022 WL 681230...................................................................................................................9

*In re FirstEnergy Corp.*,
   2022 WL 681320 (S.D. Ohio Mar. 7, 2022) ........................................................................5

*In re Galena Biopharma, Inc. Sec. Litig.*,
   117 F. Supp. 3d 1145 (D. Or. 2015).....................................................................................4

*In re Lululemon Sec. Litig.*,
14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd,* 604 F. App'x 62 (2d Cir. 2015) ........................... 6

*In re Micron Tech., Inc., Sec. Litig.*,
2009 WL 453917 (D. Idaho Feb. 23, 2009) ............................................................................. 5

*In re Musicmaker.com Sec. Litig.*,
2001 WL 34062431 (C.D. Cal. June 4, 2001) ....................................................................... 10

*In re Regeneron Pharms., Inc. Sec. Litig.*,
2005 WL 225288 (S.D.N.Y. Feb. 1, 2005) ............................................................................. 7

*In re RenovaCare, Inc. Sec. Litig.*,
2024 WL 2815034 (D.N.J. June 3, 2024) ............................................................................... 4

*In re SeeBeyond Techs. Corp. Sec. Litig.*,
266 F. Supp. 2d 1150 (C.D. Cal. 2003) ................................................................................. 6

*In re Silverlake Grp., LLC Sec. Litig.*,
2022 WL 4485815 (N.D. Cal. Sept. 27, 2022) ..................................................................... 11

*In re Take-Two Interactive Sec. Litig.*,
551 F. Supp. 2d 247 (S.D.N.Y. 2008) .................................................................................... 7

*In re Vaxart, Inc. Sec. Litig.*,
2023 WL 3637093 (N.D. Cal. May 25, 2023) ....................................................................... 4

*Mineworkers' Pension Scheme v. First Solar, Inc.*,
881 F.3d 750 (9th Cir. 2018) .................................................................................................. 9

*New York Hotel Trades Council & Hotel Assoc. of New York City, Inc. Pension Fund*
*v. Impax Laboratories, Inc.*,
843 Fed. App'x 27 (9th Cir. 2021) .......................................................................................... 9

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
320 F.3d 920 (9th Cir. 2003) ................................................................................................ 10

*Nursing Home Pension Fund Loc. 144 v. Oracle Corp.*,
380 F.3d 1226 (9th Cir. 2004) ............................................................................................... 6

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598, 610 (9th Cir. 2014) ......................................................................................... 9

*Paracor Fin., Inc. v. Gen. Elec. Cap.l Corp.*,
96 F.3d 1151 (9th Cir. 1996) ............................................................................................... 11

*Provenz v. Miller*,
102 F.3d 1478 (9th Cir. 1996) ............................................................................................... 6

*Robbins v. Hometown Buffet, Inc.*,
1995 WL 908194 (S.D. Cal. Mar. 16, 1995) ....................................................................... 10

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001)............................................................................................7

*ScripsAmerica, Inc. v. Ironridge Global LLC*,
119 F. Supp. 3d 1213 (C.D. Cal. 2015)...........................................................................8

*Simpson v. AOL Time Warner Inc.*,
452 F.3d 1040 (9th Cir. 2006)........................................................................................3

*Singh v. 21Vianet Grp., Inc.*,
2017 WL 4322483 (E.D. Tex. Sept. 13, 2017) ...............................................................5

*Sollberger v. Wachovia Sec., LLC*,
2010 WL 2674456 (C.D. Cal. June 30, 2010)..................................................................2

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
552 U.S. 148 (2008) ...............................................................................................1, 3, 4

*Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*,
690 F. Supp. 2d 959 (D. Ariz. 2010)..............................................................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ....................................................................................................1, 5

*Webb v. Solarcity Corp.*,
884 F.3d 844 (9th Cir. 2018)...........................................................................................5

*Weston v. Docusign, Inc.*,
669 F. Supp. 3d 849 (N.D. Cal. 2023)..............................................................................6

*Wool v. Tandem Computers, Inc.*,
818 F.2d 1433 (9th Cir. 1987).......................................................................................10

*Yoshikawa v. Exxon Mobil Corp.*,
2024 WL 3802997 (N.D. Tex. Aug. 12, 2024) .............................................................4, 5

**Statutes**

15 U.S.C. § 78j ....................................................................................................................2, 9

15 U.S.C. § 78t ...................................................................................................................9, 10

15 U.S.C. § 78t–1 ...............................................................................................................1, 11

**Other Authorities**

YAHOO! FINANCE, https://finance.yahoo.com/quote/CVNA/..........................................................7

**INTRODUCTION**

Despite a 300-page complaint (the "<u>ACC</u>" or "¶__") and 72-page opposition brief (the "<u>Opposition</u>" or "<u>Opp.</u>"), plaintiffs' only non-conclusory allegations regarding Mr. Garcia Sr. are that there were transactions between Carvana and his company DriveTime, he was Carvana's largest stockholder, and he sold substantially similar amounts of stock every day for ten months, regardless of any Carvana disclosures or other market events. This falls far short of stating a claim for securities fraud.

In an effort to mask the deficiencies in their claims against Mr. Garcia Sr., plaintiffs resort to familiar tactics. They refer to defendants collectively as "Defendants," forcing each defendant and this Court to sort through their voluminous papers to determine which allegations and arguments relate to which defendant. They erect strawmen to knock down, mischaracterize the law, and repeat their conclusory allegations. For example, while plaintiffs contend that Mr. Garcia Sr. participated in a wide-ranging, years-long "scheme" to defraud investors, they cannot avoid the plain import of *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148 (2008). The ACC does not allege that Mr. Garcia Sr.'s alleged conduct created a false impression of fact in the market, but rather focuses on Carvana's disclosures regarding its transactions with DriveTime. Plaintiffs attempt to side-step this issue by arguing that Mr. Garcia Sr. was not an "unaffiliated third party," but their own supplemental authority shows that is not relevant to the *Stoneridge* inquiry.

Likewise, the Opposition repeatedly asserts that Mr. Garcia Sr. was in possession of material non-public information ("<u>MNPI</u>"). But repeating that conclusory assertion does not fill the gap in the ACC's allegations. ACC does not contain any allegations of *fact* showing how or when Mr. Garcia Sr. allegedly obtained MNPI, or what that information was. As a result, plaintiffs cannot establish scienter or a Section 20A insider trading claim. The Opposition points to Mr. Garcia Sr.'s stock trades as evidence of scienter, but then asks this Court to ignore the facts regarding those trades that undermine plaintiffs' requested inference, contrary to *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007). Plaintiffs similarly attempt to dodge the loss causation inquiry as to Mr. Garcia Sr., making no attempt

to show that his alleged conduct, as opposed to other factors, was the proximate cause of their losses. And plaintiffs note that Mr. Garcia Sr. was Carvana's majority shareholder in support of their vicarious liability claim, ignoring that this bald allegation does not suffice to show that Mr. Garcia Sr. exercised actual power or control over Carvana's operations or disclosures.

Because of these and the other deficiencies described below, in Mr. Garcia Sr.'s opening brief ("Br."), and in the Carvana Defendants' opening and reply briefs, which Mr. Garcia Sr. incorporates by reference, the claims against him should be dismissed, this time with prejudice.

## ARGUMENT

### I. The ACC Is an Impermissible Puzzle Pleading.

In their Opposition, plaintiffs ignore Mr. Garcia Sr.'s argument as to why the ACC is an impermissible puzzle pleading as to him: plaintiffs collectively and indivisibly refer to all parties as "Defendants" throughout the ACC, making it unclear which allegations are directed at Mr. Garcia Sr. *See* Br. at 4; *see also, e.g.*, ¶¶128, 130, 136, 144, 341-50, 344. The Opposition does not just fail to address this argument—it doubles down on this tactic by repeatedly referring to the parties indivisibly as "Defendants," masking which allegations and arguments are relevant to each defendant. *See, e.g.*, Opp. at xxiii (defining "Defendants" as Carvana, Garcia Sr., Garcia Jr., and Jenkins). Mr. Garcia Sr. also adopts and incorporates by reference the arguments in the Carvana defendants' reply, *see* Carvana Reply at 2, but this defect alone warrants dismissal of the claims against him. *See Sollberger v. Wachovia Sec., LLC*, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010) (dismissing pleading where "plaintiff uses the omnibus term 'Defendants' throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong").

### II. Plaintiffs Fail to Allege a Section 10(b) Claim Against Mr. Garcia Sr.

#### A. Plaintiffs Fail to Allege an Actionable "Scheme."

The Opposition tacitly concedes that plaintiffs are not attempting to state a §10(b) claim against Mr. Garcia Sr. based on alleged misstatements or omissions; rather plaintiffs attempt to impose liability on him solely for his alleged participation in a "scheme" to defraud investors. *See* Opp. at 11. There is a mismatch, however, between the purpose and effect of the alleged

2

scheme, as described in the Opposition, and the "artifices" in which Mr. Garcia Sr. allegedly engaged. As a result, plaintiffs cannot establish that *Mr. Garcia Sr.* engaged in a deceptive act that had the principal purpose and effect of creating a false appearance of fact in the market on which investors relied, as required to state a claim. *See Stoneridge*, 552 U.S. at 160-64; *Simpson v. AOL Time Warner Inc.,* 452 F.3d 1040, 1048 (9th Cir. 2006).

According to the Opposition, the purpose and effect of the alleged scheme was to increase Carvana's stock price by "deceiving investors into believing Carvana's rapid ascension to the Fortune 500 marked the fastest ***organic*** growth of any automotive retailer." Opp. at 12 (cleaned up). In furtherance of this alleged scheme, Mr. Garcia Sr. allegedly (1) facilitated transactions between DriveTime and Carvana; (2) modified his 10b5-1 trading plan; and (3) sold Carvana stock. *See* ¶¶127-129, 160-62, 163-65.

Plaintiffs do not even attempt to argue that the modifications to Mr. Garcia Sr.'s 10b5-1 trading plan or his stock sales deceived investors as to the causes of Carvana's growth and whether it was "organic." Nor could they, as these acts do not create the appearance of any fact in the market, other than that Mr. Garcia Sr. was interested in reducing his equity interest in the company. That leaves the transactions between DriveTime and Carvana. On that score, plaintiffs complain at length that Carvana's disclosures regarding those transactions were inadequate and deceived investors regarding the causes of Carvana's retail sales growth. Notably, however, the ACC's allegations regarding the DriveTime transactions are based *entirely* on the same public disclosures that plaintiffs claim were inadequate. *See, e.g.*, ¶¶128, 299-300 & Opp. at 19, 65-66 (quoting disclosure that transactions with DriveTime were "not negotiated at arm's length"); ¶128 (quoting disclosure that Carvana's "purchase price . . . is the list price on Carvana.com"); ¶299 (quoting disclosure that "Carvana purchases reconditioned vehicles from DriveTime"); *see also* Carvana Reply at 26-28.

More to the point as it pertains to Mr. Garcia Sr., having admitted that their scheme claim is predicated on *Carvana's* disclosures regarding the DriveTime transactions, plaintiffs' theory of liability as to Mr. Garcia Sr. is foreclosed by *Stoneridge*. Like the defendant in *Stoneridge*, Mr. Garcia Sr. "had no role in preparing or disseminating" Carvana's public

3

statements, 552 U.S. at 155, and plaintiffs do not argue otherwise.

In an attempt to distinguish *Stoneridge*, plaintiffs try to limit its holding to "unaffiliated third parties." Opp. at 18. But *Stoneridge* does not turn on whether the defendant is a third party—as plaintiffs' own supplemental authority makes clear. *See Yoshikawa v. Exxon Mobil Corp.*, 2024 WL 3802997, at *5 (N.D. Tex. Aug. 12, 2024) ("[C]ontrary to Plaintiffs' position, ***Stoneridge has no language limiting its holding to conduct by third parties.***") (emphasis added). Rather, *Stoneridge* turns on whether the plaintiff can show that investors relied on the defendant's *own* deceptive conduct, and not the alleged conduct of others. *See Gordon v. Elite Consulting Grp. LLC*, 2009 WL 4042911, at *5 (E.D. Mich. Nov. 19, 2009) (allegations that defendant engaged in acts that facilitated fraudulent misrepresentations insufficient to allege scheme liability; plaintiff "must prove that he relied upon [the defendant's] *own* alleged deceptive conduct"). Here, all the allegations directed at Mr. Garcia Sr. relate to his purportedly "caus[ing]" the transactions to occur, not to him allegedly participating in or dictating Carvana's disclosures regarding the transactions. *See, e.g.*, ¶127. The securities laws do not apply in such circumstances.

None of the cases cited in the Opposition suggests plaintiffs can skirt *Stoneridge* simply by alleging that Mr. Garcia Sr. was Carvana's controlling stockholder. For example, in *City of Providence, Rhode Island v. Bats Glob. Markets, Inc.,* 878 F.3d 36 (2d Cir. 2017), the complaint alleged that the defendant exchanges did far more than facilitate manipulative conduct—they also allegedly misled the market by publicly misrepresenting *their own* products and services. *Id.* at 51. In other cases, the defendants were alleged to have a direct role in the drafting and dissemination of the allegedly false statements. *See In re Galena Biopharma, Inc. Sec. Litig.,* 117 F. Supp. 3d 1145, 1198 (D. Or. 2015) (defendants "hired authors to draft articles and other promotional materials, sent or caused to be sent promotional emails, and posted or caused to be posted information on social media"); *In re RenovaCare, Inc. Sec. Litig.,* 2024 WL 2815034 (D.N.J. June 3, 2024) (defendant "worked directly with StreetAuthority to create misleading promotional materials"); *In re Vaxart, Inc. Sec. Litig.*, 2023 WL 3637093, at *3 (N.D. Cal. May 25, 2023) (defendants hired CEO to carry out misleading PR campaign and pushed company

4

to issue press release). No such allegations exist here.[1]

## B.    The Allegations Do Not Support a Strong Inference of Scienter.

Not only does the ACC fail to allege the Mr. Garcia Sr. (or anyone) engaged in deceptive conduct, it also fails to allege facts giving rise to the required *strong* inference of scienter. *See Tellabs,* 551 U.S. at 319.[2] Mr. Garcia Sr. explained in his opening brief that the ACC does not allege particularized facts showing his knowledge of any alleged scheme or any other MNPI. Br. at 10-11. The Opposition barely attempts to refute this, devoting just one paragraph out of its 72 pages to arguing that the ACC alleges Mr. Garcia Sr. had MNPI because he was aware of the DriveTime transactions. Opp. at 55. But Mr. Garcia Sr. never disputed he was aware of these *publicly disclosed* transactions. Instead, he pointed out that there are no allegations he was aware of the accounting for those transactions—or as plaintiffs allege without support, that the principal purpose of those transactions was to defraud Carvana's investors, rather than to create revenue streams for Carvana. Plaintiffs appeal to the core operations doctrine, but do not cite a single case in which that doctrine was applied to someone with no management role in the company, and therefore no presumed access to internal reports and other information. *See* Opp. at 54 (citing cases where core operations doctrine was applied to CEO and/or CFO); *compare Webb v. Solarcity Corp.,* 884 F.3d 844, 857 (9th Cir. 2018) ("core operations" doctrine inapplicable where complaint did not allege defendants were "involved in" challenged accounting or "had actual access to the accounting formula"); *see also* Carvana Reply at 22-25 (discussing additional failures to plead scienter via "core operations").

[1] Similarly, in *Yoshikawa*, 2024 WL 3802997 at *4, and *In re FirstEnergy Corp.*, 2022 WL 681320, at *27 (S.D. Ohio Mar. 7, 2022), the defendants were alleged to have created misleading information that was then communicated to the market. In *In re Micron Tech., Inc., Sec. Litig.,* 2009 WL 453917, at *4 (D. Idaho Feb. 23, 2009), the defendant was the company itself, and could not aid and abet its own conduct. *Singh v. 21Vianet Grp., Inc.*, 2017 WL 4322483 (E.D. Tex. Sept. 13, 2017) and *Freundenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171 (S.D.N.Y. 2010) do not involve scheme liability claims at all.

[2] Plaintiffs make the bizarre assertion that Mr. Garcia Sr.'s scienter and loss causation arguments were "perfunctory" and thus "waived." Opp. at 20 (citing Br. at 6). In fact, Mr. Garcia Sr. devoted 6 of the 17 pages of his brief to arguing that the ACC fails to adequately allege his scienter, and almost a full page to loss causation. *See* Br. at 9-16.

Unable to allege Mr. Garcia Sr.'s knowledge, the bulk of the Opposition's discussion of scienter focuses on Mr. Garcia Sr.'s stock sales. But plaintiffs' only support for why Mr. Garcia Sr.'s stock sales evince scienter is their dollar amount. This ignores Mr. Garcia Sr.'s pre-class period sales, the fact that nearly all sales were made pursuant to a 10b5-1 plan, and the consistent pattern of sales over a ten-month period, all of which undermine the inference of scienter. *See* Br. at 13-14; ACC App'x A. Plaintiffs cite *Nursing Home Pension Fund Loc. 144 v. Oracle Corp.*, 380 F.3d 1226 (9th Cir. 2004), to argue the dollar value of trades suffices to overcome these considerations. But *Oracle* involves starkly different allegations, including that the defendant sold 29 million shares over only *ten days* and not pursuant to a trading plan. *Id.* at 1228-29.[3] And none of the other cases cited by plaintiffs support the notion that the dollar value of stock sales alone can give rise to a strong inference of scienter either, or that the Court can ignore other facts regarding those trades giving rise to contrary inferences.[4]

Unable to dispute the exculpatory inference from Mr. Garcia Sr.'s use of a 10b5-1 plan, plaintiffs point to Mr. Garcia Sr.'s modifications to the plan. Opp. at 18 n.10, 47. But plaintiffs do not allege *any* MNPI known to Mr. Garcia Sr. during the putative class period, much less specifically tie any alleged MNPI to the timing of the plan modifications. *See In re Lululemon*

---

[3] Plaintiffs make much of the allegation that Mr. Garcia Sr.'s trades stopped "nine trading days after the first corrective disclosure" as creating a positive inference of scienter. ¶263. Given that Mr. Garcia Sr.'s trades halted after he sold *exactly* 11,950,000 shares pursuant to 10b5-1 plans, the far more compelling inference is that the 10b5-1 plan expired after it hit that threshold.

[4] *See Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at *13-14 (C.D. Cal. July 1, 2008) (scienter primarily premised on defendant's "significant violations of GAAP . . . over an extended period of time" and "the timing and the circumstances" of stock sales rather than the amount); *In re SeeBeyond Techs. Corp. Sec. Litig.*, 266 F. Supp. 2d 1150, 1169 (C.D. Cal. 2003) (scienter based chiefly on allegation that defendants "admittedly lied to analysts and investors"); *Azar v. Yelp, Inc.*, 2018 WL 6182756, at *19 (N.D. Cal. Nov. 27, 2018) (noting that "[t]he amount of [defendant's] sales during the class period—totaling approximately 20 percent of his Yelp holdings—is not alone sufficient to infer scienter"); *Provenz v. Miller*, 102 F.3d 1478, 1491-92 (9th Cir. 1996) (inapposite summary judgment decision where "evidence suggest[ed] defendants failed to disclose material information to their accountant") *Weston v. Docusign, Inc.*, 669 F. Supp. 3d 849, 885 (N.D. Cal. 2023) (stock sales, "coupled with the confidential witness statements" led "to a 'strong inference' of scienter" – but here, no CW even mentions Mr. Garcia Sr.).

*Sec. Litig.*, 14 F. Supp. 3d 553, 585 (S.D.N.Y. 2014), *aff'd,* 604 F. App'x 62 (2d Cir. 2015) (no scienter where complaint "pleads no facts that even remotely suggest that [the defendant] entered into [a 10b5-1] plan 'strategically' so as to capitalize on insider knowledge"); *Ronconi v. Larkin*, 253 F.3d 423, 436 (9th Cir. 2001) (no strong inference of scienter where insiders did not sell stock at a time that would have taken advantage of allegedly fraudulent statements); *see also infra*, p. 11; Carvana Reply at 28. The *only* plausible inference is that Mr. Garcia Sr. modified his trading plan to maintain a consistent level of trading.

Plaintiffs also attempt to minimize Mr. Garcia Sr.'s stock purchases during the class period because he bought these shares at $65. But Mr. Garcia Sr.'s purchases indicate that he believed $65 was a good value, not that he believed the share price was on the verge of sharp decline. *See In re Regeneron Pharms., Inc. Sec. Litig.*, 2005 WL 225288, at *22 (S.D.N.Y. Feb. 1, 2005) ("[T]he purchase of additional company shares during the class period . . . is inconsistent with an intent to commit fraud."); *Cortina v. Anavex Life Scis. Corp.*, 2016 WL 7480415, at *6 n.3 (S.D.N.Y. Dec. 29, 2016) (defendant's purchase of additional shares during the class period "further undermine[s] any plausible allegation of scienter").[5]

Plaintiffs then ask the Court to disregard Mr. Garcia Sr.'s pre-class period stock sales because he held those shares indirectly. But plaintiffs do not dispute that Mr. Garcia Sr. had control over and stood to benefit from those sales. *Compare In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 276 (S.D.N.Y. 2008) (refusing to consider indirect stock sales where court lacked information "explaining [the defendant's] relationship to [the entity holding the shares], including most importantly, his decision-making authority, if any over that entity's stock sales."). There is simply no legitimate basis to ignore the consistency in Mr. Garcia Sr.'s trading before and during the class period.

Finally, plaintiffs cannot overcome these deficiencies by resorting to sparse and conclusory allegations about unrelated events decades ago. Allegations of a 35-year-old

---

[5] Mr. Garcia Sr.'s bullish assessment of Carvana proved to be correct, as at the time of this filing, its common stock traded at over $150 per share. *See* Carvana Co. (CVNA), YAHOO! FINANCE, https://finance.yahoo.com/quote/CVNA/ (last accessed Aug. 28, 2024).

conviction are insufficient to give rise to a strong inference of scienter. *See* Br. at 15 (citing *Avant-Garde, LLC v. Mountain Spa Properties, LLC*, 2010 WL 4537057, at *6 (D. Ariz. Nov. 3, 2010)). The sole case cited in the Opposition in support of plaintiffs' argument, *Austin v. Loftsgaarden*, 675 F.2d 168 (8th Cir. 1982), concerns an inapposite evidentiary issue and does not involve the PSLRA's heightened pleading requirement for scienter or a decades-old conviction. *See id.* at 180 (district court did not abuse its discretion in admitting evidence of recent prior conviction in rebuttal).

The allegations that Mr. Garcia Sr. bought Ugly Duckling, took it private, settled pending shareholder actions against it, and renamed it, likewise do not support a strong inference of scienter. *See* ¶34. Plaintiffs do not allege that any Ugly Duckling investors were defrauded. *See id.* Thus, the ACC does not remotely show a "regular pattern of related and repeated conduct." Opp. at 56; *see ScripsAmerica, Inc. v. Ironridge Global LLC*, 119 F. Supp. 3d 1213, 1260-62 (C.D. Cal. 2015) (rejecting scienter allegations based on alleged pattern of conduct where allegations concerning prior conduct were "unsupported and conclusory"); *In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 221 (S.D.N.Y. 2008) (allegations of dissimilar prior conduct "add little if anything to support an inference of scienter").

**C.    Plaintiffs Do Not Allege Loss Causation as to Mr. Garcia Sr.**

Plaintiffs misconstrue Mr. Garcia Sr.'s loss causation argument. Mr. Garcia Sr. did not argue that the alleged corrective disclosures were required to "reveal his specific role or acts." Opp. at 60-61. Rather, he pointed out that there was no false impression in the market created by his alleged conduct because his participation in the DriveTime transactions and his stock sales were already publicly known, so there was nothing to correct. *See In re Edward D. Jones & Co., L.P. Sec. Litig.*, 2019 WL 2994486, at *7 (E.D. Cal. July 9, 2019) (finding "no causal connection between any actionable omission and [plaintiffs' loss]" where information related to the alleged misconduct was "fully disclosed to the Plaintiffs"); *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 541 (9th Cir. 2024) (affirming dismissal for failure to plead loss causation where alleged corrective disclosure was "untethered from [plaintiff's] allegations"). Plaintiffs' authorities involve circumstances where a corrective disclosure reveals wrongdoing during the

8

class period, but a defendant's specific role is not revealed until after the class period. *See In re Firstenergy Corp.*, 2022 WL 681230 at *29; *New York Hotel Trades Council & Hotel Assoc. of New York City, Inc. Pension Fund v. Impax Laboratories, Inc.*, 843 Fed. App'x 27, 31 (9th Cir. 2021). In contrast here, plaintiffs have pointed to *no* alleged corrective disclosure—either during or after the class period—that revealed previously unknown information regarding the DriveTime transactions or Mr. Garcia Sr.'s stock sales. *See* Br. at 15-16.

Relatedly, Mr. Garcia Sr. showed that none of the alleged corrective disclosures revealed any new information regarding the DriveTime transactions, Mr. Garcia Sr.'s stock trades, or the modifications to his Rule 10b5-1 plan. The Opposition concedes that none of the alleged corrective disclosures touched on any of these matters but argues that Carvana's announcements of "disappointing … financial results" suffice to allege loss causation. Opp. at 59. But, here again, there is a fundamental mismatch between plaintiffs' overall theory of the case and Mr. Garcia Sr.'s alleged conduct. Plaintiffs do not allege that the DriveTime–Carvana transactions (much less Mr. Garcia Sr.'s stock sales) were the proximate cause of Carvana's later sales declines. Rather, they attribute any decline to the *disclosure* of those transactions. *See, e.g.*, ¶¶ 166-72, 308-28. *Mineworkers' Pension Scheme v. First Solar, Inc.*, 881 F.3d 750 (9th Cir. 2018) accordingly does not support a finding that the ACC adequately alleges loss causation with respect to Mr. Garcia Sr.'s allegedly deceptive acts. *See id.* at 753 (in order to establish loss causation, plaintiff must prove fraud was proximate cause of loss); *see also* Carvana Reply at 16-17.

**III.    Plaintiffs Cannot Allege Vicarious Liability Under Section 20(a).**

Plaintiffs' §20(a) claim fails because the ACC does not allege a predicate §10(b) violation. *See* Br. at 16 (citing *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 610 (9th Cir. 2014)). It also fails because the ACC does not allege *any specific facts* showing Mr. Garcia Sr.'s day-to-day involvement in Carvana's operations. *Id.* at 16-17.

Plaintiffs essentially argue that Mr. Garcia Sr.'s status as a majority stockholder—without more—is sufficient to make him a control person for *all purposes*. *See* Opp. at 64-65. The Opposition does not cite any law in support of this drastic expansion of Section 20(a). In

the cases cited in the Opposition, the courts did not find control based on the mere fact that the defendant was a majority shareholder; rather, in each of those cases, the court determined that the majority shareholder exercised his voting power to influence the transactions at issue. *See, e.g., Baker v. SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 945-47 (S.D. Cal. 2019) (denying summary judgment where defendant majority shareholder "concede[d] [its] control" to "exercise[] actual power or control over SeaWorld" with respect to statements made for part of the class period).[6] Here, there are no allegations that Mr. Garcia Sr. exercised his voting power to control Carvana's day-to-day operations or disclosures. Courts routinely hold that the "status o[r] position of an alleged controlling person, by itself, is insufficient to presume or warrant a finding of power to control or influence." *Robbins v. Hometown Buffet, Inc.*, 1995 WL 908194, at *8-9 (S.D. Cal. Mar. 16, 1995) (quoting *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1441 (9th Cir. 1987)).

Plaintiffs also erect a strawman, asserting that Mr. Garcia Sr.'s "lack of an official day-to-day position . . . has no relevance under §20(a)." Opp. at 65. But Mr. Garcia Sr.'s lack of an official position leads to the inescapable inference that Mr. Garcia Sr. did not "participat[e] in [the] day-to-day affairs" of Carvana—the relevant test for control. *See Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 690 F. Supp. 2d 959, 971 (D. Ariz. 2010) (dismissing Section 20 claim). Plaintiffs' conclusory allegations that Mr. Garcia Sr. "controlled Carvana's operations behind the scenes" do not come close to meeting this pleading requirement. *See id.*; *see also No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 845-46 (9th Cir. 2003) ("Whether [the defendant] is a controlling person . . . involve[s] scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions."). The ACC's reference to

---

[6] *See also In re Musicmaker.com Sec. Litig.*, 2001 WL 34062431, at *17-18 (C.D. Cal. June 4, 2001) (majority shareholder designated three board members pursuant to an agreement whose disclosure was at issue in the case); *Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at *26 (C.D. Cal. July 1, 2008) (finding control person liability where plaintiffs alleged majority shareholders' "stake in Occam enabled them to control decisions such as Occam's auditing and revenue recognition practices").

a single email between the Mr. Garcia Sr. and Mr. Garcia Jr. regarding a pre-class period offering that is not the subject of any fraud claims similarly does not suffice. The control person inquiry "must revolve around the 'management and policies' of the corporation, not around discrete transactions" or "an isolated corporate action." *Paracor Fin., Inc. v. Gen. Elec. Cap.l Corp.*, 96 F.3d 1151, 1162 (9th Cir. 1996).

### IV.    Plaintiffs' Section 20A Insider Trading Claim Should Be Dismissed.

Plaintiffs' §20A claim also fails because the ACC does not allege a predicate violation. Br. at 17. Separately, the Opposition fails to identify any *specific* MNPI that Mr. Garcia Sr. allegedly possessed during the putative class period, much less that he traded or modified his trading plan based upon such information. *See* Carvana Reply at 28. Plaintiffs' feeble rebuttal that Mr. Garcia Sr.'s alleged participation in the DriveTime transactions somehow establishes MNPI makes no sense. First, the nature of Carvana's business relationship with DriveTime was publicly disclosed. Br. at 7-8. Indeed, the facts plaintiffs allege in support of their argument about nondisclosure are from Carvana's public disclosures. *See* Opp. at 66. Second, under this logic, *any* contract counterparty would be presumed to have MNPI. No authority supports this radical contention. At bottom, the ACC does not contain any non-conclusory allegations showing that Mr. Garcia Sr. had access to non-public company reports, participated in internal meetings, or was provided any specific, non-public information regarding Carvana from any particular person at any particular time. It accordingly does not state a Section 20A claim. *In re Silverlake Grp., LLC Sec. Litig.*, 108 F.4th 1178 (9th Cir. 2024), cited in the Opposition (at 20, n.13) is instructive. Following the lower court's dismissal—which noted that in order to plead a §20A claim, a "plaintiff must plead specific facts to show what information Defendants learned and how and when they learned it," *see* 2022 WL 4485815, at *7 (N.D. Cal. Sept. 27, 2022)—the Ninth Circuit affirmed the ruling, specifically finding allegations that the defendant "often worked at [the company's] offices" and "stayed heavily involved in the Company" insufficient. 108 F.4th at 1193. This case requires the same result.

### CONCLUSION

The claims against Mr. Garcia Sr. should be dismissed with prejudice.

11

Dated: August 28, 2024

**Of Counsel**
Melanie Walker (admitted *pro hac vice*)
melanie.walker@dlapiper.com
2000 Avenue of the Stars #400
Los Angeles, California 90067
310.595.3000

Yan Grinblat (admitted *pro hac vice*)
yan.grinblat@dlapiper.com
444 West Lake Street, Suite 900
Chicago, Illinois 60606
312.368.4000

**DLA PIPER LLP (US)**

By: *s/ Madeline A. Cordray*
    Madeline A. Cordray
    madeline.cordray@us.dlapiper.com
    2525 East Camelback Road, Suite 1000
    Phoenix, Arizona 85016
    480.606.5100

*Attorneys for Defendant*
*Ernest Garcia II*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on August 28, 2024 I electronically filed the foregoing document using the ECF System for the United States District Court for the District of Arizona. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record registered on the ECF system.

*s/ Madeline A. Cordray*

13