# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United Association National Pension Fund, et al., | No. CV-22-02126-PHX-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| Carvana Company, et al., | |
| Defendants. | |

The Court, having received the parties' Stipulated Electronic Discovery Agreement and Order, and good cause appearing,

**IT IS ORDERED** that the Stipulated Electronic Discovery Agreement and Order (Doc. 131) is granted, and the Court will enforce the following provisions:

This Agreement and Order will govern how the parties and the Court manage the production of documents, exhibits, electronically stored information ("ESI"), and other materials or information (collectively, "Documents") in the above-captioned case.

## I.   LIMITATIONS & NON-WAIVER

Pursuant to the terms of this Order, information regarding the search process and ESI practices may be disclosed, but compliance with this Order does not constitute a waiver, by any party, of any objection to the production of particular ESI for any reason, including that it is irrelevant, undiscoverable, or otherwise inadmissible, unduly burdensome or not reasonably accessible, or privileged, nor does it constitute a waiver of any right to discovery by any party. Nothing in this Order shall be construed to affect the

discoverability of information or the admissibility of discoverable information. Nor shall anything in this Order be construed to affect the authenticity of any document or data. Rather, the Federal Rules of Evidence governing the authenticity of any document or data shall apply. All objections to the discoverability, admissibility, authenticity, confidentiality, or production of any documents and ESI are preserved and may be asserted at any time. For the avoidance of doubt, a party's compliance with this Order will not be interpreted to require disclosure of information potentially protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection. All parties preserve all such privileges and protections, and all parties reserve the right to object to any such privileges and protections.

## II.    PRESERVATION

Consistent with the Parties' obligations under the Federal Rules of Civil Procedure, the parties will meet and confer regarding any issues involving preservation, such as, for example, relating to categories or sources of information that are not reasonably accessible or cannot reasonably be preserved because of undue burden or costs as well as categories or sources of responsive information that they have reason to believe have not been preserved.

## III.    IDENTIFICATION OF RESPONSIVE DOCUMENTS

The parties shall meet and confer in an effort to conduct discovery in the most efficient and effective manner. Specifically, the parties agree to disclose and discuss in good faith, search and culling methods used to identify responsive information. The parties will meet and confer on or before March 20, 2025 regarding any proposed limitations on the scope of discovery, including custodians, custodial and non-custodial sources, date ranges, file types, or any additional proposed method to cull documents for review (*e.g.*, search terms, technology-assisted review, predictive coding). The parties will also meet and confer regarding the appropriate methodology for identifying short message format communications such as those from mobile devices or collaborative tools (*e.g.*, text messages, WhatsApp, Slack, Teams, G-Chat, etc.) for production. The parties will not seek

Court intervention regarding the methodology or methodologies to be used to identify responsive information without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

### A.    Sources

The parties will, on or before March 20, 2025, disclose and discuss the custodial and non-custodial data sources likely to contain responsive information. The parties will identify and describe sources likely to contain responsive information that a party asserts should not be searched or are not reasonably accessible and will explain the reasons for such assertions. The parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to reasonably request that files from additional custodial or non-custodial sources be searched and meet and confer regarding such request.

### B.    Identification of Custodians

The parties shall, on or before March 20, 2025, identify persons whose files are likely to contain documents and electronically stored information ("ESI") relating to the subject matter of this litigation. This will include a description of the proposed custodians' job title (including dates of employment by the applicable party). To the extent they exist, the parties will expedite the production of organizational charts to facilitate the identification of appropriate custodians. The parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to reasonably request that files from additional custodians be searched and meet and confer regarding such request.

### C.    Targeted Responsive Documents

Documents and categories of documents that are relevant to this action and responsive to a party's document requests, and that are regularly maintained in a known location, or in a location that is knowable upon reasonable inquiry of those with knowledge about a party's document management, shall be collected without the use of search terms or other agreed-upon advanced search methodology (*e.g.*, analytics, predictive coding,

technology-assisted review). The producing party will indicate which categories of documents and data sources will be produced with and without the use of search terms or other advanced search methodology. Where potentially responsive ESI shall be searched through the use of search terms, the parties agree to follow the process identified below and the parties shall meet and confer regarding any proposed deviation.

D.    **Search Terms**

Where potentially responsive ESI shall be searched through the use of search terms, the parties shall use the process identified below and shall meet and confer regarding any proposed deviation. On or before March 20, 2025, the producing party shall provide a list of proposed search terms, which shall contain the search terms that it believes would lead to the identification of relevant documents. To the extent reasonably possible, search terms will be crafted with input from the custodians in order to identify appropriate nomenclature, code words, etc. Within ten (10) days of receipt of the proposed search terms, the receiving party shall provide any additional search terms that it believes are necessary to identify responsive documents.

Within ten (10) days of receiving the additional search terms, the parties shall meet and confer regarding the proposed search terms. To the extent the producing party does not agree to any of the additional search terms or claims that use of the complete set of search terms is not proportional to the needs of the case or unduly burdensome, the producing party will provide a search term hit list or hit report for the complete set of search terms after global de-duplication (including the number of documents that hit on each term, the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list, with and without families). The parties will use best efforts to agree to a set of search terms within thirty-five (35) days of receipt of the originally proposed search terms.

If disputed terms still exist at the end of the meet-and-confer process, the parties will submit those terms to the Court in the form of a joint discovery letter with a discussion

of the relevance and/or burden associated with those search terms.

### E.   Technology-Assisted Review

If a party intends to use technology assisted review/predictive coding or artificial intelligence for the purpose of culling the documents to be reviewed or produced, it will meet and confer in good faith, prior to implementation, regarding the use of such technologies, including any reasonable disclosures or information regarding the use of such technologies. The parties will not seek Court intervention regarding the intended use of technology assisted review/predictive coding or artificial intelligence for the purpose of culling the documents to be reviewed or produced without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

## IV.   PRODUCTION OF HARD-COPY DOCUMENTS – FORMAT

Hard-copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (i.e., .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME," and "CUSTODIAN." The documents should be logically unitized (i.e., distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business. If a producing party does not produce a hard-copy document in color, a receiving party's reasonable request for the production of a specific document in color will not be denied. The parties will meet and confer on the specific format of any color productions. Multi-page OCR text for each document should also be provided. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

## V.   PRODUCTION OF ESI

### A.   Format

Except where otherwise noted in this section or by agreement of the parties, the parties will produce ESI in single-page, black and white, TIFF Group IV, 300 DPI TIFF images. Spreadsheet and presentation type files, audio, and video files, photo or graphic

images, and documents with tracked changes in the metadata shall be produced in native format. Short message communications (*e.g.*, text messages, WhatsApp, Slack, iMessage, Teams, G-Chat, Bloomberg, etc.), if reasonably feasible, will be converted into RSMF format and produced in image format, with all available metadata and attachments. Short message communications will be produced in 24 hour increments and privileged portions will be redacted as appropriate (unless the entire increment is privileged in which case it will be withheld). To the extent RSMF conversion is not possible, the parties shall meet and confer on the appropriate metadata fields and format of production. PDFs will be produced in color and the parties agree to further meet-and-confer as to whether other document types will also be produced in color. If a document is not initially produced in color, reasonable requests for the production of specific documents in color by the receiving party will not be denied. The parties will meet and confer on the specific format of any color productions. The parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. TIFFs/JPGs will show any and all text, hidden content, and images that would be visible to the reader using the native software that created the document. For example, TIFFs/JPGs of email messages will include the BCC line, and documents will display comments and hidden content. If the image does not accurately reflect the document as it was kept in the usual course of business, including all comments, edits, tracking, etc., the parties agree to meet and confer in good faith on production format options.

If a document is produced in native format, a single-page Bates stamped image slip sheet stating the document has been produced in native format should be provided. Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the parties agree to meet and confer in good faith.

### B.    De-Duplication

Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. The parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. Removal of documents from production using near deduplication and email thread suppression is not acceptable. De-duplication will be done across the entire collection (global de-duplication) and the CUSTODIAN-ALL field will list each custodian, separated by a semicolon, who was a source of that document and the FILEPATH-DUP field will list each file path, separated by a semicolon, that was a source of that document. Should the CUSTODIAN-ALL or FILEPATH-DUP metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents will be produced prior to substantial completion of the document production.

### C.    Metadata

All ESI will be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto, to the extent such metadata is reasonably available. The metadata produced should have the correct encoding to enable preservation of the documents' original language.

For ESI other than email and e-docs that do not conform to the metadata listed in Table 1, such as text messages, Instant Bloomberg, iMessage, Google Chat, MS Teams, Slack, Google Docs, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.

### D.    Embedded Objects

Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved. The embedded files will be marked with a "YES" in the load file under the "Is Embedded" metadata field. The parties

- 7 -

agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

### E.    Attachments

The parties agree that if any part of a communication or its attachments is responsive, the entire communication and attachments will be produced, except any attachments that must be withheld or redacted on the basis of privilege. The parties will meet and confer about whether there is an appropriate basis for withholding a family document for any reason other than attorney-client or work product privilege. The attachments will be produced sequentially after the parent communication.

The parties understand that hyperlinked documents will be collected and produced in this case. The parties shall use their reasonable best efforts to collect documents that are links in documents and communications, including, but not limited to, Google G Suite, Microsoft 365, etc. Where the automatic collection of the hyperlinked document is technologically feasible, reasonable, and not unduly burdensome, the hyperlinked document will be collected. The parties will work diligently and collaboratively to come to a common understanding as to the scope of the collection, review, and production and any other issue that arises. In addition, the parties will work diligently and collaboratively to come to a common understanding as to what is reasonable, technically feasible, and not unduly burdensome (*e.g.*, showing the hyperlinked relationship between documents and producing point-in-time version of hyperlinked documents). To the extent the parties are not able to come to an agreement, any disputes will be promptly raised with the Court.

### F.    Compressed Files Types

Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

### G.    Structured Data

To the extent a response to discovery requires production of electronic information stored in a database, the parties will meet and confer regarding methods of production. The parties will consider whether all relevant information may be provided by querying the

database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

**H.    Encryption**

To maximize the security of information in transit, any media on which documents are produced may be encrypted. In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

**I.    Redactions**

If documents that the parties have agreed to produce in native format need to be redacted, the parties will implement redactions while ensuring that proper formatting and usability are maintained. Spreadsheets requiring redaction will be redacted using native redaction software and produced in native format.

Dated this 11th day of March, 2025.

Michael T. Liburdi
United States District Judge

TABLE 1: METADATA FIELDS[1]

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008 (Unique ID Parent-Child Relationships) | The Document ID number associated with the last page of the last attachment. |
| VOLUME | VOL001 | The name of CD, DVD, or Hard Drive. |
| RECORDTYPE | eMail, Attachment, Scanned Doc, eFile, Chat/Text | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the email or calendar entry was sent. |
| SENTTIME | HH:MM | The time the email or calendar entry was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| MEETING START DATE | MM/DD/YYYY | Start date of calendar entry. |
| MEETING START TIME | HH:MM | Start time of calendar entry. |
| MEETING END | MM/DD/YYYY | End date of calendar entry. |

[1] For ESI other than email and e-docs that do not conform to the metadata listed here, such as text messages, Instant Bloomberg, iMessage, Google Chat, MS Teams, Slack, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.

- 10 -

| Field Name | Example / Format | Description |
| --- | --- | --- |
| DATE | | |
| MEETING END TIME | HH:MM | End time of calendar entry. |
| FILEPATH | i.e. /JsmithPC/Users/Jsmith/ Desktop | The file path from the location in which the document was stored in the usual course of business. This field should be populated for both email and e-files. |
| FILEPATH-DUP | i.e. /JSmith.pst/Inbox /Network Share/Accounting/… /TJohnsonPC/Users/TJ ohnson/My Documents/... | The file paths from the locations in which the duplicate documents were stored in the usual course of business. This field should be populated for both email and e-files and separated by semicolons. |
| AUTHOR | jsmith | The author or owner of a document from extracted metadata. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and email address of the author of an email/calendar item. An email address should always be provided. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email address of the recipient(s) of an email/calendar item. An email address should always be provided for every email if a recipient existed. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the copyee(s) of an email/calendar item. An email address should always be provided for every email if a copyee existed. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the blind copyee(s) of an email or calendar item. An email address should always be provided for every email if a blind copyee existed. |
| SUBJECT | | The subject line of the email/calendar item. |
| IMPORTANCE | Normal, Low, High | Email Importance Flag |
| TITLE | | The extracted document title of a document. |
| CUSTODIAN-ALL | Smith, Joe; Doe, Jane | All of the custodians of a document from which the document |

| Field Name | Example / Format | Description |
|---|---|---|
| | | originated, separated by semicolons. |
| **FILEEXT** | XLS | The file extension of a document. |
| **FILENAME** | Document Name.xls | The file name of a document. |
| **FILESIZE** | Numeric | The file size of a document (including embedded attachments). |
| **TRACK CHANGES** | Yes or No | The yes/no indicator of whether tracked changes exist in the file. |
| **IS EMBEDDED** | Yes or No | The yes/no indicator of whether a file is embedded in another document. |
| **HASH** | | The MD5 or SHA-1 Hash value or "de-duplication key" assigned to a document. The same hash method (MD5 or SHA-1) should be used throughout production. |
| **CONVERSATION INDEX** | | ID used to tie together email threads. |
| **REDACTED** | Yes or Blank | If a document contains a redaction, this field will display 'Yes'. |
| **TIMEZONE PROCESSED** | PST, CST, EST, etc | The time zone the document was processed in. **NOTE**: Documents will be normalized to a single time zone, which shall be the company's corporate headquarters. |
| **NATIVELINK** | D:\NATIVES\ABC00000 1.xls | The full path to a native copy of a document. |
| **FULLTEXT** | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding Bates numbers. **Note**: Emails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |