UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

__________________

| | | |
|---|---|---|
| **United Association National Pension Fund, et al.,** | ) | No. 2:22-cv-02126-MTL |
| Plaintiffs, | ) | |
| vs. | ) | Phoenix, Arizona<br>June 23, 2025<br>1:56 p.m. |
| **Carvana Company, et al.,** | ) | |
| Defendants. | ) | |

**BEFORE: THE HONORABLE JOHN Z. BOYLE, MAGISTRATE JUDGE**

**TRANSCRIPT OF PROCEEDINGS**

**HEARING ON DISCOVERY DISPUTE**

Transcriptionist:
**Cathy J. Taylor, RMR, CRR, CRC**
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 31
Phoenix, Arizona 85003-2151
(602) 322-7249

Proceedings Recorded by Electronic Sound Recording
Transcript Produced by Transcriptionist

**A P P E A R A N C E S**

For the Plaintiffs:
ROBBINS GELLER RUDMAN & DOWD, LLP
By: **Rachel A. Cocalis, Esq.**
**Tor Gronborg, Esq.**
655 West Broadway, Suite 1900
San Diego, California 92101

For the Defendants Carvana, et al.:
LATHAM & WATKINS
By: **James Christian Word, Esq.**
555 11th Street NW, Suite 1000
Washington, DC 20004-1304

FENNEMORE CRAIG, PC
By: **Ms. Andrea Lynn Marconi, Esq.**
2394 East Camelback Road, Suite 600
Phoenix, Arizona 85016

For the Defendants Citigroup Global Markets, Incorporated, and J.P. Morgan Securities, LLC:
PAUL WEISS RIFKIND WHARTON & GARRISON, LLP
By: **Susanna M. Buergel, Esq.**
1285 Avenue of the Americas
New York, New York 10019

For Defendant Ernest Garcia, Sr.:
DLA PIPER, LLP
By: **Melanie E. Walker, Esq.**
2000 Avenue of the Stars, Suite 400
Los Angeles, California 90067

**P R O C E E D I N G S**

(Court was called to order by the courtroom deputy.)

(Proceedings commence at 1:56 p.m.)

THE COURTROOM DEPUTY: All rise. The Honorable John Z. Boyle is now presiding.

THE COURT: Thank you. Please be seated.

THE COURTROOM DEPUTY: This is Civil Case Number 22-2126, United Association National Pension Fund vs. Carvana Company, before the Court for a discovery dispute.

Will the parties please announce for the record starting with the plaintiffs.

MS. COCALIS: Rachel Cocalis on behalf of the plaintiffs.

THE COURT: All right. Good morning -- or good afternoon.

MR. GRONBORG: Tor Gronborg, Robbins Geller Rudman & Dowd, also on behalf of the plaintiffs.

THE COURT: All right. Good afternoon. Thank --

MR. GRONBORG: Good afternoon --

THE COURT: -- you.

MR. GRONBORG: -- Your Honor.

MS. MARCONI: Good afternoon, Your Honor. Melanie Walker on behalf of Ernest Garcia, Sr.

MR. WORD: Good afternoon, Your Honor. Christian Word of Latham & Watkins. I represent the Carvana defendants.

THE COURT: All right. Good afternoon.

MS. BUERGEL: Good afternoon, Your Honor. Suzanna Buergel from Paul Weiss for the underwriter defendants.

THE COURT: Okay. Thank you.

MS. MARCONI: Good morning, Your Honor. Andrea Marconi, Fennemore Craig, for the Carvana defendants and the underwriter defendants as well.

THE COURT: Give me one moment. Thank you.

All right. Good afternoon, everyone.

So, first, I try to avoid having people come in for discovery disputes, but given the scope of the case -- and I don't know how far we'll go into this in the future. I do appreciate you coming here for this, but as we go forward, if there are more issues that pop up, I'm happy to do these either through a video teleconference or over the phone, as I normally handle them. And, obviously, I've handled hundreds of these, dozens from district judges that have come down. A little different for a class action. We don't get these normally.

So my plan today is to start with 154. And then 155 shouldn't take very long. Let me tell you what I've done and give you a roadmap of what I think how we should approach this.

So, obviously, I looked at what you filed at 154, and then I went through the motion to dismiss and the operative complaint. And I ended up right where you both were, which was: Okay. What did Judge Liburdi mean in his motion to

dismiss when he basically cut out everything except for 1 through 8 and 19 through 20.

That's how I look at this. Like what did he mean? Did he just keep this down to the title and registration issue, or is it broader than that?

And that's what you briefed to me. In the discovery context, obviously this is typically more broad, but let me just cut to it.

There are two legitimate ways to review this. You could -- you -- both of them are -- are a fair way of reading this. I have the advantage of the fact that I can just call Judge Liburdi. And to save you all time, that's what I did. I haven't done that before. As I mentioned, I've had this for more than 10 years, and I've just never needed to call a judge on this. But I just -- why should I just try and guess like you and figure out what the judge meant instead of just contacting him and asking -- and said: What's the scope of this for the purpose of discovery, not for the summary judgment?

It did align with how I looked at this at the beginning, which is that I went to 19 and 20 because -- and 1 through 8 because that's what's left. Everything else is dismissed with prejudice. So that "with prejudice" said to me that what you're left was 19 through 20, 1 through 8.

So I'm at page 139 of Doc. 71. This is the -- I think

the operative complaint. Paragraph 211. But -- and this is just above where it says -- it's Section C again. Document 71, 139. What does statement 19 allege?

And there, as I see it -- I'm on lines 12 to 15. "The sales in violation of title and registration laws and regulations; (ii) 'less profitable sales'; (iii) trade-in sales; (iv) 'sales that were less profitable.'"

According to Judge Liburdi, that is broader than just the T&R.

So, in short, it -- the plaintiff is looking like you're going to have the advantage on this, and you're going to prevail on the idea that the discovery in the case is not going to be just related to the title and registration issue, even though that language, of course, is in the motion to -- or the order dismissing chunks of this case. For the purpose of discovery, because 1, 2, 3, and 4 are in here, and those are broader than title and registration, the discovery will be broader.

So I hope you're not frustrated by the fact that I could have had you just argue these points to me. And I'm happy to do that, because I'm still going to write up this order, and it's still appealable to Judge Liburdi. And in that context, you -- he will have the final word, of course, because this is his case.

But I just didn't think it was fair to have you all

argue to me what you thought Judge Liburdi meant when I've got a sense already of what it was. Just more efficient to tell you and then see if we can use our time effectively today.

I will write my order promptly. If you have issues with it, of course, you don't have to take my word for it. You get a chance to take this up with Judge Liburdi, but this just seemed like the quickest way to get through this.

So I am not curtailing any argument on what you filed here. And then I do think there was some -- I did go through the RFPs at 154-5. There might be some outstanding questions that you might want me to resolve, and we could go through those. I have that prepared.

I don't think I need to turn to plaintiffs here. So given what I've mentioned from the outset, I thought you might think of it as like a prospective ruling.

But from the defense side, who would like to talk more about 154?

MR. WORD: Thank you, Your Honor. Christian Word again --

THE COURT: Yeah.

MR. WORD: -- on behalf of the Carvana defendants.

And I appreciate you cutting to the chase on that, everyone's time. We appreciate it by that.

So I don't assume I could persuade you that, look, what Judge Liburdi told you is not what he thinks the

opinion --

THE COURT: I -- I could make any record you want, because if there's something that's im- -- that's improper about this, certainly it's appealable not only to him, but otherwise, so -- and, by the way, you all are welcome to stand. I know we always stand in federal court, but for the purposes of today you can sit if you wish. I don't know that you need to come up here unless there's something you need to do, because you have all your documents with you. So -- but given that your computers and what you might have in front of you, if you want to remain seated as well. We don't normally do that here. You have permission to do that.

Please continue.

MR. WORD: I note that you're standing. I have a standing desk, too. I actually prefer to stand.

THE COURT: Yeah, I've done it since I started. So either way's fine with me, but go ahead.

MR. WORD: And I -- appreciating the Court's time as well, I'm not going to belabor this point --

THE COURT: Okay.

MR. WORD: -- that Judge Liburdi's decision is what it is. And he, of course, is the only one who can tell us definitively what it means. I think the language is somewhat ambiguous. I do think, you know, the Ninth Circuit has cautioned us at times -- several times, you know, not to treat

judicial opinions like statutes. There aren't statutory construction rules for interpreting an opinion. And judges are deciding cases, deciding issues, and they're not -- not thinking that each word is going to be parsed. And that's one of the issues I have with the plaintiffs' argument.

But more than that -- let's move beyond that, because, again, I appreciate what Judge Liburdi's told you. My problem comes -- and I can appreciate -- this is what I will raise with Judge Liburdi, is that other components of the decision only focus on T&R. So if it's a securities class action -- excuse me. For a securities claim under Section 10(b) there are numerous elements. He dealt with falsity. And that's mostly what we've discussed so far, is falsity, and whether or not certain statements were false. And when it comes to the retail retail sale -- retail unit sales, Judge Liburdi indicated that maybe these factors were in them. He's clarified now that they are all in and provided a basis for that statement to be false.

But then when you step beyond that to the next elements, scienter, for example, all of the allegations that Judge Liburdi credited for purposes of saying that each of these defendants have the requisite level of intent to commit securities fraud deal with T&R. There's not a single one he identifies about any of the other factors.

So how is it that statement could -- I mean, the statement might be false and misleading, properly pled for that

purpose, but there's no evidence, no finding in his opinion that suggests that anybody made those statements with the requisite intent. So that would be my first point.

And then the second one is -- is a corollary. The last elements that a plaintiff has to plead is lost causation. And Judge Liburdi rejected all of the non-T&R corrected disclosures. What that means is that plaintiffs don't have a loss that they can tie to any other element other than title and registration.

And so for that purpose, it just it's -- I'm not sure how it fits in the case. And maybe your -- your conclusion's to summary judgment where it comes out, or class cert or something, in discovery. You know, this greatly expands the scope of discovery from T&R, which is arguably a very large issue anyway, to basically everything at the company. Because you're talking about the foundation of the company, its entire business model. And I just worry that we're going to spend lots of money on discovery on topics that there's no scienter for and there's no loss causation pled and approved. So we just get in a position where we're going to have discovery into all these issues, but it's for not. My client's just going to waste millions and millions of dollars. My client's going to waste lots of time in discovery on statements and issues that cannot support a securities fraud violation because there's no scienter and there's no loss causation. And, quite frankly,

that was the whole purpose of the Reform Act; right? As Congress said: Look, we -- we don't want claims that don't survive a basic motion to dismiss to proceed.

And so, again, appreciating the Court's time, I'll cut it off there --

THE COURT: This is --

MR. WORD: -- but that's -- those are my points.

THE COURT: Yeah, let's have a conversation about how I read this as well, which is -- and, to be clear, this is -- you know, the parameter of me ruling on this, I just -- this is the one case I did seem to get the -- you know, input from Judge Liburdi would be valuable just to save time.

But let's talk about paragraph 211, because I get your point. It looks like everything's been carved out except for title and registration. But 2- -- under paragraph 211, you still have a case for you all.

What's the scope of this case? What are you trying, you know, if this case goes to trial; right?

You're saying, we're just trying these issues as they relate to title and registration, but you still have these -- these subparagraphs of a less profitable sales, trade and sales, sales that were less profitable in an immediate period.

Like, that seems broader to me than title and registration. So by carving out everything except 19 and 20, like you said, which supports your argument, it does seem like

there's still these -- these other facets of the case that are still here.

MR. WORD: There are --

THE COURT: Your thoughts?

MR. WORD: And those are the -- the sort of drivers or devices and artifaces that plaintiffs identify as animating their retail unit sales statement --

THE COURT: Right.

MR. WORD: -- right?

Judge Liburdi, however, dealt with those in other parts of the opinion. And so you might ask him: Well, why when it comes to the Court's role -- the opinion that matters where Judge Liburdi mentions this, does he only mention DriveTime and T&R?

All right. But that's what he does: He says, for example, some of these have been disclosed. DriveTime, for example, it was disclosed. He says for others, like T&R, that wasn't disclosed. And so to claim this is sufficient to plead a false statement.

And plaintiffs make an argument, you know, the he used the plural word "practices" and things like that. But, again, he's gone through already and said that these other issues were disclosed. He held -- and that's why he dismissed the statements regarding those claims.

So they match -- they match it perfectly. It's the --

this -- the same portions of the false statements, the other false statements that Judge Liburdi dismissed animate the retail units in the sales claim, too.

And so I have a presentation. It seems unnecessary now. But, for example, there -- in the complaint, there were six categories of motions -- of misstatements alleged.

THE COURT: Right.

MR. WORD: T&R, purchases, retail unit sales, expansion, aged inventory and profitability.

Now, we've -- and Judge Liburdi got rid of all of those except, as you pointed out, title and registration and retail unit sales.

Now, retail unit sales had five components that animated these five components you're identifying as paragraph 211. The first was title and registration. No debate. That one's in. Judge Liburdi said that.

THE COURT: No question.

MR. WORD: Expansion. Well, Judge Liburdi already said the expansion claims are out.

Purchases. Same thing. He said that purchases claims are out. They hadn't been pled. There wasn't -- Carvana hadn't disclosed sufficient information.

Profitability. Same thing. Plaintiffs' allegation is that Carvana hid that it was -- that it was selling cars unprofitably. No. That was the entire business model, is what

Judge Liburdi said. That was well public. So those three things are public, along with the DriveTime; right? Because he says in this paragraph that one's public.

How can those either four items besides T&R still be in the case? Because he's already held there weren't false statements based upon those.

THE COURT: So let me ask you -- I'm looking at his order at 105, page 25. And this is right where I'm sure everyone honed in on as well, which is the language in his order that at the same time -- I'm on line 25. Again, 105, page 25, line 25.

"At the same time, some of Carvana's other expansion practices, such as the alleged practice of selling vehicles without proper title and registration, may not have been known to investors a later date. Therefore, they alleged a material omission as to these statements, and Defendants' truth-on-the-market defense shall be reserved for another day," which, of course, is summary judgment."

And I take plaintiffs' argument to be when he -- this language does not say explicitly this is the only -- this is the gray area, I think, why we're here.

MR. WORD: Yeah.

THE COURT: The order itself does not say: This is all that's left, parties. It says: This is something that is left.

And does that "something that is left" mean that everything you've just described is automatically out because he excluded it before and dismissed it with prejudice?

You get to reserve that for another day. But I'm sympathetic to the point that now you have these discovery issues on a broader case. And I -- as I read it, my understanding in reviewing this as well is -- is that for the purpose of discovery -- and this has no bearing on summary judgment, of course. I have nothing to do with that. Your discovery's going to be as broad as I started before, which is 19 is in, page 139, 1 through 4, for example. That's been left in. Those four subsections broader than what you've described, but it's -- I think that's the scope of discovery.

So am I missing anything so far? I know you've made your points; I've made mine.

MR. WORD: No. I mean, I --

THE COURT: Is it clear?

MR. WORD: I can't -- yeah. I mean, your order's perfectly clear.

THE COURT: Okay.

MR. WORD: It's the language was ambiguous. We did our best to try to interpret it. The plaintiffs did the same thing. We happen to carry the day of what Judge Liburdi meant. And I'm not sure that anyone could be the arbiter of his words other than him.

THE COURT: Okay.

MR. WORD: But I will take it up with him.

These points, I don't think it's consistent, then, the other portions of his opinion, to try to clarify from him what this means going forward.

Are we really going to do discovery into issues that we already know can't provide a basis for securities law liability? Because in that case, again, we're wasting millions of dollars for no reason at all. And so -- and -- and he might have an answer. I just -- in reading the opinion, I don't see how he spends 73 pages trimming this case down to these issues and then in a single paragraph brings all of the issues back in. I mean, we got rid of so much. So much that the plaintiffs' gone, the allegations and the topics and then everything just gets backdoored in in perhaps the use of a plural when he didn't mean to use a plural. I point out as well -- I mean, it's -- again, "practices" is how plaintiffs refer to T&R, T&R practices. That's what they said. They didn't -- it wasn't the practice. It was the T&R practice.

So I -- you know, I'll make all those arguments to Judge Liburdi. I appreciate your time and, again, cutting this to the chase.

THE COURT: Anything else you want to add before I turn to co-counsel?

You all will get an opportunity to address these

points.

MS. WALKER: No. I have nothing to add on that. Understand the ruling. And I'm really here to argue 155, so --

THE COURT: Okay.

MS. WALKER: -- I'll turn it over to plaintiffs.

THE COURT: And -- okay. Just the two of you? I know other people announced.

UNIDENTIFIED FEMALE VOICE: We have nothing to add. We join in the arguments advanced by the company.

THE COURT: Okay. All right. With that, you get the opportunity here to make a record. I know that you -- not just -- not dissatisfied, but, nonetheless, why don't you address the point that is fairly made, which is the judge has cut out everything but 1 through 8 and 19 and 20. And it pretty much, in many ways, cut out everything but title and registration, although, as you've heard from me and I described Sections 1 through 4 on page 139, it's -- that is left in there and that's broader.

But what would you like to argue on this point?

MS. COCALIS: Sure, Your Honor. Thank you.

So I would just point out that this scheme liability claim also, the Carvana defendants moved to dismiss that claim, and Judge Liburdi rejected that motion. So that is still at play. And plaintiffs allege seven artifaces, without the majority of which don't involve title and registration. So I

just want to make that point clear as well.

And then as to your question as to whether they were all dismissed, I would say that's not true. The Court acknowledged that the defendants made a disclosure regarding DriveTime. He also acknowledged in the order at page 36 that plaintiffs challenged the adequacy of that disclosure, and it was never part of another false statement.

I would also say that the statements are different. So, for example, one of the artifaces is the fact that defendants' internal sales calculation incorporated, you know, a metric and -- or a future sales into it, and that was not a part of another false statement. So there's not -- you know, they're saying everything was dismissed, it all equals up, but I would argue that's not true.

THE COURT: Okay.

MS. COCALIS: And to the last point regarding scienter, the Court did discuss the drivers of retail sales in the scienter section at -- let me see -- at page 50. So he mentioned title and registration and defendants must have known of the drivers of its retail unit sales.

THE COURT: Okay. So let me be clear. I will draft an order. This is how I looked at the case as well. You get to appeal the order and perhaps address this issue of scope to -- just to be clear, my order here is merely about discovery, which, of course, is expensive. This is a huge

case. So I don't know if we need to talk about proportionality, but I doubt it given where we're at on this, these allegations. But I just want to make that clear.

I -- it's a little unusual for me to say I've contacted your district judge and say, what -- where are you at on this, but it's just better, you know. It -- I've done enough of these that this was the exception. And it gives you the chance to now hone in on what -- what kind of case are you trying and -- and that you maybe are too early for that for those purposes.

Anything else to add?

MR. WORD: Yeah. No, no. And I -- I -- if I didn't say it enough before, I really appreciate you reaching --

THE COURT: Okay.

MR. WORD: -- out to Judge Liburdi --

THE COURT: Okay.

MR. WORD: -- because I do think that made this much easier and got us to the right answer; right? I mean, we know now.

One thing I do want to understand, though, is these five artifaces that animate the --

THE COURT: Right.

MR. WORD: -- retail unit sales, that discovery -- I'm trying to see where this goes. The discovery that you're going to order for that is only for those components with respect to

those specific statements; right?

I mean, I might be too unclear on that. So for the securities case, we're all driven by statements, for the most part --

THE COURT: Right.

MR. WORD: -- right?

And so I want to know, is the discovery about -- say DriveTime. Is DriveTime relevant only at that point in time of that actual statement? So what was known then what DriveTime was going on and what was disclosed then at the time of that statement, or is it just for all purposes of the case the whole time period?

THE COURT: I think it's broad. Why -- why wouldn't it be?

MR. WORD: Because it doesn't -- these statements -- again, he dismissed the statements --

THE COURT: Sure.

MR. WORD: -- right? So those statements are gone. This discovery's only relevant to the two retail unit sales statements; right?

And so discovery -- like you could go look at DriveTime back to the beginning of DriveTime's existence; right?

But it seems to me that we're talking about only the retail unit sales statements, so discovery should be cabined

around those statements and not every other issue related to DriveTime. To the extent -- to the extent DriveTime was a driver of retail unit sales, it seems like that's what you're saying is in.

I -- just I know we're going to have stiff debates about this amongst ourselves. I'm just trying to understand, are you going to specify that in your order, or are you just going to say it's in and it's up to the parties to try to negotiate that?

THE COURT: I would try to allow you to fashion what you think is the correct scope and then come back here if that doesn't work now that you have the -- the larger parameter, otherwise we're going to spend a -- I think quite a bit of time parsing, which might be better off done by you.

But I'm happy to -- if you -- if you all are ready to -- to do this right now. It's more efficiently done, I think, between you all, and then we get you on the phone if there are little carve-outs.

MR. WORD: I think so, too.

THE COURT: Okay.

MR. WORD: I mean, I'm just trying to understand the scope -- of what you envisioned in your order, whether you were going to say it's all -- it's for all time, or you're just going to say essentially what Judge Liburdi told you, which is that these five drivers, per set discovery, are in the case

with respect to the retail unit sales statements.

THE COURT: Yeah. I saw it as pretty broad. I don't have that specific from him, but I did see it broader than that.

MR. WORD: Okay. Great. Thank you, Your Honor.

THE COURT: Okay. How -- let me ask the plaintiffs this: How -- do you anticipate there -- this -- there'd be -- be any significant discovery issues you need to have me address right now, or do you think you're -- you agree that you're better to meet and confer and go through this and then come back with --

MS. COCALIS: I --

THE COURT: -- specifics?

MS. COCALIS: Oh, I'm sorry.

THE COURT: Go ahead.

MS. COCALIS: Excuse me. I think it would be good to meet and confer. I'm not sure I quite understand the point, and we can flush it out further. And I would, again, say that the scheme claim against the Carvana defendants is -- well, particularly Carvana, Garcia, Jr., and Jenkins, is still in. And so to start cabining it off now would be a little premature. And hopefully we can reach a resolution.

THE COURT: It does seem, then, it would be helpful if I say what's in and out of my order so you can appeal it and then have a final resolution with Judge Liburdi.

MR. WORD: I appreciate that, Your Honor. Yeah.

THE COURT: Doesn't that just save time?

MS. COCALIS: Sure. But do you mean you're going to set a time period? Is that --

THE COURT: I'd like your input on what -- I would like to address these things. My goal here is just to simplify this. This is going to be a lot of discovery. And, again, you -- you're all looking at scope of the case, what are you defending later on. How wide does this go given the fact the judge has carved out a whole bunch of this?

So I don't know. That's a summary judgment question. I don't have the answer to that. I don't know that Judge Liburdi does. But I'm sympathetic to the idea that you're diving into discovery that might not -- what -- this doesn't have to be admissible. It just has to be relevant for discovery purposes. But even -- it's not relevant if it's not part of the case. So what I'm trying to do is at least set you up so that you can go back and get the final ruling from your district judge on where do you stand on -- on really this main issue of what's the scope of the trial of this case.

So you both made good arguments. I think by setting this up in the discovery context, which is typically broader, maybe you can get some more clarification from Judge Liburdi. And I can -- I can help you with that by putting that in my order. However, if it's better for you all

to meet and confer and go through that in a -- you know, over the next time frame, four weeks, whatever you want to pick, and then say to me, here's what we've agreed on, we all agree this is in and here's the gray area we don't know about, it'll give you time to think about it. And you can come back, and then you can have an even more precise order from me, and then that you appeal to Judge Liburdi. It's pretty prompt. And I'd be happy to do this quickly so that we also make it somewhat easy for him.

So that's my suggestion --

MR. WORD: Yeah.

THE COURT: -- is if you meet and confer, decide what you agree on certainly's coming in and then, like, here are the three gray areas you don't know about -- you identify for the Court, here's what we're unclear about, I rule on that, and then you appeal it, I assume, hopefully, all right, assuming you do that, and then you get a final order from the district judge, and then you're off. Because your discovery goes until 2026. Your fact discovery, I -- May 29, 2026. So we're in June. We do this process over the next six weeks or eight weeks, whatever your time frame is. Maybe that's the most efficient way to do it.

So your thoughts?

MR. WORD: Yes. I'm sort of rethinking it the way you laid it out there. I won't be in a position to essentially

agree --

THE COURT: Correct.

MR. WORD: -- that these issues are, it's my position, before Judge Liburdi. It's going to be that, hey, for the other reasons in your opinion, these statements should be out. There's no reason to have discovery.

So I don't know how much agreement we'll get other than in the world where if these are in --

THE COURT: Correct.

MR. WORD: -- these may not be.

And so I -- I don't want to inject more ambiguity in your order, whereas if you just say what it is, we'll let Judge Liburdi -- we'll put all this stuff before him, that might be more expeditious. But I feel -- I can see it both ways.

THE COURT: Yeah. You're certainly not agreeing to any of this. My point is whether you want to take a run at all of these issues without having me get your input. Again, if that's easier for you and it's faster and you -- it takes less time with me because you don't have to double brief this, then we can do it that way. You all can meet and confer and then appeal whatever you wish. And I'll give you plenty of time to do that. Normally there's a deadline for appeals for these orders, but if we build that in ahead of time, that you have the time to meet and confer after I rule, that's longer than

normal. And it's the summer. I can give you four, six weeks.

MR. WORD: I don't think we need that much time.

Do you? I mean, can you meet this week sometime.

MS. COCALIS: Yeah, we can meet this week, but I would say just give us, like, two weeks --

MR. WORD: Yeah, uh-huh.

MS. COCALIS: -- to -- to --

MR. WORD: To go back and forth --

MS. COCALIS: Yeah.

MR. WORD: -- a couple of times? Yeah.

So two weeks will be sufficient, I think, Your Honor.

THE COURT: All right.

MR. GRONBORG: Sorry. Just make sure we're all on the same page.

THE COURT: Yeah.

MR. GRONBORG: I understood you to be saying you were going to issue the order --

THE COURT: I --

MR. GRONBORG: -- and give us time to meet and --

THE COURT: Correct.

MR. GRONBORG: -- confer.

THE COURT: Well, I was giving --

MR. GRONBORG: So --

THE COURT: -- you either option. I could --

MR. GRONBORG: Okay.

THE COURT: I could have you meet and confer and file a notice with the Court of what you agree to and what you would like clarified, and then I can issue an order. That, I don't think, is what we're doing. Instead what we're going to do is I'm going to issue my order and give you two weeks, then two more weeks to file briefing, and then that will go to Judge Liburdi, and he can give you the scope. And I think that's the plan we're on.

MR. WORD: Yeah.

MS. COCALIS: Okay. Great.

THE COURT: Okay. So, to be clear, I assume you'll be re- -- you want to file first, or do you want to file a joint motion?

I doubt you do. I assume, if you're going to object to the ruling, you're going to file an objection.

MR. WORD: Yeah. That would be my preferred -- preferred path. We'll file our objection, and they can oppose it.

THE COURT: Okay. After the -- my order is filed, how much time do you want?

MR. WORD: Sorry, Your Honor.

THE COURT: That's fine.

MR. WORD: Just conferring. I have obligations on that.

THE COURT: No. Please take your time.

MR. WORD: Two weeks, Your Honor, would be sufficient --

THE COURT: Okay.

MR. WORD: -- after you rule.

THE COURT: Response two weeks after?

MS. COCALIS: Yeah, that'd be great.

THE COURT: Okay.

MS. COCALIS: Thank you.

THE COURT: All right. We don't usually do replies on discovery, so response -- or objection and a response will be sufficient.

Anything else on 154?

MR. WORD: No, Your Honor.

UNIDENTIFIED FEMALE VOICE: Thank you. Nothing.

THE COURT: So 155. Well, let me go back, actually, on 154, because I do have a question. I went through the RFPs.

Do you want to be heard on any of these? I mean, they're -- I'm looking at 154-5, RFP 9. I don't know that we want to dive into every one of these. It's long.

But anything to add from plaintiffs on 154-5?

MS. COCALIS: I -- no. I would say that we've offered to narrow some of the requests. And I think, you know, given your order, I think the parties will meet and confer to -- to kind of resolve any disputes. But I think the basic dispute now is sort of where we're at. It's a relevance dispute. And

I think if there are any issues, we could probably come to you. But hopefully there won't need to be any.

THE COURT: Okay.

MR. WORD: I think that's right, Your Honor. We'll be -- I think we'll be able to dive into these in more detail with your order in our dispute narrative.

THE COURT: That's fine. I mean, for example, I was looking at RFP 9, which is they're -- you're not producing something, but it doesn't appear there's anything for me to rule on there. So I'll let you all continue to work on this and come back to me if you need to.

UNIDENTIFIED FEMALE VOICE: Thank you.

THE COURT: Okay. So that stops 154 for today.

155. Let me tell you how I look at this. I don't see the rules requiring the disclosure of all witnesses right now. My thought on this was that, you know, a CEO of a company -- I'm just giving you a hypothetical -- might not remember every memo that came from everyone in the organization. Later on might realize through discovery that, oh, the CFO sent me something. I forgot about this.

So I don't see that right now that this has to be dis- -- that every affirmative witness has to be disclosed, but it does have to be done. It seems to me it has to be done before any deposition.

So my initial takeaway on this was the disclosure

needs to be made, but it's -- it should happen, you know, a week before any deposition. And that gives each side a chance to prepare. You get a chance to go through discovery and -- and you know how to defend your case -- how to go forward with your case, and you get a deposition that's fully disclosed.

So let me turn to plaintiffs.

MR. GRONBORG: Thank you, Your Honor.

I agree with you that obviously you could have a hypothetical where a CEO doesn't remember and their memory is jogged as they go through. I guess what I disagree is the point of not every witness has to be disclosed now, where I do think Rule 26 says if you know, if you do know somebody, you have to and you may use them. So they may be a witness. Not even they will be. They have to be disclosed.

And the issue with having them just be, say, disclosed before a deposition, but the most obvious is whose deposition. And in this case, it's one person. It's Garcia, Sr.

THE COURT: Senior, right.

MR. GRONBORG: He's likely to be deposed near the end of the case.

THE COURT: Yeah.

MR. GRONBORG: If a week before an email says, you know, I'm likely to rely on these 12 people -- or almost going back to square one. If they are, say, third-party experts who haven't been served document requests.

And the -- the real-world concern out of all of this is that we end up near or at the end of discovery, you know, with the Court rightly saying, I gave you guys 18 months, and we're having to go back and say, now we've got to take some extra document requests, we've got to do extra depositions, or alternatively you, the Court, need to say these disclosures were made too late. They should have been made timely and expose on that.

Last point, I really would hate to have an order that said you don't need to disclose until a week before deposition, because that done run counter to the federal rules. Like I said, even that CEO who had no memory of who they got memos from, in the course of discovery, when they -- those memos popped up and they knew, they'd have an obligation to promptly correct or amend those disclosures.

THE COURT: Okay. But that's -- if they are -- if they are allowed to amend with that updated discovery, doesn't go right into your concern, though, that now we might have to do additional disclosures?

You know, I mean, that was your concern about why you didn't think this process was fair. You're still going to have that problem, aren't you?

MR. GRONBORG: It's possible. But, again, let's say Garcia, Sr., with three weeks left in discovery, says, now here are these three people who I'm going to rely on, and it turned

out those memos were produced a year earlier, I'm going to have a grounds to go to the Court and say: They can't rely on those people. They weren't timely deposed.

I shouldn't now have to extend the discovery deadline, or at least that should be the option. If the Court wants to extend the discovery deadline, it can. But it also has the option of saying: You didn't timely -- you didn't follow the rules which required a timely amendment of your disclosure.

And that will matter because, you know, honestly, we're -- you know, we're going to probably be in the position of the ones who say we want to get this thing to trial as fast as possible and being hurt.

And so that -- again, that's not --

THE COURT: Yeah.

MR. GRONBORG: If -- if that CEO, or in this case Mr. Garcia, Sr., like, truly they just -- they don't know who it is who they relied on -- and we talked about this in the meet and confer process -- then, sure, you know, I can't get blood from a stone. But at a minimum -- and even if it was that, which I -- you know, sort of like I can't -- I can't force somebody to get blood from a stone. The -- the results should just be the federal rules should continue to stand, and the defendant has an obligation to timely disclose anyone who they may rely on.

THE COURT: Number 1, one way to perhaps rectify that

concern, or at least ameliorate it, is to move up to the deadline for the disclosure not so close to the end of fact discovery.

But one other issue I might have with your approach is that now the Court's diving in again as to making decisions about whether Garcia, Sr., what he knew or should have known about this discovery, and it -- and, therefore, should have made the disclosure earlier. So at this -- like what I see the Court having to dive into in the future, that's -- your plan has that as a fault.

MR. GRONBORG: It does, but that's what the federal rule says --

THE COURT: Okay.

MR. GRONBORG: -- as the default. I mean, that's just what the federal rules require. And, unfortunately, you know, timely has different meanings in -- in different places and why courts often have to get involved in it.

I would say replacing the federal rules with a regime that just says "make your disclosures by X," you know, the day after document production is done, one, that creates a delay, you know, in a sense of a delay. But, two, even if you have that, some information could come up in the course of a deposition where, you know --

THE COURT: Of course.

MR. GRONBORG: I don't think Garcia, Sr. -- I -- I

doubt they would like to live with a regime that said there's a hard-and-fast deadline of December 1st, 2025. And I'd probably be on their side. And they'd say: Well, that's that not quite fair, because the federal rules let me timely amend whenever it is that I get the information.

So it probably just cuts -- you know, it cuts both ways. There's a point in time where I think they're going to want, you know, exactly what the rule says. And obviously we -- we want to have, you know, what the rule requires.

THE COURT: Okay. I will -- I'll come back to you. Let me hear from the defense.

So, you know, I'm trying to weigh these things, obviously, by setting a deadline here sympathetic to the idea that there might be additional discovery and new amendments and additional depositions, and there should be a -- some disclosure at some point. I also don't want to get our -- you know, I or Judge Liburdi too involved in when Mr. Garcia, Sr., should have known or knew that he was going to rely on these individuals.

So do we move up a deadline and sort of cut this in half so that there is a -- a -- faster deadline than perhaps the one I was proposing and sort of balance both of these?

Your thoughts?

MS. WALKER: Thank you, Your Honor.

I think we don't have a ripe dispute yet is part of

the problem. And we're talking in a lot of hypotheticals. So the purpose of the motion to compel, obviously, is to force a party to disclose information that it's withholding.

Mr. Garcia, Sr., is not withholding information known to him at this time from his initial disclosures. He had an -- he has an affirmative defense that he relied on others. "Others" being people other than himself. He identified in his initial disclosures officers and directors of Carvana that he relied on.

All that we said in the back and forth on -- in the meet and confer process was that if he during discovery identified additional people, either through his memory being refreshed from the scope of the dispute being clarified, we would timely amend. We have always agreed to timely amend. We recommended a date of December to try to give plaintiffs some clarity. They would still have five months, almost six months of discovery left. I don't know that we need a date. We agreed to timely amend. But what we couldn't agree to, and why we're here, is to be limited at the very beginning of discovery to only the people that he put in his initial disclosures and not have the option to amend later or supplement.

And we could not agree to sort of adopt plaintiffs' preferred formulation of his affirmative defense. We have our different affirmative defense. We've disclosed the individuals known to him at this time. We're simply reserving the right

that we have under Rule 26 to timely amend or supplement if we later determine that we should disclose additional people.

If -- if we put a time limit on that, I do think that the December date that we put out is reasonable. At that point we'll have the benefit of documents from the Carvana defendants, from plaintiffs, who I think have nothing related to Mr. Garcia -- Garcia, Sr. But to the extent we -- they do, we'll have that. Plaintiffs will still have five, almost six months to conduct depositions and -- and further discovery. If it needs to be earlier, you know, we certainly would agree to that.

But I just want to make clear we were not trying to --

THE COURT: Oh, I --

MS. WALKER: -- engage in gamesmanship. I'm afraid that we were putting in a -- being put in a position of sort of a gotcha. If we didn't disclose now, we were foreclosed.

THE COURT: You agree, then, under your proposal that after December, whatever -- if that's the deadline, there's no more amendment? You'll have enough discovery to have listed your affirmative defense witnesses?

MS. WALKER: We -- we actually had proposed that to plaintiffs, and they rejected it, which I think is -- is more than generous, because something could come out in --

THE COURT: No.

MS. WALKER: -- a -- in a deposition later.

THE COURT: Sure.

MS. WALKER: You know, and I think then if we try to supplement and, you know, claimants wants to come in and say we've been sandbagged --

THE COURT: No.

MS. WALKER: -- you know, we could have that dispute at that time when it's ripe and when --

THE COURT: That's --

MS. WALKER: -- the Court has all of the facts.

THE COURT: So the answer's yes?

MS. WALKER: But the answer is yes.

THE COURT: Okay.

MR. GRONBORG: Oh, I -- we never understood that to be a proposal. And, honestly, just about everything Ms. Walker said is a very good characterization of our meet and confer. But I suppose if Garcia, Sr., is willing to timely amend up to and through December of 2025 and that's the cutoff, we're fine with that.

THE COURT: That seems right. I mean, it does allow us to administer the case efficiently, which is the main issue here. You heard my thoughts about his needing to amend, if necessary, but also making sure the case goes forward.

So I am in agreement with what you all have said. We'll set a December 31, 2025, deadline for Garcia, Sr.'s disclosure of affirmative witnesses.

Okay. Well, that handles 154 and 155 for today.

Let me turn to plaintiff. Anything else to address?

MS. COCALIS: No, Your Honor.

THE COURT: From the defense?

MR. WORD: Not for the Carvana defendants, Your Honor.

MS. WALKER: Not for Mr. Garcia, Sr. Thank you.

THE COURT: Let me just say before we adjourn that I really want to say that I appreciate you all coming here in person. I am very much in favor of not having discovery disputes like this and requiring you all to -- to come down to court or to travel. So I assume we can handle all of this in the future not doing it this way. So I am thankful for you being here in person. I know that's not the most efficient way to do this. It's been a little unusual overall. And my goal here is not only to give you a clear order, but also to put myself in both of your shoes and see what is the case that you have so that you know what it -- how to try and defend the case going forward.

So I appreciate your input and our discussion. And with that, we're adjourned.

Thank you.

(Proceedings conclude at 2:39 p.m.)

---oOo---

**C E R T I F I C A T E**

I, CATHY J. TAYLOR, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

DATED at Phoenix, Arizona, this 27th day of June, 2025.

/s/Cathy J. Taylor
Cathy J. Taylor