# EXHIBIT 1

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN (CA 200643)
TOR GRONBORG (CA 179109)
ERIKA L. OLIVER (CA 306614)
RACHEL A. COCALIS (CA 312376)
MATTHEW J. BALOTTA (CA 310303)
SARAH A. FALLON (CA 345821)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
ddrosman@rgrdlaw.com
torg@rgrdlaw.com
eoliver@rgrdlaw.com
rcocalis@rgrdlaw.com
mbalotta@rgrdlaw.com
sfallon@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re Carvana Co. Securities Litigation | No. CV-22-2126-PHX-MTL |
| This Document Relates To: | DECLARATION OF JERRY BUI |
|     All Actions. | |

I, Jerry Bui, submit this declaration in support of Lead Plaintiffs United Association National Pension Fund and Saskatchewan Healthcare Employees' Pension Plan's ("Plaintiffs") positions taken in the Joint Discovery Motion in the above-captioned litigation, and declare as follows:

## I.     Background and Expertise

1.      I am a Senior Vice President of Digital Forensics at Purpose Legal with over 20 years of experience in digital investigations and eDiscovery.  I have testified more than 30 times in civil matters as an expert witness.  My expertise includes computer forensics, document metadata, and cloud-based platforms, with a focus on emerging cloud data sources and their impact on eDiscovery workflows.  Over the years, I have led digital forensics practices at several firms (including as Founder & Chief Executive Officer of Right Forensics and Managing Director at FTI Technology Consulting) and have advised international law enforcement bodies like INTERPOL on cutting-edge topics such as the metaverse and synthetic media.  I frequently speak at eDiscovery conferences, and am the author or co-author of multiple peer-reviewed papers on emerging data sources and eDiscovery risk.  I have previously provided expert testimony in matters involving forensic collection of hyperlinked cloud documents, and my opinions here are consistent with that prior work.  *See* Exhibit A.

2.      I have been retained by Plaintiffs in the above-captioned litigation to serve as a consultant on the collection of hyperlinked documents, and I submit this declaration on behalf of Plaintiffs regarding the positions they have taken in the Joint Discovery Motion.

3.      I am generally familiar with the issues related to the hyperlink collection processes that have been raised in this dispute.  I have personal knowledge of the matters set forth herein, and if called upon and sworn as an expert witness, I could and would competently testify thereto.

4.      I understand that Carvana Co. utilized Google Workspace.  I also understand that the Carvana Defendants collected email from Google Workspace by using its native eDiscovery tool: Google Vault.  In addition, I understand that the Carvana Defendants'

- 1 -

counsel has represented that Google Vault's workflow exports only the current, live version of any document that was shared by hyperlink within an email.

5. My experience with Google Workspace environments is both long-standing and hands-on. I have worked with Gmail and Google Drive data preservation for many years. I have closely followed and consulted on the development of advanced solutions, such as Forensic Email Collector ("FEC") by Metaspike, an eDiscovery tool, to address the shortcomings of native Google export tools. I have conferred directly with Arman Gungor, Founder of Metaspike and Developer of FEC, many times over the years about these challenges and solutions. This background gives me direct, firsthand knowledge of both the practical difficulties and the state-of-the-art methods for collecting Gmail messages with their linked Google Drive content, and provides the foundation for my expert opinion on cloud forensics and Google Workspace data management.

## II. Overview of the Collection of Hyperlinked Documents

### A. FEC Becomes the Industry Standard for Modern Attachment Collection

6. Based on my experience, FEC is widely regarded as the industry standard solution for collecting a hyperlinked document (commonly referred to as "modern attachments") in Google Workspace environments. FEC has been available for years, providing capabilities long before Google's own tools caught up. Initially, Google Vault did not support acquiring linked Drive attachments or their revisions at all. FEC stepped in to fill this gap. By 2020, FEC had introduced the ability to capture Google Drive modern attachments and even limit the collection to the latest revision before the email was sent ("contemporaneous versions") – a groundbreaking feature at that time. FEC's design allows for rapidly ingesting hyperlinked Drive items, including current versions and historical revisions, without incurring Application Programming Interface ("API") throttling or export-splitting delays.

7. Because of FEC's head start and unique capabilities designed with eDiscovery needs in mind, FEC became (and remains) the consensus-leading tool that the eDiscovery

- 2 -

and forensic community has relied on to ensure that hyperlinked documents within emails are collected properly and with the appropriate context.

### B. Google Vault Creates a Limited "Modern Attachment" Feature

8.    Google Vault did not offer a way to export any hyperlinked Drive files from Gmail until it created an update in December 2023.  Google Vault's approach to exporting linked files has a fundamental limitation: Google Vault only exports the current version of the Drive document, not the version of the Drive document that existed at the time the email was sent.

9.    The fact that Google Vault can export only the latest file version is a severe limitation.  For example, if a Google Drive document was edited after the parent email that links to it was sent, the Google Vault export will not reflect the content as it was when the email was sent.  Google Vault only captures the file *at export time* (or whenever the legal hold preserved it), which could be very different from what the email's recipient saw at the time.  This is true even though the contemporaneous version (*i.e.*, the version that existed at the time the email was sent) of the file still exists.  Thus, relying on Google Vault alone means that it is extremely likely that a Google Vault collection will be missing or misrepresenting critical evidence.

10.    In sum, it is understood in the eDiscovery industry that Google Vault's new feature for the export of linked files is insufficient for what is needed for complete and efficient eDiscovery.

### III.    The Collection of the Contemporaneous Version of Modern Attachments Is Feasible

11.    FEC can capture the contemporaneous version of modern attachments.  This is because with just one click FEC will automatically retrieve the latest revision before the parent email was sent, meaning the version of a Google Drive file that existed just before or at the moment an email referencing it was sent.  By effectively rolling back time to grab that last revision before the email went out, FEC ensures the email and attachment pairing is authentic to the moment of sending.

- 3 -



*Figure A: FEC's acquisition options (snapshot of FEC v3.14 settings) – note the option "Fetch Only the Latest Revision Before Parent was Sent," which enables the collection of the contemporaneous versions of Google Drive attachments.[1]  FEC will gather both the current version and the contemporaneous version of each linked Drive file, ensuring that the version contemporaneous with the email is preserved.*

12.     The importance of this cannot be overstated.  Consider an example: an email is sent in June 2020 with a hyperlink to a Google Doc; in July 2021 the Google Doc is significantly edited or even overwritten. If one were to rely on Google Vault alone, an export after July 2021 would yield the June 2020 email, but only the July 2021 version of the hyperlinked attachment – not what the email's recipient saw in June 2020. FEC, however, would capture the June 2020 version of the attachment that existed when the email was sent. This approach guards against a scenario where evidence is altered, whether intentionally or simply because living documents continue to evolve after emails are sent in the modern world.

13.     In addition, beyond just collection, FEC excels in how it outputs and organizes the data, making it immediately useful for eDiscovery review.  This is because FEC was

---

[1]     Arman Gungor, Release Notes to *Forensic Email Collector v3.14 Released*, Metaspike (Apr. 1, 2020, 3:36 PM), https://community.metaspike.com/t/forensic-email-collector-v3-14-released/297#:~:text=FEC%20v3,the%20parent%20email%20Image%3A3A%20%3A%2B1%3At.

built with forensic investigations and document review workflows in mind. When FEC collects Gmail messages and their linked Drive attachments, it automatically "marries" the two together – effectively treating the email and its Drive attachments as a family (*i.e.*, parent email with child attachment files). During the export process, FEC creates "Drive attachment packages" that maintain the connection between an email and the linked files. FEC grabs emails (EML or PST) and at the same time pulls any linked Drive files in their native formats. It then bundles them so attachments stay connected to the right emails – using matching filenames, folders, and metadata. The result is a single, well-organized package that slots straight into review tools. Importantly, FEC also creates load files (like CSV or DAT) that spell out which files go with which emails. That means when you upload everything into document review platforms like Relativity, the attachments show up attached to their emails exactly as intended, no extra work required.

14.    In contrast, if one uses Google Vault's exports, one would have to forego seeing the appropriate relationships or go through the laborious process of correlating each Drive file back to the emails and then create a load file that reflects those connections.

15.    The streamlined workflow that results from a FEC export means attorneys can review an email and the attachment together for relevance and context. It also means productions can include complete families in an efficient manner: if an email is deemed relevant and produced, the linked document can be produced alongside it as an attachment (or vice versa), thereby complying with the common eDiscovery practice of producing entire families when any member is relevant. In my experience, this family-based review and production is not only common, but expected in modern eDiscovery. In sum, FEC's output is seamless, efficient, and immediately useful.

16.    I understand that Defendants contend FEC's "Latest Revision" approach might miss certain edge cases – for instance, if a document has dynamic content or if someone adds a comment a moment before an email is sent. In my opinion, such edge scenarios are esoteric and unlikely to defeat the purpose of FEC's method. Google Drive's versioning typically records changes (including edits and often comments if they alter the document)

such that a new version is created when substantive content is added or changed.  Even if a change occurred between the captured revision and the exact send time (with no new version saved), FEC's retrieved version is still a logically better option than the version that exists months or years later.  I also understand that the Carvana Defendants' counsel noted that FEC may not collect the contemporaneous version of a modern attachment if the custodian lacks the requisite permissions to access that document or if the email was deleted and only exists in Google Vault.  For example, Google Vault can export data that is no longer available in the user's active account, such as messages that a user deleted but retained in Google Vault under a legal hold or document retention policy.  By contrast, because FEC operates on the active Google Workspace environment (the live Gmail and Drive data accessible to the user's account), if an email was deleted and is only retained in Google Vault's archives, FEC would not capture it.  However, it is my opinion that this does not detract from utilizing FEC as an eDiscovery tool, and the use of Google Vault, if necessary, for these specific scenarios does not detract from FEC's strengths.  In practice, if this issue were to arise, one could use both FEC for active data (ensuring all current emails and their attachments/revisions are collected in the rich manner described above), and use Google Vault in tandem to collect any residual items (such as already-deleted emails under a legal hold, or confidential mode items).  Moreover, if the Carvana Defendants do need to perform a hybrid collection – using FEC to ingest some mailboxes and others via Google Vault exports – deduplication is seamless and reliable.[2]  In sum, Google Vault's strength is as a safety net for data no longer live in the account.  But, FEC provides a far more powerful and

[2]    Deduplication is entirely feasible.  FEC applies the same hashing algorithm (*e.g.*, MD5 or SHA1) and captures server metadata – such as Internet Message Access Protocol Unique Identifiers, Gmail message/thread IDs, and timestamps – regardless of whether data comes from FEC pulls or Google Vault export. This consistency enables near-exact content matching across all sources.  After exporting Google Vault data (emails in MBOX, attachments in Drive ZIPs), FEC ingests them using its dedicated offline Google Vault workflow.  Since FEC follows the same parsing, hashing, and metadata routines as API-based ingestion, FEC can detect duplicates when Google Vault-collected items overlap with those already ingested.  For Google Drive-based attachments, FEC identifies each document and its revisions by their unique Drive file IDs.  With the collapse duplicates setting, FEC ensures each file is downloaded once – even if referenced multiple times across emails or sourced both from live API and Google Vault exports.

forensically rich collection for the vast majority of active data and especially for linking emails with dynamic attachments.

**IV.  Affirmative Opinions**

17.  Based on my experience, training, and analysis, I conclude as follows:

(a)  The Carvana Defendants' approach fails to meet the baseline requirements of a reasonable collection.  The Carvana Defendants' use of Google Vault alone to collect hyperlinked documents in their current live state fails to preserve the version that existed at the time the email was sent.  Their method also severs parent/child relationships, strips audit-trail metadata, and obscures the evidentiary timeline; and

(b)  Cost-effective, automated means exist to collect contemporaneous versions of hyperlinked documents, capturing what the parties to an email actually knew and saw at the time, which is vital for accuracy, and automatically and efficiently preserves email-attachment relationships in a review-ready format.

**V.  Brief Response to Defendants' Declarations**

18.  I have reviewed the declarations submitted by Scott Polus and Jamie Brown that I understand Defendants provided to Plaintiffs at approximately 5:30 p.m. Pacific Time on July 23, 2025.  None of the critiques set forth in these declarations provide any basis for altering or rejecting my opinions set forth above.  As set forth below, Mr. Polus's and Ms. Brown's primary assertions are in error, misleading, or are not meaningful with regard to assessing the feasibility and practicality of collecting contemporaneous versions of attachments.[3]

- Based on my review of Ms. Brown's background and qualifications, it is my understanding that she has no formal education, training, or professional experience in information technology, data systems architecture, or software engineering.  Ms. Brown is a licensed attorney whose professional focus appears to be legal consulting related to electronic discovery.  Accordingly, her opinions regarding the technical feasibility of producing contemporaneous hyperlinked documents fall outside the scope of her expertise and are not

---

[3]  I have also addressed arguments made by Defendants and now their experts above in Section III.

grounded in any demonstrated technical qualifications. In contrast, assessing whether such documents can be collected, preserved, and produced in a technically feasible manner requires specialized knowledge in system architecture, metadata preservation, and enterprise data workflows – areas in which she does not appear to have any relevant training or experience.

- Mr. Polus and Ms. Brown state that FEC has "never been used" or would not be used on a large scale, such as in this securities class action. *See* Polus Decl., ¶¶19, 21; Brown Decl., ¶¶26-27. This is contrary to my experience. For example, while I worked at Lighthouse, where Ms. Brown now works (Brown Decl., ¶1), I used FEC for large enterprise collections. Since then, I have also used FEC for enterprise collections on extremely large matters without any issue. In addition, government agencies, such as the Department of Justice, also use FEC for large scale productions. Lastly, Ms. Brown has submitted declarations in a large class action, like this one, where the contemporaneous versions of hyperlinked documents were collected and produced and it was shown that it was technologically feasible to do so. *See In re Uber Techs., Inc. Passenger Sexual Assault Litig.*, 2024 WL 1772832, at *2, *4, *6 (N.D. Cal. 2024) (requiring Uber to produce contemporaneous versions of linked documents where technologically feasible); *see also In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 2025 WL 678543, at *1 (N.D. Cal. 2025) ("[I]t has been established that it is technologically feasible for Uber to produce contemporaneous versions of Google Drive files (Google Docs, Sheets, etc.) stored in the normal Google Drive cloud storage system when linked in an email . . . ."); Declaration of Jamie Brown, *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, No. 3:23-md-03084-CRB (N.D. Cal. Apr. 12, 2024), ECF 499-6; Supplemental Declaration of Jamie Brown, *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, No. 3:23-md-03084-CRB (N.D. Cal. Jan. 31, 2024), ECF 2194-10.

- Mr. Polus and Ms. Brown suggest that collections must be done on a "custodian-by-custodian" basis and that FEC may cause problems with de-duplication. Brown Decl., ¶26; Polus Decl., ¶20. This is misleading. When using FEC, one can create a service account and run collections for multiple custodians simultaneously. Further, it is entirely possible to de-duplicate across custodians with collections made from FEC in the same manner that you would de-duplicate from any other source so long as you export the files from each custodian in the same format.

- Ms. Brown and Mr. Polus indicate that there may be logging errors when using FEC during a collection. Brown Decl., ¶26; Polus Decl., ¶20. But logging errors exist, no matter the tool, and are addressed in every collection with quality control processes. There is nothing in my experience to suggest that the use of FEC is likely to generate more logging errors.

- Ms. Brown and Mr. Polus suggest that using FEC could be problematic when collecting from email chains. Brown Decl., ¶ 26; Polus Decl., ¶¶16, 20. This criticism is not applicable to this case. I understand that the Parties have agreed not to use thread suppression and, thus, all iterations of the email chain will be collected. Accordingly, the relevant contemporaneous versions of hyperlinked documents will also be collected.

- Mr. Polus indicates that some hyperlinked documents may not be accessible when using FEC for collection. Polus Decl., ¶17. This situation is an outlier as it is unlikely that an email recipient's access to a hyperlinked document has been removed. In addition, as Ms. Brown conceded, common access-related issues exist in Vault. Brown Decl., ¶26 ("FEC shares the same limitations as Vault when it comes to certain shared documents that are inaccessible (e.g., moved or deleted files).").

- Mr. Polus asserts that using FEC would require it to deviate from its standard workflow. Polus Decl., ¶20. The steps that Repario would have to "develop" are standard processes that eDiscovery vendors must incorporate into their workflows in order to stay relevant in the industry. As Ms. Brown concedes, eDiscovery vendors' workflows must evolve with modern technology. Brown Decl., ¶22 ("As common enterprise tools evolve (e.g., Google Workspace, M365, Slack), eDiscovery technology and eDiscovery vendor workflows similarly evolve.").

19.    I reserve the right to amend or supplement these opinions if additional information becomes available.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on July 24, 2025 in New York, New York.

*Jerry Bui*
_____
Jerry Bui
Senior Vice President, Digital Forensics
Purpose Legal

# EXHIBIT A

**purpose**



**Jerry Bui**
*Senior Vice President, Digital Forensics*
Office: (469) 949-8914
Direct: (714) 334-3673
Email: jerryb@purposelegal.io

Jerry Bui is a testifying expert witness in digital forensics. He is a keynote speaker and thought leader with over 20 years of experience assisting clients with emerging technology related aspects of investigations and he has testified 30+ times in support of civil matters.

Mr. Bui's clients include major companies within the areas of pharmaceutical life sciences, medical device, big tech, and other industries. His practice primarily focuses on emerging data sources in the cloud and the impact they have on eDiscovery workflows. He regularly assists clients through all phases of investigations; helping them to understand their options when responding to government subpoenas and requests from opposing parties. He also assists his clients to attack the methods and procedures used by opposing experts. Mr. Bui has testified in support of civil spoliation motions as well as on topics such as proper digital forensics procedures, the adequacy of efforts undertaken by opposing parties and topic related to the theft of trade secret information.

Mr. Bui is often personally requested to conduct in-depth forensic examinations of computers used by key persons of interest and to provide expert courtroom testimony to support his findings. In addition to his client-based responsibilities, Mr. Bui is an advisor to INTERPOL on their Metaverse and Synthetic Media Expert Groups. He does annual pro bono work in the country of Lesotho, South Africa to help establish a digital forensics lab along with training personnel to support the Directorate on Corruption and Economic Offenses. Mr. Bui also conducts periodic webinar trainings to AARP to help members avoid deepfake scams.

Previously, Mr. Bui was Founder & CEO at Right forensics, a data forensics company, where he helped launch the Digital Forensics Advisory Practice (DFAS) that offered services utilizing state-of-the-art technology and methodologies to dive deep into digital storage systems, uncovering and preserving critical evidence with the utmost accuracy and integrity.

Mr. Bui was a Managing Director of Digital Insights and Risk Management (DIRM) at FTI Consulting where he acted as the practice lead for M365, provided digital forensic services and evidence collection for investigation and litigation matters, and was responsible for the development of proactive risk management consulting services.

Mr. Bui worked for three of the Big Four advisory firms. At PricewaterhouseCoopers, he was the Advisory Director of Forensic Technology Services and Investigative Analytics where he focused on global supply chain fraud and compliance solutions in pharmaceutical life sciences and food trust. Mr. Bui was responsible for advising clients on regulatory affairs and enforcement trends involving the Food and Drug Administration and Department of Justice as it related to false claims, anti-bribery and anti-corruption, and food safety.

Mr. Bui has also held leadership positions at Ernst and Young, KPMG, Lighthouse and Navigant Consulting.



**Relevant Experience**

2024 – 2025: Mr. Bui was Founder & CEO at **Right Forensics,** a data forensics company that offered services utilizing state-of-the-art technology and methodologies to dive deep into digital storage systems, uncovering and preserving critical evidence with the utmost accuracy and integrity.

2021 – 2024: Mr. Bui was a Managing Director at **FTI Technology Consulting** in the Digital Insights and Risk Management practice offering proactive and reactive services including evidence collection, forensic analysis, expert testimony, and data analytics. Mr. Bui led the Microsoft 365 initiative for global alignment in Digital Forensics standard operating procedures and conducted biweekly global round table calls to stimulate discussion on the Microsoft 365 Road Map concerning Purview.

2018 – 2021: Mr. Bui was the Advisory leader of the digital forensics practice globally at **Lighthouse** offering proactive and reactive services including evidence collection, forensic analysis, expert testimony, and data analytics. Mr. Bui led an international remediation project for a large pharmaceutical and biotech company visiting Taipei, Taiwan and Wuhan, China to validate the deletion of trade secret documents from the Defendant's laboratory IT environments. He also conducted data acquisition from a Defendant's M365 cloud environment while on the ground in Ho Chi Minh City, Vietnam, speaking the local language during custodian interviews and coordinating with IT personnel.

2017 – 2018: Mr. Bui ran the entire digital forensics practice nationally as a Director at **Inventus** and he oversaw the forensic services and evidence collection work for investigation and litigation matters. One of Mr. Bui's notable client-facing consulting engagements included an information security risk assessment for a pre-FDA biotech company on current state gaps and delivered future state recommendations based on leading industry practice.

2017: Mr. Bui served as an Independent Contractor supporting an OFAC investigation for a large online retailer in response to a regulatory inquiry.

2015 – 2017: At **PwC**, Mr. Bui was an Advisory Director whose focus was on global supply chain fraud and compliance solutions in pharmaceutical life sciences and food trust using emerging forensic technology techniques for industry-specific challenges. He developed an open-source Tableau replacement using D3 and JavaScript to allow for flexible integration with other analytics components for end-to-end client solutions incorporating qualitative SME questionnaire responses, quantitative risk assessments, third-party onboarding and monitoring, risk-based sample selections, investigation case management and the remediation of fraud and misconduct. Mr. Bui also performed a current state assessment, gap analysis and future state recommendations for a healthcare pharmacy benefits manager to proactively address regulatory drug pricing probes that were being conducted by the government within the industry.

2013 – 2015: At **Ernst & Young**, Mr. Bui was a Senior Manager in Audit who provided proactive solutions within the life sciences industry. First, he developed a physician conflict of interest compliance monitoring dashboard using internal and external data for a large healthcare provider system. Mr. Bui also developed a continuous compliance monitoring dashboard and in-country scorecards for a leading pharmaceutical manufacturer incorporating compliance KPIs defined at the global and local levels. He further developed a continuous audit program for a medical device manufacturer incorporating fraud, bribery and corruption analytics, risk ranking and intelligent sample selections for repeatable in-country audits. Finally, Mr. Bui developed a competitive benchmark dashboard for several life sciences companies to assess risk surrounding outlier behavior of sales reps when engaging healthcare professionals for fee-for-service arrangements, samples distribution and meals and entertainment reimbursement.

2005 – 2013: At **KPMG**, Mr. Bui managed a multi-jurisdictional stock options back-dating litigation using an electronic document review platform for multiple law firms in three time zones lasting 18 months. He also managed a Federal Trade Commission "second request" anti-trust review of email communication between two web advertisement industry giants. As a practice development initiative, Mr. Bui launched the offshore ediscovery center in New Delhi,



India to enhance electronic document processing capacity for onshore litigation support and investigation matters. He was also responsible for an internal dashboarding platform mining more than 200 terabytes of data, providing performance metrics, margin analysis and KPI scorecards.

2004 – 2005: At, **Navigant Consulting**, Mr. Bui was an Associate Director who supported an AML lookback investigation on nation's oldest privately owned bank with homeland security implications. He also created the firm's first Analytics-as-a-Service platform with Microsoft SQL Server in a private cloud environment.

## Speaking Engagement/Lectures

Mr. Bui engages with law firms, corporate clients, and litigation support associations regularly to deliver educational sessions that he has developed on topics related to computer forensics and emerging data sources. Mr. Bui is considered a thought leader and is invited to speak at conferences and webinars. He has shared his industry perspective as a keynote speaker, moderator, and panelist.

## Publications

- January 2012 – Co-authored a KPMG whitepaper titled "The Case for Statistical Sampling in E-Discovery", arguing that a robust statistical sampling process can confirm whether technology-assisted results are as effective as human review.

- February 2015 – Co-authored an Ernst & Young whitepaper titled "Open Payment benchmarking and analytics: formulate a balanced product strategy", demonstrating the breakthrough use of federal data for competitive intelligence in the life sciences industry.

- March 2019 – Authored an article for JD Supra titled "Security v. Privacy", emphasizing the distinct difference between the two concepts as it relates to social media data and consumer protection.

- April 2020 – Authored an article on Medium titled "Adopting a Compliant & Defensible Remote Collections Strategy", warning about the new risks and vulnerabilities of a remote work force during the COVID-19 pandemic.

- May 2020 – Authored an article on Medium titled "Prevent IP Theft During a COVID RIF – Don't Let Your Trade Secrets Depart with Employees", warning that additional measures need to be taken by companies regarding mass layoffs during the COVID-19 pandemic.

- October 2022 – Co-authored an article on the FTI Technology Blog titled "The Modern Data Paradox: Power and Problems in Discovery and Investigations", warning that chat, collaboration, mobile, and social media sources present the latest data challenges for traditional ediscovery workflows.

- February 2023 – Co-authored an article on the FTI Technology Blog titled "Insider Risk Management in Microsoft 365", discussing the proactive stance that enterprises can take by leveraging insider risk management features built into Microsoft 365 for the detection and prevention of fraud and misconduct.

- September 2024 – Co-authored a whitepaper on the EDRM Blog titled "Deepfakes in Legal Proceedings: A Strategic Framework for Collaborative Solutions", proposing a collaborative approach between lawyers, AI detection firms, and forensic experts to detect and authenticate digital evidence

- May 2025 – Co-authored an article on ILTANET.org addressing the challenge that Signal's end-to-end encryption and self-destructing chats create for e-discovery, and laying out a defensible workflow grounded in explicit client consent, meticulous chain-of-custody, and repeatable validation



**Testimony, Reporting, Deposition and Declaration Experience**

Mr. Bui has testified over 30 times in Federal and State courts for civil matters. He has been qualified as an expert in computer forensics, document metadata, and cloud-based platforms.

- TRUMP MEDIA & TECHNOLOGY GROUP CORP. V ARC GLOBAL INVESTMENTS II, LLC
  Circuit Court of the Twelfth Judicial Circuit, Sarasota County, Florida Civil Division
  Case No. 2024-CA-001061-NC (2024)
  Expert report and trial testimony on behalf of Plaintiff.

- NICBYTE, LLC, ET AL. V. STARTOP INVESTMENTS, LLC, ET AL.
  Court of Chancery in the State of Delaware
  C.A. No. 2023-0637-NAC (2024)
  Expert report and rebuttal report on behalf of Plaintiff.

- MADISON JOINT VENTURE LLC V. CHEMO RESEARCH S.L., ET AL.
  United States District Court, District of New Jersey
  Civil Action No. 19-8012 (2024)
  Rebuttal report and deposition on behalf of Plaintiff.

- STATON TECHIYA, LLC AND SYNERGY IP CORPORATION V. SAMSUNG ELECTRONICS CO. LTD. and SAMSUNG ELECTRONICS AMERICA, INC.
  United States District Court for the Eastern District of Texas Marshall Division
  Case Nos. 2:21-CV-00413-JRG-RSP; 2:22-cv-00053-JRG-RSP (2023)
  Rebuttal report, deposition, and trial testimony on behalf of Plaintiff.

- VIKING THERAPEUTICS, INC. V. ASCLETIS PHARMA, ASCLETIS BIOSCIENCE, AND GANNEX PHARMA
  United States International Trade Commission Washington, D.C.
  Investigation No. 337-TA-1352 (2023)
  Declaration in support of Complainants motion of summary determination, expert report, rebuttal report, deposition, and trial testimony.

- PAMPA ENERGÍA S.A. (Argentina) V. PETROBRAS INTERNATIONAL BRASPETRO B.V. (The Netherlands)
  International Court of Arbitration of the International Chamber of Commerce
  ICC Case No. 25255/MK (2023)
  In-person testimony on behalf of Respondents

- AMAZON.COM, INC. V. WDC HOLDINGS LLC DBA NORTHSTAR COMMERCIAL PARTNERS
  United States District Court, Eastern District of Virginia Alexandria Division
  Case No. 1:20-cv-484-RDA-TCB (2023)
  Expert Report pursuant to Federal Rule 26(a)(2) on behalf of Plaintiff.

- MATTHEW D. VAN STEENWYK V. KEDRIN E. VAN STEENWYK
  United States District Court, Central District of California
  Case No. 2:20-cv-02375 FLA (AFMx) (2022)
  Expert Report pursuant to Federal Rule 26(a)(2) and deposition on behalf of Plaintiff.



- SYNGENTA SEEDS, LLC. V. TODD WARNER, JOSHUA SLEPER, FARMER'S BUSINESS NETWORK.
  United States District Court, District of Minnesota
  Case No. 20-1428-ECT-BRT (2021)
  Expert Report pursuant to Federal Rule 26(a)(2), rebuttal report, and declaration on behalf of Defendant.

- PLATTIN CREEK EXCAVATING, LLC. V. MICHAEL D. HARMAN, JR.
  Circuit Court of St. Louis Country, State of Missouri
  Case No. 21SL-CC04188 (2021)
  Affidavit for filing of temporary restraining order and preliminary injunction on behalf of Plaintiff.

- CANNACO RESEARCH CORPORATION V. SHAUNEEN MILITELLO
  Superior Court of the State of California, Los Angeles, CA
  Case No. 21STCV13314 (2021)
  Declaration in support of ex parte application to modify preliminary injunction on behalf of Plaintiff.

- HVI CAT CANYON, INC. CHAPTER 7 EVIDENTIARY HEARING
  United States Bankruptcy Court, Central District of California, Northern Division
  Case No. 9:19-11573 (2021)
  Declaration and in-person testimony on behalf of Trustee.

- PAMPA ENERGÍA S.A. (Argentina) V. PETROBRAS INTERNATIONAL BRASPETRO B.V. (The Netherlands)
  International Court of Arbitration of the International Chamber of Commerce
  ICC Case No. 25255/MK (2021)
  Expert report and rebuttal opinions on behalf of Respondent.

- MEMPHIS MEATS, INC. V. NAPAT TANDIKUL
  Northern District of California, Oakland Division
  Case No. 4:21-cv-03072-TSH (2021)
  Declaration on behalf of Plaintiff.

- APPLE INC. V. GERARD WILLIAMS III
  Superior Court of the State of California, Santa Clara, CA
  Case No. 19-CV-352866 (2021)
  Declaration in support of Defendant's opposition to TRO and expedited discovery, and deposition.

- DONNA AZIZ V. MURHPHY OIL USA, INC.; MURPHY USA, INC.; AND MURPHY OIL CORPORATION
  District Court of Tarrant County, Texas
  Case No. 017-315193-20 (2021)
  Declaration on behalf of Defendants.



- CARECENTRIX, INC. and NDES HOLDINGS, LLC V. MARCUS LANZNAR and SIGNIFY HEALTH, LLC
  District Court of the State of Delaware
  Case No. 20-1765 (LPS) (2021)
  In support of Defendants' answering brief in opposition to Plaintiffs' renewed motion for preliminary injunction, deposition.

- SUNPOWER CORPORATION V. GABRIELLA BUNEA
  American Arbitration Association, San Francisco, CA
  Case No. 01-19-0003-9663 (2021)
  Rebuttal opinions and in-person testimony on behalf of Respondent.

- SNAP! MOBILE, INC. V. VERTICAL RAISE, LLC, PAUL LANDERS
  District Court of Kootenai County, Idaho
  Case No. CV28-19-8796 (2021)
  Declaration in support of Defendant.

- GUSTAVO MARTINEZ V. CITY OF ASBURY PARK, MONMOUTH COUNTY, BOROUGH OF BELMAR, AMIR BERCOVICZ, DEWITT BACON, DANIEL SAVASTANO WILLIAM WHITLEY AND JOHN DOE OFFICERS 1-14
  District Court of the State of New Jersey
  Case No. 3:20-cv-8710 (2020)
  Declaration in support of Plaintiff.

- QUID, INC V. SEAN GOURLEY
  Judicial Arbitration and Mediation Services (JAMS), San Francisco, CA
  Case No. 1210036447 (2020)
  Summary of expert opinions, rebuttal opinions, deposition, and in-person testimony on behalf of Respondent.

- QUID, INC V. PRIMER TECHNOLOGY, INC.
  Superior Court of the State of California, San Francisco, CA
  Case No. CGC-19-574788 (2019)
  Declaration in support of Defendant's opposition to Plaintiff's application for preliminary injunction

- STATE OF MISSOURI, ex rel. Sheriff Paul Vescovo, III V. CLAY COUNTY, MISSOURI, ET AL.
  Circuit Court of Clay County, Missouri
  Case No. 19CY-CV04353 (2019)
  Affidavit of Webmail accounts collected and method of collection.

- JASON D. TRETER V. MUELLER CHARTER SCHOOL
  Superior Court of the State of California, San Diego, CA
  Case No. 37-2017-00002125-CU-WT-CTL (2018)
  Declaration in support of Plaintiff's opposition to Defendant's motion to compel.



- ASML US, INC. V. XTAL, INC.
  Superior Court of the State of California, Santa Clara, CA
  Case No. 16-CV-295051 (2018)
  Declaration in support of Defendant's opposition to Plaintiff's motion for preliminary injunction.

- MARKET PLACE NORTH CONDOMINIUM ASSOCIATION V. AFFILIATED FM INSURANCE COMPANY
  U.S. District Court, Western District of Washington at Seattle
  Case No.2:17-cv-00625-RSM (2018)
  Declaration in support of Defendant's motion for protective order.

- ARLINE RESTO V. 1545 SECOND AVENUE, LLC.
  Superior Court of the State of California, San Diego, CA
  Case No. 37-2016-00029001-CU-WT-CTL (2018)
  Declaration in support of Defendant's motion for terminating sanctions, deposition on behalf of Defendant.

- ASML US, INC. V. HUA-YU LIU AND SONG LAN
  American Arbitration Association, San Francisco Regional Office, San Francisco, CA
  Case No. AAA ref. No.: 01-16-100101-7373 (2017)
  Declaration on behalf of Respondents.

### Training

Forensic ToolKit (FTK), Access Data, 2005

Encase Fundamentals, Guidance Software, 2007

Encase Intermediate, Guidance Software, 2007

The Data Scientist's Toolbox, Coursera, 2015

R Programming, Coursera, 2015

Getting and Cleaning Data, Coursera, 2015

Exploratory Data Analysis, Coursera, 2015

Practical HACCP Training Certificate, International Food Safety & Quality Network, 2016

Forensic Fundamentals, Magnet Forensics, 2017

Axiom Examination, Magnet Forensics, 2017

Axiom Internet and Cloud Investigations, Magnet Forensics, 2018

### Associations

- Expert Advisor Co-Lead to INTERPOL Metaverse Forensics Program
- Academy of Court-Appointed Neutrals
- Association of Certified Fraud Examiners (ACFE)
- Forensic Expert Witness Association (FEWA)
- The Institute of Internal Auditors (IIA)
- Project Management Institute (PMI)

### Education

- Bachelor of Political Science, UCLA

### Expertise

- Digital Forensics
- Investigation Support
- eDiscovery
- Data Analytics

### Certifications

- Certified Fraud Examiner
- Private Investigator, State of Texas: License #158983102
- Microsoft Certified Professional