# EXHIBIT 2

**Robbins Geller Rudman & Dowd LLP**

| Chicago | Melville | Nashville | San Diego | Wilmington |
| Boca Raton | Manhattan | Philadelphia | San Francisco | Washington, D.C. |

Lea Malani Bays
lbays@rgrdlaw.com

July 8, 2025

VIA EMAIL

Matthew J. Peters
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004
matthew.peters@lw.com

Re:    *In re Carvana Co. Securities Litigation*, No. CV-22-2126-PHX-MTL (D. Ariz.)

Dear Matt:

I write in response to the Carvana Defendants' June 27, 2025 letter in response to Plaintiffs' May 29, 2025 letter concerning the collection of hyperlinked documents (*i.e.*, "modern attachments").[1]

As an initial matter, as you know, as early as February 2025 during the parties' electronically stored information ("ESI") protocol negotiations, Plaintiffs requested that the Carvana Defendants collect the version of a modern attachment that existed at the time the Google communication (email or chat) was sent.  In other words, Plaintiffs requested that consistent with relevant case law, the Carvana Defendants produce the contemporaneous version of modern attachments as opposed to the version that existed years later at the time of collection.  *See, e.g.*, L. Bays 5/29/25 Letter at 1.  Moreover, Plaintiffs have consistently advised the Carvana Defendants that Forensic Email Collector ("FEC") could readily collect the contemporaneous version in an automated fashion.  *Id.*  While the Carvana Defendants initially stated that only the current version of the hyperlinked document could be collected in an automated manner, they eventually conceded in May 2025 that FEC could be used to collect the version of the hyperlinked document that most closely predates the time the communication was sent from the Carvana Defendants' live email environment.  *Id.*  At that time, the Carvana Defendants also confirmed that Google Vault – its

---

[1]    Tellingly, while your letter begins by stating that my May 29, 2025 letter was "rife with inaccuracies" (M. Peters 6/27/25 Letter at 1), you failed to identify a single inaccurate statement.

**Robbins Geller
Rudman & Dowd LLP**

Matthew J. Peters
July 8, 2025
Page 2

preferred collection tool – cannot collect the contemporaneous version.  *Id.*  Nevertheless, the Carvana Defendants' June 27, 2025 letter merely confirms that after months of unnecessarily delaying the parties' negotiations on this issue, they will not compromise in ***any*** way and will not collect the contemporaneous version of any modern attachments from Google email, G-Chat, Slack, or Backupify.  Plaintiffs address a few points noted in the Carvana Defendants' June 27, 2025 letter below.

First, the Carvana Defendants' contention that Plaintiffs must have been aware of the fact that they had already collected documents using Google Vault merely because the Carvana Defendants had provided search term hit reports is not reasonable.  Plaintiffs have no specific knowledge of Carvana Co.'s ("Carvana") internal capabilities or the capabilities of the Carvana Defendants' vendor regarding the generation of hit counts.  Search term hit reports can often be generated absent a document collection.  Accordingly, the mere production of hit reports does not address the fact that the Carvana Defendants withheld that they had already completed their document collection during the parties' purportedly good-faith negotiations regarding the ESI protocol and the collection and production of hyperlinked documents.

Second, the Carvana Defendants' claim that Google Vault is an "eminently reasonable tool" (M. Peters 6/27/25 Letter at 2) ignores that Google Vault cannot collect the contemporaneous version of a hyperlinked document even though courts hold this version should be collected where feasible.  *See In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 2024 WL 1772832, at *2, *4, *6 (N.D. Cal. 2024) (ordering defendants to produce the contemporaneous versions of hyperlinked documents where feasible and highlighting that "the potential limitations and pitfalls with respect to production of hyperlinked documents from Google Vault have been widely known for many years").  To be sure, producing a version of a modern attachment that is different than the one that existed at the time the email was sent is not "eminently reasonable" when there is a viable alternative.

Third, the Carvana Defendants' gripes with FEC are not persuasive, particularly because they have not disclosed ***any*** evidence to suggest that their hypothetical outlier scenarios are likely to arise here.  For example, the Carvana Defendants note that user permissions may not allow for the collection of a hyperlinked document using FEC, but fail to provide any credible or known reasons to believe that the custodians at issue here would not have access to the hyperlinked documents.  Likewise, the Carvana Defendants claim that FEC may not be able to collect deleted or archived emails that are only in Google Vault.  But again, the Carvana Defendants have not disclosed any reason (such as an auto-delete function or other routine deletions) to believe that the custodians' emails would not exist in their active email.  The Carvana Defendants must substantiate their claims.  Lastly, while the Carvana Defendants note that there is a remote possibility that a modern

4926-8444-1939.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Matthew J. Peters
July 8, 2025
Page 3

attachment was edited immediately prior to an email being sent, this scenario is far less likely than the probability of there being a revision between the time the email was sent and the time of collection years later.  If the Carvana Defendants are concerned about intervening edits, then the version collected using FEC would surely be superior than the version collected using Google Vault.

Fourth, Plaintiffs disagree with the Carvana Defendants' intent to review and produce emails and their hyperlinked document independently as opposed to as a family because they are purportedly "not attachments."  M. Peters 6/27/25 Letter at 4; M. Peters 4/24/25 Letter at 5-6.  If there is a distinction between an attachment and a hyperlinked document (often referred to as "cloud attachments" or "modern attachments"), it is a distinction without a difference, particularly here where FEC makes it technically feasible to automatically collect hyperlinked documents with their parent communication and maintain that association for the purposes of review and production.  *See, e.g.*, *Stitch Editing Ltd. v. TikTok, Inc.*, 2022 WL 17363054, at *1 (C.D. Cal. 2022) ("Documents referenced in hyperlinks from all productions – existing and future – must be produced together with the source document containing the hyperlinks so that the association between parent document and hyperlinked document is maintained.").

Defendants' authority actually supports Plaintiffs.  Indeed, in *Uber*, the court decided that hyperlinks were properly part of the definition of an attachment and required defendants to collect contemporaneous versions of the hyperlinked documents from active email.  2024 WL 1772832, at *4, *6.  The only relief the court gave defendants in collecting the contemporaneous versions within Google Workspace was for the documents that uniquely existed in Google Vault due to Uber's auto-delete function that routinely deleted email from the active system, and therefore could not be collected using FEC.  *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 2024 WL 3491760, at *10 (N.D. Cal. 2024) ("Google Vault is a primary concern because much of Uber's ESI is located in Google Vault due to [its] retention policy.").  And the Carvana Defendants' other authorities are readily distinguishable because the defendants in those cases did not use Google Workspace and FEC only works with Google Workspace.  For example, in *In re Insulin Pricing Litigation*, there were multiple defendants at issue and none of them utilized Google Workspace.  *In re Insulin Pricing Litig.*, No. 2:23-md-03080 (D.N.J. May 1, 2024), ECF 163-1; *see also In re Meta Pixel Healthcare Litig.*, 2023 WL 4361131 (N.D. Cal. 2023); *In re Meta Pixel Healthcare Litig.*, No. 3:22-cv-03580 (N.D. Cal. June 1, 2023), ECF 265, ¶¶8, 23 (involving hyperlinks from various sources, including Google, Dropbox, Quip, One Drive, Workplace, and not primarily Google Workspace); *In re StubHub Refund Litig.*, 2024 WL 2305604, at *1 (N.D. Cal. 2024) (collecting certain hyperlinked documents but not all because the hyperlinks no longer worked); *In re StubHub*

4926-8444-1939.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Matthew J. Peters
July 8, 2025
Page 4

*Refund Litig.*, No. 4:20-md-02951 (N.D. Cal. May 9, 2023), ECF 202-1, ¶¶8, 17 (indicating that StubHub used Microsoft email, Teams Chats, and Google Drive).[2]

In sum, Plaintiffs continue to request that the Carvana Defendants collect the contemporaneous versions of hyperlinked documents and treat them as a family for the purposes of their review and production.  *See* L. Bays 5/29/25 Letter at 2.  Plaintiffs will address this issue with the Court in accordance with ¶¶3(b) and 6 of the Court's February 26, 2025 Scheduling Order (ECF 128) to the extent that Defendants continue to refuse to do so.

Finally, while we disagree with the Carvana Defendants' unsupported contentions regarding the collection of modern attachments from Slack and Backupify (M. Peters 6/27/25 Letter at 4), Plaintiffs will agree to forego pursuing the contemporaneous version of hyperlinked documents from these sources (subject to reasonable requests for certain hyperlinked documents) so long as the Carvana Defendants agree to collect the contemporaneous version of modern attachments from Google mail and G-Chat.  Please let us know whether the Carvana Defendants agree to Plaintiffs' proposed compromise by July 11, 2025.  If Defendants do not agree or do not respond to Plaintiffs' proposed compromise, Plaintiffs will assume that the parties remain at an impasse on this issue.

Very truly yours,

LEA MALANI BAYS

LMB:dcc

---

[2]    Defendants' reliance on *Nichols v. Noom Inc.*, 2021 WL 948646 (S.D.N.Y. 2021) – the very first case where collecting hyperlinked documents along with their parent communications in an automated manner was raised – is not persuasive.  At that time, the use of hyperlinked documents and the technology used to collect them was new and less understood.  This is exemplified by the examples provided by the court in deciding that hyperlinked documents were not attachments, such as hyperlinked case citations in legal memos, hyperlinks to phone numbers, links to package tracking sites, a Facebook page, or a link to a term-of-use document.  *Id.* at *12.  Those are not the hyperlinks at issue here.