# EXHIBIT 3

**Robbins Geller Rudman & Dowd LLP**

| Chicago | Melville | Nashville | San Diego | Wilmington |
| Boca Raton | Manhattan | Philadelphia | San Francisco | Washington, D.C. |

Lea M. Bays
lbays@rgrdlaw.com

May 29, 2025

VIA EMAIL

Matthew J. Peters
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004
matthew.peters@lw.com

Re:     *In re Carvana Co. Securities Litigation*, No. CV-22-2126-PHX-MTL (D. Ariz.)

Dear Matt:

I write with regard to the parties' May 6 and May 27, 2025 meet and confers regarding hyperlinks.

## I.      Forensic Email Collector ("FEC")

On numerous occasions, and as early as February and March 2025 during the parties' electronically stored information ("ESI") protocol negotiations, Plaintiffs have questioned the Carvana Defendants' assertion that there was no automated way to collect the version of a hyperlinked document that existed at the time the Google communication (email or chat) was sent.  Moreover, Plaintiffs have consistently advised the Carvana Defendants that Metaspike's FEC had this very capability.  Nevertheless, in their April 24, 2025 letter and during the May 6, 2025 meet and confer, the Carvana Defendants maintained the position that only the current version of the hyperlinked document could be collected in an automated manner.  During the parties' May 27, 2025 meet and confer, however, the Carvana Defendants conceded that FEC could be used to collect both the version of the hyperlinked document that most closely predates the time the communication was sent and the version that exists at the time of collection from the Carvana Defendants' live email environment.  The Carvana Defendants further asserted that FEC is limited because it will only collect the hyperlinked document if the custodian from which they are collecting has access to the link and that the link is live.  The Carvana Defendants also confirmed that Google Vault is also (more) limited as it cannot collect the version of the hyperlinked document that most closely predates the time the communication was sent.

Next, when Plaintiffs inquired during the May 27, 2025 meet and confer as to whether the Carvana Defendants could do a more limited collection from Google Vault to capture

**Robbins Geller**
**Rudman & Dowd** LLP

Matthew J. Peters
May 29, 2025
Page 2

communications that were deleted from the live email and only exist in Google Vault after using FEC, the Carvana Defendants stated that they did not need to inquire about that issue because they had already collected communications and the corresponding hyperlinked documents from Google Vault. In fact, the Carvana Defendants stated that the Google Vault collection had been used in generating search term hit reports and confirmed that they had collected full emails (without the use of search terms) with hyperlinked documents from Google Vault prior to the parties' ESI protocol negotiations. Naturally, Plaintiffs were surprised that the Carvana Defendants had already implemented the collection of emails and chats with hyperlinked documents since the parties are still purportedly meeting and conferring in good faith as to whether collecting Google communications using FEC, rather than Google Vault, would effectuate Plaintiffs' February 2025 request for the hyperlinked documents that existed at the time the communication was sent. Indeed, during the negotiations on the ESI protocol, the parties' agreed to postpone a more detailed provision regarding the process to be used for collecting, searching, reviewing, and producing hyperlinked documents in favor of a provision requiring the parties to further meet and confer on the issues. As you know, Plaintiffs specifically raised the collection of Google Workspace communications using FEC during these negotiations and only agreed to such a provision because the Carvana Defendants represented that they were still looking into the technical feasibility of collecting the version of the document that existed at the time the communication was sent and producing the documents in a manner that creates a relationship between the communications and the hyperlinked document. Notably, at that time, you did not disclose that the Carvana Defendants had already collected communications and the corresponding hyperlinked documents using Google Vault. Nor did you disclose this fact on subsequent meet and confers, even when Plaintiffs specifically asked about the status of the Carvana Defendants' collection during the May 6, 2025 meet and confer. Accordingly, any future argument regarding the burden of implementing two collections is the result of the Carvana Defendants' doing.

Lastly, consistent with their prior requests, Plaintiffs inquired as to whether the Carvana Defendants would be willing to use FEC now that the Carvana Defendants have confirmed that it is technologically feasible. The Carvana Defendants stated that they would consider the request. Please promptly and fully respond to Plaintiffs' request.

## II.    Backupify

During the parties' May 27, 2025 meet and confer, the Carvana Defendants reiterated their prior position that there was no automated way of collecting hyperlinked files from Backupify. Plaintiffs then asked the same question they asked on May 6, 2025 – whether the Carvana Defendants could restore the backups to live email and then collect hyperlinked documents. The Carvana Defendants stated that restoring email from Backupify is complex, time consuming, and burdensome. Given that Plaintiffs' research indicates that the restoration process is quick and easy, Plaintiffs requested more specifics as to the nature of the burden alleged. The Carvana Defendants stated that they would need to inquire with their vendor for further information. In addition, you repeatedly

4906-9982-5224.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Matthew J. Peters
May 29, 2025
Page 3

asked if Plaintiffs were requesting that Carvana Defendants restore the archived email. Plaintiffs clarified that Plaintiffs need to understand the technical feasibility and burden of doing so before making a final request. The Carvana Defendants stated that they did not understand the relevance of the purported burden to the request. To the extent that the Carvana Defendants continue to maintain that there is no automated way of collecting hyperlinked files from Backupify and that restoration is burdensome and/or disproportionate, please fully and promptly provide the specific basis for such a position.

### III.    Slack

During the parties' May 27, 2025 meet and confer, the Carvana Defendants reported that there was no automated manner to collect hyperlinked documents from Slack, regardless of Carvana's subscription level, because Slack is preserved in Onna. Further, you stated that the Carvana Defendants were not aware of any other limitation in collecting Slack communications from Onna. As explained during the call, Plaintiffs will confer with their vendor regarding this issue.

### IV.    Scope of Search, Review, and Production

As discussed during the parties' May 6 and May 27, 2025 meet and confers, Plaintiffs find the Carvana Defendants' proposal outlined in their April 24, 2025 letter to be too narrow. The Carvana Defendants propose only producing hyperlinked documents to the extent that: (i) the communication in which the hyperlink appears was identified using the parties' agreed-upon search parameters; (ii) the communication is independently deemed relevant and non-privileged; and (iii) the corresponding hyperlinked document is also independently relevant and non-privileged. As Plaintiffs previously explained, this would not allow for production of a relevant hyperlinked file that was linked within a communication that simply said "please see linked document," in a manner that allows the parties to see that the document was linked to a communication. Further, the Carvana Defendants' proposed approach is inconsistent with how attached documents are treated in discovery, even though hyperlinks are used as a functional equivalent to attachments. Similar to attachments, hyperlinked documents are contextually part and parcel to the communication and, thus, Plaintiffs believe they should be reviewed and produced in a manner that maintains this relationship. *See, e.g.*, *Symettrica Ent., Ltd. v. UMG Recordings, Inc.*, 2020 WL 13311682, at *5 (C.D. Cal. July 17, 2020) (noting that "'attachments can only be fully understood and evaluated when read in the context of the emails to which they are attached,'" and finding that linked attachments must be produced notwithstanding any assertions that the attachments are irrelevant) (citation omitted); *Shenwick v. Twitter, Inc.*, 2018 WL 5735176, at *1 (N.D. Cal. Sept. 17, 2018) (finding "Plaintiffs have a right to determine if an electronic message refers to a [hyperlinked] document, then Plaintiffs should be able to access that [hyperlinked] document" in response to plaintiffs' argument that hyperlinked documents are similar to attachments). In response, the Carvana Defendants inquired as to whether Plaintiffs were requesting that they create a family relationship or treat a hyperlinked document as an

4906-9982-5224.v1

**Robbins Geller
Rudman & Dowd LLP**

Matthew J. Peters
May 29, 2025
Page 4

attachment.  Plaintiffs stated, as they did in February and March 2025, that the nomenclature was not a primary concern but that maintaining the relationship between the communications and the linked document was important for the purposes of search, review, and production.  *See In re Uber Techs., Inc. Passenger Sexual Assault Litig.*, 2024 WL 1772832, at *6 (N.D. Cal. Apr. 23, 2024) (finding that "'modern attachments, pointers, internal or non-public documents linked, hyperlinked, stubbed or otherwise pointed to within or as a part of other ESI'" was appropriate to include in the definition of an attachment).  Even though this issue was already discussed during the parties' prior meet and confers, you indicated, again, that the Carvana Defendants would consider this request.  Please provide a prompt response to Plaintiffs' request and the basis for such a response.

## V.      Metadata Fields

Consistent with the ESI protocol, which requires that the parties meet and confer regarding any additional metadata fields that may be appropriate for nontraditional email and e-docs such as the Google Workspace documents and communications and Slack (ECF 137 at 7), Plaintiffs requested that Carvana Defendants propose metadata fields that they thought would be appropriate for these nontraditional emails and e-docs.  The Carvana Defendants declined and demanded that Plaintiffs send them the fields we are requesting as soon as possible.  Although Plaintiffs believe that the Carvana Defendants are in the best position to know these fields, please see the below fields:

| Field Name | Description |
|---|---|
| **Collaborators** | The accounts and groups that have direct permission to edit the file or add comments. |
| **Viewers** | The accounts and groups that have direct permission to view the file. |
| **Labels** | Labels applied to the message by Gmail or the user. This value should be populated for Gmail, Groups, Chat, and Voice. |
| **Others** | The accounts that have indirect access to the file. |
| **Document Type** | The file type for Google files. |
| **Reviews** | The metadata for file approvals. |
| **Account** | The account that had the message in their Inbox. |
| **RoomID** | The space, group chat, or DM identifier that the message belongs to. |
| **RoomName** | The value depends on the type of message:<br>• For Chat spaces, the name of the space.<br>• For group conversations created after early December 2020, Group chat.<br>• For group conversations created before early December 2020 and DMs, a comma-separated list of accounts that participated. |
| **Participants** | The email addresses of all users who participated in the conversation. |

4906-9982-5224.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Matthew J. Peters
May 29, 2025
Page 5

| | |
|---|---|
| **ConversationType** | The message type. |
| **DateFirstMessageSent** | The timestamp for when the first chat message, text, voicemail, and call log was sent. |
| **DateLastMessageSent** | The timestamp for when the last chat message, text, voicemail, and call log was sent. |
| **DateFirstMessageReceived** | The timestamp for when the first chat message, text, voicemail, and call log was received. |
| **DateLastMessageReceived** | The timestamp for when the last chat message, text, voicemail, and call log was received. |
| **Workspace ID** | The text identifier field used to identify the workspace. |
| **Workspace Name** | The name of a workspace in Slack. |
| **Conversation ID** | Text identifier field used to identify the conversation. |
| **Conversation Name** | Categorizes the kind of conversation. For Slack this includes channels, groups (private channels), or DMs (direct messages). |
| **Conversation Type** | For conversations with a channel name, the channel name, otherwise a descriptor for the type of conversation. |

　　　　In sum, Plaintiffs have been making every effort to move this process forward reasonably and efficiently.  Accordingly, Plaintiffs request that the Carvana Defendants respond fully and promptly to our inquiries and offer a date to continue our meet and confer on these issues so that they can be finally resolved.  In addition, as previously requested, please fully respond to Plaintiffs' April 16 and May 15, 2025 letters regarding Lead Plaintiffs' First Set of Requests for Production of Documents to the Carvana Defendants.

　　　　　　　　　　Best regards,

　　　　　　　　　　LEA M. BAYS

LMB:

4906-9982-5224.v1