# EXHIBIT 2

FENNEMORE CRAIG, P.C.
Douglas C. Northup (No. 013987)
Andrea L. Marconi (No. 022577)
2394 E. Camelback Road, Suite 600
Phoenix, AZ 85016
Telephone: +1.602.916.5000
Email: dnorthup@fennemorelaw.com
Email: amarconi@fennemorelaw.com

LATHAM & WATKINS LLP
Jeff G. Hammel (*pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200
Email: jeff.hammel@lw.com

LATHAM & WATKINS LLP
Susan E. Engel (*pro hac vice*)
Matthew J. Peters (*pro hac vice*)
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200
Email: susan.engel@lw.com
Email: matthew.peters@lw.com

*Counsel for Defendants Carvana Co., Ernest Garcia, III Mark Jenkins, Stephen Palmer, Michael Maroone, Neha Parikh, Ira Platt, and Greg Sullivan*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re Carvana Co. Securities Litigation. | Case No. 2:22-cv-02126-PHX-MTL |
| | **DECLARATION OF SCOTT POLUS IN SUPPORT OF DEFENDANTS' POSITION ON THE COLLECTION, REVIEW, AND PRODUCTION OF LINKED DOCUMENTS** |

I, Scott Polus, declare as follows:

**I.      Declarant Background**

1.      I am the Senior Vice President ("SVP") of Forensics at Repario Data LLC ("Repario").   Repario is a leading provider of electronic discovery ("eDiscovery") and digital forensic services, including the collection, preservation, processing, and analysis of electronically stored information ("ESI").  I make this declaration based on my knowledge and understanding.  If called as a witness, I could and would testify competently to the following facts.

2.      I have extensive experience in digital forensics and eDiscovery, including Software as a Service ("SaaS") offerings from Google[1] that are relevant to this matter.

3.      I have held a Certified Computer Examiner ("CCE") certification through the International Society of Forensic Computer Examiners ("ISFCE") since July 2017.  I receive ongoing training in various facets of digital forensics, including mobile devices, personal computer operating systems, cloud-based services, and similar areas.  The ISFCE provides an internationally recognized certification available to all who qualify.   The IFSCE certifies CCEs based solely on their knowledge and practical examination skills, as well as their abilities related to the practice of digital forensics.  In the digital forensics

---

[1] Google Workspace is considered a SaaS offering.  It's a cloud-based suite of productivity and collaboration tools, delivered to users over the internet via a subscription model. Google manages and maintains the software, while users access and utilize it through their web browsers or mobile apps.

1

industry, the CCE certification from the IFSCE is recognized as an indicator of expertise in the field.

4. I have served as SVP of Forensic Services at Repario since January 2025. Previously, I served as the Regional Vice President of Forensic Services for Consilio, LLC for 17 years. I have provided Continuing Legal Education ("CLE"), webinars, podcasts, and white papers covering a variety of topics across the Electronic Discovery Reference Model ("EDRM")[2], including cloud-based services such as Google Workspace. I assist with or directly perform dozens of direct examinations on computers, mobile devices, cloud-based services (including data and logs), and other electronic devices each year.

5. Through my experience in digital forensics, I am familiar with the commonly used and accepted processes and technologies for preserving, analyzing, and reporting on the major cloud-based offerings, such as Google Workspace, Microsoft 365 (M365, formerly known as O365), and Backupify, as well as the operating systems of computers, servers, networks, and mobile devices. With this breadth of experience, I have assisted with and drafted numerous eDiscovery and digital forensics protocols that cover forensic collection procedures, keyword searches, and the ultimate production of ESI.

6. I have previously provided testimony and have been admitted as a computer forensics expert in both federal and state courts in the United States, and multiple times internationally. A copy of my curriculum vitae is attached hereto as Appendix "A."

---

[2] The EDRM is a framework that outlines the stages involved in the eDiscovery process during legal proceedings. It provides a structured approach to ESI from its initial identification to its final presentation in court.

## II.    Matter Background

7.    Repario provides eDiscovery services to Carvana Co. ("Carvana" or the "Company"), and has worked with Carvana since 2020, including on this litigation.  Since Repario began providing eDiscovery services to Carvana, the Company has been utilizing Google Workspace.

8.    In this litigation, Carvana retained Repario to consult and assist with the preservation of relevant ESI, including Linked Documents, data processing, hosting, review, and production of ESI.

9.    I submit this declaration at the request of Carvana, Ernest Garcia III, Mark Jenkins, Michael Maroone, Stephen Palmer, Neha Parikh, Ira Platt, and Greg Sullivan (collectively, "Carvana Defendants"), and in support of Carvana's position regarding the collection, review, and production of Linked Documents—*i.e.*, Google Drive documents referenced via hyperlinks contained in Google emails.  I am familiar with the facts contained herein and am prepared to testify to the extent required.

10.    This declaration has been informed by the following steps that I took:

    a.  Communications with Ronald Harry – eDiscovery Leader for Carvana
    b.  Communications with Arman Gungor – Founder of Metaspike[3]
    c.  Communications with additional forensics experts at Repario regarding Forensic Email Collector ("FEC"), including additional testing and validation of FEC's capabilities and deficiencies
    d.  Communications with Repario Project Managers and Managed Review leadership regarding data management, review, and production considerations for data collected via Vault or FEC
    e.  July 23, 2025, Joint Discovery Motion

---

[3] Metaspike is the developer of Forensic Email Collector.

      f.   Declaration of Jerry Bui (Undated and unsigned) ("Bui Declaration")
      g.   Stipulated Electronic Discovery Agreement and Order, dated March 12, 2025, Dkt. 137

11.    The purpose of this declaration is to explain that Plaintiffs' demands here would constitute an extraordinary practice and be inconsistent with industry standards within eDiscovery, significantly increase the likely amount of inaccurate data collected and possibly produced, cause confusion among the parties and cause further discovery disputes, and would be burdensome, time-consuming, and costly to Carvana Defendants.

12.    I am competent to testify to the matters stated in this declaration and have personal knowledge of the facts and statements set forth herein.

**III.    FEC is not an appropriate tool for this litigation, suffers from severe limitations, and would significantly increase the likelihood of inaccurate data being collected and possibly produced in this litigation**

13.    Contrary to suggestions otherwise in the Joint Discovery Motion, FEC does not even claim to collect the "contemporaneous versions" of Linked Documents or the version of a Linked Document that existed at the time the email was sent. Instead, FEC can merely try to locate a version of a Linked Document that predates the date of the topmost email in a chain (*i.e.*, the most recent email). FEC refers to that version as the "Latest Revision Before Parent was Sent." And, as explained below, FEC's functionality suffers from many substantial limitations that further and significantly minimize its utility for collecting specific versions of Linked Documents. Furthermore, as described below, using FEC in the unprecedented manner that Plaintiffs contemplate would drastically increase the burden on Carvana Defendants while exponentially increasing the likely amount of inaccurate Linked Documents collected and possibly produced.

14.     One limitation of FEC results from the software's reliance upon Drive's Application Programming Interface ("API"),[4] to locate versions of Linked Documents. FEC's reliance on the Drive API necessarily limits FEC's utility when trying to collect specific versions of Linked Documents, because the Drive API does not present all versions of a Linked Document to a third-party tool like FEC.  Therefore, FEC lacks access to all versions of Linked Documents, and cannot with certainty necessarily collect a specific version of a Linked Document.

15.     Another limitation of FEC arises from Drive's default retention settings, which keep versions of non-Google File Types for a shorter period compared to Google File Types (such as Google Docs).  For all non-Google File Types, such as Microsoft Office Documents (DOC, XLS, PPT, et al.), PDFs, and images, Drive's default is to retained them for only 30 days or 100 versions—whichever occurs first.  Therefore, FEC cannot collect Linked Documents older than 30 days unless they are Google File Types.

16.     FEC's utility when trying to collect specific versions of Linked Documents is further diminished, because FEC relies on a single date to determine which version of a Linked Document to download.  As a result, where an email chain contains more than one communication with a hyperlink to a Linked Document, then FEC assigns the date of the topmost email in the chain (*i.e.*, the most recent email) to all Linked Documents contained in the chain.  This causes collection inaccuracies.  For example, if a Gmail user sent an

---

[4] The Google Drive API is a set of programming interfaces that allow third-party developers to interact with Google Drive, programmatically. It enables applications like FEC to access data stored in Google Drive.

email containing a hyperlink to a Linked Document on July 4, 2020 and the chain concludes when another user replies with a topmost email on July 4, 2021 containing a hyperlink to a Linked Document, FEC would assign a date sent of July 4, 2021 to all versions of all Linked Documents contained in the email chain when collecting them from Drive. This is true whether the email chain contains ten, twenty, or hundreds of Linked Documents.

17.    Another limitation of FEC that diminishes its utility for collecting specific versions of Linked Documents is that, in order to access and collect Linked Documents, FEC relies on impersonation—*i.e.*, it "logs in" as a particular user and therefore can access Linked Documents only to the extent that the specific user can. If the user that FEC is impersonating does not have permission to access a Linked Document at the time of collection because, for example, the user changed job positions or the Linked Document's permissions were modified, then FEC cannot collect the Linked Document. By contrast, Vault does not impersonate a user to access Linked Documents and therefore is not limited in the same way as FEC.

18.    Based on my experience within the eDiscovery field, due to the inherent limitations of FEC discussed above concerning the collection of specific versions of Linked Documents, using FEC (as opposed to Vault) would result in an exponentially larger amount of irrelevant and inaccurate data being collected, vastly increasing the likelihood of confusion between the parties about discovery materials and discovery disputes. Such confusion and disputes may result, for example, from one or more parties

6

inaccurately believing that a version of a Linked Document collected by FEC was sent on a specific date, which in fact it was not.

## IV.    Using FEC as Plaintiffs contemplate would be unprecedented, very burdensome, and unhelpful

19.    In my experience, FEC has never been used at the scale and in the manner sought by Plaintiffs.  Specifically, FEC is not used for enterprise-level collections where, like here, Vault is available.  Even when Vault is unavailable (which is not the case here), FEC is typically only used to capture the most recent version of a Linked Document, in the same manner as Vault.  This process is followed in order to minimize potential errors, which, in my experience, are voluminous when attempting to collect the "Latest Revision Before Parent was Sent" at any meaningful scale.

20.    If Carvana were to be forced to adopt Plaintiffs' proposed use of FEC to re-collect custodian emails in an attempt to obtain specific versions of Linked Documents, Repario would have to abandon all the standard workflows and processes for processing, quality-control, and production of data that it has developed over innumerable litigation matters spanning years.  Repario would have to develop entirely new and untested workflows and processes—and whether they will ultimately be successful cannot be known at this time.  Those new and untested workflows and processes would include:

a.  Creating a service account and a domain-wide delegation key to allow FEC access to the Google Workspace tenant using Google's APIs;

b.  Running a separate collection for each of the currently agreed-upon custodians, and any future custodians, by impersonating the custodians' account permissions, which, as explained above, can often result in FEC being unable to access Linked Documents;

c.  Manually checking and analyzing the error logs that will be returned by Google's API for each attempted collection using FEC.  In my experience, each log can include thousands of error codes, and evaluating them requires a time-intensive and manual process.  My experience also shows that when

using FEC to gather earlier versions of Linked Documents, the number of errors increases as the requested versions go further back in the past. Repario personnel would have to try to determine for each error code whether it was due to a network issue, including timeout issues, due to API timeout or throttling issues, due to a Linked Document being deleted or moved, due to a lack of permissions, or due to size constraints, among other issues. In my experience, not even Metaspike knows the meaning of all error codes generated by Google's API and returned when using FEC. Specifically, I have previously asked Arman Gungor, founder of Metaspike, the meaning of error codes generated when using FEC, and he was unable to answer;

   d.  For each custodian, attempting to create a new and custom methodology for de-duplicating Linked Documents against other Linked Documents collected from the custodian. And also, separately attempting to create a new and custom methodology for de-duplicating Linked Documents against Linked Documents collected from other custodians or sources;

   e.  Identifying Linked Documents to be processed and de-duplicated against previously collected and processed data;

   f.  Developing and performing new, untested, and extensive manual quality checks to try to identify (the likely many) inaccurate Linked Documents, including versions with inaccurate date information, created by FEC for the reasons explained above;

   g.  Creating a new and untested protocol for productions to attempt to minimize the risk of producing inaccurate Linked Documents created by FEC due to the software's limitations described above.

21.    Given that Repario has never used FEC at the scale and in the manner sought by Plaintiffs, it is very difficult to predict the additional burden using FEC in Plaintiffs' proposed manner would impose merely in terms of processing, quality-control, and data production for Repario alone (which would be separate from and in addition to time spent by attorneys performing additional quality-control, responsiveness, and privilege reviews on Linked Documents). However, a conservative estimate is that attempting to use FEC in Plaintiffs' proposed manner would cause Repario to spend at least an additional 10 hours of custom and manual forensics collection work and QC, per custodian. Additionally, Repario alone would incur at least an approximately 300% increase in review time, and 12 hours of custom and manual quality check work for each production, and to create the

8

promised metadata overlay.  In addition to the known extra work that will be required, numerous hours will likely be needed to address other issues that may arise from completely new and untested workflows.  Thus, using FEC as Plaintiffs suggest, on an enterprise level, would be unprecedented and impose significant burdens on Carvana Defendants.

22.    Finally, while FEC can technically package a Linked Document with its source email, processing the two documents as a "family" is misleading.  In my experience within the eDiscovery field, Linked Documents are not akin to traditional attachments and are not treated as such, in part because the Linked Document is dynamic and not static.  FEC's packaging of Linked Documents with its source email is additionally problematic, given FEC's limitation of assigning the date of the most recent email in the chain to all Linked Documents in the chain.  *See supra* ¶16.  Treating Linked Documents and their source emails as a single family is likely to cause confusion and lead to additional discovery disputes in litigation regarding the authenticity of any Linked Document.  Therefore, in my experience, Linked Documents and source emails should be reviewed and produced independently of one another.

## V.    Conclusion

23.    Plaintiffs demand that Carvana be required to adopt FEC, to recollect all custodians' Google Mail to try to locate a version of a Linked Document that predates the date of the topmost email in a chain (as opposed to the last versions of Linked Document that Carvana Defendants have collected), despite FEC not being the industry-standard tool for collecting Linked Documents at an enterprise-level and Repario never having used

9

FEC at the scale and in the manner sought by Plaintiffs.  As I have explained, FEC suffers from many substantial limitations that significantly minimize its utility for collecting specific versions of Linked Documents, exponentially increase the likely amount of inaccurate Linked Documents collected and possibly produced, and drastically increase the burden on Carvana Defendants.

24.    Plaintiffs acknowledge some limitations with FEC, such as if a custodian does not have permission to access a Linked Document or if an email was deleted.  *(See Bui Declaration, ¶16)*.  Plaintiffs' proposed solution is to require that Carvana take a dual approach and collect some documents using Google Vault and others using FEC.  *(See Bui Declaration, ¶16")*.  Based on my experience, this proposal is also not workable. Attempting a partial collection via Vault and a partial collection via FEC poses at least as many challenges and limitations as using FEC alone.  *See supra*.  Indeed, in my experience, I anticipate that a hybrid approach could significantly increase the number of unintended documents by gathering inaccurate versions from email threads that include multiple Linked Documents using only the date in the most recent email, which is then made more complicated by the fact that we are likely to already have the same version in our review database already associated with an email.

25.    Finally, I would not recommend taking Plaintiffs' proposed course of action, given that Vault is Google's information governance and eDiscovery tool, which means it serves as the document management system for Google data that is potentially relevant to this litigation.  Plaintiffs are essentially asking Carvana to bypass this industry standard tool, which is capable of collecting the latest versions of the Linked Document, to utilize a

tool that would require Carvana to create a custom workflow to effectuate, costing Carvana unnecessary additional time and money. This would constitute an extraordinary measure that is inconsistent with foundational principles of data lifecycle management, which contemplate that companies retain data to meet various requirements, preserve data under legal hold, and collect relevant data from the system or systems where this data resides in the ordinary course of business. Carvana has a tool (Vault) that was built to support these foundational principles, and countless companies use it for this precise purpose.

26.    Based on my experience and the realities of the challenges regarding Drive data and the inherent inaccuracies that arise with the use of FEC at the scale and in the manner Plaintiffs contemplate, I respectfully conclude that Vault is the appropriate tool for collecting ESI, including Linked Documents, in Carvana's environment. FEC's limitations make it unsuitable for reliable and efficient collection, review, and production of Linked Documents. Carvana has complied with industry standards in its discovery processes with respect to Linked Documents in this litigation.

I declare under penalty of perjury that the foregoing is true and correct. Executed July 23, 2025, in Minneapolis, Minnesota.

By: _____
Scott Polus, CCE

11

# APPENDIX A

# Scott F. Polus, CCE

8101 College Blvd Ste 130 • Overland Park, Kansas. 66210 • (602) 584 - 3334
Scott.Polus@ReparioData.com • www.repariodata.com

---

### SUMMARY OF QUALIFICATIONS

---

Highly skilled, detail-oriented digital forensic services and electronic discovery professional with over seventeen years of expertise in providing a broad range of investigative, forensic, cybersecurity, litigation consulting, expert witness, and technology services to law firms and corporations through concise oral and written communication.

As Senior Vice President of Forensics for Repario, I manage forensic teams nationwide to deliver data collection, forensic data analysis, discovery consulting, and expert witness testimony.  I have personally provided international expert witness testimony in dozens of matters and have provided expert consulting services in medium- to large-scale discovery and computer forensic investigations.  I have worked on several DOJ and SEC investigations, I.P. and commercial litigation matters, fraudulent evidence and spoliation issues, as well as cursory cyber breach investigation engagements.

- Certified Computer Examiner, International Society of Forensic Computer Examiners (Credential ID #1753)
- Expertise in over 1,200 digital forensic collections and examinations
- Proficient in multiple operating systems, network architecture, low-level email analysis, electronic discovery and forensic software, and applications and mobile devices
- Experience with providing expert testimony (written and oral) in hundreds of matters
- Education and training provider on forensic collection, data management, and electronic discovery
- Complex team and matter management

---

### TECHNICAL PROFICIENCIES

---

**Forensic Software:** AccessData (FTK, PRTK, Registry Viewer, Imager), OpenText EnCase (v6 - v21), Linux (CAINE, Raptor, Paladin), WinFE, Oxygen Forensic Suite, Cellebrite, Axiom's Magnet Forensics, Microsoft PowerShell CLI, X1 Social Discovery, X-Ways Forensics, SharePoint Collector, Forensic Email Investigator, F-Response Enterprise, et al.
**Cloud Services & Tools:** Microsoft 365 (EAC, Purview, Azure AD, Administration including PowerShell), Pinpoint SharePoint Collector, AWS (S3), Lambda w/S3, HTTrack, WGET, Onna Saas, et al.
**PC Tools:** dtSearch, Harvester, Recon for Mac OS X, WinHex, et al.
**Mobile Forensics:** Cellebrite Mobile Device Forensics (4PC & PA), Oxygen Detective/Cloud, SQLite Analysis, SIM Card Forensics, Mobile OS (Android, Apple iOS, Blackberry 7 & 10, Windows Mobile 8 & 10)
**eDiscovery Software:** Relativity, Intella, Concordance, Summation, Ipro, dtSearch, NUIX
**Email Systems:** Microsoft Exchange (including Microsoft 365), Google Workspace, Veritas EVault and Discovery Accelerator, Global Relay Audit/Compliance, Mimecast Audit/Compliance, Smarsh Audit/Compliance, Lotus Notes, Paraben N/EX, ExMerge, and Exchange Admin Tools.
**Operating Systems:** MS Windows (98/XP/Vista/7/8/10/11), Linux (Ubuntu, Kali), Mac OS (PowerPC and OS X), VMWare ESXi, MS Hyper V
**File Systems:** FAT(s), NTFS, HFS+, APFS, EXT3/4
**Databases:**  MS SQL, SQLite, MS Access

-1-

**PROFESSIONAL EXPERIENCE**

**Repario Data**
*SVP of Forensics*, Minneapolis, MN                                                                January 2025-Present
- Oversee and perform digital forensic collections in complex litigation, government investigations, and internal corporate matters investigations.
- Perform digital forensics analysis on physical and cloud-based data sources.
- Develop comprehensive discovery preparedness plans.
- Facilitate department training, CLE development, and process improvement initiatives.
- Provide expert testimony through deposition, affidavit, and courtroom testimony.

**CONSILIO, LLC (Consilio acquired Xact Data Discovery (XDD) in May 2021)**
*Shareholder & Regional VP of Digital Forensics & Expert Services*, Consilio, Minneapolis, MN       May 2021-Oct 2024
*Regional Vice President of Forensic Services*, XDD, Minneapolis, MN                        April 2017-May 2021
*Director of Forensic Services*, XDD, Minneapolis, MN                                      March 2013-April 2017
- Manage and conduct digital forensic collections in complex litigation, government investigations, and internal corporate investigations.
- Plan, deploy, and supervise large-scale, enterprise preservation and collection.
- Perform forensic examinations across various digital devices and storage media.
- Conduct intellectual property and trade secret misappropriation investigations.
- Produce written and digital reports of forensic examinations and processes.
- Oversee evidence management/chain of custody (acquisition/preservation, analysis, reporting).
- Provide expert testimony via deposition, affidavit, and courtroom testimony.
- Consult with outside IT and compliance managers on data retention, efficient preservation policies, and best practices.
- Serve on the forensic department's senior management team, including strategic planning, corporate process development, task rollout, and oversight of department workflows to identify process improvement opportunities.

*Director of Sales and Operations*, XDD, Miami, FL & Minneapolis, MN                        July 2008-March 2013
- Managed sales and operations for Southeast and Midwest corporate regions.
- Oversaw training and development of technical staff and operations protocols.

*General Manager*, XDD, Phoenix, AZ                                                        November 2007-July 2008
- Oversaw daily operations and production for local production centers.
- Supported company director with large forensic collections.

*Account Executive*, XDD, Phoenix, AZ                                                      February 2007-November 2007
- Consulted with and sold eDiscovery solutions to law firms, government agencies, and corporate entities.

**NEXUS INFORMATION SYSTEMS**
*Account Executive*, Plymouth, MN                                                          March 2006 – February 2007
- Engaged in business-to-business IT consultation.
- Focused on remote and local backup methodologies, data retention, and hardware architecture.

**CERTIFICATIONS, PROFESSIONAL ORGANIZATIONS & LICENSES**

**CCE:** Certified Computer Examiner, International Society of Forensic Computer Examiners (#1753; 2017-present)
**HTCIA:** High Technology Crime Investigation Association (2022-Present)
**ACE:** AccessData Certified Examiner (2016-2018)

**PROFESSIONAL DEVELOPMENT**

**Presentations, CLEs, and Media**
- Presenter, *When You Can't Believe Your Eyes: Fabricated ESI Evidence*, 2024 Consilio Symposium, Multi-State CLE - May 2024
- Presenter, *Litigation in the Snapchat Age*, American Bar Association - 2023 Environmental & Energy, Mass Torts, and Products Liability Litigation Committee's Joint Regional CLE, February 2023
- Presenter, *Modern Attachments for Microsoft 365 and Google Workplace*, Private Firm Presentation, January 2022
- Instructor, *Remote Data Collections & Mobile Device Workflows,* Private Firm, New York CLE, May 2020
- Presenter, *Discovery from Microsoft 365,* First Chair Podcast, Sept 2019
- Presenter, *Cost-saving Strategies for Forensics Collections,* Women in eDiscovery – Los Angeles Chapter, May 2019
- Panelist, *Emerging ESI*, Today's General Counsel Institute's "The Exchange" Conference, September 2018 and July 2018
- Presenter, *From Texts to Context*, Mobile Device Forensics – ACEDS, May 2018
- Instructor, *Challenges of Mobile and Social Sources/Ephemeral Messaging,* ACEDS, December 2018
- Presenter, *Mobile Device Forensics - Beyond the Cell Phone*, Xact Data Discovery Webinar Series, December 2016 and June 2016
- Presenter, *Corporate Data Identification and Discovery*, Private Firm Presentation, August 2016
- Presenter, *kCura Relativity - Forensics and Collections*, Xact Data Discovery eDiscovery Conference, May 2016
- Presenter, *Mobile Device Forensics and Investigations*, Indiana Chapter of National Society of Professional Insurance Investigators, June 2015
- Presenter, *Governing Big Data: What Strategy Works Best*, Greater Kansas City Chapter of ARMA International, February 2014
- Presenter, *eDiscovery for Dummies*, Minnesota Defense Lawyers Association, August 2013
- Presenter, *Full Database Collections, Review and Productions*, Minnesota Association of Litigation Support Professionals, July 2013
- Presenter, *Forensics - Best Practices and Approaches*, National Federation of Paralegal Associations, June 2013
- Panel Expert, *Remote Collections: Forensic Defensibility*, Women in eDiscovery, February 2013

**Articles**
- Contributor, *New Matter Kickoff Plan*, Whitepaper, May 2021
- Contributor, *Microsoft 365 is Forcing Lawyers to Face Cloud Discovery*, ACEDS, December 2015
- Author, *Mobile Device Forensics Overview*, Xact Data Discovery Blog Series, August 2015
- Author, *Employee IP Theft and Non-competes - Where Is the Data?*, Xact Data Discovery Blog Series, May 2015

**Conferences, Seminars & Training**
- **Magnet Forensics**: Internet Evidence Finder Essentials (IEF), Version 6.x
- **RECON for Mac OS X Certification:** Surviving Digital Forensics Series
- **Resolving Attached USBs:** Surviving Digital Forensics Series
- **Volatile Memory Collection and Analysis:** Surviving Digital Forensics Series
- **LNK File Analysis:** Surviving Digital Forensics Series
- **Ethical Hacking:** Ethical Hacking and Expert Endpoint Security
- **Powershell:** Scripting and M365 Integration
- **Python Bootcamp:** Python Scripting and App Development
- **Private Investigator Licenses:** Michigan (3701206570)
- **Email Investigations:** Advanced Email Analysis, Metaspike FEI
- **iOS Biomes:** Introduction to iOS Biomes, Magnet Forensics
- **Identifying & Defending against AI Maniuplated Media in eDiscovery,** PinPoint Labs

-3-

- **YARA Overview, Malware Detection and Analysis**: Magnet Forensics
- **Magnet User Summit 2024**, Product Advisory Council
- **Advanced iOS Analysis & Preservation Techniques**, 2024, Hexodoria


## RECENT TESTIMONY

**Courtroom Testimony**
- *Gordon Rudko v Insight Canada INC.,* Court Files 1803 09162 (Court of King's Bench of Alberta, Edmonton), September 2024.
- *Company.com, LLC v. Priority Payment Systems, LLC.,* Case No. 2023CV374815 (Superior Court of Fulton County State of Georgia), November 2023
- *University Research CO., v Hala Almossawi.,* Case No. D-06-CV-22-021825 (District Court for Montgomery County, Maryland), October 2023
- *Radiant Global Logistics, INC., v Charles Furstenau JR and BTX Air Express of Detroit, LLC.*, Case No. 2:18-cv-12783-PDB-RSW (District Court, Eastern District of Mich, Southern Division.), October 2023
- *Airgas USA v. Metro Welding Supply Corp.*, Case No. 2016-156416-CB (Circuit Ct. Oakland Cnty. Mich.), June 2023
- *Crumbl v. Dirty Dough,* Case No. 2:22-CV-318-HCN-CMR, (United States District Court, District of Utah) April 2023
- *First Industrial v. Decorative Plumbing Distributors,* Case No. 22CV013825, (Superior Court of CA., County of Alameda)  February 2023
- *Paige Guinn v. Carolyn Douglas & Integra Wealth Advisors LLC, Case No. AAA-01-21-0016-4701 Hon. Alvin L. Zimmerman., County of Harris, Texas) September 2022*
- *David Wells v. Steve Yeng et al.,* Case No. 37-2019-00028014-CU-BC-CTL (Superior Court of CA., County of San Diego, Central)  August 2022
- *Texas Direct Insurance Agency, LP v. Richard E. Chester*, Cause No. 2020-18467 (190th Jud. Dist. Harris Cnty. Tex.), September 2021
- *State of Minnesota v. Brett Alexander Hempel*, Case No. 79-CR-17-678 (3d Jud. Dist. Ct. Wabasha Cnty. Minn.), October 2019
- *Airgas USA v. Metro Welding Supply Corp.*, Case No. 2016-156416-CB (Circuit Ct. Oakland Cnty. Mich.), May 2017
- *Distribution Int'l Sw., LLC v. Hargis, et al.*, Case No. 16-cv-30407 (D. Colo.), March 2017
- *Perceptron v. VRSI, et al.*, Case No. 15-002933-CK (Circuit Ct. Wayne Cnty. Mich.), January 2016
- *Walsten v. Shank Power Prods. Co. et al.*, Case No. 19HA-cv-12-1094 (1st Jud. Dist. Dakota Cnty. Minn. ), June 2013


**Deposition Testimony**
- *Silver Fern Chemical, INC., v. Ambyth Chemical Company, et al.*, Case No. 2:23-cv-00775-TL, (United States District Court, Western District of Washington at Seattle), June 2024
- *Estate of Kristina Lynee Martinez v Jessie D. Lint, Clean Harbors Environmental Services, INC., et al,* Case No. 210301094, (Third District Court, Tooele Country, State of Utah)  February 2023
- *First Industrial v. Decorative Plumbing Distributors,* Case No. 22CV013825, (Superior Court of CA., County of Alameda)  February 2023
- *David Wells v. Steve Yeng et al.,* Case No. 37-2019-00028014-CU-BC-CTL (Superior Court of CA., County of San Diego, Central)  August 2022
- *Hoyt et al. v. Aaron R. Massey et al.*, Cause No. D-1-GN-21-000936 (98th Jud. Dist. Travis County Tex.), May 2022
- *Radiant Global Logistics v. BTX Air Express of Detroit et al.*, Case No. 2:18-cv-12783-PDB-RSW (E.D. Mich.), June 2020

-4-

- *Metro. St. Louis Sewer Dist. v. Bilfinger Indus. Servs., Inc. et al.*, Case No. 15SL-CC04421 (Circuit Ct. St. Louis Cnty. Mo.), February 2018
- *Anchor Bank v. Ameriprise Financial Services et al.*, Case No. 27-CV-14-4597 (4th Jud. Dist. Hennepin Cnty. Minn.), February 2016
- *Diversified Water Diversion, Inc. v. Standard Water Control Sys., Inc.*, Case No. 27-cv-03-7231 (4th Jud. Dist. Hennepin Cnty. Minn.), October 2013