# EXHIBIT 4

Matthew J. Peters
Direct Dial: 202.637.2345
matthew.peters@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Silicon Valley |
| Hong Kong | Singapore |
| Houston | Tel Aviv |
| London | Tokyo |
| Los Angeles | Washington, D.C. |
| Madrid | |

June 27, 2025

**VIA EMAIL**

Lea M. Bays
Robbins Geller Rudman & Dowd
655 West Broadway, Suite 1900
San Diego, CA 92101
lbays@rgrdlaw.com

Re:    *In re Carvana Co. Securities Litigation*, No. CV-22-2126-PHX-MTL (D. Ariz.)

Dear Lea:

I write regarding your letter dated May 29, 2025 (the "Letter"), and in continuance with the parties' extensive discussions regarding hyperlinked documents, including, but not limited to meet-and-confers on May 6 and May 27, 2025.

## I.    HYPERLINKED DOCUMENTS EMBEDDED IN GMAIL COMMUNICATIONS

The Letter is rife with inaccuracies. It implies that Carvana Defendants intentionally withheld from the plaintiffs the fact that they had already collected potentially relevant communications. It further asserts that, as a result, "any future argument regarding the burden of implementing two collections is the result of the Carvana Defendants' doing." Letter at 2. These assertions are incorrect. Carvana Defendants were obligated to collect potentially relevant materials in anticipation of fact discovery. How else could Carvana Defendants have the familiarity with discovery materials necessary to propose potential custodians and search terms, among other things? Indeed, Carvana Defendants believe that the agreed-upon Stipulated Electronic Discovery Agreement and Order ("ESI Order") (ECF 137) mandates that they at least collect custodians' potentially relevant communications to inform negotiations about search terms. For example, the ESI Order requires that Carvana Defendants provide plaintiffs "search term hit list[s] or hit report[s] for the complete set of search terms after global de-duplication (including the number of documents that hit on each term, the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list, with and without families)" in connection with negotiations about search terms—which have been ongoing for months. ESI Order at 4.

Plaintiffs insisted on these provisions, and the Carvana Defendants have complied with this obligation and provided plaintiffs with multiple search term hit lists and hit reports, and also

Matthew J. Peters
June 27, 2025
Page 2

## LATHAM&WATKINS LLP

repeatedly disclosed to plaintiffs that the reports were based on emails, attachments, and other materials collected from custodians. *See, e.g.*, Letter from M. Peters to R. Cocalis dated April 10, 2025 at 2 (noting that plaintiffs' "additional" search terms yielded approximately 1,167,348 emails and attachments and that "Carvana Defendants' collection of potentially relevant information is ongoing," as well as attaching a search term hit report).

Furthermore, Carvana Defendants informed plaintiffs long ago that Carvana uses the Google Suite. Google mail ("Gmail"), Google's email application, and Google Vault, Google's information governance and eDiscovery tool, are key components of the Google Suite. Any suggestion of surprise that Carvana Defendants would collect potentially relevant materials from Gmail via Google Vault strains credulity. Google Vault is an eminently reasonable tool—and the Letter's assertion that it is somehow "more" limited than plaintiffs' preferred approach is inaccurate. Plaintiffs cannot deny that using Google Vault is the industry standard for companies who, like Carvana, use Google Suite.

The Letter references the ESI Order's provision concerning hyperlinked documents, *see* ESI Order at 8. Carvana Defendants have fully complied with the ESI Order. Carvana Defendants have collected through their custodial and shared drive collection using Google Vault, Google Drive documents that are referenced as file hyperlinks. This is a standard practice, and appropriate where a company, like Carvana, uses Google Suite.

The Letter ultimately reflects that plaintiffs are seeking to dictate the precise manner through which Carvana Defendants perform collection for discovery. Specifically, Plaintiffs are insisting that Carvana Defendants use Forensic Email Collector ("FEC")—a third-party e-discovery software—to re-collect emails from Gmail and documents from Google Drive for possible production to plaintiffs. Such an insistence is contrary to well-settled law and the Sedona Conference Principles. Moreover, it is inconsistent with other positions that plaintiffs are taking in discovery negotiations.

Given the Letter's focus on FEC, it is important to set forth Carvana Defendants' understanding about the software. Carvana Defendants obtained this understanding through extensive and time-consuming efforts by both their counsel and their e-discovery vendor. Indeed, Carvana's e-discovery vendor has spent many hours researching and assessing FEC, including in discussions about FEC with Metaspike, FEC's developer. Based on those efforts, it is Carvana Defendants' understanding that:

Unlike documents attached to an email, documents hyperlinked within a Google email are not embedded directly in the email but instead are referenced to a Google Drive location via a URL. The URL points to a file that is stored in a location (Google Drive) separate from the email, as opposed to in the email itself. To collect such hyperlinked documents, FEC "impersonates" a specific individual user (*e.g.*, the relevant custodian for an email). Its ability to collect a document is therefore limited by that user's permissions. Accordingly, FEC cannot collect documents where the custodian no longer has permission to access the hyperlinked document. Additionally, FEC may not collect hyperlinked documents from emails that were deleted or archived. And FEC can only collect hyperlinked documents that reside in an 'active' Google environment. Google Vault does not suffer from these same limitations.

LATHAM&WATKINS LLP

Using FEC would cause Carvana Defendants to unnecessarily collect duplicate versions of emails and documents being collected. Carvana Defendants have already collected email and hyperlinked documents using Google Vault—the industry standard collection tool for companies, like Carvana, who use Google Suite. Emails collected via FEC may not de-duplicate against the emails and documents that Carvana collected from Google Vault. As a result, Carvana Defendants would either need to review these additional documents for possible production or try to develop a custom de-duplication process. Both would be time consuming and expensive for Carvana Defendants. Furthermore, Carvana Defendants' e-Discovery vendor has not used FEC on the scale proposed by plaintiffs, and would likely have to develop new and untested processes to account for these duplicate emails and documents.

Custodians' email accounts and Google documents created by the custodians, as well as Google Drive locations identified by custodians as containing potentially relevant information have been/will be collected by Carvana Defendants. Accordingly, many of the hyperlinked documents plaintiffs are seeking likely have been or will be collected without FEC.

Most critically, FEC cannot guarantee retrieval of the precise document hyperlinked within a Google email. Instead, FEC can attempt to retrieve what Metaspike apparently refers to as the "Latest Revision Before Parent was Sent" (the "Latest Revision Version"). This is the latest version of a hyperlinked file before the email referencing it was sent. Google Drive does not necessarily create a version of a document for every change to a document. A Latest Revision Version therefore may reflect content that was not contained in the actual hyperlinked document when the email was sent. Furthermore, because documents hyperlinked within an email are not attachments to that email (i.e., they are not embedded within the email) and are dynamic, they can be modified or replaced before the email recipient accesses the hyperlink. And, it is further Carvana Defendants' understanding that a Latest Revision Version may contain user comments from a more recent version of the document, even if it does not contain the text from that version, rendering the Latest Revision Version even more unreliable and confusing.

FEC has other significant inherent limitations. If an email thread contains hyperlinks further down in the chain, FEC will use only the topmost email's sent date when attempting to pull hyperlinked documents associated with each link that appears in the same chain. This would necessarily result in the collection of even more duplicate copies, further increasing the unnecessary burden on Carvana Defendants. And if FEC cannot access the Latest Revision Version—which is a strong possibility given FEC's numerous inherent limitations—then it defaults to collecting the current version of a hyperlinked document. This means FEC would collect the *same* document that Carvana Defendants have already collected using Google Vault.

Taken individually or collectively, FEC's limitations mean that there is no way to know if a hyperlinked document collected by FEC—whether it is a Latest Revision Version or something else—is even the version of a hyperlinked document that the email recipient would have seen when they accessed the hyperlink. FEC's inherent limitations mean that the Carvana Defendants (nor anyone else) cannot authenticate the FEC-identified documents, and producing the documents risk unnecessary confusion among witnesses regarding whether a document is what plaintiffs purport it to be. Accordingly, Carvana Defendants will not use FEC in connection with this litigation.

LATHAM&WATKINS LLP

## II.    REQUEST TO RESTORE BACKUPIFY

Backupify is cloud-to-cloud archiving software. Carvana generally uses Backupify to archive Gmail communications older than 4 years, as well as to archive Gmail communications and Google Drive materials from certain former Carvana employees. Backupify is not connected to the Google environment. In order to comply with discovery obligations in this litigation, Carvana Defendants previously exported custodians' emails and documents from Backupify.

Carvana Defendants have explained to plaintiffs that there is no automated way to collect hyperlinked documents from Backupify. Undeterred, plaintiffs responded by asking about restoring materials archived on Backupify for the purposes of collecting hyperlinked documents.

Carvana Defendants' understanding from their e-Discovery vendor is that restoring Backupify archives is time consuming and resource intensive. Doing so would likely require, for example, restoring each custodian's data on a custodian-by-custodian basis, recollecting that data, processing that data, as well as loading that data into a review platform. That would necessarily result in Carvana Defendants collecting duplicate copies of emails that they have *already* collected and which may not successfully de-duplicate. Moreover, restoring archived emails and documents for custodians who are former Carvana employees will not result in the collection of hyperlinked documents. Such documents were moved to Backupify and any associated hyperlinks are necessarily broken. Moreover, Carvana Defendant's e-Discovery vendor has never attempted to collect hyperlinked documents from restored Backupify archives and cannot guarantee it will work.

Accordingly, Carvana Defendants will not restore archived documents from Backupify in connection with this litigation.

## III.    SLACK

Plaintiffs have inquired about collecting hyperlinked documents from Slack, which for Carvana is housed in Onna—a data management platform.  It is Carvana Defendants' understanding that there is no automated method to collect hyperlinked documents from Onna. Moreover, at Carvana, Onna is not connected to Google Drive.

## IV.    REQUEST TO ALTER CARVANA DEFENDANTS' DOCUMENT REVIEW PARAMETERS

The Letter concedes, as it must, that documents hyperlinked within an email are not attachments. Letter at 3. *Nichols v. Noom, Inc.*, 20-CV-3677, 2021 WL 948646, at *4 (S.D.N.Y. Mar. 11, 2021) (observing, in the context of a dispute about whether defendants should be compelled to use FEC, that "the Court does not agree that a hyperlinked document is an attachment"); *In re Insulin Pricing Litigation*, 2024 WL 2808083, at *7 (D.N.J. 2024) ("[t]he Court agrees with Defendants: hyperlinks are not the same as traditional attachments"); *In re Meta Pixel Healthcare Litigation*, 2023 WL 4361131, at *1 (N.D. Cal. 2023) ("the ESI protocol should make clear that hyperlinked documents are not treated as conventional attachments"); *In re StubHub Refund Litigation*, 2024 WL 2305604, at *2 (N.D. Cal. 2024) ("the whole issue is that the linked-

LATHAM&WATKINS LLP

to documents are *not* attachments") (emphasis in original); *see also In re Uber Technologies, Inc., Passenger Sexual Assault Litigation*, 2024 WL 1772832, at *2 (N.D. Cal. 2024) ("a hyperlinked document . . . is not readily available for production in the same manner that traditional email attachments could be produced").

Instead, the Letter conjures up a new label and calls hyperlinked documents "functional equivalent to attachments." Letter at 3. It also manufactures a hypothetical justification—that potentially an email might not be produced if the only text it contains is "please see linked document." Letter at 3. This only confirms that plaintiffs are prematurely speculating instead of assessing any purported need in light of specific documents once produced. Furthermore, given the differences between hyperlinked documents and actual attachments described above, analogizing them is foolhardy. And, the Letter's "argument" is that emails and hyperlinked documents provide mutual "context." *E.g.*, *id.* ("hyperlinked documents are contextually part and parcel to the communication"). But, for the reasons explained above, what "context" can, for example, a Latest Revision Version provide to an email that states merely "please see linked document" when it is impossible to know whether the "linked document" was, in fact, the Latest Revision Version?

Carvana Defendants will continue to review documents consistent with the processes they have previously disclosed to plaintiffs.

Of course, notwithstanding the above, as Carvana Defendants produce documents and plaintiffs review them, if plaintiffs have questions regarding specific documents or requests, Carvana Defendants would be happy to discuss at that time.

Best regards,

*/s/ Matthew J. Peters*

Matthew J. Peters
of LATHAM & WATKINS LLP