UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

United Association National
Pension Fund, et al.,              )
                                   )          2:22-cv-02126-MTL
            Plaintiffs,            )
                                   )          Phoenix, Arizona
        vs.                        )           July 28, 2025
                                   )             2:25 p.m.
Carvana Company, et al.,           )
                                   )
            Defendants.            )
_____)

        BEFORE:   THE HONORABLE JOHN Z. BOYLE, MAGISTRATE JUDGE

TRANSCRIPT OF PROCEEDINGS

TELEPHONIC DISCOVERY HEARING

Transcriptionist:
Elva Cruz-Lauer
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 33
Phoenix, Arizona  85003
(602) 322-7261

Proceedings Recorded by Electronic Sound Recording
Transcript Produced by Transcriptionist

2

A P P E A R A N C E S

For the Plaintiffs:

      Robbins Geller Rudman & Dowd LLP - San Diego, CA
      By:  ERIKA LIMPIN OLIVER, ESQ.
      655 W. Broadway, Ste. 1900
      San Diego, CA  92101

For the Defendants Carvana, et al.:

      Latham & Watkins - San Diego, CA
      By:  ASHLEY GEBICKE, ESQ.
      12670 High Bluff Drive
      San Diego, CA  92130

      Latham & Watkins - Century City Office
      By:  MERYN CN GRANT, ESQ.
      10250 Constellation Blvd., Ste. 1100
      Los Angeles, CA  90067

      Fennemore Craig PC - Phoenix, AZ
      By:  ANDREA LYNN MARCONI, ESQ.
      2394 E. Camelback Rd., Ste. 600
      Phoenix, AZ  85016

For the Defendant Ernest Garcia, Sr.:

      DLA Piper LLP (US) Chicago - Lake St.
      By:  YAN GRINBLAT, ESQ.
      444 W. Lake St., Ste. 900
      Chicago, IL  60606-0089

For the Defendant Citigroup Global Markets, Incorporated, and
J.P. Morgan Securities, LLC:

      Paul Weiss Rifkind Wharton & Garrison LLP
      By:  DAVID PHILLIP FRIEDMAN, ESQ.
      1285 Avenue of the Americas
      New York, NY  10019

P R O C E E D I N G S

THE CLERK:  The United Association National Pension Fund versus Carvana Company.

Would the parties please announce?

MS. OLIVER:  Good afternoon, Your Honor.  Erika Oliver from Robbins Geller Rudman & Dowd on behalf of the lead plaintiff.

THE COURT:  Good afternoon.

MS. GEBICKE:  Good afternoon, Your Honor.  Ashley Gebicke of Latham & Watkins appearing on behalf of Carvana defendants, joined by Meryn Grant of Latham & Watkins and Andrea Marconi of Fennemore Law, also for Carvana defendants.

THE COURT:  Good afternoon.

MR. GRINBLAT:  Good afternoon, Your Honor.  Yan Grinblat, DLA Piper on behalf of Defendant Ernest Garcia, Sr.

MR. FRIEDMAN:  Good afternoon, Your Honor.  This is David Friedman from Paul Weiss Rifkind Wharton & Garrison on behalf of Defendant Citigroup Global Markets Inc. and J.P. Morgan Securities LLC.

THE COURT:  Thank you.  Anyone else on the line?

Okay.  As usual, when you speak, please identify yourself for the record before you begin.

Next, let me tell you that I set this for the dispute on 171.  If you all wish, we can handle 177 and 178 as well. If you don't want to, I can set something later this week, have

you all get back on the phone.

And in that regard, let me apologize for starting so late.  Our IT department had to come up and sort out some of our issues.  So it wasn't that anything else was holding us up, we just had to get our act together here as far as our electronics, so thanks for waiting.

So let's just handle 171, and then we will see if we want to go further and handle the other issues.

As you know from speaking with me in court before when you came in, I tend to give you a sense of what I have looked at, where I'm coming from, and then give you a chance to respond.

I just find that's a little easier for you to prepare and get a sense of where I'm at and then make sure if there's anything I'm not addressing, you get a chance to address it as well.

So on the issue of 171 and the confidential witnesses, there seems to be two issues, in my view.  Number one is the identity of the CWs, and then number two, any statements that those people made; with that I will include any documents.

So my sense of this, which I believe is the majority view of most of the courts that have reviewed cases like this, the identity of the CWs is discoverable.  Most of those courts and I tend to believe find that it's relevant.

In that regard here, for example, I went back through

the ACC, Judge Liburdi's motion to dismiss order. And I will just start with his order at 47, he talks about CW9. CW9 is listed in the ACC, having informations about calls, statements made perhaps by Garcia Jr. remembers employee discussions in January of 2022, so those are specific pieces of information that appear to be relevant to the case.

So moving on then just from the identity, which I think would just be a list of the CWs, we can talk about that, I am persuaded that moving on to statements of the CWs, anything in an attorney's file, any notes, if the attorney has quotations from a discussion, you know, those would tend to reflect the thoughts of the attorney. They would be work product.

On the other hand, any documents that were submitted by a CW to the attorney, those would, I would think, not be privileged unless you can explain to me why the document that was submitted by the CW was.

We maybe need to discuss other issues, but those are a sense of how I'm looking at this to begin with.

So let me turn to, I think plaintiffs here, and ask if you agree or disagree with the Court's conclusions, and let me hear your thoughts. Who would like to begin?

MS. OLIVER: Sure, Your Honor. This is Erika Oliver for plaintiffs. Really appreciate Your Honor's thoughts.

On RFP 8, we do agree with Your Honor's tentative that

information from the investigative files of Robins Geller is kind of poor attorney work product.  The Supreme Court says that in Upjohn and the Docusign 2024 decision says that as well.

Turning to ROG 4 though, Your Honor, there are kind of two overarching issues here.  Number one, we think that the information is classic attorney work product.

Who we as counsel selected to interview during our fact investigation, what we put into the pleadings, those are quintessential functions of any litigating attorney, and I think that that, you know, applies regardless of what side of the pew you are on.

I am sure that defendants, when they were putting together their answer here, had to identify individuals with relevant information and talk to those folks to put their answers together, and they would claim that that's work product.

The same applies with respect to the plaintiffs, and that calculus really shouldn't change just because we are required under the particular act that we operate under to put more detail in our complaint than would otherwise be necessary.

Your Honor, this is a securities case.  We are governed by the Private Securities Litigation Reform Act, among other things.  It heightens the pleadings standard, so we are required to put in more in the complaint to satisfy that

standard than is otherwise required by Rule 8 or Rule 9(b).

And so that's why we have the CWs in the complaint, but in order to satisfy that standard, that shouldn't automatically result in a waiver. And -- because while the PSLRA kind of heightened the pleading standard, it didn't set out to change the way privilege works or how the work product doctrine works, and I think the Court says that at page 489.

But -- so because this is work product, Your Honor, the defendants need to show a substantial need. They haven't done that here. All they have done is say they need it to verify the veracity of the CW allegations in the complaint, that under BofI and under Grae that is really a post hoc investigation into counsel's prefilings investigation, and it is not an appropriate use of discovery or kind of a relevant use.

So for all those reasons, Your Honor, we think that we shouldn't have to provide the names of the CWs in response to ROG number 4.

And just to add one final point, there is a concern in these cases with the privacy of the CWs. These folks are essentially operating in a whistleblower function in cases where investors are alleged to have been defrauded by these former -- witnesses' former employers.

They are not receiving any benefit for, you know, talking to us, and they really are kind of putting themselves

UNITED STATES DISTRICT COURT

in a situation where they're potentially going to be -- you know, where there are real concerns about retaliation.

We all know how important a former employer's recommendation is when we're looking for new jobs, and that's something that we are concerned with here.

These folks don't have skin in the game. They are not getting any benefit from participation in the prefiling investigation. And where we are not going to be using them at future stages of the litigation, we really don't think that they should be put in, you know, the line of fire here.

THE COURT: All right. I have several questions for you before I turn to the defense.

The first is, you just said that you're never going to use their information. Just, are you telling the Court that you are not going to use their information in any way from today forward in the case?

MS. OLIVER: This is Erika Oliver, Your Honor. Yes, that's correct, and we have told defendants that as well.

THE COURT: All right. Next question is, you talked about work product. You interviewed and worked on a case. You obviously selected which CWs you would put in your ACC. From that I assume you distilled out some -- you didn't use every CW you could have.

Why would I -- so in a sense you have sort of unveiled your -- any work product that you had regarding these CWs. You

put them in the ACC, so why would there still be any confidentiality of work product when you chose to put these CWs -- you are the one that picked these 12.

Obviously I am not asking -- I wouldn't be asking you to give 13 through 30 that you also reviewed and did not use. But since you did use 1 through 12, and you publicly put those in the ACC, doesn't that sort of abrogate the idea of privilege and confidentiality for work product?

MS. OLIVER: Your Honor, this is Erika Oliver. And no, no, I don't think so, because -- because we didn't include the names of the CWs here who we elected to -- if we are required to disclose the names, that would just give some indication of who we deem to be important versus not important.

THE COURT: Okay. The next, regarding the heightened pleading standard, I did review that. Can you tell me a case that supports the proposition that because of the heightened pleading standard, you can then get past Rule 26, you know, standard that it's not relevant?

And I didn't talk with you about the Grae case as well, because I think that case distinguished a few things and it seems to be -- I read all of it. I have it with me. But other than Grae, is there a case that says because of the heightened pleading standard, CW's names should not be disclosed?

MS. OLIVER: Yes, Your Honor, and I would point the

Court to the Ferruza case, because we cited that in our position statement.

And there, the court talked about, like the inclusion of CWs in a complaint to satisfy the periphery standard, and when discussing whether or not inclusion of them waives work product, the court said that plaintiffs simply referenced former employees to provide a credible basis and specific context to allegations that would be proved with admissible evidence at a later date.

So as a result, the fact finder would not be invited to rely on work product and the plaintiffs have not waived any work product protection there.

THE COURT: Okay. Final question, you know, I am sympathetic to the idea that, you know, they are maybe not whistleblowers, but there are privacy concerns. What is your -- I am not sure that was in this discussion before. I had thought about it as well. Do you have a case that CWs were not disclosed based on that concern?

MS. OLIVER: No, Your Honor, I don't, but I would point the Court to the BofI decision, because that is one where the Court required the disclosure of a CW identity but also put into place limitation on the use of the confidential witnesses' identities to ensure that, you know, they are protected from any potential harassment or retaliation.

And so if Your Honor is going to request or direct us

to identify the CWs, we would request that the similar type of safeguard be implemented here, and those can be found in the numbered paragraphs 3 through 10 of the BofI order's conclusion.

THE COURT:  All right.  I read through BofI.  I actually have a number of quotes from it as well, and you are right.  And it does talk about these CWs, and I will quote the case, have knowledge of the innerworkings of the bank during the time alleged fraud is indeed plainly relevant to the task.

And they didn't order the disclosure, as you said, but I will go back and look at the cases you mentioned.  Let me turn to the defense now.  I will come back to you for the final word, Ms. Oliver.

So on the defense side, who would like to start?

MS. GEBICKE:  Ashley Gebicke for the Carvana defendants.

THE COURT:  Go ahead.

MS. GEBICKE:  Your Honor, thank you.  We definitely agree with kind of the -- with the view that, you know, you have articulated.  We think it's consistent with the vast weight of authority within the circuit, which holds that confidential names -- confidential witness names and contact information are not work product.

You know, I think we cited several of these cases in our joint discovery motion, Shenwick v. Twitter, the Cooper

case, Miller versus Ventro.  They all support this conclusion.

Responding specifically to a few points raised by plaintiff, you know, I think as Your Honor asked, you know, they can't cite any case that specifically says that the PSLRA waives -- or the PLSRA somehow, you know negates or establishes work product protection for confidential witnesses just based, you know, purely on the pleading standard.

To the extent that they reference MTI, we would note that case is 23 years old and, you know, expressly contradicted for decades by courts in the circuit to continue -- who considered this issue.

With respect to substantial need, you know, they -- plaintiff said that we haven't articulated substantial need.  I think the court in In re Amgen who -- which we think is a very on-point decision, specifically held that plaintiffs are -- the confidential witnesses unquestionably have relevant information, and defendants are entitled to questioning about the basis of their statements and to explore the circumstances surrounding the statement.  The witness's motivation, their veracity, and even whether their statements were accurately related in the complaint.

The court in In re Amgen found that established substantial need even if the confidential witness identities were work product, which that court and others confirmed it is not.  So we think that standard is more than met here.

And, you know, moving to their note about privacy concerns. I mean, we have done -- again, kind of looked at Amgen, and in that decision, the court held to the extent the revelation of the names of the CWs may implicate the privacy rights of those individuals, the court has balanced plaintiff's asserted right to privacy against the relevance of the information, and the court finds that defendant's discovery needs here outweigh the concerns of plaintiff, and that the protective order entered in (indiscernible) which, among other things, limits confidential information to use by the parties and their counsel (indiscernible) only and prohibits disclosure to anyone except as provided therein, strikes the appropriate balance between the need for the information and privacy concerns. And we submit that that is the same situation here.

And, you know, again as mentioned, to the extent that plaintiffs relied on MTI, that decision does not represent the weight of authority in the circuit, and I am happy to answer any other questions Your Honor may have.

THE COURT: You have requested the names of the CWs, 12 of them, I believe, so if the Court orders you to receive a list, you get a list of 12 names. Is there something else you are asking for?

MS. GEBICKE: We are asking for, Your Honor, the names of the confidential witnesses, their contact information, and, you know, the correlation between those names and the numbers

14

assigned in the complaint.

THE COURT:  Anyone else from the defense side that would like to address the Court?

MR. GRINBLAT:  Yes, please, Your Honor.  This is Yan Grinblat on behalf of Defendant Ernest Garcia, Sr.  The second part of our joint submission was regarding two categories of information that Garcia, Sr. is seeking.  One is what, if anything, did the confidential witnesses say about Mr. Garcia, Sr.  And two, is what, if any, documents the CWs provided to plaintiffs' counsel regarding Senior.

I will start in reverse order.  I didn't hear any opposition from plaintiffs, and I apologize if I missed it, regarding the tentative holding that the defendants are entitled to the documents, which we obviously agree with.  We think it makes sense and is supported by relevant case law.

The documents that were provided to plaintiffs are not work product, and we are not seeking any post hoc analysis of those documents.

Turning to the statements that the CWs made about our clients.  We do believe that we are entitled to any verbatim statements, not any subsequent analysis of those statements, not anything beyond that.  And there's a framework in place for that in Weston v. Docusign, 2025 Westlaw 798600, where verbatim statements from confidential witnesses were ordered produced.

And here is why I believe this matters, Your Honor.

You yourself observed that the plaintiffs were not obligated to put everything that they have uncovered in their investigation into the complaint, so we have a situation which we know who the confidential witnesses are, but not what each of them may have said or provided.

So in order to structure our defense, we shouldn't have to go into each confidential witness deposition without any awareness of what those confidential witnesses said, to the extent that information wasn't used by plaintiffs.

We are also entitled to any exculpatory information that those confidential witnesses may have provided, to the extent, for example, any of them said that certain defendants were not involved in certain acts or statements.  Obviously plaintiffs would not have pled that, but they may have received that information.

THE COURT:  Let me ask about that then.  When an attorney is talking to CW number 1, CW 1 says five different statements and the attorney writes down one of the five because that's particularly relevant, either affirmatively good or, you know, negative and it's a concern.

Haven't you just then delved into what the attorney believes is important in a case and got right to the heart of what work product is?

Let me distinguish that, by the way, from an outside, like a document, you said, or a statement that was made, you

know, in an email to a colleague, something that doesn't reflect the attorney's deliberations.

Go ahead.

MR. GRINBLAT:  Your Honor, I believe whether or not a fact is important doesn't make it work product.  If the attorney in your situation writes down a verbatim statement, whether that verbatim statement is important in some way to the case doesn't shield that fact.  No different from any other fact, such as a document that an attorney has provided that the attorney might think is important.

THE COURT:  I think an attorney might quote three words out of a paragraph and key in on those as being critical, and then another attorney might not think it's very important at all, might key in on three other words.

The point I am making is each attorney might find things to be more important than another when talking with someone else, and in my work and work product cases, it's pretty expansive in protecting the attorney's inner thoughts and writing specific quotes -- I will go back and look -- but writing specific quotes to that attorney were important in a case, essentially cherry-picking statements out one way or the other, it does appear to be work product.  But I will take a look.  I understand your point.

Let's say I decide that these type of statements, you know, that are made on a -- whether it's typed out or on a

notepad -- are work product, tell me the realm of other statements that you could imagine that would not be work product that wouldn't otherwise be contained in some document. Because I do think documents -- I will go back to plaintiff -- but I think the documents are not protected.

Is there anything in the middle, is my question, that's something that's not on a note pad, which if I find is work product documents come in, is there anything in the middle I need to think about in my order?

MR. GRINBLAT:  The thing that immediately comes to mind to me, Your Honor, is an investigator's preliminary conversations with the confidential witnesses where the investigator, not an attorney, is deciding what to write down and taking down verbatim statements, or any assistant that is working with an investigator, any individual that is not an attorney that is taking down what a witness said verbatim. That is not work product in my view.

THE COURT:  Okay.  Anything else you want to address before I see if there's anyone else from the defense side?

MR. GRINBLAT:  Nothing further at this time, but thank you, Your Honor.

THE COURT:  Okay.  Thank you.

Anyone else on the defense side?

All right, Ms. Oliver, as I said, I will come back to you then.  Again, I am going to look at these cases.  I have a

sense of where I am trending; I think you can tell that.

Can you repeat again, you had talked about number 3 through 10, but I want to make sure that if I draft this and I order the disclosures of the CWs, at the end you had mentioned the rubric in which I should do that.  Then we'll talk about Garcia, Sr.  We will get to that in a second.

So can you remind me again how I would protect the CWs if their names were disclosed?

MS. OLIVER:  Sure, Your Honor.  This is Erika Oliver.  In the BofI decision, at the end, in the conclusion, the judge lists out 1 through 10, there are numbered paragraphs.

THE COURT:  Right.

MS. OLIVER:  And paragraphs 3 through 10 are the ones that concern the safeguards for use of confidential witness identities.

THE COURT:  Okay.  I made that note.  Thank you very much.  Go ahead.

MS. OLIVER:  And, Your Honor, paragraph 10, it refers to an order that the District Court had entered previously in the case, and then that order is found -- is found earlier in the decision.  Let's see if I can find it for you.  It is quoted at star cite to you.

THE COURT:  Can you repeat that, please?

MS. OLIVER:  Sorry.  So paragraph 10 refers to an order that the District Court issued earlier in the BofI case.

THE COURT:  Right.

MS. OLIVER:  And that order is quoted at star cite to you of the BofI decision.

THE COURT:  Okay.  Thank you.  As far as CWs' names, I think -- I don't have any other questions.  Anything you want to add before I turn to this additional information about Garcia, Sr.?

MS. OLIVER:  The only point that I wanted to bring up, Your Honor, was -- with respect to ROG 4, it's asking for names and contact information of the CWs, but it also asks us to specify which number in the complaint we assigned to each of the CWs.  I think that last piece of information goes a bit far afield.

It's exactly what the defendants in BofI had asked for, and the court there said that that's not really relevant and limited the disclosure of the CW identities to just the names and specifically said that the plaintiff didn't need to link them up to the numbers or particular paragraphs in the complaint, so we would request that the same kind of limitation be implemented here.

THE COURT:  I read that, and I have been thinking about it.  What I am wondering though, is this just going to cause you more time and expense in depositions -- if this information isn't all that critical, you apparently are not using it at all in your case, you are going to basically be

forcing the defense to use -- to figure out which CW is which and just, you know, lengthen the cost of litigation in this case for something which you have indicated isn't something you are even going to be using.

So are we really saving a whole lot here under your approach of not linking them up?  I did see that Court said what you have said.  I am just, in this case, what are we achieving?

MS. OLIVER:  Well, Your Honor, we -- there are only 12 CWs in this case.  The complaint includes detailed information about their dates of employment, their job titles, the job descriptions, the geographic regions where they were responsible.

And Judge Liburdi noted that those allegations were specific in particular, so I don't think that provided defendants would have an issue identifying who their former employees were.

THE COURT:  Right.  But the defense is asking you to link these up to say CW number 1 is this person, and you are telling me -- are you prepared to do that?

MS. OLIVER:  Yes, we can do that.

THE COURT:  Okay.  That was my question.

So let's talk about Garcia, Sr. then.  Delving into these work product issues can always be tricky.  I think you get a sense of where I was coming from.  Let me start with an

easier part.

Documents, if I order the disclosure of documents that were given to the attorneys, any objection?

MS. OLIVER:  No objection to documents that were provided by any witness to the attorneys or the investigator. I would note, Your Honor, that RP 8 is seeking documents pertaining to confidential witness statements that pertain specifically to Garcia, Sr.  So there needs to be a responsiveness review whether they pertain to Mr. Garcia, Sr. In particular, but otherwise, no objection theoretically to the orders.

THE COURT:  So then I had a discussion about the -- you know, the statements made by the CWs to the attorney, for example, and, you know, trying to parse out what wasn't reflecting the attorney's inner thoughts about a case, which I assume you agree with much of that.  But let me hear if you have anything else you want to add in that regard.

MS. OLIVER:  Your Honor, I do agree with the Court's thoughts.  There were a couple of points that I wanted to respond to that my colleague on the other side brought up.

First, I disagree that documents or notes or summaries that are prepared by our investigators are not covered by the attorney work product doctrine.  I mean, these are our agents. We -- they are working at our behest in anticipation of litigation, so I think that the doctrine covers any preliminary

type of notes.

In terms of what the work product looks like, these aren't transcripts, Your Honor.  I agree with what you said about how there are summaries that might have specific quotes or specific phrases that are quoted, but these are all included within like a larger memorialization of the conversation, and I think that that falls directly under Upjohn.

The defendants cite JDS in their part of the position statement for the discoverability of communications, but there in JDS, the court held that the motion for -- the motion to compel memoranda were denied where those were a couple of pages long.  They included very few quoted phrases or sentences amongst, you know, summaries, and I think that that applies with full force here.

I know we talked a bit about Docusign 2025, that that is a very different situation because, you know, defendants have said they need to set up their defense.  They need to test these allegations.  But I think as my colleague on the other side conceded, none of the CW allegations in the complaint pertain to Garcia, Sr.  So what they want to do is see if there was any statement that was made by a witness that was then incorporated into our work product but which we ultimately decided not to include in the complaint, and then draw some inference from the decision to not include that information.

And I think that that is exactly, Your Honor, what the

work product doctrine is intended to protect against, and I think the 2024 Docusign decision is more on point here, because there the court described the defendant's request as seeking information from the investigative files so they may determine whether any other former employees provided plaintiffs with facts contradicting the AC's allegations that were omitted from the AC.

And there the court readily denied the request for information, saying that defendants are not entitled to plaintiff's investigative materials, like interview notes, witness summaries, and the like.

And I think that that is a more factually comparable situation compared to the 2025 decision where, you know, the defendant there made a showing of substantial need. They had already obtained declarations from CWs who took issue with the allegations that were contained in the complaint. They had already, like, deposed three witnesses and things of that nature that just aren't present here.

THE COURT: Okay. Anything else regarding Garcia, Sr. before we conclude 171?

MS. OLIVER: Nothing for plaintiffs, Your Honor.

THE COURT: Okay. Anything else -- I don't want any more argument. Is there any issue we have not addressed on 171 from the defense perspective?

MS. GEBICKE: Not from Carvana defendants, Your Honor.

THE COURT:  Thanks.

MR. GRINBLAT:  And not from Garcia, Sr.  Thank you.

THE COURT:  All right.  So I am prepared to move on and handle 177 and 178.  I didn't put it in the order.  I guess I could have emailed you all as well.  As I said, I can even give you my thoughts.  We can set up another conference or I can go forward with that now.

So let me just turn to you all.  Would the plaintiffs like to handle these today?

MS. OLIVER:  Your Honor, this is Erika Oliver.  We certainly appreciate the Court's thoughts, but we would prefer to have -- to set a separate hearing for whenever -- at the Court's convenience.

THE COURT:  Okay.  Well, that's enough.  I am not going to push anyone.  If either one of you had asked for more time, I would let you do that.

So I will just have you -- I will have my staff consult you and pick a time.  Just to tell you my schedule, I am available during the rest of the week.  Any time would be fine.  These telephonics are easy for me to set up, otherwise, my sole vacation this summer is the week after, and then I am back.  So depending on your time frame to -- I am unavailable next week, and then available whenever you otherwise wish.  So with that, let me turn to 177.

Okay.  Let me -- here are, I guess, some of my

thoughts and some of the questions I would have asked you. So the issue, of course, is, as I read it, these hyperlink documents is what currently might be disclosed the same as the version that existed when the email was sent.

And the plaintiffs say that some of these are often edited years later -- I am just going off 171 at 2 -- and they misrepresent what the recipient actually saw at the time of the email.

So my first question would be, does everyone agree that obviously the emails are being disclosed. These hyperlinks, I assume, are -- the links themselves are shown.

And the question is, does everyone agree that the plaintiff is entitled to the original of the hyperlink documents? And if so, then I would turn to defense and say, how would you ensure that was done?

I have read -- I have read the affidavits, both from the experts Bui and Polus. I have looked at the cases, and those are the two main questions that I am going to have for you then. How can you ensure that the plaintiffs get the originals? One case set aside a meta document dump that was like a third subset.

So generally, I think as courts do, we allow the party that is disclosing to come up with a system if it's reasonable and it works for them and it covers everything that is needed, then if it's acceptable, then generally I defer to that.

But if it's unacceptable, if it's insufficient, then I turn to the other party and ask them, you know, how do we fix this?  I don't know that we need to get into costs; we can.

I don't know how many actual documents we are talking about.  You know, there was a question about ripeness, but, you know, this needs to get addressed one way or the other.

So I am going to come back together, when we talk about this, is do we agree that the originals are discoverable, and if so, how do we ensure that the plaintiffs get them?

All right.  On 178, you know, my thoughts on this is, we are talking about -- so for your all memory, this is talking about setting these deadlines.  And, you know, in the beginning of the class period is May 6th, 2020, there seems to be a general thought from both parties that at the beginning of the year onward might be acceptable, so it would be easy for me to put January 1, 2020.

I also want you to know, I tried to tie these to something in the case.  I know as a litigant I went before a judge, and it seems like some judges always just split it down the middle like Solomon.  So then that just incentivizes the parties to, you know, pick longer dates so they get a better median, so I did try to connect this to something in the case.

And one of the things I keyed in on was in December 2020, Ohio DMV suspended the tag privileges.  February 2021, Michigan Department of State was investigating the case -- and

the reason I bring those up is, that meant there had to be action that was going on, usually you would think at least for a year before that, so January 1, 2020 for a start date seemed to work for me.

Then the question is, what are we picking for an end date?  And we are deciding between January 1 of 2023 up to April 1 of 2023.  And, you know, there's a question about the last subsequent event under the security act, paragraph 398 in the ACC.

And I was just going to ask you all questions about trying to tell me the difference between January 1 and April 1, other than the tens of thousands of documents that might have to be done month by month, and the cost.  So this isn't a very long range, but those were my thoughts going in.

So now you have some sense of that.  I will be glad to address this more.  Just -- let me ask you all, in your experience, would it be easier for you all to confer yourselves and then give the Court a date, you know, an hour or two that works for you, and then call my staff and we will fit you in. If I have to move some other matters around, I'm happy to do that.

Maybe that would be easiest if you all kind of pick who is going to argue this.  You find -- give me like two or three dates that might work, either by the end of this week or not next week but the week after.

You give me three dates, and we'll give you a time. Maybe that might be the most efficient way to do this and help my staff as well.

Does that work for plaintiffs?

MS. OLIVER:  This is Erika Oliver.  Yes, that works for plaintiffs, Your Honor.

THE COURT:  Okay.  What about the defense side?

MS. GEBICKE:  That works for Carvana defendants, Your Honor.

MR. GRINBLAT:  Same for Garcia, Sr.  Thank you, Your Honor.

MR. FRIEDMAN:  For the underwriter defendants as well. Thank you, Your Honor.

THE COURT:  Great.  Okay.  With that, unless you all resolve those, after my questions, I don't know that you will, but if you did, that's fine.

Either way, Ms. Oliver, I guess I will leave it to you to be to recipient of the scheduling however you want, and then you can contact the Court with the information, if that's okay?

MS. OLIVER:  That works for plaintiffs, Your Honor. Thank you.

THE COURT:  I would appreciate it as some assistance, thank you.  I don't think there's anything else for me to address with you all, but let me just double-check.

Anything else from plaintiffs today?

MS. OLIVER:  Nothing else, Your Honor.

THE COURT:  Okay.  Anything from defense?

MS. GEBICKE:  Nothing from Carvana defendants, Your Honor.

MR. GRINBLAT:  Nothing from Garcia, Sr.  Thank you, Your Honor.

MR. FRIEDMAN:  Nothing else for the underwriter defendants.  Thank you, Your Honor.

THE COURT:  All right.  Next time we will have the phone line in better shape, I hope.  And with that, I hope you have a good afternoon.

We are adjourned.  Thank you.

(Proceedings concluded at 3:06 p.m.)

UNITED STATES DISTRICT COURT

C E R T I F I C A T E

I, ELVA CRUZ-LAUER, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

DATED at Phoenix, Arizona, this 29th day of July, 2025.

s/Elva Cruz-Lauer
Elva Cruz-Lauer

UNITED STATES DISTRICT COURT