**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United Association National Pension Fund, et al., | No. CV-22-02126-PHX-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| Carvana Company, et al., | |
| Defendants. | |

Pending before the Court is the "Joint Discovery Motion" regarding the collection, review, and production of hyperlinked documents ("Joint Discovery Motion Regarding Hyperlinked Documents"). (Doc. 177.) As discussed in more detail below, Plaintiffs request a copy of Google Drive hyperlinked documents as they existed at the time when emails were sent. Defendants assert that Google Drive documents are designed to be modified by users over time, so it is highly unlikely any technology (including Plaintiffs' program called FEC) will find them as they existed at a certain point in time. The Court has reviewed the motions, the competing expert affidavits, and arguments. The Court concludes that a smaller sample size of discovery using Plaintiffs' requested program (FEC) will demonstrate whether historical, hyperlinked documents can be retrieved in a manner proportional to the discovery needs of the case.

Also before the Court is a "Joint Discovery Motion Regarding Relevant Time Period." (Doc. 178.) The Court will address each motion in turn.

## I.    Joint Discovery Motion Regarding Hyperlinked Documents (doc. 177).

Plaintiffs state that Defendants refuse to produce versions of hyperlinked documents contemporaneous to emails that were sent during the relevant period. (Doc. 177 at 2.) Defendants only offer the current versions of those documents that may differ from what the parties to the emails saw at the time because of edits made over the course of the ensuing months and years. (*Id.*) This inhibits Plaintiffs' ability to establish "who knew what and when." (*Id.*) Plaintiffs also note, "Defendants propose to sever modern attachments from their parent emails and review them independently for relevance[.]" (*Id.* at 3.) Plaintiffs assert it is well-settled that "where responsive emails are produced, a party must also produce any linked attachments, notwithstanding its contentions that those attachments may be irrelevant." (*Id.*) (quotations and citations omitted).

Defendants argue they have "adhered to eDiscovery industry standards, using tools native to Carvana's Google Workspace to collect emails, documents, and other data." (Doc. 177 at 3.) Defendants further argue that the limitations of Plaintiffs' proposed eDiscovery tool—the Forensic Email Collector or "FEC"—would cause it to collect inaccurate documents; that those documents would be incapable of authentication and without evidentiary value; and that such efforts would be unnecessary, unduly burdensome, and disproportionate to the case's needs. (*Id.* at 4.) Defendants state they are "independently reviewing [their] Drive documents, including Linked Documents, for production alongside emails[,]" which they assert are critically different from traditional email attachments. (*Id.*)

The Court's March 11, 2025, Order "govern[s] how the parties and the Court [will] manage the production of documents, exhibits, electronically stored information ("ESI"), and other materials or information (collectively, "Documents") in the [ ]case" ("the ESI Order"). (Doc. 137 at 1.) The Order memorializes the parties' agreement that "if any part of a communication or its attachments is responsive, the entire communication and attachments will be produced, except any attachments that must be withheld or redacted on the basis of privilege." (*Id.* at 8.) With respect to hyperlinked documents, the Order provides as follows:

The parties understand that hyperlinked documents will be collected and produced in this case. The parties shall use their reasonable best efforts to collect documents that are links in documents and communications, including, but not limited to, Google G Suite, Microsoft 365, etc. Where the automatic collection of the hyperlinked document is technologically feasible, reasonable, and not unduly burdensome, the hyperlinked document will be collected. The parties will work diligently and collaboratively to come to a common understanding as to the scope of the collection, review, and production and any other issue that arises. In addition, the parties will work diligently and collaboratively to come to a common understanding as to what is reasonable, technically feasible, and not unduly burdensome (e.g., showing the hyperlinked relationship between documents and producing point-in-time version[s] of hyperlinked documents). To the extent the parties are not able to come to an agreement, any disputes will be promptly raised with the Court.

(*Id.*)

The parties make contrasting representations regarding the potential feasibility and utility of implementing the proposed FEC tool to collect versions of hyperlinked documents contemporaneous to the emails sent. The Court recognizes that the collection of hyperlinked documents existing as they did at the time of the email presents challenges. The Court acknowledged the potential for these challenges in the ESI Order. While Defendants insist the process will be difficult and that whatever documents FEC collects may lack evidentiary value, the Court finds a "diligent" and "collaborative" solution in the spirit of the ESI Order requires a compromise. The Court will not excuse Defendants from any efforts to produce contemporaneous hyperlinked documents outright simply because they elected to use a suite of cloud-based web applications that would make that process difficult. *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, No. 23MD03084CRBLJC, 2024 WL 1772832, at *4 (N.D. Cal. Apr. 23, 2024) ("[T]he potential limitations and pitfalls with respect to production of hyperlinked documents from Google Vault have been widely known for many years, yet Uber has elected to transfer and retain its electronic data using this service."). Other courts confronting the issue have elected a compromise, allowing the party seeking discovery to identify a subset of documents for which the responding party must produce point-in-time versions. *Id.*

("Plaintiffs may identify up to 200 hyperlinks for which they seek the contemporaneous referenced document even though the email or message has been archived with Google Vault. Uber shall identify and produce the likely contemporaneous versions that Plaintiffs have requested."); *Shenwick v. Twitter, Inc.*, No. 16-CV-05314-JST (SK), 2018 WL 5735176, at *1 (N.D. Cal. Sept. 17, 2018) ("The Court is mindful of the burdens to Defendants but also notes that Plaintiffs have a right to determine if an electronic message refers to a document, then Plaintiffs should be able to access that document. Given the competing needs, the Court ORDERS that Defendants must produce documents referenced in a hyperlink for 200 documents that Plaintiffs choose . . . .").

The Court will permit Plaintiff to select up to two custodians comprising a small subset of the overall scope of emails and corresponding hyperlinked documents at issue in the case. Defendants must produce responsive documents—*i.e.*, the versions of any documents as closely contemporaneous to, but preceding, the email communication as is feasible—on or before December 1, 2025, absent further order of the Court. The Court assumes FEC will be used, but the parties may agree to other methods. If this limited test is successful in producing point-in-time hyperlinked documents of evidentiary value without undue burden or expense, the parties may raise the issue of conducting additional discovery into point-in-time hyperlinked documents by filing a motion with the Court.

## II.    Joint Discovery Motion Regarding Relevant Time Period (doc. 178).

Plaintiffs argue that discovery before and after the Class Period (May 6, 2020, to October 7, 2022) is relevant to establishing Defendants' knowledge and the context of their actions. (Doc. 178 at 2.) Plaintiffs request the Court adopt a Relevant Period beginning November 1, 2019, and ending April 1, 2023. (*Id.* at 3.) The beginning date is six months before the Class Period. (*Id.*) Plaintiffs note Defendants Jenkins and Garcia Jr. were discussing Carvana's violation of state title and registration laws as early as July 2020 (doc. 71 at 55) and, if discussions were occurring in July 2020, "logic dictates the violations were already occurring." (Doc. 178 at 2.) As for the end date, Plaintiffs note that April 1, 2023, is 37 days after the last in a chain of events contributing to a decline in Carvana's stock

price they believe is relevant to their Securities Act claims, and is less than six months from the final "corrective disclosure" relevant to the Exchange Act claims—the Michigan Department of State's suspension of Carvana's dealer's license in Novi, Michigan on October 7, 2022. (Doc. 178 at 2.)

Carvana Defendants assert that the Relevant Period should begin in May 2020, as that is when Plaintiffs allege Defendants' scheme began. (Doc. 178 at 4.) Defendants "draw the line at Plaintiffs' disregard of the Court's MTD Order with respect to discovery past 2022." (*Id.* at 5.) Defendants note that "[e]ach additional month implicates tens of thousands of documents in review burdens[.]" (*Id.*) The Underwriter Defendants ("UW Defendants") add that Plaintiffs' proposed discovery end date occurs over one year past the April 2022 public offering of Carvana Class A common stock ("the Public Offering") that is central to Plaintiffs' Securities Act claims. (*Id.*) UW Defendants propose an end date of October 31, 2022, which is over six months past the offering. (*Id.*)

Discovery for a discrete period before and after the Class Period is necessary to establish context for events relevant to the case. *In re Dockers Roundtrip Airfare Promotion Sales Pracs. Litig.*, No. CV092847CASFMOX, 2010 WL 11515318, at *5 (C.D. Cal. Aug. 1, 2010) ("In general, courts allow discovery to extend to events before and after the period of actual liability so as to provide context."). With that in mind, the Court finds that the period set forth below ("the Discovery Period") is supported by Plaintiffs' allegations relevant to claims that survived the MTD Order (doc. 105), proportional to the needs of the case, and reasonable, considering the discovery burdens and expense.

For the Carvana Defendants, the start date for the Discovery Period will be **January 1, 2020**. This date precedes, by approximately six months, allegations that Defendants Garcia Jr. and Jenkins were discussing states' actions to investigate Carvana for violations of state title and registration laws. (Doc. 71 at 51.) This date precedes by approximately one year the Ohio Bureau of Motor Vehicles' suspension of Carvana's temporary tag issuances for the State in December 2020, and the Michigan Department of State's

investigation of Carvana around February 2021 and meeting with Carvana executives in March 2021 regarding its investigation. (Doc. 71 at 66, 68.)

For the Carvana Defendants, the end date of the Discovery Period shall be **February 28, 2023**. The parties agree that the final corrective disclosure occurred in October 2022. (Doc. 71 at 286-87.) This end date post-dates the final corrective disclosure by nearly five months and post-dates the final event Plaintiff alleged is relevant to the April 2022 Public Offering and the subsequent declination in Carvana's stock price—Carvana's announcement of unfavorable Fourth Quarter 2022 financial results on February 23, 2023—and this is sufficient to allow the parties discovery into the context of these events and Defendants' negative causation defense, *i.e.*, "'that the depreciation in value of [the stock] resulted from factors other than the alleged material misstatement.'" (Doc. 105 at 69) (quoting *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 860 (9th Cir. 2013)).

Plaintiffs and UW Defendants agreed to a **July 1, 2021**, start date that the Court adopts. (Doc. 178 at 2.) Discovery for the UW Defendants shall conclude on **October 31, 2022**. The end date post-dates the Public Offering by approximately six months.

Accordingly,

**IT IS ORDERED** the Joint Discovery Motion Regarding Hyperlinked Documents (doc. 177) is **GRANTED**, in part, and **DENIED**, in part, as set forth in this Order.

**IT IS FURTHER ORDERED** that the Joint Discovery Motion Regarding Relevant Time Period (doc. 178) is **GRANTED**, in part, and **DENIED**, in part, as set forth in this Order.

Dated this 21st day of August, 2025.

Honorable John Z. Boyle
United States Magistrate Judge