# EXHIBIT 5

**Robbins Geller Rudman & Dowd LLP**

Chicago    Melville    Nashville    San Diego    Wilmington

Boca Raton    Manhattan    Philadelphia    San Francisco    Washington, D.C.

Erika L. Oliver
eoliver@rgrdlaw.com

November 23, 2025

<u>VIA EMAIL</u>

Matthew J. Peters
Latham & Watkins LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
matthew.peters@lw.com

Re:     *In re Carvana Co. Securities Litigation*,
No. CV-22-2126-PHX-MTL (D. Ariz.)

Dear Matt:

I write in response to your November 20, 2025 letter concerning Carvana's refusal to maintain family relationships between emails and hyperlinked documents. Your letter mischaracterizes the procedural history of this dispute and attempts to re-litigate issues Judge Boyle has already addressed. We reject your proposal to delay resolution of this issue any further.

***First***, your recitation of this dispute's history is misleading. From the outset of discovery, we have consistently taken the position that hyperlinks are the modern equivalent of attachments. As such, contemporaneous versions of hyperlinked documents must be collected, reviewed, and produced as family members to the transmitting email. This has always been our position under Rules 26(b)(1) and 34, and it is the only approach that preserves context and prevents a producing party from unilaterally stripping context from collaborative communications.

The deletion of specific "language requiring that hyperlinked Google Drive documents be produced whenever an email containing a link to the document is produced (or vice versa)" from the ESI Order was not a concession that hyperlinked documents should not be treated as a child to its corresponding parent email, as you suggest. As the drafting history confirms, the deletion reflected only that the parties had agreed on all other aspects of the ESI Order and needed additional time to negotiate the issues surrounding hyperlinked documents. Crucially, while we were negotiating the ESI Order, you withheld the material fact that Carvana had already collected present-day versions of hyperlinked documents. Had you informed us of this fact at that time, we would have sought immediate relief from the Court. *See* L. Bays 07-08-25 Letter at 1-2.

***Second***, your assertion that resubmission of this dispute is premature is merely a delay tactic. As described in my October 17, 2025 letter and Plaintiffs' position statement, Judge Boyle already determined that emails and hyperlinked documents should be treated as families. Your own account confirms the Court deferred only the mechanics for non-contemporaneous versions, not the principle

**Robbins Geller**
**Rudman & Dowd** LLP

Matthew J. Peters
LATHAM & WATKINS LLP
November 23, 2025
Page 2

that the family relationship must be preserved. Nonetheless, we first identified that the parties may still be in dispute over this issue when your September 26, 2025 letter stated that Carvana would use FEC to collect and produce contemporaneous hyperlinked documents "for *responsive*, non-privileged Google Drive documents" from Plaintiffs' two selected custodians. We requested clarification about the meaning of this phrase during the parties' October 3, 2025 telephonic meet-and-confer, and you were either unprepared or unwilling to discuss how hyperlinked documents would be treated in the review process. It was not until your October 22, 2025 letter that you confirmed Carvana's intention to break the family relationship between hyperlinked documents and their corresponding emails during review and production, *i.e.*, that Carvana's position on this matter remained unchanged from the parties' July 24, 2025 joint motion, which you further confirmed on the parties' October 30, 2025 call. This is precisely the posture the Court rejected when it ordered contemporaneous versions for the two custodians and set a firm deadline. While we appreciate that Carvana finally agreed to treat Mr. Boyd's and Mr. Johnson's contemporaneous hyperlinked documents and their corresponding emails as families, we require confirmation that this applies to all custodians. As to Mr. Boyd and Mr. Johnson, the Court has already ordered the production of contemporaneous hyperlinked documents. ECF 196 at 4 ("Defendants must produce responsive documents—*i.e.*, the versions of any documents as closely contemporaneous to, but preceding, the email communication as is feasible—on or before December 1, 2025, absent further order of the Court.").

Furthermore, Carvana's acquiescence came only (i) *after* we proposed a schedule to brief and resubmit this issue to the Court on November 6, 2025; (ii) *after* we sent Plaintiffs' position statement to you, consistent with the proposed schedule, on November 7, 2025; and (iii) *after* the deadline for receiving Carvana's responsive position had already passed. Carvana's pattern of obstruction and delay forces Plaintiffs to expend unnecessary resources enforcing basic discovery obligations.[1]

---

[1]    This unfortunately has become a necessary step in resolving disputes. For instance, we repeatedly requested the production of organizational information, whether that information constituted "organizational charts" or "directories." *See, e.g.*, R. Cocalis 03-28-25 Letter at 2 (requesting that Carvana "confirm that organizational charts will be produced by April 4, 2025"); R. Cocalis 04-16-25 Letter at 3 (reiterating request for organizational charts and citing prior requests made on March 21, March 28, and April 5, 2025); R. Cocalis 05-15-25 Letter at 2 (requesting "human resources department maintains records that identify the Company's officers, executives, and senior managers by title and/or department and date(s) of employment"); R. Cocalis 06-30-25 Letter at 3 (requesting "hierarchies, reporting structures, or the names and positions, job titles, and duties of employees who reported directly to the Carvana executives and senior managers identified in this interrogatory for many of the relevant business units or groups"); R. Cocalis 08-01-25 Letter at 5-6 (requesting a further response to Rog. 2); E. Oliver 08-22-25 Letter at 2-3 (reiterating request for "transparency into Carvana's organizational structure"). It was only after we sent Carvana a draft joint motion moving to compel the production of such materials on September 4, 2025 that organizational charts and

**Robbins Geller**
**Rudman & Dowd** LLP

Matthew J. Peters
LATHAM & WATKINS LLP
November 23, 2025
Page 3

Regardless of the August 21, 2025 Order, this disagreement must be resolved immediately. Carvana's deadline to substantially complete collection for the present set of custodians is less than two weeks away. Carvana's preferred approach essentially destroys the context of the document by stripping: (i) important context to documents that are being produced (*e.g.*, the sender and recipient of a hyperlinked document, if the email is not produced); or (ii) potentially relevant, responsive documents altogether (*i.e.*, if Carvana is not reviewing hyperlinked documents where the parent email is deemed not responsive, as you previously stated was the case[2]).

You justify the omission of such information by arguing that "hyperlinked documents are often modified after they are sent, making it impossible to know what content was actually contained in the linked document when sent." M. Peters 11-20-25 Letter at 2. This argument fails on its face. If the document has not changed, the present-day version is identical to the sent version. If the document has changed, the fact of that evolution is often relevant to the litigation. In either scenario, severing the document from its transmittal email deprives Plaintiffs of the ability to understand the communication.[3]

Most egregiously, your position ignores that Carvana collected emails along with their present-day hyperlinked documents via an automatic feature in Google Vault and that Carvana has the technological capability of maintaining this relationship. 08-11-25 Hg. Tr. at 4:19-5:3; L. Bays 05-29-25 Letter; M. Peters 11-20-25 Letter at 3 (confirming that Carvana can "produce an overlay showing the relationship between the two items").[4] By refusing to produce them as families, Carvana is expending resources to actively degrade the quality of the evidence and working to *sever* existing

---

directories were finally produced on September 12, 2025 – even though such documents should have been frontloaded (ECF 137, §III.B) and were requested in Plaintiffs' RFPs served on March 11, 2025.

[2]    We understand from your November 20, 2025 letter that this is not the case, but raise it here because that was your prior position.

[3]    You have not yet provided us with any information regarding the status of the FEC collection despite our request and the fact that the test run is likely complete. E. Oliver 11-06-25 email.

[4]    There are some potential inconsistencies as to what Carvana told the Court and what was told to Plaintiffs regarding whether search terms were used for the purposes of collecting email. Plaintiffs were told that full email boxes were collected without the use of search terms. L. Bays 05-29-25 Letter at 2. Carvana, however, told the Court that "Carvana has run search terms against Drive and Gmail and used Vault, the native tool to the Workspace, to collect potentially responsive communications and documents." 08-11-25 Hg. Tr. at 4:13-15. Please clarify whether or not search terms were used for the purposes of collecting email because this also impacts the scope of Carvana's current collection of hyperlinked documents via Google Vault.

**Robbins Geller
Rudman & Dowd** LLP

Matthew J. Peters
LATHAM & WATKINS LLP
November 23, 2025
Page 4

connections between communications and hyperlinked documents.  We will not accept a production that is functionally inferior to the data as it exists in Carvana's own systems.

We have previously explained why your recycled case law is inapposite.  *See* ECF 177-3 at 3-4 & n.2 (L. Bays 07-08-25 Letter).  Moreover, the bulk of those decisions concerned the technological feasibility of collecting hyperlinked documents, not whether the documents should be treated as a family after collection.  *See, e.g.*, *In re StubHub Refund Litig.*, 2024 WL 2305604, at *1 (N.D. Cal. 2024) (addressing situation where hyperlinked documents could not be collected because the hyperlinks no longer worked).  To the extent the cited cases touched on the treatment of hyperlinked documents as attachments, beyond the technological feasibility of collection, they are factually distinct because the rationale behind those decisions dealt with inapposite situations, such as hyperlinks to websites.  *See, e.g.*, *Nichols v. Noom Inc.*, 2021 WL 948646, at *4 (S.D.N.Y. 2021) (analysis guided by examples where hyperlinked document was not an attachment, such as "hyperlinked cases" in a legal memorandum and a hyperlink in a document to "another portion of the same document").  In addition, your selective citation to The Sedona Conference *Commentary on Discovery of Collaborative Platforms Data* is not well taken.  We have taken into account all available information, including the considerations detailed in the referenced *Commentary*, as to whether or not the hyperlinked documents should be considered as attachments under the current circumstances.  The hyperlinked documents we are discussing in ***this*** case – Google Drive documents – are the functional equivalent of attachments.  *See In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 2024 WL 1772832, at *2, *6 (N.D. Cal. 2024) (recognizing that an "email message with a hyperlinked document may reflect a logical single communication").

***Finally***, we do not agree that delaying this dispute avoids duplicative efforts.  It merely prejudices Plaintiffs.  As you represent, Carvana is ***already*** reviewing and producing "emails containing hyperlinks to Google Drive" and "Google Drive documents."  M. Peters 11-20-25 Letter at 3.  Accordingly, Carvana is purportedly already undertaking these efforts.  Further, the Parties have not yet agreed to search terms or custodians for a vast majority of the case.  And any duplication of efforts is the unfortunate consequence of Carvana's unilateral decision to collect present-day versions of hyperlinked documents while hiding that fact from Plaintiffs, and its subsequent decision to review and produce these documents as if they have no connection.[5]  As you are aware, this is inconsistent with the Court's ESI and August 21, 2025 Orders.

\*        \*        \*

---

[5]    This is in stark contrast to Defendants' cited authority, where "Plaintiffs [had] already agreed that Google Vault was an acceptable collection tool."  *Nichols*, 2021 WL 948646, at *4.

**Robbins Geller
Rudman & Dowd** LLP

Matthew J. Peters
LATHAM & WATKINS LLP
November 23, 2025
Page 5

   For all these reasons, we believe that this dispute must be resubmitted to Judge Boyle now.

      Regards,

      ERIKA L. OLIVER