# Exhibit C

NEWSLETTER

———

# eDiscovery Case Law Update – Fall 2025

GEORGETOWN ADVANCED EDISCOVERY INSTITUTE SPECIAL EDITION

**JOHN ROSENTHAL**
EDITOR

**PHILIP FAVRO**
EDITOR

**JASON MOORE**
EDITOR

**KAREN WAGSHUL**
CONTRIBUTING EDITOR





# Table of Contents

**INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **vi**

**CASE SUMMARIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

ALLERGAN, INC. V. REVANCE THERAPEUTICS, INC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
ALLERGAN, INC. V. REVANCE THERAPEUTICS, INC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
ARKANSAS EX REL. GRIFFIN V. SYNGENTA CROP PROTECTION AG . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
A.W. V. RED ROOF INNS, INC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
AVERBACH V. CAIRO AMMAN BANK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
IN RE BARD IMPLANTED PORT CATHETER PRODUCTS LIABILITY LITIGATION . . . . . . . . . . . . . . . . . . . . . . . . . . 3
BONILLA V. GERLACH . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
BOULTER V. NOBLE ENERGY, INC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
CLAYTON INTERNATIONAL, INC. V. NEBRASKA ARMES AVIATION, LLC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
COMAIR LTD. V. BOEING CO.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
CONCORD MUSIC GROUP, INC. V. ANTHROPIC PBC  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
COOPER V. BALTIMORE GAS & ELECTRIC CO.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
COOPER FOODS INTERNATIONAL, LLC V. YOURD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
CRESS V. NEXO CAPITAL INC.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
CUOMO V. OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
DALE V. DEUTSCHE TELEKOM AG. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
DAMA V. REMOTE TECHNOLOGY SERVICES, INC.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
DE COSTER V. AMAZON.COM, INC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
DE COSTER V. AMAZON.COM, INC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
DELTONDO V. SCHOOL DISTRICT OF PITTSBURGH . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
IN RE DIDI GLOBAL INC. SECURITIES LITIGATION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
DOE V. NOEM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
DOE V. VANDERPOOL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
DRUMMOND CO., INC. V. COLLINGSWORTH . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
ELITE SEMICONDUCTOR, INC. V. ANCHOR SEMICONDUCTOR, INC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
ELLIOT V. HUMANA, INC.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION V. ASPIRE REGIONAL PARTNERS, INC.. . . . . . . . . . . . . . . . 11
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION V. CRAIN AUTOMOTIVE HOLDINGS LLC . . . . . . . . . . . . . . 11
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION V. MIA AESTHETICS CLINIC ATL LLC   . . . . . . . . . . . . . . . 12
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION V. MIA AESTHETICS CLINIC ATL LLC   . . . . . . . . . . . . . . . 12
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION V. PHOENIX CENTER, INC. . . . . . . . . . . . . . . . . . . . . . . . . 12
ESTATE OF SCHUCK V. COUNTY OF SAN DIEGO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
IN RE EXACTECH POLYETHYLENE ORTHOPEDIC PRODUCTS LIABILITY LITIGATION  . . . . . . . . . . . . . . . . . . . . . 13
FEDERAL TRADE COMMISSION V. AMAZON.COM, INC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
FEDERAL TRADE COMMISSION V. GRAND CANYON EDUCATION, INC.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
FEDERAL TRADE COMMISSION V. MATCH GROUP, INC.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
IN RE FIRSTENERGY CORP. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

FLANNERY ASSOCIATES, LLC V. BARNES FAMILY RANCH ASSOCIATES, LLC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

GIESECKE & DEVRIENT GMBH V. UNITED STATES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

GILEAD SCIENCES, INC. V. KHAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

GOLAT V. WISCONSIN STATE COURT SYSTEM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

GMO GAMECENTER USA, INC. V. WHINSTONE US, CORP. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

GOOD CLEAN LOVE, INC. V. EPOCH NE CORP. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IN RE GRAND JURY SUBPOENA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

GRULLON V. LEWIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

HALL V. BALTIMORE POLICE DEPARTMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

HALL V. TRIVEST PARTNERS L.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

HANDY V. DELAWARE RIVER SURGICAL SUITES LLC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

HAPTIC, INC. V. APPLE, INC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

HERMANN V. HEWLETT PACKARD ENTERPRISES CO. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

HOFFER V. TELLONE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

HOMELAND INSURANCE CO. V. INDEPENDENT HEALTH ASSOCIATION, INC. . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

HUBBARD V. CROW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

IN RE FACEBOOK INC. DERIVATIVE LITIGATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

HUMPHRIES V. BUTTON . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

JOHNSON V. TUSKEGEE UNIVERSITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

KINNEE V. TEI BIOSCIENCES INC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

KOHLS V. ELLISON . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

LAM V. STATE STREET CORP. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

LEE V. COUNTY OF LOS ANGELES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

LEPRINO FOODS CO. V. AVANI OUTPATIENT SURGICAL CENTER, INC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

LI V. MERCK & CO., INC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

LI V. MERCK & CO., INC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

LIEDERBACH V. NYU LANGONE HOSPITALS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

LINEBERRY V. ADDSHOPPERS, INC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

LIVELY V. WAYFARER STUDIOS LLC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

LOOP LLC V. CDK GLOBAL, LLC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

M-1 HOLDINGS, INC. V. MEMBERS 1ST FEDERAL CREDIT UNION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

MALHOTRA V. KUMAR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

MALHOTRA V. CVS HEALTH CORP. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

MATSKO V. TESLA, INC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

MCCONKEY V. CHURCHILL SCHOOL & CENTER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

MUNOZ V. EARTHGRAINS DISTRIBUTION, LLC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

NEWMAN V. ASSOCIATED PRESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

NOVALPINA CAPITAL PARTNERS I GP S.A.R.L V. READ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

OAKLEY V. MSG NETWORKS, INC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

OAKLEY V. MSG NETWORKS, INC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

OHIO EX REL. YOST V. JONES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

IN RE OPENAI, INC., COPYRIGHT INFRINGEMENT LITIGATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

IN RE OPENAI, INC., COPYRIGHT INFRINGEMENT LITIGATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

IN RE OPENAI, INC., COPYRIGHT INFRINGEMENT LITIGATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

OWEN V. AUDUBON FIELD SOLUTIONS, LLC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

ORBIAN CORP. LTD. V. HOUSTON . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
PABLE V. CHICAGO TRANSIT AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
PARTNERS INSIGHT LLC V. GILL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
PEN AMERICA CENTER, INC. V. ESCAMBIA COUNTY SCHOOL BOARD . . . . . . . . . . . . . . . . . . . . . . 33
PHARMACYCHECKER.COM LLC V. NATIONAL ASSOCIATION OF BOARDS OF PHARMACY . . . . . . . . . 34
PLAYUP, INC. V. MINTAS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
IN RE REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIG. (NO. II) . . . . . . . . . . . . . . . . . . . . . . . . 34
ROUSE V. HB FULLER CO. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
SAFELITE GROUP, INC. V. LOCKRIDGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
SAZERAC CO., INC. V. REPUBLIC NATIONAL DISTRIBUTING CO., LLC . . . . . . . . . . . . . . . . . . . . . . . . 36
SKY JET M.G. INC. V. VSE AVIATION SERVICES, LLC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
SPORTS REHAB CONSULTING LLC V. VAIL CLINIC, INC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
TIJERINO V. SPOTIFY USA INC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
TAYLOR V. GOOGLE LLC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
TREMBLAY V. OPENAI, INC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION. . . . . . . . . . . . . . . . . 38
IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION. . . . . . . . . . . . . . . . . 38
UNITED ASSOCIATION NATIONAL PENSION FUND V. CARVANA CO. . . . . . . . . . . . . . . . . . . . . . . . . . 39
UNITED STATES V. NOVO NORDISK, INC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
URIEL PHARMACY HEALTH & WELFARE PLAN V. ADVOCATE AURORA HEALTH, INC. . . . . . . . . . . . . . 40
WARNER V. GILBARCO, INC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
WE THE PROTESTERS, INC. V. SINYANGWE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
WILLMORE V. SAVVAS LEARNING CO. LLC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
YOUNG V. SALESFORCE, INC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
ZARFATI V. ARTSANA USA, INC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

INDEX OF TOPICAL TAGS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

# Introduction

Winston & Strawn LLP and Favro Law LLP are pleased to offer a summary of key decisions and developments in the last year that touched on artificial intelligence, e-discovery, information governance, and privacy.

We hope that the summaries and information herein will continue to aid your understanding of these important and rapidly evolving areas of law. In this year's cases, we observe the following notable trends.

## ARTIFICIAL INTELLIGENCE

Over the last year, we have been inundated with press and marketing materials relating to Generative AI and its impact upon the e-discovery and privacy industries. There is little doubt that Generative AI is a transformational change that is likely to have monumental impact on the decisional case law around the discovery of electronically stored information as well as its related privacy implications. Certainly, there have been dozens of cases that have addressed the use of Generative AI in the drafting or researching of court pleadings, resulting in hallucinations and inaccuracies. Those cases aside, there has been only a handful of cases that address core issues around the use of Gen. AI in discovery. The most high profile of these is **Concord Music Group, Inc. v. Anthropic PBC**, where the court held that attorney crafted prompts and corresponding outputs developed during a pre-suit investigation were protected work product. On the record before it, the court also rejected arguments for broad subject-matter waiver where plaintiffs had disclosed only the prompts and outputs upon which they relied. We anticipate that the coming months will see a substantial uptick in decisions regarding the use of Gen. AI in discovery.

## DISCOVERY SANCTIONS

Spoliation rulings in 2025 emphasize a two-track approach under Rule 37(e): severe measures under (e)(2) remain reserved for clear findings of "intent to deprive," while courts increasingly deploy flexible curative measures under (e)(1) to address prejudice without overstating culpability. Several decisions denied adverse inference sanctions where intent was not established but authorized meaningful courtroom remedies to address evidentiary imbalance (*e.g.*, **Cooper v. Baltimore Gas & Electric Co.**). But in a continuing (alarming) trend, courts permitted parties to introduce evidence explaining the loss of ESI to the jury and, in appropriate cases, instructed juries that they may consider the absence of the lost information in weighing the record. In **Bonilla v. Gerlach**, for example, the court allowed the plaintiff to present limited evidence that surveillance video "was not preserved" as a tailored remedy commensurate with the identified prejudice. Similarly, in **Clayton International v. Nebraska Armes Aviation**, the district court layered non-monetary relief onto fee shifting, permitting presentation of the spoliation narrative at trial and advising the jury that it may consider spoliation "along with all the other evidence." One decision of note, **Oakley v. MSG Networks, Inc.**, gave a defendant a pass for failure to produce e-mails in light of a technical malfunction in Microsoft Purview, finding that the loss was beyond the defendant's control. In another notable current that ran through this year's sanctions jurisprudence, several courts scrutinized counsel's supervisory role under Rule 26(g), ordering fee shifting or additional discovery where self-collection or superficial attestations proved unreliable.

## HYPERLINKED DOCUMENTS

Courts continue to wrestle with whether a hyperlink within a produced document obligates production of the linked content. An underlying theme of many of these decisions remains a functional analysis that asks what the link is and how it relates to the claims and defenses, as well as what the technical and practical burdens of identifying, collecting, and producing such linked information may—as opposed to a bright line rule deeming all linked materials "attachments." In **Young v. Salesforce, Inc.**, for example, the court charted a middle course: it declined to require wholesale production of all hyperlinked materials, but ordered production of hyperlinked documents bearing on the core technical issues where the linked content was not otherwise publicly available. And courts evaluating linked content sometimes consider whether a party exercises sufficient control over the linked file—particularly if the party can direct edits or obtain the original—when deciding whether Rule 34 obligations attach (**Hubbard v. Crow**). The practical message is twofold. Producing parties should treat hyperlinks with care during collection and review, mapping link types (internal repositories, cloud storage, third party websites) and documenting when linked materials are reasonably accessible or were produced elsewhere. Requesting parties should focus their demands for linked materials to the issues and avoid sweeping requests untethered to relevance and proportionality. Courts are increasingly open to targeted, link-aware solutions over categorical rules that either force reproduction of entire link structures or ignore the practical reality that hyperlinks can point to critical, unique evidence.

## POSSESSION, CUSTODY, OR CONTROL

Courts largely reinforced the "legal right to obtain" test under Rule 34, with "practical ability" arguments proving insufficient absent clear policy, contract, or legal authority. In **Allergan, Inc. v. Revance Therapeutics, Inc.**, for example, the special master declined to compel searches of employees' personal devices under a BYOD program that did not authorize business use beyond email and did not grant the employer a right to rummage personal devices for litigation purposes. Similarly, courts rejected attempts to impute control over former executives' personal phones or over a parent company's internal financials where the subsidiary lacked any enforceable right of access. By contrast, courts compelled production from individuals sued in their personal capacities where they had responsive materials within their own custody or had the legal right to obtain them by virtue of their roles. And in **Tremblay v. OpenAI**, in the context of such of a Gen AI copyright litigation, the court drew a distinction between materials that litigants have a right to obtain from their agents (*e.g.*, consultants) and documents in the hands of independent third parties (*e.g.*, publishers), directing the parties toward third party subpoenas when legal right control was absent. This trend line offers practical guidance. Organizations should align information governance, BYOD, and collaboration policies with realistic litigation obligations, and should adopt contractual terms that define data access rights while avoiding claiming "control" in ways that outpace demonstrable legal rights.

## PRIVILEGE

Courts reinforced that privilege and work product apply to modern data artifacts when the traditional tests are met, rejecting categorical rules. Communications in legal-ops or cross-functional channels were assessed under the primary-purpose standard, with courts looking to who participated, why the thread existed, and whether legal advice was actually sought or conveyed. See, *e.g.*, **In re OpenAI, Inc., Copyright Infringement Litigation (Oct. 1)**. For work product, courts distinguished between ordinary factual materials and opinion work revealing counsel's mental impressions, and they encouraged the use of tailored privilege logs that describe function and participants without disclosing protected substance. Courts were skeptical of overbroad common-interest assertions lacking a concrete, shared legal strategy, and they required timely clawback procedures to be honored when parties had entered into Rule 502(d) orders. At least one court sent the clear

message that parties need to clearly articulate in their agreements whether questions regarding the waiver of privileged documents are to be treated under Rule 502(b) vs. Rule 502(d), indicating that an ambiguity will weigh in favor of an inadvertence standard (**De Coster v. Amazon.com, Inc.**).

## TECHNOLOGY-ASSISTED REVIEW (TAR)

While not a lot of decisions over the past year, at least one court reaffirmed that TAR and other analytics remain acceptable and often superior tools when implemented transparently and defensibly (**In re Exactech Polyethylene Orthopedic Products Liability Litigation**). While parties retain autonomy over reasonable review methods, courts encouraged disclosure of high-level workflows, control-set strategies, and validation statistics sufficient to resolve disputes without exposing privileged substance. The court, however, rejected a requesting party's attempt to obtain access to non-privileged documents that were coded non-responsive during the review on the ground that the party had failed to show a deficiency in the TAR process as implemented.

## CROSS-BORDER DISCOVERY

Cross-border disputes continue to highlight the tension between U.S. discovery obligations and foreign data-protection and localization laws. Courts expected concrete showings of conflict—identifying specific statutory barriers, the data categories affected, and available mitigation—before limiting discovery. They encouraged protective orders, redaction protocols, and use of local processing with U.S. review access to minimize transfer. In a notable matter involving China-based data, the court in **In re Didi Global Inc. Securities Litigation** found that disclosure likely forbidden by Chinese data secrecy law in response to specific interrogatories was required where the principles of comity (in particular, the importance of the information to resolving issues in the litigation and the strong interest of the forum state in same) weighed in favor of disclosure.

# Case Summaries

## ALLERGAN, INC. V. REVANCE THERAPEUTICS, INC.

**2025 WL 984792 (M.D. Tenn. Mar. 17, 2025), report and recommendation adopted 2025 WL 1020485 (M.D. Tenn. Apr. 4, 2025)**

#PC&C; #Legal-Right; #Spoliation; #Practical-Ability; #Rule34

In this trade secret misappropriation case, Special Master Todd Presnell denied plaintiff's motion to compel defendant to search personal devices of current or former employees for relevant documents. Citing 6th Circuit precedent (and the *Commentary on Rule 34 and 45 Possession*, *Custody*, or *Control*), the special master found it appropriate to apply the "legal right" standard to the question of whether defendant had control over the requested information for purposes of Rule 34(a). He found plaintiff failed to show defendant had a legal right to obtain data from its employees' personal devices under its BYOD policy or Employee Handbook. The BYOD policy did not authorize defendant to search its employees' personal devices for any reason other than to ensure compliance with security policies. Moreover, it prohibited employees from conducting business on their personal devices except through email, which defendant previously searched. In addition, the special master found defendant's employee handbook did not establish control over employee personal devices as it applied only to company-owned items. Furthermore, defendant did not have the "practical ability" to force its employees to produce their personal devices for inspection.

## ALLERGAN, INC. V. REVANCE THERAPEUTICS, INC.

**2025 WL 2187115 (M.D. Tenn. July 25, 2025)**

#Motion-to-Compel; #Scope-of-Discovery; #Preservation; #Discovery-on-Discovery

Special Master Todd Presnell resolved defendant's motion to compel discovery about a former employee of plaintiff for whom minimal email data had been preserved or produced. The court noted that discovery on discovery is "not automatic and courts typically disfavor it," but is permitted "where there is evidence of a specific deficiency in the production." The special master concluded that plaintiff's admitted inability to access the employee's full mailbox "slightly crosses this threshold" and warranted limited discovery. Accordingly, the court ordered plaintiff to produce all data-retention policies, including appendices stating retention periods, and any earlier versions covering the employee's first tenure at the company, because those documents were relevant to evaluating the scope of any loss and imposed minimal burden. The special master denied as moot the request for a narrative explanation of why the mailbox was unavailable, noting that plaintiff had already stated the employee was not on legal hold when he first left the company more than three years before plaintiff filed its complaint and that information emerging only during discovery triggered later preservation steps. But the special master compelled disclosure of the specific custodians whose mailboxes were searched for messages sent to or from the employee, reasoning that defendant could not reliably deduce that universe from produced communications and that producing the list entailed little effort. Finally, the special master declined to compel identification of any other agreed custodians lacking data, accepting plaintiff's representation that none existed, but directing both sides to disclose promptly if additional gaps emerged.

## ARKANSAS EX REL. GRIFFIN V. SYNGENTA CROP PROTECTION AG

**2025 WL 2533191 (E.D. Ark. Sept. 3, 2025)**

#Motion-to-Compel; #Proportionality; #Privacy; #Cross-Border

Plaintiff State of Arkansas (Arkansas) sought to compel defendants to produce documents showing annual expenditures and sales volumes from Argentina, Brazil, Canada, Germany, and the Netherlands. United States Magistrate Judge Patricia Harris denied the motion on multiple grounds. While the foreign data had some relevance, its importance wasn't significant enough to justify production. Arkansas acknowledged that this was only "one way" among several methods to prove damages and defendants indicated that they had already produced other categories of responsive information on this issue. The court also found that the requested production would be unduly burdensome and disproportionate to the needs of the case, particularly since it would appear to require discovery from nonparties across multiple countries with different privacy laws. The court also considered Arkansas's request to be untimely given its knowledge of defendants' international operations and that it propounded these requests on the eve of discovery cutoff. Finally, the court indicated that its ruling was consistent with orders issued in similar cases brought against defendants in North Carolina federal court where plaintiffs demanded comparable discovery from defendants.

## A.W. V. RED ROOF INNS, INC.

**2024 WL 5041027 (S.D. Ohio Dec. 9, 2024)**

#Privilege; #Work-Product; #Rule45

United States Magistrate Judge Elizabeth Preston Deavers granted Best Western International, Inc.'s ("BWI") motion to quash a subpoena the deposition of BWI's CEO, who had been general counsel during the relevant time period. Plaintiff alleged she was a victim of human trafficking at a hotel affiliated with BWI and sought to depose the CEO about his knowledge and actions regarding trafficking in the hospitality industry and BWI's compliance with the Trafficking Victims Protection Reauthorization Act ("TVPRA"). The court held that plaintiff failed to establish a basis for taking the deposition. First, the court determined that plaintiff's statement that the information sought was only available from the former general counsel was conclusory and observed that BWI identified alternative potential sources of discoverable information. Next, plaintiff failed to show that the sought-after information was not privileged, rejecting plaintiff's assertions and crediting BWI's position that the information involved the CEO's assessments and recommendations issued while serving as general counsel regarding legal compliance with the TVPRA. Finally, plaintiff neglected to establish that the requested information was crucial to the case, reasoning that plaintiff did not address this factor at all.

## AVERBACH V. CAIRO AMMAN BANK

**2025 WL 504612 (S.D.N.Y. Feb. 14, 2025)**

#Cross-Border; #Comity

United States Magistrate Judge Katherine Parker granted plaintiff's motion to compel defendant to produce documents related to bank accounts associated with individuals allegedly involved in terrorist activities. The defendant Jordanian bank opposed production, arguing that it would violate Jordanian and Palestinian bank secrecy laws. The court applied a comity analysis using the factors from **Societe Nationale Industrielle Aerospatiale & Societe de Construction d'Avions de Tourisme v. U.S. Dist. Ct. for the S. Dist. of Iowa**, weighing the respective interests of the United States and the foreign states, as well as factors such as the importance and specificity of the requested documents, the origin and availability of the information, the hardship of compliance, and the good faith of the parties. The court concluded the U.S. interest in combating terrorism and compensating victims outweighed the foreign interest in enforcing bank secrecy, especially given

the narrow scope of plaintiff's request and the limited nature of defendant's records. The court also found defendant had not shown it would face any actual penalties for complying with the discovery order, and that alternative means of obtaining the information were unlikely to succeed. The court ultimately gave the defendant an opportunity to seek permission from the foreign authorities to produce the records before setting a deadline for production.

## IN RE BARD IMPLANTED PORT CATHETER PRODUCTS LIABILITY LITIGATION

**MDL No. 3081, Dkt. 2366 (D. Ariz. Jan. 17, 2025)**

#Privilege-Log; #Privilege; #Motion-to-Compel

In this "Case Management Order," United States District Judge David Campbell ruled on a privilege dispute between the parties. Plaintiff moved to compel the production of "non-privileged documents attached to a privileged communication" (*i.e.*, a business presentation sent to a lawyer's attention), claiming that it was inappropriate for defendants to fully withhold all documents in responsive families containing such attachments. The court found this practice "reveals the possibility that responsive non-privileged documents have been withheld from production because they were attached to a privileged communication and were not found elsewhere in Defendants' possession" and required defendants to produce such documents "even if the only location where the document is found in Defendants' possession is an attachment to a privileged communication." The court allowed defendants to review their privilege log for such families, identify such attachments, and confirm whether a non-privileged duplicate had been otherwise produced. To the extent a document was not duplicated in the production, the court ordered the withheld/logged version to be produced.

## BONILLA V. GERLACH

**2025 WL 1287757 (W.D. Okla. May 2, 2025)**

#Spoliation; #Rule37e; #Intent-to-Deprive; #Sanctions; #Prejudice; #Curative-Measures; #Jury-Instruction

In this case arising from the death of an inmate while in police custody, plaintiff alleged defendant officials failed to provide the decedent with adequate medical care after he fell down a flight of stairs. United States District Judge David Russell granted in part plaintiff's motion for sanctions for spoliation of video evidence from the facility which "would have shown the day-by-day degradation of [the decedent's] medical condition" after the accident. The court found that defendants had a duty to preserve the video evidence as of the time of the decedent's death but failed to take reasonable steps to preserve it, and that the deleted video evidence could not be restored or replaced. However, the court rejected plaintiff's request for an adverse inference instruction, finding that plaintiff had not shown that the automatic deletion of the video evidence resulted from anything but ordinary or gross negligence, observing that severe sanctions under Rule 37(e)(2) are only available upon a showing of intent to deprive. The court nevertheless found plaintiff was prejudiced by the loss of "objective and compelling" evidence likely to support his allegation that defendants were "indifferent to [the decedent's] medical needs and that his medical condition visibly deteriorated in the days after his fall." As a curative measure commensurate with that prejudice, the court ordered that plaintiff would be permitted to present "limited evidence and argument to the jury explaining that there was additional video surveillance showing [the decedent] during his detention but [that] Defendants did not preserve the video."

## BOULTER V. NOBLE ENERGY, INC.

**2025 WL 947480 (D. Colo. Mar. 28, 2025)**

#Protective-Order

In this closed class action case, United States Magistrate Judge Susan Prose granted defendant's motion to enforce the protective order. The court found

that plaintiff violated the protective order by using a document designated as "Level 1" confidential in a new case against the same defendant. The court also found that plaintiff violated the protective order by failing to destroy or return all confidential information obtained in the previous case, which plaintiff admitted. The court granted defendant's motion to enforce the protective order and ordered plaintiff to refrain from using any further confidential information from the previous case in the new case or any other litigation, unless plaintiff first (re)obtained the information through discovery in the other litigation. The court also ordered plaintiff immediately to destroy or return all confidential information, except for the disputed document, which was then the subject of a pending motion for *in camera* review in the other proceeding. However, the court declined defendant's invitation to change the level of restriction applicable to the disputed document to a higher level ("Level 3"), given that the document was then central to the privilege dispute pending in the other matter, but invited the parties to submit a motion to change the level of restriction once that dispute was resolved.

## CLAYTON INTERNATIONAL, INC. V. NEBRASKA ARMES AVIATION, LLC.

**2025 WL 1827667 (D. Neb. July 2, 2025)**

; #Rule37e; #Sanctions; #Prejudice; #Curative-Measures; #Jury-Instruction

United States District Judge Robert Rossiter, Jr., addressed the plaintiff's objections to a magistrate judge's order that had awarded only monetary sanctions for defendant's disposal of a hard drive containing potentially relevant ESI (2025 WL 1827667 (D. Neb. July 2, 2025)). The court agreed that defendant had a duty to preserve the drive once litigation was reasonably anticipated, found that relevant data likely had been lost, and concluded that the destruction caused prejudice to plaintiff. The court therefore agreed with plaintiff that curative measures under Rule 37(e)(1) were warranted, but disagreed with the

magistrate judge's conclusion that monetary sanctions were sufficient to cure the prejudice. Applying Rule 37(e), the court found that "[t]he payment of fees and costs [does] nothing to address the high probability that [defendant's] actions deprived [plaintiff] of information that could support its claims." The court therefore authorized both the recovery of fees and costs and additional non-monetary measures under Rule 37(e)(1) "to help rectify the evidentiary imbalance that [defendant] created by spoliating relevant ESI." Specifically, the court held (1) that the parties would be permitted to "present evidence regarding the destruction of [the] hard drive at trial," and (2) that the jury would be instructed "that it may consider spoliation evidence, along with all the other evidence in the case, in making its decision." Because plaintiff had not specifically requested such relief and the record did not support a finding of intent to deprive, the court declined to award an adverse inference instruction pursuant to Rule 37(e)(2).

## COMAIR LTD. V. BOEING CO.

**2025 WL 472724 (W.D. Wash. Jan. 14, 2025)**

#Spoliation; #Rule37e; #Intent-to-Deprive; #Sanctions; #Curative-Measures

United States District Judge Ricardo Martinez denied defendant's motion for dismissal under Federal Rule of Civil Procedure 37(e)(2) and ordered it to re-file its motion to allege prejudice and seek curative measures under 37(e)(1). This case for breach of contract was filed by plaintiff around the time of its bankruptcy and liquidation. Plaintiff did not issue a legal hold or initiate preservation steps, and defendant alleged that it therefore failed to preserve "large swathes of key evidence"; plaintiff could not adequately explain why certain documents had not been produced. Defendant moved exclusively for dismissal as a sanction for intentional spoliation based on, in the court's words, "circumstantial evidence a mile wide and an inch deep" that plaintiff intentionally disregarded its preservation obligations, which it urged the court to treat as evidence of intent. The court disagreed, calling plaintiff's inadequate explanations for why key

documents were missing "mysterious," but refusing to find intent to deprive on that basis alone. He noted defendant made no showing of prejudice or for alternative curative measures, and therefore ordered defendant to refile its brief to explain "specific categories of documents that are missing, how each relates to claims and/or defenses, and what relief could be granted in relation to summary judgment or trial."

## CONCORD MUSIC GROUP, INC. V. ANTHROPIC PBC

**2025 WL 1482734 (N.D. Cal. May 23, 2025)**
#AI; #Privilege; #Waiver; #Work-Product

Defendant Anthropic sought production of certain AI prompts and outputs from plaintiffs. In their pre-litigation efforts to identify evidence of copyright infringement, the plaintiffs developed various prompts and received outputs from Anthropic's generative AI tool, Claude. The plaintiffs disclosed all AI prompts and outputs on which they relied in developing their lawsuit but refused to disclose additional prompts and outputs. While Anthropic argued that such information was discoverable, United States Magistrate Judge Susan Van Keulen found that it was work product and declined to order its production. The court expressly agreed with **Tremblay v. OpenAI, Inc.**, No. 23-CV-03223-AMO, 2024 WL 3748003 (N.D. Cal. Aug. 8, 2024), which found that "ChatGPT prompts were queries crafted by counsel and contain counsel's mental impressions and opinions about how to interrogate ChatGPT' and were thus opinion, not fact, work product." Nor was the court prepared to issue a finding of waiver of work product protection at that time, opining that Anthropic had not yet satisfied its burden of establishing broad subject matter waiver even though plaintiffs previously disclosed relevant prompts and outputs.

## COOPER V. BALTIMORE GAS & ELECTRIC CO.

**2025 WL 2774847 (D. Md. Sept. 30, 2025)**

#Spoliation; #Rule37e; #Intent-to-Deprive; #Sanctions; #Prejudice; #Curative-Measures; #Jury-Instruction; #Text-Messages

In this action for wrongful termination and retaliation, United States District Judge Julie Rubin adopted the recommendation of United States Magistrate Judge J. Mark Coulson that defendants be allowed to present evidence of plaintiff's preservation failures to the jury and instruct the jury that it may consider the potential evidentiary void created by the plaintiff's conduct. In particular, Judge Coulson's decision addressed defendants' request for dismissal as a sanction for plaintiff's failure to preserve text and Facebook messages with her former supervisor, whom she alleged harassed her in those media. Judge Coulson concluded that relevant ESI had been lost due to plaintiff's failures to download her text messages or to recall the password for her damaged phone and iCloud account; that she had not taken reasonable steps to preserve the inaccessible data; and that the missing data could not be restored through additional discovery. Judge Coulson determined that the defendants suffered prejudice because the lost messages bore directly on whether the alleged harassment was "unwelcome," a central issue to the defense of plaintiff's claims. However, Judge Coulson concluded that defendants had not established by clear and convincing evidence that plaintiff acted with intent to deprive them of use of the messages, noting "mixed" evidence of plaintiff's intent, such as "shifting explanations for the whereabouts of her phone" that were counterbalanced by counsel's later exhaustive efforts to recover the data. As a curative measure, which was adopted by Judge Rubin, Judge Coulson recommended that the jury be instructed that the plaintiff failed to preserve "all relevant communications between herself and [the supervisor], but failed to do so, likely resulting in a loss of evidence being available to the Defense regarding the alleged consensual nature of the relationship between Plaintiff and [the supervisor]," and that the jury neither should presume the nature of the missing communications nor hold the absence of such evidence against the defendant when con-

sidering whether the plaintiff carried her burden of proof to show the relationship *was not* consensual.

## COOPER FOODS INTERNATIONAL, LLC V. YOURD

**2025 WL 2663977 (E.D.N.Y. Sept. 17, 2025)**
#Spoliation; #Rule37e; #Preservation; #Ephemeral-Messaging; #WhatsApp; #Text-Messages

In this lawsuit involving breach of contract claims and counterclaims, plaintiff sought spoliation sanctions against one of the defendants for failing to preserve allegedly relevant text messages exchanged with key players in the litigation over WhatsApp. Plaintiff argued that defendant "intentionally enabled" the ephemerality feature on WhatsApp—"Disappearing Messages"—to conduct business communications, violate the parties' agreement, and eliminate evidence reflecting his communications. United States Magistrate Judge Lara Eshkenazi disagreed and instead concluded that plaintiff failed to demonstrate the existence of the allegedly spoliated text messages, demonstrating only that similar messages existed during a different time period, which was not persuasive that relevant messages did exist during the pre-filing period. Further, even assuming the messages did exist, the court determined that defendant did not have a duty to preserve them prior to the lawsuit being initiated. The court rejected plaintiff's assertion that the defendant's preservation obligation attached once plaintiff filed a different lawsuit against a different defendant related to the same underlying facts, which had been filed eight months prior to plaintiff initiating its suit against the defendant. Specifically, the court found that, despite the defendant testifying that he "generally" expected the plaintiff to sue him after it filed the earlier lawsuit, the plaintiff failed to carry its threshold burden of advancing "facts that would have put Defendant [ ] on notice that litigation...was reasonably foreseeable" at a particular time prior to its filing suit. The court therefore denied the motion.

## CRESS V. NEXO CAPITAL INC.

**2025 WL 383848 (N.D. Cal. Feb. 4, 2025)**
#Proportionality; #Scope-of-Discovery;

In this action under the Securities Act of 1933, plaintiff alleged defendant sold unlicensed securities in the form of digital tokens. In discovery, plaintiff sought detailed transactional information concerning sales of the token "everywhere in the world," rather than just in the United States, and moved to compel production of information about international transactions. United States Magistrate Judge Thomas Hixson concluded that the Act did not support liability for offerings outside the U.S., but that international sales could still be relevant to plaintiff's claims if they help to "define" whether the token is a security for purposes of the Act. That said, the court noted, "Rule 26 does not provide for discovery of everything that might be relevant because discovery must also be 'proportional to the needs of the case.'" With that in mind, the court analyzed the interrogatory at issue and found that the targeted "highly detailed information about each particular sale" of the token outside the U.S.—including not merely the date, price, and quantity, but the identity and location of the buyer and the particular exchange where the transaction occurred—would not be proportional to the needs of the case, but likely would be duplicative and only "indirectly" helpful to the plaintiff. The court therefore denied the motion.

## CUOMO V. OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL

**754 F.Supp.3d 334 (2024 WL 4593407) (E.D.N.Y. Oct. 28, 2024)**
#Privilege; #Work-Product; #Rule45

United States Magistrate Judge Taryn A. Merkl granted defendant's motion to quash a subpoena to produce attorney interview memos and denied plaintiff's cross-motion to compel compliance. The subpoena sought documents related to defendant's investigation into allegations of sexual harassment

by plaintiff while he was governor of New York, including interview memoranda. Defendant resisted production on the basis that the interview memos were protected by attorney-client privilege. The court applied the elements of the attorney-client privilege to find the memoranda protected from disclosure. First, the memos were attorney-client communications, prepared by private attorneys deputized by defendant to investigate the misconduct. The court rejected plaintiff's assertion that the memos were mere witness statements, reasoning that they included attorneys' impressions and recommendations. The court also found plaintiff's argument that no attorney-client relationship existed between the attorneys and the interviewees to be unpersuasive, explaining it was unnecessary for purposes of the downstream communication between attorneys and their client. Finally, the court concluded the memos were prepared specifically to provide legal advice, and were intended to be and kept confidential, noting their disclosure to other government agencies did not amount to waiver.

## DALE V. DEUTSCHE TELEKOM AG

**2024 WL 4416761 (N.D. Ill. Oct. 4, 2024)**

#Cooperation; #Meet-and-Confer; #Proportionality; #Sedona-Principle-Six

United States Magistrate Judge Jeffery Cole found defendants were not obligated to designate certain of their in-house counsel as custodians of relevant information in this antitrust class action. The dispute arose after the parties exchanged lists of potential custodians of relevant information among defendants, with defendants proposing 29 names and Plaintiffs countering with 60 names (including four in-house counsel). After extensive negotiations, defendants increased their custodian offer to 50 names and requested that plaintiffs drop in-house counsel from their list. In response, plaintiffs yielded on just one lawyer, demanding that defendants make the other three lawyers available for discovery, in addition to the list of 50. The court rejected plain-

tiffs' arguments, finding discovery from defendants' in-house counsel was improper given the apparent lack of relevant information held by counsel and the obvious privilege issues that would arise. The court also determined that plaintiffs had not demonstrated that discovery from in-house counsel was proportional under Rule 26(b)(1). Nevertheless, the court opined that "plaintiffs got the better of the deal" during the parties' negotiations and that the final number of "fifty custodians is quite a lot – to say the least. Indeed, some might even say it is too many."

## DAMA V. REMOTE TECHNOLOGY SERVICES, INC.

**2025 WL 1627123 (M.D. Fla. May 29, 2025)**

#Rule502d; #Privilege; #Protective-Order

United States Magistrate Judge Samuel Horovitz declined without prejudice the parties' stipulated motion to seek entry of their confidentiality stipulation as a protective order, even though the stipulation appeared to include a non-waiver provision. The court rejected the stipulation for failure to comply with local rules governing the entry of protective orders. The court nevertheless also noted that the stipulation, "though not entirely clear," appeared to attempt to invoke Federal Rule of Evidence 502(d). The court chastised the parties for not "expressly" stating the basis for the non-waiver provisions of the stipulation and to make "necessary edits" to make their intention clearer and better explain the basis for the provision. While observing that Rule 502(d) non-waiver orders are often entered as a matter of course, the court opined that such orders are "designed primarily for complex cases" and indicated that the instant case did "not appear to be an unusually complex case," noting that orders under Rule 502(d) "remain[] discretionary"—citing local district precedent. The court also reminded the parties that non-waiver orders are limited to claims involving attorney-client privilege and work product claims and not for other privilege claims.

## DE COSTER V. AMAZON.COM, INC.

**2025 WL 904465 (W.D. Wash. Mar. 25, 2025)**

#Rule502d; #Privilege; #Waiver; #Protective-Order; #In-Camera

In this antitrust class action, United States District Judge John H. Chun ruled on a motion by plaintiffs that sought to compel Amazon to produce documents from its privilege logs that plaintiffs argued were not privileged. First, the court addressed Amazon's attempt to claw back documents 37 and 38, which Amazon claimed were privileged and that it was entitled to do so under Federal Rule of Evidence 502(d). The court disagreed, determining that the protective orders on file in the three lawsuits—which mentioned both FRE 502(b) and 502(d)—provided that questions regarding inadvertently produced privileged documents were to be resolved under Federal Rule of Evidence 502(b), particularly since the protective orders unequivocally "invoke[d] the protections afforded by Fed. R. Evid. 502(b)." Finding that Amazon's disclosure of the documents at issue was intentional and not inadvertent, the court ordered their production to plaintiffs. The court next ruled that communications involving Amazon's in-house counsel were primarily business-related and not protected by attorney-client privilege. Finally, the court held that Amazon's delayed assertion of work-product protection resulted in waiver of the protection over all claimed materials except five identified documents. After reviewing 85 documents, the court ruled that 54 must be produced, either fully or with limited redactions, and determined that approximately 63% of the sampled documents were improperly withheld or over-redacted.

## DE COSTER V. AMAZON.COM, INC.

**2025 WL 1237370 (W.D. Wash. Apr. 29, 2025)**

#Rule502d; #Privilege; #Waiver; #Protective-Order; #In-Camera

In this antitrust class action, United States District Judge John H. Chun denied Amazon's motion to claw back three documents that plaintiffs used in their class certification motion. Amazon sought to claw back the documents under Federal Rule of Evidence 502(d), arguing its production of the documents was inadvertent. The court first determined that the amended protective order, rather than the court-ordered ESI protocol, governed the dispute. While the ESI protocol provided blanket Rule 502(d) protection against privilege waiver, the more specific amended protective order required a Rule 502(b) inadvertence analysis because the documents were produced during Amazon's privilege re-review process. Under Rule 502(b), the court applied an intent-focused approach to inadvertence, asking whether Amazon intended to produce the documents or whether production was a mistake. The court found Amazon's production was intentional based on its extensive eight-month privilege re-review involving over 200 lawyers from five firms, 14,000+ hours of work, and review of nearly 140,000 privilege log entries. The court determined that Amazon had deliberately "downgraded" the documents at issue from "fully withheld" to "produced" or "redacted" during this comprehensive process. The court rejected Amazon's inadvertence claims, emphasizing that parties cannot later claim inadvertence for strategic decisions made during methodical privilege reviews. Amazon's subsequent challenge to the court's ruling through its petition for a writ of mandamus to the Ninth Circuit Court of Appeals was summarily rejected.

## DELTONDO V. SCHOOL DISTRICT OF PITTSBURGH

**2024 WL 4871813 (W.D. Pa. Nov. 22, 2024)**

#Discovery-Process; #Microsoft365; #Search; #Reasonable-Inquiry

United States Magistrate Judge Patricia Dodge denied plaintiff's request for discovery relief against defendants arising from allegedly inadequate searches for relevant documents. Plaintiff argued that defendants' searches were inadequate because they apparently "only searched for documents which included search terms in the title, not in the body of the

document." Defendants disputed this characterization, asserting they conducted both "broad" and "targeted" searches for relevant ESI through Microsoft Purview. The court explained that Microsoft Purview "is part of Microsoft 365 and includes Word documents, OneDrive documents, email and Teams chat messages." Defendants additionally maintained that the more limited searches which plaintiff raised were on other servers that were unlikely to hold relevant information, but which they searched nonetheless. The court agreed with defendants and found that the searches they performed were not inadequate. In so doing, the court endorsed defendants' strategy of using both search terms and targeted searches while observing that plaintiff neglected to provide defendants with search terms of her own or other "ESI parameters."

## IN RE DIDI GLOBAL INC. SECURITIES LITIGATION

**2025 WL 896053 (S.D.N.Y. Mar. 24, 2025)**

#Cross-Border; #Comity; #Relevance; #Data-Security

Plaintiffs sought further responses from defendant regarding two interrogatories. Interrogatory 13 requested information about meetings between defendant and Chinese government agencies covering various topics including "national security" and "state secrets." Interrogatory 14 sought details about specific government inquiries on defendant's data and security protocols. Defendant objected to both interrogatories, arguing that Article 36 of China's Data Security Law prohibited disclosure of the requested information. United States District Judge Lewis Kaplan found that while Chinese law likely forbade discovery of the requested information, comity required defendant to produce a further response to Interrogatory 14. Interrogatory 14 sought highly relevant evidence, *i.e.*, actual government inquiries about defendant's security and data protocols before its initial public offering. The importance of the requested information, coupled with the United States's "interest in fully and fairly adjudicating matters before its courts," tipped the scales in favor of discovery. In contrast, the court held that

Interrogatory 13 was overly broad, did not seek information "directly probative of the issues of the case," and implicated legitimate Chinese interests in withholding communications with Chinese government authorities. While denying plaintiffs' motions to compel and for reconsideration on Interrogatory 13, the court ordered the parties to negotiate over a proposal from plaintiffs to serve a revised and narrower version of Interrogatory 13.

## DOE V. NOEM

**2025 WL 1633909 (D. Minn. June 3, 2025)**

#Rule502d; #Privilege

United States Magistrate Judge Dulce Foster entered a non-waiver order pursuant to Federal Rule of Evidence 502(d). The parties had agreed on certain provisions for the non-waiver order. The order included the agreed-upon terms, together with additional provisions over which the parties had disagreements. The court made no effort to identify the areas of dispute between the parties. Of note, the non-waiver order expressly "displace[s] the provisions of Fed. R. Evid. 502(b)(1) and (2)" and provides that "the disclosure of privileged or protected information, as described above, in this litigation shall not constitute a subject matter waiver of the privilege or protection in this or any other federal or state proceeding, regardless of the standard of care or specific steps taken to prevent disclosure." The order goes on to provide a number of definitions and a lengthy set of procedures that govern the application of the non-waiver process. Finally, the order is deemed to apply to "governmental privileges, and any other applicable privilege" beyond the attorney-client privilege and work product protection.

## DOE V. VANDERPOOL

**2024 WL 4881928 (D. Md. Nov. 25, 2024)**

#Spoliation; #Email; #Rule37e; #Sanctions; #Intent-to-Deprive; #Prejudice; #Preservation; #Duty-to-Preserve

United States Magistrate Judge Timothy J. Sullivan granted plaintiff's motion for sanctions against de-

fendant Town of Fairmount Heights (Town) for spoliating personnel files and emails of former officers and Town officials relating to her claims of sexual assault and police misconduct. Town argued it had no duty to preserve the materials at the time they were lost since it had no notice of plaintiff's claims until after the complaint was filed in August 2022. The court rejected this position, finding the duty to preserve attached as early as January 2020. While the court determined that the Town "deliberately, intentionally, and purposefully deleted the email accounts," it declined to find an "intent to deprive." Instead, the court issued a curative measure to remediate the prejudice plaintiff suffered, allowing plaintiff to present evidence at trial regarding the spoliation. Nevertheless, the court indicated it would "not instruct the jury on these matters, and the jury will make of the evidence what it will."

## DRUMMOND CO., INC. V. COLLINGSWORTH

**2025 WL 1450707 (N.D. Ala. May 20, 2025)**

#Spoliation; #Rule37e; #Intent-to-Deprive; #Sanctions; #Jury-Instruction

Chief United States District Judge R. David Proctor concluded that defendant intentionally deprived plaintiff of critical ESI which might have demonstrated defendant's alleged efforts to influence the testimony of witnesses and granted plaintiff's motion for spoliation sanctions. The court found that defendant, an experienced attorney, "cycled through a number of computers" and an iPad while the litigation was pending, and transferred only selected data to the new devices. In addition, the court determined that defendant then discarded, transferred possession, or rendered inaccessible the original equipment—including four Windows PCs, a MacBook, an iPad, and an external hard drive—despite explicit discovery requests and a court order to "continue to maintain and preserve in their present form all computer[s]" and "electronic files and data storage systems" in use during the period of the litigation. That these acts occurred well after the lawsuit was filed

and after the court's preservation order demonstrated, in the court's view, purposeful efforts to conceal evidence concerning the alleged payments to witnesses made by defendant and his firm. Applying Rule 37(e), the court found this conduct to support an inference that defendant acted with intent to deprive the plaintiff of the information's use, thereby authorizing severe measures without a separate prejudice finding. As a sanction, the court awarded a permissive adverse inference instruction; it reserved the issue of fees and costs until after trial.

## ELITE SEMICONDUCTOR, INC. V. ANCHOR SEMICONDUCTOR, INC.

**2024 WL 5058527 (N.D. Cal. Dec. 9, 2024)**

#Email-Threading; #Sanctions

In this trade secret misappropriation case, United States District Judge Edward Davila imposed certain sanctions on defendants and rejected others sought by plaintiff in connection with defendant's alleged discovery misconduct. The court imposed monetary sanctions against defendants for failing to comply with an order directing them to make an employee available for deposition and for failing to preserve a custodian hard drive, which contained relevant emails and other ESI. However, the court denied plaintiff's request for other sanctions under Federal Rule of Civil Procedure 37(b) and Rule 37(e) relating to the missing hard drive. The court found that defendants' actions did not violate a special master order invoked by plaintiff and that plaintiff failed to show that the lost emails or other ESI were "irretrievably lost." The court also rejected plaintiff's sanctions request against defendants for allegedly deleting or withholding other emails. The court indicated that plaintiff failed to show loss of relevant information while reasoning that the use of standard email threading was "commonplace" to reduce the volume of ESI and enhance document review.

## ELLIOT V. HUMANA, INC.

**2024 WL 4545985 (W.D. Ky. Oct. 22, 2024)**

#Proportionality; #Scope-of-Discovery

In this Telephone Consumer Protection Act ("TCPA") action, United States District Judge Rebecca Grady Jennings overruled defendant's objections to a magistrate judge's order compelling production of relevant ESI from the defendant's "CGX system." Defendant argued that plaintiff should have sought the discovery sooner and that the magistrate judge erred by finding the discovery was proportional to the needs of the case and did not consider all the factors of proportionality—specifically, the amount in controversy and whether the burden presented outweighs the information's likely benefit to the case. The court affirmed the magistrate judge ruling, finding that plaintiff had good cause for not seeking the discovery earlier as it appeared the requested information was available from another source. Moreover, defendant had not shown how much time or expense it would take to produce the CGX information. In any event, the court reasoned, the discovery was not unduly burdensome since defendant could develop a method to search its proprietary database.

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION V. ASPIRE REGIONAL PARTNERS, INC.

**2025 WL 1115300 (S.D. Ohio Apr. 15, 2025)**

#Spoliation; #Privilege; #Legal-Hold; #Preservation; #Rule45

United States District Judge Sarah Morrison overruled defendant's objections to a magistrate judge's order and declined to quash a subpoena that sought litigation hold communications from defendant's email vendor in connection with plaintiff's efforts to pursue spoliation allegations against defendant. The court first held that defendant failed to describe the subject documents with the specificity required by Rule 26(b)(5)(A) and accordingly did not establish that the subpoenaed emails constituted pro-

tected attorney-client communications. In addition, the court reasoned that, because no underlying privilege was shown, the communications were not subject to protection under the common-interest doctrine, which requires the shared communications to be privileged. In any event, the court found that defendant and its nonparty vendor did not "share a common legal interest in the outcome of the litigation" because the vendor's stake in the case was "commercial, rather than legal" in nature. Finally, the court observed that, while litigation hold notices are typically "not discoverable," a court may order their production upon a "preliminary showing of spoliation." Finding that plaintiff had established such a showing, the court concluded there was no "clear error or legal misapplication" in the magistrate judge's analysis and allowed the subpoena to stand.

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION V. CRAIN AUTOMOTIVE HOLDINGS LLC

**2024 WL 4601696 (W.D. Ark. Oct. 29, 2024)**

#Privilege; #Common-Interest

In this employment discrimination case, United States Magistrate Judge Christy Comstock ruled that communications between an aggrieved individual and EEOC may be privileged from disclosure. The issue arose during the deposition of Galen Taylor, whose interests EEOC represented in a Title VII discrimination case; EEOC asserted privilege to prevent defendant from questioning Taylor about his communications with EEOC. Defendant argued no attorney-client relationship existed between Taylor and EEOC and that there was no evidence that Taylor had ever assented to being represented by EEOC. Defendant distinguished between actions under the ADEA, where EEOC brings actions on behalf of aggrieved individuals who waive their individual right of action, and actions under Title VII, where EEOC brings a separate action while aggrieved individuals retain individual rights of action, rendering them distinct parties. The court held that such an attorney-cli-

ent relationship can exist if the aggrieved individual assents to representation by EEOC, but that in either event communications between an aggrieved individual and EEOC in a Title VII action may be protected from disclosure under the common interest doctrine even without a formal attorney-client relationship. The court found the common interest privilege to apply to the communications at issue and denied defendant's motion to compel accordingly.

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION V. MIA AESTHETICS CLINIC ATL LLC

**2025 WL 1661474 (N.D. Ga. May 30, 2025)**

#Rule26; #Search; #Motion-to-Compel; #Duty-to-Supervise; #Form-of-Production; #Reasonable-Inquiry; #Transparency

In this action for disability discrimination, United States Magistrate Judge Anna Howard granted plaintiff's motion to compel in part, concluding that defendant failed to conduct a reasonable inquiry under Rule 26(g). The court noted that plaintiff sought Salesforce records, emails, Google Voice data, and Slack communications to test its assertion that the complainant former employee could perform her duties remotely. Defendant simply stated that the requested data no longer existed, but supplied no information "concerning how it has gone about searching for the requested" information, such as the scope, methodology, or custodians involved in its searches, which would allow "the court to decide on the totality of the circumstances" whether defendant's inquiry was reasonable. The court found defendant's unsupported representation to be insufficient, observing that screen captures and emails already produced by the employee suggested additional responsive material might exist in backups or other formats. The court ordered defendant to conduct a renewed, targeted search—to include contacting Salesforce, Google, and Slack for possible backups, reviewing alternate storage such as Excel sheets, and examining email archives—and to produce any newly located documents along with a detailed description of the retrieval process within

14 days. The court denied without prejudice, however, plaintiff's request that order defendant to hire an eDiscovery vendor but cautioned that it might revisit that decision if defendant's compliance with the order should prove inadequate.

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION V. MIA AESTHETICS CLINIC ATL LLC

**2025 WL 2417759 (N.D. Ga. Aug. 18, 2025)**

#Rule26; #Search; #Motion-to-Compel; #Duty-to-Supervise; #Form-of-Production; #Reasonable-Inquiry

In this disability discrimination case, plaintiff objected to defendants' failure to comply with a prior court order granting, in part, plaintiff's motion to compel. In a previous order (**United States Equal Emp. Opportunity Comm'n v. Mia Aesthetics Clinic ATL LLC**, 2025 WL 1661474 (N.D. Ga. May 30, 2025)), United States Magistrate Judge Anna Howard ordered defendants to outline in detail how they conducted their search and to produce new documents within 14 days. While the court declined to order defendants to retain an eDiscovery vendor at that time, it did leave the door open to such relief should their efforts in response to the order prove insufficient. On plaintiff's renewed motion, the court found that defendants failed to comply with the earlier order, emphasizing that their reliance upon Rule 30(b)(6) testimony was insufficient and criticizing defendants' continued vague and conclusory descriptions of their search efforts. The court ultimately ordered defendants to hire an eDiscovery vendor, attempt to recover or restore all responsive ESI, produce ESI in a usable form, and have defense counsel personally oversee the process.

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION V. PHOENIX CENTER, INC.

**2024 WL 4452230 (S.D. Ohio Oct. 9, 2024)**

#Chat; #Teams; #Search; #Self-Collection; #Reasonable-Inquiry

United States Magistrate Judge Stephanie Bowman granted plaintiff's motion to compel and ordered defendant to produce (among other things) electronic communications in response to plaintiff's document requests 14-15. In doing so, the court found that defendant's search for relevant information was insufficient on multiple levels. The search was conducted by two lay employees without any supervision or oversight by outside counsel. Worse, one of those employees was interested in the outcome of the litigation ("Ms. Carrico … was involved in many of Defendant's actions that form the basis of the alleged discrimination"). In addition, defendant's search efforts were incomplete; they did not collect or review (and thus did not produce) relevant Microsoft Teams messages, they failed to search for responsive information on former employees' email accounts, and they missed additional emails from key custodians. The court ordered defendant to redo its collection of responsive ESI, meet and confer with plaintiff regarding search terms, and identify for plaintiff the personnel it would assign to collect relevant information.

## ESTATE OF SCHUCK V. COUNTY OF SAN DIEGO

**2025 WL 2180987 (S.D. Cal. Aug. 1, 2025), report and recommendation adopted, 2025 WL 3033407 (S.D. Cal. Oct. 09, 2025)**

#Spoliation; #Rule37e; #Intent-to-Deprive; #Sanctions; #Prejudice; #Curative-Measures; #Jury-Instruction

United States Magistrate Judge Allison Goddard recommended that the court impose sanctions against defendant San Diego County ("defendant") under Rule 37(e) for failing to preserve relevant video footage showing a jailed man's deteriorating physical and mental condition shortly before his death in the defendant's custody. Judge Goddard determined that the defendant neglected to take reasonable steps to retain the footage in question since it did not follow its two-year video retention policy. According

to Judge Goddard, the defendant acknowledged that its law enforcement personnel were unaware of the retention policy, that it had not promulgated policies or practices to preserve video footage subject to a preservation demand, and that the video was apparently deleted after nine months (and after the duty to preserve attached in this case). Judge Goddard reasoned that defendant's failure to follow its own policies, along with its selective preservation of certain video footage (of lesser importance), demonstrated that defendant acted with the requisite intent to merit the issuance of a permissive adverse inference instruction under Rule 37(e)(2). Judge Goddard also recommended that the court issue an attorney's fees award to plaintiff under Rule 37(e)(1).

## IN RE EXACTECH POLYETHYLENE ORTHOPEDIC PRODUCTS LIABILITY LITIGATION

**347 F.R.D. 572 (E.D.N.Y. 2024)**

#TAR; #Transparency; #Discovery-Process; #Sedona-Principle-Six

United States Magistrate Judge Marcia Henry granted in part and denied in part plaintiffs' discovery motions and adopted defendant's proposed technology-assisted review ("TAR") protocol for identifying responsive documents. Concerning the TAR protocol dispute, plaintiffs requested they be allowed access to the non-privileged documents that defendant coded nonresponsive during training review. Defendant argued that plaintiffs' proposal was impermissible discovery-on-discovery. The court agreed, rejecting as unsubstantiated plaintiffs' assertion that they should be permitted access. The court observed that the parties had "largely agreed to a TAR protocol including detailed information regarding the collection criteria and the culling and review process" and concluded that this was "sufficient information to make the production transparent." In addition, citing the Sedona Conference Principle 6 and *TAR Case Law Primer* (2nd Ed.), the court indicated that plaintiffs had yet to demonstrate a deficiency with defendant's TAR process.

## FEDERAL TRADE COMMISSION V. AMAZON.COM, INC.

**2025 WL 2832474 (W.D. Wash. Sept. 16, 2025)**

#Rule502d; #Privilege; #Waiver; #In-Camera; #Protective-Order

In this lawsuit by the FTC and several states against Amazon, plaintiffs moved to compel the production of three categories of documents that Amazon claimed were privileged. The first category of materials involved privileged documents that Amazon sought to claw back pursuant to Federal Rule of Evidence 502(d) after conducting a "privilege re-review." Plaintiffs argued that the re-review evinced Amazon's intent to produce the documents, that pursuant to **De Coster v. Amazon.com, Inc.**, 2025 WL 1237370 (W.D. Wash. Apr. 29, 2025), Rule 502(d) did not apply, and that any privilege protection previously protecting the documents should be deemed waived. United States District Judge John H. Chun disagreed and instead found that the non-waiver order the court entered pursuant to Rule 502(d) both applied and allowed Amazon to claw back the documents at issue. Judge Chun, who issued the order in De Coster, distinguished that case from the instant non-waiver order, which explicitly revoked the application of Rule 502(b) by "plainly stating that the 'provisions of Fed. R. Evid. 502(b) do not apply.'" As to the second category of documents, the court required their production. The court reasoned that Amazon produced the documents prior to litigation and subject to an agreement between the parties that did not mention Rule 502 but prohibited the plaintiff from disclosing the documents to third parties. The court found that neither the prior agreement nor the present Rule 502(d) order contemplated application of the latter order to documents produced prior to the litigation, so that consideration of Amazon's clawback attempt required application of Rule 502(b)—the requirements of which the court found that Amazon did not satisfy. Finally, the court allowed Amazon to claw back documents in the third category, concluding the company had timely objected to the use of those documents in depositions.

## FEDERAL TRADE COMMISSION V. GRAND CANYON EDUCATION, INC.

**2024 WL 4870505 (D. Ariz. Nov. 22, 2024)**

#PC&C; #Legal-Right

United States District Judge Dominic Lanza addressed a dispute between the FTC and an individual defendant who was president of a defendant educational institution (Grand Canyon University, "GCU") and also CEO of its co-defendant parent corporation (Grand Canyon Education, "GCE"). FTC sought documents from the CEO regarding the entities and their telemarketing activities. CEO resisted discovery, arguing: (1) he was sued in his individual capacity and should not have "to produce any GCU or GCE documents;" (2) he was named individually only as CEO of GCE, so he should not be required to produce "GCU documents;" and (3) the RFPs served on him were duplicative of those served on the other entities and thus disproportionate to the needs of the case. The court rejected CEO's arguments regarding his individual capacity. The court indicated that Federal Rule of Civil Procedure 34 requires parties to produce relevant documents that are in their possession, custody, or control, irrespective of their role in a lawsuit. The CEO did not deny he had responsive documents, nor that he had the legal right to obtain documents given his roles at the entities. Nevertheless, the court agreed with CEO regarding the potential for duplication of discovery as between defendants and adopted CEO's suggestion that the parties confer "to ensure that relevant and responsive discovery is not unnecessarily duplicated."

## FEDERAL TRADE COMMISSION V. MATCH GROUP, INC.

**2025 WL 46024 (N.D. Tex. Jan. 7, 2025)**

#Microsoft365; #Sanctions

In this litigation regarding certain issues with defendant's subscription model, United States Magistrate Judge Brian McKay granted in part and denied in part FTC's motion under Federal Rules of Civil

Procedure 16(f)(1)(C) and 37(c) for sanctions against defendant for producing approximately 500 responsive documents after the close of discovery. The late production occurred after defendant discovered that a "technological glitch" in an archiving service it used to facilitate the collection and preservation of relevant ESI from its Microsoft 365 platform had caused certain documents to be withheld from production. FTC argued it was prejudiced by the late productions, which it asserted included key evidence supporting its claims. While the court agreed FTC suffered some prejudice, it held that the prejudice was not significant, particularly given the nature and extent of the information (over 300,000 documents) that defendant produced previously in discovery. In this light, the court found the prejudice FTC incurred could be addressed through limited deposition testimony. The lack of significant prejudice—together with the court's finding that defendant's late production was substantially justified since it "reasonably relied" on the archiving service that was marketed as being "interoperable" with Microsoft 365—led the court to deny FTC's request for an exclusion sanction under Rule 37(c)(1).

## IN RE FIRSTENERGY CORP.

**154 F.4th 431 (6th Cir. Oct. 3, 2025)**

#Privilege; #Primary-Purpose; #Work-Product

In this shareholder derivative suit, defendant petitioned for a writ of mandamus after the district court compelled disclosure of documents created pursuant to two internal investigations and over which defendant claimed privilege. The U.S. Court of Appeals for the Sixth Circuit (per curiam) granted the petition and reversed the district court. Relying on **Upjohn Co. v. United States**, 449 U.S. 383 (1981), the court first found that FirstEnergy, like Upjohn, "hired lawyers to 'secure legal advice' through internal investigations into the company's potential criminal and civil wrongdoing," and received from its counsel "investigative findings, legal analyses, and assessments of potential criminal and civil liability." The court found that these communications "all involved

requested legal advice." Similarly, the court found that reports and papers prepared by FirstEnergy's counsel in connection with the internal investigations were materials produced in anticipation of litigation that later ripened into actual litigation, and that this anticipation was the "but-for" cause of the materials being produced, qualifying them as work product protected from disclosure. The court held that the district court erred in concluding that the internal investigations were initiated to obtain business advice merely because FirstEnergy later used the work product to also inform business decisions. The court found "[n]one of these adjacent business purposes for seeking legal advice transforms the communications and legal work into something other than legal advice. In the context of the legal threats that FirstEnergy faced—high-stakes criminal and civil allegations—it will be the rare company that will not also have business purposes for seeking essential legal advice." The court likewise deemed the district court's conclusion that the investigations were initiated to support "employment decisions and business concerns" to be in error, because this conclusion is only possible if the court were to ignore "the circumstances of the documents' creation," which in this instance involved an "onslaught" of legal, litigation, and regulatory activities, including a federal criminal investigation. The court concluded (i) that the district court committed "clear error" in finding the materials to be non-privileged, (ii) that no other means of relief was available as a practical matter, and (iii) that the "extraordinary remedy" of mandamus was appropriate because, among other things, the district court's conclusions not only upended FirstEnergy's "expectations" that the "apex legal advice" it "wisely" sought under the circumstances would remain confidential, but also produced "substantial uncertainty" for corporate litigants generally—citing the "over forty amici" who persuasively argued that the court's order disturbed the "predictable and certain privilege and work-product standards" established under **Upjohn**. The court therefore granted the petition and vacated the district court's order.

## FLANNERY ASSOCIATES, LLC V. BARNES FAMILY RANCH ASSOCIATES, LLC

**2024 WL 5111885 (E.D. Cal. Dec. 13, 2024)**

#Privilege; #Waiver; #Rule45

United States Magistrate Judge Allison Claire granted plaintiff's motion to compel nonparty BLK Entities (BLK) to produce certain documents it had originally withheld or redacted on the basis of privilege. The documents at issue were emails that an individual defendant (one of BLK's managing members) exchanged with his attorneys through the email account of his employer, CBRE. Plaintiff argued that defendant's use of CBRE's email server to exchange emails with his attorney waived any attorney-client privilege protection and sought an order compelling their production. The court agreed, finding that CBRE notified its employees that company email was not private and could be monitored. A corporate rep-resentative also testified that employees, including defendant, were informed in trainings the company offered that they had no reasonable expectation of privacy in company emails. The court concluded that defendant was accordingly "on notice that using that account exposed his communications to persons not covered by the privilege." Accordingly, she granted the plaintiff's motion to compel.

## GIESECKE & DEVRIENT GMBH V. UNITED STATES

**174 Fed.Cl. 532 (Fed. Cl. Jan. 27, 2025)**

#Relevance; #Rule26; #Scope-of-Discovery; #Proportionality

In this patent dispute in which the plaintiff alleged the U.S. Government and its contracted vendor for "e-passport readers" and related software infringed its patents, the court granted plaintiff's motion to compel production of source code related to legacy software for devices not at issue in the case. Defendant argued the legacy source code was irrelevant to the litigation because no relevant device uses that code. United States Judge Ryan Holte disagreed,

finding that defendant had collaborated with another defendant in producing source code for the at-issue devices and shared the legacy source code with that other company, so that analysis of the legacy code may be relevant to plaintiff's efforts to identify the source of infringing code in the at-issue devices. Defendant also argued production of the legacy code would be unduly burdensome and disproportionate to the needs of the case because it "does not maintain a debugged version" of the old code. The court found this to be of little consequence, as defendant's task was simply to produce it whether or not "the source code compiles, is debugged, or works." The court granted the motion and ordered the parties to meet and confer about how to accomplish the production.

## GILEAD SCIENCES, INC. V. KHAIM

**755 F.Supp.3d 285 (E.D.N.Y. 2024)**

#Proportionality; #Scope-of-Discovery; #Rule45; #Privacy

The court denied the plaintiff's motion to compel a nonparty to produce GPS data from defendant's ankle monitor and granted defendant's motion to quash plaintiff's subpoena. Plaintiff sought GPS data to prove defendant's involvement in a counterfeiting conspiracy. Defendant, who wore the ankle monitor as a condition of release in an unrelated criminal case, objected on grounds of relevance, proportionality, privacy, and Fifth Amendment privilege. United States Magistrate Judge Joseph Marutollo ruled plaintiff had not demonstrated the relevance of the GPS data to their trademark claims. The court determined the request was overly broad, speculative, and premature, and reasoned that plaintiff had other means to obtain comparable information. The court also highlighted privacy concerns, citing Carpenter v. United States, 585 U.S. 296 (2018), which recognized a legitimate expectation of privacy in records of one's physical movements. The court indicated that plaintiff's request differed from cases where law enforcement used GPS data for criminal investiga-

tions and concluded that plaintiff's interest could not override defendant's constitutional rights.

## GOLAT V. WISCONSIN STATE COURT SYSTEM

**2025 WL 2466697 (W.D. Wis. Aug. 27, 2025)**

#Duty-of-Candor; #Cooperation

United States Magistrate Judge Anita Marie Boor discharged a prior show-cause order against plaintiff yet cautioned plaintiff's counsel and authorized an application for fee-shifting after determining that counsel had submitted an incomplete email chain in support of a motion to compel. Judge Boor explained that plaintiff's motion was premised in part on an allegation that defendant refused to meet and confer about a privilege log, and counsel attested that the emails attached to the motion were "true and correct copies." However, one email in the chain between the parties had been omitted; the message demonstrated that "the parties were communicating about the privilege log and had reached an understanding on approach and timeframe." Judge Boor found the omission to be "problematic," rejecting counsel's explanation that the email was merely cumulative. Judge Boor reiterated that counsel has a duty of candor in presenting a complete and accurate record of discovery communications to the court. Although Judge Boor did not impose sanctions and discharged the show-cause order, she invoked Rule 37(a)(5)(B) to allow defendant to seek reasonable expenses, including attorney's fees, incurred in opposing the premature motion.

## GMO GAMECENTER USA, INC. V. WHINSTONE US, CORP.

**2025 WL 722853 (S.D.N.Y. Mar. 5, 2025)**

#Proportionality; #Relevance; #Scope-of-Discovery

In this breach of contract case, plaintiff requested documents that referenced GMO or the contract in a broader context. United States Magistrate Judge Katharine Parker previously denied the request on relevance grounds. After determining that GMO's subsequent clarifications narrowed the requested discovery enough to establish relevance, the district court deferred to Judge Parker the question of whether the additional discovery sought was proportional to the needs of the case or unduly burdensome. Judge Parker began her analysis by reinforcing the need for a proportionality assessment, emphasizing that parties must collectively evaluate the proportionality of discovery. Judge Parker then examined four aspects of the disputed discovery: search terms, custodians, date range, and supplemental discoveries. She found many of plaintiff's proposed search terms overly broad and prepared narrowly tailored terms for defendant to use. For custodians, Judge Parker determined which individuals should be searched based on proportionality factors, limiting the scope to avoid duplicative results. She also ruled that plaintiff's expanded date range and supplemental documents were not proportional under the circumstances. Finally, Judge Parker ordered defendant to conduct searches using the search terms she prepared over the specified custodians and date range, mandating the production of responsive, non-privileged documents.

## GOOD CLEAN LOVE, INC. V. EPOCH NE CORP.

**2025 WL 55242 (D. Utah Jan. 9, 2025)**

#Rule45; #Sanctions

United States Magistrate Judge Jared Bennett denied nonparty BPI Labs, Inc.'s motion to recover costs and fees related to its compliance with a nonparty subpoena issued by plaintiffs. BPI claimed plaintiffs violated Rule 45(d)(1) by imposing an undue burden and sought sanctions. However, the court found BPI did not meet the high burden required for sanctions under Rule 45(d)(1), observing that while some the requests were overly broad, plaintiffs narrowed their scope through negotiation and ultimately did not "misuse ... the subpoena power." The court also clarified that the failure to seek discovery first from parties (rather than nonparties) does not alone jus-

tify sanctions. Referencing the Sedona Conference **Commentary on Rule 45 Subpoenas to Nonparties** (2nd Ed.), the court indicated that while such a practice is preferable, case law on the issue is inconsistent and many courts have held "that subpoenaing nonparties before exhausting discovery from litigating parties is an acceptable practice." In response to BPI's alternative argument that fee-shifting was appropriate under Rule 45(d)(2), the court found that BPI failed to meet the Rule's prerequisites, *i.e.*, plaintiffs did not move to compel compliance and the court did not issue an order requiring BPI to produce documents.

## IN RE GRAND JURY SUBPOENA

**127 F.4th 139 (9th Cir. 2025)**

#Privilege; #Criminal-Law; #Privilege-Log

The Ninth Circuit held that a law firm could not be compelled to provide the government with a privilege log of documents potentially protected under the Fisher doctrine, which safeguards a client's Fifth Amendment rights when documents are transferred to an attorney for legal advice. The case arose after a client, under investigation for tax evasion, refused to produce documents, invoking the Fifth Amendment. The government then subpoenaed the client's former law firm, which declined to produce some documents or a privilege log, arguing that doing so would incriminate the client. While the district court ordered the firm to provide the log without an *in camera* review, the Ninth Circuit reversed, ruling that even a privilege log could reveal incriminating information—such as the existence and control of documents—thus defeating the client's Fifth Amendment protections. The court emphasized that an in camera review by the district court is the proper method to evaluate the privilege claims at issue. The case was remanded for such a review to determine whether the documents were in fact privileged.

## GRULLON V. LEWIS

**2025 WL 1693425 (S.D.N.Y. June 17, 2025)**

#Rule26; #Search; #Reasonable-Inquiry; #Duty-to-Supervise; #Self-Collection; #Motion-to-Compel

Plaintiff sought judicial relief on various issues including an order compelling defendants to produce communications between defendants Zappala and Lewis. In connection with his motion, plaintiff argued that defendants had not satisfied the Rule 26(g)(1) duty of reasonable inquiry because their counsel had not adequately supervised the document collection and review process. United States Magistrate Judge Sarah Netburn agreed with plaintiff, observing that defendants' counsel did not perform "an objectively reasonable inquiry under Rule 26(g)(1)." Lewis and Zappala had apparently searched for relevant ESI on phones, cloud storage sites, and social media accounts, "with minimal, if any, oversight by their counsel." The court indicated that counsel needed to take a more active role in discovery, opining that lawyers have a duty under Rule 26(g)(1) "to ensure the completeness and accuracy of the information produced" to adversaries and that it would be "unreasonable to assume that Defendants themselves are conducting a reasonable search without counsel's involvement." While ordering defendants to produce responsive communications, the court modified plaintiff's overly broad production request to ensure only communications relevant to the claims and defenses were produced. The court also ordered the parties to negotiate search terms targeting responsive communications.

## HALL V. BALTIMORE POLICE DEPARTMENT

**2025 WL 509130 (D. Md. Feb. 13, 2025)**

#Privilege; #Work-Product; #Motion-to-Quash; #Rule45; #Rule26; #Proportionality; #Privilege-Log

This action arises from claims of civil rights violations by a criminal defendant whose conviction was overturned after 30 years with the help of the Mid-Atlantic Innocence Project (MAIP), which represented plaintiff in connection with his criminal conviction for 18 years. Defendants served a nonparty subpoena

on MAIP seeking documents related to its representation of plaintiff (including attorney-client communications, internal communications, and work product), and moved to compel production after several rounds of meet and confer. While MAIP produced certain information, it resisted five categories of requests as being overly broad, unduly burdensome, and protected from disclosure by attorney-client privilege. United States Magistrate Judge Charles Austin quashed the subpoena, holding that requests seeking many types of documents over an 18-year period were overly broad as to time and unduly burdensome on MAIP as a nonparty. The court did not require MAIP to log documents withheld for privilege because "a privilege log is not always a prerequisite," and in some cases, such as here, it was apparent from the subpoena and other context that documents subject to privilege were expressly requested, making the burden of preparing a privilege log unduly excessive.

## HALL V. TRIVEST PARTNERS L.P.

**2024 WL 5147015 (E.D. Mich. Dec. 17, 2024)**

#Privilege; #Waiver; #Privilege-Log

United States Magistrate Judge Curtis Ivy, Jr., granted in part plaintiffs' motion to compel production of documents withheld or redacted on the basis of privilege. Defendants withheld or redacted, and logged, approximately 1,800 documents. Plaintiffs argued the log descriptions were insufficient and sought production of all documents in unredacted form. They also argued defendants waived privilege over certain communications by including third parties without describing why the third parties did not break privilege. The court held the log was sufficient under FRCP 26(b)(5), which requires a party who claims privilege to "describe the nature of the documents [or] communications … in a manner that … will enable other parties to assess the claim." The court noted privilege logs are insufficient which provide only brief descriptions with no substantive information or minimal showing legal matters were involved. It found defendants' log descriptions contained suf-

ficient information about the subject matter and the involvement of legal matters to meet these minimum requirements. As to plaintiffs' claim of third-party waiver, the court agreed certain log entries lacked information about the third parties' roles but did not order their production. Instead, the court instructed defendants to re-review the documents, evaluate the third parties' roles, produce any non-privileged documents, and update the log with further information about the third parties if needed.

## HANDY V. DELAWARE RIVER SURGICAL SUITES LLC

**2025 WL 1594368 (E.D. Pa. June 5, 2025)**

#Spoliation; #Rule37e; #Sanctions; #Prejudice; #CurativeMeasures; #Text-Messages

United States District Judge Joel H. Slomsky adopted the recommendation of Special Master James J. Rohn that the court deny defendants' motion for sanctions regarding plaintiff's loss of relevant text messages. The case involved counterclaims by the defendants that plaintiff conspired with two nonparties to disclose confidential information and impact contract negotiations between the defendants and one of the nonparties. The court allowed the defendants limited discovery to seek from plaintiff text messages between plaintiff and the nonparties. However—after the permission was granted for the counterclaim to be lodged, but before the discovery was served—plaintiff disclosed that his phone had been damaged and all of his text messages lost, and that all efforts to recover the messages had failed. Defendants thereafter issued subpoenas to the nonparty recipients, one of whom attested that his phone had messages from the relevant period but that none were responsive to defendants' requests. Defendants then sought spoliation sanctions against plaintiff. The special master found, and the court agreed, that defendants had established that plaintiff had a duty to preserve his text messages, which had been lost because he failed to take reasonable steps to preserve them. However, the special master found that defendants had not shown that the

ESI could not be restored or replaced because a recipient's text messages remained available as a replacement source of evidence. In addition, the special master determined that defendants could not demonstrate prejudice because they could not demonstrate that the messages they sought ever existed, and further had offered no evidence that plaintiff intentionally spoliated the messages.

## HAPTIC, INC. V. APPLE, INC.

**2025 WL 1569306 (N.D. Cal. June 3, 2025)**
#Work-Product; #Privilege; #Waiver; #Motion-to-Compel

United States District Judge Jacqueline Scott Corley denied defendant's motion to compel production of plaintiff's communications with litigation funders and granted plaintiff's motion to quash related subpoenas. The court acknowledged that certain valuation and merits analyses shared with the third-party funders were relevant to damages and liability yet held that they remained shielded by the work-product doctrine. The court found that plaintiff made a *prima facie* showing that the materials—created by counsel and a consulting expert before filing of the suit—were prepared "because of" anticipated litigation, satisfying the Ninth Circuit's definition of work product. Although the documents had been disclosed to the funder and other prospective funders, the court held that such disclosure did not waive protection. It rejected defendant's reliance on the common-interest privilege doctrine, ruling that no alignment of legal interests existed between plaintiff and the funders during funding negotiations, but nonetheless concluded that waiver of work product protection requires disclosure "to an adversary in litigation" or conduct that "substantially increase[s] the opportunities for potential adversaries to obtain the information." Because the funders were not litigation opponents and plaintiff transmitted the information subject to nondisclosure agreements, disclosure was not inconsistent with maintaining secrecy from the defendant. The court also found no substantial need by defendant that could override the protection. Accordingly, the court held the materials should

remain confidential, denying the motion and quashing the subpoenas.

## HERMANN V. HEWLETT PACKARD ENTERPRISES CO.

**2024 WL 4647715 (N.D. Tex. Oct. 31, 2024)**
#Discovery-Process; #Discovery-on-Discovery; #Microsoft365; #Preservation; #Privilege; #Spoliation; #Duty-to-Preserve

In this age discrimination case, plaintiff served defendant ("HPE") with a Rule 30(b)(6) deposition notice with 51 topics, five of which (topics 4–8) sought testimony on topics which the court characterized as "discovery on discovery." HPE sought a protective order regarding topics 4–8, arguing that (among other things) they sought privileged information and work product. United States Magistrate Judge David Horan issued a protective order regarding topic 4 ("HPE's efforts to identify documents responsive to requests for production in this case") since plaintiff failed to support his arguments for such information. As for the other four topics—which generally sought details about HPE's information retention policy related to terminated employees' documents and its preservation efforts in the case— the court allowed the deposition to proceed. The court reasoned that a Rule 30(b)(6) deposition was appropriate on these topics since it was undisputed that HPE eliminated plaintiff's emails from its Microsoft 365 platform after his termination from the company and possibly after its duty to preserve relevant information attached. In addition, the court rejected HPE's objections, observing the identification of litigation hold recipients would not reveal privileged information or work product.

## HOFFER V. TELLONE

**128 F.4th 433 (2d Cir. 2025)**
#Rule37e; #Sanctions; #Spoliation; #Preservation

The U.S. Court of Appeals for the Second Circuit clarified the application of Federal Rule of Civil

Procedure 37(e)(2) regarding sanctions for spoliation of electronic evidence. The case involved a dispute over a missing video of a police officer using a taser on plaintiff during an arrest. The district court denied plaintiff's request for an adverse inference instruction, finding insufficient evidence of intent to deprive. On appeal, the Second Circuit affirmed, establishing that sanctions under Rule 37(e)(2) require a finding of "intent to deprive" by a preponderance of the evidence, rejecting the lesser "culpable state of mind" standard. This decision aligns the Second Circuit with other circuits and emphasizes the necessity of intent for severe sanctions, ensuring consistency in the application of Rule 37(e)(2) across jurisdictions. The Second Circuit further aligned its Rule 37(e) jurisprudence with other circuit courts (particularly the Seventh and Ninth Circuits) by holding that preponderance of the evidence is the appropriate standard for establishing the elements under Rule 37(e)(2) rather than clear and convincing evidence.

## HOMELAND INSURANCE CO. V. INDEPENDENT HEALTH ASSOCIATION, INC.

**2025 WL 428547 (W.D.N.Y. Feb. 7, 2025)**
#Legal-Hold; #Privilege; #Work-Product; #Motion-to-Compel; #Email; #In-Camera

United States District Judge Meredith Vacca overruled an order of the magistrate judge granting plaintiff's motion to compel production of "litigation-hold-related documents" over which defendant DxID had claimed privilege. Following *in camera* review, the magistrate judge characterized the first and primary communication as "an email dated July 27, 2012 from [outside counsel] to [the defendant's] Chief Technology Officer, attaching a letter titled 'Preservation Requirements.'" The magistrate judge concluded that the communication "merely described DxID's document retention practices and offered instructions for document preservation," which did not fall within the scope of attorney-client privilege. The court disagreed, reasoning that

the "substance of each of the redacted paragraphs makes clear the letter involves the application of legal principles relevant to discovery and evidence preservation." That the letter did not contain "legal research" or "citations to particular statutes, rules, or cases" did not mean that it did not reflect "other professional skills [and] judgment." The other four documents were continuations of this primary communication and likewise reflected legal judgment about who within the company should be advised of the lawyer's advice, leading the court to conclude they, too, were privileged communications and not "routine administrative paperwork." The court accordingly sustained defendant's objections and vacated the order to produce the documents unredacted.

## HUBBARD V. CROW

**2025 WL 1699836 (W.D. Tex. June 5, 2025)**
#PC&C; #Spoliation; #Rule37e; #Sanctions

In this highly publicized action over human trafficking and conspiracy allegations, United States Magistrate Judge Elizabeth Chestney addressed defendant's motion for sanctions stemming from plaintiff's alleged spoliation of, among other things, a podcast recording. The court declined, without prejudice, to issue Rule 37(e) sanctions because defendant had not yet demonstrated that the missing data could not be restored or replaced. The ESI in question was an unedited recording of an interview in which plaintiff commented on the lawsuit, made by a nonparty for the latter's podcast. Plaintiff received a link to review the podcast in an email and subsequently asked the podcaster to excise her comments about the case before posting; the link (produced in discovery) thereafter led to the publicly available version that did not include the potentially relevant comments. Noting that the podcaster or her company might still possess a copy of the original recording, the court considered whether plaintiff had possession, custody, or control over the hyperlinked podcast file. While plaintiff and her attorney apparently only streamed the recording, the court reasoned that plaintiff arguably exercised "control" over

the file by requesting "cuts" that resulted in removal of a four-minute segment. "To avoid the possibility of sanctions under Rule 37(e)," the court ordered plaintiff "to contact the podcaster to see whether it is possible to obtain the original version of the file." [In a subsequent order (No. 23-cv-00580-FB, Dkt. 421 (W.D. Tex. Oct. 9, 2025)), Judge Chestney observed that the podcaster reported she also no longer had access to the original file, but denied the defendant's renewed motion for sanctions, finding that he had failed to show either that plaintiff intentionally spoliated the missing content or that he had suffered any prejudice from its loss.]

## IN RE FACEBOOK INC. DERIVATIVE LITIGATION

**2025 WL 262194 (Del. Ch. Jan. 21, 2025)**

#Rule37e; #Sanctions; #Spoliation; #Preservation; #Curative-Measures

In this litigation arising from the Cambridge Analytica scandal, Vice Chancellor Travis Laster imposed sanctions against one of the individual defendants (Sandberg) for failing to preserve relevant emails from her personal email account. Sandberg, Meta's former chief operating officer and a former member of its board of directors, apparently failed to suspend her regular practice of selectively deleting emails from her Gmail account that she used (in addition to her company-issued email account) to communicate about company business. The court determined that Sandberg's actions violated Court of Chancery Rule 37(e) and went contrary to the litigation hold directive that Meta issued to Sandberg. As sanctions, the court issued an award of attorney's fees for plaintiffs against Sandberg and also held that Sandberg would now have to meet a clear and convincing "standard of proof" to establish her affirmative defenses at trial. While imposing sanctions against Sandberg, the court declined to do so against another individual defendant (Zients) as plaintiffs did not establish that Zients's deleted responsive emails from his personal email account.

## HUMPHRIES V. BUTTON

**2025 WL 509254 (D. Nev. Feb. 14, 2025)**

#Protective-Order; #Sanctions

United States Magistrate Judge Elayna Youchah denied plaintiff's motion for case-terminating sanctions against defendants for the latter's use of protected confidential documents produced in this litigation in public statements and filings initiating lawsuits in other jurisdictions. The court noted defendants had engaged in multiple instances of harassing and "ad hominem" attacks in the past and had been sanctioned previously. The protective order in the case clearly permitted defendants to use confidential produced documents "solely for the prosecution and defense in this action" and "not for any other purpose or in any other proceeding." The court acknowledged defendants had used confidential produced documents in six other cases they filed in other district courts. However, balancing factors such as the public interest in expeditious resolution of the case on the merits and whether a less drastic sanction should apply, the court found the sanction of dismissal to be unwarranted. The court ordered defendants to pay attorneys' fees in connection with the motion and warned defendants that any further violations of the protective order would result in a sanction of default judgment.

## JOHNSON V. TUSKEGEE UNIVERSITY

**2025 WL 2496312 (M.D. Ala. Aug. 28, 2025)**

#Spoliation; #Rule37e; #Sanctions; #Collaboration-Tools; #Preservation; #Duty-to-Preserve

United States Magistrate Judge Kelly Fitzgerald Pate denied plaintiff's motion to compel and motion for sanctions against defendant arising from defendant's alleged failure to preserve relevant video recordings from its Zoom collaboration platform. While plaintiff argued that defendant had failed to retain pertinent Zoom recordings, defendant argued that the information was deleted pursuant to its retention policy before the duty to preserve attached. Accord-

ing to defendant's retention policy, Zoom recordings are kept 60 days: "thirty (30) days before they are automatically deleted, and . . . there is an additional thirty-day period allowing retrieval of 'deleted video before automatic permanent deletion.'" Because the Zoom videos were deleted pursuant to defendant's retention policy before a duty to preserve attached, the court determined there was no basis for sanctions against defendant, nor any grounds to compel defendant to produce the requested recordings.

## KINNEE V. TEI BIOSCIENCES INC.

**2024 WL 4860792 (S.D. Cal. Nov. 21, 2024)**
#ESI-Protocols; #Initial-Disclosures; #Rule26

United States Magistrate Judge David Leshner denied the parties' joint motion for entry of an ESI order and directed defendant to serve initial disclosures that comply with FRCP 26(a)(1)(A)(i). Rule 26(a) requires a party to "provide to the other parties: the name . . . of each individual likely to have discoverable information." Rather than identify witnesses, defendant's disclosures stated that the general nature of plaintiff's allegations, combined with the fact defendant had thousands of employees, made it impossible to identify every individual likely to have discoverable information. The court held "these disclosures — which do not identify a single corporate witness by name, much less the subject(s) of information each witness possessed — do not comply with Rule 26(a)(1)(A)(i)." The court rejected defendant's reliance on its statement that it reserved the right to supplement its disclosures, concluding the disclosures were "an impediment to the parties' ability to engage in a meaningful discussion … regarding ESI" discovery and therefore denied the parties' joint motion. The court ordered the parties to exchange and then meet and confer about their proposals for search terms and custodians, warning defendant "must" consider plaintiff's suggestions in good faith.

## KOHLS V. ELLISON

**2025 WL 66514 (D. Minn. Jan. 10, 2025)**
#AI; #Ethics; #Fake-Citations

United States District Judge Laura Provinzino excluded declaration testimony from an expert witness after it was discovered that the expert included phony citations to purportedly authoritative articles in his written opinion. In this action where plaintiffs challenged the constitutionality of a Minnesota statute prohibiting the "dissemination of 'deepfakes' with the intent to injure a political candidate or influence the result of an election," defendant sought to introduce the expert's testimony (in connection with a preliminary injunction motion) to provide contextual understanding regarding AI and spotlight the issues with deepfakes. Once the court became aware that the expert had inadvertently "included citations to two non-existent academic articles and incorrectly cited the authors of a third article," it was unwilling to accept any testimony from him ("citation to fake, AI-generated sources … shatters his credibility with this Court"). The court emphasized the importance of counsel verifying the nature of content from their experts and suggested that counsel consider asking whether experts "have used AI in drafting their declarations and what they have done to verify any AI-generated content."

## LAM V. STATE STREET CORP.

**2025 WL 834885 (S.D.N.Y. Mar. 17, 2025)**
#Privilege-Log; #Proportionality; #Relevance; #Rule26;
#Motion-to-Compel

In an action involving various claims by plaintiff against her former employers, United States District Judge Naomi Reice Buchwald denied plaintiff's motion to compel production of documents from various custodians. The court found that plaintiff's request — which sought all non-privileged documents from seven custodians that mentioned her first or last name, without any connector terms — was overly broad and speculative since plaintiff did not establish the relevance of the documents she sought. Similarly, the

court found that plaintiff's request was disproportionate under the circumstances, particularly since plaintiff's search terms would require defendants to review another 12,113 documents after they had produced on an expedited schedule "14,000 pages of ESI" after reviewing about 36,000 documents in over 1,400 hours. Separately, plaintiff also moved to compel production of documents that defendants had withheld as privileged. Plaintiff challenged entries within defendants' categorical privilege log that referenced legal advice sought on employment law. The court acknowledged that defendants' categorical privilege log adequately represented their claims of attorney-client confidentiality and accordingly denied this aspect of the motion.

## LEE V. COUNTY OF LOS ANGELES

**2025 WL 2505484 (C.D. Cal. Aug. 29, 2025)**

#Spoliation; #Rule37e; #Sanctions; #Preservation; #Intent-to-Deprive; #Jury-Instruction; #Text-Messages

In this matter involving the death of plaintiffs' child while in foster care, plaintiffs sought sanctions after the government defendants (defendants) failed to preserve relevant text messages on defendant Los Angeles County Department of Children and Family Services ("DCFS") social workers' phones. Defendants argued that sanctions were not appropriate because they allegedly took reasonable steps to preserve the contents of two workers' phones. They also maintained that the texts were not deleted with the requisite intent to merit Rule 37(e)(2) sanctions as DCFS was purportedly not apprised of the need to keep the messages. United States Magistrate Judge Maria Audero disagreed, finding neither argument was substantiated and issuing a mandatory adverse inference instruction against defendants. In particular, the court questioned how defendants could argue they took reasonable steps to preserve the messages when they also asserted that DCFS never received a preservation demand from plain-

tiffs and thus failed to take any steps to keep the relevant messages. In any event, the court rejected defendants' reasonable steps argument as they failed to modify their standard practice of periodic upgrades to worker phones that caused the texts to be eliminated. Moreover, the court held that defendants knew they were under a duty to preserve relevant text messages since defendant Los Angeles County's counsel received plaintiffs' preservation demand before the messages were deleted. Finally, the court issued an order to show cause why it should not sanction defendants under Rule 26(g)(3) for failing to previously disclose the deletion of the workers' text messages in their written discovery responses.

## LEPRINO FOODS CO. V. AVANI OUTPATIENT SURGICAL CENTER, INC.

**2024 WL 4488711 (C.D. Cal. Sept. 30, 2024)**

#Motion-to-Compel; #Form-of-Production; #Privacy; #Relevance-Redactions

United States Magistrate Judge Jacqueline Chooljian granted in part and denied in part plaintiffs' motion to compel a defendant (Bedford) to reproduce documents in another, and unredacted, form. Discovery from Bedford involved substantial delays. Bedford eventually produced 6,800 pages in PDF, but not before redacting content for reasons other than attorney-client privilege. Plaintiffs moved to compel reproduction in the format specified in the stipulated ESI protocol and without redactions for issues other than privilege. The court granted plaintiffs' request for relief. First, the court agreed that defendant should produce documents in the manner specified in the ESI protocol. Regarding the issue of redactions, defendant argued they were "associated with medical records that relate to persons who are entirely unrelated to this action." The court interpreted this as confirming that the redactions had been based on both "relevance and privacy/third-party

privacy/HIPAA" concerns. The court ordered re-production without these redactions, including on the basis of privacy or HIPAA concerns. The court reasoned that HIPAA permits a provider to produce documents containing health information in litigation pursuant to "a qualified protective order" and the protective order on file "adequately addresses the privacy concerns." The court also observed that many judges disfavor unilateral relevance redactions since they tend to engender "suspicion."

## LI V. MERCK & CO., INC.

**2025 WL 429013 (N.D. Cal. Feb. 7, 2025)**

#Form-of-Production; #Rule34; #Duty-to-Preserve

In an omnibus order dealing with multiple discovery disputes, United States Magistrate Judge Thomas Hixson addressed a novel situation: both parties accused each other of producing documents in unusable, unorganized form in violation of Federal Rule of Civil Procedure 34(b)(2)(E). Plaintiff alleged defendants produced documents in PDF form with multiple unrelated documents in each file. Defendants likewise accused plaintiff of the same offense— producing "randomly thrown together" documents in PDF files "hundreds of pages long." The court acknowledged that both sides effectively requested the other redo their document production while denying their own production was deficient. To sort out the issue, the court ordered both parties to produce "200 to 300 pages" of produced documents that "illustrate the problems" both sides perceived for the court to review. Separately, the court also denied defendants' motion to strike "evasive" Requests for Admission about when plaintiff first contemplated litigation. The court found that "looking for a lawyer to consult with" about one's rights is "not necessarily the same thing as contemplating or anticipating litigation," and defendant provided no authority to the contrary.

## LI V. MERCK & CO., INC.

**2025 WL 2162949 (N.D. Cal. July 30, 2025)**

#Spoliation #Rule37e #Sanctions #Preservation; #Inherent-Authority; #Rule26; #Reasonable-Inquiry; #Duty-to-Supervise

In this employment discrimination case, United States Magistrate Judge Thomas Hixson denied defendant's motion for spoliation sanctions, but imposed a monetary sanction on plaintiff's counsel. The court first rejected spoliation sanctions for plaintiff's destruction of (1) paper documents printed prior to termination of her employment and (2) printed emails mailed to her by a former coworker after her termination. The court found that plaintiff's preservation duty arose only upon her termination, not four months earlier when she consulted counsel while pursuing internal HR remedies. Finding that defendant did not allege the materials predating her termination were destroyed after the preservation duty arose and that the materials mailed to her after her termination were otherwise available to defendant from its email system, the court held that nothing subject to a preservation obligation had been irreplaceably lost. The court next declined to impose sanctions under Rule 37(e) for plaintiff's failure to preserve communications between herself and third parties, observing that defendant failed to identify ESI that was both lost and could not be replaced from other sources. The court, however, ordered sanctions against plaintiff's counsel for violating Rule 26(g)(1). The court concluded that the attorney who signed the plaintiff's discovery responses and certified that no responsive communications existed with the plaintiff's daughter (when in fact numerous texts and emails were later identified and produced) did so without conducting the required reasonable inquiry. The court dismissed counsel's response that they "relied on their client, who had forgotten about the electronic communications with her daughter," observing that "Rule 26 doesn't let counsel hand responsibility for document collection to the client and then just hope for the best." The court ordered counsel to pay the defendant $5,000.

## LIEDERBACH V. NYU LANGONE HOSPITALS

**2025 WL 1952440 (S.D.N.Y. July 16, 2025)**

#Forensic-Exam; #Text-Messages; #Self-Collection; #Motion-to-Compel

In this wrongful termination suit, plaintiff moved to compel a forensic examination of a nonparty witness's cell phone. While the nonparty witness (an employee of the defendant hospital) manually searched her personal cell phone and sent screenshots of relevant text messages to defendants' counsel, she did not identify messages prior to December 2023. In support of plaintiff's motion, plaintiff argued that the nonparty's manual search was inadequate, given that self-collection is disfavored and that the lost messages could constitute spoliation. United States District Judge Jeannette Vargas disagreed, emphasizing that the witness was a nonparty and not a defendant, thereby deeming any expectation of having the witness hire an ESI vendor to search her phone as intrusive, unreasonable, and disproportionate under the circumstances. As to spoliation, the court found the assertion unsupported because an earlier preservation request did not list the nonparty as a potential custodian. Moreover, the court doubted that the nonparty's actions could be imputed to defendant hospital. Thus, the court found that plaintiff did not meet the burden of establishing good cause for a forensic examination and, in turn, denied the motion.

## LINEBERRY V. ADDSHOPPERS, INC.

**2024 WL 4707986 (N.D. Cal. Nov. 6, 2024)**

#Rule26; #Proportionality; #Scope-of-Discovery; #Privacy; #Relevance

The court denied defendant's motion to compel individual plaintiffs to produce emails and records relating to their internet activity. Plaintiffs alleged defendant illicitly collected their personal information through undisclosed tracking cookies on various websites. Defendant sought discovery on plaintiffs' voluntary sharing of information with other websites, arguing it would show the information defendant allegedly secretly collected had no value. United States Magistrate Judge Peter Kang found the requested discovery was not relevant as it did not address the central issue of whether defendant engaged in unconsented surveillance. In addition, the discovery was not proportional, considering the privacy interests of plaintiffs and the burden of producing four years of email and web history. Recognizing that ordinary consumers receive many unsolicited emails, the court found it would be unduly burdensome for plaintiffs to review emails for responsiveness and privilege. The court also observed that the discovery would potentially implicate highly sensitive personal information, including health information, details regarding minors, personal relationships, financial and tax-related information, and so forth. Denying the motion, he noted the "Orwellian irony" of requiring plaintiffs to disclose their entire web browsing history in order to seek relief for alleged surreptitious monitoring of their web activity.

## LIVELY V. WAYFARER STUDIOS LLC

**2025 WL 2463633 (S.D.N.Y. Aug. 27, 2025)**

#Text-Messages; #Ephemeral-Messaging; #Signal; #Search; -Terms; #Discovery-on-Discovery; #Motion-to-Compel

United States District Judge Lewis Liman granted plaintiff's request that the Wayfarer defendants (defendants) disclose their search terms. In so doing, the court found that plaintiff had identified instances where defendants had failed to produce responsive emails and text messages involving their employees that nonparties had disclosed in response to subpoenas. In addition, defendants acknowledged that they had not produced other discoverable information in their possession, custody, or control. The court also granted plaintiff's requests for additional relief, including (among other things) his request that defendants produce discoverable text messages exchanged over the encrypted messaging application, Signal.

## LOOP LLC V. CDK GLOBAL, LLC

**2025 WL 71870 (W.D. Wis. Jan. 10, 2025)**

#Jury; #Sanctions; #Spoliation; #Rule37e; #Curative-Measures; #Prejudice

In connection with various motions *in limine*, United States District Judge James Peterson granted in part plaintiff's request for spoliation sanctions against defendant under Rule 37(e)(1). While finding plaintiff's arguments regarding prejudice arising from defendant's inadvertent destruction of relevant emails to be mostly speculative, the court felt it was appropriate to inform the jury of an evidence "gap … and why that gap exists." The court indicated it would also consider allowing the parties to argue to the jury about the import of the evidence gap. Nevertheless, the court rejected plaintiff's position that an instruction issue informing "the jury that it 'may consider' the failure to preserve," reasoning this would invite "jury confusion." The court deferred ruling on this issue definitively until the final pretrial conference, at which time it would also determine whether other spoliation sanctions should issue against defendant. Finally, the court refused to allow plaintiff to present evidence regarding the use of an "Evidence Eliminator" program in connection with another spoliation issue involving a nonparty. The court indicated that doing so would be "unfairly prejudicial," apparently given its tenuous connection to the claims at issue. Instead, plaintiff could reference before the jury the nonparty's failure to produce relevant emails.

## M-1 HOLDINGS, INC. V. MEMBERS 1ST FEDERAL CREDIT UNION

**2024 WL 5040838 (N.D. Ill. Dec. 6, 2024)**

#Rule26; #Proportionality; #Discovery-Process

United States Magistrate Judge Jeffrey Cole denied defendant's motion to compel additional discovery from counterclaim-defendants, finding that the motion was untimely given that it was filed after the close of discovery and after the court had issued nu-merous extensions of fact discovery. In denying defendant's motion, the court reasoned that additional discovery would not be proportional to the needs of the case given the amount of discovery that had already transpired and the need for the court to ensure that discovery remained within reasonable bounds. Contrasting the discovery process to a poem composed by the venerable Fred Rogers entitled I Like to Take My Time, the court explained that while "an idyllic thought – having all the time in the world to complete a task … cases are not litigated in Mr. Rogers' Neighborhood . . . Even in litigation, entitlement to information has its limits . . . Parties are entitled to a reasonable opportunity to investigate the facts—and no more" … This is the 'neighborhood' in which lawyers and judges live."

## MALHOTRA V. KUMAR

**2025 WL 917362 (M.D. Fla. Mar. 26, 2025)**

#Rule34; #Rule35

In this estate dispute wherein a defendant died on March 15, 2025, United States Magistrate Judge Nicholas Mizell concluded that Rules 34 and 35 do not allow a court to order a nonparty funeral director to take the fingerprints of a deceased defendant. Plaintiff sought the order for purposes of establishing "forensic analysis" probative of the validity of the will at issue in this litigation. Under Rule 34, the court found that a record of fingerprints is a non-extant "document" which the funeral director must create, and that the Rule does not authorize such relief, particularly from a nonparty. Plaintiff's request for relief under Rule 35 also failed since the deceased is no longer a "party" to the litigation and Rule 35 limits examinations to parties. Finally, the court found plaintiff's statement that he may yet alternatively obtain the decedent's fingerprints from a government source nullified "good cause" in either event.

## MALHOTRA V. CVS HEALTH CORP.

**2025 WL 2453807 (N.D. Ill. Aug. 4, 2025)**

#Spoliation; #Rule37e; #Sanctions; #Collaboration-Tools; #Preservation; #Duty-to-Preserve

In this employment discrimination case, United States District Judge LaShonda Hunt affirmed a Magistrate Judge Heather McShain's recommendation the court deny several motions for sanctions that plaintiff filed against defendant, including a motion for spoliation sanctions under Rule 37(e). Plaintiff argued that defendant had improperly deleted relevant messages and video recordings from the Microsoft Teams collaboration platform. In response, defendant maintained that the messages had been deleted automatically pursuant to its retention policy and before a duty to preserve attached. According to defendant's retention policy, "Teams messages are retained for 90 days and then deleted. Teams videos are not retained unless specifically recorded by a user." The court agreed that the messages and videos had been deleted several months before defendant had notice of the plaintiff's charge, before defendant's duty to preserve was triggered. Accordingly, the court concluded there were no grounds for sanctions against defendant.

## MATSKO V. TESLA, INC.

**2025 WL 1144827 (N.D. Cal. Apr. 18, 2025)**

#Search; #Search-Terms; #Validation; #Email; #Rule26; #Proportionality; #Motion-to-Compel

In this fraud class action regarding the self-driving features in Tesla automobiles, United States Magistrate Judge Donna Ryu granted certain aspects of a discovery motion filed by one of the plaintiffs (LoSavio) while denying others. In addition to five agreed-upon custodians, the court indicated that LoSavio could obtain documents from Elon Musk and a Tesla senior director since LoSavio established they had relevant information. As for the other three custodians from whom LoSavio sought responsive information, the court found that he had not established that they had relevant documents.

In addition, while LoSavio could obtain responsive emails, the court did not allow him to obtain other electronic communications (such as text messages) from Tesla's custodians until the parties had met and conferred on this source of ESI. Finally, the court denied LoSavio's demand that Tesla run his search terms to identify responsive information. Instead, the court ordered the parties to negotiate over search terms. If they could not reach an agreement, the parties would need to show how their respective positions satisfied the Rule 26(b)(1) proportionality standards. For Tesla, that meant substantiating irrelevance by showing "how it validated its review process" through a "quality control measure such as sampling."

## MCCONKEY V. CHURCHILL SCHOOL & CENTER

**2025 WL 1928552 (S.D.N.Y. July 14, 2025)**

#Relevance-Redactions; #Protective-Order; #Privacy

United States District Judge Lewis Liman addressed several discovery disputes in this employment discrimination case, granting in part and denying in part plaintiff's motion to compel. Among other things, the court held that defendant's unilateral redactions of non-relevant information from otherwise responsive documents were improper. Defendant asserted that it only redacted "the names and contact information of nonparty employees whose identities are not relevant to any claim or defense in this matter … to protect the legitimate privacy interests of those who are not alleged to have engaged in any wrongdoing." The court observed that the rules do not allow relevance-based redactions and that "unilateral redactions based on concerns about personal privacy or business sensitivity are routinely disallowed." Particularly with a protective order in place, the court reasoned that disclosure of irrelevant information poses minimal harm compared to the burdens imposed by relevance redactions. Moreover, the court observed that the identities of individuals copied on communications may be relevant for context or further investigation. The court permitted the defendant to redact only contact information for "nonparty employees."

## MUNOZ V. EARTHGRAINS DISTRIBUTION, LLC

**2025 WL 2460191 (S.D. Cal. Aug. 26, 2025)**

#PC&C; #Rule34; #Legal-Right

United States Magistrate Judge Allison Goddard denied plaintiffs' motion to compel production of financial and accounting documents from defendant Bimbo Bakeries USA's parent company, Grupo Bimbo. Judge Goddard concluded that defendant did not have possession, custody, or control of the requested documents. While accepting that the requested ESI was relevant to plaintiffs' claims and proportional to the needs of the case, Judge Goddard emphasized that Rule 34 requires a party to produce items within its possession, custody, or control. Applying the "legal right to obtain" standard from the U.S. Court of Appeals for the Ninth Circuit, Judge Goddard found no evidence that defendant could legally demand its parent's internal records. While plaintiffs highlighted the parent's contractual guarantee of the distribution agreements at issue in the case, consolidated financial reporting across enterprises, and the presence of defendant's president on the parent company's steering committee as evidence of "control," Judge Goddard held these facts to be insufficient to establish "a legally enforceable right to demand documents" from the parent. Instead, defendant's uncontroverted representations that its employees lacked access to the parent's "working financial documents," coupled with separate corporate governance, accounting systems, and legal teams, undermined the notion of actual possession or legal right to demand the materials.

## NEWMAN V. ASSOCIATED PRESS

**2024 WL 4433465 (S.D. Fla. Oct. 4, 2024)**

#Proportionality; #Scope-of-Discovery; #Search

United States Magistrate Judge Marty Fulgueira Elfenbein denied plaintiffs' second motion to compel defendant to designate its CEO as a custodian. Plaintiffs sued defendant for purchasing photographs from freelance photographers allegedly affiliated with a terrorist group and argued the CEO

had unique, relevant documents that had not been produced. Defendant argued the CEO had no direct involvement with the relevant facts and that searching her documents would be disproportionate to the needs of the case. In denying the motion, the court found that plaintiffs did not demonstrate any flaw in defendant's procedure for identifying custodians and that defendant had agreed to plaintiffs' request to add one other custodian. He likewise determined that plaintiffs failed to show the CEO possessed unique information. Finally, the court held that searching the CEO's documents would not be proportional as it would impose a substantial cost on defendant without yielding any benefit to plaintiffs. Reasoning defendant is a global organization with over 1,000 employees and that the CEO likely has "countless documents concerning Defendant's global operations unrelated to the instant action," the court indicated that granting plaintiffs' motion would impose a burden that could only justified if the CEO was certain to be in possession of unique discovery documents.

## NOVALPINA CAPITAL PARTNERS I GP S.A.R.L V. READ

**149 F.4th 1092 (9th Cir. 2025)**

#Cross-Border; #Section1782

The U.S. Court of Appeals for the Ninth Circuit held that documents produced "for use" in specific foreign proceedings under 28 U.S.C. § 1782 may also be used in proceedings other than those identified in the underlying petition. The § 1782 petition arose in connection with the breakup of a complex international investment fund and resulting litigation in Luxembourg. Petitioner obtained a § 1782 order, which allowed petitioner to acquire certain documents for use in defending itself in the Luxembourg litigation. Petitioner additionally used the documents at issue in other foreign proceedings beyond those identified in its § 1782 petition. In response, other parties involved in the Luxembourg litigation challenged petitioner's use of the documents beyond that proceeding. In response, the Ninth Circuit issued its holding that allowed petitioner to use the doc-

uments in question in the other proceedings. The court reasoned that § 1782 does not limit the use of documents just to the Luxembourg litigation and determined that the protective order the parties negotiated regarding petitioner's use of the documents did not so restrict them either.

## OAKLEY V. MSG NETWORKS, INC.

**--- F. Supp. 3d. ---, 2025 WL 2061665 (S.D.N.Y. 2025)**
#Spoliation; #Rule37e; #Sanctions; #Preservation; #Prejudice; #Jury-Instruction; #Expert-Testimony

The court granted defendants' (MSG) motion for sanctions against former NBA player Charles Oakley (Oakley) arising from his failure to preserve discoverable text messages. United States Circuit Judge Richard Sullivan found that Oakley neglected to preserve his text messages after upgrading his phones multiple times during the relevant time period. Judge Sullivan credited expert testimony that reasonable preservation measures could have included imaging the phone, taking screenshots, backing up messages to cloud storage, or even transcribing messages—none of which Oakley undertook. The court also criticized counsel for failing to "take actual, actionable steps" to help Oakley preserve the discarded messages. Next, the court determined MSG was prejudiced by the loss of Oakley's text messages, reasoning that they may have contained admissions undermining Oakley's assault allegations, particularly given his contradictory public statements about whether he was "pushed" by security or "slipped down and fell." Finally, Judge Sullivan concluded that Oakley acted with intent to deprive MSG of his text messages, reasoning that Oakley was "so stunningly derelict as to evince intentionality" and that his explanations for the loss were not credible and evinced bad faith. As sanctions against Oakley, the court agreed to issue an adverse inference instruction at trial and allow MSG to present evidence at trial about the lost messages. The court also awarded MSG its attorney's fees and costs.

## OAKLEY V. MSG NETWORKS, INC.

**2025 WL 2076080 (S.D.N.Y. 2025)**
#Spoliation; #Rule37e; #Sanctions; #Preservation; #Prejudice; #Microsoft365

United States Circuit Judge Richard Sullivan denied plaintiff's motion for sanctions against defendant MSG after finding MSG took reasonable steps to preserve discoverable emails despite experiencing a technical malfunction in its Microsoft Purview eDiscovery environment. MSG implemented what Judge Sullivan deemed reasonable preservation measures after distributing multiple legal hold instructions to affected custodians and then implementing a technical legal hold through Purview: "Purview … was "designed to 'ensure that [emails are] retained no matter what the user does' and 'bypass or override the retention settings of the organization' so that emails are not automatically deleted." Nevertheless, emails from certain custodians for the Oakley litigation were lost due to a "technical glitch" with Purview. While Oakley argued that MSG's glitch argument was undermined by its allegedly selective preservation of ESI, Judge Sullivan was unpersuaded. The Purview failure apparently affected seventy-nine other MSG legal matters, yet left the emails of James Dolan, a key witness, undisturbed. With the emails being lost due to "events outside [MSG's] control," Judge Sullivan found that sanctions were inappropriate. In addition, the court rejected Oakley's other requested sanctions, *e.g.*, the loss of ESI from MSG security personnel's phones and Dolan's interview binder, finding insufficient evidence of prejudice or relevance.

## OHIO EX REL. YOST V. JONES

**2025 WL 1218088 (S.D. Ohio Apr. 28, 2025)**
#AI; #Reasonable-Inquiry; #Search

In this case brought under the Telephone Consumer Protection Act, plaintiff argued that a defendant (Cox) did not make a fulsome production of relevant documents. Cox countered by asserting that he "en-

gaged in diligent search efforts to locate documents responsive to Plaintiff's requests" and revealed that his search was conducted using an AI "agent" that he apparently developed. United States Magistrate Judge Kimberly Jolson rejected Cox's assertion and found that his efforts were not compliant with his obligations under the Rules. The court based its decision on written representations from Cox indicating that he would not comply with his production duties, along with WhatsApp messages he apparently deleted. Though the court did not specifically comment on Cox's AI agent search, it was apparent that the search was insufficient since the court ordered Cox to "review his records and produce all [responsive] documents in his possession, custody, or control." (emphasis in original).

## IN RE OPENAI, INC., COPYRIGHT INFRINGEMENT LITIGATION

**2025 WL 1443780 (S.D.N.Y. May 16, 2025)**

#AI; #Preservation; #Spoliation

United States Magistrate Judge Ona Wang denied defendant OpenAI's motions for reconsideration and modification of the court's May 13, 2025, order and affirmed its previous ruling that required OpenAI to preserve relevant "output log data" from its ChatGPT Free, Pro, and Plus generative artificial intelligence applications. The court issued its May 13 preservation order to address allegations plaintiffs raised regarding the spoliation of such output log data. In its motions, OpenAI argued that the preservation order was improper since it required OpenAI to preserve irrelevant information and it was not proportional to the needs of the case. The court dismissed the notion that the evidence was not relevant, observing that it previously made determinations on this issue that concluded the output log data was relevant. Regarding the issue of proportionality, the court indicated that while there were insufficient grounds to modify the May 13 preservation order, it would receive additional arguments from the parties on this issue at a follow-up hearing.

## IN RE OPENAI, INC., COPYRIGHT INFRINGEMENT LITIGATION

**--- F. Supp. 3d ---, 2025 WL 2691297 (S.D.N.Y. Sept. 19, 2025)**

#AI; #Motion-to-Compel; #Relevance; #Proportionality; #Scope-of-Discovery

United States Magistrate Judge Ona Wang denied defendants' motion to compel the New York Times Company ("NYT") to produce "all ChatExplorer logs." Regarding the ChatExplorer log data, Judge Wang explained that "ChatExplorer is an internal tool developed and used by NYT to interface with OpenAI's GPT models using OpenAI's API … The ChatExplorer Logs are the actual content underlying NYT employees' use of ChatExplorer, *i.e.*, employees' prompts to ChatExplorer and the outputs they received from Defendants' LLMs." Judge Wang found that the ChatExplorer Logs were not relevant to the claims or defenses, nor proportional to the needs of the case. Given that the ChatExplorer Logs did not constitute discoverable information under Rule 26(b)(1), Judge Wang also denied defendants' request to take a Rule 30(b)(6) deposition of NYT to explore defendants' spoliation concerns regarding the "inadvertent loss" of ChatExplorer Logs.

## IN RE OPENAI, INC., COPYRIGHT INFRINGEMENT LITIGATION

**--- F. Supp. 3d ---, 2025 WL 2799890 (S.D.N.Y. Oct. 1, 2025)**

#Collaboration-Tools; #Privilege; #Primary-Purpose; #Slack

United States Magistrate Judge Ona Wang issued an order addressing several disputed claims of privilege that defendant OpenAI asserted over various documents. One such claim involved a communication channel on the workplace collaboration tool, Slack, that OpenAI maintained was privileged because the channel involved its counsel and was established pursuant to its general counsel to "seek and provide legal advice regarding copyright law, legal strategy, and product legal counseling." Judge Wang rejected the notion that all communications in this Slack chan-

nel could be "de facto" privileged simply because the channel was either established at the direction of counsel or involved counsel. Evaluating each disputed communication individually, the court found that a few documents were privileged while several others were not. Regarding those that were not privileged, Judge Wang reasoned that they were either devoid of requests for or provisions of legal advice, while others were simply unsubstantiated except for OpenAI's "ipse dixit assertions" of privilege (emphasis in original). Judge Wang made several other determinations regarding OpenAI privilege claims, including a conclusion that a spreadsheet reflecting AI prompts and outputs from OpenAI employees "regarding copyright compliance measures for product outputs" was not privileged. While the document may have been prepared at the direction of in-house counsel, Judge Wang observed that the spreadsheet "bears no 'Privileged and Confidential' or similar legend; contains no comments or entries from in-house counsel; and contains no actual legal advice sought or conveyed by an attorney."

## OWEN V. AUDUBON FIELD SOLUTIONS, LLC

**2025 WL 2624511 (D.N.M. Sept. 11, 2025)**

#Search; #Discovery-on-Discovery; #Relevance; #Proportionality

United States Magistrate Judge Damien Martinez refused to authorize "discovery on discovery" deposition topics that plaintiff sought regarding defendant's "discovery practices," such as the nature of defendant's search terms and information regarding how defendant handled its searches for relevant, responsive documents. While rejecting defendant's arguments that the requested discovery was "categorically irrelevant," the court found that the Rule 30(b)(6) deposition topics dealing with defendant's searches were not proportional to the needs of the case since "the Court has not found that [defendant] failed to produce relevant documents or that its search efforts were inadequate," rendering discovery-on-discovery inappropriate.

## ORBIAN CORP. LTD. V. HOUSTON

**2024 WL 5082325 (S.D. Cal. Dec. 11, 2024)**

#Chat; #Teams; #Search

In connection with its order granting in part and denying in part the parties' cross-motions for discovery relief, United States Magistrate Judge Barbara Major denied defendant's request that one of the plaintiffs (Orbian) produce Microsoft Teams messages exchanged by its employees, along with records of Teams calls. Defendant argued that the requested messages and call records were relevant to his counterclaims. Orbian objected to the requests at issue, asserting they were overly broad as to time and scope and disproportionate to the needs of the case. The court agreed with Orbian, holding that the requests were impermissibly overbroad since they sought Teams messages and call records over a period of several years and without narrowing the scope of his requests. While defendant suggested he was willing to limit his requests to relevant information, the court found that defendant "does not actually do so" and accordingly denied his motion to compel regarding these requests.

## PABLE V. CHICAGO TRANSIT AUTHORITY

**145 F.4th 712 (7th Cir. 2025)**

#Spoliation; #Rule37e; #Terminating-Sanctions; #Intent-to-Deprive; #Ephemeral-Messaging

The U.S. Court of Appeals for the Seventh Circuit affirmed a district court's order dismissing plaintiff's complaint as a discovery sanction for deleting discoverable messages from Signal, along with other information from his phone. In framing the issues, the court held that the standard of review for addressing the imposition of a dismissal sanction under Rule 37(e)(2)(C) was "clear error." Under this standard, the court explained that as long as the underlying decision was reasonable, it would not disturb the underlying order even if "a different factfinder might have reached a different conclusion." The court found adequate evidence to support the lower

court's determination that plaintiff spoliated discoverable evidence. In particular, the court emphasized the "evolution" of plaintiff's testimony regarding how the messages at issue were deleted and reasoned that "the district court was within its discretion to not credit [plaintiff's] explanation." The Seventh Circuit also affirmed the district court's order of attorney's fees under Rule 37(e)(1). While acknowledging that the rule does not specifically authorize a fee award (unlike other provisions in Rule 37), the court found that both Rule 37(e)(1) and the committee note provide judges with the discretion to award fees to "cure the prejudice" caused by spoliation.

## PARTNERS INSIGHT LLC V. GILL

**2024 WL 4591244 (M.D. Fla. Oct. 28, 2024)**

#Form-of-Production; #Rule34; #Email; #Metadata

In this action alleging violations of non-compete agreements, United States Magistrate Judge Kyle Dudak denied plaintiffs' motion to compel reproduction of ESI in a more organized and native form. Plaintiffs argued that defendants' production of over 180,000 pages of emails and documents was insufficient and unorganized by request number. Nevertheless, the court found that defendants produced ESI in both a reasonably usable form and as the documents were maintained in the usual course of business. The court determined that defendants' production in TIFF with metadata load files satisfied Rule 34(b)(2)(E)(ii)'s reasonably usable format requirement. Defendants' production also met Rule 34(b)(2)(E)(i)'s usual course of business requirement. The court observed that this provision "normally requires (1) preserving the format of the ESI and (2) providing sufficient information about the context in which it is kept and used." Providing TIFF images, along with date, parties, and subject line metadata, was sufficient to satisfy these requirements. The court emphasized that Rule 34 does not require additional organization by category.

## PEN AMERICA CENTER, INC. V. ESCAMBIA COUNTY SCHOOL BOARD

**2024 WL 4592368 (N.D. Fla. Oct. 28, 2024)**

#Privilege; #Waiver; #Work-Product; #Rule502d
#Rule502b; #Protective-Order; #Claw-Back

United States Magistrate Judge Zachary Bolitho denied defendant's motion to retain and use a spreadsheet plaintiffs' attorney inadvertently emailed to defense counsel. Plaintiffs sought to claw back the document, but defendant refused and sought court intervention, arguing plaintiffs had waived work product protection. The court looked to the confidentiality order in the litigation, which contained a claw-back provision under Federal Rule of Evidence 502(d) providing that "inadvertent disclosures" of privileged or protected information would not constitute a waiver, and, upon notification, the receiving party must cease using and return or destroy the information. The court therefore considered whether the disclosure was inadvertent and determined it was. The court rejected defendant's arguments under FRE 502(b) and FRE 612. The court observed that the terms of an order with a non-waiver provision under Rule 502(d) "control over the requirements of Rule 502(b)." Regarding FRE 612, it requires (if necessary and in the interest of justice) disclosure of a writing if used to refresh a witness's memory while or before testifying. A witness did not use the spreadsheet while testifying, but it was unclear whether she had used it before testifying. The court held that even if the witness did so, defendant's refusal to accept a redacted copy demonstrated that disclosure was not necessary to serve the interests of justice and ordered the spreadsheet be returned.

## PHARMACYCHECKER.COM LLC V. NATIONAL ASSOCIATION OF BOARDS OF PHARMACY

**2025 WL 2731508 (S.D.N.Y. Sept. 9, 2025)**

#Spoliation; #Rule37e; #Sanctions; #Preservation; #Prejudice; #Curative-Measures; #Jury-Instruction

In this Sherman Act action alleging conspiracy to exclude plaintiff from the marketplace, United States Magistrate Judge Victoria Reznick granted in part and denied in part defendant's Rule 37(e) motion arising from plaintiff's loss of 19 months of Google and Bing traffic data after its Google Analytics platform was decommissioned. The court concluded that the missing data constituted ESI that should have been preserved, that plaintiff had notice of its relevance through pleadings and discovery demands, and that its counsel failed to take reasonable steps to preserve it. The court found that defendant suffered some prejudice by this loss as it would be unable to parse plaintiff's web traffic by search engine during the affected period, which is relevant to both liability and damages. Nevertheless, the prejudice was lessened by the existence of data from other years that remained available. Moreover, defendant could still cross-examine experts and marshal other evidence. The court declined to bar the plaintiff from presenting any evidence at all related to Google- or Bing-sourced traffic for the lost period, finding such a measure would be "greater than necessary to cure the prejudice." Instead, the court required any such evidence to be presented as estimates derived from existing data. The court also held that defendant could introduce evidence to the jury that relevant data had been lost and seek an appropriate jury instruction. The court also awarded defendant its fees and costs incurred in pursuing its motion.

## PLAYUP, INC. V. MINTAS

**350 F.R.D. 47 (D. Nev. 2025)**

#Forensic-Exam; #Reasonable-Inquiry; #Motion-to-Compel

United States Magistrate Judge Nancy Koppe granted defendant's motion for a forensic examination of PlayUp's Microsoft Teams database as well as the email account and business-issued devices of an employee/counter-defendant. The court did so after finding that PlayUp's chief executive, Simic (a counter-defendant), had engaged in significant discovery misconduct. The court determined that Simic repeatedly failed to produce documents as ordered by the court, provided inconsistent and evasive representations regarding the existence and production of key documents, and did not sufficiently describe his search efforts after representing that "a diligent search" had yielded no relevant documents. The court found that these actions raised serious questions about the reliability, completeness, and candor of Simic's discovery responses. Having ordered Simic to cure his many deficiencies at least three times, the court now concluded that lesser remedies were inadequate and that a forensic examination was necessary to ensure defendant received discoverable information. The court held that the examination was proportional to the needs of the case given the importance of the issues and the amount in controversy, and that privacy concerns would be addressed through a protocol limiting the scope of the examination. The order required the parties to confer to identify a third-party examiner, with Simic bearing the costs, and set forth procedures for the review and production of documents identified through specified search terms and timeframes.

## IN RE REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIG. (NO. II)

**2025 WL 1519914 (M.D. Tenn. May 28, 2025)**

#TAR; #Discovery-Process; #Rule34

United States District Judge Waverly Crenshaw, Jr., denied a joint motion for a discovery conference and ordered defendant, which twice missed prior court-imposed deadlines, to finish its document production within 10 days. The court recounted that, under the negotiated TAR protocol in the case, defendant was required to apply the TAR model, conduct a responsiveness review, and produce only confirmed-responsive material. Instead, defendant pro-

posed to "dump" millions of unreviewed search-term hits on plaintiff or to rely on sampling to avoid a full relevance assessment. This would shift defendant's obligations under Rule 34 "to conduct the responsiveness review of its own documents" to plaintiffs. The court found that proposal to be incompatible with basic discovery principles, emphasizing that "responsiveness is presupposed when responding to any discovery request" and that the responding party, not its adversary, must determine which documents are relevant and non-privileged. Concluding that defendant's approach mirrored its earlier non-compliance and would unduly burden plaintiff, the court mandated continued adherence to the TAR protocol, including a complete review for responsiveness and production of all responsive documents by the new deadline. The court reserved the possibility of sanctions for further failure to comply, but declined, for the moment, to compel defendant to hire additional reviewers.

## ROUSE V. HB FULLER CO.

**2024 WL 4973028 (D. Minn. Dec. 4, 2024)**

#Scope-of-Discovery; #Discovery-Process

United States Magistrate Judge John F. Docherty denied in part plaintiffs' motion to compel production of documents based on noncompliance with previous rulings concerning the scope of discovery. The court principally took plaintiffs to task for leveraging his prior rulings to seek "rolling discovery" of a kind he expressly stated he would not authorize, which he defined to mean "discovery requests of a general nature seeking information more recent than April 1, 2023, but doing so in the guise of requesting updates to general discovery requests that call for material before that date." The court previously held "material more recent than April 1, 2023 is not discoverable except for specific, focused requests" on a particular subject matter. Thereafter, plaintiffs served additional requests for documents after the established cut-off date. The court highlighted as a "paradigmatic example of the rolling discovery the Court forbade" one RFP which sought "[a]ll Documents and Communications responsive to or

collected by the ESI Protocol from April 1, 2023 to present." The court reaffirmed that its prior ruling meant "information created beyond a certain date is not discoverable," unless within the exception; chastised plaintiffs for propounding discovery "focused" on the specific, out-of-scope time period rather than on the topic he permitted; and stated explicitly: "Plaintiffs may request documents created beyond April 2023 if the request is focused to resolve specific outstanding questions."

## SAFELITE GROUP, INC. V. LOCKRIDGE

**2024 WL 4343038 (S.D. Ohio Sept. 30, 2024)**

#Rule37e; #Ethics; #Preservation; #Sanctions; #Spoliation; #Text-Messages; #Curative-Measures

United States District Judge Sarah Morrison imposed sanctions against one of the defendants (Lockridge) pursuant to Rule 37(e)(1) for failing to preserve relevant text messages. Lockridge did not disable the 30-day automated deletion feature that eliminated messages from his phone until three months after he received a litigation hold directive and over five months after he received a cease and desist letter (which the court held triggered his duty to preserve). While Lockridge argued that his failure to disable the auto-delete feature was "an honest mistake," the court rejected this assertion and the implicit notion that Lockridge was not sophisticated on the interplay between ESI, litigation, and discovery. The court opined that Lockridge was both "an experienced businessman" and "a modern, professional smartphone user," and that his assertion of ignorance could not withstand scrutiny. The court also criticized Lockridge's counsel for (among other things) failing to specifically advise him of the need to disable the auto-delete function on his phone. As a curative measure, the court ordered that the parties be allowed to present evidence and argument at trial regarding Lockridge's lost text messages. The court also awarded plaintiff its attorney's fees and costs.

## SAZERAC CO., INC. V. REPUBLIC NATIONAL DISTRIBUTING CO., LLC

**2024 WL 4425693 (W.D. Ky. Oct. 4, 2024)**

#Motion-to-Compel; #ESI-Protocols; #Relevance-Redactions

In this breach of contract case, United States Magistrate Judge Lanny King denied plaintiff's motion to compel defendant to produce unredacted copies of documents previously produced with redactions of nonresponsive and proprietary information. The parties had agreed to an ESI protocol permitting selective redaction of non-responsive, proprietary information from otherwise responsive documents. While the protocol had not yet been entered as an order, the court took notice that the parties had agreed to its terms. Plaintiff's motion asserted that some redacted information was relevant or not proprietary. The court first considered whether it was relevant, indicating plaintiff's requests for production sought documents relating to defendant's replacing, discontinuing, or deprioritizing plaintiff's products. Defendant argued it had redacted supplier names and products it considered as replacements for plaintiff's; financial and sales information regarding suppliers other than plaintiff; and information concerning defendant's business model and strategies for other suppliers and products. The court found plaintiff failed to explain how information in these categories was relevant. Next, the court considered whether any of the redacted information was proprietary. Concluding that it was, the court rejected plaintiff's assertion that defendant's "proprietary" label was a conclusory argument of counsel and instead found the information would give plaintiff significant competitive advantage were it given access.

## SKY JET M.G. INC. V. VSE AVIATION SERVICES, LLC

**2025 WL 1664002 (D. Kan. June 12, 2025)**

#Spoliation; #Rule37e; #Sanctions; #Preservation; #Intent-to-Deprive; #Jury-Instruction

United States Magistrate Judge Angel Mitchell granted in part defendant's motion for spoliation sanctions after finding that plaintiff intentionally destroyed cockpit voice recorder ("CVR") recordings germane to the "hot start" incident that gave rise to the lawsuit. The court determined that plaintiff had a duty to preserve the data, having removed the recorder for investigative readouts immediately after the event. Nevertheless, plaintiff offered no plausible explanation for the disappearance of the DVDs containing those readouts, which plaintiff's forensic vendor shipped back to plaintiff at the same time as the recorder. Conflicting corporate testimony, a false "none known" discovery response, and failure to disclose internal emails showing that it received the data from the vendor all led the court to conclude under Rule 37(e)(2) that plaintiff deliberately spoliated the recordings to deprive defendant of critical evidence. The court rejected plaintiff's argument that available flight data recorder information rendered the CVR recordings duplicative, finding the missing audio to be uniquely probative of the pilots' actions, particularly because plaintiff no longer employed the pilots and they might be unavailable to testify. Although declining to dismiss the action, the court imposed a permissive adverse inference jury instruction, barred plaintiff from calling the two pilots as witnesses at trial, and awarded defendant reasonable attorney's fees and expenses related to uncovering the spoliation and briefing the motion.

## SPORTS REHAB CONSULTING LLC V. VAIL CLINIC, INC.

**2025 WL 1144559 (D. Colo. April 18, 2025)**

#Rule45; #PC&C; #Text-Messages; #Motion-to-Compel; #Practical-Ability

In this antitrust case alleging monopolization of a local market for physical therapy services, United States Magistrate Judge Susan Prose denied plaintiff's post-discovery motion to compel production of

text messages from the personal cell phones of a former board chair, a former chief executive, and the current chief executive of defendant, holding that defendant lacked possession, custody, or control over the devices within the meaning of Rule 34. The court found no evidence that the phones were employer-issued, that defendant had any contractual or policy-based right to seize them, or that it possessed a practical ability to obtain the messages on demand. Because discovery had closed eighteen months prior to plaintiff filing its motion and as plaintiff had long been aware of the potential relevance of the texts (yet neglected to serve nonparty subpoenas for the information), the court deemed the motion untimely and concluded that reopening discovery would disrupt the existing case schedule, prejudice the defendant, and delay trial.

## TIJERINO V. SPOTIFY USA INC.

**2025 WL 1866057 (E.D. La. July 7, 2025)**

#AI; #Meet-and-Confer; #Cooperation

In this case asserting patent infringement claims, United States Magistrate Judge Donna Phillips Currault considered whether artificial intelligence could function as a surrogate during negotiations over unsatisfactory discovery responses. Plaintiff had moved to compel further discovery responses from defendant, maintaining that defendant's responses were insufficient. Defendant argued that plaintiff failed to meet and confer in good faith as required by Rule 37(a)(1). To support its argument, defendant spotlighted plaintiff's use of "an artificial intelligence program" to formulate his discussion points during the meet and confer conference, along with the problems it created. In its opposition brief, defendant explained that plaintiff used AI "to generate talking points on-the-fly during the call." With plaintiff's views "shift[ing] each time the AI program generated a new set of talking points," defendant had "difficulty understanding his position." The court was outraged, holding that plaintiff "did not confer in good faith as he was not prepared for the conference, choosing to outsource his positions to artificial intelligence."

Although the motion was denied without prejudice, the court emphasized that plaintiff could only refile his motion "*after* he has in *good faith* conferred or attempted to confer with the Defendant." (emphasis in original).

## TAYLOR V. GOOGLE LLC

**2024 WL 4947270 (N.D. Cal. Dec. 3, 2024)**

#Privilege; #Preservation; #Search; #Chat; #Discovery-on-Discovery

In this class action, plaintiff sought to compel defendant to conduct searches using terms related to spoliation and "fake privilege" among the defendant's chat messages and to disclose details concerning its legal hold preservation steps. In response, defendant argued that the requests were overly broad and unsupported by the record. United States Magistrate Judge Virginia DeMarchi ultimately agreed with defendant, finding that the plaintiff had not shown a specific deficiency in the defendant's document production. Regarding plaintiffs' request that defendant be required to use "spoliation-related" search terms, the court held that plaintiffs had not shown that any particular custodian used chat messages to communicate about issues relevant to the litigation or that any category of information was missing from the defendant's production, both of which threshold issues would be required before such an order could be warranted. Regarding the issue of "fake privilege," the court found this request to be premature as defendant had not asserted any privilege claims so far, and the parties had agreed to defer an exchange of privilege logs until after the close of discovery.

## TREMBLAY V. OPENAI, INC.

**2025 WL 635335 (N.D. Cal. Feb. 27, 2025)**

#Search; #Search-Terms; #PC&C; #Legal-Right

In this action for copyright infringement by authors who alleged defendant unlawfully used copyrighted information to train an artificial intelligence system,

United States Magistrate Judge Robert Illman addressed several discovery disputes. Most notably, the court denied plaintiffs' request that defendant be ordered to use certain additional search terms it selected to search for additional responsive ESI. The court found plaintiffs had failed to show any deficiency or prejudice in defendant's existing search terms and that plaintiffs' proposed terms were overly broad and produced a burdensome number of hits. Next, the court ordered plaintiffs to either produce or certify the absence of relevant documents from their agents, assistants, and other entities that worked on their behalf, finding that plaintiffs had a legal right to obtain such documents. However, the court denied defendant's request to compel plaintiffs to produce documents from their publishers that were beyond the scope of their contractual rights, as plaintiffs had no legal right to obtain them. The court suggested defendant directly subpoena the publishers if it wished to obtain further documents.

## IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

**2025 WL 1554332 (N.D. Cal. June 2, 2025)**

#Social-Media; #Rule34; #Scope-of-Discovery; #Validation

United States Magistrate Judge Lisa Cisneros issued an order addressing Uber's requests for certain social media accounts and posting information from the bellwether plaintiffs. First, the court agreed with Uber that plaintiffs must produce the requested information, reasoning that "[s]ocial media content may be relevant to a range of issues in these cases." In so doing, Judge Cisneros rejected plaintiffs' request that they be permitted to identify social media accounts they created rather than those they used. However, the court limited the scope of Uber's requests to two years (not five) before the respective incidents giving rise to plaintiffs' claims and narrowed production to the social media accounts Uber specifically identified. Next, Judge Cisneros ordered the parties to negotiate regarding the nature and extent of the relevant social media content. While the

requests were overly broad, the court reasoned that plaintiffs' proposed responses would be too limited in nature. Citing the Sedona Conference Primer on Crafting eDiscovery Requests with "Reasonable Particularity," Judge Cisneros directed Uber to seek reasonably particularized requests from the bellwether plaintiffs consistent with Rule 34. She also ordered plaintiffs to "produce social media communications and documents that depict or describe the topics that are determined to be relevant to [their] case." Finally, Judge Cisneros established a validation process that allowed Uber to audit plaintiffs' counsel's evaluation of responsiveness. That process would permit Uber to review samples of plaintiffs' social media activity, learn which documents were designated responsive, and negotiate with plaintiffs over documents regarding whose status they disagreed.

## IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

**2025 WL 1775370 (N.D. Cal. June 25, 2025)**

#Privacy; #Scope-of-Discovery; #Motion-to-Compel

Plaintiffs sought judicial relief to obtain in discovery the identities of Uber riders who previously complained about sexual misconduct by drivers now accused in the current litigation. Uber resisted discovery, arguing that such information "unduly infringes the privacy of the prior complainants." While acknowledging that disclosing the identities of sexual assault victims involves significantly greater privacy concerns than typical class action cases and "is a meaningful privacy intrusion," United States Magistrate Judge Lisa Cisneros held that those privacy considerations did not outweigh the need for discovery of such information. In so doing, Judge Cisneros distinguished this case from another lawsuit (**Doe v. Uber,** Dkt. No. 97 (N.D. Cal. Aug. 11, 2021)) where the court denied a request for similar discovery. Unlike that case, where Uber had already banned the driver after complaints, Judge Cisneros observed that plaintiffs' argument in the instant litigation is that "Uber unreasonably failed to take that

same action in response to the prior complaints" and that the identities of the former complainants were relevant to that issue. While granting plaintiffs' relief, Judge Cisneros imposed several measures to protect the prior complainants against "undue exposure or harassment."

## UNITED ASSOCIATION NATIONAL PENSION FUND V. CARVANA CO

**2025 WL 2419953 (D. Ariz. Aug. 21, 2025)**

#Hyperlinked-Documents; #Scope-of-Discovery; #Discovery-Process

In this shareholder derivative lawsuit, the parties asked the court to resolve a dispute concerning the parties' discovery plan and ESI protocol. The dispute concerned whether the defendant would be required to collect and produce "versions of hyperlinked documents contemporaneous to emails that were sent during the relevant period." The defendant used Google Workspace for its email and document collaboration, and averred that the "native tools" available permitted it to produce only "the current versions of those documents that may differ from what the parties to the emails saw at the time because of edits made over the course of the ensuing months and years." The plaintiffs proposed that defendant should use a specific tool—"Forensic Email Collector" ("FEC")—to collect emails and attachments, apparently on the assertion that this would solve the issue. Defendant objected, claiming that use of the tool "would cause it to collect inaccurate documents; that those documents would be incapable of authentication and without evidentiary value; and that such efforts would be unnecessary, unduly burdensome, and disproportionate to the case's needs." United States Magistrate Judge John Boyle found that, while "the collection of hyperlinked documents existing as they did at the time of the email presents challenges," the defendant could not be "excuse[d] . . . from any efforts to produce contemporaneous hyperlinked documents outright simply because they elected to use a suite

of cloud-based web applications that would make that process difficult." The court reasoned that the parties had agreed to "work diligently and collaboratively" on the scope of discovery of hyperlinked documents in their joint ESI Order—which the court interpreted as a requirement to "compromise" to find a solution. The court ordered the defendant to test the functionality of the FEC tool or an alternative approach against the collections of 2 custodians of the plaintiffs' choosing, requiring the defendant within approximately 100 days to produce the version of any linked document "as closely contemporaneous to, but preceding, the email communication [it was linked in] as is feasible." The court lastly invited the parties to brief additional discovery of linked documents "[i]f this limited test is successful in producing point-in-time hyperlinked documents of evidentiary value without undue burden or expense."

## UNITED STATES V. NOVO NORDISK, INC.

**2025 WL 1696881 (W.D. Wash. June 17, 2025)**

#Spoliation; #Sanctions; #Inherent-Authority; #Preservation; #Jury-Instruction

In this multi-plaintiff False Claims Act suit stemming from allegations of illegal promotion of hemophilia medication, United States District Judge Benjamin Settle granted defendant's motion for spoliation relief after finding that plaintiff Washington State ("State") failed to preserve records from the State's Health Care Authority concerning the medical necessity of prescriptions of the medication. The court determined that the State's duty to preserve arose no later than 2014 when privilege logs created in anticipation of litigation showed the State knew or should have known of the material's relevance. Despite this obligation, the State waited years to issue a meaningful litigation hold and never ensured that key custodians or working groups retained their files. Concluding that the missing documents almost certainly existed and likely contained contemporaneous clinical justifications for payments for the medication, the court inferred that their loss preju-

diced defendant's ability to demonstrate medical necessity, an issue central to causation, materiality, and damages. Although the court characterized the State's conduct as negligent rather than intentional, it found the prejudice to defendant to be so severe as to warrant a permissive adverse inference jury instruction at trial, noting that "[t]he Court may in reviewing the parties' motions for summary judgment consider this inference as well."

# URIEL PHARMACY HEALTH & WELFARE PLAN V. ADVOCATE AURORA HEALTH, INC.

**348 F.R.D. 329 (E.D. Wis. 2025)**

#Rule45; #Search; #Sedona-Principle-Six

In response to several discovery motions filed by various parties in this antitrust litigation, the court (among other things) denied defendant's motion to compel a nonparty (ProHealth) to produce additional documents responsive to its subpoena. In support of its motion, defendant argued that ProHealth's ESI production was incomplete, that it should have run defendant's search terms, and then produced responsive information after reviewing the hit documents. ProHealth objected to defendant's search terms as being overly broad and resulting in too many responsive hit documents and instead produced relevant documents that hit on its search terms. United States District Judge Lynn Adelman sided with ProHealth, finding (based on metrics ProHealth provided after reviewing sample documents taken from defendant's search term hits) that the cost of reviewing defendant's hit documents would be excessive under the circumstances. The court directed the parties to further meet and confer regarding ProHealth's production of responsive ESI for certain of defendant's requests. While defendant could renew its discovery motion, the court cautioned defendant that it would presume (pursuant to Sedona Principle 6) that ProHealth's search methods were reasonable unless defendant showed otherwise.

# WARNER V. GILBARCO, INC.

**2025 WL 3047881 (E.D. Mich. Oct. 30, 2025)**

#Protective-Order; #AI

In this employment discrimination action, United States Magistrate Judge Anthony Patti resolved several discovery disputes between the parties, including by granting the plaintiff's request for an order compelling the defendants to produced "full responses" to plaintiff's discovery responses. The plaintiff had specifically requested several categories of documents ("comparator personnel files, HR investigation files, training manuals, termination memos, internal communications, and related materials") that the defendants had had not produced, including, in particular, certain files relating to specific employees that the defendant refused to produce out of concern "that the information will be uploaded to an AI platform." The court therefore sua sponte ordered that the protective order in place in the litigation should be "modified to reflect that any documents marked confidential shall not be uploaded onto any AI platform." With this protection in place, the court ordered the defendant to produce all outstanding documents within 7 business days.

# WE THE PROTESTERS, INC. V. SINYANGWE

**348 F.R.D. 175 (S.D.N.Y. 2024)**

#Text-Messages; #Relevance-Redactions; #Motion-to-Compel; #Rule26; #Protective-Order

The parties in this litigation had agreed to review same-day text message chains where any text hit on any of the search terms. The plaintiffs, though, interpreted this agreement to apply only to responsive messages within a same-day text chain and, as such, redacted messages they deemed irrelevant or nonresponsive; the defendants did not redact for responsiveness. Upon receipt of the plaintiffs' production, the defendants moved to compel production of unredacted versions, arguing such unilateral redactions were improper. United States Magistrate Judge Gary Stein acknowledged the unique challenges

posed by text messages, especially in the context of document discovery under Federal Rule of Civil Procedure 34 and what's considered a "document" under the rule. In addition, the court highlighted that federal courts follow different approaches in handling text messages in discovery. Ultimately, the court followed the "leading case" in its district, **Al Thani v. Hanke**, which applied to text messages the general restriction against "redacting unrelated, non-privileged information from an otherwise responsive document." Moreover, **Al Thani** directly holds that parties may not unilaterally redact for reasons other than privilege. And, while emphasizing that parties can – and should – enter into agreements on handling text messages, the court here found that the parties' agreement was "less than complete" because it did not explicitly address responsiveness redactions. Thus, the court determined that absent either judicial permission or a clear, explicit agreement between the parties permitting such redactions, the plaintiffs' responsiveness redactions were improper.

## WILLMORE V. SAVVAS LEARNING CO. LLC

**2024 WL 4869426 (D. Kan. Nov. 22, 2024)**

#Preservation; #Duty-to-Preserve; #Sanctions; #Spoliation

In this action for wrongful termination, plaintiff sought spoliation sanctions under Federal Rule of Civil Procedure 37(e) for defendant's deletion of plaintiff's email account, files, and company-owned devices. Plaintiff was terminated by defendant on May 18, 2021; thereafter, defendant followed its usual practices for separated employees, wiping her computer on or around July 15 and deleting her Google email and Drive on July 23, although these were recoverable from Google until August 12. On August 17, defendant received demand and preservation letters from plaintiff's counsel. As evidence defendant anticipated a legal claim, plaintiff argued defendant reasonably anticipated litigation as of the date of her termination and pointed to entries on defendant's privilege log signifying communications about her

between the head of HR and in-house counsel prior to her termination. United States Magistrate Judge Angel Mitchell concluded that the duty to preserve arose on August 17 and found "no authority" for the proposition an employer is on notice of a claim every time it terminates an employee. In addition, the court reasoned that routine involvement of legal personnel on such matters only signifies awareness of the "mere possibility" of a claim and not awareness that litigation was imminent.

## YOUNG V. SALESFORCE, INC.

**2025 WL 1800149 (N.D. Cal. June 30, 2025)**

#Proportionality; #Rule26; #Hyperlinked-Documents; #Source-Code

In this consumer privacy putative class action, plaintiffs allege that defendant's software product "Chat," which is integrated into websites by its clients to facilitate chat interactions with their consumers, unlawfully collects consumer personally identifiable information. Plaintiffs moved to compel defendant to produce the source code for Chat. United States Magistrate Judge Laurel Beeler denied plaintiffs' motion, finding the request was disproportionate to the needs of the case. The court explained that the core dispute concerned how Chat functions, not the details of the underlying code, and that defendant had already provided architectural documents and agreed to Rule 30(b)(6) testimony capable of addressing that issue without exposing sensitive proprietary material. Disclosure of the entire code base, the court concluded, would impose an undue burden and competitive risk that outweighed the likely benefit. Separately, the court also addressed the parties' dispute as to the production of "hyperlinked documents." Defendant sought to produce only a limited number of relevant documents identified via links in documents it produced, while plaintiffs requested production of all hyperlinked documents, even if publicly available. Finding a middle ground, the court ordered defendant to produce all hyperlinked documents that relate to Chat's functionality or architecture if not already publicly available.

## ZARFATI V. ARTSANA USA, INC.

**2025 WL 50373 (S.D. Fla. Jan. 8, 2025)**

#Sedona-Principle-Six; #Search; #ESI-Protocols;
#Cooperation; #Email-Threading

In this proposed product liability class action, United States Magistrate Judge Marty Fulgueira Elfenbein entered plaintiffs' proposed ESI Protocol over the objection of defendant. Plaintiffs' proposed Protocol required defendant to disclose its non-custodial sources, document custodians, and proposed search methodology, while providing plaintiffs with the opportunity to nominate additional sources or custodians and to "work collaboratively" in good faith to revise the proposed search methodology (including technologies and "keywords"). It also prohibited defendant from using email threading to remove lesser included emails from its review population. Relying on Sedona Conference Principle 6 for the proposition that it should be permitted to employ the procedures and methodologies that it deems most appropriate, defendant objected to plaintiffs' Protocol as being "one-sided" and giving plaintiffs "carte blanche to decide the manner in which [defendant] searches for and gathers discoverable ESI." The court was not persuaded, however, finding "a producing party is best situated to determine its own search and collection methods so long as they are reasonable." The court found defendant's Protocol "does not address how it would conduct a reasonable inquiry" and therefore entered plaintiffs' protocol.

# Index of Topical Tags

**A**

AI  5, 23, 30, 31, 37, 40

**C**

Chat  13, 32, 37
Claw-Back  33
Collaboration-Tools  22, 28, 31
Comity  2, 9
Common-Interest  11
Cooperation  7, 17, 37
Criminal-Law  18
Cross-Border  2, 9, 29
Curative-Measures 3, 4, 5, 13, 19, 22, 27, 34, 35

**D**

Data-Security  9
Discovery-on-Discovery  1, 20, 26, 32, 37
Discovery-Process  8, 13, 20, 27, 34, 35
Duty-of-Candor  17
Duty-to-Preserve  9, 20, 22, 25, 28, 41
Duty-to-Supervise  12, 18, 25

**E**

Email  9, 10, 21, 28, 33, 42
Email-Threading  10, 42
Ephemeral-Messaging  6, 26, 32
ESI-Protocols  23, 36, 42
Ethics  23, 35
Expert-Testimony  30

**F**

Fake-Citations  23
Forensic-Exam  26, 34
Form-of-Production  12, 24, 25, 33

**H**

Hyperlinked-Documents  39, 41

**I**

In-Camera  8, 14, 21
Inherent-Authority  25, 39
Intent-to-Deprive  3, 4, 5, 9, 10, 13, 24, 32, 36

**J**

Jury  27
Jury-Instruction  3, 4, 5, 10, 13, 24, 34, 36, 39

**L**

Legal-Hold  11, 21
Legal-Right  1, 14, 29, 37

**M**

Meet-and-Confer  7, 37
Metadata  33
Microsoft365  8, 14, 20, 30
Motion-to-Compel  1, 2, 3, 12, 18, 20, 21, 23, 24, 26, 28, 31, 34, 36, 38, 40
Motion-to-Quash  18

**P**

PC&C  1, 14, 21, 29, 36, 37
Practical-Ability  1, 36
Prejudice 3, 4, 5, 9, 13, 19, 27, 30, 34
Preservation 1, 6, 9, 11, 20, 22, 24, 25, 28, 30, 31, 34, 35, 36, 37, 39, 41
Primary-Purpose  15, 31
Privacy  2, 16, 24, 26, 28, 38
Privilege  2, 3, 5, 6, 7, 8, 9, 11, 14, 15, 16, 18, 19, 20, 21, 23, 31, 33, 37
Privilege-Log  3, 18, 19, 23
Proportionality  2, 6, 7, 11, 16, 17, 18, 23, 26, 27, 28, 29, 31, 32, 41
Protective-Order 3, 7, 8, 14, 22, 28, 33, 40

**R**

Reasonable-Inquiry  8, 12, 18, 25, 30, 34
Rule26  12, 16, 18, 23, 25, 26, 27, 28, 40, 41
Rule34  1, 25, 27, 29, 33, 34, 38
Rule35  27
Rule37e  3, 4, 5, 6, 9, 10, 13, 19, 20, 21, 22, 24, 25, 27, 28, 30, 32, 34, 35, 36
Rule45  2, 6, 11, 16, 17, 18, 36, 40
Rule502b  44
Rule502d  7, 8, 9, 14, 33

**S**

Sanctions  3, 4, 5, 9, 10, 13, 14, 17, 19, 20, 21, 22, 24, 25, 27, 28, 30, 34, 35, 36, 39, 41
Scope-of-Discovery  1, 6, 11, 16, 17, 26, 29, 31, 35, 38, 39
Search  8, 12, 13, 18, 26, 28, 29, 30, 32, 37, 40, 42
Search-Terms  28, 37
Section1782  29
Sedona-Principle-Six  7, 13, 40, 42
Self-Collection  13, 18, 26

Signal  26
Slack  31
Social-Media  38
Source-Code  41
Spoliation  1, 3, 4, 5, 6, 9, 10, 11, 13, 19, 20, 21, 22, 24, 25, 27,
    28, 30, 31, 32, 34, 35, 36, 39, 41

## T

TAR  13, 34
Teams  13, 32
Terminating-Sanctions  32
Text-Messages  5, 6, 19, 24, 26, 35, 36, 40
Transparency 12, 13

## V

Validation  28, 38

## W

Waiver  5, 8, 14, 16, 19, 20, 33
WhatsApp  6
Work-Product  2, 5, 6, 15, 18, 20, 21, 33



## ABOUT WINSTON & STRAWN

Winston & Strawn LLP is a global law firm with 975+ attorneys across 14 offices in Brussels, Charlotte, Chicago, Dallas, Houston, London, Los Angeles, Miami, New York, Paris, San Francisco, São Paulo, Silicon Valley, and Washington, D.C. Additionally, the firm has significant resources devoted to clients and matters in Africa, the Middle East, and Latin America. The exceptional depth and geographic reach of our resources enable the firm to manage virtually every type of business-related legal issue. We serve the needs of enterprises of all types and sizes, in both the private and the public sectors. We understand that clients are looking for value beyond legal talent. We take time to learn about our clients' organizations and their business objectives. And we leverage technology and collaborate seamlessly to respond quickly and effectively to our clients' needs.

Please visit **winston.com** for additional information about our services, our experience, and the industries we serve.

Attorney advertising materials. Winston & Strawn is a global law firm operating through various separate and distinct legal entities.