LATHAM & WATKINS LLP
Andrew B. Clubok (*pro hac vice*)
J. Christian Word (*pro hac vice*)
Susan E. Engel (*pro hac vice*)
Matthew J. Peters (*pro hac vice)*
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Email: andrew.clubok@lw.com
Email: christian.word@lw.com
Email: susan.engel@lw.com
Email: matthew.peters@lw.com

Jeff G. Hammel (*pro hac vice*)
Kalana Kariyawasam (*pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: jeff.hammel@lw.com
Email: kalana.kariyawasam@lw.com

Meryn C. Grant (*pro hac vice*)
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: (424) 653-5500
Email: meryn.grant@lw.com

[*Additional counsel on signature page*]

*Counsel for Defendants Carvana Co., Ernest Garcia III, Mark Jenkins, Stephen Palmer, Michael Maroone, Neha Parikh, Ira Platt, and Greg Sullivan*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re Carvana Co. Securities Litigation | CASE NO. 2:22-cv-02126-PHX-MTL |
| | **DEFENDANTS' OPPOSITION TO LEAD PLAINTIFFS' MOTION TO MODIFY THE SCHEDULING ORDER** |
| | **Oral Argument: December 22, 2025 at 3:45 p.m.** |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................... 1

II.   LEGAL STANDARD .............................................................................................. 5

III.  ARGUMENT ........................................................................................................... 5

     A.    Defendants Have Been Diligent; Plaintiffs Have Not ................................. 5

           1.    Carvana Defendants Have Never "Stonewalled" Plaintiffs ................................................................................. 5

           2.    Plaintiffs Delayed Requesting the Potential New Custodians ................................................................................ 6

           3.    Carvana Defendants Substantially Completed Discovery for the Original Custodians ........................................... 7

           4.    Plaintiffs' Assertions to the Contrary Are Meritless ........................ 9

     B.    There is No Justification for a Four-Month Extension on All Deadlines ................................................................................................. 11

           1.    Reassessing the Schedule Now is Premature ................................. 11

           2.    Plaintiffs Have the Documents Necessary to Start Depositions ..................................................................................... 12

           3.    Plaintiffs Have No Basis to Extend Class Certification Briefing ......................................................................................... 12

                i.    Internal Documents Cannot Impact Class Certification ......................................................................... 13

                ii.   Plaintiffs' Counsel Routinely Moves To Certify A Class Before Substantial Completion And Without Citation to Internal Documents ........................... 15

                iii.  Plaintiffs' Proposed Extension is Inconsistent with Standard Practice in Federal Securities Class Actions ................................................................... 16

     C.    Modifying the Schedule Would Prejudice Defendants ............................. 17

IV.  CONCLUSION ...................................................................................................... 17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Acosta v. Wellfleet Commc'ns, LLC,*
2018 WL 664779 (D. Nev. Feb. 1, 2018) ........................................................................ 9

*Basic Inc. v. Levinson,*
485 U.S. 224 (1988) ........................................................................................................ 13

*Borteanu v. Nikola Corp.,*
348 F.R.D. 239 (D. Ariz. 2025) ...................................................................................... 13

*Erica. P. John Fund, Inc. v. Halliburton Co.,*
563 U.S. 804 (2011) ........................................................................................................ 14

*Goldman Sachs Group, Inc. v. Arkansas Teacher Ret. Sys.,*
594 U.S. 113 (2021) ........................................................................................................ 14

*Halliburton Co. v. Erica P. John Fund, Inc.,*
573 U.S. 258 (2014) .................................................................................................. 13, 14

*Hsu v. Puma Biotechnology, Inc.,*
No. 8:15-cv-00865, Dkt. 88 (C.D. Cal. Dec. 21, 2016) .................................................. 16

*In re Apple Inc. Sec. Litig.,*
No. 4:19-cv-02033-YGR, Dkt. 128 (N.D. Cal. Dec. 22, 2020) ...................................... 16

*In re Banc of Cal. Sec. Litig.,*
No. 8:17-cv-00118-DMG-DGM, Dkt. 79 (C.D. Cal. Oct. 16, 2017) ........................... 16

*In re Honest Co. Sec. Litig.,*
2023 WL 3190506 (C.D. Cal. May 1, 2023) ................................................................... 14

*Johnson v. Mammoth Recreations, Inc.,*
975 F.2d 604 (9th Cir. 1992) ...................................................................................... 5, 17

*La Fleur v. Med. Mgmt. Int'l,*
2013 WL 12149179 (C.D. Cal. April 11, 2013) .............................................................. 15

*Long v. Ford Motor Co.,*
2009 WL 903404 (D. Ariz. Apr. 1, 2009) ........................................................................ 5

*Omega Hosp., LLC v. United Healthcare of La., Inc.,*
566 F. Supp. 3d 543 (M.D. La. 2021)............................................................................... 15

*Treppel v. Biovail Corp.*,
   233 F.R.D. 363 (S.D.N.Y. 2006) ............................................................................... 9

*Vignola v. Fat Brands, Inc.*,
   2020 WL 1934976 (C.D. Cal. Mar. 13, 2020)...................................................... 14, 15

*Williams v. Winget*,
   2025 WL 870963 (D. Ariz. Mar. 19, 2025)................................................................ 7

**STATUTES**

15 U.S.C. § 77k(a)................................................................................................. 15

**RULES**

Fed. R. Civ. P.
   16(b)(4) ...................................................................................................... 5
   23(c)(1) .................................................................................................. 4, 17

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

In response to Lead Plaintiffs' Motion to Modify the Scheduling Order (Dkt. 217, "Motion" or "Mot."), Defendants Carvana Co. ("Carvana"), Ernest Garcia III ("Garcia Jr."), Mark Jenkins, Stephen Palmer, Michael Maroone, Neha Parikh, Ira Platt, and Greg Sullivan (collectively, "Carvana Defendants"), Defendant Ernest Garcia II ("Garcia Sr."), and Defendants Citigroup Global Markets Inc. and J.P. Morgan Securities LLC ("Underwriter Defendants," and collectively with Carvana Defendants and Garcia Sr., "Defendants"), file this Opposition.

## I.  INTRODUCTION[1]

Plaintiffs spend the majority of their Motion rehashing discovery disputes and manufacturing accusations of delay and withholding.  Those accusations do not withstand scrutiny and ignore the reality of the overall status of discovery.  As such there is no good cause to extend discovery.

Defendants met their substantial completion deadline for the custodians initially agreed to by the parties.  Plaintiffs do not suggest otherwise for Garcia Sr. or the Underwriter Defendants.  And Carvana Defendants have diligently produced discovery, collecting millions of documents from 18 custodians, employing 155 search terms that captured nearly 900,000 documents, and producing nearly 70,000 documents (over 350,000 pages).  Plaintiffs speculate that they must still be missing documents, claiming they have received "few documents . . . regarding the broader fraudulent scheme."  But that is because *there is no scheme*, and not because Carvana Defendants are withholding them.  Carvana Defendants have analyzed the documents not captured by search terms (the "null set") to ensure the sufficiency of their productions.  The analysis confirms that only an estimated 0.651% of the documents not containing a search term are *potentially* responsive.  Nor is there any truth to Plaintiffs' suggestion that Carvana Defendants "stonewalled" them with respect to discovery following Magistrate Boyle's ruling on the scope of the case.  Most custodians—like Carvana's CFO, COO, or head of Investor

---

[1] Unless otherwise stated, citations are omitted and emphasis is added; citations to Defs.' Ex.__ are to the exhibits to the Declaration of Matthew Peters ("Peters Decl."); citations to "Pls.' Ex. __ are to the exhibits to the Declaration of Erika L. Oliver (Dkt. 218); and page citations refer to internal pagination.

Relations—had insight into title and registration *and also* were the individuals with the best insight into the broader subject matter of the case following the scope ruling.  Their documents were substantially produced.  Discovery is not deficient; Plaintiffs are simply dissatisfied.

On the other hand, Plaintiffs have not been diligent.  Their extension request is based on Magistrate Boyle's November 19 order requiring that Carvana Defendants produce, by early April 2026, documents from seven additional custodians of Plaintiffs' choosing. Plaintiffs told Magistrate Boyle at oral argument that they could not possibly propose those new custodians on their own and insisted that Carvana Defendants supply names from 12 of Carvana's purportedly most relevant "cost centers" for Plaintiffs to consider. Accordingly, on December 2, Carvana Defendants identified for Plaintiffs 15 individuals from the 12 cost centers.  Yet when Plaintiffs actually selected the seven new custodians on December 9, *not one* was among the 15 individuals Carvana Defendants identified. Indeed, the custodians Plaintiffs ultimately identified were *not* associated with *any* of the 12 cost centers.  Instead, Plaintiffs demanded documents from seven custodians they had been aware of *for months*.  The majority of the individuals Plaintiffs requested appeared in Plaintiffs' initial disclosures from February 2025.  For the remaining individuals, Plaintiffs have been aware of them since at least September 12, 2025, when Carvana Defendants produced employee "directories" (for which Plaintiffs did not demand expedited production until August 29).  Plaintiffs' delay in proposing these new custodians is particularly egregious considering that, more than two months ago, Plaintiffs rejected without explanation Carvana Defendants' compromise offer of seven additional custodians—the same number of custodians that Magistrate Boyle ultimately ordered. There simply is no reason for Plaintiffs' delay in identifying the seven potential new custodians (the "New Custodians," and the custodians subject to the December 8 substantial completion deadline, the "Original Custodians").

Setting aside Plaintiffs' inexplicable delay in requesting the potential New Custodians, the fact that document discovery is outstanding for those individuals does not

justify tossing aside the entire case schedule.

As an initial matter, Plaintiffs' request for four additional months was made without the benefit of any fulsome meet-and-confer. Plaintiffs refused to work with Carvana Defendants to understand the time necessary to produce documents from the New Custodians so the parties could collaborate on a reasonable extension. At the time of filing, Carvana Defendants are working to evaluate the time necessary to produce documents for Plaintiffs' proposed New Custodians—which Plaintiffs identified an hour before filing their Motion. Carvana Defendants anticipate that it will take far less than four months.

In all events, there is no reason to delay the entire case schedule when production is substantially complete for the 18 Original Custodians, the originally requested custodians from Underwriter Defendants, and Garcia Sr. Plaintiffs' purported need for more time to take depositions does not hold up. Plaintiffs have not noticed or taken a single deposition. Plaintiffs claim they cannot start depositions until they have all of the New Custodians' documents. That makes no sense. There is no reason they cannot start deposing everybody else from whom they have substantially received documents. And Plaintiffs' speculation that they are missing documents from the Original Custodians is based upon the incorrect assumption that the alleged scheme actually existed and related documents are now being withheld. Not so. Plaintiffs' statistics evidencing large volumes of documents related to title and registration relative to the alleged "scheme" topics are exactly the statistics one would expect to see in the absence of a fraudulent scheme. Plaintiffs still have nearly six months of fact discovery remaining. They thus have nearly eight weeks to conduct depositions of the up to seven New Custodians even if they start those after April 6. That is plenty of time. If Plaintiffs act diligently and still find they require more time for depositions at a later date, an extension can be assessed at that time.

Similarly, Plaintiffs' contention that they cannot brief class certification before they have more internal documents, including from lower level Carvana employees, is absurd. Those documents have no bearing on class-certification issues here. Class certification will focus on arguments around whether Carvana's stock price was impacted by the alleged

misrepresentations (for Section 10 claims), or whether potential Section 11 class members had varied knowledge of the allegedly omitted facts.  Indeed, Plaintiffs' Lead Counsel ("Plaintiffs' Counsel") has argued, when opposing schedule modifications in another case, that remaining document productions could not "have any bearing on class certification . . . when Lead Plaintiff is invoking the fraud-on-the-market presumption to prove reliance.  The fundamental premise underlying the presumption is that an investor presumptively relies on a misrepresentation so long as it was *reflected in the market price*."   Lead Plaintiffs' Opp. To Defendants' Motion for Extension of Pretrial Schedule, at 5–6, *Karinski v. Stamps.com, Inc.*, No. 2:19-cv-01828-MWF-SK, Dkt. 117 (C.D. Cal.  June 29, 2020).  Unsurprisingly, Defendants' review of Plaintiffs' Counsel's motions to certify a class (and supporting expert reports) in Ninth Circuit courts over the past decade did not turn up a single citation to an internal document, and in each case Lead Counsel moved months before the end of discovery.  And consistent with the requirement that a motion for class certification be heard "at an early practicable time," Fed. R. Civ. P. 23(c)(1), Plaintiffs' Counsel and courts across the Ninth Circuit regularly set schedules in securities cases placing class certification well before substantial completion.

The Court set a generous schedule for this case.  Accordingly, last February, Plaintiffs accepted the Court's admonition:  "I expect you to be diligent. . . . And barring some act of nature or your expert dies a week before the deposition and you're scrambling, I'm probably going to keep these deadlines and hold you to them."  Dkt. 129, Tr. of Feb. 25, 2025 Hr'g at 25:6-20.  Plaintiffs' Motion breaks their word.  And in the meantime, Plaintiffs' actions are imposing millions of dollars of costs upon the very investors Plaintiffs wish to represent.  For the reasons below, Defendants respectfully request that the Court deny Plaintiffs' Motion.  In the event that the Court deems an adjustment to the schedule necessary, Defendants respectfully submit as Appendix A to this Opposition a revision that keeps this case moving forward efficiently, especially prior to having more information regarding the New Custodian documents.

## II. LEGAL STANDARD

"The Deadlines Are Real." Dkt. 128 ("Scheduling Order") at 9. Federal Rule of Civil Procedure 16(b)(4) allows a schedule modification only with "good cause" and "the judge's consent." Good cause exists only if existing deadlines "'cannot reasonably be met despite the diligence of the party seeking the extension.'" *Long v. Ford Motor Co.*, 2009 WL 903404, at *2 (D. Ariz. Apr. 1, 2009) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)); *see also* Scheduling Order at 9 (parties must explain "why the extension is necessary"). "If the moving party was not diligent, then the inquiry should end." *Id.*; *see also* Scheduling Order at 9 (parties must explain "what they have done to date"). And "the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion" to modify a case schedule. *Johnson*, 975 F.2d at 609.

## III.    ARGUMENT

### A.    Defendants Have Been Diligent; Plaintiffs Have Not

#### 1.    Carvana Defendants Have Never "Stonewalled" Plaintiffs

Plaintiffs focus their Motion on the claim that Carvana Defendants "stonewalled" them in the course of discovery. *E.g.*, Mot. at 11. But this is untrue. Plaintiffs merely describe a basic truth of litigation: legitimate disagreement. For example, Plaintiffs accuse Carvana Defendants of weaponizing disagreement about the scope of the case as "a tactical blockade." Mot. at 7. In reality, Plaintiffs *agreed* to table disputes pending resolution of the scope issue, explaining to the Court that "the Parties ha[d] met and conferred telephonically multiple times in good faith in an effort to reach agreement on the search terms and custodians," and that "it would be more efficient to first resolve" the scope dispute and potentially preempt further motion practice. Joint Stip. Regarding Deadline to File Disc. Dispute Regarding Search Terms and Custodians (Dkt. 151), at 2. And as Magistrate Boyle recognized in the hearing on that very issue, both parties' views were "legitimate." Dkt. 172, Tr. of Proceedings, June 23, 2025, at 5:9-11. In other words, it was reasonable for Carvana Defendants to engage in discovery in line with the narrower

scope they legitimately believed in.

After Magistrate Boyle's July ruling on the scope of the case (Dkt. 173, the "Scope Ruling"), Carvana Defendants evaluated their initial 16 custodians—the vast majority of whom held roles that touched upon not only title and registration, but also upon the other subject matters of the alleged scheme, like Carvana's expansion, car-buying strategy, and arrangement with DriveTime. Dkt. 202 at 3. Carvana Defendants determined the initial custodians were largely the best people to address *every* falsity theory. Carvana Defendants thus determined their custodian list would be highly comprehensive with respect to the new scope of the case with the addition of two more individuals. *Id.* Further, just over a month after the Scope Ruling, Carvana Defendants proposed 28 strings of search terms designed to target the additional falsity theories. Aug. 7, 2025, Ltr. (Dkt. 202-7) at 1–2. Plaintiffs' own tome of exhibits establishes that Carvana Defendants were both diligent and prompt. *See, e.g.*, Pls.' Ex. 23 (Dkt. 220-3) at 28–68 (summarizing the parties' search term negotiations since March).

### 2.    Plaintiffs Delayed Requesting the Potential New Custodians

Plaintiffs have not displayed the diligence necessary to justify their requested extension. Plaintiffs refused, for months, to identify what set of custodians would satisfy them. Carvana Defendants offered seven additional custodians to Plaintiffs on October 2, 2025. Dkt. 202-8, at 1. Plaintiffs refused that offer, but provided no counter. In fact, they told Magistrate Boyle they could not possibly identify necessary custodians on their own, and needed Carvana Defendants to identify a "more fulsome group of individuals from where the parties would negotiate appropriate custodians." Dkt. 215, Tr. of Nov. 17, 2025 Hr'g at 4:17-6:20. It turns out that was all hogwash. In the hearing, Plaintiffs identified 12 cost centers they claimed "would be useful to have people from." *Id.* at 29:6-13. Pursuant to Magistrate Boyle's order, Carvana Defendants identified 15 managers from within those cost centers. Defs.' Ex. 2 at 2. But Plaintiffs' proposed New Custodians *do not include a single person from the list Defendants provided* in response to Magistrate Boyle's order. Nor do they include anyone associated with the 12 cost centers Plaintiffs

asserted were necessary. *Id.*; Peters Decl. ¶ 16. The majority of the New Custodians appeared on Plaintiffs' February 2025 initial disclosure list. Defs.' Ex. 1 at 5–7. Why did Plaintiffs sit on those names for ten months before requesting their addition as new custodians? And why did Plaintiffs waste Carvana Defendants' and Magistrate Boyle's time with a demand to identify senior individuals from 12 cost centers?

For the remainder of the names, it is unclear how Plaintiffs came up with them. Plaintiffs may point to the "directories" produced on September 12, 2025. Mot. at 9. As an initial matter, Plaintiffs were not "diligent" in obtaining those directories. While the negotiated ESI Order contemplated expedited production of "organizational charts,"[2] it said nothing about directories. Dkt. 137 at 3. It was not until an August 29, 2025, meet-and-confer that Plaintiffs demanded expedited production of "directories." Peters Decl. ¶ 14. Carvana Defendants identified and produced those documents within two weeks. Mot. at 9. Even setting all that aside, Plaintiffs received the directories on September 12, 2025. They do not explain why they sat on that information for three months before requesting new custodians not on their initial disclosure list.

The bottom line is this: nothing Plaintiffs point to explains their decision to wait until December 9, to request the New Custodians. Plaintiffs had every opportunity to request the addition of these individuals as early as ten months sooner. Plaintiffs chose not to do that. Where the proponent of a Rule 16 motion "was not diligent, the inquiry should end." *Williams v. Winget*, 2025 WL 870963, at *1 (D. Ariz. Mar. 19, 2025) (Liburdi, J.).

### 3. Carvana Defendants Substantially Completed Discovery for the Original Custodians

Carvana Defendants' document productions span 18 custodians, nearly 70,000

---

[2] Plaintiffs reference organizational charts produced on September 12, 2025, and accuse Carvana Defendants of lying that they did not possess such charts. Mot. at 5–6, 9. Not so. In April 2025, Carvana Defendants accurately explained that Carvana does not maintain organizational charts. Pls.' Ex. 11 at 5. After review of hundreds of thousands of emails, Carvana Defendants identified a handful of emails containing small segments of largely draft organizational charts created on an ad hoc basis by individuals within the company. That is not what the ESI Order contemplated for expedited production. In any event, Plaintiffs have not proposed New Custodians based on those organizational charts, which undermines any contention that this contributed to Plaintiffs' delay.

documents, and over 350,000 pages of discovery. Peters Decl. ¶ 5. While "raw number[s]" alone do not establish substantial completion, Mot. at 13, Carvana Defendants have validated their processes and diligently ensured that substantial completion was met for the Original Custodians. For the reasons below, Plaintiffs' speculation that there are "a significant number of responsive documents" that remain to be produced is incorrect. *Contra id.*

Plaintiffs contend that Carvana Defendants have not met the substantial completion deadline for the 18 Original Custodians because the parties have not "finalized search terms." Mot. at 12–13.[3] Not so. It is true that Plaintiffs continually request more and more search terms that would require Carvana Defendants to sift through more and more mountains of irrelevant material. But that does not mean the search terms are not final or that substantial completion has not been met. Even if the Court were to order Carvana Defendants to add more search terms, that would not significantly change the number of documents that get produced to Plaintiffs.

Carvana Defendants' current search terms are the product of several months of negotiations in which Carvana Defendants consistently provided Plaintiffs with hit counts on their requested terms and proposed (and implemented) alternative search strings where Plaintiffs' are overbroad. *See, e.g.*, Pls.' Ex. 23 at 8–68. For example, one of Plaintiffs' proposed search strings contained the terms "stock*" and "share*" proximate to "up" or "down*." Pls.' Ex. 26 at 2. That returned hundreds of spam emails asking that recipients "Share now" and "Download the app," along with documents related to the stock market generally. *Id.* Carvana Defendants' counter-proposed terms related to *Carvana*'s stock price. *Id.* Those efforts resulted in identification of over 122,000 documents, over 3,000 of which were responsive and produced to Plaintiffs. *Id.*

Carvana Defendants have expanded their search terms five times. *Id.* at 1. Those expansions resulted in more than 500,000 documents joining Carvana Defendants' review

---

[3] Plaintiffs also request in a footnote that the Court "require all Parties to certify that they have completed the production of documents" in response to early requests for production by April 6, 2026. Mot. at 3 n.2. That is not a standard part of any discovery process, and Plaintiffs have not provided good cause for such a requirement.

population. *Id.*

Further, Carvana Defendants have directly assessed this issue by calculating the "elusion rate" for their search terms and the "null set"—*i.e.*, the set of documents not captured by search terms. Peters Decl. ¶ 6. After examining over 1,500 records in the null set, Carvana Defendants determined that only an estimated 0.651% of documents within that set are responsive. *Id.* In other words, one would now have to sift through more than 150 irrelevant documents to find even a single additional responsive document. "[T]here is no obligation on the part of a responding party to examine every scrap of paper in its potentially voluminous files." *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006). Carvana Defendants' obligation was to "conduct a diligent search, which involves developing a reasonably comprehensive search strategy." *Id.* That is exactly what Carvana Defendants have done.

### 4.    Plaintiffs' Assertions to the Contrary Are Meritless

Plaintiffs' Motion accuses Carvana Defendants of "a concerted effort to starve Plaintiffs of documents." Mot. at 8–9, 13–14. As explained below, Plaintiffs' contentions rely on misleading statistics in an attempt to rewrite history.

Plaintiffs' overarching complaint is that Carvana Defendants have produced "a paltry few documents . . . regarding the broader fraudulent scheme." *Id.* at 14. But the absence of such documents evidences only that Plaintiffs' allegations of a "scheme" lack merit—not that anything is missing. "A party cannot be compelled to produce documents that it insists do not exist." *Acosta v. Wellfleet Commc'ns, LLC*, 2018 WL 664779, at *7 (D. Nev. Feb. 1, 2018). Take, for example, the search string "low* w/2 standard*"—a term corresponding with the alleged scheme artifice, "Defendants Lower Carvana's Purchasing and Verification Standards." Am. Compl. at 41 (Dkt. 71). If a scheme to lower standards existed, then those search terms would turn up documents. But because there was no scheme, those terms resulted in relatively few produced documents. Peters Decl. ¶ 13.

Curiously, Plaintiffs also point to the *presence* of documents related to title and registration as evidence that other documents must be missing. Mot. at 13–14. Somehow,

they appear to believe Carvana Defendants' extensive production of records mentioning "title" or "registration" evinces a lack of other documents. That is illogical. It is also unsurprising that a lawsuit centering on a used car dealer would return large volumes of documents regarding title and registration—as here—even absent any actual scheme.

Relatedly, Plaintiffs argue they must be missing discovery because a large proportion of the documents they received associated with Ernest Garcia Jr. and Mark Jenkins contain the terms "title" or "registration." *Id.* As an initial matter, their numbers are misleading. Plaintiffs say Carvana Defendants produced only 1,521 *emails* for Garcia Jr. and 944 for Jenkins—573 and 624 when excluding emails mentioning "title" or "registration." *Id.* at 13. Plaintiffs' exclusion of all non-email documents, including email attachments, is disingenuous in light of their simultaneous exhortations that such documents are "paramount" in other disputes. *E.g.*, Dkt. 177 at 1. Carvana Defendants have produced 3,843 documents for Garcia Jr. and 8,048 from Jenkins—2,482 and 7,219 when excluding documents hitting "title" or "registration." Peters Decl. ¶ 11. A very different numerical story. But even looking just at Plaintiffs' numbers, their argument is nonsensical. Many documents in Carvana's files contain the words "title" or "registration"—it's a car dealer. Many of those same documents will *also* be relevant to the other subject areas of the alleged "scheme." And of course, the point remains that just because the documents are not what Plaintiffs want to see, that does not make discovery deficient. It also bears noting that looking beyond Plaintiffs cherry-picked examples of Garcia Jr. and Jenkins, other custodians had far smaller proportions of documents hitting on "title" or "registration. *Id.*

Plaintiffs also complain that they have received few documents from custodian Michael Grantham, one of two custodians Carvana Defendants added after the Scope Ruling. Mot. at 8–9. Again, they exclude non-email documents when writing "Carvana Defendants have produced just 237 total emails for Grantham." Mot. at 8. Carvana Defendants have produced over 4,000 documents totaling 6,000 pages from him. Peters Decl. ¶ 9. Plaintiffs' Motion also neglects to mention Brian Boyd, another custodian added

following the Scope Ruling.  From Boyd, Carvana Defendants have produced more than 2,000 documents exceeding 5,500 pages.  Peters Decl. ¶ 10.

Plaintiffs have already complained to Magistrate Boyle that they believe they have not received sufficient information related to "aspects of the scheme beyond title and registration." Dkt. 215, Tr. of Proceedings, Nov. 17, 2025, at 4:15-22; 5:19-24.  Magistrate Boyle, having reviewed the parties' discovery correspondence, rejected that contention. Carvana Defendants explained that the "current custodians" were absolutely *not* "exclusively relevant to the T&R." *Id.* at 22:16-23:12.  Magistrate Boyle responded:

> I agree with you.  From what I've seen from the search terms, and as you can tell, I've read through the letters.  I went through the attachments.  There's got to be maybe 100 pages here, I don't know.  So it does appear that this is certainly broader than T&R.  I just want to let you know, I tend to agree with you.

*Id.* at 23:17-20.

In sum, Plaintiffs have not set forth any legitimate basis for their assertion that they are missing documents from the Original Custodians.

**B.    There is No Justification for a Four-Month Extension on All Deadlines**

**1.    Reassessing the Schedule Now is Premature**

Plaintiffs' Motion is grounded in the assumption that document productions for the New Custodians will not be substantially complete until April 6, 2025.  *See, e.g.*, Mot. at 16.   That is uninformed speculation.   In a December 4, meet-and-confer, Carvana Defendants conveyed to Plaintiffs that they would work quickly to assess the potential New Custodians' document volumes, in an effort to commit to producing their documents well before April 6.  Peters Decl. ¶ 15.  To that end, Carvana Defendants requested that Plaintiffs expedite naming their requested custodians so that the parties could quickly work to agree on custodians, determine what document discovery remains, and come up with a reasonable schedule together.  *Id.*

Plaintiffs rejected those efforts, and stated that anything less than their desired four-month extension was a non-starter.  *Id.*  Plaintiffs waited until 9:31 p.m. MST (8:31 p.m. PST) on December 9, to name their requested custodians.  Defs.' Ex. 2 at 1. Plaintiffs filed

this Motion just over an hour later.  It does not make sense to extend the schedule before the parties know when productions for the New Custodians will be complete.  Carvana Defendants are working to process and examine the potential document volumes associated with the requested New Custodians.

**2.    Plaintiffs Have the Documents Necessary to Start Depositions**

As explained above, Plaintiffs' speculation that Carvana Defendants did not meet the substantial completion deadline for the Original Custodians is incorrect.  Document productions for the Original Custodians are substantially complete and there is no reason why Plaintiffs cannot move this case forward in discovery.

There is no basis to believe the New Custodians will have unique documents involving the Original Custodians.  After all, to the extent any New Custodian is on the same email as an Original Custodian, that email would already have been examined.  Nor do Plaintiffs substantiate their implication that "lower-level custodian[]" documents are necessary to conduct depositions.  *See* Mot. at 14–15.  How could any unique documents from, *e.g.*, Plaintiffs' requested New Custodian Cory Renner, an Associate Director in FP&A (multiple levels below the C-Suite), impact a deposition of any of Carvana's Board of Directors?

Plaintiffs do not explain why they cannot move forward with deposing the Original Custodians, Underwriter Defendants' custodians, and Garcia Sr.  They can and they should; they have nearly six months to do so.  Carvana Defendants anticipate substantially completing productions for the New Custodians far before April 6, but even from that date, Plaintiffs would have eight weeks to depose them leading up to May 29.

**3.    Plaintiffs Have No Basis to Extend Class Certification Briefing**

Plaintiffs argue that abandoning the scheduling order is necessary because Plaintiffs cannot "prepare expert discovery and class certification briefing" without the New Custodians' documents. Mot. at 15.  But Carvana's internal documents, whether associated with the Original or New Custodians, are irrelevant to the critical determination for class certification in a securities case.  For Plaintiffs' Section 10 claims, the class-certification

analysis—and the applicability of the fraud-on-market presumption—focuses on market efficiency, and whether the alleged misrepresentations impacted Carvana's stock price. For Section 11, the class-certification analysis focuses on potential variation among class members' knowledge and interests. Plaintiffs' counsel has repeatedly litigated these issues without reference to internal documents, as is the norm in securities class actions.

### i.    Internal Documents Cannot Impact Class Certification

In federal securities cases, class certification typically hinges on Rule 23(b)'s requirement that "questions of law or fact common to the members of the class predominate over" individual questions. *Borteanu v. Nikola Corp.*, 348 F.R.D. 239, 254 (D. Ariz. 2025). Plaintiffs cannot explain how internal documents would impact that analysis.

**Section 10.**    As Plaintiffs acknowledge, litigants frequently dispute whether predominance is eliminated by individualized questions of reliance, an element of their Section 10 claims. *See* Mot. at 14. Here, Plaintiffs seek to certify a class of investors to pursue their Section 10 claims by invoking the "fraud-on-the-market" presumption of reliance articulated in *Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988)—thereby avoiding individualized inquiries on that element of their claim. Am. Compl. ¶¶ 329–31. That presumption is based on the principle that "a public, material misrepresentation will distort the price of stock traded in an efficient market, and that anyone who purchases the stock at the market price may be considered to have done so in reliance on the misrepresentation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 283–84 (2014). To invoke the presumption, Plaintiffs must show: (1) the alleged misrepresentations were public; (2) "the stock traded in an efficient market;" and (3) "the relevant transaction took place between the time the misrepresentations were made and the time the truth was revealed." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 811 (2011).

After that initial showing, "defendants may rebut the *Basic* presumption at class certification by showing that an alleged misrepresentation did not actually affect the market price of the stock." *Goldman Sachs Group, Inc. v. Arkansas Teacher Ret. Sys.*, 594 U.S. 113, 119 (2021). Defendants may make "[a]ny showing that severs the link." *Basic*, 485

U.S. at 248. That includes a showing that a lack of "price impact"—*i.e.*, the alleged misrepresentations did not impact the stock price either on the front-end, when the statement was made, or the back-end when it was allegedly corrected, *Halliburton*, 573 U.S. at 283—or, a showing that the market was aware of the alleged misrepresentations.

These standards all focus on what the market knew and the stock price did. Plaintiffs fail to explain why internal Carvana documents (or anything other than public information) are necessary (or even relevant) to class certification of their Section 10 claims.

There are serious questions as to whether the alleged misrepresentations impacted Carvana's stock price at all. In its Order on the motion to dismiss, the Court recognized that the disclosures of title and registration issues gave rise to a defense that "an alleged misstatement or omission of fact is already known to the market" and therefore "the fact will already be reflected in the stock price, and the market has not been misled." MTD Order at 15. While it was premature to decide that issue on a Motion to Dismiss, it is ripe for decision at the class certification stage. In any event, Carvana's *internal* documents from low-level custodians will have no place in litigating that issue. At best, Lead Plaintiffs' extension request is a tacit admission that any attempt to certify a class to pursue Section 10 claims is on shaky grounds, notwithstanding the mountains of documents the Carvana Defendants have already produced. At worst, it evidences their desire to mount settlement pressure on Defendants through never-ending, fruitless, discovery demands.

**Section 11.** Carvana Defendants' internal documents are also irrelevant to whether a class of Section 11 claimants should be certified. That inquiry focuses on, *inter alia*, whether variations in the claims require individualized inquiries. *Vignola v. Fat Brands, Inc.*, 2020 WL 1934976, at *5 (C.D. Cal. Mar. 13, 2020). This includes whether individualized inquiries are required to determine whether some putative class members knew of the omitted facts, or whether they can trace their Carvana shares to the April 2022 Registration Statement. *See* 15 U.S.C. § 77k(a) (providing liability "unless . . . at the time of such acquisition [the investor] knew of such untruth or omission"); *In re Honest Co. Sec. Litig.*, 2023 WL 3190506, at *5 (C.D. Cal. May 1, 2023) (proposed class did not satisfy

predominance because of putative class members' inability to trace their purchases to registration statement). These arguments turn on public disclosures or evidence from the class members themselves or on information already produced in discovery. *See, e.g.*, *Fat Brands*, 2020 WL 1934976, at *4–5 .

Plaintiffs fail to identify any action where the Court delayed class certification based on outstanding discovery that had no bearing on it. None of the cases they cite were securities class actions—where the focus is on price impact or a variation in market knowledge—and which are routinely decided well before the completion of discovery. *See* Sections III.B.3.ii-iii, *infra*. Plaintiffs' only support is non-securities cases where information central to the class certification analysis had not yet been produced. *See* Mot. at 14–16 (citing *Omega Hosp., LLC v. United Healthcare of La., Inc.*, 566 F. Supp. 3d 543, 546, 549 (M.D. La. 2021) (deadline extended in ERISA action because "information regarding providers other than" the plaintiff had not been produced "such that [plaintiff] did not have all of the information necessary to define the class [of out-of-network healthcare providers]"); *La Fleur v. Med. Mgmt. Int'l*, 2013 WL 12149179, at *2 (C.D. Cal. April 11, 2013) (deadline extended in wage and labor suit because "Defendant's payroll records" had not been produced, which were necessary to understand the nature of the class of employees)).

### ii. Plaintiffs' Counsel Routinely Moves To Certify A Class Before Substantial Completion And Without Citation to Internal Documents

Plaintiffs' Counsel put it best when, in another matter, they opposed a case schedule modification sought by defendants in light of delays in document productions from the plaintiffs' investment advisors. Plaintiffs' Counsel argued that the delay did not establish good cause for an extension "because there is no reason to believe [the yet-to-be produced documents] will have *any* bearing on class certification here, when Lead Plaintiff is invoking the fraud-on-the-market presumption to prove reliance. The fundamental premise underlying the presumption is that an investor presumptively relies on a misrepresentation

so long as it was *reflected in the market price*." Lead Plaintiffs' Opp. To Defs.' Mot. for Extension of Pretrial Schedule, at 5–6, *Karinski v. Stamps.com, Inc.*, No. 2:19-cv-01828-MWF-SK, Dkt. 117 (C.D. Cal. June 29, 2020).

Indeed, Plaintiffs' Counsel has filed at least six class certification motions in the Ninth Circuit in the last decade.[4] *None* of those motions or related expert reports cite the defendants' internal documents to support class certification.

That is consistent with the fact that Plaintiffs' Counsel has regularly stipulated to scheduling orders requiring motions for class certification prior to substantial completion of document productions. *See, e.g.*, Stip. and Proposed Order Supplementing Scheduling Order, at 2, *Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865, Dkt. 87 (C.D. Cal. Dec. 19, 2016); Joint Report and Disc. Plan, at 5, 8, *In re Banc of Cal. Sec. Litig.*, No. 8:17-cv-00118, Dkt. 73 (C.D. Cal. Oct. 2, 2017).

### iii.    Plaintiffs' Proposed Extension is Inconsistent with Standard Practice in Federal Securities Class Actions

Not only is it Plaintiffs' Counsel's regular practice—courts in this Circuit regularly impose class certification deadlines far in advance of substantial completion in securities class actions. *See, e.g.*, Scheduling Order, at 2, *In re Apple Inc. Sec. Litig.*, No. 4:19-cv-02033-YGR, Dkt. 128 (N.D. Cal. Dec. 22, 2020) (eight months before substantial completion); Order Supplementing Scheduling Order, at 1, *Hsu*, Dkt. 88 (C.D. Cal. Dec. 21, 2016) (two months before substantial completion); Scheduling Conf. Minutes, at 1, *In re Banc of Cal. Sec. Litig.*, No. 8:17-cv-00118-DMG-DGM, Dkt. 79 (C.D. Cal. Oct. 16, 2017) (similar).

The Federal Rules require that a motion for class certification is decided "[a]t an

---

[4] *See* Motion for Class Certification, *Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865-DOC-SHK, Dkt. 104 (C.D. Cal. March 15, 2017); Motion for Class Certification, *In re Banc of Cal. Sec. Litig.*, No. 8:17-cv-00118-DMG-DFM, Dkt. 92 (C.D. Cal. Dec. 20, 2017); Motion for Class Certification, *In re Twitter Inc. Sec. Litig.*, No. 4:16-cv-05314-JST, Dkt. 140 (N.D. Cal. Feb. 15, 2018); Motion for Class Certification, *Karinski v. Stamps.com, Inc.*, No. 2:19-cv-01828-MWF-SK, Dkt. 120 (C.D. Cal. June 29, 2020); Motion for Class Certification, *Stoyas v. Toshiba Corp.*, No. 2:15-cv-04194-DDP(JCx), Dkt. 109 (C.D. Cal. Feb. 19, 2021); Motion to Certify Class, *In re Apple Inc. Sec. Litig.*, No. 4:19-cv-02033-YGR, Dkt. 165 (N.D. Cal. May 5, 2021).

early practicable time." Fed. R. Civ. P. 23(c)(1). Even accepting Plaintiffs' view that "Carvana's substantial completion deadline has already been de facto extended by four months," Mot. at 10, there is still no good cause to extend the class certification deadline. Briefing class certification before substantial completion is standard—and standard practice is far from the sort of "act of nature" this Court requires to deviate from its scheduling order. Dkt. 129, Tr. of Feb. 25, 2025, Scheduling Conference at 25.

In sum, Plaintiffs' claim that they cannot "prepare expert discovery and class certification briefing," Mot. at 15, is divorced from the reality of federal securities class action litigation and the legal standards underlying class certification. Plaintiffs—including Plaintiffs' Counsel specifically—regularly brief class certification in advance of substantial completion without all internal documents. Plaintiffs' request to delay class certification has nothing to do with alleged discovery delays, and everything to do with Plaintiffs' recognition that they cannot satisfy Rule 23. As such, even if the Court extends the scheduling order for fact witness depositions, Defendants respectfully request the Court not similarly extend the class certification schedule.

### C.   Modifying the Schedule Would Prejudice Defendants

Prejudice to the opposing party is another part of the inquiry. *Johnson*, 975 F.2d at 609. Ironically, while Plaintiffs purport to pursue the interests of Carvana investors, Carvana is being forced to spend millions of dollars of investor funds defending against Plaintiffs' meritless claims. There is no reason Plaintiffs should be given license to impose as much burden as they can upon Defendants for an additional four months. Plaintiffs do not need any extension, and Plaintiffs' lack of diligence should not be rewarded.

### IV. CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' Motion. Should the Court deem a modification necessary, Defendants submit that adding four months across the board is too heavy-handed. The dates in Defendants' Appendix A to this Opposition suggest a more reasonable schedule prior to understanding the document volumes associated with the New Custodians.

Dated: December 16, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

*/s/ Matthew J. Peters*
Andrew B. Clubok (*pro hac vice*)
J. Christian Word (*pro hac vice*)
Susan E. Engel (*pro hac vice*)
Matthew J. Peters (*pro hac vice*)
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Email: andrew.clubok@lw.com
Email: christian.word@lw.com
Email: susan.engel@lw.com
Email: matthew.peters@lw.com


LATHAM & WATKINS LLP

Jeff G. Hammel (*pro hac vice*)
Kalana Kariyawasam (*pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: jeff.hammel@lw.com
Email: kalana.kariyawasam@lw.com

Meryn C. Grant (*pro hac vice*)
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: (424) 653-5500
Email: meryn.grant@lw.com

FENNEMORE CRAIG, P.C.
Douglas C. Northup (No. 013987)
Andrea L. Marconi (No. 022577)
2394 E. Camelback Road, Suite 600
Phoenix, AZ 85016
Telephone: (602) 916-5000
Email: dnorthup@fennemorelaw.com
Email: amarconi@fennemorelaw.com

*Counsel for Defendants Carvana Co., Ernest Garcia III, Mark Jenkins, Stephen Palmer,*

*Michael Maroone, Neha Parikh, Ira Platt, and Greg Sullivan*

DLA PIPER LLP (US)

*/s/ Melanie Walker (with permission)*
Cameron A. Fine
cameron.fine@us.dlapiper.com
Madeline A. Cordray
madeline.cordray@us.dlapiper.com
2525 East Camelback Road, Suite 1000
Phoenix, Arizona 85016
480.606.5100

Melanie Walker (admitted *pro hac vice*)
melanie.walker@us.dlapiper.com
Emma C. Peplow (admitted *pro hac vice)*
emma.peplow@us.dlapiper.com
2000 Avenue of the Stars #400
Los Angeles, California 90067
310.595.3000

Yan Grinblat (admitted *pro hac vice*)
yan.grinblat@us.dlapiper.com
444 West Lake Street, Suite 900
Chicago, Illinois 60606
312.368.4000

*Counsel for Defendant Ernest Garcia II*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

*/s/ David P. Friedman (with permission)*
Susanna M. Buergel (pro hac vice)
David P. Friedman (pro hac vice)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Email: sbuergel@paulweiss.com
Email: dfriedman@paulweiss.com

FENNEMORE CRAIG, P.C.
Douglas C. Northup (No. 013987)
Andrea L. Marconi (No. 022577)
2394 E. Camelback Road Suite 600 Phoenix, Arizona 85016
Telephone: (602) 916-5000

Email: dnorthup@fennemorelaw.com
Email: amarconi@fennemorelaw.com

*Counsel for Defendants Citigroup Global Markets Inc. and J.P. Morgan Securities LLC*

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW