ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN (CA 200643)
TOR GRONBORG (CA 179109)
ERIKA L. OLIVER (CA 306614)
RACHEL A. COCALIS (CA 312376)
MATTHEW J. BALOTTA (CA 310303)
SARAH A. FALLON (CA 345821)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
ddrosman@rgrdlaw.com
torg@rgrdlaw.com
eoliver@rgrdlaw.com
rcocalis@rgrdlaw.com
mbalotta@rgrdlaw.com
sfallon@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re Carvana Co. Securities Litigation | ) ) ) | No. CV-22-2126-PHX-MTL |
| This Document Relates To: | ) ) ) ) | LEAD PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO MODIFY THE SCHEDULING ORDER |
| All Actions. | ) ) ) | ORAL ARGUMENT REQUESTED |

4927-6167-8723.v1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   THE CARVANA DEFENDANTS' ONE-SIDED EXTENSION ESTABLISHES GOOD CAUSE ........................................................................ 2

III.  PLAINTIFFS HAVE DILIGENTLY PURSUED DISCOVERY ......................... 4

IV.   PLAINTIFFS WILL BE PREJUDICED ABSENT A CORRESPONDING EXTENSION OF THE DISCOVERY SCHEDULE ............................................. 6

    A.    Depositions Should Not Proceed Until Document Production Is Substantially Complete ............................................................................ 6

    B.    The Carvana Defendants' Deficient Search Explains a Lack of Responsive Documents ............................................................................. 7

    C.    Class Certification Should Follow Substantial Completion, as the Order Requires ......................................................................................... 8

V.    THE REQUESTED MODIFICATION REFLECTS STANDARD PRACTICE – INCLUDING THE CASES DEFENDANTS PREVIOUSLY ENDORSED ...................................................................................................... 10

VI.   THE MOTION IS NOT PREMATURE, AND DEFENDANTS WILL SUFFER NO PREJUDICE FROM PLAINTIFFS' REQUESTED RELIEF ........ 11

VII.  CONCLUSION ................................................................................................. 11

- i -

4927-6167-8723.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Acosta v. Wellfleet Commc'ns, LLC*,
    2018 WL 664779 (D. Nev. 2018) ................................................................................ 8

*Borteanu v. Nikola Corp.*,
    No. 2:20-cv-01797-SPL, ECF 173
    (D. Ariz. Mar. 8, 2024) ............................................................................................ 11

*Borteanu v. Nikola Corp.*,
    No. 2:20-cv-01797-SPL, ECF 216
    (D. Ariz. Dec. 6, 2024) ............................................................................................ 11

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014) ......................................................................................... 8, 9, 10

*In re Allstate Corp. Sec. Litig.*,
    966 F.3d 595 (7th Cir. 2020) ..................................................................................... 8

*In re Twitter Inc. Sec. Litig.*,
    No. 3:16-cv-05314-JST, ECF 214
    (N.D. Cal. Dec. 12, 2018) ........................................................................................ 11

*Karinski v. Stamps.com, Inc.*,
    No. 2:19-cv-01828-MWF-SK, ECF 107
    (C.D. Cal. Apr. 30, 2024) ...................................................................................... 9, 10

*Laborers Dist. Council Constr. Indus. Pension
    Fund v. Sea Limited*,
    No. 2:23-cv-01455-DLR, ECF 60
    (D. Ariz. Aug. 23, 2024) ...................................................................................... 10, 11

*Mathis v. Cnty. of Siskiyou*,
    2025 WL 3120805 (E.D. Cal. 2025) ........................................................................ 3, 11

*Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*,
    2018 WL 2979575 (S.D. Cal. 2018) ........................................................................... 6

- ii -

4927-6167-8723.v1

Plaintiffs respectfully submit this reply in support of the Motion to Modify the Scheduling Order (ECF 217) ("Motion" or "Mtn.").[1]

## I.    INTRODUCTION

This dispute is not about rewriting a schedule Plaintiffs dislike.  It is about correcting the one-sided modification that already occurred.  The Order the Parties negotiated and the Court entered was built on a simple premise: that substantial completion of document productions in response to the Parties' first RFPs would occur by December 8, 2025, and that depositions, class certification, and expert work would follow that milestone.  Judge Boyle's November 19, 2025 order has now effectively moved Carvana's substantial completion deadline four months to April 6, 2026 for seven additional custodians whose files indisputably fall within the scope of the case and are responsive to Plaintiffs' first RFPs.  Yet Defendants insist that downstream deadlines remain frozen in place.  Rule 16 does not permit that kind of one-way relief.

Defendants cannot salvage this imbalance by attacking Plaintiffs' diligence.  The record shows that Plaintiffs did exactly what Rule 16 requires: they served comprehensive RFPs within weeks of the initial scheduling conference, repeatedly pressed for organizational information, and promptly moved to compel when the Carvana Defendants refused to identify key personnel or produce basic structural information.  The Carvana Defendants, by contrast, misread the Court's motion to dismiss order and then the Scope Order to artificially narrow the case, and dribbled out productions so slowly that they had produced less than 8,000 documents as of October 9.  That Judge Boyle was forced to order additional custodians and extend the Carvana Defendants' own deadline past December 8 is a direct consequence of their evasion – not a lack of diligence by Plaintiffs.

The Carvana Defendants' assertion that they have "substantially completed" production is a fiction.  Production is overwhelmingly skewed toward one segment of the case – title and registration – while internal documents regarding the broader fraudulent scheme still haven't

---

[1]    Capitalized terms not defined herein have the same meaning as in the Motion and Defendants' Opposition (ECF 229) ("Opposition" or "Opp.").  Unless otherwise noted, all emphasis is added and citations are omitted.

4927-6167-8723.v1

been produced.  The Carvana Defendants nevertheless invoke a 0.651% "elusion" rate as if that number conclusively proves completeness.  As Plaintiffs' e-discovery expert Jerry Bui explains, this metric is a self-fulfilling prophecy.  It measures only how well the Carvana Defendants found title-and-registration documents within a title-and-registration-focused population; it is entirely silent on discovery regarding the artifices underlying the broader fraudulent scheme that the Carvana Defendants deliberately excluded from their search parameters.

If the current schedule stands, Plaintiffs will suffer concrete prejudice.  After all, Carvana has not produced a single document from the seven additional custodians Judge Boyle ordered (the "Rest-of-the-Case Custodians"), and refuses to agree that depositions taken now can be reopened if later productions reveal new materials.  Forcing Plaintiffs to depose key witnesses and prepare class certification submissions in this vacuum would guarantee duplicative examinations and avoidable inefficiencies – the very harms Rule 16 is designed to prevent.

Finally, the relief Plaintiffs seek simply restores the negotiated balance of the case. Judge Boyle's order shifted Carvana's substantial completion date to April 6, 2026 but left the class-certification, fact-discovery, and expert deadlines tethered to a deadline Carvana could not meet.  Because the existing schedule is procedurally broken, good cause exists to extend all remaining pretrial deadlines by four months.

## II.    THE CARVANA DEFENDANTS' ONE-SIDED EXTENSION ESTABLISHES GOOD CAUSE

The Order that the Parties negotiated in detail and that the Court adopted was anchored on a clear and essential premise: document productions in response to the Parties' RFPs would be substantially completed by December 8, 2025.  Order at 2.  The Carvana Defendants do not – and cannot – contend they have satisfied that obligation.

Substantial completion is not a matter of degree.  Either a party has substantially completed its production or it has not.  The Carvana Defendants have not.[2]  They have not

---

[2]    The Carvana Defendants do not dispute that "substantial completion" means "'all relevant sources of documents have been reviewed, responsive documents have been identified and reviewed, and those documents have been disclosed'" so that "'the parties have the documents they need to fully understand the facts of this case, conduct depositions, and engage in other, non-documentary discovery as well as motions practice and trial.'"  Mtn. at 13.  The

- 2 -

4927-6167-8723.v1

produced a single document from the files of the individuals they now call the "New Custodians" – custodians whose inclusion was compelled by Judge Boyle after the Carvana Defendants refused to identify relevant personnel or provide basic organizational information.  This ends the inquiry: "[T]hat defendants produced a significant number of documents does not negate the fact that a significant number of responsive documents remain admittedly unproduced." *Mathis v. Cnty. of Siskiyou*, 2025 WL 3120805, at *6 (E.D. Cal. 2025).

In addition to being incomplete, the Carvana Defendants' production from its original set of custodians is overwhelmingly skewed toward one segment of the case – title and registration. That is unsurprising given that the Carvana Defendants handpicked custodians and search terms tethered exclusively to that issue.  According to the Carvana Defendants' own data, ***nearly 100 of their search terms relate exclusively to title and registration***.  By contrast, ***they used only 28 terms to address the remaining artifices*** underlying Plaintiffs' broader scheme theory.  These terms are not only limited in number, but also facially inadequate in scope.[3]  Plaintiffs are filing a motion to compel the use of appropriate, comprehensive search terms responsive to the full scope of the case.

---

best the Carvana Defendants can muster is to falsely assert that they substantially completed producing documents from "the custodians initially agreed to by the parties."  Opp. at 1. However, all but 2 of their 18 "Original Custodians" were individuals the Carvana Defendants unilaterally selected, and Plaintiffs repeatedly flagged that the custodian group was deficient, both in number and scope. *See* Ex. 9 at 2; Ex. 10 at 3-4; Ex. 13 at 3, 6; Ex. 14 at 2; Ex. 20 at 2-3; Ex. 22 at 7; Ex. 29 at 1-4.  In any event, the Carvana Defendants have not even completed document production for those custodians.

Citations to Exs. 1-31 are to the exhibits attached to the Declaration of Erika L. Oliver filed on December 9, 2025 (ECF 218-221), and citations to "Oliver Decl." and Exs. 32-33 are to the concurrently filed Declaration of Erika L. Oliver, and exhibits attached thereto.

[3]   That the Carvana Defendants' deficient terms like "low* w/2 standard*" "resulted in relatively few produced documents" proves Plaintiffs' point.  Opp. at 9.  The term is under-inclusive on its face and does not even hit on the artifice itself ("Defendants Lower Carvana's Purchasing and Verification Standards") where "lower" is more than two words from "standards." *Id.*  The term also ignores other aspects of that artifice, including that the goal was "to induce trade-ins and increase inventory," which led to a flood of "'trash cars' that were unfit to be sold retail and had to be sold wholesale." Cpt., ¶¶130, 135.  The Carvana Defendants' justification for the term – though never previously explained – appears to be that, if Plaintiffs' allegations have merit, there would be emails saying, "let's lower our standards" or "pursuant to our scheme to lower standards . . . ." *See* Opp. at 9.  But this is not how people speak, and documents demonstrate this.

- 3 -

Nevertheless, the Carvana Defendants rely on an "elusion rate" to argue their limited searches were sufficient. Opp. at 9. But that metric is nothing more than a self-fulfilling prophecy. Elusion testing evaluates whether responsive documents remain in a population excluded by the applied search terms; it does not, and cannot, assess whether the search terms themselves were appropriately designed to capture relevant documents in the first instance. *See* Ex. 32, ¶¶9-12. Here, Carvana poisoned the well by using a biased sampling base – disproportionately composed of title-and-registration search terms and custodians – to generate an artificially favorable elusion metric. *Id.*, ¶¶13-18. A low elusion rate on a narrow search does not prove a complete production; it merely proves the search was consistently narrow.

The result is this: Carvana has been granted four additional months to produce documents from key custodians – yet insists that Plaintiffs proceed with depositions, class certification, and expert work on a truncated timeline tied to a December 2025 production deadline that no longer exists. That asymmetry cannot be reconciled with Rule 16. The appropriate course is the one Plaintiffs propose: extend the remaining pretrial deadlines by four months to align with the timeline the Court has now ordered for Carvana's substantial completion. That outcome preserves the balance the Parties originally agreed to, ensures a fair and efficient resolution of the case, and more than satisfies the good cause standard under Rule 16(b)(4).

## III.   PLAINTIFFS HAVE DILIGENTLY PURSUED DISCOVERY

The Carvana Defendants now claim that their title-and-registration custodians "were largely the best people to address *every* falsity theory." Opp. at 6 (emphasis in original). That post-hoc rationalization cannot be squared with the Court's July 1 Scope Order or with the Carvana Defendants' own admissions. They:

- warned that, if Plaintiffs' broader scheme claim was upheld (it was), discovery would "greatly expand[]" to cover "basically everything at the company" and Carvana's "entire business model" (ECF 172 at 10:13-17; Mtn. at 8), yet after the Scope Order added only a single additional search term and, six weeks later, a mere two custodians (Opp. at 6; *see* Mtn. at 8);

- responded to Plaintiffs' May 13, 2025 Interrogatory No. 2 – seeking "'facts sufficient to show Carvana's entire corporate organizational structure'" – with a description limited solely to title-and-registration personnel, based on their

- 4 -

erroneous assertion that the case was so limited (Mtn. at 9);

- withheld organizational charts and directories until September – roughly six months after the ESI Order required them to "expedite the production of organizational charts" to identify custodians (ECF 131 at 4) – and only after Plaintiffs prepared a motion to compel (Opp. at 7 & n.2); and

- on September 11, 2025, announced they "'will not be adding further custodians.'" Mtn. at 9; Oliver Decl., ¶2.

Defendants' effort to rewrite this history is refuted by the record. Plaintiffs requested "[d]irectories" in their March 11, 2025 RFPs (Ex. 6 at 33) and continued to seek organizational information in multiple follow-ups, including in May, June, and August. Ex. 14 at 2; Ex. 20 at 3; Ex. 33 at 2. Likewise, Plaintiffs did not "wait until December 9" to seek additional custodians. Opp. at 7. They began pressing for more custodians months earlier, including a June 30, 2025 request to add specific individuals based on Carvana's own interrogatory responses. Ex. 14 at 1. Carvana rejected that proposal as "duplicative" while still withholding organizational data that would have allowed Plaintiffs to test that claim (Ex. 16 at 3), and then stated unequivocally that it would "not be adding further custodians." Ex. 22 at 6.

Defendants' criticism that Plaintiffs identified the Rest-of-the-Case Custodians only by the court-ordered deadline ignores the information vacuum the Carvana Defendants created. By August, the Carvana Defendants had produced only *three* documents and claimed that job titles were meaningless because responsibilities were "fluid." Oliver Decl., ¶2. The directories finally produced in September listed roughly 3,100 managers across dozens of business units but provided no description of job functions, and Plaintiffs could not turn to documents for information because the Carvana Defendants had produced only 1,316 by September 26, 2025. *Id.* In these circumstances, Plaintiffs reasonably moved to compel identification of relevant individuals on October 9, 2025, when Carvana's total production still numbered fewer than 8,000 documents. ECF 202; Oliver Decl., ¶2. At the time of the November 17 hearing, the Carvana Defendants had produced only about 26,000 documents – and more than half of those in the preceding two weeks – further constraining Plaintiffs' ability to make fully informed custodian selections. Oliver Decl., ¶2.

- 5 -

Nor does it help Carvana to note that some Rest-of-the-Case Custodians appeared in Plaintiffs' initial disclosures. Opp. at 7. That fact underscores Plaintiffs' diligence. Despite Carvana's insistence that titles are immaterial and roles "fluid," the documents confirm that the individuals Plaintiffs identified early possess relevant, responsive information, validating Plaintiffs' approach and undermining Carvana's.

In short, Plaintiffs promptly requested organizational data under the ESI Order, served targeted RFPs in March, repeatedly followed up when Carvana refused to engage, and then brought the dispute to Judge Boyle and complied with the resulting order. The undisputed chronology demonstrates diligence at every step; it is the Carvana Defendants' obstruction that necessitated the November 19 order and the schedule modification Plaintiffs now request.

## IV. PLAINTIFFS WILL BE PREJUDICED ABSENT A CORRESPONDING EXTENSION OF THE DISCOVERY SCHEDULE

### A. Depositions Should Not Proceed Until Document Production Is Substantially Complete

The entire purpose of a substantial completion deadline is to ensure that depositions occur with the benefit of a complete evidentiary record. As courts recognize, such deadlines exist "to 'allow[] parties to take depositions at a defined time with the assurance that substantially all document discovery has been completed.'" *Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*, 2018 WL 2979575, at *4 (S.D. Cal. 2018). Nevertheless, Defendants assert that Plaintiffs suffer no prejudice from the Carvana Defendants' failure to meet the agreed-upon deadline because Plaintiffs can simply begin taking depositions now. Opp. at 12.

Tellingly, Defendants fail to cite *any* authority to support this position. *Id.* at 16. Nor do they distinguish the authority Plaintiffs cite establishing that litigants are prejudiced when forced to take depositions without the benefit of a substantially complete production. *Compare id. with*, Mtn. at 13-15 (citing cases). The issue is not abstract. The Carvana Defendants admit their production is, at best, substantially complete only as to a subset of custodians (the so-called "Old Custodians"), 16 of whom are focused solely on title-and-registration issues – just one of multiple artifices underpinning the alleged scheme and retail growth misstatements. As courts

- 6 -

4927-6167-8723.v1

routinely recognize, forcing Plaintiffs to take depositions on an incomplete record risks duplication, inefficiency, and irreparable prejudice. *See* Mtn. at 13-15. The fact discovery cutoff should be extended accordingly.

Plaintiffs told Defendants that they were willing to proceed with depositions in the near term if Defendants agreed those depositions could be reopened should subsequent document productions reveal documents relevant to that deponent. Defendants refused. Their refusal is especially perplexing given their current insistence that "[t]here is no basis to believe the [Rest-of-the-Case] Custodians will have unique documents involving the Original Custodians." Opp. at 12. It is also beside the point – the custodian list and search terms the Carvana Defendants unilaterally imposed failed to reach the full scope of relevant discovery.

In fact, Plaintiffs recently obtained leave from Judge Boyle to move to compel the use of additional search terms. That motion is forthcoming. Defendants' suggestion that depositions can fairly proceed without completing production from the newly ordered custodians – who cover significant components of the scheme and growth misstatement allegations – is inconsistent with Rule 26, the Order, and the expectations set during Rule 16 negotiations.

### B.    The Carvana Defendants' Deficient Search Explains a Lack of Responsive Documents

Defendants contend that the absence of documents relating to the other artifices beyond title and registration somehow proves that Plaintiffs' broader scheme theory lacks merit. Opp. at 9. That argument is a non sequitur. As the Carvana Defendants themselves told Judge Boyle, if Plaintiffs' scheme allegations survived, discovery would "expand[] . . . to basically everything at the company" and implicate Carvana's "entire business model." ECF 172 at 10:13-17. By that logic, a substantially complete production responsive to the upheld claims – regardless of their merit – should reflect that scope. If the claims lacked merit, the documents would show legitimate conduct, not vanish altogether. But instead of producing exculpatory materials that would rebut Plaintiffs' allegations, the Carvana Defendants have produced almost nothing outside the narrow title-and-registration artifice – and simultaneously admit they have yet to complete production for the broader set of custodians Judge Boyle ordered. That deficiency

- 7 -

speaks not to the merits of Plaintiffs' claims, but to the incompleteness of the Carvana Defendants' production. It is axiomatic that the absence of documents cannot be used as proof when the very custodians and search terms needed to locate them were never included in the first place.

The lone case Defendants cite, *Acosta v. Wellfleet Commc'ns, LLC*, 2018 WL 664779 (D. Nev. 2018), actually supports Plaintiffs. There, the court held that "[i]t is not proper to state that responsive documents do not exist . . . if Defendants simply have not made a diligent and good faith effort to locate and produce the documents." *Id.* at *9. That is precisely the situation here. The Carvana Defendants have not completed production from key custodians; nor have they employed reasonable search terms to locate responsive documents. They cannot now rely on the supposed absence of evidence that their own conduct created.

**C.    Class Certification Should Follow Substantial Completion, as the Order Requires**

The Supreme Court has made clear that class certification in securities fraud cases often turns on merits-based evidence, including materials related to price impact. In *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 283-84 (2014) ("*Halliburton II*"), the Court held that defendants may rebut the fraud-on-the-market presumption at the class certification stage with evidence that the alleged misrepresentations had no price impact. The Court expressly recognized that this holding may "broaden the scope of discovery available at certification." *Id.* at 284 (Ginsburg, J., concurring). The Seventh Circuit underscored that this "overlap between the evidence at stake at the certification and merits stages" "deserves emphasis because of its implications for managing discovery." *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 610 (7th Cir. 2020). In other words, class certification cannot be cleanly separated from the factual record, making access to complete discovery not merely beneficial but necessary.

The structure of the Order in this case reflects that legal reality. The Parties jointly proposed – and the Court adopted – a schedule in which substantial completion of document production would occur five weeks before class certification briefing began. Order at 2-5. That sequencing was deliberate, consistent with the Supreme Court's directive, and reflective

- 8 -

4927-6167-8723.v1

of the understanding that materials relevant to price impact, market knowledge, and internal deliberations go directly to Rule 23's requirements.

Judge Boyle has since extended the substantial completion deadline by four months, through April 6, 2026. To preserve the Court-ordered structure and to ensure compliance with *Halliburton II*, class certification briefing should move in lockstep with that extension. Anything less would risk briefing on an incomplete and untested record.

Defendants argue that class certification briefing need not wait for full discovery. Opp. at 12-17. But this argument ignores the Supreme Court's mandate and the Order's structure. It also ignores the state of the record. As Defendants concede, communications with analysts and the market are relevant to class certification. Opp. at 13-14. Yet Carvana has failed to produce even the most basic materials in this category – refusing to run search terms that would identify emails between its Investor Relations team and analysts, including Mike Levin.[4]  Non-party analysts have already produced approximately 1,000 such emails that Carvana did not.

Defendants further suggest that they may raise a "truth-on-the-market" defense, asserting that class members already knew of the alleged omissions. Opp. at 14. This position heightens – not reduces – the need for full discovery before certification. Documents showing what Defendants knew internally about the facts related to the alleged fraud, including the artifices underlying the scheme claim, and what they chose not to disclose, are directly relevant to rebutting such a defense. Yet the Carvana Defendants have failed to identify custodians responsible for many functions central to the scheme (including purchasing and verification standards) beyond the Individual Defendants and have rejected search terms that would capture relevant materials. *See, e.g.*, Ex. 24 at Ex. A.

Finally, Defendants invoke *Karinski v. Stamps.com, Inc.*, No. 2:19-cv-01828-MWF-SK (C.D. Cal.) ("*Karinski*"), to argue that document production is irrelevant to class certification. Opp. at 4, 15-16. That argument backfires. There, plaintiffs' counsel warned that incomplete

---

[4]      These include: "(market OR analyst* OR Street) w/10 (react* OR disappoint* OR surpris* OR downgrad* OR ((lower* OR reduc*) w/3 rating*) OR miss*)" and the email addresses of analysts who covered Carvana during the relevant period. *See* Ex. 24 at Ex. A (Rows 35, 85-87, 89-93).

- 9 -

4927-6167-8723.v1

production would prejudice their reply brief, "preventing Lead Plaintiff from utilizing the discovery in support of its [class certification] motion." *Karinski*, ECF 117 at 7 n.8. The court denied defendants' motion to "bifurcate discovery with class certification preceding full merits discovery." *Id.*, ECF 100 at 6-25; *id.*, ECF 107 (order denying bifurcation).

This Court's Order correctly aligned discovery and class certification in accordance with Supreme Court precedent. That structure should not be upended now simply because Carvana failed to meet its discovery obligations. Plaintiffs respectfully request that the Court extend the class certification schedule to maintain compliance with *Halliburton II* and avoid briefing on an incomplete record.[5]

## V.   THE REQUESTED MODIFICATION REFLECTS STANDARD PRACTICE – INCLUDING THE CASES DEFENDANTS PREVIOUSLY ENDORSED

Defendants now assert that Plaintiffs' proposed schedule is "[i]nconsistent with [s]tandard [p]ractice." Opp. at 16. That assertion is not only wrong – it directly contradicts the authorities Defendants themselves relied upon earlier in the case. At the February 25, 2025 Scheduling Conference, the Carvana Defendants cited *Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Limited*, No. 2:23-cv-01455-DLR (D. Ariz.) ("*Sea Limited*") and *Borteanu*

---

[5]   Defendants' contention that Plaintiffs' Motion "is a tacit admission that any attempt to certify a class to pursue Section 10 claims is on shaky grounds, notwithstanding the mountains of documents the Carvana Defendants have already produced" (Opp. at 14) is nonsensical. Plaintiffs are not ditching class certification briefing, but merely coordinating the briefing schedule with when the Carvana Defendants actually complete their document production. And the notion that the "mountains of documents" Defendants have produced has made class certification "shaky," if true (it isn't), directly undermines Defendants' argument that their documents are irrelevant to class certification.

The contention that Plaintiffs' Motion "evidences their desire to mount settlement pressure on Defendants through never-ending, fruitless, discovery demands" (Opp. at 18) is beyond nonsensical. *See also id.* at 17 (suggesting that modifying the schedule is prejudicial because "Carvana is being forced to spend millions of dollars of investor funds defending against Plaintiffs' meritless claims"). Carvana has over $2 billion in cash and a market capitalization of over $100 billion. Far from being worried about "settlement pressure" (or expediency), in preparing the initial proposed schedule, it was the Carvana Defendants themselves who asked for the substantial completion and fact discovery deadlines to be extended by four months. *See* Ex. 2 at 1. And if Defendants actually had a valid basis to believe Plaintiffs' discovery requests were fruitless, they could move to quash. None had done so yet. Modifying the pretrial deadlines is not going to move the needle on when or whether Defendants (or Plaintiffs) believe a settlement of this litigation is warranted.

- 10 -

4927-6167-8723.v1

*v. Nikola Corp.*, No. 2:20-cv-01797-SPL (D. Ariz.) ("*Nikola*") as complex class actions with reasonable timelines.  *See* ECF 129 at 10:10-17.

But the schedules in those cases closely mirror the structure Plaintiffs now propose.  In *Sea Limited*, the court adopted a 24-month schedule running from the Rule 16 conference to dispositive motions.  *Sea Limited*, ECF 60.  Notably, that order provides that "[t]he proposed deadlines related to the class certification motion assume the parties have been afforded the opportunity to complete all necessary discovery related to the class certification motion, opposition, and reply."  *Id.* at 1 n.1.  This structure reflects the same sequencing Plaintiffs request here: class certification occurs only after substantial completion.  *See also Nikola*, ECF 173 at 2, 4 (ensuring that several months separated substantial completion from the end of fact discovery); *id.*, ECF 216.

Plaintiffs seek a modification of the schedule only because the Carvana Defendants failed to meet a baseline obligation: substantially completing production by an agreed-upon deadline.  Courts routinely extend all deadlines to preserve balance and avoid granting one-sided relief.  *See, e.g.*, *In re Twitter Inc. Sec. Litig.*, No. 3:16-cv-05314-JST, ECF 214 at 2 (N.D. Cal. Dec. 12, 2018) (extending fact discovery deadline and all subsequent deadlines by several months).

## VI.    THE MOTION IS NOT PREMATURE, AND DEFENDANTS WILL SUFFER NO PREJUDICE FROM PLAINTIFFS' REQUESTED RELIEF

Defendants do not contest that Plaintiffs have diligently sought this extension.  Instead, they complain that the Motion is premature and should not be granted lest they be subjected to "burden . . . for an additional four months."  Opp. at 11-12, 17.  "[T]his motion is plainly not premature because the deadline for substantial production has already passed," and the class certification deadline is mere weeks away.  *Mathis*, 2025 WL 3120805, at *6.  And complying with Judge Boyle's order and producing discoverable materials is not prejudice; it is merely the process.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be granted.

- 11 -

4927-6167-8723.v1

DATED:  December 19, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN
(Admitted *pro hac vice*)
TOR GRONBORG
(Admitted *pro hac vice*)
ERIKA L. OLIVER
(Admitted *pro hac vice*)
RACHEL A. COCALIS
(Admitted *pro hac vice*)
MATTHEW J. BALOTTA
(Admitted *pro hac vice*)
SARAH A. FALLON
(Admitted *pro hac vice*)

s/ Daniel S. Drosman
DANIEL S. DROSMAN

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
ddrosman@rgrdlaw.com
torg@rgrdlaw.com
eoliver@rgrdlaw.com
rcocalis@rgrdlaw.com
mbalotta@rgrdlaw.com
sfallon@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ROBERT M. ROTHMAN
(Admitted *pro hac vice*)
DAVID A. ROSENFELD
(Admitted *pro hac vice*)
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
rrothman@rgrdlaw.com
drosenfeld@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

O'DONOGHUE & O'DONOGHUE LLP
DINAH S. LEVENTHAL
5301 Wisconsin Avenue, N.W., Suite 800
Washington, D.C.  20015
Telephone:  202/362-0041
202/362-2640 (fax)
dleventhal@odonoghuelaw.com

- 12 -

4927-6167-8723.v1

Additional Counsel for Lead Plaintiffs

BONNETT FAIRBOURN FRIEDMAN
  & BALINT PC
ANDREW FRIEDMAN
7301 N. 16th Street, Suite 102
Phoenix, AZ  85020
Telephone: 602/274-1100
602/274-1199 (fax)
afriedman@bffb.com

Local Counsel

- 13 -