ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN (CA 200643)
TOR GRONBORG (CA 179109)
ERIKA L. OLIVER (CA 306614)
RACHEL A. COCALIS (CA 312376)
MATTHEW J. BALOTTA (CA 310303)
SARAH A. FALLON (CA 345821)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
ddrosman@rgrdlaw.com
torg@rgrdlaw.com
eoliver@rgrdlaw.com
rcocalis@rgrdlaw.com
mbalotta@rgrdlaw.com
sfallon@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re Carvana Co. Securities Litigation | No. CV-22-2126-PHX-MTL |
| This Document Relates To: | LEAD PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO USE LEAD PLAINTIFFS' PROPOSED SEARCH TERMS |
| All Actions. | ORAL ARGUMENT REQUESTED |

4920-1830-8996.v1

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................................... 1

II.     LEGAL STANDARD ................................................................................................ 2

III.    ARGUMENT ............................................................................................................. 3

        A.    Defendants' Refusal to Run or Modify Any of Plaintiffs' Proposed
              Search Terms Concerning All of the Alleged Artifices Violates Their
              Discovery Obligations .................................................................................... 3

        B.    Plaintiffs' Proposed Search Terms Are Necessary to Remedy Blatant
              Deficiencies in Defendants' Search Parameters ............................................. 5

              1.    Defendants Must Utilize a Relevant, Narrowly-Tailored Term
                    Regarding Carvana's Sales Growth ...................................................... 5

              2.    Defendants Must Utilize Relevant Terms Concerning Carvana's
                    Purchasing and Verification Standards ................................................... 7

              3.    Defendants Must Utilize Relevant, Narrowly-Tailored Terms
                    Concerning Carvana's Nationwide Expansion .................................... 8

              4.    Defendants Must Utilize Relevant Terms Concerning
                    Carvana's Sham Transactions with Garcia Sr. .................................... 9

              5.    Defendants Must Utilize Relevant, Narrowly-Tailored Terms
                    Concerning Title and Registration ....................................................... 10

              6.    Defendants Must Address Other Deficiencies in Their Search
                    Parameters ........................................................................................... 11

        C.    Plaintiffs' Narrowly-Tailored Search Proposal Is Proportional to the
              Needs of the Case ......................................................................................... 14

IV.     CONCLUSION ........................................................................................................ 17

4920-1830-8996.v1

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Abbawi v. Henry Ford Health Sys.*,
2025 WL 36153 (E.D. Mich. 2025) ............................................................................. 17

*Apple, Inc. v. Samsung Elecs. Co. Ltd.*,
2013 WL 1942163 (N.D. Cal. 2013) .............................................................................. 3

*Ardestani v. BMW of N. Am., LLC*,
2018 WL 6016955 (C.D. Cal. 2018) .............................................................................. 3

*Garner v. Amazon.co, Inc.*,
2022 WL 16553158 (W.D. Wash. 2022) .................................................................. 15, 16

*Hall v. Rent-A-Center, Inc.*,
2018 WL 4293141 (E.D. Tex. 2018) ............................................................................ 14

*Herrera v. Wells Fargo Bank, N.A.*,
2021 WL 9374975 (C.D. Cal. 2021) ............................................................................ 15

*In re Am. Apparel, Inc. S'holder Litig.*,
2014 WL 10212865 (C.D. Cal. 2014) .......................................................................... 15

*In re eBay Seller Antitrust Litig.*,
2009 WL 10694848 (N.D. Cal. 2009) ......................................................................... 4, 5

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. 2010) ............................................................................ 15

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. 2009) ............................................................................ 15

*Inter-Coop. Exch. v. U.S. Dep't of Com.*,
36 F.4th 905 (9th Cir. 2022) .......................................................................................... 9

*Leon v. URL Pharma, Inc.*,
2025 WL 1723148 (C.D. Cal. 2025) .............................................................................. 2

*Militante v. Banner Health*,
2023 WL 12073895 (D. Ariz. 2023) .............................................................................. 2

*Miller v. York Risk Servs. Grp.*,
2014 WL 11515634 (D. Ariz. 2014) .............................................................................. 2

**Page**

*N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*,
   315 F.R.D. 226 (E.D. Mich. 2016), *aff'd sub nom.,*
   *Marro v. N.Y. State Tchrs' Ret. Sys.*, 2017 WL 6398014 (6th Cir. 2017)...................... 15

*Pappas v. Naked Juice Co. of Glendora, Inc.*,
   2012 WL 12885108 (C.D. Cal. 2012) ......................................................................... 2

*Power of Fives LLC v. B&R Enters. Inc.*,
   2024 WL 3619435 (D. Ariz. 2024)............................................................................. 3

*Ronduen v. GEO Grp. Inc.*,
   2025 WL 1112657 (C.D. Cal. 2025) ............................................................. 6, 7, 12, 13

*Rsch. Corp. Techs. Inc. v. Eli Lilly & Co.*,
   2018 WL 11676941 (D. Ariz. 2018)....................................................................... 2, 15

*SinglePoint Direct Solar LLC v. Solar Integrated Roofing Corp.*,
   2023 WL 2585296 (D. Ariz. 2023).............................................................. 6, 11, 14, 16

*SinglePoint Direct Solar, LLC v. Solar Integrated Roofing Corp.*,
   No. 2:21-cv-01076-JAT, ECF 186-1
   (D. Ariz. Mar. 13, 2023) ....................................................................................... 11

*Strategic Partners, Inc. v. FIGS, Inc.*,
   2020 WL 2527056 (C.D. Cal. 2020) ......................................................................... 14

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007)............................................................................................... 14

**STATUTES, RULES, AND REGULATIONS**

Federal Rule of Civil Procedure
   Rule 26(b) ............................................................................................................ 3
   Rule 26(b)(1)............................................................................................... 2, 3, 15

4920-1830-8996.v1

Lead Plaintiffs United Association National Pension Fund and Saskatchewan Healthcare Employees' Pension Plan ("Plaintiffs") submit this motion seeking to compel defendants Carvana Co. ("Carvana"), Ernest Garcia III ("Garcia Jr."), Mark Jenkins ("Jenkins"), Stephen Palmer, Michael Maroone, Neha Parikh, Ira Platt, and Greg Sullivan ("Defendants") to utilize the proposed search terms listed in Appendix A (Ex. 12) ("App. A" or "Appendix A") to cull for information responsive to Plaintiffs' First Set of Requests for Production of Documents to the Carvana Defendants (Ex. 1) ("RFPs").[1]

## I.    INTRODUCTION

Plaintiffs reluctantly bring another motion to secure the discovery to which they are entitled – and which this Court has already ordered.  This Court previously held that Plaintiffs are entitled to "broad" discovery into the "drivers" of Carvana's retail sales and the alleged "scheme claim."  ECF 173 at 4.  At the time, Defendants conceded that this ruling would "***greatly expand[] the scope of discovery . . . to basically everything at the company***."  ECF 172 at 10:13-17.  Yet, Defendants have fundamentally abandoned the collaborative ESI process, unilaterally imposing a search protocol that is a transparent exercise in concealment.

The results of Defendants' obstruction are mathematically undeniable.  Of the documents Defendants have produced to date, a staggering ***89% relate to "title and registration" issues***. This is not an accident; it is the predictable result of a search protocol where 65% of the terms relate to title and registration, while a mere 18% address the other core drivers of retail growth mandated by this Court.  Worse, for the non-title categories, Defendants have insisted on restrictive "magic words" designed to fail.  For example, Defendants refuse to search for variants like "expanding" or "expanded," insisting only on the exact term "Expansion," and they demand formal phrases like "retail unit" for internal communications where shorthand is standard.

Plaintiffs' proposed terms are not a "wish list"; they are surgical corrections designed to

[1]   "Ex. __" references are to the exhibits attached to the Declaration of Erika L. Oliver in Support of Lead Plaintiffs' Motion to Compel Defendants to Use Lead Plaintiffs' Proposed Search Terms, filed concurrently herewith.  Unless otherwise noted, all "¶¶__" citations are to the Amended Consolidated Complaint for Violations of the Federal Securities Laws (ECF 71) ("Complaint"), citations are omitted, and emphasis is added. On December 10, 2025, Plaintiffs received permission from this Court to brief this matter pursuant to LRCiv. 7.2.

- 1 -

capture evidence of scienter, loss causation, and falsity that resides exclusively with Defendants. As a corporation with a market capitalization exceeding $100 billion, Carvana cannot credibly claim that running these narrowly-tailored terms – some of which hit on as few as 27 documents – constitutes an "undue burden."  As this Court previously observed: "This is a huge case. . . . I doubt [we need to talk about proportionality] given where we're at on this, these allegations." ECF 172 at 18:25-19:3.  Because Defendants' current parameters are facially designed to shield the most incriminating evidence of the alleged fraud, Plaintiffs respectfully request that the Court compel the implementation of the terms in Appendix A.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 26 ("Rule 26") permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  This standard is "'necessarily broad in scope in order to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"  *Leon v. URL Pharma, Inc.*, 2025 WL 1723148, at *3 (C.D. Cal. 2025).

Defendants, as the resisting party, bear the burden to substantiate any of their objections. *Rsch. Corp. Techs. Inc. v. Eli Lilly & Co.*, 2018 WL 11676941, at *2 (D. Ariz. 2018) ("'The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.'"); *Militante v. Banner Health*, 2023 WL 12073895, at *2 (D. Ariz. 2023) (same).  "'General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information.'"  *Miller v. York Risk Servs. Grp.*, 2014 WL 11515634, at *2 (D. Ariz. 2014).  Rather, "'[t]he objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant or how each question is overly broad, burdensome or oppressive.'"  *Pappas v. Naked Juice Co. of Glendora, Inc.*, 2012 WL 12885108, at *2 (C.D. Cal. 2012); *Miller*, 2014 WL 11515634, at *2.

Proportionality turns on "'the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

- 2 -

4920-1830-8996.v1

importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Power of Fives LLC v. B&R Enters. Inc.*, 2024 WL 3619435, at *1 (D. Ariz. 2024) (quoting Fed. R. Civ. P. 26(b)(1)).  In complex securities litigation where, as here, the asymmetry of information is total, "the burden of responding to discovery [often] lies heavier on the party who has more information, and properly so." Fed. R. Civ. P. 26(b) advisory committee's note (2015 amendment); *see also Ardestani v. BMW of N. Am., LLC*, 2018 WL 6016955, at *3 (C.D. Cal. 2018) (same).

Accordingly, where proposed search terms are facially relevant, narrowly tailored, and directed to the heart of the claims and defenses (as they are here), the Federal Rules require that they be run absent a concrete, substantiated showing of undue burden or disproportionality.

## III.     ARGUMENT

### A.     Defendants' Refusal to Run or Modify Any of Plaintiffs' Proposed Search Terms Concerning All of the Alleged Artifices Violates Their Discovery Obligations

As an initial matter, courts recognize that "transparency and collaboration is essential to meaningful, cost-effective discovery." *Apple, Inc. v. Samsung Elecs. Co. Ltd.*, 2013 WL 1942163, at *3 (N.D. Cal. 2013).  That is particularly true for ESI discovery, where search terms are intended to be negotiated in good faith, not imposed unilaterally by the producing party. Naturally, the electronic discovery order in this case required Plaintiffs and Defendants to ***jointly*** develop the search terms to be utilized in responding to RFPs.  *See* ECF 137 ("Order") at 4 (ordering the producing party (*i.e.*, Defendants) to propose "search terms that [they] believe[] would lead to the identification of relevant documents" and requiring the receiving party (*i.e.*, Plaintiffs) to "provide any additional search terms that it believes are necessary").  The Order further contemplates that the producing party must respond to Plaintiffs' proposed additions with transparency sufficient to evaluate burden and proportionality – not a blanket refusal as is the case here.  Defendants have fundamentally abandoned this cooperative mandate, refusing to meaningfully engage in the process since the Order was issued.  Because Defendants have unilaterally shuttered the collaborative process, they must now be compelled to utilize the targeted terms identified in Appendix A.

- 3 -

4920-1830-8996.v1

Defendants' calculated obstruction is clear. After the Court broadened discovery to include the drivers of Carvana's sales, such as its purchasing and verification standards, unsustainable nationwide expansion, and related-party transactions with defendant Ernest Garcia II ("Garcia Sr."), ***Defendants responded with just one facially deficient search string***. Ex. 2 at 9. And only after Plaintiffs threatened to go to the Court did they offer a few (equally deficient) additional terms. Ex. 4 at 1-2. The metrics reveal a deliberate effort to cabin this case solely to "title and registration" issues. ***Nearly 100 search strings*** of the 155 that Defendants employed (*i.e.*, nearly 65%) relate to title-and-registration issues, while ***only 18%*** relate to the other unsustainable drivers. *See* Ex. 7 at Ex. A. Worse, those few non-title-and-registration search terms are so restrictively drafted that they are designed to fail. *See infra* §III.B. The results of this skew are staggering: nearly 90% of Defendants' 69,757 produced documents hit on the terms "title" or "reg," confirming that the vast majority of the alleged scheme remains untouched. That production skew is not an accident; it is the predictable result of Defendants' self-selected, lopsided search approach.

Thus, consistent with the Order's directive, Plaintiffs proposed additional terms on September 8, 2025 to bridge these obvious gaps. *See generally* Ex. 5. Defendants, however, flatly refused to include ***any of Plaintiffs' proposed terms*** or offer a single modification to the proposal. *See* Ex. 6 at 4-5. Defendants did not offer targeted exclusions, alternative proximity connectors, custodian limitations, date-range narrowing, or any other meaningful compromise that would allow Plaintiffs and Defendants (and the Court) to evaluate proportionality. Even after Plaintiffs narrowed their proposal further in an attempt to reach a compromise (Ex. 7), Defendants again refused any addition or modification whatsoever. Ex. 8 at 3. By categorically refusing to use ***even a single one*** of Plaintiffs' proposed searches on these core issues, Defendants violated their obligation to cooperate in discovery and contravened the ESI joint-development framework.

*In re eBay Seller Antitrust Litig.*, 2009 WL 10694848 (N.D. Cal. 2009), is on point. There, the court held that a defendant's "failure to incorporate any of plaintiffs' input into the terms ultimately applied undercuts its request to shut off any further effort to retrieve relevant

- 4 -

4920-1830-8996.v1

responsive documents." *Id.* at *2.  The court ordered the defendant – which had already reviewed 650,000 documents and produced 1.9 million pages – to apply over 100 additional, plaintiff-proposed terms, explaining that any overlap did not render plaintiffs' terms superfluous and could be addressed through de-duplication. *Id.*  The lesson is straightforward: a producing party cannot claim it has done enough while simultaneously refusing to use targeted, facially relevant terms proposed by the requesting party.  The same logic applies with even greater force here: Defendants cannot be permitted to stonewall targeted discovery into the non-title drivers of sales simply because they have produced a fraction of the documents expected in a case of this magnitude.  As such, the Court should compel Defendants to implement Plaintiffs' proposed search terms in Appendix A across all custodians to ensure a complete and relevant record.[2]

### B. Plaintiffs' Proposed Search Terms Are Necessary to Remedy Blatant Deficiencies in Defendants' Search Parameters

Defendants' search terms are overwhelmingly skewed toward one segment of the case – title and registration.  Indeed, only 18% of their search terms concern the other multiple drivers of Carvana's sales and artifices underlying the alleged scheme and misstatements.  That imbalance is irreconcilable with this Court's order entitling Plaintiffs to broad discovery into all alleged drivers of retail sales, not just one subset of the case.  Because Plaintiffs' proposed terms in Appendix A directly target these omitted subject areas and are narrowly tailored to capture responsive ESI, the motion should be granted.

### 1. Defendants Must Utilize a Relevant, Narrowly-Tailored Term Regarding Carvana's Sales Growth

Discovery concerning Carvana's growth in retail sales, including the drivers of that growth, is central to this litigation, as two of the upheld misstatements concern that very subject. *See* ¶¶211-215; ECF 105 at 23-26; ECF 173 at 3.  Moreover, Plaintiffs' scheme claim alleges that Defendants employed seven artifices to inflate Carvana's ***retail sales growth*** and convince investors that this growth was sustainable. ¶¶125-165.  Naturally, Plaintiffs' RFPs 3-12, 15, 19, and 22 sought information on these topics.  App. A at 1; *see* Ex. 1.

---

[2]  Some search strings are limited to specific individuals or specific time periods.  Those strings should be run against only the specific custodians or for the specified time period.

Nevertheless, as discussed *supra*, Defendants' search terms are unduly skewed toward title and registration. Worse, the few terms that are not so limited are so facially restrictive that they functionally preclude the collection of relevant documents. Specifically, Defendants' proposed search strings on this topic excludes documents concerning "sales" or "units" unless they contain the magic phrases "retail unit" or "retail sale." Ex. 7 at Ex. A (Rows 14, 151). But as Defendants conceded: retail sales are "the foundation of the company, its entire business model." ECF 172 at 10:13-17. As such, it is implausible that insiders would specify in their ***internal*** communications that the sales or units at issue were "retail sales" or "retail units."

Indeed, courts routinely reject search protocols that assume employees speak in formal, investor-facing terminology rather than the shorthand used in real-world internal communications. *See Ronduen v. GEO Grp. Inc.*, 2025 WL 1112657, at \*10, \*12 (C.D. Cal. 2025) (finding defendant's search string inadequate and ordering them to run plaintiffs' term after considering how employees may have actually spoken). Just as it would be artificial to require an attorney to specify "legal research" when discussing research for a brief, it is artificial to require Carvana employees to specify "retail" when discussing Carvana's core sales activity. Accordingly, Defendants should run Plaintiffs' proposed search string, which on its face captures discussions of sales growth and its drivers using ordinary business language, while also incorporating a proximity connector to address any asserted burden concerns. App. A at 1-2.

While Defendants may cry burden, the burden must be undue, not merely inconvenient. Here, where the proposed search string is objectively relevant and Defendants admit that the Order "greatly expand[ed] discovery" into Carvana's very "foundation" (ECF 172 at 10:13-17), the motion should be granted and Defendants ordered to use Plaintiffs' term. App. A at 1; *see SinglePoint Direct Solar LLC v. Solar Integrated Roofing Corp.*, 2023 WL 2585296, at \*3 (D. Ariz. 2023) (overruling an "undue burden objection" and ordering producing party to use receiving party's proposed terms where "the parties have known from the beginning of this case that the discovery in this case would be significant (and have represented that knowledge to the Court on multiple occasions)").

- 6 -

4920-1830-8996.v1

**2.     Defendants Must Utilize Relevant Terms Concerning Carvana's Purchasing and Verification Standards**

Plaintiffs' proposed search terms capturing documents concerning Carvana's purchasing and verification standards (App. A at 2-5) are indispensable to the upheld misstatement and scheme claims. As alleged, Defendants deliberately lowered these standards to inflate Carvana's retail growth, making internal communications on this topic central to proving both falsity and scienter. *See* ¶¶130-138, 213(a), 213(a)(iii), 215(a), 215(a)(iii), 384(a)(iii). These documents are directly responsive to RFP 8, among others. Ex. 1 at 12; App. A at 2.

Defendants' proposed search terms for this core issue are transparently deficient, as they focus exclusively on the terms "standard," "acquisition," and "quality," and even then, ***only within highly restrictive parameters***. *See* Ex. 7 at Ex. A (Rows 158-162). By tethering their searches to such narrow modifiers, Defendants' terms will systematically exclude highly relevant documents that: (i) discuss these topics without meeting Defendants' arbitrary proximity limitations; (ii) utilize common industry and internal descriptors such as "condition," "grade," "rating," and/or "appearance" of vehicles; or (iii) concern the critical (and allegedly bypassed) inspection process.

For example, Defendants propose the search string, Purchase* w/3 standard*, but this string is surgically narrow both in terms of the words and proximity connector. Indeed, it would miss nearly every substantive internal discussion regarding the actual practice of purchasing poor-quality vehicles, the failure to perform adequate inspections, or the decision to make offers on "trash" or "junk" inventory. Similarly, Defendants' proposed string "low quality" OR "low-quality" OR "poor quality" ignores how employees actually communicate in a real-world business environment. It would fail to capture any document discussing the condition, grade, or appearance of vehicles (and how those metrics were monitored or manipulated) unless those exact formal phrases were used. As recent authority confirms, search strings must account for how employees may have actually spoken to be adequate. *See Ronduen*, 2025 WL 1112657, at *10, *12.

In contrast, Plaintiffs' proposed searches utilize the very terminology found within

- 7 -

4920-1830-8996.v1

Carvana's own internal documents. App. A at 4. Specifically, Plaintiffs identified that Carvana employees used the terms "kick," "kicks," or "kick rate*'" to refer to vehicles appraised as retail that were subsequently "kicked" to wholesale due to poor quality. Ex. 10. Defendants' refusal to incorporate these proprietary terms is a blatant attempt to shield evidence of the alleged scheme. Furthermore, Defendants' rejection of terms that result in as few as **27 unique hits**, a *de minimis* burden by any standard, only underscores their unreasonableness. App. A at 4; Ex. 9 at 1. Because Defendants' terms are facially designed to avoid capturing relevant evidence, the Court should compel the implementation of Plaintiffs' terms. App. A at 2-5.

### 3. Defendants Must Utilize Relevant, Narrowly-Tailored Terms Concerning Carvana's Nationwide Expansion

Plaintiffs are unequivocally entitled to discovery regarding Carvana's expansion. The Complaint adequately alleges that Defendants spearheaded a nationwide expansion, without regard for profitability, to artificially inflate retail sales while omitting that this growth was largely driven by less profitable sales in far-flung markets. ¶¶139-143, 213(a)(ii), 215(a)(ii), 384(a)(ii). These sales allegedly ravaged Carvana's bottom line and stretched its logistics and reconditioning network to the brink, forcing Defendants to spend millions of dollars on costly third-party providers to mask internal deficiencies. *E.g.*, ¶¶213(a)(ii), 215(a)(ii), 384(a)(ii). RFP 10, among others, seek information squarely within this upheld area of discovery. Ex. 1 at 12-13; App. A at 6.

Defendants' proposed search terms for this topic are surgically narrow and fundamentally insufficient. Their terms only capture documents if they contain specific, limited keywords such as "Wholesale," "third party" (or "third-party"), "Expansion," or "recondition*." Ex. 7 at Ex. A (Rows 167-168, 171, 173-176). Critically, they will only do so in highly limited circumstances given Defendants' proposed connections. For example, Defendants' search string – Wholesale w/10 (impact* OR result* OR caus*) w/10 (profit* OR logistic* OR margin*OR expens*) – utilizes two sets of limiting modifiers that would likely exclude critical internal discussions regarding logistics causing higher expenses, constrained resources, or limited capacity. ¶¶141-142, 213(a)(ii), 215(a)(ii), 384(a)(ii). Similarly, documents concerning expansion logistics, such

- 8 -

4920-1830-8996.v1

as facilities being too far from pickups or requiring excessive shipping, would be missed entirely.  ¶¶140-142, 213(a)(ii), 215(a)(ii), 384(a)(ii).

Particularly egregious is Defendants' refusal to budge from the exact term "Expansion" in the following search string: (Expansion w/5 (market* OR state* OR region* OR northwest OR pacific OR nationwide)) AND (profit* OR logistic* OR expens* OR strain*).  By insisting on this single iteration, Defendants effectively shield every internal document that discusses the company "expanding," planning to "expand," or having "expanded."  The Ninth Circuit has recently cautioned against exactly this type of restrictive keyword selection, noting that a search is inadequate when it fails to encompass "closely related variants" of a core term.  *See Inter-Coop. Exch. v. U.S. Dep't of Com.*, 36 F.4th 905, 913 (9th Cir. 2022).

Plaintiffs' proposed terms rectify these gaps and ensure the production of documents central to the fraudulent scheme.  App. A at 6-8.  Because these terms are relevant and represent no undue burden, the Court should compel Defendants to run the proposed searches.

### 4.     Defendants Must Utilize Relevant Terms Concerning Carvana's Sham Transactions with Garcia Sr.

Carvana's relationship with Garcia Sr.'s DriveTime Automotive Group, Inc. ("DriveTime") is a foundational issue in this litigation.  Plaintiffs allege that Carvana's sham pass-through sales agreement with DriveTime resulted in sales that lacked any economic substance, served as a core artifice of the fraudulent scheme, and constituted a material, undisclosed driver of Carvana's sales growth.  ¶¶127-129, 215(a), 215(a)(v), 384(a), 384(a)(v). Over Defendants' objections, the Court held Plaintiffs are entitled to "broad" discovery relating to these allegations.  ECF 173 at 2-4.  Accordingly, Plaintiffs propounded, *inter alia*, RFPs 12-14 and 28 to obtain this critical evidence.  Ex. 1 at 13-14, 16-17; App. A at 8.

Nevertheless, most of Defendants' proposed terms concerning DriveTime are severely handicapped by restrictive modifiers, reflecting a lack of any serious intent to identify relevant documents.  For instance, Defendants propose surgically narrow strings such as: (i) DriveTime w/5 pass-through; (ii) DriveTime w/5 "list price"; and (iii) DriveTime w/5 (COGS OR COS). Ex. 4 at 1-2.  Unsurprisingly, these restrictive parameters are designed to fail: four of the ten

- 9 -

DriveTime search strings result in paltry hit counts of only 5 to 10 hits each, and one string returned *zero documents* from the entire collected universe.  Ex. 9 at 14.

Despite these objectively failed results, Defendants remain unwilling to modify their deficient terms or share the underlying information that would inform a productive search of this subject – notably, the terms used to cull information regarding related-party transactions currently under SEC investigation.  ECF 224-4, Ex. 4 at 1.  Given the centrality of these sham transactions and that Defendants' own metrics prove their terms fail to capture relevant evidence, Defendants must be compelled to use Plaintiffs' proposed terms.  App. A at 8-9.[3]

### 5.    Defendants Must Utilize Relevant, Narrowly-Tailored Terms Concerning Title and Registration

Although Defendants' search terms are heavily and disproportionately weighted toward the title-and-registration component of Plaintiffs' case, even Defendants' own title-and-registration search terms fail to capture key categories of responsive documents because they ignore critical allegations, jurisdictions, and terminology expressly upheld by Judge Liburdi.

***First***, Defendants refuse to run search terms regarding title-and-registration risk disclosures and regulatory issues in North Carolina and Illinois, even though those terms yield only 74, 345, and 266 unique hits, respectively.  App. A at 10; *see* Ex. 3 at 1-2.  This refusal is indefensible.  Judge Liburdi squarely held that Statement Nos. 1-8 concerning Carvana's title-and-registration practices and risk disclosures are actionable because Defendants failed to "disclose . . . that Carvana systematically violated state title and registration laws," including in North Carolina and Illinois.  ECF 105 at 11-20 (citing ¶¶173-189); *see also* ¶¶179(a), 181(a)-(b), 183(a), 185(a), 187(a), (c), 189(a), 386(a), 387-391 (alleging Carvana's title-and-registration statements, including its risk disclosures, were materially misleading because they omitted that Carvana was systematically violating laws in "North Carolina" and "Illinois").  Search terms

---

[3]    If Defendants argue that certain terms concern Garcia Sr.'s companies beyond DriveTime, the Complaint is replete with allegations relating to all three Garcia Sr. entities.  *See, e.g.,* Complaint, §VI.A (DriveTime); ¶¶264 & n.155, 299 (Verde Investments); ¶300 n.163 (Bridgecrest).  Regardless, as this Court recognized, while "'the allegations in a complaint generally dictate what evidence is discoverable . . . , the scope of permissible discovery is not based solely on whether a transaction is expressly mentioned in the complaint.'"  ECF 173 at 4.

4920-1830-8996.v1

directed at these very jurisdictions go to the heart of the Court's ruling and cannot be credibly resisted. Nor can Defendants establish that these searches seeking documents responsive to RFPs 3-6 (among others) pose any burden at all, let alone an undue one. App. A at 10; *SinglePoint*, 2023 WL 2585296, at *1, *3-*4 (compelling use of 28 disputed search strings resulting in 287,381 hits, finding any burden was not "undue"); [Proposed] Order at 4-5, *SinglePoint Direct Solar, LLC v. Solar Integrated Roofing Corp.*, No. 2:21-cv-01076-JAT (D. Ariz. Mar. 13, 2023), ECF 186-1 (listing out the terms and hits). Accordingly, the Court should compel Defendants to run Plaintiffs' targeted terms. App. A at 10-11.

*Second*, Defendants' refusal to run Plaintiffs' proposed search terms buffer* or cushion* is equally unsupportable. App. A at 10. These terms seek information that is: (i) responsive to RFP 5 (Ex. 1 at 11); (ii) directly relevant to Plaintiffs' allegations that Carvana's risk disclosures were misleading because they omitted the material fact that Carvana implemented "***buffers*** in many states to provide ***cushion*** for their title and registration teams" (¶187(b)); and (iii) not burdensome, yielding only 2,133 unique hits. App. at 11. Defendants' counterproposal, by contrast, is artificially circumscribed and omits the word "cushion" altogether. *See* Ex. 7 at Ex. A (Row 155). Such selective narrowing is inconsistent with Defendants' discovery obligations.

In sum, Plaintiffs' proposed title-and-registration search terms are squarely aligned with the Court's liability rulings, narrowly tailored, and necessary to cure obvious deficiencies in Defendants' search protocol. The Court should therefore grant Plaintiffs' motion and order Defendants to implement these terms. App. A at 10-11.

### 6. Defendants Must Address Other Deficiencies in Their Search Parameters

Defendants must also run Plaintiffs' other narrowly-tailored terms that are specifically designed to capture core evidence relevant to liability, scienter, loss causation, and class certification. Defendants' refusal to run these additional terms reflects the same pattern of under-inclusive, outcome-driven search design that infects their overall protocol.

*First*, Defendants should run Plaintiffs' proposed terms concerning Rule 10b5-1 trading plans. App. A at 12. These terms are facially relevant and responsive to RFPs 27-28,

- 11 -

4920-1830-8996.v1

among others. *Id.* at 11. It is well established that a defendant's insider sales are probative of scienter. ECF 91 at 42, 46-47 (citing cases). That Plaintiffs are entitled such discovery is indisputable – the Complaint alleges Garcia Sr. and Jenkins manipulated their trading plans in connection with the alleged fraudulent scheme (¶¶160-162), *and* Defendants themselves affirmatively relied on their purported 10b5-1 trading plans in this action to argue against scienter. Nevertheless, for Garcia Jr. and Jenkins only, Defendants refuse to run two plainly relevant search strings: (i) "10b5*1" OR "trading plan*"; or (ii) Plan* w/10 ((chang* OR terminat* OR cancel* OR outside) AND (stock* OR share* OR sell* OR sale* OR trad*)). *See* App. A at 12.

Defendants' refusal is particularly indefensible given the *de minimis* burden associated with these searches: the terms result in ***just 54 and 169*** unique hits, respectively. *Id.*; *see Ronduen*, 2025 WL 1112657, at *10 (ordering use of disputed search term that resulted in "'at most 801 unique hits'" and was thus not "unduly burdensome"). Defendants cannot both invoke their trading plans as a merits defense and simultaneously refuse to search for documents bearing directly on those plans. The Court should therefore compel Defendants to use these relevant, narrowly-tailored terms.

***Second***, Defendants must run Plaintiffs' proposed terms related to Carvana's 2022 secondary stock offering ("2022 Offering"), which do not pose an undue burden. App. A at 13-14. The 2022 Offering is central to Plaintiffs' Securities Act of 1933 ("Securities Act") claims. ¶¶1 n.2, 365-448. Nevertheless, Defendants refuse to run two facially relevant search strings related to the 2022 Offering that yield ***only 91 and 2,114*** unique hits. App. A at 13. Notably, Defendants' own proposed search string is limited by the term "IPO" – even though the 2022 Offering was ***not*** an IPO. *See* Ex. 7 at Ex. A (Row 4). That limitation alone ensures the omission of highly relevant 2022 Offering-related communications.

Moreover, Defendants refuse to run a term capturing communications with individuals at Citigroup Global Markets Inc. ("Citigroup"), even though ***Citigroup served as an underwriter for the 2022 Offering and is a defendant in this litigation***. App. A at 14. Plaintiffs' proposed Citigroup search term is objectively reasonable, resulting in just 433 unique hits. *Id.* Indeed,

- 12 -

4920-1830-8996.v1

Garcia Sr. – who is not even a Securities Act defendant – agreed to use a substantially similar term, further underscoring the unreasonableness of Defendants' position.  Ex. 11 at 1-2.[4]

**Third**, Defendants must utilize Plaintiffs' proposed terms relevant to securities fraud issues and class certification including documents concerning artificial stock-price inflation, analyst sentiment, and communications with analysts.  App. A at 15-18.  The impact of the alleged fraud on Carvana's stock price, and analysts' reactions to Carvana's disclosures, are core discovery in any securities fraud case, including this case.  *See, e.g.*, ¶3 (alleging fraudulent scheme and misrepresentations were designed to artificially inflate Carvana's share prices); ¶126 (alleging analysts expressed alarm that Carvana's growth was slowing); ¶181(c) (analysts bought Defendants' misleading assurances).  As Plaintiffs explained in their Motion to Modify the Scheduling Order and reply, these documents are particularly critical to the forthcoming class certification briefing.  ECF 217 at 14; ECF 233 at 8-9.  Judge Liburdi granted that motion and extended all deadlines, including those relating to class certification.  ECF 239.

Defendants' existing search strings in this area are manifestly deficient.  For example, Defendants propose the following search string: (CVNA w/3 price) w/5 (reason* OR becaus* OR sentiment OR investor*).  *See* Ex. 7 at Ex. A (Row 34).  It is highly unlikely that Carvana insiders discussed Carvana's share price by using its ticker symbol.  Rather, insiders would naturally say something like, "our stock price is down today," which Defendants' search would not capture.  *See, e.g.*, *Ronduen*, 2025 WL 1112657, at *12 (ordering use of search string that included the terms "vomit*" and "throw up" rather than merely "nausea" because it was "likely, if not certain" that "detainees will use several different words to describe" the issues).  Compounding the defect, Defendants' search string does not even include terms referring to stock price movement.  Unsurprisingly, the result is a ***single*** hit.  Ex. 9 at 9.  That outcome reflects a broken search protocol, not the absence of responsive documents.

**Fourth**, Defendants should utilize Plaintiffs' searches aimed at Garcia Jr.'s and Jenkins's stock awards, holdings, transactions, and compensation.  App. A at 11-12.  Defendants'

---

[4]  Given the 2022 Offering's importance, Defendants should also run two search strings aimed at communications with Carvana's counsel involved in the 2022 Offering.  App. A at 14.

- 13 -

4920-1830-8996.v1

compensation and stock transactions are highly relevant, responsive to RFPs 25-26, and plainly discoverable. *See Hall v. Rent-A-Center, Inc.*, 2018 WL 4293141, at \*7-\*8 (E.D. Tex. 2018) (compelling use of search strings concerning defendants' stock trades and compensation); *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 310 (2007) ("personal financial gain may weigh heavily in favor of a scienter inference"). Defendants offer no legitimate justification for refusing to run these terms.

*Fifth*, Defendants must utilize Plaintiffs' proposed terms to identify responsive documents regarding the timing and reasons for the departure of Mike Levin, who was a speaker for one of the upheld title-and-registration misstatements. ¶¶180-181; App. A at 12-13. Although Defendants have agreed to produce documents regarding his departure in response to RFP 30, they have proposed *no* search terms to identify those documents, rendering that commitment illusory. Plaintiffs' proposed terms are modest and reasonable, limited to a narrow relevant time period, and result in only 4,751 and 1,306 hits. App. A at 12-13.

*Finally*, Defendants must be compelled to run Plaintiffs' proposed search term concerning the SEC. App. A at 18. Given that this is a securities case and the Complaint expressly alleges an ongoing SEC investigation, Carvana's communications with the SEC are inherently relevant. ¶127 n.10. The burden is negligible as the term yields only 152 unique hits. App. A at 18. Defendants' refusal to run even this modest, regulator-focused term further illustrates their systematic resistance to meaningful discovery.

**C.    Plaintiffs' Narrowly-Tailored Search Proposal Is Proportional to the Needs of the Case**

Defendants' principal objection to Plaintiffs' proposed search terms – that they could yield 689,934 additional documents for review (Ex. 8 at 1) – does not come close to establishing undue burden. "A voluminous ESI case is always going to be burdensome," and that simply is "an unfortunate reality of ESI heavy, high-dollar commercial cases." *SinglePoint*, 2023 WL 2585296, at \*3. But "given what is at stake," it cannot be said "that the burden of document review is so high as to warrant denying [Plaintiffs] relevant discovery." *Id.*; *see also Strategic Partners, Inc. v. FIGS, Inc.*, 2020 WL 2527056, at \*7 (C.D. Cal. 2020) ("'[T]hat

- 14 -

responding to a discovery request will require the objecting party to expend considerable time, effort and expense consulting, reviewing and analyzing huge volumes of documents and information is an insufficient basis to object to a relevant discovery request.'").

In document-intensive securities class actions alleging multi-year schemes, precisely like this one, courts routinely oversee productions measured in millions of documents or pages – not the thousands of which Defendants here complain. *See Garner v. Amazon.co, Inc.*, 2022 WL 16553158, at *2 (W.D. Wash. 2022) (rejecting defendants' contention that adding "***as many as 4.4 million***" "responsive documents" to their review population was overly burdensome); *N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 231 (E.D. Mich. 2016) (defendants ***produced over 13 million pages of documents***), *aff'd sub nom., Marro v. N.Y. State Tchrs.' Ret. Sys.*, 2017 WL 6398014 (6th Cir. 2017); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *5 (S.D.N.Y. 2009) (defendants produced "***over thirty-four million pages of documents***"); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *1 (S.D.N.Y. 2010) (defendants ***produced "more than 2.4 million pages of documents***"); *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *3 (C.D. Cal. 2014) (defendants produced "more than ***1.5 million pages of documents***"); *Herrera v. Wells Fargo Bank, N.A.*, 2021 WL 9374975, at *5 (C.D. Cal. 2021) (defendants ***produced "more than a million pages of documents***").  And these figures necessarily understate the true scope of the ESI review, as productions reflect only the responsive, non-privileged subset of documents; the underlying review populations are invariably much larger, culled through ordinary tools such as de-duplication, responsiveness review, and privilege screening.

Defendants' fixation on a raw, undifferentiated document count also ignores Rule 26(b)(1)'s holistic proportionality analysis, which considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense . . . outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  As the resisting party, Defendants bear the burden of showing disproportionality and "'clarifying, explaining, and supporting [their] objections.'"  *See Eli Lilly*, 2018 WL 11676941, at *2.

- 15 -

4920-1830-8996.v1

Applied here, every Rule 26 factor favors Plaintiffs' proposal. *First*, Plaintiffs' search terms are narrowly tailored to the claims and defenses and have been refined over multiple meet-and-confers to target core issues. *Second*, the stakes are enormous: this putative class action seeks recovery of billions of dollars on behalf of thousands of investors. *Third*, the key ESI – internal data, analyses, and communications bearing on falsity, materiality, scienter, and loss causation – resides exclusively with Defendants. *Fourth*, Carvana's vast resources, including a market capitalization exceeding $100 billion, weigh heavily in favor of production commensurate with the case's scope. *Fifth*, as discussed *supra* §III.B, the requested discovery goes to the heart of the merits. *Finally*, even assuming review entails substantial effort (which Defendants have not substantiated), the likely benefit of discovery far outweighs any burden, particularly when ordinary culling tools, such as de-duplication, can substantially reduce review volume. *See, e.g.*, *Garner*, 2022 WL 16553158, at *1-*2 (finding requests proportional given "the importance of the issues at stake, . . . the amount in controversy," defendants' "exclusive access to the information," and defendant-corporation's resources). In short, while "[689,934] responsive documents is voluminous," that volume "is proportional to the case as a whole." *SinglePoint*, 2023 WL 2585296, at *2-*3 (overruling objection to search protocol that added 287,381 documents, for a total of 409,988 documents, in a "sophisticated" commercial litigation involving just "$16 million in damages").

Defendants also point to a handful of instances where Plaintiffs' terms allegedly captured irrelevant documents. Ex. 8 at 1-2. For example, they object to the term "lemon*," professing ignorance of its obvious relevance and complaining that it picks up documents discussing "lemonade." *Id.* at 2. That objection borders on the frivolous. The colloquial term "lemon" is universally used to refer to a vehicle with significant, unfixable defects – a concept directly relevant to Plaintiffs' allegations that Carvana appraised low-quality vehicles as retail and was forced to divert them to wholesale. As courts have explained: "[T]hat a search term is relevant does not eliminate the possibility that it will produce irrelevant documents. Conversely, the fact that a search term will produce irrelevant documents does not mean the term should not be used . . . ." *SinglePoint*, 2023 WL 2585296, at *3 (overruling producing party's

- 16 -

4920-1830-8996.v1

"relevance objections to the search terms themselves" and explaining that the producing party may review hits "for relevance and withhold irrelevant documents"). That principle applies with full force here. If Defendants believed certain terms produced false positives, the appropriate response is reasonable refinements or exclusions (*e.g.*, lemon* AND NOT lemonade), not refusal to run the terms altogether. *See Abbawi v. Henry Ford Health Sys.*, 2025 WL 36153, at *6 (E.D. Mich. 2025) (faulting defendants for failing to "inform[] Plaintiff of any deficiency [in plaintiff's terms] in the hopes of producing more narrowly tailored ESI").

In short, Plaintiffs' search term proposal is carefully tailored, evidence based, and fully proportional to the needs of the case under Rule 26(b)(1). It should be implemented in full.

## IV.   CONCLUSION

Because the discovery sought is squarely relevant, narrowly tailored, and proportional under Rule 26(b)(1), the Court should grant Plaintiffs' motion to compel and order Defendants to run all of Plaintiffs' proposed searches set forth in Appendix A across all designated custodians, subject to only the limited exceptions noted *supra* at 5 n.2. Defendants' categorical refusal to run any of these terms is inconsistent with their discovery obligations and the Court's prior rulings entitling Plaintiffs to broad discovery on the alleged scheme. Judge Liburdi recently extended the deadline for Defendants to substantially complete document productions to February 27, 2026 and for Plaintiffs to file their class certification motion to April 6, 2026. Those extensions were granted to ensure a fair and complete discovery process – not to permit further delay or underproduction. To ensure both deadlines can be met, and because Defendants have already collected the relevant custodial data against which these search terms must be applied, Plaintiffs respectfully request that the Court order Defendants to begin weekly rolling productions within 14 days of the Court's order, to proceed on a weekly basis thereafter, and to prioritize production of those documents that hit on the search terms identified in the "Stock Price Movements and Analyst Communications" section of Appendix A, which are particularly relevant to class certification issues.

- 17 -

4920-1830-8996.v1

DATED: December 30, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN
(Admitted *pro hac vice*)
TOR GRONBORG
(Admitted *pro hac vice*)
ERIKA L. OLIVER
(Admitted *pro hac vice*)
RACHEL A. COCALIS
(Admitted *pro hac vice*)
MATTHEW J. BALOTTA
(Admitted *pro hac vice*)
SARAH A. FALLON
(Admitted *pro hac vice*)


        s/ Daniel S. Drosman
      DANIEL S. DROSMAN

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
ddrosman@rgrdlaw.com
torg@rgrdlaw.com
eoliver@rgrdlaw.com
rcocalis@rgrdlaw.com
mbalotta@rgrdlaw.com
sfallon@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ROBERT M. ROTHMAN
(Admitted *pro hac vice*)
DAVID A. ROSENFELD
(Admitted *pro hac vice*)
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
rrothman@rgrdlaw.com
drosenfeld@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

O'DONOGHUE & O'DONOGHUE LLP
DINAH S. LEVENTHAL
5301 Wisconsin Avenue, N.W., Suite 800
Washington, D.C. 20015
Telephone: 202/362-0041
202/362-2640 (fax)
dleventhal@odonoghuelaw.com

- 18 -

4920-1830-8996.v1

Additional Counsel for Lead Plaintiffs

BONNETT FAIRBOURN FRIEDMAN
  & BALINT PC
ANDREW FRIEDMAN
7301 N. 16th Street, Suite 102
Phoenix, AZ  85020
Telephone: 602/274-1100
602/274-1199 (fax)
afriedman@bffb.com

Local Counsel

- 19 -

4920-1830-8996.v1