# EXHIBIT 1

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN (CA 200643)
TOR GRONBORG (CA 179109)
ERIKA L. OLIVER (CA 306614)
RACHEL A. COCALIS (CA 312376)
SARAH A. FALLON (CA 345821)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
ddrosman@rgrdlaw.com
torg@rgrdlaw.com
eoliver@rgrdlaw.com
rcocalis@rgrdlaw.com
sfallon@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re Carvana Co. Securities Litigation | ) ) ) | No. CV-22-2126-PHX-MTL |
| This Document Relates To: | ) ) ) ) | LEAD PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO THE CARVANA DEFENDANTS |
| All Actions. | ) ) ) | |

4925-0907-3957.v1

Pursuant to Federal Rules of Civil Procedure 26 and 34 and Rules of Practice and Procedure of the U.S. District Court for the District of Arizona, Lead Plaintiffs United Association National Pension Fund and Saskatchewan Healthcare Employees' Pension Plan request that defendants Carvana Co., Ernest Garcia III ("Garcia Jr."), Mark Jenkins ("Jenkins"), Stephen Palmer, Michael Maroone, Neha Parikh, Ira Platt, and Greg Sullivan (collectively, the "Carvana Defendants"), each individually and separately, respond to and produce for inspection and copying the documents designated under the heading "Documents Requested" within 30 days of the date of service hereof to the offices of Robbins Geller Rudman & Dowd LLP, 655 West Broadway, Suite 1900, San Diego, California 92101, or at such other time and place as the parties mutually agree.

## I.      DEFINITIONS

Unless stated otherwise, the terms set forth below are defined as follows:

1.      "2022 Public Offering" refers to the offering of Carvana securities on or about April 20, 2022.

2.      "Action" refers to the above-captioned lawsuit, including all actions consolidated herein.

3.      "All," "any," and "each" shall each be construed as encompassing any and all.

4.      "Answer" refers to the Carvana Defendants' Answer and Affirmative Defenses to Lead Plaintiffs' Amended Consolidated Complaint filed on January 22, 2025.  ECF 115.

5.      "Carvana" or the "Company" refers to Carvana Co., any of its direct or indirect subsidiaries, divisions or affiliates (foreign and domestic), predecessors, successors, former officers, directors, employees, agents, directors, accountants and advisors, and all other persons acting or purporting to act on its behalf.

6.      "Communication" or "communications" means emails, text messages, letters, or any other transmittal of information (in the form of facts, ideas, inquiries, or otherwise), including all attachments thereto.

7.      "Complaint" means Lead Plaintiffs' Amended Consolidated Complaint for Violations of the Federal Securities Laws filed on March 29, 2024.  ECF 71.

- 1 -

4925-0907-3957.v1

8. "Concerning" means relating to, referring to, describing, evidencing, or constituting.

9. "Defendants" refers to the Carvana Defendants, Ernest Garcia II ("Garcia Sr."), and the Underwriter Defendants (defined herein).

10. "Document" or "documents" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A) and encompasses communications. A draft or non-identical copy is a separate document within the meaning of this term.

11. "DriveTime" refers to DriveTime Automotive Group, Inc.

12. "Electronically stored information" or "ESI" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), mechanical, facsimile, electronic, magnetic, digital or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail or "email," operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file layouts, or any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, backup file, deleted file or file fragment. "Electronic data" also includes, without limitation, any items stored on computer memory or memories, hard drives, zip drives, CD-ROM discs, or in any other vehicle for electronic or digital data storage or transmittal, files, folder tabs or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

13. "Employee" refers to any person who at any time acted or purported to act on your behalf or under your supervision, direction or control, including, without limitation,

4925-0907-3957.v1

past directors, officers, principals, partners, executives, analysts, investment bankers, consultants, advisors, representatives, agents, trustees, independent contractors, assigns, businesses, or similar persons or entities.

14.    "Entity" or "entities" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

15.    "Garcia Parties" refers to Garcia Sr., Garcia Jr., and entities controlled by one or both of them.

16.    "GPU" has the same meaning as used in Carvana's 2020 Form 10-K and in the August 5, 2021 Shareholder Letter.

17.    "Identify," with respect to persons, means to give, to the extent known, the person's full name, present or last known address, present or last known email address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

18.    "Identify," with respect to documents, means to give, to the extent known, the: (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s), and recipient(s).

19.    "Including" means including, but not limited to.

20.    "Individual Defendants" refers to Garcia Jr., Jenkins, Garcia Sr., Stephen Palmer, Michael Maroone, Neha Parikh, Ira Platt, and Greg Sullivan.

21.    "Meeting" refers to the contemporaneous presence of any natural persons (including by telephone or by any other electronic means) for any purpose, whether such presence was by chance or prearranged, and whether the meeting was formal or informal, or occurred in connection with some other activity.

22.    "Meter" has the same meaning as in ¶¶213(a)(iii), 215(a)(iii), or 384(a)(iii) of the Complaint.

- 3 -

4925-0907-3957.v1

23. "MTD Order" refers to the Court's December 16, 2024 Order on Defendants' motion to dismiss (ECF 73) and joinders to motion to dismiss (ECF 76, 79). ECF 105.

24. "Offering Documents" refers to the Registration Statement (defined herein), Prospectus Supplement (defined herein), and all documents incorporated therein.

25. "Pass-Through Arrangement" has the same meaning as in ¶¶127-129 of the Complaint.

26. "Person" or "persons" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

27. "Prospectus Supplement" refers to the Form 424B2 that Carvana filed with the SEC (defined herein) on April 25, 2022.

28. "Registration Statement" refers to the Form S-3 Registration Statement that Carvana filed with the SEC on April 20, 2022.

29. "Reporting Period" refers to each period end for which a Form 10-K or Form 10-Q was required to be filed with the SEC.

30. "Request" or "Requests" refers to these Requests for Production of Documents to the Carvana Defendants.

31. "SEC" refers to the United States Securities and Exchange Commission.

32. "Security" or "securities" refers to any note, stock, treasury stock, bond, debenture, certificate, or other evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit or any certificate of interest or participation in, receipt for or warrant or right to subscribe to or purchase any of the foregoing.

33. "Underwriter Defendants" refers to Citigroup Global Markets Inc. and J.P. Morgan Securities LLC.

34. "Verde Investments" refers to Verde Investments, Inc.

35. "You" or "your" means the person or entity responding to these requests.

- 4 -

4925-0907-3957.v1

36.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

## II.    INSTRUCTIONS

1.    In responding to these requests, you shall produce all responsive documents that are in your possession, custody, or control, or in the possession, custody, or control of your predecessors, successors, parents, subsidiaries, divisions, or affiliates, or any of your respective directors, executives, officers, partners, managing agents, agents, employees, accountants, or any other representative.  A document shall be deemed to be within your control if you have the ability or right to secure the document or a copy of the document from another person having possession or custody of the document.  You shall produce said documents as they are kept in the usual course of business and shall organize and label them to correspond with the categories in the request.

2.    In responding to these requests, you shall produce all responsive documents available at the time of production and you shall supplement your responses as required by Fed. R. Civ. P. 26(e).

3.    If any responsive document was, but no longer is, in your possession or subject to your control, state whether the document is: (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of, and in each instance identify the name and address of its current or last known custodian, and the circumstances surrounding such disposition.

4.    If you claim any form of privilege or any other objection, whether based on statute, common law, or otherwise, as a ground for not producing any requested document, please furnish a privilege log identifying each document for which the privilege or other objection is claimed together with the following information:

(a)    the privilege being asserted;

(b)    the person on whose behalf the privilege is asserted; and

- 5 -

4925-0907-3957.v1

(c)    a precise statement of the facts upon which the claim of privilege is based.

The privilege log should also identify each document for which the privilege is claimed, including:

(d)    the document's nature, *e.g.*, letter, memorandum, tape, etc.;

(e)    the date the document was prepared;

(f)    the date the document bears;

(g)    the date the document was sent;

(h)    the date the document was received;

(i)    the name of the person who prepared the document;

(j)    the name(s) of the person(s) who received the document; and

(k)    the name of each person to whom the document was sent or was intended to be sent, including all addressees and all recipients of copies.

5.    If a portion of any document responsive to these requests is withheld under claim of privilege pursuant to Instruction 4, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

6.    You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instructions 3 and 4 above), regardless of whether you consider the entire document to be relevant or responsive to the requests.

7.    The singular of any term includes the plural, and the disjunctive shall include the conjunctive, and vice versa.

## III.    PRODUCTION OF HARD-COPY DOCUMENTS – FORMAT

Hard-copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME," and "CUSTODIAN." The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the

- 6 -

4925-0907-3957.v1

usual course of business. If an original document contains color, and the color is necessary to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. Multi-page OCR text for each document should also be provided. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

## IV.    PRODUCTION OF ESI

1.    Format: Except where otherwise noted in this section, electronically stored information ("ESI") should be produced in single-page, black and white, TIFF Group IV, 300 DPI TIFF images. Spreadsheet and presentation type files, audio and video files, photo or graphic images, and documents with tracked changes reflected in the metadata should be produced in native format. Short message communications (*e.g.*, text messages, WhatsApp, Slack, iMessage, Teams, G-Chat, Bloomberg, etc.) will be produced in RSMF with all available metadata and attachments. Except for messages that contain privileged content, the complete communication will be produced, separated into 24-hour increments. To the extent RSMF cannot be provided, the parties shall meet and confer on the appropriate metadata fields and format of production. If an original document being produced in image format contains color, the document should be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. TIFFs/JPGs should show any and all text, hidden content, and images that would be visible to the reader using the native software that created the document. For example, TIFFs/JPGs of email messages should include the BCC line, and documents should display comments and hidden content.

2.    Format – Native Files: If a document is produced in RSMF or in native format, a single-page, Bates stamped image slip sheet stating the document has been produced in native format should also be provided, with the exception of PowerPoint presentations. PowerPoint documents should be produced in native format along with single-page, 300 DPI

- 7 -

TIFF/JPG images which display both the slide and speaker's notes. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the parties should meet and confer in good faith.

3.    De-Duplication: Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. Removal of near-duplicate documents and email thread suppression is not acceptable. De-duplication should be done across the entire collection (global de-duplication) and the CUSTODIAN-ALL field should list each custodian, separated by a semicolon, who was a source of that document and the FILEPATH-DUP field will list each file path, separated by a semicolon, that was a source of that document. Should the CUSTODIAN-ALL or FILEPATH-DUP metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents should be produced prior to substantial completion of the document production.

4.    Technology-Assisted Review: Predictive coding/technology-assisted review or artificial intelligence shall not be used for the purpose of culling the documents to be reviewed or produced without notifying the requesting party prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies.

5.    Metadata: All ESI shall be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto. The metadata produced should have the correct encoding to enable preservation of the documents' original language.

- 8 -

For ESI other than email and e-docs that do not conform to the metadata listed in Table 1, such as text messages, Instant Bloomberg, iMessage, Google Chat, MS Teams, Slack, Google Docs, etc., the parties should meet and confer as to the appropriate metadata fields to be produced.

6.      Embedded Objects: Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved. The embedded files should be marked with a "YES" in the load file under the "Is Embedded" metadata field.  The parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

7.      Attachments: If any part of a communication or its attachments is responsive, the entire communication and attachments should be produced, except any attachments that must be withheld or redacted on the basis of privilege.  The parties should meet and confer about whether there is an appropriate basis for withholding a family document for any reason other than attorney-client or work product privilege.  The attachments should be produced sequentially after the parent communication.  The parties shall use their best efforts to collect and produce point-in-time documents that are links in documents and communications, including Google G Suite, Microsoft 365, etc. and treat as family documents.  Documents extracted from links shall be populated with the BEGATTACH and ENDATTACH metadata fields to show the family relationship.  If documents cannot be extracted from links at the time of collection, or the documents that can be extracted are not likely to be the same version that existed the time the communication was sent (*i.e.*, point-in-time or contemporaneous version), the parties agree to promptly meet and confer to discuss alternative methods of collection and production.

8.      Compressed File Types: Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

9.      Structured Data: To the extent a response to discovery requires production of electronic information stored in a database, the parties should meet and confer regarding methods of production.  Parties should consider whether all relevant information may be

- 9 -

4925-0907-3957.v1

provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

10. Exception Report: The producing party shall compile an exception report enumerating any unprocessed or unprocessable documents, their file type, and the file location.

11. Encryption: To maximize the security of information in transit, any media on which documents are produced may be encrypted. In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

12. Redactions: If documents that the parties have agreed to produce in native format need to be redacted, the parties should implement redactions while ensuring that proper formatting and usability are maintained. Spreadsheets requiring redaction should be redacted using native redaction software and produced in native format.

## V.     RELEVANT PERIOD

Unless otherwise specifically indicated, the requests herein refer to the period from November 1, 2019 to April 10, 2023 (the "Relevant Period"), and shall include documents and information that relate to such period, even if dated, prepared, generated, used, published, or received outside of the Relevant Period. If a document prepared before this period is necessary for a correct or complete understanding of any document covered by a request, you must produce the earlier document as well. If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the request.

## VI.    DOCUMENTS REQUESTED

REQUEST FOR PRODUCTION NO. 1:

All documents produced, provided, or received by any of the Carvana Defendants in the course of litigation against Carvana or the Individual Defendants concerning allegations in the Complaint, including *Harvin, et al. v. Carvana LLC, et al.*, No. 2:23-cv-02068 (E.D.

- 10 -

4925-0907-3957.v1

Pa.), *Jennings, et al. v. Carvana LLC*, No. 5:21-cv-05400 (E.D. Pa.), and *Schertz v. Garcia II, et al.*, No. 2023-0600 (Del. Ch.).  This Request extends through the present.

REQUEST FOR PRODUCTION NO. 2:

All documents and testimony that any of the Carvana Defendants have produced or provided to, or received from, any regulatory or government agency, federal or state law enforcement agency or representative, or state or local official concerning the allegations in the Complaint.  This Request extends through the present.

REQUEST FOR PRODUCTION NO. 3:

All documents concerning the issuance, tracking, monitoring, management, testing, analysis, assessment, or evaluation of customers' title and registration, including temporary or out-of-state license plates and tags, any delayed or missing titles and registrations, and any "spreadsheet[s] that tracked vehicles that needed titles."  Complaint, ¶73; *see also id.*, ¶120.

REQUEST FOR PRODUCTION NO. 4:

All documents concerning Carvana's compliance or lack thereof with title and registration rules, laws, and regulations, including: (i) any monetary penalties, settlements, or fines incurred or paid by any of the Carvana Defendants; (ii) any non-monetary penalties, including any suspensions or revocations of Carvana's licenses or ability to issue temporary or out-of-state tags or license plates; (iii) any increased oversight by a non-party, including any probationary periods; and (iv) any projected or actual impact to Carvana's reputation, goodwill, retail sales, operations expenses, SG&A, and business operations.

REQUEST FOR PRODUCTION NO. 5:

All documents concerning the "buffers in many states to provide cushion for their title and registration teams to work with the various states to complete necessary registration paperwork" (*id.*, ¶187(b)), including documents concerning the timing of, reasons for, and decision to establish such "buffers" and the actual or expected impact of such "buffers" on retail sales.

- 11 -

4925-0907-3957.v1

REQUEST FOR PRODUCTION NO. 6:

All documents concerning Statement Nos. 1-8 and 19-20 and Statements B and C alleged in the Complaint, including the preparation of and bases for these statements, including talking points, scripts, slide shows, transcripts, presentations, FAQs, meeting minutes, or notes.

REQUEST FOR PRODUCTION NO. 7:

All documents relating to the tracking, monitoring, management, testing, analysis, evaluation, or assessment of the "drivers of" retail unit sales (MTD Order at 25), including any information or trends regarding the growth, profitability, or sustainability of Carvana's retail unit sales.

REQUEST FOR PRODUCTION NO. 8:

All documents concerning Carvana's actual or stated "purchasing and verification standards" (or lack thereof) when buying cars from customers (*e.g.*, Complaint, ¶130), including documents concerning the tracking, monitoring, management, testing, analysis, evaluation, or assessment of the quality of cars purchased from customers.

REQUEST FOR PRODUCTION NO. 9:

All documents concerning the expected or actual impact of customer-sourced cars on Carvana's retail unit sales, trade-in sales, "wholesale vehicle sales" (*e.g.*, *id.*, ¶135), operating profits, margins, operations expenses, "logistics network," and "operational metrics" (*e.g.*, *id.*, ¶137), including documents concerning any information or trends regarding the decision to increase or decrease the volume of customer-sourced cars.

REQUEST FOR PRODUCTION NO. 10:

All documents concerning retail sales in "markets with lower profitability due to long distance from inventory" (*e.g.*, *id.*, ¶213(a)), including documents concerning: (i) the potential or actual impact of those sales on retail unit sales; (ii) the expected or actual financial terms and profitability of those sales and markets; (iii) the benefits, shortcomings, or sustainability of those sales and markets, including its impact on Carvana's logistics network (*e.g.*, *id.*, ¶141); (iv) the use of "third-party logistics and reconditioning providers"

- 12 -

4925-0907-3957.v1

(*e.g.*, *id.*, ¶142); (v) the purchase of ADESA to "improve [Carvana's] logistics network" (*e.g.*, *id.*, ¶167); and (vi) the timing of, reasons for, and other details regarding the decision to reduce, decrease, meter, or stop such retail sales.

REQUEST FOR PRODUCTION NO. 11:

All documents concerning retail "sales that were less profitable in the immediate period" and retail sales that "incorporated the value of future sales" (*e.g.*, *id.*, ¶213(a)(iv)), including documents concerning: (i) the potential or actual impact of those sales on retail unit sales; (ii) the expected or actual financial terms and profitability of those sales; (iii) the benefits, shortcomings, or sustainability of those sales; and (iv) the timing of, reasons for, and other details regarding the decision to reduce, decrease, meter, or stop those sales.

REQUEST FOR PRODUCTION NO. 12:

All documents concerning Carvana's pass-through arrangement, including documents concerning: (i) the potential or actual impact of those sales on retail unit sales; (ii) the expected or actual financial terms and profitability of those retail sales; (iii) the benefits, shortcomings, or sustainability of those retail sales; (iv) Carvana's "Retail Vehicle Acquisitions" disclosure in its SEC Forms 10-Q filed on May 6, 2021, August 5, 2021, and November 4, 2021, and SEC Form 10-K filed on February 24, 2022; (v) Carvana's "Retail Vehicle Acquisitions and Reconditioning" disclosure in its SEC Forms 10-Q filed on May 10, 2022 and August 4, 2022; and (vi) Carvana's "Retail Vehicle Acquisition Agreements" disclosure in its SEC Form DEF 14A filed on March 23, 2022.

REQUEST FOR PRODUCTION NO. 13:

All documents concerning Garcia Sr.'s relationship to, involvement in, or control of Carvana, including any communications between Garcia Sr. and any officer, director, or employee of Carvana concerning the Company.

REQUEST FOR PRODUCTION NO. 14:

All documents concerning all formal or informal contracts, agreements, transactions, or arrangements between Carvana and the Garcia Parties, including documents sufficient to identify all payments to or received from the Garcia Parties during the Relevant Period and

- 13 -

amounts outstanding to be paid to each of the Garcia Parties as of each quarter-end and year-end reporting period.

REQUEST FOR PRODUCTION NO. 15:

All documents concerning Carvana's monthly, quarterly, and annual financial reporting packages or analyses and supporting documentation, including revenue, expense, and GPU results broken down by retail and wholesale sales channel.

REQUEST FOR PRODUCTION NO. 16:

All documents concerning the solicitation, issuing, and selling, including any due diligence undertaken by any Carvana Defendant and the selection of the Underwriter Defendants or exclusion of other underwriters, of the 2022 Public Offering, including any communications with any of the Underwriter Defendants or any potential investors concerning the offering.

REQUEST FOR PRODUCTION NO. 17:

Documents sufficient to identify the purchasers of any common stock in the 2022 Public Offering.

REQUEST FOR PRODUCTION NO. 18:

All documents prepared for, sent to, or received from any of the Underwriter Defendants (including investment bankers, analysts, and consultants employed by or working for such underwriters), including any agreement letters, retainers, or payments related to the 2022 Public Offering.

REQUEST FOR PRODUCTION NO. 19:

All documents reviewed and/or relied upon in connection with any of the Carvana Defendants' signing of the registration statements used to complete the 2022 Public Offering.

REQUEST FOR PRODUCTION NO. 20:

All documents concerning any communications with the SEC concerning the 2022 Public Offering or Offering Documents and all documents discussing whether any particular

- 14 -

4925-0907-3957.v1

disclosure concerning Carvana should or should not be made in connection with the 2022 Public Offering.

REQUEST FOR PRODUCTION NO. 21:

All documents concerning any communications, conference calls, presentations, or meetings with any Carvana shareholders, securities analysts, financial analysts, institutional investors, financial publications, news reporters, journalists, or investment bankers concerning Carvana, including any scripts, drafts, transcripts, notes, and anticipated questions and answers.

REQUEST FOR PRODUCTION NO. 22:

All documents concerning any meetings of Carvana's Board of Directors (whether informal or formal and including any committee or subcommittee thereof) during which the subject matter of any allegation in the Complaint was discussed, including board packages, financial closing packages, meeting minutes, exhibits, agendas, memoranda, resolutions (whether adopted or discussed), notes, reports, and presentations, as well as all documents and communications concerning any action of Carvana's Board of Directors by written consent.

REQUEST FOR PRODUCTION NO. 23:

All documents concerning the certification of Carvana's financial statements and disclosure controls and procedures by Garcia Jr. and Jenkins pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), including due diligence performed in order to provide the SOX certifications, documents and communications concerning sub-certifications made in connection with the SOX certifications, and any SOX compliance questionnaires or surveys.

REQUEST FOR PRODUCTION NO. 24:

All documents, including all drafts, and all communications concerning the preparation, content, review process, and submission of Carvana's SEC filings.

REQUEST FOR PRODUCTION NO. 25:

All documents concerning all compensation that each Individual Defendant received or was eligible to receive from Carvana, including:

- 15 -

(a)     all components of the individual's compensation, including salaries, bonuses, and equity-based incentive compensation;

(b)     any changes in compensation;

(c)     any attempts to reduce or claw back their compensation;

(d)     all bonuses and/or other compensation policies, terms, and agreements;

(e)     all benchmarking of salaries against peer groups; and

(f)     all payments made pursuant to §280G of the Internal Revenue Code, 26 U.S.C. §280G.

REQUEST FOR PRODUCTION NO. 26:

All documents concerning the employment agreement(s) of each of the Individual Defendants and each current or former Carvana officer, director, or employee identified in the parties' Fed. R. Civ. P. 26(a)(1) disclosures.

REQUEST FOR PRODUCTION NO. 27:

All documents and communications concerning the awards, holdings, and/or transactions in Carvana Securities by, for, or of the Individual Defendants and each former Carvana employee identified in the parties' Fed. R. Civ. P. 26(a)(1) disclosures, including all documents related to:

(a)     Carvana Securities received, including any options to purchase;

(b)     Carvana Securities held;

(c)     transactions in Carvana Securities, including awards, exercises, purchases, sales, donations, or use of Carvana securities as collateral;

(d)     any loans of Carvana Securities, including any prepaid variable forward contract or sale lending agreement; and

(e)     any SEC Rule 10b5-1 trading plan by or on behalf of any Individual Defendant, including the details of any modifications of any plan.

REQUEST FOR PRODUCTION NO. 28:

Documents concerning the holdings and transactions in Carvana Securities for, or during, the Relevant Period made by entities in which any of the Individual Defendants

- 16 -

4925-0907-3957.v1

owned at least 5% interest, including, but not limited to, DriveTime and Verde Investments, including all documents related to:

      (a)    Carvana Securities held;

      (b)    transactions in Carvana Securities, including awards, exercises, purchases, sales, donations, or use of Carvana securities as collateral;

      (c)    any loans of Carvana Securities, including any prepaid variable forward contract or sale lending agreement; and

      (d)    the ownership of such entities.

REQUEST FOR PRODUCTION NO. 29:

Documents concerning any direct or indirect benefit or consideration that any of the Carvana Defendants received or intended to receive from another person's transactions in Carvana Securities for, or during, the Relevant Period.

REQUEST FOR PRODUCTION NO. 30:

All documents concerning the departure, resignation, termination, demotion, or mutually agreed separation of any Carvana officers or executives, including Mike Levin.

REQUEST FOR PRODUCTION NO. 31:

A copy of any media, social media, insider trading, code of business conduct and ethics, or corporate disclosure policies or procedures in place at Carvana, including all documents and communications concerning compliance or noncompliance with any of these policies or procedures.

REQUEST FOR PRODUCTION NO. 32:

All documents concerning Carvana's share price, market capitalization, number of shareholders, and volume of shares traded, including documents concerning price movements in Carvana stock.

REQUEST FOR PRODUCTION NO. 33:

All documents concerning the possible or actual factors or reasons that led to any change in the price of Carvana stock at any time during the Relevant Period.

4925-0907-3957.v1

REQUEST FOR PRODUCTION NO. 34:

All documents concerning the disclosures regarding Carvana on August 10, 2021, October 22, 2021, June 24, 2022, and October 7, 2022, including the impact of these disclosures on Carvana's stock price.

REQUEST FOR PRODUCTION NO. 35:

All documents identified in the Carvana Defendants' Fed. R. Civ. P. 26(a)(1) disclosures.

REQUEST FOR PRODUCTION NO. 36:

All documents concerning all insurance policies, indemnification agreements, hold harmless agreements, and/or by-laws that may provide coverage for any of the Carvana Defendants for all or part of any potential liability arising from the claims alleged in the Complaint.

REQUEST FOR PRODUCTION NO. 37:

The Carvana Defendants' document retention policies and documents concerning the preservation, search for, collection, maintenance, destruction, or alteration of documents or ESI.

REQUEST FOR PRODUCTION NO. 38:

Directories, organizational charts, or other documents sufficient to identify Carvana's organizational structure and its employees, including all direct reports to the Individual Defendants.

REQUEST FOR PRODUCTION NO. 39:

Calendars, date books, telephone logs, telephone bills (local, long distance, and cellular), time sheets, expense reports, visitor logs, and/or appointment books reflecting Carvana-related activities, maintained by each Individual Defendant and former Carvana employees or directors identified in either of the parties' Fed. R. Civ. P. 26(a)(1) disclosures.

REQUEST FOR PRODUCTION NO. 40:

Documents sufficient to identify all personal and business phone numbers, email addresses, secretaries, and/or personal assistants for the Individual Defendants and each

- 18 -

current or former Carvana employee, founder, or director identified in either of the parties' Fed. R. Civ. P. 26(a)(1) disclosures.

REQUEST FOR PRODUCTION NO. 41:

All documents concerning any of the affirmative and other defenses set forth in the Carvana Defendants' Answer.

REQUEST FOR PRODUCTION NO. 42:

All documents that any of the Carvana Defendants intend to rely on, or use, to oppose any application to certify a class in this Action.

DATED:  March 11, 2025

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN
(Admitted *pro hac vice*)
TOR GRONBORG
(Admitted *pro hac vice*)
ERIKA L. OLIVER
(Admitted *pro hac vice*)
RACHEL A. COCALIS
(Admitted *pro hac vice*)
SARAH A. FALLON
(Admitted *pro hac vice*)


                    s/ Rachel A. Cocalis
            RACHEL A. COCALIS

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
ddrosman@rgrdlaw.com
torg@rgrdlaw.com
eoliver@rgrdlaw.com
rcocalis@rgrdlaw.com
sfallon@rgrdlaw.com

- 19 -

4925-0907-3957.v1

ROBBINS GELLER RUDMAN
  & DOWD LLP
ROBERT M. ROTHMAN
(Admitted *pro hac vice*)
DAVID A. ROSENFELD
(Admitted *pro hac vice*)
BRENT E. MITCHELL
(Admitted *pro hac vice*)
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
rrothman@rgrdlaw.com
drosenfeld@rgrdlaw.com
bmitchell@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
JACOB G. GELMAN
(Admitted *pro hac vice*)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
jgelman@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

O'DONOGHUE & O'DONOGHUE LLP
DINAH S. LEVENTHAL
5301 Wisconsin Avenue, N.W., Suite 800
Washington, D.C.  20015
Telephone:  202/362-0041
202/362-2640 (fax)
dleventhal@odonoghuelaw.com

Additional Counsel for Lead Plaintiffs

BONNETT FAIRBOURN FRIEDMAN
  & BALINT PC
ANDREW FRIEDMAN
7301 N. 16th Street, Suite 102
Phoenix, AZ  85020
Telephone: 602/274-1100
602/274-1199 (fax)
afriedman@bffb.com

Local Counsel

- 20 -

4925-0907-3957.v1

- 21 -

**DECLARATION OF SERVICE BY EMAIL**

I, BENJAMIN ENGFELT, not a party to the within action, hereby declare that on March 11, 2025, I served the attached LEAD PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO THE CARVANA DEFENDANTS on the parties in the within action by email addressed as follows:

**COUNSEL FOR PLAINTIFFS**:

| NAME | FIRM | EMAIL |
|---|---|---|
| Daniel S. Drosman<br>Tor Gronborg<br>Erika L. Oliver<br>Rachel A. Cocalis<br>Sarah A. Fallon | Robbins Geller Rudman & Dowd LLP<br>655 West Broadway<br>Suite 1900<br>San Diego, CA 92101 | ddrosman@rgrdlaw.com<br>torg@rgrdlaw.com<br>eoliver@rgrdlaw.com<br>rcocalis@rgrdlaw.com<br>sfallon@rgrdlaw.com |
| Robert M. Rothman<br>David A. Rosenfeld<br>Brent E. Mitchell | Robbins Geller Rudman & Dowd LLP<br>58 South Service Road<br>Suite 200<br>Melville, NY 11747 | rrothman@rgrdlaw.com<br>drosenfeld@rgrdlaw.com<br>bmitchell@rgrdlaw.com |
| Jacob G. Gelman | Robbins Geller Rudman & Dowd LLP<br>Post Montgomery Center<br>One Montgomery Street<br>Suite 1800<br>San Francisco, CA 94104 | jgelman@rgrdlaw.com |
| Andrew Friedman | Bonnett Fairbourn Friedman &<br>  Balint PC<br>7301 N. 16th Street<br>Suite 102<br>Phoenix, AZ 85020 | afriedman@bffb.com |

**COUNSEL FOR DEFENDANTS**:

| NAME | FIRM | EMAIL |
|---|---|---|
| Jeff G. Hammel<br>Kalana<br>  Kariyawasam | Latham & Watkins LLP<br>1271 Avenue of the Americas<br>New York, NY 10020 | jeff.hammel@lw.com<br>kalana.kariyawasam@lw.com |
| Andrew B. Clubok<br>Susan E. Engel<br>Matthew J. Peters<br>J. Christian Word | Latham & Watkins LLP<br>555 Eleventh Street, N.W.<br>Suite 1000<br>Washington, D.C. 20004 | andrew.clubok@lw.com<br>susan.engel@lw.com<br>matthew.peters@lw.com<br>christian.word@lw.com |
| Douglas C. Northup<br>Andrea L. Marconi | Fennemore Craig, P.C.<br>2394 E. Camelback Road<br>Suite 600<br>Phoenix, AZ 85016 | dnorthup@fennemorelaw.com<br>amarconi@fennemorelaw.com |

- 1 -

4925-0907-3957.v1

| Susanna M. Buergel<br>David P. Friedman<br>Kristina A. Bunting | Paul, Weiss, Rifkind, Wharton &<br>  Garrison LLP<br>1285 Avenue of the Americas<br>New York, NY  10019 | sbuergel@paulweiss.com<br>dfriedman@paulweiss.com<br>kbunting@paulweiss.com |
| --- | --- | --- |
| Cameron A. Fine<br>Madeline A.<br>  Cordray | DLA PIPER LLP (US)<br>2525 East Camelback Road<br>Suite 1000<br>Phoenix, AZ  85016 | cameron.fine@us.dlapiper.com<br>madeline.cordray@us.dlapiper.com |
| Melanie Walker | DLA PIPER LLP (US)<br>2000 Avenue of the Stars<br>Suite 400<br>Los Angeles, CA  90067 | melanie.walker@us.dlapiper.com |
| Yan Grinblat | DLA PIPER LLP (US)<br>444 West Lake Street<br>Suite 900<br>Chicago, IL  60606 | yan.grinblat@us.dlapiper.com |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 11, 2025, at Nashville, Tennessee.

*Benjamin Engfelt*

BENJAMIN ENGFELT

- 2 -

4925-0907-3957.v1

**TABLE 1: METADATA FIELDS**[1]

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001  (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003  (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001  (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008  (Unique ID Parent-Child Relationships) | The Document ID number associated with the last page of the last attachment. |
| VOLUME | VOL001 | The name of CD, DVD, or Hard Drive. |
| RECORDTYPE | eMail, Attachment, Scanned Doc, eFile, Chat/Text | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the email or calendar entry was sent. |
| SENTTIME | HH:MM | The time the email or calendar entry was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| MEETING START DATE | MM/DD/YYYY | Start date of calendar entry. |
| MEETING START TIME | HH:MM | Start time of calendar entry. |
| MEETING END DATE | MM/DD/YYYY | End date of calendar entry. |
| MEETING END TIME | HH:MM | End time of calendar entry. |
| FILEPATH | i.e. /JsmithPC/Users/Jsmith/Desktop | The file path from the location in which the document was stored in the usual course of business.  This field should be populated for both email and e-files. |
| FILEPATH-DUP | i.e.  /JSmith.pst/Inbox  /Network Share/Accounting/…  /TJohnsonPC/Users/TJohnson/My Documents/... | The file paths from the locations in which the duplicate documents were stored in the usual course of business.  This field should be populated for both email and e-files and separated by semicolons. |
| AUTHOR | jsmith | The author or owner of a document from extracted metadata. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and email address of the author of an email/calendar item.  An email address should always be provided. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email address of the recipient(s) of an email/calendar item.  An email address should always be provided for every email if a recipient existed. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the copyee(s) of an email/calendar item.  An email address should always be provided for every email if a copyee existed. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the blind copyee(s) of an email or calendar item. An email address should always be provided for every email if a blind copyee existed. |
| SUBJECT |  | The subject line of the email/calendar item. |
| MESSAGE TYPE | Appointment, Contact, Task, Distribution List, Message, etc. | An indication of the email system message type. |
| IMPORTANCE | Normal, Low, High | Email Importance Flag |
| TITLE |  | The extracted document title of a document. |
| CUSTODIAN-ALL | Smith, Joe; Doe, Jane | All of the custodians of a document from which the document originated, separated by semicolons. |
| SOURCE | Computer, Mobile Phone, Email, Network Share, Slack, WhatsApp, Teams, Database Name, etc. | The source from which the document was collected. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| TRACK CHANGES | Yes or No | The yes/no indicator of whether tracked changes exist in the file. |
| IS EMBEDDED | Yes or No | The yes/no indicator of whether a file is embedded in another document. |
| HASH |  | The MD5 or SHA-1 Hash value or "de-duplication key" assigned to a document.  The same hash method (MD5 or SHA-1) should be used throughout production. |
| CONVERSATION INDEX |  | ID used to tie together email threads. |
| REDACTED | Yes or Blank | If a document contains a redaction, this field will display 'Yes'. |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in.  **NOTE:** This should be the time zone where the documents were located at time of collection. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document.  There should be a folder on the deliverable, containing a separate text file per document.  These text files should be named with their corresponding Bates numbers.  **Note**: Emails should include header information: author, recipient, cc, bcc, date, subject, etc.  If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

[1] For ESI other than email and e-docs that do not conform to the metadata listed here, such as text messages, Instant Bloomberg, iMessage, Google Chat, MS Teams, Slack, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.