**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United Association National Pension Fund, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Carvana Company, et al., <br><br> Defendants. | No. CV-22-02126-PHX-MTL <br><br> **ORDER** |

Pending before the Court is Plaintiffs' "Motion to Compel Compliance" (doc. 214). Plaintiffs' Motion seeks to compel Defendants compliance with the Court's August 21, 2025, Order.[1] (Doc. 214 at 2.) In the Court's August 21, 2025, Order, the Court permitted a limited test of Plaintiffs' proposed eDiscovery tool—the Forensic Email Collector ("FEC")—on emails from two Electronically Stored Information ("ESI") custodians. (Doc. 196 at 4.) This test would determine if the production of contemporaneous hyperlinked documents using FEC was possible without undue burden or expense for Defendants. (*Id.*) The Court noted that, were the test run "successful in producing point-in-time hyperlinked documents of evidentiary value without undue burden or expense, the parties may raise the issue of conducting additional discovery into point-in-time hyperlinked documents by filing a motion with the Court." (*Id.*)

Upon review of the Parties' written and oral arguments, the Court holds as follows. First, Plaintiffs shall select 250 responsive emails which Defendants shall, using FEC,

---

[1] Discover matters in this case have been referred to this Court by the Honorable United States District Judge Michael T. Liburdi. *See* (doc. 125).

produce the most contemporaneous version of hyperlinked documents. Plaintiffs' choice of responsive emails is not limited to the 2 previously select ESI custodians. Rather, Plaintiffs may select responsive emails from any of the 25 ESI custodians. Defendants, after receiving Plaintiffs' selection, shall have 10 days to provide the most contemporaneous version of non-privileged hyperlinked documents attached to the 250 emails.

Second, Defendants shall provide all responsive and non-privileged documents in the ESI custodians' Google Vault collection to Plaintiffs. Thereafter, Plaintiffs may select 200 documents that Defendants shall use in searching for a potential parent email. If a non-privileged parent email is found, Defendants must produce said email.

**I.    Background**.

On August 3, 2022, Plaintiffs initiated this action by filing their Complaint alleging violations of the Securities Exchange Act of 1934. (Doc. 1 at 2, 33.) On March 12, 2025, the District Court issued an Order governing Electronic Discovery in this action. (Doc. 137.) In pertinent part, the Order stated that:

> [t]he parties agree that if any part of a communication or its attachments is responsive, the entire communication and attachments will be produced, except any attachments that must be withheld or redacted on the basis of privilege. The parties will meet and confer about whether there is an appropriate basis for withholding a family document for any reason other than attorney-client or work product privilege. The attachments will be produced sequentially after the parent communication.
> The parties understand that hyperlinked documents will be collected and produced in this case. The parties shall use their reasonable best efforts to collect documents that are links in documents and communications, including, but not limited to, Google G Suite, Microsoft 365, etc. Where the automatic collection of the hyperlinked document is technologically feasible, reasonable, and not unduly burdensome, the hyperlinked document will be collected. The parties will work diligently and collaboratively to come to a common understanding as to the scope of the collection, review, and production and any other issue that arises. In addition, the parties will work diligently and collaboratively to come to a common understanding as to what is reasonable, technically feasible, and not unduly burdensome (e.g., showing the hyperlinked relationship between documents and producing point-in-time version of hyperlinked documents). To the extent the parties are not able

to come to an agreement, any disputes will be promptly raised with the Court. (*Id.* at 8.)

On July 24, 2025, the Parties filed a Joint Discovery Motion (doc. 177) regarding the production of contemporaneous hyperlinked documents alongside their parent emails. (Doc. 177 at 2–5.) At issue was the "potential feasibility and utility of implementing the proposed FEC tool to collect versions of hyperlinked documents contemporaneous to the emails sent." (Doc. 196 at 3.) Plaintiffs insisted on receiving contemporaneous versions of hyperlinked documents so that they may establish "who knew what and when[.]" (Doc. 177 at 2.) Defendants responded that contemporaneous versions of hyperlinked documents could not be reliably collected due to Defendants use of Google Workplace's suite of web-based applications, including Google Vault. (*Id.* at 3); (doc. 177-6 at 5.)

On August 21, 2025, this Court issued an Order addressing the Parties Joint Discovery Motion. (Doc. 196.) The Court ordered that:

> Plaintiff[s may] select up to two custodians comprising a small subset of the overall scope of emails and corresponding hyperlinked documents at issue in the case. Defendants must produce responsive documents—*i.e.*, the versions of any documents as closely contemporaneous to, but preceding, the email communication as is feasible—on or before December 1, 2025, absent further order of the Court. The Court assumes FEC will be used, but the parties may agree to other methods.

(*Id.* at 4.) The Court further noted that "If this limited test is successful in producing point-in-time hyperlinked documents of evidentiary value without undue burden or expense, the parties may raise the issue of conducting additional discovery into point-in-time hyperlinked documents by filing a motion with the Court." (*Id.*)

Upon receiving Plaintiffs' Motion to Compel Compliance (doc. 214) on November 24, 2025, this Court scheduled a telephonic discovery hearing for December 12, 2025. (Doc. 216.) On December 12, 2025, the the Court conducted the telephonic discovery hearing. (Doc. 226.) On December 17, 2025, the Court provided the Parties with a Tentative Ruling. In the Tentative Ruling, the Court notified the Parties of its willingness to rehear arguments on Plaintiffs' Motion to Compel Compliance during the Court's

January 8, 2026, telephonic hearing.

**II.    The Parties' Arguments**.

On November 24, 2025, Plaintiffs filed their "Motion to Compel Compliance" (doc. 214), containing both Parties' arguments. Thereafter, the Parties conducted oral arguments before the Court on December 12, 2025, and January 8, 2026.[2] The Parties' arguments are summarized below.

### A. *Plaintiffs' Position*.

Plaintiffs assert that Defendants have failed to comply with the Court's August 21, 2025, Order. (*Id.* at 2.) In their written submission, Plaintiffs allege that Defendants are severing hyperlinked documents from their parent emails, and are refusing to provide both unless the hyperlinked documents and parent emails are independently responsive. (*Id.*) Doing so, Plaintiffs contend, expressly violates this Court's and the District Court's prior Orders, which stated that "'if any part of a communication or its attachments is responsive, the entire communication and attachments will be produced' except for attachments withheld or redacted for privilege." (*Id.*) (quoting doc. 196 at 2); (doc. 137 at 8.)

During the December 12, 2025, discovery hearing, Plaintiffs clarified their arguments, asserting the following. First, that this dispute is about what version of documents will be produced. Second, under the colors of the best evidence rule, that where a contemporaneous version is available, they are entitled to it; But if the contemporaneous version is unavailable, they are entitled to the non-contemporaneous version. Third, Plaintiffs' assert—when applying the search terms through Google Vault[3]—if either a hyperlink document or email is responsive, they must be produced. Specifically on this third point, Plaintiffs note that the ability to link an otherwise authorless document to an

---

[2]    The Court acknowledges but does not summarize the Parties' Stipulation received prior to the January 8, 2026, hearing.

[3]    "Google Vault is a platform that, among other things, preserves [emails] and other types of accounts and allows for Google Vault administrators to search through users' accounts[.] Google Vault preserves emails through litigation holds[.] Once a litigation hold is in place on a user's account, no one can delete emails from the preserved hold in Google Vault." *Kenno v. Colo. Governor's Off. of Info. Tech.*, No. 19-CV-00165-MEH, 2021 WL 2682619, at *1 (D. Colo. June 30, 2021), *aff'd sub nom. Kenno v. Colo. Governor's Off. of Info. Tech.*, No. 21-1353, 2023 WL 2967692 (10th Cir. Apr. 17, 2023).

email would allow Plaintiffs to understand "who knew what and when."

During the January 8, 2026, discovery hearing, Plaintiffs re-asserted their desire to use FEC in this matter. However, in light of Defendants' findings on the burden of using FEC,[4] Plaintiffs revised their request. Specifically, Plaintiffs requested that they may choose 1,000 responsive emails from all 25 ESI custodians that Defendants shall run through FEC to find the most contemporaneous version of hyperlinked attachments. Additionally, Plaintiffs seek the opportunity to request further production through FEC were this new search to prove fruitful.

### B. Defendants' Position.

Defendants respond that Plaintiffs' allegations of non-compliance are unfounded, because under the Court's August 21, 2025, Order, Defendants were required to establish a process for determining which versions of hyperlinked documents are required to be produced. (Doc. 214 at 3–4.) Specifically, Defendants assert they are only required to provide contemporaneous versions of hyperlinked documents if and when the Court determines that they are proportional to the needs of the case.[5] (*Id.* at 4.)

During the December 12, 2025, discovery hearing, Defendants clarified their arguments, asserting the following. First, Defendants allege that the use of FEC has not been productive. Namely, FEC was only able to collect .4% of top-level executive hyperlinked documents modified within 24 hours in Google Vault. In terms of cost, Defendants noted that the use of FEC was "about 105 times more expensive than Carvana's average per document cost in this litigation." Further, Defendants asserted that FEC was unable to collect 93% of parent emails containing hyperlinks.

Second, when the search terms are applied to documents in Google Vault, Defendant cannot readily discern if it was used as a hyperlink attachment to an email—and, by virtue, what email it is directly attached to. Third, Defendants asserted that they

---

[4] *Infra* section II.B.
[5] On this point, Defendants assert that "Plaintiffs misstate how Carvana is reviewing and producing non-contemporaneous hyperlinked documents, and are incorrect that Carvana is not producing responsive hyperlinked documents if an email is non-responsive." (Doc. 214 at 4 n.2.)

- 5 -

1  are not obligated to provide both the contemporaneous version of hyperlink documents and
2  their non-contemporaneous counterparts.

3  During the January 8, 2026, discovery hearing, Defendants re-argued that FEC was
4  grossly inefficient in this action. Specifically, Defendants argued that of 112,889 total
5  emails, FEC was only able to capture 7,592 responsive emails with hyperlinks. Of those
6  7,592 emails collected, "many [hyperlinked documents] still had modifications after" the
7  date the parent email was sent. In terms of burden, Defendants spent 1,170 hours and over
8  $200,000 dollars using FEC for the 2 ESI custodians. This translated to a $425 per
9  document price tag for using FEC, which was "105 times more expensive" than using
10 traditional ESI discovery techniques.

11 In light of these findings, Defendants requested that Plaintiffs be permitted to select
12 200 emails which Defendants will use FEC on. Defendants noted that, were the Court to
13 require the search of 250 responsive emails with FEC, such search could be completed
14 within 7-to-10 days.

15 **III.   Legal Standards**.

16 A district court has broad discretion to permit or deny discovery. *Hallett v. Morgan*,
17 296 F.3d 732, 751 (9th Cir. 2002). Generally, discoverable information is "any
18 nonprivileged matter that is relevant to any party's claim[,] . . . proportional to the needs
19 of the case[,]" and is not unduly burdensome. Fed. R. Civ. P. 26(b)(1) (emphasis added).
20 Courts will limit discovery where: "(i) the discovery sought is unreasonably cumulative or
21 duplicative, or can be obtained from some other source that is more convenient, less
22 burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity
23 to obtain the information by discovery in the action; or (iii) the proposed discovery is
24 outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii). A party
25 may request production of evidence that is "within the scope of Rule 26(b)[.]" Fed. R. Civ.
26 P. 34(a).

27 In the instant action, the Parties have been unable to come to an agreement on how
28 ESI should be handled. "The Court has broad authority and discretion to assist the Parties

in resolving ESI disputes." *In re Soc. Media Adolescent Addiction/Personal Inj. Prods. Liab. Litig.*, No. 22-md-03047-YGR (PHK), 2024 WL 1786293, at *2 (N.D. Cal. Feb. 20, 2024) (citing *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211–12 (9th Cir. 2002)). In addressing such ESI discovery disputes, the Court is guided by Rule 34's requirement that the producing party provide ESI documents in "a reasonably usable form or forms." Fed. R. Civ. P. 34(a)(1)(A), (b)(2)(E)(ii).

**IV.    Discussion**.

In interpreting the Parties' written and oral arguments, the Court finds the following two issues in dispute: (a) to what extent shall Defendants be obligated to use FEC on responsive emails from all 25 ESI custodians; and (b) whether Defendants are obligated to produce non-privileged responsive documents from Google Vault.

The use of hyperlinked documents in emails—while not completely novel—presents challenges that are not incurred when parties use traditional attachments. *See In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, No. 23-md-03084-CRB (LJC), 2024 WL 1772832, at *2 (N.D. Cal. Apr. 23, 2024) ("In sum, the briefing and evidence, as well as related case law, have made clear that cloud computing and document retention through Google Drive and Google Vault introduce a host of challenges to producing hyperlinked documents from Google Drive and other sources."). Although both traditional attachments and hyperlinked documents contained within an email may serve similar purposes, courts are loathe to treat them interchangeably. *See Nichols v. Noom Inc.*, No. 20-CV-3677 (LGS) (KHP), 2021 WL 948646, at *4 (S.D.N.Y. Mar. 11, 2021) ("[T]he Court does not agree that a hyperlinked document is an attachment."), *objections overruled*, No. 20 CIV. 3677 (LGS), 2021 WL 12307293 (S.D.N.Y. Apr. 30, 2021).

While traditional attachments to emails may be fixed in time, mitigating issues of contemporality, these older forms of communication are being phased out for appended hyperlinks that can facilitate quicker communication and collaboration. In considering innovations such as hyperlinked documents, the Court must ensure that it does not "embarrass the future[,]" *see Carpenter v. United States*, 585 U.S. 296 (2018) (citation

omitted), nor inhibit Plaintiffs' right to discovery of ESI. With these preliminary considerations in mind, the Court will address the three issues in dispute.

### A. Expanded Use of FEC to Obtain the Most Contemporaneous Version of Hyperlinked Documents from All ESI Custodians.

The first issue involves whether the Court will require additional use of FEC in the Parties attempts to produce the most contemporaneous version of hyperlinked documents attached in responsive parent emails from all 25 ESI custodians. In addressing this issue, the Court finds the following principles to be beneficial. First, Rule 34 requires that the producing party must produce ESI in a form that is "in a reasonably usable form," qualified by the consideration that "[a] party need not produce the same electronically stored information in more than one form." Fed. R. Civ. P. 34(b)(2)(E)(ii)–(iii). Second, "ESI should not be produced in a format that makes it unreasonably difficult or burdensome for the requesting party to use the documents efficiently in the litigation." *Nichols*, 2021 WL 948646, at *3 (citation omitted). Third, with ESI, it is appropriate to limit collection and review to non-duplicative, relevant information." *Id.*

With these principles in mind, the Court finds the best way to proceed on this issue is to strike a fine balance between burden and benefit. Namely, Plaintiffs may select 250 responsive emails[6] that Defendants will be required to run an FEC search upon to find the most contemporaneous version[7] of hyperlinked documents contained in the parent emails. This search is not limited to the two previously selected ESI custodians. Rather, Plaintiffs may select *any* 250 responsive emails from *any* of the 25 identified ESI custodians.[8]

---

[6] A required search of 250 responsive emails appears congruent with other courts' orders. *See In re Uber*, 2024 WL 1772832, at *4 (requiring the production of contemporaneous versions of 200 hyperlinked documents); *See also Shenwick v. Twitter, Inc.*, No. 16-cv-05314-JST (SK), 2018 WL 5735176, at *1 (N.D. Cal. Sept. 17, 2018) (requiring defendants to produce 200 hyperlinked documents found embedded in parent emails).

[7] The Court defines the "most contemporaneous version" as the version of any document that is as close to the version of the document as it existed: (a) when its responsive parent email was sent; or, for documents without parent emails, (b) between January 1, 2020, to February 28, 2023, for Carvana Defendants, and July 1, 2021, to October 31, 2022 for UW Defendants. *See* (doc. 196 at 5–6).

[8] The Court is mindful of the duplication issue that this Order will create. However, because of the limited number of emails that will undergo FEC—and, by virtue, the limited costs of such—the Court does not find that duplication should prevent disclosure here.

- 8 -

1  This Order does not limit nor extinguish Defendants obligation to provide any and all responsive parent emails and their hyperlinked attachments to Plaintiffs. Because the most contemporaneous versions of non-privileged hyperlinked documents attached to responsive parent emails is broadly relevant[9] and proportional for Plaintiffs' litigation needs, they must be produced. Accordingly, Defendants shall provide the most contemporaneous version of all hyperlinked attachment from responsive parent emails using *traditional ESI discovery techniques*.[10]

The Court is mindful that hyperlinked documents are different than static attachments. Because, by their nature, hyperlinked documents do not remain static, finding the version of the document as it existed on a specific date and time is laborious.

However, the difficulty surrounding hyperlinked documents does not justify their complete withholding by Defendants. Plaintiffs have a *broad* right to discovery under the federal rules. *See* Fed. R. Civ. P. 26(b)(1) (emphasis added). While hyperlinked documents present challenges that the drafters of the Federal Rules of Civil Procedure may never had considered, novelty should not trump discovery.

### B. Responsive Documents in Defendants' Google Vault.

The next issue involves the treatment of responsive documents in the ESI custodians' Google Vault collections. As the Court understands Plaintiffs' argument, Plaintiffs requests the production of all non-privileged responsive documents within the ESI custodians' Google Vault collections, which will then be used to search through all 25

---

[9] The Court does not find relevancy to be a major issue with hyperlinked documents attached to responsive emails. To be discoverable, information must be "relevant to a party's claim or defense." Fed. R. Civ. P. 26(b)(1). Evidence need not be admissible to be relevant. *See id.* The potential information Plaintiffs may receive from contemporaneous documents—such as who knew what and when—is eminently relevant to Plaintiffs' claims. Consequently, it will be up to the Parties to determine whether each specific hyperlinked document is or is not relevant to the needs of the case. *See UAB "Planner5D" v. Meta Platforms, Inc.*, 746 F. Supp. 3d 806, 808 (N.D. Cal. 2024) ("Courts rarely get involved in assessing specific documents for relevance but rather make general orders about categories of documents that a party must produce. Courts in general rely upon parties to assess relevance, and the system of discovery is based on trust that a party produces documents after a review and assessment for relevance and responsiveness.").

[10] The Court defines "traditional ESI discovery techniques" as a Google Vault search used *without FEC or a script*. In other words, Defendants are *not* obligated to make and use a script in their search, nor are they obligated to use FEC beyond the 250 documents.

ESI custodians' emails in the hope of finding a parent email. In effect, Plaintiffs request that the Court issue an order requiring Defendants to run a reverse search of what is envisioned in Section IV.A.

The Court finds the general production of the most contemporaneous version[11] of responsive documents from the ESI custodians' Google Vault collections—so long as they are not privileged or irrelevant—to be proportional to the Plaintiffs' needs. Such a request also comports with Section V.C of the District Court's ESI Order. *See* (doc. 137 at 7.) Further, Defendants already appear to have been searching these Google Vault collections and producing responsive non-privileged documents.[12]

But, regarding the reverse search, Plaintiffs have not provided any evidence on how such a search could be done. Additionally, Plaintiffs have not presented any arguments on how such a search is proportional to their needs, nor shown that such a search would not be unduly burdensome for Defendants. With this dearth of evidence, the Court, at this time, will not require Defendants to run a full reverse search using responsive non-privileged documents from their ESI custodians' Google Vault collections. Instead, the Court will allow Plaintiffs, once all responsive and non-privileged documents in the ESI custodians' Google Vault collections are produced, to select 200 documents that Defendants will attempt to locate a parent email, if one exists. If a parent email exists, Defendants shall produce it as long as it does not contain privileged information. Such limited search appears proportional to Plaintiffs' needs of knowing 'who knew what and when,' but will not be unduly burdensome for Defendants.

In conclusion, Defendants must produce the most contemporaneous version of

---

[11] *See supra* note 7.

[12] As stated by Defendants' counsel during the December 12, 2025, hearing:

> We then ran our search terms against all documents that were associated with a custodian, and also any folders in Google Drive that had been identified as likely containing potentially relevant information.
> We then reviewed those for the emails *and the Google Drive documents for responsiveness*, and again, they are not associated in any way at that time. There's no family relationship. *And then we produced the responsive—what is responsive and not privileged from that review*.

Hearing Transcript at 24:17–25 (emphasis added).

- 10 -

1 responsive and non-privileged documents from the 25 ESI custodians' Google Vault
2 collections. If the most contemporaneous version of a responsive document is not
3 obtainable, Defendants must produce a non-contemporaneous version of said document.
4 Finally, Plaintiffs may select 200 documents which Defendants will then use to search
5 emails from all 25 ESI custodians for parent emails, if a parent email exists. Defendants
6 shall use traditional ESI discovery techniques[13] in this search. If a parent email is found,
7 Defendants shall produce it.

8     Accordingly,

9     **IT IS ORDERED** that Plaintiffs' Motion to Compel Compliance (doc. 214) is
10 **GRANTED IN PART AND DENIED IN PART**.

11     **IT IS FURTHER ORDERED** that Plaintiffs **SHALL** select **250** responsive parent
12 emails with hyperlinked attachments that Defendants **SHALL RUN AN FEC SEARCH**
13 **UPON**.

14     **IT IS FURTHER ORDERED** that Defendants shall complete the FEC search and
15 provide Plaintiffs with the most contemporaneous version of non-privileged hyperlinked
16 attachments within **10 DAYS** of receiving Plaintiffs' selection.

17     **IT IS FURTHER ORDERED** that this Order **DOES NOT** preclude further usage
18 of FEC in this action. However, Plaintiffs have a heavy burden to meet if they seek to
19 compel further FEC usage in this action.

20     **IT IS FURTHER ORDERED** that Defendants must produce the most
21 contemporaneous version of responsive and non-privileged documents from the 25 ESI
22 custodians' Google Vault collections using traditional ESI discovery techniques. If the
23 most contemporaneous version of a responsive document is not obtainable, Defendants
24 must produce a non-contemporaneous version of said document.

25     **IT IS FURTHER ORDERED** that Plaintiffs may select 200 responsive documents
26 from the ESI custodians' Google Vault collections which Defendants will then use to
27 search emails from all 25 ESI custodians for parent emails. Defendants shall use traditional

28

---

[13]     *See supra* note 10.

ESI discovery techniques in this search. If a parent email is found, Defendants must produce it unless said email is privileged. Nothing in this Order should be construed as precluding further requests to select additional responsive documents to run a search for parent emails. However, Plaintiffs bear the burden of establishing a need for further searches.

Dated this 9th day of January, 2026.

Honorable John Z. Boyle
United States Magistrate Judge