LATHAM & WATKINS LLP
Andrew B. Clubok (*pro hac vice*)
J. Christian Word (*pro hac vice*)
Susan E. Engel (*pro hac vice*)
Matthew J. Peters (*pro hac vice)*
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Email: andrew.clubok@lw.com
Email: christian.word@lw.com
Email: susan.engel@lw.com
Email: matthew.peters@lw.com

Jeff G. Hammel (*pro hac vice*)
Kalana Kariyawasam (*pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: jeff.hammel@lw.com
Email: kalana.kariyawasam@lw.com

Meryn C. Grant (*pro hac vice*)
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: (424) 653-5500
Email: meryn.grant@lw.com

[*Additional counsel on signature page*]

*Counsel for Defendants Carvana Co., Ernest Garcia III, Mark Jenkins, Stephen Palmer, Michael Maroone, Neha Parikh, Ira Platt, and Greg Sullivan*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re Carvana Co. Securities Litigation | CASE NO. 2:22-cv-02126-PHX-MTL |
| | **DEFENDANTS' OPPOSITION TO LEAD PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO USE LEAD PLAINTIFFS' PROPOSED SEARCH TERMS (REDACTED)** |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................................ 1

II.   LEGAL STANDARD ........................................................................................................ 3

III.  BACKGROUND ................................................................................................................ 3

IV.   ARGUMENT ..................................................................................................................... 5

    A.   The Motion Fails to Establish a Material Deficiency in Defendants' Search Terms ................................................................................... 5

    B.   Defendants' Terms Already Comprehensively Cover All Theories of Liability Beyond Title and Registration ................................. 8

        1.   Defendants' Terms Identify Documents Regarding Retail Sales .............................................................................................. 9

        2.   Defendants' Terms Identify Documents Regarding Carvana's Purchasing and Verification Standards ........................ 11

        3.   Defendants' Terms Identify Documents Regarding Carvana's Nationwide Expansion ...................................................... 11

        4.   Defendants' Terms Identify Documents Regarding Drivetime ....................................................................................... 12

        5.   Defendants' Title-and-Registration Terms Are Comprehensive ................................................................................ 13

        6.   Defendants' Terms Capture Documents Relevant to All of Plaintiffs' Requests ............................................................. 14

V.    CONCLUSION ................................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Berger v. Wood Cnty. Sheriff's Dep't,*
2022 WL 594544 (W.D. Wis. Feb. 28, 2022) ................................................................ 10

*City of Rockford v. Mallinckrodt ARD, Inc.,*
326 F.R.D. 489 (N.D. Ill. Aug. 7, 2018) ........................................................................ 5

*Dudley v. Corizon Health Servs.,*
2020 WL 5946896 (D. Ariz. Oct. 7, 2020) .................................................................... 8

*Gage v. Midwestern Univ.,*
2025 WL 3763918 (D. Ariz. Dec. 30, 2025) ........................................................... 3, 11

*Glob. Aerospace Inc. v. Landow Aviation, L.P.,*
2012 WL 1431215 (Va. Cir. Ct. Apr. 23, 2012) ............................................................ 8

*In re Diisocyanates Antitrust Litig.,*
2022 WL 17668470 (W.D. Pa. Oct. 18, 2022) ........................................................... 7, 8

*In re eBay Seller Antitrust Litigation,*
2009 WL 10694848 (N.D. Cal. July 13, 2009) .............................................................. 7

*Lawson v. Spirit AeroSystems, Inc.,*
2020 WL 1813395 (D. Kan. Sep. 6, 2020) .................................................................... 8

*Mailhoit v. Home Depot U.S.A., Inc.,*
285 F.R.D. 566 (C.D. Cal. 2012) ................................................................................. 15

*Moore v. Lowe's Home Centers, LLC,*
2016 WL 687111 (W.D. Wash. Feb. 19, 2016) ....................................................... 10, 13

*Rusoff v. Happy Group, Inc.,*
2023 WL 114224 (N.D. Cal. Jan. 5, 2023) .......................................................... 6, 10, 15

*SinglePoint Direct Solar LLC v. Solar Integrated Roofing Corp.,*
2023 WL 2585296 (D. Ariz. Mar. 21, 2023) ............................................................... 10

*Tremblay v. OpenAI, Inc.,*
2025 WL 635335 (N.D. Cal. Feb. 27, 2025) ............................................................... 10

*Valentine v. Crocs, Inc.,*
2024 WL 1636716 (N.D. Cal. Apr. 15, 2024) ............................................................. 13

*Walker v. N. Las Vegas Police Dep't*,
2016 WL 8732300 (D. Nev. May 13, 2016) ................................................................. 9

*Weinstein v. Katapult Grp., Inc.*,
2022 WL 4548798 (N.D. Cal. Sept. 29, 2022) ...................................................... 3, 16

*Weisenberger v. Ameritas Mut. Holding Co.*,
2022 WL 3042165 (D. Neb. Aug. 2, 2022) ............................................................... 14

**RULES**

17 C.F.R. § 240.10b5-1 .............................................................................................. 14

Fed. R. Civ. P. 26 ................................................................................................. 2, 3, 7

Fed. R. Civ. P. 26(b) .................................................................................................... 7

Fed. R. Civ. P. 26(b)(1) .............................................................................................. 17

**OTHER AUTHORITIES**

The Sedona Conference, *The Sedona Principles, Third Edition: Best
Practices, Recommendations & Principles for Addressing Electronic
Document Production* (2018) ........................................................................................ 3

In response to Lead Plaintiffs' Motion to Compel Defendants to Use Lead Plaintiffs' Proposed Search Terms (Dkt. 244, "Motion" or "Mot."), Defendants Carvana Co. ("Carvana"), Ernest Garcia III ("Garcia Jr."), Mark Jenkins, Stephen Palmer, Michael Maroone, Neha Parikh, Ira Platt, and Greg Sullivan (collectively, "Defendants"), file this Opposition.

## I.     INTRODUCTION[1]

Defendants have collected over 1.5 million documents from 25 custodians and non-custodial sources.  They utilized 150 search strings that were informed by discussions with Carvana and review of the Company's actual documents, and were successfully designed to capture each alleged basis of liability.  Peters Decl. ¶ 26; *see* Transcript Nov. 17 Hearing at 23:17-22 (Dkt. 215)  ("And I agree with you.  From what I've seen from the search terms … it does appear that this is certainly broader than T&R.").  Defendants have already augmented and expanded their search terms five times—including to incorporate requests from Plaintiffs.  Defendants used 76 search terms that Plaintiffs proposed, which added over 500,000 potentially responsive documents.  Pls.' Ex. 6 at Exhibit B; *see e.g.*, Defs.' Ex. 1 at row 69 – 80.  Following the Court's August 21, 2025 Order (Dkt. 196, the "Scope Order"), Defendants added 28 more search strings concerning all alleged theories of liability.  Pls.' Ex. 4 at 1 – 2.  Those terms returned an additional 142,810 documents, while collectively Defendants' 54 search strings that do *not* pertain to title and registration ("T&R") returned 657,601 documents.  Peters Decl. ¶ 27; *see* Defs.' Ex. 1 at rows 15 – 59; 174 – 215.  So far, Defendants have produced nearly 70,000 documents, consisting of over 350,000 pages, covering all theories of liability—and soon will produce much more collected from the 7 new custodians.  Peters Decl. ¶ 28.

Throughout the discovery period, Defendants have also carefully assessed Plaintiffs' many demands for additional search terms, including by evaluating Carvana documents returned by them.  Defendants regularly explained to Plaintiffs why certain

---

[1] Unless otherwise stated, citations are omitted and emphasis is added; citations to "Defs.' Ex. __ " are to the exhibits to the Declaration of Matthew Peters ("Peters Decl."); citations to "Pls.' Ex. __ " are to the exhibits to the Declaration of Erika L. Oliver (Dkt. 245); and page citations refer to internal pagination.

proposed search terms were disproportionate and targeted non-responsive documents, including with specific examples, provided Plaintiffs with comprehensive search-term hit reports, and proposed modifications to the search terms to address the issues. Defs.' Ex. 3, 4; Pls.' Ex. 2, 4, 6, 8. Defendants also conferred and corresponded with Plaintiffs about search terms numerous times.

Defendants' comprehensive and diligent approach to discovery has already come at great cost to Carvana. The company has spent over an estimated ▮▮▮▮ responding to Plaintiffs' discovery requests.

The Motion completely ignores this record and seeks to compel Defendants to run 44 more search terms that would add at least 758,000 documents and cost Carvana an additional ▮▮▮▮. Peters Decl. ¶ 25; Defs.' Ex. 2. The Motion flippantly attempts to justify such an enormously costly fishing expedition with over-the-top rhetoric, conclusory assertions, misdirection, and speculation. Peeling away those layers, the Motion simply echoes the mantra Plaintiffs have repeated since the start of discovery: "Give Us More." That is not enough under Rule 26.

Defendants have already done the work to cut through the rhetoric and bluster. Defendants followed industry-standard practice to perform a statistical search-term validation that demonstrates their search terms are not deficient. That work showed that only *0.651%* of the documents not captured by Defendants' search terms are potentially responsive. Peters Decl. ¶ 24. That means there are an estimated 13,786 potentially responsive documents not already captured by Defendants' search terms, and identifying them would require sifting through an estimated 1.9 million documents at a cost of approximately ▮▮▮▮ *Id.*

Rule 26 wisely does not require nor support Plaintiffs' desired scorched-earth discovery. Rule 26 requires proportionality, not perfection. Defendants' validated search terms already capture the discovery to which Plaintiffs are entitled, while Plaintiffs' proposal would impose an additional millions of dollars of costs on Carvana solely to chase speculative production gaps that the record does not support.

## II.    LEGAL STANDARD

On a motion to compel, the moving party bears the burden of demonstrating relevance and proportionality, as required by Rule 26, "and to show that the responding party has materially failed to comply with its discovery obligations." *Gage v. Midwestern Univ.*, 2025 WL 3763918, at *6 (D. Ariz. Dec. 30, 2025).  In the context of motions to compel the use of additional search terms, courts within the Ninth Circuit also acknowledge that "[the producing party] is in the best position to determine the appropriate scope of the search to respond to [the opposing party's] discovery requests." *Weinstein v. Katapult Grp., Inc.*, 2022 WL 4548798, at *2 (N.D. Cal. Sept. 29, 2022); *see, e.g.*, The Sedona Conference, *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 52, 118 (2018) ("Responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information.").  Accordingly, courts require the party seeking changes to a responding party's discovery methodology to demonstrate a deficiency in the responding party's production.  *See Gage*, 2025 WL 3763918, at *6 (placing burden on moving party to demonstrate that responding party has "materially failed to comply with its production obligations").

## III.    BACKGROUND

Defendants have employed a comprehensive set of 150 search strings that collectively return over one million documents.  Peters Decl. ¶ 26.  This set was the product of discussions with Carvana, review of Company documents, and nine months of good-faith negotiations with Plaintiffs during which Defendants *agreed to add 76 separate search strings* that added over 500,000 documents to Defendants' review at an approximate cost of ▮▮▮▮▮▮▮.  Pls.' Ex. 6 at Exhibit B; *see e.g.*, Defs.' Ex. 1 at rows 69 – 80.  Defendants did not take these compromises lightly.  Instead, at every step of the nine-month negotiations, Defendants carefully evaluated Plaintiffs' proposed terms, identified terms adding a significant number of irrelevant documents to the review,

proposed revisions to such terms, and, consistent with the ESI Order, provided a comprehensive hit report to Plaintiffs. Defs.' Ex. 3, 4; Pls.' Ex. 2, 4, 6, 8. Defendants met with Plaintiffs to discuss search terms, and the Parties corresponded on numerous other occasions.. Each time, Defendants considered Plaintiffs' proposals and acted accordingly. For example, Defendants *agreed at Plaintiffs' request to run additional terms* specifically targeting documents referencing "NC Situation" after Plaintiffs indicated during a meet-and-confer that they believed documents about North Carolina regulatory issues use that phrase. Pls.' Ex. 2 at 3.

Prior to the Court's Scope Order, Defendants had agreed to 29 search strings that do not relate to Plaintiffs' T&R related claims. *See e.g.*, Defs.' Ex. 1 at rows 17, 172 – 85, 195 – 97, 204, 209 – 14. Following this Court's clarification of the case's scope, however, Defendants added 28 additional terms, capturing 142,810 documents, and specifically targeting the core drivers of retail growth other than T&R. Pls.' Ex. 4 at 1 – 2. In all, Defendants' 54 non-T&R search terms capture 657,601 documents. Defs.' Ex. 1 at rows 15 – 58; 172 – 214; Peters Decl. ¶ 27. All 150 search strings that the Defendants have agreed to run, which include terms mutually agreed upon by the Plaintiffs and those proposed by the Defendants but rejected by the Plaintiffs, return 1,022,162 documents. Peters Decl. ¶ 26.

Defendants have diligently reviewed documents captured by these terms, and produced nearly 70,000 documents (over 350,000 pages) at over an estimated cost of ▮ ▮ to date. *Id.* at ¶ 28. Accounting for responsive documents withheld for privilege, Defendants estimate a responsiveness rate of approximately 19%. *Id.*

In part due to the low responsiveness rate, Defendants conducted an industry-standard statistical validation of documents not captured by their search terms. *Id.* at ¶ 24. First, Defendants identified a random sample of 1,535 documents from the null-set population of 2,117,688. *Id.* This volume provided a 2.5% margin of error with 95% confidence. *Id.* Counsel then independently reviewed each document for responsiveness. *Id.* Of the 1,535 documents, Defendants determined ten were responsive. *Id.* The elusion

rate was then calculated by dividing the 10 responsive documents by the total sample of 1,535—*i.e.*, the number of documents found to be responsive divided by the total sample. *Id.*; *City of Rockford v. Mallinckrodt ARD, Inc.*, 326 F.R.D. 489, 492 (N.D. Ill. Aug. 7, 2018) ("Elusion is estimated by taking a random sample of the null set and determining how many or what portion of documents are actually relevant."). Utilizing the elusion rate, Defendants calculated their "recall rate"—*i.e.*, the percentage of all relevant documents identified through search terms—as 93%. *Id.* Following the validation, Defendants provided Plaintiffs with a comprehensive hit report of all their proposed terms, explained how Plaintiffs' most-recently demanded search terms were overly broad, and shared the results of Defendants' search-term validation. Defs.' Ex. 6; Pls.' Ex. 8.

Plaintiffs now seek to compel an additional set of expansive search strings that would dramatically and disproportionately increase the burden of review without a commensurate benefit. Plaintiffs' proposed terms would add more than 758,000 documents to the review population, at an incremental review cost of approximately ▮▮▮ ▮▮▮▮▮▮ Peters Decl. ¶ 25. These documents would take an estimated 15 – 20 weeks for review and production. *Id.*

## IV.    ARGUMENT

### A.    The Motion Fails to Establish a Material Deficiency in Defendants' Search Terms

The Motion strains in its apparent attempt to establish a deficiency in Defendants' search terms, relying on misleading and meaningless "statistics," ignoring the full breadth of Defendants' search terms, and overlooking the discovery record. *See, e.g.*, Mot. at 1 – 4.

First, the Motion argues that the "vast majority" of documents produced from the original 18 custodians "relate to title and registration," apparently because they contain the terms "title" or "reg." *See, e.g.*, Mot. at 1, 4 ("nearly 90%" of documents "hit on the terms 'title' or 'reg'"). As an initial matter, it is common sense that documents, particularly the corporate reports and presentations that are ordinarily the most relevant in these cases, can

touch upon more than one topic. Containing the term "title," for example, does not mean a document relates to T&R, much less *exclusively* to T&R. *See* Defs.' Ex. 7. In any event, Defendants produced 25,038 documents—35% of the total documents produced containing "title" or "reg"— that contain at least one other non-T&R search term. Peters Decl. at ¶ 29.

Second, the Motion contends that a majority of Defendants' search terms pertain to title and registration. *See, e.g.*, Mot. at 4. But whether a corpus of search terms targets all alleged theories of liability does not distill down to counting heads. What matters is whether terms address all relevant issues—and Defendants' terms do. *See Rusoff v. Happy Group, Inc.*, 2023 WL 114224, at *7 (N.D. Cal. Jan. 5, 2023) (denying additional search terms for remaining ESI discovery "where Plaintiffs were unable to establish relevance or a proportional need"). For example, Defendants' search terms include comprehensive terms designed to return any document relating to changes in retail unit sales. Defs.' Ex. 1 at rows 15 – 18. And the terms did their job. They returned approximately 285,000 documents from the original 18 custodians alone, including one search string that returned 178,000 documents. Peters Decl. ¶ 30; Defs.' Ex. 5 at 8. Over 18,000 of the documents have been produced, with more expected. Peters Decl. ¶ 30. Defendants' search terms have returned another 39,351 documents responsive to their retail-unit-sales terms from the seven new custodians, which Defendants are reviewing for production.

Third, the Motion asserts that, after the hearing on the scope of the case, Defendants ran only the terms "retail unit sales*" and "RUS." *See* Mot. at 4 ("Defendants responded with just one facially deficient search string"). This misstates the record. Within about a month of the scope hearing, Defendants added 28 comprehensive search terms targeting all remaining theories of liability, including multiple search strings concerning retail unit sales, purchase and verification standards, DriveTime, and nationwide expansion. Pls.' Ex. 4 at 1 – 2. While Plaintiffs malign the search string that Defendants adopted most immediately after the scope hearing—"Retail Unit Sale*" and "RUS"—those are extraordinarily broad terms directed at the heart of Plaintiffs' claim. They collectively

capture all variations of the term retail unit sales and the acronym Carvana uses to refer to such sales.  In total, they return 49,386 documents, Defs.' Ex. 1 at row 16, of which 8,569 have been produced, while others withheld for privilege.

Finally, the Motion claims that Defendants "refused to include any of Plaintiffs' proposed terms."  Mot. at 4.  Not true.  Defendants modified and expanded their search terms five times, including incorporating 76 terms requested by Plaintiffs.  Pls.' Ex. 6 at Exhibit B; *see e.g.*, Defs.' Ex. 1 at rows 69 – 80.  The addition of these 76 terms resulted in over 500,000 documents being added to the review at a cost of approximately ███ ████████

The Motion's conclusory assertions and rhetoric are simply not enough to show Defendants' productions are deficient.[2]  Plaintiffs brought this motion to compel and have the burden.  No longer can they (as they have to date), refuse to demonstrate that their desired terms are proportional to the needs of the case in light of Defendants' discovery.  *See* Fed. R. Civ. P 26(b).  Nor is it sufficient to invoke the strawman, "this is a big case" and that Carvana is successful.  *See, e.g.*, Mot. at 1, 14 – 17.  Stripping away the over-the-top rhetoric and speculation, the Motion is simply a demand for more.  That is not sufficient.

Regardless, Defendants have done the work to cut through the rhetoric and bluster.  Defendants performed a statistical search-term validation that demonstrates their search terms are not deficient.  *See supra* Sec. III.  Using industry-standard practice, *see In re Diisocyanates Antitrust Litig.*, 2022 WL 17668470, at *8 (W.D. Pa. Oct. 18, 2022), Defendants calculated the percentage of potentially relevant documents not captured by their search terms.  Peters Decl. ¶ 24.  The resulting percentage was only *0.651%*. *Id.*  Put differently, Defendants would need to review approximately *1,000 irrelevant documents*

---

[2] Indeed, Plaintiffs' sole case, *In re eBay Seller Antitrust Litigation*, Mot. at 4, is inapposite. There, the court compelled plaintiffs' terms only after eBay "fail[ed] to incorporate any of plaintiffs' input" despite a prolonged stalemate.  2009 WL 10694848, at *2 (N.D. Cal. July 13, 2009).  Even then, the court required only a subset of plaintiffs' desired terms. *Id.*  By contrast, Carvana has engaged in sustained, good faith collaboration with Plaintiffs, implementing a comprehensive set of 150 search terms that includes 76 of Plaintiffs' proposals.  Peters Decl. ¶ 26; .  Pls.' Ex. 6 at Exhibit B; *see e.g.*, Defs.' Ex. 1 at rows 69 – 80

to find *seven responsive ones*. *Id.* Rule 26 requires no such thing. *In re Diisocyanates*, 2022 WL 17668470, at *8 ("The defendants' methodology may be imperfect … but it is not unreasonable.").

Defendants' recall rate of 93% further establishes that their search terms are not deficient. The recall rate means that Defendants' search terms capture *93% of responsive documents*. *Id.* This rate substantially exceeds recall rates that courts routinely consider appropriate. *See* Defs.' Ex. 14 (*Independent Living Center v. City of Los Angeles*, Case No. CV 12-551-FMO (PJWx) (C.D. Cal.)), Slip Op. at 3 (June 26, 2014) (75% recall rate); *Lawson v. Spirit AeroSystems, Inc.*, 2020 WL 1813395, at *8 (D. Kan. Sept. 6, 2020) (denying motion to compel review of additional documents where defendant "produced 85% of those responsive documents, *i.e.* an 85% recall rate"); *In re Diisocyanates*, 2022 WL 17668470, at *8 (70% – 80% recall is acceptable).

Even though Defendants' statistical search-term validation forecloses Plaintiffs from establishing a material deficiency in Defendants' search terms, Defendants did *even more work* to confirm their search terms are comprehensive. Defendants reviewed a statistically random sample of documents that are returned by the very search terms that the Motion is seeking to compel but not returned by Defendants' terms. Peters Decl. ¶ 31. That analysis determined that *less* than 3% of documents containing Plaintiffs' desired search terms were responsive. *Id.*

The record proves that Defendants' search terms are not materially deficient, and Plaintiffs' contentions to the contrary are unfounded. In short, it is time for Plaintiffs to accept that, while discovery is broad, it is not limitless. *See Dudley v. Corizon Health Servs.*, 2020 WL 5946896, at *1 (D. Ariz. Oct. 7, 2020) (discussing how the court must limit discovery if it is outside the scope permitted by the Federal Rules of Civil Procedure).

**B.    Defendants' Terms Already Comprehensively Cover All Theories of Liability Beyond Title and Registration**

Plaintiffs' Motion effectively concedes that Defendants' search terms target each category that Plaintiffs identify as containing deficiencies: (1) sales growth, (2) purchasing

and verification standards, (3) nationwide expansion, (4) related-party dealings with DriveTime, and (5) title and registration. Mot. at 5 – 11. Yet, Plaintiffs contend that Defendants' terms do not reflect Carvana's ordinary day-to-day language and instead uses overly formal phrasing and connectors. *Id*. at 6. The record shows otherwise: Defendants' counsel developed terms with input from Carvana, and those terms return substantial volumes of responsive material across the five categories.

### 1. Defendants' Terms Identify Documents Regarding Retail Sales

Defendants have run four search strings designed to broadly capture documents concerning retail sales growth—including the acronym Carvana uses to refer to the metric, "RUS." *See* Defs.' Ex. 1 at rows 15 – 18. Defendants have produced 18,517 documents responsive to these terms, with others withheld for privilege, from the eighteen original custodians and are reviewing for possible production 39,351 documents containing these terms from the seven new custodians.

Tacitly conceding that Defendants' search terms target retail unit sales, Plaintiffs speculate that the terms Defendants ran are too "formal," "artificial," and do not reflect Carvana employees' "ordinary business language." Mot. at 6. Such speculation ignores that Defendants' search terms were informed by discussions with Carvana regarding what terms would capture relevant documents. If the search terms do not reflect Carvana's "ordinary business language," then why, for example, do the terms "Retail Unit Sale*" and "RUS" alone return over ***49,000*** documents? *See* Defs.' Ex. 1 at row 16. Similarly, over ***200,000*** documents were responsive to Defendants' search strings <((retail w/3 unit*) OR (retail w/3 sale*))>[3] within ten words of at least one of 46 expansive terms. *Id*. at row 17.[4] And voluminous amounts of produced documents refer to "retail units" or "retail sales."

In contrast with Defendants' informed terms, Plaintiffs seek to compel generic and extraordinarily broad terms, such as "car" or "sale,*" Pls.' Ex. 12, that would return

---

[3] The search string <retail w/3 sale*> alone will, for example, return all documents that contain "retail" within three words (in front or behind) of any word that contains "sale."

[4] Approximately 35 of the 46 terms, such as impact*, driv*, and profit*, contain wildcards (*i.e.*, *) to capture all variations and compound forms of the terms.

709,070 documents plus families. Defs.' Ex. 2 at row 16. Courts routinely reject such expansive, nonspecific search terms. *See, e.g.*, *Walker v. N. Las Vegas Police Dep't*, 2016 WL 8732300, at *3 (D. Nev. May 13, 2016) (search terms must be "narrowly tailored to particular issues" and "indiscriminate terms . . . are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction"); *Rusoff*, 2023 WL 114224, at *5 (finding search strings such as "mislead" unduly broad and "clearly disproportionate") (citation omitted). Doing so is particularly appropriate here, where Defendants' search terms return voluminous retail-unit materials. *See Berger v. Wood Cnty. Sheriff's Dep't*, 2022 WL 594544, at *1 (W.D. Wis. Feb. 28, 2022) ("The court must limit the frequency or extent of discovery otherwise allowed if the discovery sought is unreasonably cumulative or duplicative.").

Furthermore, reviewing documents returned by only Plaintiffs' generic retail-sales terms would cost approximately ███████████████. Defs.' Ex. 2 at row 16. Based on the elusion rate of 0.651%, that review is predicted to identify only approximately 957 potentially responsive documents—which amounts to ██████████ per potentially responsive document. *See Moore v. Lowe's Home Centers, LLC*, 2016 WL 687111, at *5 (W.D. Wash. Feb. 19, 2016) (concluding that plaintiff's proposed additional search terms are not proportional to the case where the defendant had already reviewed 21,000 emails at a cost of $48,074).

Plaintiffs' sole reliance on *SinglePoint Direct Solar LLC v. Solar Integrated Roofing Corp.* to argue that their proposed terms would not result in undue burden is misplaced. Mot. at 6 (citing 2023 WL 2585296 (D. Ariz. Mar. 21, 2023)). There, plaintiffs were being compelled to use search terms. Specifically, plaintiffs, who had not yet produced documents, opposed using 28 search terms returning 287,381 documents by claiming doing so was unduly burdensome. Here, Plaintiffs are *seeking* to compel 44 search terms that would add over 758,000 documents at a cost of approximately ██████████. Peters Decl. ¶ 25; *see Tremblay v. OpenAI, Inc.*, 2025 WL 635335, at *1 (N.D. Cal. Feb. 27, 2025) (denying plaintiffs' request for an order directing defendants to use their search terms

where plaintiffs failed to make a clear showing of prejudice stemming from the alleged gaps or deficiencies in the defendants' search terms).

### 2. Defendants' Terms Identify Documents Regarding Carvana's Purchasing and Verification Standards

Defendants have run seven comprehensive search strings designed to return documents concerning Carvana's purchasing and verification standards. Defs.' Ex. 1 at rows 25 – 31. Defendants reviewed materials the terms returned, producing 1,005 documents—including, for example, a presentation explaining reconditioning costs and the impact of less profitable sales on profitability and a profits and loss spreadsheet including line items for acquisition and reconditioning costs. Defs.' Ex. 9 , 10. Defendants are also reviewing for possible production an additional 10,024 documents that are responsive to these terms and collected from the seven new custodians. This debunks the Motion's conjecture that Defendants' search terms targeting vehicle purchasing and verification standards do not capture documents containing "common industry terms" and "internal descriptors," and "ignore[] how employees actually communicate." Mot at 7 – 8; *Gage*, 2025 WL 3763918, at *6.

Plaintiffs' proposed terms are also facially overly broad, Defs.' Ex. 2 at rows 23 – 30, returning a total of 1,001,313 documents and adding at least 188,072 documents to the review at an estimated cost of ███████████████ *Id.* Plaintiffs' terms such as "lemon*", for example, return a receipt referencing "Schweppes Lemon", and the terms ("customer* w/15 junk* OR trash*") return documents promoting eating healthy, as opposed to "junk" foods, general capital markets updates referencing other companies' "junk" bonds, and about trash services. Peters Decl. ¶¶ 17, 18.

### 3. Defendants' Terms Identify Documents Regarding Carvana's Nationwide Expansion

Defendants have run six broad search strings designed to return documents concerning Carvana's business strategy of nationwide expansion, including, for example, the allegations that Carvana purchased ADESA due to deficiencies in the Company's

logistical network caused by nationwide expansion. *See, e.g.*, Dkt. 72 ¶ 14; Defs.' Ex. 1 at rows 38 – 43. Defendants have produced 9,528 documents returned by these terms and are reviewing for production 22,506 documents collected from the seven new custodians and responsive to these terms. Ignoring these facts, the Motion declares that Defendants' terms are "surgically narrow and fundamentally insufficient." Mot. at 8. That is mere speculation, does not identify any actual deficiency, and falls far short of justifying Plaintiffs' proposed terms, which would add at least 180,718 more documents to Defendants' review at an estimated cost of approximately ███████████████ Defs.' Ex. 2 at rows 37 – 41. And again, Plaintiffs' terms, such as (market* w/15 expan*) and (nationwide w/15 new) continue to return thousands of likely irrelevant documents, including a playbook on how to scale performance on TV and a political fundraising email. Peters Decl. ¶¶ 19, 20.

The Motion's gripe about using the search term "Expansion" to collect documents concerning Carvana's alleged "nationwide expansion" is perplexing. Mot. at 9. Plaintiffs *never* requested to change that specific term alone. Instead, Plaintiffs demanded, without compromise or explanation, a sprawling string of terms containing more than 18 searches that returned 583,151 at an estimated cost of ███████████████ Defs.' Ex. 2 at rows 37 – 38. Defendants reviewed a sample of documents captured by the proposed search string; it returns irrelevant workout class reminders, an email from Peloton, and newsletters from the Atlantic. Peters Decl. ¶ 21.

### 4. Defendants' Terms Identify Documents Regarding Drivetime

Defendants ran nine search strings designed to capture documents concerning DriveTime. Defs.' Ex. 1 at rows 50 – 58. Defendants have produced 2,459 documents returned by these terms, including documents regarding DriveTime's Dealer Marketplace—the key allegation regarding DriveTime in the Complaint. *See, e.g.*, Dkt. 72 ¶¶ 127 – 29; Defs.' Ex. 11, 12.[5] Defendants are reviewing for production 4,336 documents

---

[5] In accordance with the Court's expected discovery order, Defendants will also be producing responsive documents related to DriveTime that Carvana produced to the SEC in response to a 2025 subpoena.

collected from the seven new custodians and responsive to these terms.[6]

Plaintiffs' proposed terms are facially overbroad, returning 267,523 documents. Defs.' Ex. 2 at rows 48 – 50. The requested search string <"DriveTime* OR DT* OR "Drive Time*">, which seeks *all* documents concerning DriveTime *without limitation*, returns 193,085 documents alone. *Id.* at row 48. And Plaintiffs' purported "DriveTime" search strings include the terms "Bridgecrest*" and "Verde,*" who are non-parties and not relevant to Carvana's alleged transactions with DriveTime. *See Moore*, 2016 WL 687111, at *5 (concluding that plaintiff's proposed additional search terms are not proportional to the case where the defendant had already reviewed 21,000 emails at a cost of $48,074).

### 5. Defendants' Title-and-Registration Terms are Comprehensive

The Motion confusingly argues that Defendants' search terms are simultaneously "skewed" to target T&R documents, while also not targeting T&R enough. *See* Mot. at 10 – 11. The Motion's arguments are meritless. The Motion asserts Defendants refuse to run search terms concerning North Carolina and Illinois. Mot. at 10. Not so. Defendants ran multiple, broad search strings specifically pertaining to North Carolina—including terms requested by Plaintiffs, Defs.' Ex. 1 at rows 65 – 66,—as well as others specifically pertaining to Illinois. *Id.* at rows 67 – 68. Defendants have produced approximately 1560 documents responsive to these terms, which are separate from the dozens of other T&R-related terms that Defendants ran also. Similarly, Plaintiffs' insistence on including terms like "cushion" is unwarranted, as the existing terms sufficiently cover the relevant issues. For example, the search term "cushion" identifies documents such as, installation instructions for a lift, a Proof of Insurance policy, and a *Washington Post* newsletter containing the phrase "couch-cushion change." Peters Decl. ¶ 22.

The Motion provides no justification for compelling Defendants to run Plaintiffs' proposed terms, which return a total of 78,720 documents at a cost of ████████ Defs.' Ex. 2 at rows 57 – 60; *Valentine v. Crocs, Inc.*, 2024 WL 1636716, at *4 (N.D. Cal.

---

[6] Plaintiffs' emphasis on Defendants having a search string (DriveTme w/5 "list price"), that returned zero documents reflects a simple typographical error that Carvana subsequently corrected, and Defendants provided an updated hit report showing 87 returned documents.

Apr. 15, 2024) (concluding that plaintiff's request for additional documents was disproportional and unduly burdensome in light of documents already produced).

### 6. Defendants' Terms Capture Documents Relevant to All of Plaintiffs' Requests

Plaintiffs' ancillary requests for additional search terms, *see* Mot. at 11 – 14, follows the same pattern seen throughout the Motion: they demand that Defendants do more while disregarding what Defendants have already produced and without offering any concrete justification for more expansive search terms. The Federal Rules require proportionality, not limitless, duplicative searches untethered to demonstrated need.

*First,* Plaintiffs want Defendants to run broad terms purportedly targeting Rule 10b5-1 trading plans. Mot. at 11 – 12. These terms return 36,832 total documents at an estimated cost of ████████████ Defs.' Ex. 2 at rows 69 – 71. Defendants have *already produced* 10b5-1 plans for all individual defendants without relying on search terms. Plaintiffs offer no explanation why additional keyword searching is necessary where the responsive information has already been produced without search terms. *Weisenberger v. Ameritas Mut. Holding Co.*, 2022 WL 3042165, at *2 (D. Neb. Aug. 2, 2022) ("If a producing party determines that certain documents are easily identifiable and segregable, that party may collect such documents without the use of search terms or other agreed-upon advanced search methodology."). Further, the Motion subtly attempts to justify running Plaintiffs' desired trading-plan terms against Garcia Jr.'s documents based on allegations that *other* defendants "manipulated" their plans. Mot. 12. Such discovery cannot be relevant and proportional. That is particularly true given the undisputable fact that there is *no allegation* in this litigation that Garcia Jr. ever sold Carvana stock.

*Second*, Plaintiffs demand five new search strings ostensibly related to Carvana's 2022 secondary offering, which would yield 141,948 total documents and cost at least ████████████ Defs.' Ex. 2 at rows 80 – 84. Yet, the Motion fails to acknowledge that Defendants are already running 14 offering-specific terms. Mot. at 12 – 13; Defs.' Ex. 1 at rows 172 – 185. These are more than sufficient to capture documents about the one

remaining challenged statement contained in the Offering materials. Similarly, the Motion's assertion that the search term "IPO" is pointless is unfounded given that search string returns 11,264 documents.[7] *Id.* at row 172. The Motion's claim that Defendants refused to run terms capturing communications with individuals at Citigroup is also not well taken. Defendants are already running terms tailored to capture these specific communications, including "Citi" OR "Citibank" OR "Citigroup" OR "*@citigroup.com", making the additional term Plaintiffs' seek—*@citi.com—superfluous. *Id.* at row 174.

*Third*, Plaintiffs seek search terms concerning virtually every analyst who covers Carvana. Defs.' Ex. 2 at rows 93 – 100. Yet, Plaintiffs have not provided any meaningful justification for such a fishing expedition, even explaining that they wanted to see whether Carvana exerted undue influence on the analysts. Peters Decl. ¶ 32. Such a fishing expedition does not compel the use of additional search terms. *See Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 572 (C.D. Cal. 2012) ("[D]iscovery rules do not allow a requesting party to engage in the proverbial fishing expedition, in the hope that there might be something of relevance.") (citation omitted). In any event, Defendants already include robust market-reaction and analyst terms, such as <"analyst* w/10 (report* OR coverage* OR "price target*" OR consensus OR rating* OR upgrade* OR downgrad* OR buy* OR sell* OR hold*)">—among five others—that collectively capture price movement, analyst sentiment, and analyst communications. Defs.' Ex. 1 at row 195. Particularly in light of Defendants' already robust terms, Plaintiffs' request to add at least 35,154 documents at a cost of approximately ██████████ is unduly burdensome and disproportionate to the needs of the case. Defs.' Ex. 2 at rows 91 – 100; *Rusoff*, 2023 WL 114224, *5 (finding that search strings proposed by plaintiffs were unduly broad and clearly disproportionate, thus narrowing of search strings was "necessary to avoid unnecessary burdensome discovery").

*Fourth,* Plaintiffs also seek expansive searches related to "stock awards, holding,

---

[7] Notably, Plaintiffs did not request to remove the term and, at Plaintiffs' request, Defendants agreed to run the term "Cactus"—an alias for the Offering—in March 2025 (and subsequently ran that term and produced responsive, non-privileged documents).

transactions, and compensation" of Messrs. Garcia Jr. and Jenkins. Mot. at 13. Defendants have already produced documents showing the compensation information for these individuals, much of which is public and readily accessible to Plaintiffs. Plaintiffs identify no specific deficiency in that production and offer no reason to believe that adding at least 288,571 documents—at an additional cost of approximately ████████████████—would yield non-duplicative, relevant material. Defs.' Ex. 2 at rows 67 – 68. Absent a concrete shortfall, Plaintiffs' proposal is an impermissible fishing expedition and not proportional to the needs of the case. *See Weinstein*, 2022 WL 4548798, at *2 (rejecting additional broad generic search terms as an improper, non-proportional fishing expedition).

*Fifth*, Plaintiffs ask the Court to compel Defendants to run sweeping generic terms to identify "documents regarding the timing and reasons for the departure of Mike Levin." Mot. at 14. At Plaintiffs' request, Defendants have already produced discovery showing the precise timing and reasons for Mr. Levin's departure, Defs.' Ex. 13, rendering Plaintiffs' proposed high-volume, keyword sweeps unnecessary. Implementing Plaintiffs' terms would force review of at least 7,458 additional documents at an added cost of approximately ███████████, with no showing that such burdens would produce anything meaningfully beyond what has already been provided. Defs.' Ex. 2 at rows 72 – 73.

*Finally*, Plaintiffs request Defendants run a generic "@sec.gov" term, which is not tailored to identify responsive subject matter and predictably pulls in regulatory correspondence irrelevant to this litigation. For example, the search term returns automated confirmations acknowledging receipt of various filings and spam confirmation emails. Peters Decl. ¶ 23. Defendants have already agreed to produce responsive documents captured by the targeted term "((SEC OR 'Securities and Exchange Commission') w/3 filing*)," which is sufficient to identify documents relevant to this action without needlessly expanding the review population.[8] Defs. Ex. 1 at row 204.

---

[8] In accordance with the Court's anticipated discovery order, Defendants expect to produce responsive documents provided to the SEC in response to a 2025 subpoena as well.

## V.    CONCLUSION

Defendants' carefully calibrated 150-term protocol already captures the discovery to which Plaintiffs are entitled and does so in a manner consistent with Rule 26(b)(1)—as demonstrated through Defendants' statistical search-term validation.  Plaintiffs have not identified a concrete deficiency in Defendants' productions, and their proposed additional terms are cumulative, overbroad, and disproportionate.  Defendants respectfully request that the Court deny Plaintiffs' Motion.

Dated: January 13, 2026                    Respectfully submitted,

                                           LATHAM & WATKINS LLP

                                            /s/ Matthew J. Peters
                                           Andrew B. Clubok (*pro hac vice*)
                                           J. Christian Word (*pro hac vice*)
                                           Susan E. Engel (*pro hac vice*)
                                           Matthew J. Peters (*pro hac vice*)
                                           555 Eleventh Street, N.W., Suite 1000
                                           Washington, D.C. 20004
                                           Telephone: (202) 637-2200
                                           Email: andrew.clubok@lw.com
                                           Email: christian.word@lw.com
                                           Email: susan.engel@lw.com
                                           Email: matthew.peters@lw.com


                                           LATHAM & WATKINS LLP

                                           Jeff G. Hammel (*pro hac vice*)
                                           Kalana Kariyawasam (*pro hac vice*)
                                           1271 Avenue of the Americas
                                           New York, NY 10020
                                           Telephone: (212) 906-1200
                                           Email: jeff.hammel@lw.com
                                           Email: kalana.kariyawasam@lw.com

                                           Meryn C. Grant (*pro hac vice*)
                                           10250 Constellation Blvd., Suite 1100

Los Angeles, CA 90067
Telephone: (424) 653-5500
Email: meryn.grant@lw.com

FENNEMORE CRAIG, P.C.
Douglas C. Northup (No. 013987)
Andrea L. Marconi (No. 022577)
2394 E. Camelback Road, Suite 600
Phoenix, AZ 85016
Telephone: (602) 916-5000
Email: dnorthup@fennemorelaw.com
Email: amarconi@fennemorelaw.com

*Counsel for Defendants Carvana Co., Ernest Garcia III, Mark Jenkins, Stephen Palmer, Michael Maroone, Neha Parikh, Ira Platt, and Greg Sullivan*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW