ROBBINS GELLER RUDMAN
   & DOWD LLP
DANIEL S. DROSMAN (CA 200643)
TOR GRONBORG (CA 179109)
ERIKA L. OLIVER (CA 306614)
RACHEL A. COCALIS (CA 312376)
MATTHEW J. BALOTTA (CA 310303)
SARAH A. FALLON (CA 345821)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
ddrosman@rgrdlaw.com
torg@rgrdlaw.com
eoliver@rgrdlaw.com
rcocalis@rgrdlaw.com
mbalotta@rgrdlaw.com
sfallon@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re Carvana Co. Securities Litigation | No. CV-22-2126-PHX-MTL |
| This Document Relates To: | LEAD PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DEFENDANTS TO USE LEAD PLAINTIFFS' PROPOSED SEARCH TERMS |
| All Actions. | (REDACTED) |
| | ORAL ARGUMENT REQUESTED |

4920-0508-8649.v2

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ........................................................................................ 1

II.    DEFENDANTS VIOLATED THEIR DISCOVERY OBLIGATIONS .................... 2

III.   PLAINTIFFS ESTABLISH, AND DEFENDANTS DO NOT DISPUTE, THE RELEVANCE OF PLAINTIFFS' PROPOSED SEARCH TERMS ................. 4

IV.    PLAINTIFFS' TERMS ARE NECESSARY AND PROPORTIONAL .................... 5

V.     DEFENDANTS FAIL TO ESTABLISH UNDUE BURDEN ................................. 8

VI.    DEFENDANTS' ILLUSORY ELUSION AND RECALL RATES DO NOT ESTABLISH THEIR SEARCH TERMS ARE SUFFICIENT .............................. 10

VII.   CONCLUSION ......................................................................................... 11

4920-0508-8649.v2

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Abbawi v. Henry Ford Health Sys.*,
2025 WL 36153 (E.D. Mich. 2025) ................................................................................ 6

*Deal Genius, LLC v. O2COOL, LLC*,
682 F. Supp. 3d 727 (N.D. Ill. 2023) ........................................................................... 11

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 3225904 (N.D. Cal. 2024) ............................................................................. 6

*Gage v. Midwestern Univ.*,
2025 WL 3763918 (D. Ariz. 2025) ............................................................................... 4

*Garner v. Amazon.co, Inc.*,
2022 WL 16553158 (W.D. Wash. 2022) ....................................................................... 9

*In re eBay Seller Antitrust Litig.*,
2009 WL 10694848 (N.D. Cal. 2009) ........................................................................... 3

*In re Uber Techs., Inc., Passenger Sexual Assault Litig.*,
2024 WL 3491760 (N.D. Cal. 2024) ........................................................................... 11

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*,
337 F.R.D. 610 (D.N.J. 2020) ..................................................................................... 11

*Ronduen v. GEO Grp. Inc.*,
2025 WL 1112657 (C.D. Cal. 2025) .......................................................................... 5, 9

*Simon & Simon, PC v. Align Tech., Inc.*,
2022 WL 2387729 (N.D. Cal. 2022) ............................................................................. 9

*SinglePoint Direct Solar LLC v. Solar Integrated Roofing Corp.*,
2023 WL 2585296 (D. Ariz. 2023) ..................................................................... 4, 5, 6, 9

*SinglePoint Direct Solar, LLC v. Solar Integrated Roofing Corp.*,
No. 2:21-cv-01076-JAT, ECF 186-1
(D. Ariz. Mar. 13, 2023) ............................................................................................... 5

*Walker v. N. L.V. Police Dep't*,
2016 WL 8732300 (D. Nev. 2016) ................................................................................ 2

4920-0508-8649.v2

## I.    INTRODUCTION[1]

This dispute is not about adding irrelevant search terms that will create a disproportionate burden on Defendants.  Indeed, Defendants do not dispute the relevance of Plaintiffs' terms.  The dispute concerns Defendants' refusal to correct a search protocol that remains fundamentally misaligned with the Scope Order, devoting just 18% of their terms to the non-title-and-registration drivers of retail growth that this Court held are proper subjects of discovery.  Plaintiffs' terms are narrowly tailored to remedy that imbalance – nothing more.

Unable to defend that imbalance on the merits, the Opposition leans on a misleading narrative of "collaboration" that ends where it matters most.  Defendants point to pre-Scope Order discussions limited to title-and-registration terms, then cite their own unilateral post-Scope Order decisions as evidence of reasonableness.  That is not collaboration.  Once this Court correctly expanded discovery to all upheld artifices relevant to Plaintiffs' scheme and misstatement claims, Plaintiffs propounded surgically narrow terms.  Defendants refused to adopt, modify, or meaningfully engage with them in any way.

Defendants fail to carry their burden on proportionality.  They offer no specific, competent evidence to support undue burden.  As Plaintiffs' e-discovery expert Jeff Johnson explains, Defendants' estimates are "black-box" projections that cannot be validated, audited, or meaningfully tested.  Johnson Decl., ¶¶29-30, 35.  In a complex securities class action, such unsupported estimates do not suffice.  Indeed, Defendants recognized that the Scope Order would broaden "the scope of discovery . . . to basically everything at the company."  ECF 172 at 10:13-17.  Defendants' search terms must follow the Scope Order, not predate it.

Finally, Defendants cannot justify their protocol by invoking self-serving elusion and

---

[1]    Capitalized terms not defined herein have the same meaning as in Lead Plaintiffs' Motion to Compel Defendants to Use Lead Plaintiffs' Proposed Search Terms (ECF 244) ("Motion" or "Mtn.") and Defendants' Opposition (ECF 258) ("Opposition" or "Opp.").  "Johnson Decl." references are to the Declaration of Jeff Johnson attached to the Declaration of Erika L. Oliver in Further Support of Lead Plaintiffs' Motion ("Oliver Decl."), filed concurrently herewith; "Ex. __" references are to the exhibits attached to the Oliver Decl. or at ECF 245-246; and "Scope Order" refers to the Court's July 1, 2025 Order (ECF 173).  Unless otherwise noted, all emphasis is added and citations are omitted.

- 1 -

4920-0508-8649.v2

recall rates.  As multiple experts explain, those metrics are misleading and unreliable.  *See* Ex. 14 ("Bui Decl."), ¶¶9-26; Johnson Decl., ¶¶17-23, 35.  According to Mr. Johnson, "aggregate metrics alone can mask material deficiencies," particularly where the protocol is designed to miss entire Court-authorized categories of evidence.  Johnson Decl., ¶¶10-11, 17-23, 35.  Because Defendants' search parameters are designed to shield highly relevant documents, and Defendants have failed to produce competent evidence of undue burden, Plaintiffs respectfully request that the Court compel implementation of their search terms.

## II.    DEFENDANTS VIOLATED THEIR DISCOVERY OBLIGATIONS

Defendants' own authority and this case's ESI Order recognize that, "[w]here, as here, counsel are using keyword searches for retrieval of ESI, the parties must 'work together to implement [an] iterative process for finalizing the search terms.'"  *Walker v. N. L.V. Police Dep't*, 2016 WL 8732300, at *3 (D. Nev. 2016); *see* ECF 137 at 4.  As Plaintiffs' e-discovery expert explains, "effective search term filtering must be an iterative, evidence-driven process."  Johnson Decl., ¶6.  But Defendants engaged in an iterative process only so long as it aligned with their narrow, pre-Scope Order view of the case.  Once the Court held that discovery extended beyond title and registration, Defendants stopped collaborating.  Mtn. at 3-5.  While they claim that Plaintiffs "misstate[] the record" (Opp. at 6), the record shows the opposite: since the Scope Order, there has been no iterative process at all.

- Before the July 1 Scope Order, Defendants confined negotiations to title-and-registration issues (Ex. 7 at Ex. A);[2]

- After the Scope Order, Defendants proposed *a single search string* – ("RUS" OR "Retail Unit Sale*") – and did not propose 28 additional search strings until Plaintiffs threatened judicial intervention (Ex. 2 at 8-9; Ex. 3 at 3-4; Ex. 4 at 1-2); and

- Defendants refused to include or modify *any* of Plaintiffs' proposed terms addressing the fraudulent scheme beyond title and registration, even *after* Plaintiffs

---

[2]    *None* of the 29 non-title search strings Defendants agreed to before the Scope Order (Opp. at 4) *were targeted at the non-title artifices of the alleged fraud* that the Scope Order later made discoverable (*e.g.*, expansion, purchasing and verification standards, etc.).

- 2 -

narrowed their terms to address Defendants' asserted burden concerns (Ex. 6 at 4-5; Ex. 7; Ex. 8 at 3).

Defendants' unilateral termination of the iterative, data-driven negotiation process eliminated the only mechanism by which search terms are tested, refined, and corrected. Johnson Decl., ¶¶6-7, 12-16.

Confronted with the fact that their protocol is skewed toward title and registration, Defendants respond that "[w]hat matters is whether terms address all relevant issues." Opp. at 6. That assertion finds no support in the law. Defendants cite no authority holding that search terms are acceptable so long as they merely touch on an issue. To the contrary, where parties fail to engage in the iterative process, search terms "may appear 'successful' in the aggregate but fail to capture documents critical to specific claims, defenses, or factual issues in the case." Johnson Decl., ¶6.

The results confirm that failure. Here, **89%** of Defendants' production contain "title" or "reg*." Defendants attempt to minimize this by asserting that 35% of those documents "contain at least one other non-T&R search term." Opp. at 6. That is misleading. Defendants do not distinguish between non-title terms aimed at other drivers of the scheme and terms aimed at unrelated topics. Even under Defendants' framing, *a majority – 54% – of the produced documents* hit on *only* title-and-registration terms, confirming that the production is overwhelmingly skewed toward just one of the many alleged artifices.

In sum, Defendants collaborated on the one issue – title and registration – to which they sought to confine this case. That self-serving collaboration does not excuse their wholesale refusal "to incorporate any of Plaintiffs' input into the [non-title-and-registration] terms." *In re eBay Seller Antitrust Litig.*, 2009 WL 10694848, at *2 (N.D. Cal. 2009) (ordering defendant that had already produced 1.9 million pages to use 100 plaintiff-proposed terms).[3]

---

[3] Defendants' limited collaboration on title and registration does not excuse their refusal to collaborate on the other artifices and thus does not distinguish this case from *eBay*. Defendants' notation that the court in *eBay* "required only a subset of plaintiffs' desired terms" (Opp. at 7 n.2) fails. There, the plaintiffs sought 302 terms; here, Plaintiffs seek just 44.

- 3 -

## III.    PLAINTIFFS ESTABLISH, AND DEFENDANTS DO NOT DISPUTE, THE RELEVANCE OF PLAINTIFFS' PROPOSED SEARCH TERMS

Defendants do not dispute that Plaintiffs' terms are relevant. *See* Opp. Nor can they. Each term is narrowly tailored to capture information relevant to Plaintiffs' upheld claims. Mtn. at 5-14; Ex. 15 ("R.App. A").[4] That is dispositive. Because Plaintiffs' "terms are relevant," the Motion should be granted. *SinglePoint Direct Solar LLC v. Solar Integrated Roofing Corp.*, 2023 WL 2585296, at *3 (D. Ariz. 2023).[5]

Unable to refute relevance, Defendants attempt to shift the burden and invent a new legal standard. But as this Court held, it is Defendants who bear "'the burden of showing that discovery should not be allowed.'" ECF 264 at 5-6. Nothing in the rules or case law requires Plaintiffs to first prove relevance and then separately establish a "material deficiency" in Defendants' search terms. Opp. at 5-8. Defendants' lone authority – *Gage v. Midwestern Univ.*, 2025 WL 3763918, at *6-*11 (D. Ariz. 2025) – is inapt. *Gage* did not involve negotiated search terms or an ESI protocol, but a *pro se* litigant's unsupported claim that documents were withheld despite the opposing party's certification of full production. Here, Defendants do not contend they have produced all responsive documents.

Even if Plaintiffs were somehow required to establish a "material deficiency," the record easily satisfies that standard. In a complex securities fraud class action spanning years, involving over a dozen misstatements, seven artifices, nearly a dozen defendants, and billions in investor losses, Defendants have produced only 69,757 documents. And that figure is illusory: **nearly 24,000** of those documents are low-to-no value embedded images (*e.g.*, logos). *See, e.g.*, Exs. 26-31. This volume pales in comparison to similar cases in which discovery productions are measured in the **millions**. Mtn. at 15. Defendants offer **no** response to that

---

[4]    After the Motion was filed, Defendants provided updated hit counts, which are incorporated in Plaintiffs' revised Appendix A, attached to the Oliver Decl.

[5]    Defendants weakly respond to *SinglePoint* by arguing that the plaintiffs there were the responding party. Opp. at 10. That's irrelevant. They are also incorrect that the plaintiffs did not produce any documents. *Id.*; *SinglePoint*, 2023 WL 2585296, at *1 (producing party "agree[d] that 122,607 responsive documents must be produced," but contested the production of an additional "287,381 documents" culled by the disputed terms).

- 4 -

4920-0508-8649.v2

authority.

## IV.    PLAINTIFFS' TERMS ARE NECESSARY AND PROPORTIONAL

Because Plaintiffs' terms are relevant, Defendants must establish through "'competent evidence'" that the terms are not proportional or the discovery should otherwise be denied. ECF 264 at 6.  Defendants do not come close to meeting that burden.  Instead, they rely on generalized hit counts, conclusory cost projections, and isolated criticisms.[6]

***Carvana's internal jargon***.  Two of Plaintiffs' proposed terms – ("kick" or "kicks" or "kick rate*") and ("MTCon*" or "Midterm contribution*" or "Mid-term contribution*") – were drawn from Carvana's documents and go to the heart of Plaintiffs' claims.  Mtn. at 8; Ex. 10; *see, e.g.*, Ex. 19 at -717; Ex. 20 at 3-4, 13, 15; Ex. 21 at 96; Ex. 22 at -568; Ex. 23 at -219; Ex. 24 at -224; Ex. 25.  As Mr. Johnson explains, incorporating "[p]roprietary or company-specific jargon" is best practice, as such terms should "reflect[] how employees internally describe key issues."  Johnson Decl., ¶14; *see also Ronduen v. GEO Grp. Inc.*, 2025 WL 1112657, at *10, *12 (C.D. Cal. 2025).  Defendants do not dispute the terms' relevance or claim they pose any undue burden. Given their centrality and proportional unique hits of 29,608 and 327, respectively, Defendants should use them.  *SinglePoint*, 2023 WL 2585296, at *1, *3-*4 (compelling terms resulting in 287,381 total hits, including a term with 66,809); [Proposed] Order at 4-5, *SinglePoint Direct Solar, LLC v. Solar Integrated Roofing Corp.*, No. 2:21-cv-01076-JAT (D. Ariz. Mar. 13, 2023), ECF 186-1.

***Unit-sales term***.  Defendants' sales-growth searches exclude documents discussing "sales" or "units" unless they contain the precise phrases "retail unit" or "retail sale."  Mtn. at 5-6.  That formalism is at odds with how employees communicate internally.  As Mr. Johnson explains, over-reliance on formal language violates basic information retrieval principles and produces under-inclusive results.  *See* Johnson Decl., ¶¶13, 35; Mtn. at 6 (citing authority).

Defendants' claim that their terms are sufficient because they produced documents

---

[6]    Tellingly, Defendants rely on "Total Hits Plus Families" to argue undue burden. *E.g.*, Opp. at 10.  This artificially inflates the documents that would need to be reviewed, as it does not account for documents already reviewed or those containing multiple terms.

- 5 -

containing "retail sales" and "retail units" is circular. *See* Opp. at 9; Defs.' Ex. 1 (Rows 15-18). Of course some produced documents include the terms used to find them. More importantly, Defendants produced only 4,766 such documents – drawn from a nearly 900,000 document population (ECF 229-2, ¶5) – even though retail sales are Carvana's "foundation" and "entire business model." ECF 172 at 10:13-17. Documents using sanitized, public-facing language are no substitute for internal discussions captured through natural phrasing. Mtn. at 6; Johnson Decl., ¶13. Plaintiffs' string is therefore neither cumulative nor duplicative.

Defendants also mischaracterize Plaintiffs' sales-growth string by attacking individual components in isolation. Opp. at 9-10. Plaintiffs do not propose "car" or "sale\*" as standalone terms. R.App. A at 1.[7] Defendants' own analysis shows 146,954 unique hits, a proportional result given the centrality of sales growth. R.App. A at 1; Mtn. at 5-6. Where a term targets the core business (ECF 172 at 10:13-17), Defendants cannot credibly claim undue burden. *See SinglePoint*, 2023 WL 2585296, at \*3 (overruling "undue burden objection" where "parties have known from the beginning of this case that the discovery in this case would be significant (and have represented that knowledge to the Court on multiple occasions)").

***Purchasing and verification standards***. Plaintiffs' proposed terms fill glaring gaps in Defendants' protocol, which does not even address vehicle "condition." Mtn. at 7-8. Several impose a *de minimis* burden, and Defendants do not dispute their relevance. Rather than propose reasonable modifications, Defendants rejected them outright. *Abbawi v. Henry Ford Health Sys.*, 2025 WL 36153, at \*6 (E.D. Mich. 2025) (faulting defendants for failing to "inform[] [p]laintiff of any deficiency [in plaintiff's terms] in the hopes of producing more narrowly tailored ESI"); *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 3225904, at \*4 (N.D. Cal. 2024) (producing party must "propose reasonable modification to search terms where appropriate"); Johnson Decl., §V.

***Expansion***. Defendants' unsustainable expansion search is deficient because it

---

[7] This distinguishes Defendants' authorities. And *Tremblay v. OpenAI, Inc.* supports Plaintiffs. The movants there, like Defendants here, postured in an effort "to relitigate an issue they [had] already lost," *i.e.*, the Scope Order. 2025 WL 635335, at \*1 (N.D. Cal. 2025).

- 6 -

inexplicably limits searches to the exact word "expansion," ignoring obvious linguistic variants or synonyms. Defendants' assertion that Plaintiffs did not seek to modify the term is demonstrably false; Plaintiffs repeatedly proposed the root "expan*." *See* Ex. 7 at Ex. A (Rows 171-172). Defendants offer no argument that Plaintiffs' expansion terms are irrelevant or disproportionate. Thus, the terms should be utilized.

**Sham transactions**. The Court has already confirmed that documents concerning related-party transactions are relevant and discoverable. ECF 264 at 8-9. Defendants' reliance on a handful of produced documents merely underscores the inadequacy of their protocol. Opp. at 12-13. Discovery into sham transactions is a central artifice of the fraud, not a peripheral issue. Mtn. at 9. Nor can Defendants exclude terms concerning Garcia Sr.'s other entities simply because they would like to narrow the record. ECF 173 at 4.

**Title and registration**. That Defendants' protocol is already skewed towards title and registration is not a basis to exclude additional, concededly relevant terms. Mtn. at 10-11. Defendants do not dispute the relevance of buffer*, cushion*, North Carolina, or Illinois. Instead, they complain of false positives and vaguely assert that other searches address these issues. Opp. at 13. That is precisely why an iterative process is required. Johnson Decl., ¶¶6, 24-27. And with only 3,118 unique hits, Plaintiffs' terms do not impose an undue burden. Mtn. at 10-11.

**Other disputed terms**.

- **10b5-1 Plans**: Search terms are necessary to find relevant documents **concerning** the trading plans, modifications, and trades – not just the plans themselves. Mtn. at 11-12. Understanding as much, Defendants misstate the purported burden for Plaintiffs' searches as at least ███████. Opp. at 14 (citing Defs.' Ex. 2 (Rows 69-71)). The two applicable strings would actually cost less than ████. *See* Defs.' Ex. 2 (Rows 70-71). Defendants otherwise ignore Plaintiffs' term aimed at stock transactions generally (Defs.' Ex. 2 (Row 69)), despite the Court's ruling that Plaintiffs are entitled to communications from Garcia Jr. concerning Garcia Sr.'s stock transactions. ECF 264 at 10; Opp. at 14.

- **2022 Offering**: Defendants incorrectly argue that their terms are sufficient because they address "the **one** remaining challenged statement" (Opp. at 14-15), ignoring that the Court upheld multiple misstatements and the Item 105 claim. ECF 105 at 65-68. Defendants' other arguments are similarly unpersuasive. For

- 7 -

example, they justify their inclusion of "IPO" (when the 2022 Offering was not an IPO) by noting that the term returned some documents. Opp. at 15. But this does not mean that documents returned by Plaintiffs' terms are not relevant or burdensome. And Defendants are wrong in asserting that Plaintiffs never requested to remove the term. Opp. at 15 n.7; Ex. 7 at Ex. A (Row 4, column L). Similarly, while Defendants claim that terms concerning Citigroup are "superfluous," none of the terms they point to would capture this search.

- *Analysts*: Defendants must utilize Plaintiffs' terms relevant to securities fraud cases and class certification. Mtn. at 13. In response, Defendants baldly assert that the analyst terms are a "fishing expedition." Opp. at 15. Not so. Plaintiffs have shown why these are highly relevant, including because Plaintiffs' allegations include analysts' reactions and such evidence is critical to class certification. Mtn. at 13.

- *Stock Awards*: Defendants' refusal to run any of Plaintiffs' terms aimed at Garcia Jr.'s and Jenkins's stock awards, holdings, transactions, and compensation (Mtn. at 13-14) is unjustifiable. Opp. at 15-16. Indeed, Defendants assert that they have produced mostly "public" compensation documents (Opp. at 16), but that some documents "are publicly available neither establishes that all [relevant] documents are publicly available nor outside of the scope of Rule 26." ECF 264 at 7.

- *Mike Levin*: Defendants' argument against including Plaintiffs' proposed terms regarding the timing of and reasons for Mike Levin's departure – a "maker" of an upheld misstatement – falls flat. Opp. at 16 (relying on the production of one single-page, general document on the issue and citing no authority suggesting the hits pose an undue burden).

- *SEC*: Defendants cannot justify their rejection of Plaintiffs' term concerning communications with the SEC that yields only 152 unique hits. As they concede, their term is aimed at *SEC filings*. Opp. at 16. This is plainly insufficient here where Plaintiffs expressly allege an ongoing SEC investigation and the Court has compelled Defendants to produce responsive documents related to the 2025 SEC Subpoena. ECF 264 at 8; Mtn. at 14.

## V.    DEFENDANTS FAIL TO ESTABLISH UNDUE BURDEN

The Opposition rests almost entirely on a single, unsupported headline number: implementing Plaintiffs' terms would purportedly add "758,000 documents and cost Carvana an additional ███████████." Opp. at 2, 5, 10. But Defendants' burden showing is a black box. As Plaintiffs' e-discovery expert explains, their burden estimates are questionable and unverifiable because Defendants refuse to disclose the basic inputs needed to evaluate them. Johnson Decl., §VI. Absent these inputs, Defendants' numbers cannot be tested or

- 8 -

credited as competent evidence. *Id.*, ¶¶29-33, 35.

Defendants' own shifting figures underscore the unreliability. They claim that Plaintiffs' purchasing-and-verification-standard terms add at least 188,072 documents and would cost between ███████████████ – a nearly ██████ swing for the same population. Opp. at 11; *id.* at 12 (claiming similarly for nationwide-expansion terms). This range is internally inconsistent. The top end purports to exceed Defendants' estimated cost for reviewing all documents returned by all terms. *See id.* at 2, 5, 10.

In short, Defendants' dollar figures are self-serving and likely inflated, and appear to reflect a worst-case, theoretical maximum rather than a realistic estimate grounded in standard e-discovery practice. Johnson Decl., ¶29. But even taking Defendants' numbers at face value, "burden" is not a trump card: it must be assessed in light of Fed. R. Civ. P 26(b)(1)'s proportionality factors. Defendants largely avoid that analysis, dismissing it as a "strawman." Opp. at 7. That is telling because every proportionality factor favors Plaintiffs. Mtn. at 14-17. And courts routinely reject "undue burden" arguments even where the incremental review population is larger than what Defendants claim here. *See Garner v. Amazon.co, Inc.*, 2022 WL 16553158, at *2 (W.D. Wash. 2022) (rejecting claim that adding "4.4 million" documents was burdensome); *see also, e.g.*, *Simon & Simon, PC v. Align Tech., Inc.*, 2022 WL 2387729, at *3 (N.D. Cal. 2022) (compelling searches of "an additional 570,000 documents").

Moreover, Defendants make no effort to justify their refusal to run terms that are indisputably low-to-no burden. ***Nearly half*** of Plaintiffs' terms (21) involve less than 1,000 unique hits each, with some returning as few as 34 and 73 documents. R.App. A at 3-4. Defendants cannot plausibly claim "undue burden" as to these terms. *See Ronduen*, 2025 WL 1112657, at *10 (ordering terms with "801 unique hits"). Instead, Defendants cherry-pick a handful of false positives. *See* Opp. at 11-13. But as courts in this District recognize, false positives do not justify suppressing relevant discovery. *SinglePoint*, 2023 WL 2585296, at *3. The remedy is refinement, not rejection. *See* Johnson Decl., ¶¶7, 24-28. Defendants should be ordered to run the 21 strings that result in less than 1,000 unique hits.

- 9 -

4920-0508-8649.v2

## VI.   DEFENDANTS' ILLUSORY ELUSION AND RECALL RATES DO NOT ESTABLISH THEIR SEARCH TERMS ARE SUFFICIENT

A centerpiece of Defendants' Opposition is their elusion and recall rates, which they cite as proof that their search is "sufficient" and Plaintiffs' terms are unnecessary. *See* Opp. at 4-5, 7-8, 10.   But those metrics are only as reliable as the population tested and the methodology used – and the information Defendants have selectively disclosed establishes their rates' unreliability.

Elusion testing evaluates whether responsive documents remain in a population excluded by the search terms. *See* Johnson Decl., ¶9.   Critically, an elusion rate calculated from one population cannot be extrapolated to a different population (*id.*, ¶¶11, 17, 35), yet Defendants admit the null set and elusion sample are based on the original 18 custodians. Ex. 18 at 1.   This admission is dispositive here, especially because Plaintiffs added the other seven custodians to remedy subject-matter gaps in the heavily-title-skewed original 18 custodians. Johnson Decl., ¶¶10-11, 17, 35.   Accordingly, Defendants' elusion rate (and any downstream "cost" or "sufficiency" claims derived from it) cannot be credited.

Even taking Defendants' invalid test at face value, their elusion rate proves the opposite of what they claim.   Defendants assert that their elusion rate implies only 13,786 potentially responsive documents exist in the null set. Opp. at 2.   That presentation is misleading because it treats a point estimate as a certainty while ignoring the sampling margin of error.   Johnson Decl., ¶¶18-19.   When the margin rate is properly accounted for, ***up to 66,728*** potentially responsive documents may be contained in the null set. *Id.*   In other words, Defendants' own testing admits that tens of thousands of responsive documents remain excluded and unproduced – nearly on the order of Defendants' entire production to date.   Plaintiffs' terms are necessary to capture the responsive documents lingering in the null set.

Defendants also stacked the deck by selecting the validation sample entirely from the null set and then having reviewers assess responsiveness. *See* Peters Decl., ¶24.   That design invites unconscious bias because the reviewer knows the documents came from material the

- 10 -

4920-0508-8649.v2

search missed, creating pressure toward "non-responsive" calls.[8]

Defendants' extrapolation from a 0.651% elusion rate to a 93% recall rate is unreliable for the additional reason that "basic elusion-testing protocols frequently inflate recall estimates." Johnson Decl., ¶20.[9] That inflation stems from the faulty assumption that documents coded responsive during the main review would remain responsive if subjected to the same independent, blinded review process used for elusion testing. Johnson Decl., ¶20. As Mr. Johnson explains, that assumption is often wrong, and it is common for only 60% of the documents initially coded responsive to remain responsive under the same standard used for elusion testing. *Id.* Applying that correction here, Mr. Johnson calculates recall as low as 62%. *Id.*, ¶¶20-21. A recall rate this low is not evidence of sufficiency; it is an admission that Defendants' protocol is missing a material share of responsive documents.

In short, Defendants' elusion and recall rates are illusory, unreliable, and prove Plaintiffs' point – that Defendants' search is deficient and has excluded tens of thousands of potentially responsive documents from discovery. To remedy their deficient searches, Defendants should be ordered to utilize Plaintiffs' proposed terms.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be granted.

DATED: January 20, 2026                Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP

---

[8]    *See* Bui Decl., Ex. C at 485 ("blind review" necessary to yield optimal results). To cure this deficiency, Plaintiffs requested the accepted safeguard of allowing Plaintiffs "to review a relatively small number of documents as part of [Defendants'] validation review," which Defendants refused. *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, 337 F.R.D. 610, 624 (D.N.J. 2020); *see* Ex. 16 at 2. Contrary to their refusal, it is not "unheard of" to produce or allow review of validation-sample documents. *Valsartan*, 337 F.R.D. at 624; *see, e.g.*, *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 2024 WL 3491760, at *5-*6 (N.D. Cal. 2024).

[9]    This risk is amplified where, as here, the yield rate (7.8%) from the reviewed population is low. *See* ECF 229-2, ¶5 (69,757 ÷ 889,507 = 7.8%); *Deal Genius, LLC v. O2COOL, LLC*, 682 F. Supp. 3d 727, 735 (N.D. Ill. 2023); Bui Decl., Ex. B at 9 (in a situation like here, with voluminous dataset with low prevalence, the elusion test can "predict[] almost perfect recall . . . when that may not be the case").

- 11 -

4920-0508-8649.v2

s/ Daniel S. Drosman
DANIEL S. DROSMAN

DANIEL S. DROSMAN
(Admitted *pro hac vice*)
TOR GRONBORG
(Admitted *pro hac vice*)
ERIKA L. OLIVER
(Admitted *pro hac vice*)
RACHEL A. COCALIS
(Admitted *pro hac vice*)
MATTHEW J. BALOTTA
(Admitted *pro hac vice*)
SARAH A. FALLON
(Admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
ddrosman@rgrdlaw.com
torg@rgrdlaw.com
eoliver@rgrdlaw.com
rcocalis@rgrdlaw.com
mbalotta@rgrdlaw.com
sfallon@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ROBERT M. ROTHMAN
(Admitted *pro hac vice*)
DAVID A. ROSENFELD
(Admitted *pro hac vice*)
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
rrothman@rgrdlaw.com
drosenfeld@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

O'DONOGHUE & O'DONOGHUE LLP
DINAH S. LEVENTHAL
5301 Wisconsin Avenue, N.W., Suite 800
Washington, D.C.  20015
Telephone:  202/362-0041
202/362-2640 (fax)
dleventhal@odonoghuelaw.com

Additional Counsel for Lead Plaintiffs

- 12 -

4920-0508-8649.v2

BONNETT FAIRBOURN FRIEDMAN
  & BALINT PC
ANDREW FRIEDMAN
7301 N. 16th Street, Suite 102
Phoenix, AZ  85020
Telephone: 602/274-1100
602/274-1199 (fax)
afriedman@bffb.com

Local Counsel

4920-0508-8649.v2