**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United Association National Pension Fund, et al., | No. CV-22-02126-PHX-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| Carvana Company, et al., | |
| Respondents. | |

Pending before the Court is Plaintiffs' "Motion to Compel Defendants to Use Lead Plaintiffs' Proposed Search Terms" (doc. 244).[1] Plaintiffs seek an order requiring Defendants to run a search with 44 proposed search terms against all 25 of Defendants' Electronically Stored Information ("ESI") custodians' ESI collections. *See* (doc. 244 at 2.)

Between March 2025 to December 2025, the parties have been in communication over which search terms Defendants were required to run against their ESI custodians' collections. *See* (doc. 145-7 at 6); *see also* (doc. 245-10 at 2.) While these communications have not been wholly unsuccessful—considering Defendants implemented 76 search strings proposed by Plaintiffs—they likewise have not been wholly successful. Because of this, Plaintiffs filed the instant Motion on December 30, 2025. (Doc. 244.) After this matter was fully briefed on January 20, 2026, this Court held a discovery hearing on January 29, 2026. *See* (docs. 258, 271, 279, 288.)

Upon review of the parties' oral and written submissions, seeing as the parties have

---

[1]    Discovery matters in this case have been referred to this Court by the Honorable United States District Judge Michael T. Liburdi. *See* (doc. 125.)

substantially completed discovery, and weighing Plaintiffs' need for meaningful discovery against any undue burden faced by Defendants, the Court holds as follows. First, the Court will compel Defendants to run the following numbered search terms against 15 ESI custodians' collections: 1–2, 4–11, 13–17, 23–31, 35–43. These search terms are relevant to Plaintiffs' underlying allegations, and while burdensome, are not so unduly burdensome for a complex class action involving voluminous ESI collections. The remaining search terms are excised.

Second, the Court will bifurcate the deadlines upon which production shall be completed by. Specifically, on or before March 15, 2026, Defendants shall produce relevant and non-privileged emails, documents, and family units that are responsive to the search terms for five (5) ESI custodians.[2] Plaintiffs may choose the five ESI custodians. Thereafter, on or before June 12, 2026, Defendants shall produce relevant and non-privileged emails, documents, and family units for ten (10) additional custodians. Plaintiffs may choose the ten ESI custodians. Plaintiffs *shall not* be permitted to select any additional ESI custodians in this action. Finally, the Court *shall not* require Defendants to provide Plaintiffs with discovery into their discovery process.

**I.    BACKGROUND.**

On August 3, 2022, Plaintiffs initiated this action by filing their Complaint in the U.S. District Court for the District of New Jersey alleging violations of the Securities Exchange Act of 1934. (Doc. 1 at 2, 33.) On December 12, 2022, this matter was transferred to the U.S. District Court for the District of Arizona. (Docs. 25–26.)

Following transfer to this District, Plaintiffs filed an Amended Complaint which was dismissed as impermissible puzzle pleading on February 29, 2024. (Docs. 36, 70.) Thereafter, on March 29, 2024, Plaintiffs filed the now-operative Amended Consolidated

---

[2]    The Court is mindful of the April 6, 2026, class certification deadline. *See* (doc. 239 at 5.) The Court is also aware that Defendants could not complete full discovery by March 15, 2026. Consequently, the Court finds the only reasonable solution between upcoming deadlines and discovery production is the bifurcation of deadlines here. In any event, the Court finds that substantial completion of discovery will be complete by the February 27, 2026, deadline, and that this production of documents will be complete well before the August 18, 2026, deadline for fact discovery. *See* (*id.* at 4.)

Compliant ("ACC"). (Doc. 71.) Portions of Plaintiffs' ACC were dismissed by the District Court on December 12, 2024, by the District Court. *See* (doc. 105.) However, the allegations underlying Plaintiffs' claims remain unchanged:

> In 2012, father and son, Ernest Garcia II ("Garcia Senior") and Ernest Garcia III ("Garcia Junior"), founded Carvana as a wholly-owned subsidiary of Garcia Senior's used-car business, DriveTime Automotive Group, Inc. ("DriveTime"). (Doc. 71 ¶¶ 4, 35.) Carvana then went public in 2017. (*Id.* ¶ 37.) Carvana described itself as "the Amazon of the used car industry" and promised investors its "business gets better as it gets bigger." (*Id.* ¶ 2.) But investors grew wary of Carvana's self-proclaimed growth and profitability when its stock price fell in early 2020. (*Id.* ¶¶ 3, 5.) The ACC alleges that, to deceive investors into believing Carvana's growth was sustainable, Defendants Garcia Junior—the chief executive officer ("CEO"), Garcia Senior—a controlling shareholder, and Mark Jenkins—the chief financial officer ("CFO"), implemented a scheme to artificially "pump" Carvana's stock price. (Id. ¶ 6.)

> This scheme required Carvana to: (1) enter into a "sham pass-through sales arrangement" with DriveTime to increase its reported sales; (2) flout state motor-vehicle title and registration laws and regulations; (3) abandon its purchasing and verification standards; (4) obscure critical metrics relating to its Retail GPU; (5) implement an unsustainable nationwide expansion; (6) conceal critical information relevant to its average days to sale measure; and (7) misrepresent its per-vehicle profitability. (*Id.* ¶¶ 7, 10–16, 126–72.) Plaintiffs allege Defendants accomplished this scheme through a series of material misstatements and omissions. (*Id.* ¶¶ 10, 173–260.)

> According to the ACC, Defendants' scheme produced its desired results, and Carvana's stock price reached a high of $376.83 per share in August 2021. (*Id.* ¶¶ 8, 327 n.169.) From May 6, 2020, to February 23, 2023 (the "Class Period"), Plaintiffs purchased a significant number of shares of Carvana Class A common stock at these artificially inflated prices. (*Id.* ¶ 1.) With the stock sufficiently "pumped," the ACC further alleges that Defendants manipulated their 10b5-1 trading plans and began dumping their shares. (*Id.* ¶¶ 8, 160–65.) Defendants Garcia Senior and Jenkins purportedly dumped around 14.3 million shares for profits of nearly $3.76 billion. (*Id.* ¶¶ 9, 163–65.) When Defendants' falsehoods came to light, Carvana's stock dropped 98% from its Class Period high to $8.01 per share, causing substantial monetary harm to investors. (*Id.* ¶¶ 166–72, 307–28.)

(*Id.* at 2–3.)

On March 11, 2025, the District Court issued an Order governing ESI discovery in

this action. (Doc. 137.) Regarding search terms, the District Court envisioned a collaborative process between the parties, whereby the parties would meet and confer on what search terms would be run in this action. (*Id.* at 4.) Only where a dispute of terms existed would the parties seek Court assistance. (*Id.* at 4–5.)

Between March 19, 2025, to December 16, 2025, the parties submitted proposed and counter-proposed search terms. *See* (doc. 145-7 at 6); *see also* (doc. 245-10 at 2.) During this time, the Court issued two orders impacting the current discovery dispute. The first was the Court's August 21, 2025, Order, which set the relevant class periods for the parties. *See* (doc. 196.) For the Carvana Defendants, the class period is between January 1, 2020, to February 28, 2023. (*Id.* at 5–6.) For the UW Defendants, the class period is between July 1, 2021, to October 31, 2022. (*Id.* at 6.) The second order was this Court's November 19, 2025, Order, which raised the number of ESI custodians from 18 to 25. *See* (doc. 212.)

On December 23, 2025, the District Court issued an order modifying the Scheduling Order (doc. 128) in this action. (Doc. 239.) Particularly relevant here, the District Court advanced the deadline to "substantially complete document productions" to February 27, 2026, and extended the class certification deadline to April 6, 2026. (*Id.* at 4–5.)

On December 30, 2025, Plaintiffs filed—with leave of Court—a Motion to Compel Defendants to Use Lead Plaintiffs' Proposed Search Terms, which was to be briefed in accordance with LRCiv 7.2. *See* (doc. 244.) Defendants filed their Response on January 13, 2026. *See* (doc. 258.) On January 20, 2026, Plaintiffs filed their Reply. *See* (doc. 271.) After full briefing, this Court conducted a discovery hearing on January 29, 2026. *See* (doc. 288.)

## II.  THE PARTIES' ARGUMENTS.

The parties' arguments—written and oral—are briefly summarized below.

### A.  Plaintiffs' Arguments.

Plaintiffs assert the following five main points. First, Plaintiffs assert that Defendants' production from the already-used search terms is overwhelmingly skewed

towards Title and Registration ("T&R") matters. (Doc. 244 at 8.) Specifically, Plaintiffs'
note that "[n]early 100 search strings of the 155 Defendants employed (*i.e.*, nearly 65%)
relate to [T&R] issues," which has translated to "nearly 90% of Defendants' 68,757
produced documents hit[ing] on the terms 'title' or 'reg,' confirming that the vast majority
of the alleged scheme remains untouched." (*Id.*)

Second, Plaintiffs contend that the search terms are overly formalistic. (*Id.* at 10.)
Plaintiffs argue that the current search terms "assume employees speak in formal . . .
terminology rather than the shorthand used in real-world internal communications." (*Id.*)
(citation omitted). Because of this, terms such as "sales" or "units" are not captured by the
current search terms unless that are contained in the phrases "retail unit" or "retail sale."
(*Id.*)

Third, Plaintiffs assert that of the 69,757 produced documents, "nearly 24,000 of
those are low-to-no value embedded images" such as logos. (Doc. 271 at 7); *see, e.g.*, (docs.
273-4 to 273-9.)

Fourth, Plaintiffs assert in oral arguments that, because of Defendants' minimal
production of documents, they should be permitted to gain discovery into how Defendants
conduct discovery regarding their ESI custodians. (Doc. 288.) Specifically, Plaintiffs
appear to request the metrics used by Defendants in their internal ESI discovery searches.
(*Id.*) Plaintiffs do not provide legal support for this argument, nor discuss how such
'discovery into discovery' could be done.

Fifth, Plaintiffs avers that Defendants' elusion test finding that only 7 out of every
1,000 documents collected by Defendants are responsive is faulty and unreliable. (Doc.
271 at 14.)

**B. Defendants' Arguments**.

Defendants assert the following four main points. First, Defendants contend that
requiring additional search terms would be disproportionate to the needs of this case and
unduly burdensome. (Doc. 258 at 5–6.) Specifically, Defendants note that they have
collected over 2.5 million documents from all 25 ESI custodians, expended an exorbitant

amount of time and dollars reviewing those documents, and have produced nearly 70,000 documents consisting of over 350,000 pages. (*Id.* at 5.) Defendants assert that requiring additional search terms would cause great burden and would, in effect, permit Plaintiffs to embark on a fishing expedition. (*Id.* at 6); (doc. 288.)

Second, Defendants assert that its search terms have sufficiently provided Plaintiffs with the documents they seek. (Doc. 258 at 12–13.) In particular, Defendants note that the 150 search terms already employed cover all the theories of liability Plaintiffs assert, negating the need for any additional search terms. (*Id.*)

Third, Defendants assert that, through their own statistical testing, its search terms are not deficient as they have a recall rate of 93%. (*Id.* at 12.) Instead, the relevancy rate is at 0.651%, meaning that out of every 1,000 documents collected through the search terms, only 7 would be responsive. (*Id.* at 11.) This means, in Defendants' view, that were they required to employ additional search terms, they would face a massive burden in having to review extra documents.[3] (*Id.* at 11–12.)

Fourth, Defendants refute any argument that Plaintiffs should be permitted to conduct discovery into their discovery metrics and procedures. (Doc. 288.) In particular, Defendants assert that neither caselaw nor practice supports such a process. (*Id.*)

## III.  LEGAL STANDARDS.

The court has broad discretion regarding whether to permit or deny discovery via a motion to compel. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). Generally, discoverable evidence is "any nonprivileged matter that is *relevant*[4] *to any party's claim* or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added).

While a party's right to discovery is broad, that does not mean that it is limitless.

---

[3]    In essence, Defendants assert the proverbial 'needle in a haystack' defense.

[4]    Evidence is considered relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Further, a court may exclude relevant evidence where its probative value is substantially outweighed by the danger of confusing the issue in the present case. Fed. R. Evid. 403.

*See* Fed. R. Civ. P. 26(b)(2). Courts will limit discovery where:

> (a) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (b) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii).

Generally, the party seeking to compel additional discovery bears the burden of showing that the additional discovery is relevant under Rule 26(b)(1). *See Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). Thereafter, the opposing party carries "a heavy burden" in showing why such discovery request should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

**IV.    DISCUSSION**.

At the request of the parties, the Court will analyze whether each proposed search term is permissible under Rule 26's liberal standard in order to determine whether Defendants shall be required to employ them. Thereafter, the Court will address the matter of discovery into Defendants' discovery process.

**A. Proposed Search Terms**.

The Court shall now address each proposed search term *individually* to determine whether Defendants must use them against their ESI custodians' collections. The Court shall proceed this way to safeguard Plaintiffs right to discovery while avoiding any arbitrary imposition of an undue burden upon Defendants.

The Court does not embark upon this course lightly, especially considering the warning our sister court announced nearly two decades ago:

> Whether search terms or 'keywords' will yield the information sought is a complicated question involving the interplay, at least, of the sciences of computer technology, statistics and linguistics. . . . Indeed, a special project team of the Working Group on Electronic Discovery of the Sedona Conference is studying that subject and their work indicates how difficult this question is. . . . Given this complexity, for lawyers and judges to dare opine that a certain search term or terms would be more likely to produce

information than the terms that were used is truly to go where angels fear to tread.

*United States v. O'Keefe*, 537 F. Supp. 2d 14, 24 (D.D.C. 2008) (cleaned up). However, the parties' exigent need, paired with their request that the Court analyze each search term independently, necessitates the Court's term-by-term analysis here.

### a. *Search Term No. 1*.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Retail Sales Growth | (sale* OR unit* OR retail OR vehicle* OR car OR cars) w/20 (grow* OR grew OR increas* OR decreas* OR guid* OR projection* OR trend* OR drove OR driv* OR demand OR "on track" OR behind OR ahead OR slip* OR gap OR reforecast* OR variance OR bridge OR plan* OR target OR goal OR forecast OR "YOY" OR "year*over*" OR higher OR unsustain*) |

Plaintiffs' first proposed search term seeks documents related to retail sales growth. Plaintiffs assert that this search string is highly relevant for their "Securities Exchange Act of 1934 and Securities Act of 1933 ('Securities Act') claims." (Doc. 272-3 at 2.) Plaintiffs note that this term has a high hit count of 469,319. (*Id.* at 3.) But, because of the centrality of these search terms and the high unique hit rate of 146,954, Plaintiffs argue that this search is proportional. (*Id.*)

Defendants argue that this search string is disproportionate in light the 49,000 documents produced containing "Retail Unit Sale*" and "RUS[.]" (Doc. 258 at 13.) Defendants also, under seal, evince a hefty fiscal burden in being required to run this search as to all 25 ESI custodians. (Doc. 261-2 at 2.)

Although the Court notes that 54% of the documents Defendants have produced touch on retail sales growth, and that such a string would entail a sizeable fiscal and temporal burden, the Court does not find that these factors overcome the relevancy and proportionality of this search term. *See SinglePoint Direct Solar LLC v. Solar Integrated Roofing Corp.*, No. CV-21-01076-PHX-JAT, 2023 WL 2585296, at *3 (D. Ariz. Mar. 21, 2023) ("A voluminous ESI case is always going to be burdensome. This is an unfortunate

reality of ESI heavy, high-dollar commercial cases."). Accordingly, Plaintiffs' Motion is **granted** as to search term no. 1.

### b. Search Term No. 2.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Purchasing and Verification Standards | customer* w/15 (purchas* OR buy* OR bought OR sourc* OR trad* OR acquir* OR acquisition OR offer*) w/15 (condition OR standard* OR inspect* OR rating OR rate* OR verif* OR criteri* OR low* OR poor OR quality OR wholesale OR volume OR lower OR bad OR trash* OR worth* OR shit* OR junk* OR "any car" OR "all cars" OR "all vehicles" OR grow* OR grew OR more OR up OR formula* OR algorithm* OR procedure* OR *valu* OR *demand OR inventory OR salvag* OR beat* OR wreck* OR scrap* OR damage* OR inoperable OR market OR inflat*) |

Plaintiffs' second search term "[t]argets the quality of vehicles purchased from customers, which is central to the allegations that Defendants lowered standards to artificially inflate growth." (Doc. 272-3 at 3.) Plaintiffs' assert that this search term "represents a modest and manageable review burden. (*Id.*) Defendants assert that the search term is "facially overly broad[.]" (Doc. 258 at 15.)

Considering the unique hit count of 6,492 and the relevancy towards Plaintiffs' assertion of a scheme to lower standards to artificially inflate growth, the Court will **grant** Plaintiffs' Motion as to search term no. 2.

### c. Search Term No. 3.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Purchasing and Verification Standards | (quality OR condition OR grade OR appearance OR standard* OR "sell to carvana" OR STC) w/10 (track* OR monitor* OR assess* OR inspect* OR confirm* OR check* OR analy* OR manag* OR eval* OR test* OR low* OR poor OR bad OR trash* OR worth* OR shit* OR junk* OR verif* OR reject* OR approv* OR formula* OR algorithm* OR procedure* OR data OR criteri* OR offer* OR fit OR valu* OR *demand OR inventory OR salvag* OR wholesale OR wreck* OR scrap* OR damage* OR inoperable) |

Plaintiffs' third search term seeks to discover documents related to the tracking

metrics used by Defendants regarding quality of cars purchased from customers. (Doc. 272-3 at 4.) Plaintiffs assert that a unique hit count of 38,973 is not disproportionate. (*Id.*) Defendants likewise argue that this term is overly broad, (doc. 258 at 15), asserts that this search term would cause a massive fiscal burden, and notes that it would have to search through 217,017 to even find the unique hits. (Doc. 261-2 at 3.)

The Court, considering that "[a]pproximately 54% (37,844) of Defendants' previous production hit on this string," (Doc. 272-3 at 4), finds this search term overly duplicative and burdensome. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) ("On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]"). Consequently, the Court **denies** Plaintiffs' Motion as to search term no. 3.

### d.  Search Term No. 4.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Purchasing and Verification Standards | Lemon* |

Plaintiffs' fourth search term relates to low quality cars—commonly known as lemons. (Doc. 272-3 at 4.) Plaintiffs assert that this search would have a *de minimis* burden, which may be further mitigated using operators such as "NOT" in its search. (*Id.*) Defendants assert that this search is overbroad and may produce such absurd results as "a receipt referencing Schweppes Lemon[.]" (Doc. 258 at 15.)

While the Court understands that "Lemon*" may result in several absurd results, it does not find that such absurdity overcomes the relevancy of potential results—with a prospective unique hit rate of 4,943—Plaintiffs may obtain. *See SinglePoint Direct Solar LLC*, 2023 WL 2585296, at *3 ("[T]he fact that a search term is relevant does not eliminate

the possibility that it will produce irrelevant documents. Conversely, the fact that a search term will produce irrelevant documents does not mean the term should not be used such that the party seeking discovery will not receive relevant responsive documents merely because the term produced documents that were not relevant."). Additionally, the Court finds Plaintiffs' argument that using operators in the search will mitigate the return of any absurd results. Therefore, the Court will **grant** Plaintiffs' Motion as to search term 4.

### e.  Search Term No. 5.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Purchasing and Verification Standards | inspect* w/15 (poor OR fail OR "not done") |

Plaintiffs' next search term relates to the quality of vehicles and Defendants' alleged failure to inspect vehicles. (Doc. 272-3 at 4.) Plaintiffs argue that, with only 73 unique hits, the burden on Defendants is "trivial." (*Id.*) Defendants assert that this search term is overly broad. (Doc. 258 at 15.)

Due to the minimal burden upon Defendants considering the size of this class action case, and considering the relevancy of the prospective documents Plaintiffs will receive, the Court will **grant** Plaintiffs' Motion as to search term no. 5.

### f.  Search Term No. 6.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Purchasing and Verification Standards | "no standard*" |

Plaintiffs' next search term relates to the standard—or lack thereof—of vehicles purchased. (Doc. 272-3 at 5.) Because the Parties' arguments on search terms nos. 5 & 6 are nearly identical, the Court will **grant** Plaintiffs' Motion as to search term no. 6 for the

same reasons.[5]

### g. Search Term No. 7.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Purchasing and Verification Standards | "kick" or "kicks" or "kick rate*" |

Plaintiffs allege that their seventh search term is relevant because "Defendants' internal documents use these specific terms to track vehicles 'kicked' from retail to wholesale due to poor quality." (Doc. 272-3 at 5.) Plaintiffs contend that this search term, which has a potential unique hit count of 29,608, creates a "manageable" burden for Defendants. (*Id.*) Defendants assert that this search term is overly broad and would require them to incur a large fiscal burden in having to run such a search term.

While the Court notes that this search term may return 81,834 total hits, the large hit count does not overcome its relevancy. Additionally, the Court finds Plaintiffs' prior statements regarding the usage of operators such as "NOT" informative here because using such operators would preclude absurd results—*i.e.*, 'kick a ball.'[6] Accordingly, the Court will **grant** Plaintiffs' Motion as to search term 7.

### h. Search Term No. 8.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Purchasing and Verification Standards | customer w/15 (purchas* OR buy* OR bought OR sourc* OR trad* OR acquir* OR acquisition OR offer*) w/15 (meter OR logistic* OR profit* OR margin* OR expens* OR "cut back" OR IRC* OR recondition* OR network* OR wholesale OR volume OR capacity OR constrain* OR overflow* OR storage OR "third party" OR "third-party" OR transport* OR pickup* OR "pick up" OR ship* OR "unit economic*" OR haul* OR distance* OR mile*) |

Plaintiffs' assert that search term 8 is "highly relevant" because it relates to Defendants' alleged lowering of purchase and verification standards it employed when

---

[5]     *See supra* section IV.A.f.
[6]     *See supra* section IV.A.d.

- 12 -

purchasing vehicles. (Doc. 272-3 at 5.) Plaintiffs assert that, as to proportionality, the 546 unique hits out of 16,112 presents a "manageable burden." (*Id.* at 6.) The Court agrees. Therefore, Plaintiffs' Motion is **granted** as to search term no. 8.

### i.  *Search Term No. 9*.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Nationwide Expansion | [For Sell to Carvana Custodians:] meter OR logistic* OR profit* OR margin* OR expens* OR "cut back" OR IRC* OR recondition* OR network* OR wholesale OR volume OR capacity OR constrain* OR overflow* OR storage OR park* OR "third party" OR "third-party" OR production OR transport* OR pickup* OR "pick up" OR ship* OR "unit economic*" OR haul* OR distance* OR mile* |

Plaintiffs argue their ninth search term is relevant as it "[t]argets highly relevant documents concerning [Defendants'] alleged relaxing of its purchasing and verification standards. (*Id.*) Plaintiffs assert that, as to proportionality, this search term's return of 48,046 unique hits, alongside its "central importance," militates against any finding of undue burden. (*Id.*)

The Court, seeing that of the 48,046 total hits, all are considered unique hits, finds this search term relevant and proportional. (Doc. 259-2 at 4.) Accordingly, Plaintiffs' Motion is **granted** as to search term no. 9.

### j.  *Search Term No. 10*.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Nationwide Expansion | logistic* w/15 (wholesale OR volume OR capacity OR constrain* OR *"third party" OR "third-party" OR production OR transport* OR haul OR pickup* OR "pick up" OR ship* OR distance OR mile* OR expens* OR "unit economic*") |

Plaintiffs assert that their tenth search term is relevant because it "[t]argets allegations that Defendants spearheaded nationwide expansion without regard to profitability, stretching Carvana's logistics network to the breaking point." (Doc. 272-3 at 7.) Plaintiffs' assert, because this search term is "exceptionally narrow," that requiring

Defendants to run this search term would not be disproportionate in this action. (*Id.*)

The Court, finding that this search term would return relevant documents at the heart of Plaintiffs' nationwide expansion allegation, will **grant** Plaintiffs' Motion as to search term no. 10.

### k.  Search Term No. 11.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Nationwide Expansion | (market* OR state* OR region* OR northwest OR pacific OR nationwide) w/15 (launch* OR new OR expan*) |

Plaintiffs' eleventh search term is aimed at finding ESI documents related to Defendants' expansion efforts. (*Id.*) Plaintiffs argue that requiring Defendants to search through 280,632 total hits—with a unique hit rate of 60,411—is proportional "given that expansion was a primary driver of the alleged fraud." (*Id.*) Defendants assert that such a search term would create a heavy fiscal burden and would produce numerous irrelevant documents to Plaintiffs' underlying allegations. *See* (doc. 258 at 16); *see also* (doc. 261-2 at 5.)

While the Court is sympathetic to Defendants' arguments regarding burden, the Court does not find that this search term imposes a disproportionate burden. It should be of no surprise that in a large ESI-focused litigation, discovery would be vast. *See Garner v. Amazon.co, Inc.*, No. C21-0750RSL, 2022 WL 16553158, at *2 (W.D. Wash. Oct. 31, 2022) ("While the scope of the production is undoubtedly vast, so too are the claims and damages at issue."); *see also SinglePoint Direct Solar LLC*, 2023 WL 2585296, at *3 ("However, the Court cannot say, given what is at stake, that the burden of document review is so high as to warrant denying Defendants relevant discovery."). Because search term no. 11 would discover evidence that is highly relevant to Plaintiffs' claims, the Court overrules Defendants' objection and **grants** Plaintiffs' Motion as to search term no. 11.

//

*l. **Search Term No. 12**.*

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Nationwide Expansion | ((market* OR state* OR region* OR northwest OR pacific OR nationwide) AND (launch* OR new OR expan*)) w/15 (distan* OR mile* OR transport* OR logistic* OR network* OR hub OR IRC OR "third part*" OR "third-part*" OR profit* OR cost* OR margin* OR expense* OR inventory OR far OR transport* OR haul OR pickup* OR ship* OR meter* OR constrain* OR "cut back" OR decreas* OR strain*) |

Plaintiffs' next search term covers similar grounds as search term no. 11. *See* (doc. 272-3 at 7–8.) Because of this finding, the Court is unwilling to require a search term that would be "unreasonably . . . duplicative[.]" *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Accordingly, the Court will **deny** Plaintiffs' Motion as to search term no. 12.

*m. **Search Term No. 13**.*

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Nationwide Expansion | ADESA* |

Plaintiffs' next search term "[t]argets the $4.5 billion acquisition used to 'fix' Carvana's broken infrastructure—a central event in the Class Period." (Doc. 272-3 at 8.) Defendants assert that this search term is sufficiently covered by "six broad search strings designed to return documents concerning Carvana's business strategy of nationwide expansion, including, for example, . . . ADESA[.]" (Doc. 258 at 15.)

Although the Court takes note of the fiscal burden Defendants would incur by having to run this search term, the burden does not appear to be disproportionate to the needs of this case. Additionally, considering the relevancy of ADESA in the timeline of the class period, the Court finds that the scale weighs in favor of Plaintiffs on this matter. Accordingly, Plaintiffs' Motion is **granted** as to search term no. 13.

**n. Search Term No. 14.**

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Nationwide Expansion | "MTCon*" or "Midterm contribution*" or "Mid-term contribution*" |

Plaintiffs' fourteenth search term appears to be relevant to Plaintiffs' nationwide expansion claims. Furthermore, it appears to present a *de minimis* burden on Defendants, considering that the search term returns only 2,264 total hits, of which 327 are unique hits. (Doc. 259-2 at 5.) Accordingly, Plaintiffs' Motion is **granted** as to search term no. 14.

**o. Search Term No. 15.**

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Sham Transactions with DriveTime Automotive Group, Inc. and Other Related-Party Transactions with Ernest Garcia II | DriveTime* OR DT* OR "Drive Time*" |

Plaintiffs' fifteenth search term targets "related-party deals with Garcia Sr.'s DriveTime . . . [which] are central to Plaintiffs' claims." (Doc. 272-3 at 9.) Plaintiffs contend that such a search is proportional due to the 27,460 unique hits based off of the search term. (*Id.*)

Defendants assert that this search term is "facially overbroad," seeking about 193,085 total hits plus families—which, in Defendants position, is disproportionate and amounts to an unduly burden (Doc. 258 at 17.) Defendants further contend that they have already produced 2,459 documents and are reviewing another 4,336 to potential hand over.

(*Id.* at 16–17.)

Considering Plaintiffs' broad right to discovery, the highly relevant nature of the search term to Plaintiffs' related-party transaction allegations, and Defendants' "heavy burden" to establish why discovery should be denied, *Blankenship*, 519 F.2d at 429, the Court will **grant** Plaintiffs' Motion as to search term no. 15.

### p. *Search Term No. 16*.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Sham Transactions with DriveTime Automotive Group, Inc. and Other Related-Party Transactions with Ernest Garcia II | Bridgecrest* |

Plaintiffs' sixteenth search term similarly relates to Plaintiffs' related-party transaction allegations. (Doc. 272-3 at 9.) The search term here relates to a related-transactions that—Plaintiffs allege—"were admittedly not negotiated at arm's length . . . with Garcia Sr.'s Bridgecrest." (*Id.*) Plaintiffs further assert that, because out of 21,796 total hits, there is expected to be 3,886 unique hits, it is a proportional and "manageable burden." (*Id.* at 10.) Defendants respond that "search strings includ[ing] the terms 'Bridgecrest*' and 'Verde,*'" are irrelevant because they are non-parties to this action. (Doc. 258 at 17.)

Because this search string seeks relevant related-party transactions with a limited number of total hits, Defendant has a heavy burden in seeking to prevent this search term's implementation. Defendants do not meet their heavy burden here. Accordingly, Plaintiffs' Motion is **granted** as to search term no. 16.

//

*q.  Search Term No. 17*.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Sham Transactions with DriveTime Automotive Group, Inc. and Other Related-Party Transactions with Ernest Garcia II | Verde* |

The Court, for the same reasons as search term no. 16,[7] will **grant** Plaintiffs' Motion as to search term no. 17.

*r.  Search Term No. 18*.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to T&R | ("NC") w/5 ("situation*" OR issue* OR "suspen*" OR "penal*" OR "problem*" OR "fine*" OR "investigat*" OR "violat*" OR complain* OR TOP OR TOPS OR complian* OR noncomplian* OR comply* OR goodwill OR reputation* OR privilege* OR fraud* OR probat* OR revocat* OR revok*) |

In light of the parties' filings, the Court need not scrutinize Plaintiffs' T&R search terms in-depth. Because Plaintiffs note that 89% of the documents Defendants have produced relate to T&R, to require any further T&R search terms would be disproportionate and "unreasonably cumulative[.]" *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Accordingly, the Court will **deny** Plaintiffs' Motion as to search term no. 18.

//

///

//

///

---

[7]    *See supra* section IV.A.p.

*s.  Search Term No. 19*.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to T&R | "IL" w/3 (situation* OR issue* OR "suspen*" OR "penal*" OR "problem*" OR "fine*" OR "investigat*" OR "violat*" OR complian* OR noncomplian* OR comply* OR goodwill OR reputation* OR privilege* OR fraud* OR probat* OR revocat* OR revok*) |

For the same reason as the preceding search term,[8] the Court will **deny** Plaintiffs' Motion as to search term no. 19.

*t.  Search Term No. 20*.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to T&R | ((risk OR risks) w/3 disclos*) AND (10-K OR 10K OR 10-Q OR 10Q OR SEC OR "annual report" OR investor*) |

For the same reason as search term no. 18,[9] the Court will **deny** Plaintiffs' Motion as to search term no. 20.

*u.  Search Term No. 21*.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to T&R | Buffer* OR cushion* |

For the same reason as search term no. 18,[10] the Court will **deny** Plaintiffs' Motion as to search term no. 21.

//

//

---

[8]    *See supra* section IV.A.r.
[9]    *See supra* section IV.A.r.
[10]   *See supra* section IV.A.r.

*v.  Search Term No. 22.*

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Motive | (Ernie* OR Ernest* OR Garcia* OR Mark* OR Jenkins* OR CEO OR CFO) w/25 (compensat* OR salar* OR bonus* OR severance OR incentive* OR award* OR eligib* OR *equit* OR option* OR performance OR "RSU*" OR "PBU*" OR KPI* OR claw* OR grant* OR target* OR vest* OR defer* OR pension OR parachute* OR perk*) |

Plaintiffs' twenty-second search term relates to Garcia Jr.'s and Jenkins's motive, asserting that it is relevant and proportional because "[a]pproximately 29% (20,236) of Defendants' previous production hit on this string[.]" (Doc. 272-3 at 12.) Defendants assert a high time and dollar burden in having to run this search string. *See* (doc. 259-2 at 8); *see also* (doc. 261-2 at 8.) The Court finds Defendants' objection well founded. Accordingly, Plaintiffs' Motion is **denied** as to search term no. 22.

*w.  Search Term No. 23.*

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Motive | [For Garcia Jr. and Jenkins:] (compens* OR comp OR salar* OR bonus* OR severance OR incentive* OR *equit* OR "perform*based" OR "performance based" OR "RSU*" OR "PBU*" OR KPI* OR "key performance" OR pension OR "key strategic goal*" OR parachute* OR perk*) |

Plaintiffs assert that their twenty-third search string is "highly relevant" to their security fraud claims as it is relevant to establishing Garcia Jr.'s scienter—an element of a security fraud claim. (Doc. 272-3 at 13.) Defendants assert that such a search string amounts to "an impermissible fishing expedition[.]" (Doc. 258 at 20.) The Court agrees with Plaintiffs here. Therefore, Plaintiffs' Motion is **granted** as to search term no. 23.

//

///

//

///

- 20 -

1

***x. Search Term No. 24.***

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Motive | [For Garcia Jr. and Jenkins:] (sell* OR trade* OR trading OR transact*) w/ 20 (stock OR share*) |

Because this search string likewise relates to scienter of Garcia Jr. and Jenkins, the Court finds—for the same reason as search string no. 23—that this search string is highly relevant and proportional to Plaintiffs' claims and defenses.[11] Therefore, the Court will **grant** Plaintiffs' Motion as to search string no. 24.

***y. Search Term No. 25.***

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Motive | [For Garcia Jr. and Jenkins:] "10b5*1" OR "trading plan*" |

Because this search string likewise relates to scienter of Garcia Jr. and Jenkins, the Court finds—for the same reason as search string no. 23—that this search string is highly relevant and proportional to Plaintiffs' claims and defenses.[12] Therefore, the Court will **grant** Plaintiffs' Motion as to search string no. 25.

***z. Search Term No. 26.***

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Motive | [For Garcia Jr. and Jenkins:] Plan* w/10 ((chang* OR terminat* OR cancel* OR outside) AND (stock* OR share* OR sell* OR sale* OR trad*)) |

Because this search string likewise relates to scienter of Garcia Jr. and Jenkins, the

---

[11]    *See supra* section IV.A.w.
[12]    *See supra* section IV.A.w.

Court finds—for the same reason as search string no. 23—that this search string is highly relevant and proportional to Plaintiffs' claims and defenses.[13] Therefore, the Court will **grant** Plaintiffs' Motion as to search string no. 26.

#### aa. Search Term No. 27.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Motive | [From September 1, 2022 through February 1, 2023:] (Levin*) w/20 (fir* OR terminat* OR leave* OR canned OR dismiss* OR resign* OR sacked OR retir* OR (step* down) OR oust* OR "let go" OR depart* OR "for cause" OR "without cause" OR separat* OR boot*) |

Plaintiffs' twenty-seventh search term relates to Mike Levin, who was Carvana's "head of Investor Relations during the Class period . . . [and] was also the speaker for one of the upheld title-and-registration misstatements." (Doc. 272-3 at 13.) As to proportionality, Plaintiffs assert that this search term creates a de minimis burden on Defendants. (*Id.*) Defendants' assert undue fiscal burden in objecting to this request. *See* (doc. 258 at 20); *see also* (doc. 261-2 at 9.)

The Court finds that this search term is relevant, proportional, and does not result in an undue fiscal burden on Defendants considering this high-dollar securities class-action case. Accordingly, the Court will **grant** Plaintiffs' Motion as to search term no. 27.

#### bb. Search Term No. 28.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Motive | [For Mike Levin, from September 1, 2022 through February 1, 2023:] ("separation agreement" OR leave* OR retir* OR resign* OR severance OR fir* OR terminat* OR "step* down" OR "for cause" OR "without cause" OR quit*) |

For the same reasons as search term no. 27, the Court does not find that fiscal burden overcomes the search term's relevancy and "manageable burden" on Defendants. *See* (doc. 272-3 at 14.) Hence, the Court **grants** Plaintiffs' Motion as to search term no. 28.

---

[13]     *See supra* section IV.A.w.

1

### cc. Search Term No. 29.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Carvana's April 2022 Offering | (Offering OR Cactus) w/20 ("solicit*" OR "issue*" OR "sell*" OR "dilig*") |

Plaintiffs assert that their twenty-ninth search term is "highly relevant" because it concerns "Carvana's 2022 secondary stock offering, which the [Defendants] referred to internally as 'Project Cactus.'" (*Id.*) Plaintiffs assert that, with a unique hit count of 437, this amounts to a trivial burden on Defendants. (*Id.*) The Court agrees that this search string is relevant and proportional. Therefore, Plaintiffs' Motion is **granted** as to search string no. 29.

### dd. Search Term No. 30.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Carvana's April 2022 Offering | [For the period January 1, 2022 to April 30, 2022:] (Offering or Cactus) AND (underwrit* OR "bring down" OR roadshow*) |

For the same reasons as the preceding search string, the Court **grants** Plaintiffs' Motion as to search string no. 30.

//

///

//

///

//

///

//

///

*ee. Search Term No. 31*.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Carvana's April 2022 Offering | [In any of the To, From, CC, or BCC fields:] christian.anderson@citi.com OR brian.yick@citi.com OR andrew.cuthill@citi.com OR nicholas.landi@citi.com OR ryan.bott@citi.com OR alan.dockeray@citi.com OR christian.berardo@citi.com OR salman.karim@citi.com OR paul.abrahimzadeh@citi.com OR brian.deleo@citi.com OR alex.zelinski@citi.com OR tyler.shaw@citi.com OR patrick.korth@citi.com OR richard.chand@citi.com OR gabriel.xia@citi.com OR janelle.c.mosley@citi.com OR juliette.lagasi@citi.com OR matthew.donovan@citi.com OR ronald.josey@citi.com OR nicholas.jones@citi.com |

Plaintiffs' thirty-first search string attempts to gain relevant communications with personnel from "[D]efendant Citigroup . . . who served as an underwriter of Carvana's 2022 secondary stock option." (*Id.* at 15.) Plaintiffs assert that, with a unique hit count of 472, this search presents a *de minimis* burden on Defendants. The Court agrees. Therefore, the Court **grants** Plaintiffs' Motion as to search string no. 31.

*ff.  Search Term No. 32*.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Carvana's April 2022 Offering | (Carvana* OR CVNA*) AND ("Davis Polk" OR *davispolk.com OR Denenberg* OR Gould* OR (Travis* w/3 Mitchell*) OR Lian* OR Azzopardi* OR Kipnis* OR (Brad* w/3 Sherman*) OR Verdolini*) |

Plaintiffs' thirty-second search string seeks communications with personnel from Davis Polk & Wardwell LLP who were involved in Carvana's 2022 secondary stock offering. (*Id.*) The Court notes that this search string seeks communications from attorneys, which almost certainly encompass attorney-client privileged communications and documents. The Court, because this search string seeks privileged and potentially irrelevant communications and documentation, will accordingly **deny** Plaintiffs' Motion as to search string no. 32.

1

*gg. Search Term No. 33.*

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Carvana's April 2022 Offering | (Carvana* OR CVNA* OR *@carvana.com) AND ("K&E" OR *Kirkland.com OR Goedert*) |

Because this search string likewise seeks communications with attorneys,[14] the Court will **deny** Plaintiffs' Motion as to search string no. 33.

*hh. Search Term No. 34.*

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Stock Price Movements and Analyst Communications | (stock* OR share*) w/10 (up OR down* OR price OR target* OR consensus) |

Plaintiffs' thirty-fourth search string seeks information related to the impact of Defendants' alleged fraud on their stock price. (*Id.* at 16.) The Court finds that this search term is facially overbroad and would unduly burden Defendants both fiscally and temporally. *See* (doc. 261-2 at 11.) Accordingly, the Court will **deny** Plaintiffs' Motion as to search term no. 34.

*ii. Search Term No. 35.*

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Stock Price Movements and Analyst Communications | (market OR analyst* OR Street) w/10 (react* OR disappoint* OR surpris* OR downgrad* OR ((lower* OR reduc*) w/3 rating*) OR miss*) |

Plaintiffs' thirty-fifth search string likewise seeks information related to the impact of Defendants' alleged fraud on their stock price. (*Id.* at 16.) However, because this search

---

[14]     *See supra* section IV.A.ff.

string is narrower and presents a smaller fiscal and temporal burden on Defendants, the Court finds it proportional to Plaintiffs' needs in this action. Therefore, the Court will **grant** Plaintiffs' Motion as to search term no. 35.

### jj.  Search Term No. 36.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Stock Price Movements and Analyst Communications | john.blackledge@cowen.com   OR   william.kerr@cowen.com   OR   james.kopelman@cowen.com   OR   logan.whalley@cowen.com   OR   sdyer@craig-hallum.com   OR   ryan.sigdahl@craig-hallum.com   OR   matthew.wegner@craig-hallum.com   OR   mbaker@dadco.com   OR   khallberg@dadco.com          OR          kcox@dadco.com          OR   MHayes@dadco.com       OR       james.musker@davyuk.com       OR   david.reynolds@davyuk.com    OR    alex.short@davyuk.com    OR   christopher.allan@davyuk.com |

The court will apply the following analysis for search term no. 36 to search terms nos. 37–43. Plaintiffs' search term targets "securities analysts who covered Carvana stock, and the reports detailing analysts' reactions to Carvana's disclosures, which are highly relevant to Plaintiffs' claims." (*Id.* at 17.) Plaintiffs note that this search term presents a manageable burden—regarding this search string, it results in 207 unique hits. (*Id.*) Defendants assert that this search string amounts to a "fishing expedition," and in any event, they have already handed over documents that detail "robust market-reaction and analyst terms," so this string is cumulative. (Doc. 258 at 19.) The Court finds that, due to the minimal burden and relevancy to this case, the search term is permissible here. Therefore, the Court will **grant** Plaintiffs' Motion as to search term no. 36.

//

///

//

///

//

///

//

*kk. Search Term No. 37.*

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Stock Price Movements and Analyst Communications | berickson@needhamco.com   OR   cpierce@needhamco.com   OR bmcternan@needhamco.com   OR   emmanuel.rosner@db.com   OR edison.yu@db.com      OR      conor-e.walters@db.com      OR Brian.Nagel@opco.com   OR   William.Dossett@opco.com   OR Andrew.Chasanoff@opco.com |

For the same reason as search term no. 36,[15] the Court will **grant** Plaintiffs' Motion as to search term no. 37.

*ll.  Search Term No. 38.*

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Stock Price Movements and Analyst Communications | Naved.Khan@truist.com    OR    Youssef.Squali@truist.com    OR Robert.Zeller@truist.com    OR    Daniel.Speed@truist.com    OR Nicholas.Cronin@truist.com    OR    Kibin.Kim@truist.com    OR Anthony.Hau@truist.com OR Zachary.Fadem@wellsfargo.com OR Sam.Reid@wellsfargo.com OR David.Lantz@wellsfargo.com OR John.Parke@wellsfargo.com OR Seth.Basham@wedbush.com OR Nathan.Friedman@wedbush.com                   OR matthew.mccartney@wedbush.com OR szackfia@williamblair.com OR               tanderson@williamblair.com               OR gbadishkanian@wolferesearch.com   OR   clee@wolferesearch.com OR tharbauer@wolferesearch.com OR jmoser@wolferesearch.com OR sstringer@wolferesearch.com |

For the same reason as search term no. 36,[16] the Court will **grant** Plaintiffs' Motion as to search term no. 38.

//

///

//

///

//

///

---

[15]    *See supra* section IV.A.jj.
[16]    *See supra* section IV.A.jj.

mm.    *Search Term No. 39*.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Stock Price Movements and Analyst Communications | Michael.Montani@evercoreisi.com              OR<br>brandon.dempster@evercoreisi.com            OR<br>greg.melich@evercoreisi.com                 OR<br>Daniel.Solomon@evercoreISI.com  OR  jcolantuoni@jefferies.com<br>OR bthill@jefferies.com |

For the same reason as search term no. 36,[17] the Court will **grant** Plaintiffs' Motion as to search term no. 39.

nn. *Search Term No. 40*.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Stock Price Movements and Analyst Communications | alexander.potter@psc.com        OR      ben.johnson@psc.com        OR<br>winnie.dong@psc.com        OR        jack.kessler@psc.com        OR<br>brad.erickson@rbccm.com        OR      logan.reich@rbccm.com        OR<br>vincent.caintic@stephens.com OR daniel.imbro@stephens.com OR<br>rnelson@stephens.com OR mward@benchmarkcompany.com |

For the same reason as search term no. 36,[18] the Court will **grant** Plaintiffs' Motion as to search term no. 40.

oo. *Search Term No. 41*.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Stock Price Movements and Analyst Communications | chris.bottiglieri@exanebnpparibas.com              OR<br>stephen.mcmanus@exanebnpparibas.com            OR<br>ian.davis@exanebnpparibas.com                 OR<br>nathaniel.schindler@bofa.com OR vincent-peer.huebner@bofa.com<br>OR jen.shi@bofa.com OR garrett.nelson@cfraresearch.com |

For the same reason as search term no. 36,[19] the Court will **grant** Plaintiffs' Motion as to search term no. 41.

//

//

---

[17]    *See supra* section IV.A.jj.
[18]    *See supra* section IV.A.jj.
[19]    *See supra* section IV.A.jj.

1

*pp. Search Term No. 42*.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Stock Price Movements and Analyst Communications | njones@jmpsecurities.com OR tshubsda@jmpsecurities.com OR rjosey@jmpsecurities.com OR aboone@jmpsecurities.com |

For the same reason as search term no. 36,[20] the Court will **grant** Plaintiffs' Motion as to search term no. 42.

*qq. Search Term No. 43*.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Stock Price Movements and Analyst Communications | Adam.Jonas@morganstanley.com OR Armintas.Sinkevicius@morganstanley.com OR Evan.Silverberg@morganstanley.com OR Daniela.Haigian@morganstanley.com OR Matias.Ovrum@morganstanley.com |

For the same reason as search term no. 36,[21] the Court will **grant** Plaintiffs' Motion as to search term no. 43.

*rr. Search Term No. 44*.

| Area of Coverage | Proposed Search Term |
|---|---|
| Terms Relating to Communications with the SEC | [in To/From/CC/BCC Fields:] *@sec.gov |

Plaintiffs' final search string "[t]argets information regarding the SEC's investigation into Carvana's related-party transactions with DriveTime and other entities owned by Garcia Sr." (Doc. 272-3 at 19.) The Court, finding this search term to be overly generic and encompassing documents already provided by Defendants after this Court's January 14, 2026, Order (doc. 264), will **deny** Plaintiffs' Motion as to search term no. 44.

---

[20] *See supra* section IV.A.jj.
[21] *See supra* section IV.A.jj.

1    **B. Discovery-On-Discovery**.

2    During oral arguments, Plaintiffs requested discovery into Defendants' discovery

3    process, such as the metrics used in running search terms through Defendants' ESI

4    custodian's ESI collections. *See* (doc. 288.) Defendants objected to this request, asserting

5    that neither caselaw nor the facts of this case would permit such a request. (*Id.*) The Court

6    agrees with Defendants. As our sister court has held, "Discovery into another party's

7    discovery process is disfavored" and should only be granted "where there is some

8    indication that a party's discovery has been insufficient or deficient." *Jensen v. BMW of N.*

9    *Am., LLC*, 328 F.R.D. 557, 566 (S.D. Cal. 2019). Because Plaintiffs have not made the

10   requisite showing that Defendants' discovery has been insufficient or deficient, the Court

11   will **sustain** Defendants' objection.

12   **V.    CONCLUSION**.

13   For the foregoing reasons, the Court will **grant** Plaintiffs' Motion to Compel

14   Defendants to Use Lead Plaintiffs' Proposed Search Terms (doc. 244) **in part** and **deny**

15   the motion **in part**. Specifically, the Court will require Defendants to run search terms 1–

16   2, 4–11, 13–17, 23–31, 35–43 through 15 ESI custodians' ESI collections. This process

17   shall be bifurcated, whereby 5 ESI custodians' collections shall be searched, and

18   Defendants *shall produce* responsive and non-privileged documents, emails, and family

19   units, on or before March 15, 2026. Thereafter, 10 ESI custodians' collections shall be

20   searched, and Defendants *shall produce* responsive and non-privileged documents, emails,

21   and family units, on or before June 12, 2026. Plaintiffs shall choose the 15 ESI custodians

22   whose collections shall be searched, including the ability to choose the 5 ESI custodians

23   whose collections shall be searched first.

24   Plaintiffs *shall not* be permitted to select any additional ESI custodians in this

25   action. Furthermore, the Court *shall not* require Defendants to provide Plaintiffs with

26   discovery into its discovery process.

27   //

28   //

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion to Compel Defendants to Use Lead Plaintiffs' Proposed Search Terms (doc. 244) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendants **SHALL RUN SEARCH TERMS 1–2, 4–11, 13–17, 23–31, 35–43** through **15 ESI CUSTODIANS' ESI COLLECTIONS**. Plaintiffs **SHALL** select the 15 ESI custodians to be searched on or before **FEBRUARY 6, 2026**.

**IT IS FURTHER ORDERED** that Defendants **SHALL PRODUCE** responsive and non-privileged documents, emails, and family units, on or before **MARCH 15, 2026**, for **FIVE ESI CUSTODIANS' COLLECTIONS**. Plaintiffs shall select the five ESI custodians to be searched on or before **FEBRUARY 6, 2026**.

**IT IS FURTHER ORDERED** that Defendants **SHALL PRODUCE** responsive and non-privileged documents, emails, and family units, on or before **JUNE 12, 2026**, for **TEN ESI CUSTODIANS' COLLECTIONS**. Plaintiffs shall select the ten ESI custodians to be searched on or before **FEBRUARY 6, 2026**.

**IT IS FURTHER ORDERED** that Plaintiffs **SHALL NOT** be permitted to select any additional ESI custodians in this action.

**IT IS FURTHER ORDERED** that, if a dispute arises as to the production of documents and communications in response to this Order, the parties **SHALL MEET AND CONFER IN GOOD FAITH** to resolve the dispute. ***AS A LAST RESORT***, the parties MAY submit their dispute to this Court.

**IT IS FURTHER ORDERED** that, in all other respects, Plaintiffs' Motion is **DENIED**.

Dated this 2nd day of February, 2026.

Honorable John Z. Boyle
United States Magistrate Judge