ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN (CA 200643)
TOR GRONBORG (CA 179109)
ERIKA L. OLIVER (CA 306614)
RACHEL A. COCALIS (CA 312376)
MATTHEW J. BALOTTA (CA 310303)
SARAH A. FALLON (CA 345821)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
ddrosman@rgrdlaw.com
torg@rgrdlaw.com
eoliver@rgrdlaw.com
rcocalis@rgrdlaw.com
mbalotta@rgrdlaw.com
sfallon@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re Carvana Co. Securities Litigation | ) ) | No. CV-22-2126-PHX-MTL |
| This Document Relates To: | ) ) ) ) | LEAD PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS IMPROPERLY WITHHELD AS PRIVILEGED BY THE CARVANA DEFENDANTS |
| All Actions. | ) ) ) | ORAL ARGUMENT REQUESTED |

4909-4492-5837.v1

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ............................................................................................... 1

II.     LEGAL STANDARD ......................................................................................... 2

III.    ARGUMENT ...................................................................................................... 3

      A.      The Carvana Defendants' Assertion of a Due Diligence Defense
             Waives Privilege as to Communications with Counsel Concerning
             Carvana's April 2022 Offering ................................................................... 3

      B.      Defendants' Reliance on Counsel in Support of Their Good-Faith
             Defense Waives Privilege ........................................................................... 7

IV.     CONCLUSION ................................................................................................. 14

4909-4492-5837.v1

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Abromavage v. Deutsche Bank Sec. Inc.*,
2019 WL 6790513 (S.D.N.Y. 2019)................................................................................ 12

*Baker v. SeaWorld Ent., Inc.*,
2020 WL 241441 (S.D. Cal. 2020) ................................................................................ 12

*Baker v. SeaWorld Ent., Inc.*,
No. 14-cv-2129-MMA, ECF 508
(S.D. Cal. Jan. 21, 2020)............................................................................................... 12

*Bittaker v. Woodford*,
331 F.3d 715 (9th Cir. 2003) ................................................................................... 10, 11

*Chevron Corp. v. Pennzoil Co.*,
974 F.2d 1156 (9th Cir. 1992) ......................................................................................... 3

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976).......................................................................................................... 8

*FSP Stallion 1, LLC v. Luce*,
2010 WL 3895914 (D. Nev. 2010) .................................................................................. 2

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000) ......................................................................................... 8

*In re Broadcom Corp. Sec. Litig.*,
2005 WL 1403516 (C.D. Cal. 2005) ........................................................................... 3, 10

*In re Charles Schwab Corp. Sec. Litig.*,
2010 WL 11937102 (N.D. Cal. 2010) ..................................................................... 4, 5, 6

*In re Fresh & Process Potatoes Antitrust Litig.*,
2014 WL 1413676 (D. Idaho 2012)............................................................................... 12

*In re LendingClub Sec. Litig.*,
2018 WL 977558 (N.D. Cal. 2018) .................................................................................. 7

*In re Lidoderm Antitrust Litig.*,
2016 WL 4191612 (N.D. Cal. 2016) .............................................................................. 13

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
2021 WL 5105774 (D.N.J. 2021) ......................................................................... 11, 12, 14

- ii -

4909-4492-5837.v1

**Page**

*In re WorldCom, Inc. Sec. Litig.*,
   2004 WL 936320 (S.D.N.Y. 2004) .............................................................................. 5

*La. Mun. Police Emps. Ret. Sys. v.*
   *Green Mountain Coffee Roasters, Inc.*,
   2017 WL 3037414 (D. Vt. 2017) ................................................................................ 12

*Nat.-Immunogenics Corp. v. Newport Trial Grp.*,
   2018 WL 6138160 (C.D. Cal. 2018) .......................................................................... 13

*Okla. Firefighters Pension & Ret. Sys. v. Musk*,
   __ F. Supp. 3d __, 2025 WL 2982003
   (S.D.N.Y. 2025) ..................................................................................................... 13, 14

*SEC v. Kokesh*,
   2014 WL 11516545 (D.N.M. 2014),
   *reconsideration denied*,
   2014 WL 12786871 (D.N.M. 2014) ........................................................................... 13

*SEC v. Tourre*,
   950 F. Supp. 2d 666 (S.D.N.Y. 2014) ........................................................................ 13

*Sheet Metal Workers Nat'l Pension Fund v.*
   *Bayer Aktiengesellschaft*,
   2024 WL 74928 (N.D. Cal. 2024) ............................................................................... 10

*Shenwick v. Twitter, Inc.*,
   2021 WL 1232451 (N.D. Cal. 2021) ...................................................................... 5, 11

*Smilovits v. First Solar, Inc.*,
   2019 WL 6698199 (D. Ariz. 2019).............................................................................. 12

*United States v. Amlani*,
   169 F.3d 1189 (9th Cir. 1999) ...................................................................................... 3

*United States v. Ruehle*,
   583 F.3d 600 (9th Cir. 2009) ........................................................................................ 2

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981)....................................................................................................... 2

*Veleron Holding, B.V. v. Morgan Stanley*,
   694 F. App'x 858 (2d Cir. 2017) .................................................................................. 8

4909-4492-5837.v1

**Page**

*Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*,
   647 F.2d 18 (9th Cir. 1981) ...................................................................................... 2

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
   §77k............................................................................................................................ 3
   §77k(b) ....................................................................................................................... 4
   §77k(b)(3)(A) ............................................................................................................. 3
   §77l(a)(2) ................................................................................................................... 3
   § 77o............................................................................................................................ 3
   §78j(b)..................................................................................................................... 7, 8
   §78t(a) ..................................................................................................................... 7, 8

Federal Rules of Civil Procedure
   Rule 26(a)(1).............................................................................................................. 4

4909-4492-5837.v1

Lead Plaintiffs United Association National Pension Fund and Saskatchewan Healthcare Employees' Pension Plan submit this motion seeking to compel the Carvana Defendants to produce documents regarding their due diligence and good-faith defenses that have been improperly withheld as privileged attorney-client communications.[1]

## I.    INTRODUCTION

This motion seeks to end an evidentiary shell game: the Carvana Defendants cannot hide behind their lawyers to prove they acted in "good faith" while simultaneously sealing off the very evidence that would prove otherwise.  These Defendants have asserted "due diligence" and "good-faith" defenses to escape liability for Carvana's alleged misstatements and material omissions.  To prove these defenses, the Carvana Defendants explicitly intend to point the jury toward the "involvement" and "work" of their legal teams as proof that their conduct was reasonable.  Yet, in the same breath, they claim the substance of that work is protected from discovery by the attorney-client privilege.  The attorney-client privilege is a shield for confidentiality, not a litigation weapon.

The governing law in the Ninth Circuit is settled.  Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly and narrowly construed.  The burden of establishing it rests on the party asserting it, and it is waived where a party, like the Carvana Defendants here, affirmatively injects its investigation, knowledge, or good-faith belief into the case in a way that makes the withheld communications vital to a fair adjudication.  Fairness prohibits a defendant from disclosing the "fact" of a lawyer's participation to suggest its conduct was legally "blessed," while withholding the communications that reveal what those lawyers actually received, discovered, or flagged. When the Carvana Defendants attempt to prove due diligence and good faith by pointing to attorney "involvement" or "work," fairness requires disclosure of the communications underlying that narrative.

---

[1]    The "Carvana Defendants" are Carvana Co., Ernest Garcia III ("Garcia Jr."), Mark Jenkins, Stephen Palmer, Michael Maroone, Neha Parikh, Ira Platt, and Greg Sullivan. Unless otherwise stated, all citations are omitted and emphasis is added.

- 1 -

The essential facts necessitating this motion are undisputed.  First, Defendants have asserted affirmative defenses that they acted in good faith and conducted a "reasonable investigation" into the truth of their disclosures.  Second, when asked in discovery to identify the basis for that belief, Defendants admitted they relied on Carvana's in-house legal team and outside counsel at Kirkland & Ellis.  Third, defense counsel confirmed Defendants' tactical plan: they intend to prove these defenses by pointing to a "process" involving the participation of counsel while withholding the communications that would reveal counsel's role, if any, in that "process" and what the Carvana Defendants' attorneys actually said, did, or discovered.  Despite these admissions, the Carvana Defendants have withheld every attorney communication that would allow Plaintiffs to test their due diligence and good-faith defenses.

## II.     LEGAL STANDARD

"'The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, . . . as well as an attorney's advice in response to such disclosures.'"  *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009).  The privilege is therefore limited to confidential attorney-client communications made for the purpose of obtaining or providing legal advice, and it does not insulate the underlying facts (including what occurred, who was involved, and what information was communicated to counsel) simply because attorneys participated in, received, or discussed those facts. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The [attorney-client] privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts . . . .").  "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed."  *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981).  The Ninth Circuit is clear that "the burden of proving that the attorney-client privilege applies rests . . . with the party asserting it." *Id.* at 25.  This is a heavy burden that must be proven as to each element of the privilege, including the specific requirement that "'the party asserting the privilege must affirmatively demonstrate non-waiver.'"  *See FSP Stallion 1, LLC v. Luce*, 2010 WL 3895914, at *15 (D. Nev. 2010); *Weil*, 647 F.2d at 25.

- 2 -

4909-4492-5837.v1

A party is strictly prohibited from using the privilege as both a sword and a shield. *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("The privilege which protects attorney-client communications may not be used both as a sword and a shield."). "Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *Id.*  Under the Ninth Circuit's three-part test, a court may find that the attorney-client privilege is implicitly waived where: (1) "the party . . . assert[s] the 'privilege as the result of some affirmative act'" such as asserting an affirmative defense; (2) "'through this affirmative act, the asserting party puts the privileged information at issue'"; and (3) "'allowing the privilege would deny the opposing party access to information vital to its defense.'" *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999).  Put simply, when a party places its state of mind, knowledge, reasonableness, or good-faith belief at issue and affirmatively relies on the involvement of counsel as part of the factual basis for that position, the privileged communications bearing on that position become discoverable to the extent necessary to prevent unfairness.  *In re Broadcom Corp. Sec. Litig.*, 2005 WL 1403516, at *2 (C.D. Cal. 2005) (where a "party inject[s] the issue of its knowledge of the law into the case," it has "waived the attorney-client privilege").

### III.    ARGUMENT

**A.    The Carvana Defendants' Assertion of a Due Diligence Defense Waives Privilege as to Communications with Counsel Concerning Carvana's April 2022 Offering**

Plaintiffs brought and the Court sustained claims under §§11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act") for alleged misstatements and omissions in the Registration Statement for Carvana's April 2022 common stock offering.  ECF 71, ¶¶365-448; ECF 105 at 62-71.  The Securities Act allows defendants to avoid liability by proving the affirmative defense that they "had, after reasonable investigation, reasonable ground to believe and did believe" that the registration statement was not materially misleading.  15 U.S.C. §77k(b)(3)(A).  This is typically referred to as the due diligence defense.  Because the burden of proof for this affirmative defense rests entirely on defendants, their subjective state

- 3 -

of mind is squarely at issue.  *See* 15 U.S.C. §77k(b).  The inquiry "focuses on a defendant's belief at the time in question and specifically whether he had reasonable belief in the accuracy of the registration statement."  *In re Charles Schwab Corp. Sec. Litig.*, 2010 WL 11937102, at *1 (N.D. Cal. 2010).

In their Ninth Affirmative Defense, the Carvana Defendants assert that they "had, after reasonable investigation, reasonable grounds to believe and did believe, at the time of the statements at issue, that their statements were true and that there was no omission of any required material fact necessary to make the statements not misleading."  ECF 115 at 173. For the avoidance of doubt, Plaintiffs served requests for admission and interrogatories to ascertain the basis of Defendants' purported "reasonable belief" and the details of their reasonable investigation.  In response to these requests for admission, each of the Carvana Defendants confirmed their reliance upon attorneys for their reasonable investigation and "good faith belief" regarding the April 2022 offering Registration Statement.  *See* Exs. 1-2 at Response Nos. 33-34, 37; Exs. 3-7 at Response Nos. 1-2, 5.[2]  And in response to Plaintiffs' First Set of Interrogatories, Defendants identified "Carvana's in-house legal team, including Paul Breaux, Chris Olson, and Kevin Hogan" and "Carvana's outside counsel Kirkland & Ellis LLP, including Robert Goedert, Michael Keeley, and Ana Semperteugi" as the specific persons on whom they relied to form their belief that the Registration Statement was not misleading.  *See* Ex. 8 at 11-12; *see also* Exs. 9-10 at 8 (responses for Garcia Jr. and Jenkins).[3]  During the parties' meet-and-confer discussions, the Carvana Defendants' counsel confirmed that they "intend[] to prove this defense, in part, with evidence about the

---

[2]  "Ex. __" references are to the exhibits attached to the Declaration of Sarah A. Fallon in Support of Lead Plaintiffs' Motion to Compel the Production of Documents Improperly Withheld as Privileged by the Carvana Defendants, filed concurrently herewith.

[3]  Neither Kirkland & Ellis nor any of the individual Kirkland & Ellis attorneys were disclosed in the Carvana Defendants' Rule 26(a)(1) initial disclosures.  *See* Exs. 11-13.

- 4 -

4909-4492-5837.v1

preparation of the Registration Statement, which involved work by attorneys and other advisors." *See also* Ex. 14.[4]

The Carvana Defendants' intent to rely upon the involvement of counsel to prove their due diligence defense waives privilege as to all communications received from or provided to counsel concerning the April 2022 offering. *See Charles Schwab*, 2010 WL 11937102, at *1-*2 (holding that defendants either may withdraw their due diligence defense or must produce all relevant documents); *In re WorldCom, Inc. Sec. Litig.*, 2004 WL 936320, at *1 (S.D.N.Y. 2004) (ordering production of "discovery concerning the advice of counsel . . . related to the due diligence . . . and the disclosures in the offering materials for those offerings").

The Carvana Defendants attempt to split hairs by arguing that their due diligence defense does not trigger a waiver because they purportedly intend to show only that they relied on the ***involvement*** of attorneys in the due diligence process and not any specific ***advice*** of counsel. *See* Ex. 14. But injecting evidence or argument about the involvement of attorneys in the due diligence process necessarily waives the privilege for communications with those attorneys because it puts the adequacy of the process at issue. That is because "[w]hen a defendant asserts the affirmative defense, he places in issue his subjective state of mind as to the contested disclosures at the time in question and therefore all information, whether privileged or not, received by him on those matters during or before the time in question are discoverable." *Charles Schwab*, 2010 WL 11937102, at *1; *see also Shenwick v. Twitter, Inc.*, 2021 WL 1232451, at *4 (N.D. Cal. 2021) ("'A reliance on counsel privilege

---

[4]    To date, the Carvana Defendants have only produced a privilege log for communications with Kirkland & Ellis, which reveals that approximately 400 documents related to the April 2022 offering have been withheld on the basis of the very privilege Defendants have now waived. *See* Ex. 15 at PLOG0001321-PLOG0001722, PLOG0001805-PLOG0001811. The Carvana Defendants have not produced any privilege log for communications involving any of Carvana's in-house counsel, even though they explicitly claim to have relied upon those attorneys in connection with their due diligence defense. This despite the fact that Defendants have withheld approximately 102,000 documents from the files of the initial set of 18 custodians on the grounds that those documents may be privileged and remain subject to further review. Ex. 16 at 4. According to the Carvana Defendants' counsel, substantial completion of the privilege log associated with these documents will not occur until February 27, 2026. *Id.* at 1.

- 5 -

waiver does not require a party's direct statement that counsel was relied upon. It may also arise from more indirect evidence where a party affirmatively raises an inference of reliance on counsel for the party's own benefit.'"). And where, like here, one of the defendants is a corporation, "the communications that matter are all those received by all officers, directors and any managing agents responsible for the registration statement[], for their state of mind would be at issue, they being the ones through whom the corporation must have acted." *Charles Schwab*, 2010 WL 11937102, at *1. These are the documents the Carvana Defendants are withholding on the claim that they are privileged attorney-client communications and the documents they should be compelled to produce.

To permit Defendants to withhold these documents would invite a trial by ambush. Defendants want to tell the jury that their conduct was reasonable because prestigious law firms like Kirkland & Ellis were involved in the April 2022 offering, yet they want to prevent Plaintiffs from showing the jury that those same lawyers may have flagged the very misstatements at issue in this case or were not informed about the true, material facts that rendered the Registration Statement for the offering misleading. That is the proverbial misuse of the attorney-client privilege as both a sword and shield. The documents Defendants have withheld include "communications *from* said defendant *to* counsel made during or before the time in question bearing upon the registration statement or the investigative process used to prepare it . . . could reasonably be expected to have influenced or revealed said defendant's beliefs." *Id.* at *2 (emphasis in original). Simply put, "the adequacy of the client disclosure to counsel may be a factor in evaluating the reasonableness of reliance on counsel's response or investigation." *Id.* That is why Defendants cannot unilaterally curate the record by disclosing only sanitized "participation" or "involvement" facts while withholding the communications that show what counsel actually did or did not receive, what counsel did or did not do, and what counsel actually told Defendants or did not tell them.

Thus, to allow Plaintiffs a fair opportunity to challenge the asserted due diligence defense, the Carvana Defendants should be compelled to produce all previously withheld

- 6 -

4909-4492-5837.v1

communications with in-house and outside counsel regarding the Registration Statement for the April 2022 offering and any due diligence associated with that offering.

Alternatively, if the Carvana Defendants wish to maintain their privilege, they must stipulate that they will forgo any reliance on the role or involvement of attorneys to prove that there was a reasonable investigation or that Defendants had reasonable grounds to believe that the April 2022 offering Registration Statement was not materially misleading. Defendants have made the self-serving claim that this would leave the jury with an incomplete picture of the purported due diligence. But if the picture is incomplete, it is a result of the Carvana Defendants' own tactical decision to prioritize secrecy over transparency. And such a concern can be addressed with a jury instruction noting that Defendants chose to withhold the communications. *See In re LendingClub Sec. Litig.*, 2018 WL 977558, at *3 (N.D. Cal. 2018) (jury should be informed "that [defendants] had withheld privileged communications with counsel, and that such withheld communications could potentially be favorable (or unfavorable) to either side," and "plaintiff's counsel may argue that withheld communications would have been adverse to the . . . defendants"). While the Carvana Defendants can elect to forgo any reliance on counsel in connection with their due diligence defense, they cannot maintain their claimed reliance on counsel as a foundation of that defense and still withhold communications with those counsel as privileged. The Carvana Defendants must choose: (1) prove "reasonable investigation/reasonable belief" without invoking counsel's role; or (2) rely on counsel's role and produce the communications necessary for Plaintiffs to fairly test that contention.

**B.      Defendants' Reliance on Counsel in Support of Their Good-Faith Defense Waives Privilege**

In addition to the Securities Act claims, Plaintiffs brought and the Court upheld claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").[5] To prove that Defendants violated §10(b) of the Exchange Act, Plaintiffs must demonstrate that these defendants acted with scienter – "the 'mental state embracing intent to deceive,

---

[5]    The "Exchange Act Defendants" are Carvana, Garcia Jr. and Jenkins.

- 7 -

manipulate, or defraud.'" ECF 105 at 40 (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)). And to prove a violation of §20(a) of the Exchange Act, Plaintiffs need to establish that the Exchange Act Defendants "possessed, directly or indirectly, the actual power to direct or cause the direction of the management and policies of" those persons who violated §10(b). Ninth Circuit Manual of Model Civil Jury Instructions (Sep. 2024), Instruction 18.10.

In response to Plaintiffs' §§10(b) and 20(a) claims under the Exchange Act, the Carvana Defendants alleged in their Eighth Affirmative Defense that they "exercised reasonable care and acted in good faith, including by acting in conformity with applicable SEC rules, regulations, and orders" and in their Ninth Affirmative Defense they alleged that "after reasonable investigation" they had "reasonable grounds to believe and did believe, at the time of the statements at issue, that their statements were true and that there was no omission of any required material fact necessary to make the statements not misleading." ECF 115 at 173. These so called "good-faith" defenses are affirmative positions Defendants chose to assert, placing their claimed good faith squarely in dispute.

For purposes of §10(b) claims, "[g]ood faith is scienter's opposite" and is used by defendants in an effort to defeat proof of scienter. *Veleron Holding, B.V. v. Morgan Stanley*, 694 F. App'x 858, 863 (2d Cir. 2017). That effort necessarily turns on what Defendants knew, what they were told, and what they believed at the time. And for §20(a) claims, once Plaintiffs make out a prima facie case of §20(a) liability, the burden shifts to Defendants to show that they acted in good faith. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000) (§20(a) defendant "may assert a good faith defense by 'proving the absence of scienter'"); *see also* Ninth Circuit Manual of Model Civil Jury Instructions (Sep. 2024), Instruction 18.11 ("The defendant can prove good faith only by establishing that [it] maintained and enforced a reasonable and proper system of supervision and internal control."). Thus, Defendants' own defenses make their claimed investigation, controls, and state of mind central issues for discovery, and those issues cannot be litigated fairly if

- 8 -

4909-4492-5837.v1

Defendants are allowed to selectively tout counsel's involvement while withholding counsel communications.

As with their due diligence defense, the Carvana Defendants' initial disclosures did not identify the persons upon whom they relied for a good-faith belief that the alleged misstatements and omissions were not misleading. *See* Exs. 11-13. Accordingly, Plaintiffs served requests for admission and interrogatories to ascertain the basis of Defendants' purported good-faith belief that the statements at issue in this case were not materially misleading. Those discovery responses confirm that Defendants are not merely describing "process" in the abstract. They have affirmatively identified counsel as part of the basis for their claimed belief. In response to requests for admission, each of the Carvana Defendants alleged to have violated the Exchange Act confirmed their reliance upon attorneys for their good faith. *See* Exs. 1-2 at Response to Request for Admission Nos. 1-30, 33-34, 37 (denying that they "did not rely on any attorney or law firm for the 'reasonable investigation' referred to in the Carvana Defendants' Ninth Affirmative Defense" with respect to the challenged statements and denying that they "did not rely on any advice of legal counsel as to the truth, accuracy, or completeness of any alleged false or misleading statement" at issue).

And in response to Plaintiffs' First Set of Interrogatories, asking the Exchange Act Defendants to "[i]dentify all persons or entities on which any of the Carvana Defendants relied upon in believing that their statements in [each of the SEC filings, conference calls, and articles alleged to contain misstatements] were true" or not misleading, the Defendants stated that, in forming this belief, they relied upon, *inter alia*, "Carvana's in-house legal team, including Paul Breaux, Chris Olson, and Kevin Hogan" and "Carvana's outside counsel Kirkland & Ellis LLP." *See* Ex. 8 at 6-12; Exs. 9-10 at 5-8.[6] The Defendants cannot

---

[6] As discussed above in footnote 4, the Carvana Defendants have produced a privilege log for their communications with Kirkland & Ellis. That log identifies approximately 1,298 relevant documents from the Class Period concerning Carvana's public disclosures that were withheld on the basis of the attorney-client privilege. *See* Ex. 15 at PLOG00000001-PLOG00001298. Defendants have not provided a privilege log for internal communications

- 9 -

be permitted to rely on counsel to support their "good-faith" narrative while depriving Plaintiffs of the communications necessary to test whether that narrative is accurate, complete, and non-misleading.

The Exchange Act Defendants' express reliance on counsel, and intention to rely on Carvana's purported process for vetting disclosures that involved counsel, triggers a waiver of the attorney-client privilege. *See Broadcom*, 2005 WL 1403516, at *2 (finding that, where defendants asserted that "they would testify 'they relied in good faith upon the assumption that others within Broadcom – including . . . lawyers . . . – were doing the jobs that these people were hired to do'" and "testify that each and every S.E.C. filing and disclosure document was reviewed by the company lawyers, . . . and defendants understood and expected the lawyers faithfully and competently did their job, . . . [p]laintiffs are now entitled to review the attorneys' communications on the subject topics to see if defendants are telling the truth"). That is exactly the posture here: Defendants have identified counsel as a basis for their claimed "reasonable belief," and they intend to place counsel's work and involvement before the factfinder to support their "good faith."

Defendants, again, claim that they are only relying on the ***involvement*** of lawyers for their good-faith belief and not any specific ***advice*** of counsel, and therefore there has been no waiver of the attorney-client privilege. Ex. 14. But Defendants' "involvement-not-advice" distinction is illusory. Like the due diligence defense, "[a] reliance on counsel privilege waiver does not require a party's direct statement that counsel was relied upon." *Broadcom*, 2005 WL 1403516, at *1. As the Ninth Circuit has explained, the "rule that a litigant waives the attorney-client privilege by putting the lawyer's ***performance*** at issue during the course of litigation dates back to at least" 1888. *Bittaker v. Woodford*, 331 F.3d 715, 718 (9th Cir. 2003). There is "an implicit waiver of the attorney-client privilege when the party asserts 'claims the opposing party cannot adequately dispute unless it has access to the privileged materials.'" *Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft*, 2024 WL

or communications with other firms but have stated they intend to do so by February 27, 2026. *See* Ex. 16 at 1.

4909-4492-5837.v1

74928, at *2 (N.D. Cal. 2024) (quoting *Bittaker*, 331 F.3d at 718-19).  That is precisely why the Exchange Act Defendants' identification of counsel as a basis for their belief triggers waiver: Plaintiffs cannot fairly dispute Defendants' "good-faith" story without access to what Defendants told or did not tell counsel, what counsel investigated or flagged, and what counsel communicated about the disclosures at issue.

Defendants' attempt to hide behind a "process" while withholding its substance is a classic "sword and shield" maneuver that has been repeatedly rejected by courts.  For example, in the *Twitter* securities fraud litigation, just like here, the defendants argued that they should be able to introduce evidence about the company's "'robust disclosure processes'" for reviewing public disclosures, including the role of lawyers in that process, without any waiver of privilege because they were not asserting they relied on any specific advice of counsel.  2021 WL 1232451, at *4.  But the *Twitter* court reasoned that "***the only reasonable inference***" that could be drawn from the suggestion that counsel were involved in "'robust disclosure processes'" is "that the processes were 'robust' because they included receiving advice from lawyers." *Id.*  This triggered a waiver of the attorney-client privilege because "'[a] reliance on counsel privilege waiver does not require a party's direct statement that counsel was relied upon.'" *Id.*[7]  The same "only reasonable inference" applies here, where the Exchange Act Defendants have already identified counsel as part of the basis for their belief that the challenged statements were true or not misleading.

Similarly, in *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 5105774 (D.N.J. 2021), defendants, like Defendants here, claimed that they were only relying on the "involvement" of attorneys in the company's process of reviewing disclosures to investors and therefore did not trigger a waiver of the attorney-client privilege. *Id.* at *4-*5.  But the Special Master held that there was "no substantive difference between asserting an 'advice of counsel' defense and asserting what the . . . defendants describe as an 'involvement of

---

[7]  Because the issue in *Twitter* was decided immediately before trial and the defendants had "withheld documents on the subjects of its public statements on the grounds of privilege, fairness dictate[d] that Defendants not be able to introduce evidence implying that its lawyers passed on the adequacy of Defendants' communications." *Id.*

4909-4492-5837.v1

counsel.'  The end result is the same: Defendants are supporting their position that they acted in good faith by attempting to show that they consulted with counsel and others before making a pivotal decision as to what they would disclose to investors about Valeant's business practices . . . ."  *Id.* at \*9.  Continuing with a finding equally apt here, the decision in Valeant recognized "there can be no doubt that Defendants' 'involvement of counsel' assertion is a disguised 'advice of counsel' defense despite Defendants' representations to the contrary."  *Id.*; *see also*:

- *Smilovits v. First Solar, Inc.*, 2019 WL 6698199, at \*2 (D. Ariz. 2019) ("Presenting evidence of lawyer approval or Defendant reliance while withholding the actual communications that constituted the approval or resulted in the reliance would be unfair to Plaintiffs.  It would leave the impression that the lawyers provided unqualified approval of all that Defendants did, without actually disclosing what the lawyers said or did not say and without affording Plaintiffs the opportunity to know, test, or address the actual communications.");

- *Baker v. SeaWorld Ent., Inc.*, 2020 WL 241441, at \*1 (S.D. Cal. 2020) (excluding all "evidence or argument that: (i) lawyers were involved in the disclosure process; (ii) lawyers prepared, reviewed, or approved documents, statements or conduct at issue; or (iii) Defendants relied on the advice of counsel in making the disclosures at issue" where documents were withheld as attorney-client privileged communications); Minute Entry, *Baker v. SeaWorld Ent., Inc.*, No. 14-cv-2129-MMA (S.D. Cal. Jan. 21, 2020), ECF 508 (affirming tentative ruling);

- *Abromavage v. Deutsche Bank Sec. Inc.*, 2019 WL 6790513, at \*3-\*4 (S.D.N.Y. 2019) ("[A] defendant invoking his good faith may place his privileged communications at issue even if he does not specifically plead or argue that he relied on an attorney's advice" because "express reliance is not necessary to trigger the waiver rule.");

- *In re Fresh & Process Potatoes Antitrust Litig.*, 2014 WL 1413676, at \*8 (D. Idaho 2012) ("Even if . . . Defendants do not reveal the advice, if there is any suggestion that . . . Defendants sought, obtained or relied upon the advice of counsel, the privilege is waived.");

- *La. Mun. Police Emps. Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, 2017 WL 3037414, at \*6 (D. Vt. 2017) ("'[A] good-faith defense involves an inquiry into state of mind, which typically calls forth the possibility of implied waiver of the attorney-client privilege.'  Courts have held that this principle applies even where a party does not reference specific communications with counsel."); and

- 12 -

4909-4492-5837.v1

- *Nat.-Immunogenics Corp. v. Newport Trial Grp.*, 2018 WL 6138160, at \*5 (C.D. Cal. 2018) ("'[T]o assess the validity of an affirmative defense of good faith reliance that a party has voluntarily injected into the dispute, inquiry into communications that would otherwise be privileged may be required.'").

These cases (and many more) are all in accord because fairness dictates that Plaintiffs be able to challenge Defendants' assertion that they acted in good faith based, in part, on the involvement of lawyers in Carvana's disclosure processes. As the court in *SEC v. Tourre*, 950 F. Supp. 2d 666 (S.D.N.Y. 2014) explained: "It would be confusing and unduly prejudicial for Tourre to present extensive evidence on the presence and involvement of lawyers – who are presumably paid to ensure that any disclosures comply with the relevant legal requirements – while at the same time professing not to have relied on their advice in preparing or disseminating those disclosures." *Id.* at 684. The *Tourre* court continued: "A lay jury could easily believe that the fact that a lawyer is present at a meeting means that he or she must have implicitly or explicitly 'blessed' the legality of all aspects of a transaction. . . . ***This misunderstanding would give the defendant all of the essential benefits of an advice of counsel defense without having to bear the burden of proving any elements of the defense***." *Id.*; *see also SEC v. Kokesh*, 2014 WL 11516545, at \*3 (D.N.M. 2014), *reconsideration denied*, 2014 WL 12786871 (D.N.M. 2014).

That prejudice is not hypothetical here. The prejudice identified by the *Tourre* court is precisely the prejudice Plaintiffs would suffer if Defendants are allowed to withhold attorney-client communications while asserting a good-faith defense based on the involvement or role of attorneys in the Exchange Act Defendants' statements to investors. *See, e.g.*, *Okla. Firefighters Pension & Ret. Sys. v. Musk*, __ F. Supp. 3d __, 2025 WL 2982003, at \*5 (S.D.N.Y. 2025) ("The lack of any requirement to actually offer the advice of counsel into evidence is consistent with the waiver doctrine's goal to achieve 'fairness.'"); *In re Lidoderm Antitrust Litig.*, 2016 WL 4191612, at \*5 (N.D. Cal. 2016) ("[W]here evidence establishes that the [defendants'] subjective [good-faith] belief was also informed by attorney advice, it would be unfair to not allow plaintiffs access to defendants'

- 13 -

contemporaneous attorney-client information to test the veracity of the defendants' justifications . . . .").

Based on their current position, the Exchange Act Defendants have waived the attorney-client privilege for all documents regarding their good-faith defense. As with the due diligence defenses, Defendants can avoid the consequence of that position – waiver of the attorney-client privilege – only if they disavow any reference or reliance on counsel (including the involvement, advice, or blessing of counsel) in support of their defenses. *See, e.g.*, *Valeant*, 2021 WL 5105774, at *10 ("Defendants must unequivocally state whether they are relying on advice or 'involvement' of counsel either as an affirmative defense or as evidence of good faith."). Defendants must choose: they may either (1) maintain these good-faith defenses and produce the communications necessary to test them; or (2) disclaim any reliance on counsel's role, review, approval, or involvement for purposes of proving good faith. The time to make that election is now, as the Carvana Defendants are required to substantially complete document production by February 27, 2026 and Plaintiffs' fact depositions will be commencing shortly. *See, e.g.*, *Musk*, 2025 WL 2982003, at *3 ("The proper time to determine whether fairness requires disclosure of privileged material is before the discovery period concludes.").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be granted and the Carvana Defendants should be compelled, within ten days of any order, to: (1) produce all attorney-client communications (including emails, memoranda, notes, and attachments) concerning Carvana's April 2022 offering, the Registration Statement, and related offering materials, and any due diligence undertaken in connection with that offering; and (2) produce all documents reflecting counsel's review, revision, approval, or sign-off of Carvana's public disclosures, including all documents describing counsel's role in that process and documents evidencing counsel's comments, edits, approvals, or objections. Alternatively, the Carvana Defendants can unequivocally stipulate that they do not intend to rely on any involvement or role or advice of counsel in support of any defenses or as evidence of their good faith or

- 14 -

4909-4492-5837.v1

reasonable investigation, and must amend their responses to Plaintiffs' interrogatories and requests for admission to withdraw any identification of counsel as a person or entity on which they relied and to disclaim any intent to offer evidence or argument suggesting that counsel's participation supports their defenses.

## CERTIFICATION

Plaintiffs, by and through their undersigned counsel, hereby confirm that they have attempted to resolve the foregoing matter with the Carvana Defendants through personal consultation and sincere efforts as required by Local Rule of Civil Procedure 7.2(j).

DATED:  February 5, 2026                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN
(Admitted *pro hac vice*)
TOR GRONBORG
(Admitted *pro hac vice*)
ERIKA L. OLIVER
(Admitted *pro hac vice*)
RACHEL A. COCALIS
(Admitted *pro hac vice*)
MATTHEW J. BALOTTA
(Admitted *pro hac vice*)
SARAH A. FALLON
(Admitted *pro hac vice*)


                                    s/ Tor Gronborg
                                    TOR GRONBORG

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
ddrosman@rgrdlaw.com
torg@rgrdlaw.com
eoliver@rgrdlaw.com
rcocalis@rgrdlaw.com
mbalotta@rgrdlaw.com
sfallon@rgrdlaw.com

- 15 -

4909-4492-5837.v1

ROBBINS GELLER RUDMAN
  & DOWD LLP
ROBERT M. ROTHMAN
(Admitted *pro hac vice*)
DAVID A. ROSENFELD
(Admitted *pro hac vice*)
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
rrothman@rgrdlaw.com
drosenfeld@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

O'DONOGHUE & O'DONOGHUE LLP
DINAH S. LEVENTHAL
5301 Wisconsin Avenue, N.W., Suite 800
Washington, D.C.  20015
Telephone:  202/362-0041
202/362-2640 (fax)
dleventhal@odonoghuelaw.com

Additional Counsel for Lead Plaintiffs

BONNETT FAIRBOURN FRIEDMAN
  & BALINT PC
ANDREW FRIEDMAN
7301 N. 16th Street, Suite 102
Phoenix, AZ  85020
Telephone: 602/274-1100
602/274-1199 (fax)
afriedman@bffb.com

Local Counsel

- 16 -

4909-4492-5837.v1