LATHAM & WATKINS LLP
Andrew B. Clubok (*pro hac vice*)
J. Christian Word (*pro hac vice*)
Susan E. Engel (*pro hac vice*)
Matthew J. Peters (*pro hac vice)*
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Email: andrew.clubok@lw.com
Email: christian.word@lw.com
Email: susan.engel@lw.com
Email: matthew.peters@lw.com

Jeff G. Hammel (*pro hac vice*)
Kalana Kariyawasam (*pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: jeff.hammel@lw.com
Email: kalana.kariyawasam@lw.com

Meryn C. Grant (*pro hac vice*)
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: (424) 653-5500
Email: meryn.grant@lw.com

[*Additional counsel on signature page*]

*Counsel for Defendants Carvana Co., Ernest Garcia III, Mark Jenkins, Stephen Palmer, Michael Maroone, Neha Parikh, Ira Platt, and Greg Sullivan*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| In re Carvana Co. Securities Litigation | CASE NO. 2:22-cv-02126-PHX-MTL |
|---|---|
| | **THE CARVANA DEFENDANTS' OPPOSITION TO LEAD PLAINTIFFS' MOTION TO COMPEL** |

## **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................. 2

III.  LEGAL STANDARD .......................................................................................... 4

IV.  ARGUMENT ...................................................................................................... 5

    A.  Plaintiffs Do Not and Cannot Contend the Carvana Defendants Have "Inject[ed] Privileged Materials" Into This Proceeding ................................................................................................. 5

    B.  The Individual Defendants' Presentation of the Due Diligence Defense Will Not Put Attorney-Client Communications "At Issue" ........................................................................................................ 6

        1.  The Due Diligence Defense Has a "Reasonable Investigation" Prong that Examines Process, Not Substance .................................................................................. 6

        2.  The Individual Defendants Will Only Reference Attorney Involvement For That Process Prong ..............................7

    C.  The Individual Defendants' Presentation of the Good Faith Defense Will Not Put Attorney-Client Communications "At Issue" ........................................................................................................ 9

        1.  The Good Faith Defense Examines Process ...................................... 9

        2.  The Individual Defendants Will Only Reference Attorney Involvement to Demonstrate Their Inclusion in a "System" ................................................................................. 10

    D.  Maintaining Privilege Will Not Deny Plaintiffs Information "Needed to Effectively Litigate Their Rights" ........................................... 13

    E.  The Carvana Defendants Will Not Raise An Advice Of Counsel Defense ................................................................................. 14

    F.  Granting Plaintiffs' Motion Would Be Unduly Prejudicial to the Individual Defendants ................................................................. 15

V.  CONCLUSION ................................................................................................ 16

**TABLE OF AUTHORITIES**

**CASES**

*Abromavage v. Deutsche Bank Sec., Inc.*,
2019 WL 6790513 (S.D.N.Y. Dec. 11, 2019) ................................................................ 9

*In re Allstate Life Ins. Co. Litig.*,
2013 WL 789106 (D. Ariz. Mar. 1, 2013) ..................................................................... 9

*Baker v. SeaWorld Entertainment*,
2020 WL 241441 (S.D. Cal. Jan. 16, 2020) ................................................................. 11

*In re Broadcom Corp. Sec. Litig.*,
2005 WL 1403516 (C.D. Cal. Feb. 10, 2005) ............................................................... 8

*Cevantes v. CEMEX, Inc.*,
2014 WL 4104200 (E.D. Cal. Aug. 18, 2014) ............................................................. 13

*In re Charles Schwab Corp. Sec. Litig.*,
2010 WL 11937101 (N.D. Cal. Feb. 23, 2010) ............................................................. 8

*In re Charles Schwab Corp. Sec. Litig.*,
No. 3:08-cv-01510-WHA, Dkt. 353-4 (N.D. Cal. Jan. 25, 2010) ................................. 8

*Chevron Corp. v. Penzoil Co.*,
974 F.2d 1156 (9th Cir. 1992) ............................................................................... 4, 13

*In re Cnty. of Erie*,
546 F.3d 222 (2d Cir. 2008) ......................................................................................... 5

*In re Fresh and Process Potatoes Antitrust Litig.*,
2014 WL 1413676 (D. Idaho Apr. 11, 2014) ............................................................... 8

*Hollinger v. Titan Corp.*,
914 F.2d 1564 (9th Cir. 1990) ............................................................................... 9, 12

*Holman v. Experian Info. Sol., Inc.*,
2012 WL 2501085 (N.D. Cal. June 27, 2012) ............................................................. 5

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000) .................................................................................... 10

*Hunt v. PricewaterhouseCoopers LLP (PWC)*,
159 F.4th 603 (9th Cir. 2025) ..................................................................................... 6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

*In re Int'l Rectifier Sec. Litig.*,
   1997 WL 529600 (C.D. Cal. Mar. 31, 1997) ...................................................................... 6

*La. Mun. Police Emp. Ret. Sys. v. Green Mnt. Coffee*,
   2017 WL 3037414 (D. Vt. Apr. 7, 2017) ...................................................................... 8, 12

*In re Lidoderm Antitrust Litig.*,
   2016 WL 419612 (N.D. Cal. Aug. 9, 2016) ...................................................................... 13

*Melendres v. Arpaio*,
   2015 WL 12911719 (D. Ariz. May 14, 2015) .................................................... 4, 5, 7, 11

*In re Michaelson*,
   511 F.2d 882 (9th Cir. 1975) ............................................................................................. 5

*Nat.-Immunogenics Corp. v. Newport Trial Grp.*,
   2018 WL 6138160 (C.D. Cal. Jan. 24, 2018) .................................................................... 8

*Nat.-Immunogenics Corp. v. Newport Trial Grp.*,
   2019 WL 11742967 (C.D. Cal. June 27, 2019) ................................................................. 4

*NECA-IBEW Pension Trust Fund v. Precision Castparts Corp.*,
   2019 WL 4750251 (D. Or. Sept. 27, 2019) ....................................................................... 4

*In re Network Equip. Tech., Inc. Litig.*,
   762 F. Supp. 1359 (N.D. Cal. 1991) ................................................................................. 9

*Oklahoma Firefighters Pension and Retirement Sys. v. Musk*,
   2025 WL 2982003 (S.D.N.Y. Oct. 23, 2025) ................................................................. 12

*In re Pac. Picts. Corp.*,
   679 F.3d 1121 (9th Cir. 2012) ........................................................................................... 4

*Planet Aid, Inc. v. Reveal, Ctr. For Investigative Reporting*,
   2018 WL 6079617 (N.D. Cal. Nov. 21, 2018) .................................................................. 7

*S.E.C. v. Goldfield Deep Mines Co. of Nevada*,
   758 F.2d 459 (9th Cir. 1985) ........................................................................................... 14

*S.E.C. v. Zouvas*,
   2019 WL 4016687 (D. Ariz. Aug. 26, 2019) ................................................................... 14

*SEC v. Kokesh*,
   2014 WL 11516545 (D. N.M. July 21, 2014) ................................................................... 9

*SEC v. Tourre*,
   950 F. Supp. 2d 666 (S.D.N.Y. 2013) .............................................................................. 9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iii

*Sheet Metal Workers National Pension Fund v. Bayer Aktiengesellschaft*,
    2024 WL 74928 (N.D. Cal. Jan. 5, 2024) ................................................................ 10

*Shenwick v. Twitter*,
    No. 4:16-cv-05314-JEST, Dkt. 521 (N.D. Cal. May 26, 2020) ................................. 12

*Smilovits v. First Solar, Inc.*,
    2019 WL 6698199 (D. Ariz. Dec. 9, 2019) ..................................................... 1, 10, 11

*In re Software Toolworks Inc.*,
    50 F.3d 615 (9th Cir. 1994) ....................................................................................... 6

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*,
    551 U.S. 308 (2007) .......................................................................................... 12, 16

*United Food and Commercial Workers Union v. Chesapeake Energy Corp.*,
    2012 WL 2370637 (W.D. Okla. June 22, 2012) ...................................................... 6, 7

*United States v. Amlani*,
    169 F.3d 1189 (9th Cir. 1999) .......................................................................... 4, 5, 13

*United States v. Sanmina Corp.*,
    968 F.3d 1107 (9th Cir. 2020) ............................................................................ 4, 14

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ................................................................................................... 4

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
    2021 WL 5105774 (D.N.J. Nov. 3, 2021) ............................................................... 12

*Wang v. Zymergen Inc.*,
    2025 WL 579197 (N.D. Cal. Feb. 21, 2025) ............................................... 1, 7, 10, 11

*Wang v. Zymergen*,
    2025 WL 416161 (N.D. Cal. Feb. 6, 2025) ............................................................... 8

*In re Worldcom, Inc. Sec. Litig.*,
    2004 WL 936320 (S.D.N.Y. May 3, 2004) ............................................................... 8

**STATUTES**

15 U.S.C. § 77aa ........................................................................................................... 3

15 U.S.C. § 77k ......................................................................................................... 3, 7

15 U.S.C. § 77k(a) ........................................................................................................ 7

15 U.S.C. § 77k(b)(3) .................................................................................................... 7

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

15 U.S.C. § 78j ................................................................................................. 3, 12, 13

15 U.S.C. § 78t ....................................................................................................... passim

**RULES**

Fed. R. Civ. P. 26(b)(1) ................................................................................................ 5

Fed. R. Evid. 403 ................................................................................................ 10, 14

**REGULATIONS**

17 C.F.R. § 230.176(f)................................................................................................ 7

**OTHER AUTHORITIES**

Ninth Circuit Manual of Model Jury Instructions § 18.11 ................................................ 10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

In response to Lead Plaintiffs' Motion to Compel (Dkt. 301, the "Motion"), Defendants Carvana Co. ("Carvana"), Ernest Garcia III ("Garcia Jr."), Mark Jenkins, Stephen Palmer, Michael Maroone, Neha Parikh, Ira Platt, and Greg Sullivan (the "Individual Defendants," and collectively with Carvana, the "Carvana Defendants"), file this Opposition.[1]

## I. INTRODUCTION

Plaintiffs erroneously argue that the Individual Defendants[2] waive their attorney-client privilege if they introduce exclusively non-privileged information about their attorneys' involvement in connection with the process underlying their Due Diligence and Good Faith affirmative defenses. That is not the law. Every court presented with that issue has ruled that "there is no automatic implied [privilege] waiver from asserting the [good faith or] due diligence defense where the assertion of privilege is narrowly drawn to protect only communications of legal advice as distinguished from counsel's *non-privileged participation in the due diligence process*." *Wang v. Zymergen Inc.* ("*Zymergen II*"), 2025 WL 579197, at *2–3 (N.D. Cal. Feb. 21, 2025). Judge Campbell reached the same conclusion in *Smilovits v. First Solar, Inc.*, 2019 WL 6698199 (D. Ariz. Dec. 9, 2019), holding that in the absence of an advice of counsel defense, a defendant cannot "present evidence that counsel *approved* the disclosures," but may "present evidence that counsel reviewed corporate disclosures and stock-sale plans or attended meetings." *Id.* at *2.

In other words, a defendant asserting the Due Diligence and Good Faith defenses may choose to prove their defense by referring to attorneys' involvement either with *or without* disclosing the substance of their privileged communications. Here, the Individual Defendants intend to do the latter, sacrificing any advice of counsel defense. They will disclose only the non-privileged information that appears on any privilege log and in non-privileged documents: information about the fact that attorneys were involved, but not the

---

[1] Unless otherwise stated, citations are omitted and emphasis is added; citations to Defs.' Ex. __ are to the exhibits to the Declaration of Kalana Kariyawasam; citations to "Pls.' Ex. __" are to the exhibits to the Declaration of Sarah A. Fallon (Dkt. 302); and page citations refer to internal pagination.

[2] Only the Individual Defendants will assert the defenses at issue in this Motion.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

substance of their advice. Nor will they point to attorneys to demonstrate their state of mind, either as a means of negating the element of scienter, or to prove the "reasonable belief" components of their defenses. The Individual Defendants will exclusively refer to non-privileged facts about attorneys' involvement to establish the "reasonable process" component of their Due Diligence and Good Faith defenses.

It is black letter law that privilege is not waived by disclosing information that is not itself privileged. And it defies reason to suggest, as Plaintiffs do here, that when Congress created the Due Diligence and Good Faith defenses, it envisioned securities defendants waiving privilege in order to make effective use of them. In-house and external lawyers are always involved in corporate governance, securities offerings, and SEC filings. There is no practical way to truthfully tell a jury about a due diligence process without mentioning lawyers. Any concerns about a jury improperly drawing an inference that attorney involvement equates to attorney blessing can be addressed with a jury instruction—that is no justification for stripping Individual Defendants of their privilege.

The Individual Defendants have not put attorney-client communications at issue, and thus Plaintiffs' motion should be denied.

## II. BACKGROUND

Plaintiffs' claims under Section 11 of the Securities Act of 1933 ("Securities Act") and Section 20(a) of the Exchange Act of 1934 ("Exchange Act") are barred by the statutory defenses of Due Diligence and Good Faith. The Due Diligence defense applies to Plaintiffs' Securities Act claims because the Individual Defendants performed a "reasonable investigation" in connection with the challenged April 2022 registration statement. Dkt. 115 at 173. The Good Faith defense applies to Plaintiffs' Exchange Act claims because the Individual Defendants "exercised reasonable care . . . including by acting in conformity with applicable SEC rules." Dkt. 115 at 173.

To test these defenses, Plaintiffs propounded discovery requesting that the Carvana Defendants (1) admit that they "did not rely on any attorney or law firm for the 'reasonable investigation' referred to in the Carvana Defendants' Ninth Affirmative Defense," *e.g.,*

Pls.' Ex. 1 at 4, and (2) "[i]dentify all persons or entities on which any of the Carvana Defendants relied upon in believing that their [challenged statements] were true and that there was no omission of any required material fact," *e.g.*, Pls.' Ex. 8 at 5.

As Plaintiffs well know, it is customary for in-house attorneys and outside counsel to be involved in the creation of SEC filings, registration statements, and communications with investors. Indeed, the Securities Act *requires* all issuers to publicly disclose the outside counsel consulted for any given offering. 15 U.S.C. § 77aa(23). Carvana did so on the cover page of the registration statement at issue:

> *Copies of all communications, including communications sent to agent for service, should be sent to:*
>
> **Robert M. Hayward, P.C.**
> **Robert E. Goedert, P.C.**
> **Michael P. Keeley**
> **Kirkland & Ellis LLP**
> **300 North LaSalle**
> **Chicago, IL 60654**
> **(312) 862-2000**

Defs.' Ex. 1. The registration statement also stated that "[t]he validity of the Class A common stock offered hereby will be passed upon for us by Kirkland & Ellis LLP." *Id.* at 21.

Accordingly, the Carvana Defendants denied Plaintiffs' requests for admission and answered Plaintiffs' interrogatory by truthfully disclosing that "Carvana's in-house legal team" and, where relevant, "Carvana's outside counsel Kirkland & Ellis LLP," were parts of "Carvana's internal procedures for the preparation of" certain statements. *E.g.*, *id.* at 5–6. The Carvana Defendants have also produced several non-privileged documents reflecting the fact that Kirkland & Ellis or other attorneys were advising Carvana not only in the April 2022 public offering, but also with respect to various other investor communications. *See, e.g.*, Defs.' Exs. 2-6.

The Carvana Defendants did not produce any of their privileged attorney-client communications. They instead provided Plaintiffs with a privilege log cataloguing their substantive communications with Kirkland & Ellis related to the preparation of certain of the challenged statements. *See* Pls.' Ex. 15. Despite that the Carvana Defendants have not disclosed a single privileged communication, the parties are now at an impasse regarding

whether a waiver of the attorney-client privilege somehow nevertheless occurred. *See* Pls.' Ex. 14.

### III.    LEGAL STANDARD

Discovery is limited to nonprivileged materials. Fed. R. Civ. P. 26(b)(1). "Federal common law governs issues concerning the application of the attorney-client privilege in this federal securities action." *NECA-IBEW Pension Trust Fund v. Precision Castparts Corp.*, 2019 WL 4750251, at *1 (D. Or. Sept. 27, 2019). "Facts underlying the existence of an attorney-client relationship are not privileged." *Nat.-Immunogenics Corp. v. Newport Trial Grp.*, 2019 WL 11742967, at *2 (C.D. Cal. June 27, 2019).

The attorney-client privilege serves a critical function: "to 'encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *In re Pac. Picts. Corp.*, 679 F.3d 1121, 1126 (9th Cir. 2012) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). Without the privilege, clients would be discouraged from making "full disclosure to their attorneys," harming the "public ends" that "sound legal advice" provides. *Upjohn Co.*, 449 U.S. at 389.

Privilege can be waived "by putting [a] lawyer's performance at issue during the course of litigation." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1117 (9th Cir. 2020). The Ninth Circuit "employs a three-pronged test" to determine whether an implied waiver has been effected. *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999). An implied waiver occurs only if, "in the course of litigation," a party asserting privilege "(1) makes an affirmative act injecting privileged materials into a proceeding, (2) thereby putting the materials at issue, (3) where application of the privilege would deny the opposing party access to information needed to effectively litigate its rights in the adversarial system." *Melendres v. Arpaio*, 2015 WL 12911719, at *2 (D. Ariz. May 14, 2015) (citing *Amlani*, 169 F.3d at 1195). In short, "[w]here a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *Chevron Corp. v. Penzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992).

However, "disclosing that legal counsel was consulted, the subject about which advice [was] received, or that action was taken based on that advice, does not necessarily waive the privilege protection." *Melendres*, 2015 WL 12911719, at *3 (citing *In re Cnty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008)).

## IV.    ARGUMENT

### A.    Plaintiffs Do Not and Cannot Contend the Carvana Defendants Have "Inject[ed] Privileged Materials" Into This Proceeding

"The existence of the attorney-client relationship is not privileged." *In re Michaelson*, 511 F.2d 882, 888 (9th Cir. 1975). That is why Plaintiffs do not and cannot contend that the mere fact that lawyers were consulted is privileged. Mot. at 2. But that information is all that is contained in the Carvana Defendants' truthful discovery responses. That alone ends the inquiry because it means Plaintiffs have not established the first *Amlani* prong of "injecting privileged materials into a proceeding." *Melendres*, 2015 WL 12911719, at *2 (citing *Amlani*, 169 F.3d at 1195). Plaintiffs cite no authority suggesting that submission of a non-privileged fact can trigger a waiver of privilege.

Further, "to waive the attorney-client privilege," a defendant "must inject a new factual or legal issue into the case." *Holman v. Experian Info. Sol., Inc.*, 2012 WL 2501085, at *5 (N.D. Cal. June 27, 2012). Carvana's registration statement made clear on its cover that Kirkland & Ellis LLP had advised Carvana on the offering. Defs.' Ex. 1. And within the document, it explicitly states that "[t]he validity of the Class A common stock offered hereby will be passed upon for us by Kirkland & Ellis LLP." *Id.* at 21. The Carvana Defendants are not injecting a new fact into this litigation by stating that lawyers were involved in the preparation of the challenged statements to the extent the documents containing the challenged statements themselves reveal this fact.

**B.    The Individual Defendants' Presentation of the Due Diligence Defense Will Not Put Attorney-Client Communications "At Issue"**

**1.    The Due Diligence Defense Has a "Reasonable Investigation" Prong that Examines Process, Not Substance**

Section 11 imposes liability on individuals who signed a registration statement (among other related entities) if "any part of the registration statement . . . contained an untrue statement of a material fact or omitted to state a material fact." 15 U.S.C. § 77k(a). However, Congress exempted from liability any individual, other than the issuer, that "had, after *reasonable investigation*, reasonable ground to believe and did believe, at the time such part of the registration statement became effective, that the statements therein were true and that there was no omission." 15 U.S.C. § 77k(b)(3); *see also In re Software Toolworks Inc.*, 50 F.3d 615, 621 (9th Cir. 1994). This "Due Diligence defense" thus requires proving two independent prongs: the defendants (1) conducted a "reasonable investigation" and (2) their "belief in the accuracy of the registration statement." *Hunt v. PricewaterhouseCoopers LLP (PWC)*, 159 F.4th 603, 611 (9th Cir. 2025).

The "reasonable investigation" prong is a question of process. The Ninth Circuit has recognized that it imposes "in effect, a negligence standard." *Software Toolworks*, 50 F.3d at 621. The "relevant circumstances" to this analysis "include" the defendants' "[r]easonable reliance on officers, employees, and others whose duties should have given them knowledge of the particular facts." 17 C.F.R. § 230.176(f). To satisfy the reasonable investigation prong, a defendant must convince the jury he, not his lawyer, engaged in an objectively reasonable investigation. *United Food and Commercial Workers Union v. Chesapeake Energy Corp.*, 2012 WL 2370637, at *9 (W.D. Okla. June 22, 2012). That burden can be satisfied by evidence of the investigative steps taken—such as retaining counsel, conducting interviews with employees, reviewing the issuer's documents, and analyzing financial data. *Cf. In re Int'l Rectifier Sec. Litig.*, 1997 WL 529600, at *8 (C.D. Cal. Mar. 31, 1997).

### 2. The Individual Defendants Will Only Reference Attorney Involvement For That Process Prong

The Individual Defendants' presentation of the Due Diligence Defense does not waive privilege because the Individual Defendants will exclusively point to attorneys for the process-focused "reasonable investigation" prong. Defendants in securities class actions have the *option* of relying on attorney-client communications to prove the "reasonable belief" prong, and in doing so, may put such communications at issue. *See* Mot. at 3–4. But the Court need not reach that question as the Individual Defendants will *not* rely on attorney involvement, or the advice their attorneys provided, to satisfy the reasonable belief prong.

The question here is solely whether introducing evidence that attorneys were a part of the Individual Defendants' reasonable investigation waives privilege. That question has been answered by two courts. In *Zymergen II*, the court held "that there is no automatic implied waiver from asserting the due diligence defense where the assertion of privilege is narrowly drawn to protect only communications of legal advice as distinguished from counsel's non-privileged participation in the due diligence process." 2025 WL 579197, at *3. In *Chesapeake Energy*, the court noted the "distinction in securities litigation between the due diligence defense and the reliance [on counsel] defense." 2012 WL 2370637, at *9. And it went on to hold that even though the defendants sought to rely upon evidence of attorney involvement,[3] there was no waiver because the defendants did not "intend to introduce evidence reflecting otherwise privileged attorney-client communications." *Id.*

Those rulings follow from the basic principle that merely telling the jury that "counsel was consulted" as part of an investigation does not waive privilege. *Melendres*, 2015 WL 12911719, at *3. Rather, a party must "assert[] a claim or defense, and attempt[] to prove that claim or defense by disclosing or describing an attorney client communication." *Planet Aid, Inc. v. Reveal, Ctr. For Investigative Reporting*, 2018 WL

---

[3] Defs.' Responses and Objections to Pltfs.' Third Set of Interrogatories, *Chesapeake Energy*, No. 5:09-cv-01114-D, Dkt. 223-9 at 20–21 (W.D. Okla. Apr. 2, 2012).

6079617, at \*2 (N.D. Cal. Nov. 21, 2018).  That has not happened here, and will not happen.

Plaintiffs cite only one case that found waiver and involved the Due Diligence defense.  *See* Mot. at 5 (citing *In re Charles Schwab Corp. Sec. Litig.*, 2010 WL 11937102 (N.D. Cal. Feb. 23, 2010)).  But in *Charles Schwab*, the defendants sought to put forth not only evidence of attorney involvement, but also evidence that attorneys had "accurately and appropriately prepared the Registration Statements."  *See* Response to Plaintiffs' First Set of Interrogatories, *In re Charles Schwab Corp. Sec. Litig.*, No. 3:08-cv-01510-WHA, Dkt. 353-4 (N.D. Cal. Jan. 25, 2010).  And the court understood the defendants to be pointing to attorneys to prove "subjective state of mind"— the "reasonable *belief*" prong of the defense.  2010 WL 11937101, at \*1.  As the *Zymergen* court later recognized, *Charles Schwab* "focus[ed] on the 'belief' component of the statutory defense," but it does not apply in a case where a defendant seeks to demonstrate how "lawyers participate[d] in the due diligence investigation" without "relying on any privileged communications."  *Wang v. Zymergen* ("*Zymergen I*"), 2025 WL 416161, at \*1–2 (N.D. Cal. Feb. 6, 2025).  Plaintiffs thus cite no case that found waiver via reference to attorney involvement to support the reasonable investigation prong.

Most of the other cases Plaintiffs cite involved a party directly placing the substance of legal advice at issue, which the Individual Defendants are not doing here.  *See, e.g.*, *La. Mun. Police Emp. Ret. Sys*, 2017 WL 3037414, at \*6 (defendants sought to provide evidence their plans "had been approved" by counsel); *In re Worldcom, Inc. Sec. Litig.*, 2004 WL 936320, at \*1 (S.D.N.Y. May 3, 2004) ("[D]efendants have refused to affirm or deny that they intend to rely at trial on the defense of reliance on advice of counsel."); *In re Broadcom Corp. Sec. Litig.*, 2005 WL 1403516, at \*2 (C.D. Cal. Feb. 10, 2005) (defendants wished to submit evidence "lawyers faithfully and competently did their job").

Further, most of Plaintiffs' cases did not involve either of the defenses at issue here.  Several do not even deal with the federal securities laws.  *See, e.g.*, *In re Fresh and Process Potatoes Antitrust Litig.*, 2014 WL 1413676 (D. Idaho Apr. 11, 2014) (antitrust suit); *Nat.-*

*Immunogenics Corp. v. Newport Trial Grp.*, 2018 WL 6138160 (C.D. Cal. Jan. 24, 2018) (false advertising and wiretapping suit); *Abromavage v. Deutsche Bank Sec., Inc.*, 2019 WL 6790513 (S.D.N.Y. Dec. 11, 2019) (Title VII retaliation suit).  Even some of the securities cases contain no discussion of attorney-client privilege or whether the defendant's asserted defenses waived privilege.  *See, e.g.*, *SEC v. Kokesh*, 2014 WL 11516545 (D. N.M. July 21, 2014) (FRE 403 ruling where defendant wanted to testify that he relied on advice that "the proxy solicitations *were proper*"); *SEC v. Tourre*, 950 F. Supp. 2d 666, 684–85 (S.D.N.Y. 2013) (relevance ruling that precluded "suggest[ing] that counsel blessed the relevant disclosures," but did not preclude "saying the words 'counsel,' 'lawyer,' or 'attorney'").

### C.   The Individual Defendants' Presentation of the Good Faith Defense Will Not Put Attorney-Client Communications "At Issue"

#### 1.   The Good Faith Defense Examines Process

Section 20(a) of the Exchange Act imposes control person liability on "[e]very person who, directly or indirectly, controls any person" that commits a violation of the Exchange Act.  15 U.S.C. § 78t(a).  Congress, however, exempted from liability any defendant who "[(1)] *acted in good faith* and [(2)] did not directly or indirectly induce the act or acts constituting the violation or cause of action."  15 U.S.C. § 78t(a).

Only the first prong regarding "good faith" is at issue here.  "Good faith," in this context, requires showing that the defendant "maintained and enforced a reasonable and proper *system* of supervision and internal control."  *Hollinger v. Titan Corp.*, 914 F.2d 1564, 1576 (9th Cir. 1990); Ninth Circuit Manual of Model Jury Instructions § 18.11 (same).  In determining whether the defendant's "supervisory system was adequate," *Hollinger*, 914 F.2d at 1576, the jury will consider what the Individual Defendants *did*, not what they were told, *see, e.g.*, *In re Network Equip. Tech., Inc. Litig.*, 762 F. Supp. 1359, 1364 (N.D. Cal. 1991) (defense applies where defendant implemented "appropriate training, supervision, and so forth"); *In re Allstate Life Ins. Co. Litig.*, 2013 WL 789106,

at *6 (D. Ariz. Mar. 1, 2013) (concluding the defendant's "obliviousness to the company's important business dealings" suggested inadequate "supervision").

Under the second prong of the defense, that the defendant "not directly or indirectly induce" the violation, some courts have asked defendants to prove an "absence of scienter." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000). But that inquiry into a defendants' state of mind is separate from the inquiry into whether the defendant had a reasonable "supervisory system." *Hollinger*, 914 F.2d at 1576. The Individual Defendants do not intend to point to attorneys to prove their state of mind.

### 2. The Individual Defendants Will Only Reference Attorney Involvement to Demonstrate Their Inclusion in a "System"

Multiple courts have considered whether establishing the process aspect of a Section 20(a) good faith defense with reference to attorney involvement (and not the substance of those communications) waives privilege. In *Zymergen II*, the plaintiff argued, as Plaintiffs do here, that under *Sheet Metal Workers National Pension Fund v. Bayer Aktiengesellschaft*, 2024 WL 74928 (N.D. Cal. Jan. 5, 2024), any discussion of attorneys "implied . . . conformity with the law," resulting in waiver. 2025 WL 579197, at *2; Mot. at 10–11. But the court in *Zymergen II* ruled that unlike in *Bayer*, without "evidence that these Defendants are relying on *communications* with counsel in support of this defense," there could be no waiver. 2025 WL 579197, at *2.

Similarly, in *First Solar*, in which the defendants raised the affirmative defense of Good Faith,[4] Judge Campbell recognized, as Plaintiffs here note, that "evidence of lawyer *approval* . . . would leave the impression that the lawyers provided unqualified approval of all that Defendants did," which would then require full disclosure of relevant attorney communications. 2019 WL 6698199 at *2; Mot. at 12. But he ruled that "Defendants *may* present evidence that counsel reviewed corporate disclosures and stock-sale plans or attended meetings" because that evidence does not suffer from the same problem. *Id.* at *2.

---

[4] *See* Answer, *Smilovits v. First Solar, Inc.*, No. 2:12-cv-00555-DGC, Dkt. 123 at 81–82 (D. Ariz. Jan. 29, 2013).

Plaintiffs cite the tentative ruling from *Baker v. SeaWorld Entertainment*, 2020 WL 241441, at *1 (S.D. Cal. Jan. 16, 2020), which could be interpreted to exclude evidence about the role of the defendant's lawyer in preparing the challenged statements. Mot. at 12. But that court later recognized that "we need to be a little more clear . . . than what I said in the tentative here. Certainly evidence is going to come out that there was some lawyers involved," "we  don't want to lie to the jury or conceal anything." Tr. of Mot. Hr'g, *SeaWorld*, No. 3:14-cv-2129, Dkt. 512, at 96:9-13 (S.D. Cal. Jan. 24, 2020); Defs.' Opp'n. to Pls.' Mots. in Lim., *SeaWorld*, No. 3:14-cv-02129, Dkt. 491, at 13 (S.D. Cal. Dec. 23, 2019) (arguing evidence should be permitted to support Section 20(a) good faith defense).[5]

Each of the foregoing rulings is sensible and should be followed here. To effectuate a waiver, something "beyond divulging the general character of the legal services provided" is required. *Melendres*, 2015 WL 12911719, at *3. In demonstrating the comprehensiveness of their system of oversight, the Individual Defendants, will not go "beyond" stating that outside counsel was involved. They will not "touch[] on" "the directions given by counsel as to the" legality of the challenged statements, *id.*, or, as Plaintiffs suggest, "counsel's work," Mot. at 10. Plaintiffs' argument that this distinction is "illusory," Mot. at 10, is wrong. There is a distinction between stating lawyers were consulted and putting their advice at issue. *See Melendres*, 2015 WL 12911719, at *3. Merely stating the obvious—that a major public company like Carvana involved lawyers when preparing its SEC filings and other public statements—will not inject privileged communications into this litigation. *See Zymergen II*, 2025 WL 579197, at *2; *First Solar*, 2019 WL 6698199, at *2.

Plaintiffs conflate the Section 20(a) Good Faith Defense (an affirmative defense) with the negation of scienter under Section 10(b). *See, e.g.*, Mot. at 8. They are not the

---

[5] The *SeaWorld* and *First Solar* defendants were also seeking to use legal process evidence to rebut scienter, in addition to supporting a Section 20(a) defense. *See id.* at 10; Defendants' Opposition to Plaintiffs' Motion in Limine No. 4, *First Solar, Inc.*, No. 2:12-cv-00555-DGC, Dkt. 593 at 1 (D. Ariz. Nov. 22, 2019). For the avoidance of doubt, however, Individual Defendants here do not intend to point to attorneys to rebut scienter.

same thing. Scienter is an element that must be proven to make out a Section 10(b) claim, and directly examines a defendant's state of mind. *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 313-14 (2007). As explained above, the Good Faith Defense under Section 20(a) *can* be supported by evidence of the absence of scienter, but can also be supported by evidence of a reasonable process (which is all the Individual Defendants are doing). The Individual Defendants have not, and will not, seek to point to attorneys to rebut scienter under Section 10(b) or to demonstrate any defendant's subjective state of mind under Section 20(a). The Individual Defendants solely intend to truthfully describe the inclusion of attorneys in their "system of supervision and internal control." *Hollinger*, 914 F.2d at 1576. Due to Plaintiffs' failure to recognize this distinction, much of Plaintiffs' argument and the cases they cite are not germane to this dispute. *See, e.g.*, *La. Mun. Police Emp. Ret. Sys. v. Green Mnt. Coffee*, 2017 WL 3037414, at 6 (D. Vt. Apr. 7, 2017) (considering good faith evidence rebutting scienter); Defendants' Opposition to Plaintiffs' Motion in Limine, *Shenwick v. Twitter*, No. 4:16-cv-05314-JEST, Dkt. 521 at 15 (N.D. Cal. May 26, 2020) ("Such evidence bears directly on whether Defendants acted with the requisite intent to deceive or whether they instead believed, in good faith, that the information they conveyed to the public was complete and accurate.").

Plaintiffs cite only two (out-of-circuit) cases involving the Section 20(a) defense that found waiver. Mot. at 13–14 (citing *Oklahoma Firefighters Pension and Retirement Sys. v. Musk*, 2025 WL 2982003, at *2 (S.D.N.Y. Oct. 23, 2025); *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, 2021 WL 5105774, at *10 (D.N.J. Nov. 3, 2021)). But in *Musk*, the court analyzed the defense of "good faith *reliance*" / "good faith belief in the lawfulness of their conduct" under Second Circuit law—a defense with the same elements as a reliance on counsel defense, *see* Section IV.E, *infra*. 2025 WL 2982003 at *2, 4–6. That is not the same as the process-focused Good Faith defense that Individual Defendants are pursuing under Ninth Circuit law here. Nor was the Ninth Circuit's Good Faith defense at issue in *Valeant*, where the court analyzed the submission of evidence to "undermine a finding of scienter." 2021 WL 5105774, at *7–8.

Plaintiffs' other cases are inapt for the reasons discussed at the end of Section IV.B.2, *supra*.

**D.      Maintaining Privilege Will Not Deny Plaintiffs Information "Needed to Effectively Litigate Their Rights"**

As discussed above, the Individual Defendants intend to rely on attorney involvement only to establish the process prongs of the Good Faith and Due Diligence defenses, such that a jury will only evaluate the investigative process the Individual Defendants employed.   Accordingly, "fairness" does not require "disclosure of the protected communications." *Chevron Corp.*, 974 F.2d at 1162.  Unfairness only occurs when the substance of the legal advice is "*directly* relevant and *necessary* to allow" Plaintiffs "to fully challenge" the defense.  *In re Lidoderm Antitrust Litig.*, 2016 WL 4191612, at *4 (N.D. Cal. Aug. 9, 2016) (emphasis in original).  Here, Plaintiffs' ability to "fairly dispute" the propriety of the Individual Defendants' processes is not hampered in any way by continuing to treat these communications as privileged.  What attorneys told the Individual Defendants has no bearing on whether the Individual Defendants put in place a sufficient "system of oversight" or diligence.  *Contra* Mot. at 11.

Even if this Court credits Plaintiffs' argument that determining the sufficiency of the Individual Defendants' system of oversight or investigation would be relevant to an analysis of the information that process revealed, *see, e.g.*, Mot. at 11, that is not enough to find an implied waiver.  "[P]rivileged communications do not become discoverable simply because they are related to issues raised in the litigation." *Amlani*, 169 F.3d at 1195; *see also Cevantes v. CEMEX, Inc.*, 2014 WL 4104200, at *9 n.1 (E.D. Cal. Aug. 18, 2014) (no implied waiver based on the "mere showing" that privileged communications would be "helpful" to an opposing party because finding waiver under such circumstances would "completely eviscerate[]" attorney-client privilege).  That is particularly true when, as here, "the sought-after evidence is only one of several forms of indirect evidence about an issue." *Amlani*, 169 F.3d at 1195.  Plaintiffs are free to critique the non-privileged aspects of the

Individual Defendants' system of supervision and investigation—including the extent to which they consulted lawyers—to argue their actions were inadequate.

Plaintiffs also raise the argument that a lay jury might inappropriately assume that lawyers *signed off on* the challenged statements based on their involvement in preparing them. Mot. at 13. As an initial matter, that is not a question of waiver, but of whether evidence is unduly prejudicial under Federal Rule of Evidence 403. In any case, the answer to that concern is not that the court should strip the Individual Defendants of their attorney-client privilege. The Court may instruct the jury that while they have heard testimony that lawyers were involved in the Individual Defendants' preparation of the challenged statements, the jury should not assume the substance of that advice or that the attorneys involved concluded the challenged statements complied with federal securities laws. That instruction is essentially what the court suggested in *SeaWorld*. *See* Tr. of Mot. Hr'g, *SeaWorld*, No. 3:14-cv-2129, Dkt. 512, at 101.

### E.      The Carvana Defendants Will Not Raise An Advice Of Counsel Defense

The Carvana Defendants have repeatedly disclaimed any advice of counsel defense, and, at risk of embodying a broken record, do so again here. Plaintiffs, however, argue that the Carvana Defendants are raising an advice of counsel defense in disguise. *See, e.g.*, Mot. at 10, 12. Not so. The elements of an advice of counsel defense underscore that it is distinct from the Carvana Defendants' defenses. In the securities context, "[a]n advice of counsel defense requires a defendant to prove that he: (1) made a complete disclosure to counsel; (2) requested counsel's advice as to the legality of the contemplated action; (3) received advice that it was legal; and (4) relied on the advice in good faith." *S.E.C. v. Zouvas*, 2019 WL 4016687, at *9 (D. Ariz. Aug. 26, 2019) (citing *S.E.C. v. Goldfield Deep Mines Co. of Nevada*, 758 F.2d 459, 467 (9th Cir. 1985)).

In other words, the nature of counsel's advice is necessary to examine the validity of the defense—it is the whole ballgame. An advice of counsel defense therefore unambiguously puts privileged communications "at issue." *Sanmina Corp.*, 968 F.3d at 1117. Here, in contrast, as discussed in Sections IV.B and IV.C, the Individual Defendants

will support their defenses without any reference to the substance of any legal advice, and Plaintiffs need not examine the substance of any legal advice to challenge the defenses.

### F.    Granting Plaintiffs' Motion Would Be Unduly Prejudicial to the Individual Defendants

Through this Motion, Plaintiffs are attempting to coerce the Individual Defendants into abandoning their defenses. Adopting Plaintiffs' position would mean every securities defendant is faced with three options: (1) assert the Good Faith and Due Diligence defenses completely and waive privilege; (2) assert the defenses, but do not tell the whole truth about your processes; or (3) abandon the defenses. That is untenable and nonsensical.

Assuming defendants are unwilling to waive privilege over a giant swath of sensitive communications, they would be unable to present a complete and accurate picture of the robust process they employed to ensure the accuracy and completeness of their public statements. They would be unable to truthfully answer basic questions such as, "Who was involved in preparing the Registration Statement?" Not only would this neuter the Good Faith and Due Diligence defenses, it would also paint defendants as reckless. The jury would be given the false and highly prejudicial impression that defendants failed to take basic precautions that they may have in fact taken.

Plaintiffs suggest that this issue can be resolved with "a jury instruction noting that Defendants chose to withhold the communications." Mot. at 7. But that would not be sufficient—the jury would remain in the dark regarding what processes actually existed.

The only workable solution is to allow the Individual Defendants to submit non-privileged evidence about attorney processes. A jury instruction can clarify that there should be no assumption that lawyers gave their "blessing." Then the jury will have the facts, *and* Plaintiffs will not be prejudiced because everyone is clear that the substance of any legal advice remains off the table. As the *SeaWorld* court recognized, it is farcical to pretend any other solution is viable because evidence about lawyer involvement is "certainly . . . going to come out." *See* Tr. of Mot. Hr'g, *SeaWorld*, No. 3:14-cv-2129, Dkt.

512, at 96:12-13 (S.D. Cal. Jan. 24, 2020).  Hiding the involvement of lawyers from a jury would require Defendants to redact every non-privileged document that mentions a lawyer.

Congress has carefully tinkered with the federal securities regime for nearly a century, most notably by adopting the Private Securities Reform Litigation Act, to achieve its "twin goals" of "curb[ing] frivolous, lawyer-driven litigation, while preserving investors' ability to recover on meritorious claims." *Tellabs*, 551 U.S. at 322.  Crediting Plaintiffs' arguments would upset Congress's careful balance by gutting two of the precious few affirmative defenses defendants have.

## V. CONCLUSION

The Carvana Defendants respectfully request that the Court deny Plaintiffs' Motion.

Dated: February 13, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

 */s/ J. Christian Word*
J. Christian Word (*pro hac vice*)
Andrew B. Clubok (*pro hac vice*)
Susan E. Engel (*pro hac vice*)
Matthew J. Peters (*pro hac vice*)
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Email: andrew.clubok@lw.com
Email: christian.word@lw.com
Email: susan.engel@lw.com
Email: matthew.peters@lw.com


LATHAM & WATKINS LLP

Jeff G. Hammel (*pro hac vice*)
Kalana Kariyawasam (*pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: jeff.hammel@lw.com
Email: kalana.kariyawasam@lw.com

Meryn C. Grant (*pro hac vice*)
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: (424) 653-5500
Email: meryn.grant@lw.com

FENNEMORE CRAIG, P.C.
Douglas C. Northup (No. 013987)
Andrea L. Marconi (No. 022577)
2394 E. Camelback Road, Suite 600
Phoenix, AZ 85016
Telephone: (602) 916-5000
Email: dnorthup@fennemorelaw.com
Email: amarconi@fennemorelaw.com

*Counsel for Defendants Carvana Co., Ernest Garcia III, Mark Jenkins, Stephen Palmer, Michael Maroone, Neha Parikh, Ira Platt, and Greg Sullivan*