UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| **United Association National** | ) | |
| **Pension Fund, et al.,** | ) | No. 2:22-cv-02126-MTL |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | February 9, 2026 |
| **Carvana Company, et al.,** | ) | 2:02 p.m. |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**BEFORE:   THE HONORABLE MICHAEL T. LIBURDI, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**TELEPHONIC MOTION HEARING**

Official Court Reporter:
**Cathy J. Taylor, RMR, CRR, CRC**
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 31
Phoenix, Arizona 85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

**A P P E A R A N C E S (Telephonic)**

For the Plaintiffs:
    ROBBINS GELLER RUDMAN & DOWD, LLP
    By:  **Rachel A. Cocalis, Esq.**
         **Tor Gronborg, Esq.**
    655 West Broadway, Suite 1900, Suite 1900
    San Diego, California  92101

    ROBBINS GELLER RUDMAN & DOWD, LLP
    By:  **Matthew Andrews, Esq.**
    420 Lexington Avenue, Suite 1832
    New York, New York  10170

For the Ernest Garcia, II, et al.:
    DLA PIPER, LLP
    By:  **Yan Grinblat, Esq.**
    444 West Lake Street, Suite 900
    Chicago, Illinois  60606-0089

    DLA PIPER, LLP
    By:  **Melanie E. Walker, Esq.**
    2000 Avenue of the Stars, Suite 400
    Los Angeles, California  90067

**P R O C E E D I N G S**

(Court was called to order by the courtroom clerk.)

(Proceedings commence at 2:02 p.m.)

THE COURTROOM CLERK:  This is Civil Case Number 22-2126, United Association National Pension Fund vs. Carvana Company, before the Court for telephonic motion hearing.

Will the parties please announce for the record starting with the plaintiffs.

MS. COCALIS:  Good afternoon, Your Honor.  My name is Rachel Cocalis, and I represent the plaintiffs.

THE COURT:  Good afternoon.

MS. COCALIS:  And, I'm sorry, I also have my colleague Tor Gronborg with me.

THE COURT:  Thank you.

MR. GRINBLAT:  Good afternoon, Your Honor.  For Ernest Garcia, II, Yan Grinblat and Melanie Walker from DLA Piper.

THE COURT:  All right.  Good afternoon.

Anyone else on the line?

MR. ANDREWS:  Yes.  You also have Matthew Andrews from Robbins Geller for the plaintiff.

THE COURT:  Okay.  Thank you.

For Mr. Garcia, who's going to be taking the lead?

MR. GRINBLAT:  Your Honor, Yan Grinblat will be.

THE COURT:  Thank you.

All right.  Thank you all for calling in.  We are here on this motion regarding a request to compel disclosure.  I'd like to make sure that we are talking about the same universe of documents.  And by reference, I look at the letter that was sent.  And what seems to be clear from Document 253, that the Garcia, Sr., documents ending in 2470, 2506, 1789, and 1834 are what we have to discuss today.  Also in the response -- and let me pull that -- at 281, there's the list of what's contained in the documents, and it's listed A through G -- I'm sorry -- A through I on page 1 of 281.

So the reason I say this is I want to make sure that I think we're talking about attachments to these four numbers, but it's not clear to me if this is one email or many emails, many attachments.

So if -- I think I'll turn to the defense first, just so I know the playing field that I'm ruling on here, Mr. Grinblat, of what it is I'm ruling on.  And I can refer to 281, or you can supply that information to the Court.  And there are other references to it as well, you know, dividends, report --

MR. GRINBLAT:  Thank you, Your Honor.

THE COURT:  I won't go through all of it.

So can you just help me with that so I know the playing field I'm ruling on.

Go ahead.

MR. GRINBLAT:  Of course.  So we are talking about four families.  So four emails.  All of the emails are from the in-house counsel of DriveTime.  The emails are sent to DriveTime's board of directors in preparation for quarterly or periodic board of directors meetings.  And we are talking about many of the attachments to each of those four emails.  So the emails by DriveTime's general counsel compile numerous disparate documents in preparation for these periodic board meetings.  So it's four parent emails with give or take about half a dozen substantive attachments to each email.

There is a large number of documents, but that is because just by virtue of the ESI collection processing, production process, there are things like embedded images that show up as their own documents.  So really it's four parent emails and give or take half a dozen attachments to each.

THE COURT:  Thank you.

Have you disclosed the four emails?

MR. GRINBLAT:  We have produced the four parent emails for context.  We view those emails as nonresponsive, but we wanted to produce them so that the plaintiffs are aware of the context in which these documents are being produced and withheld.  And we've also produced what we view are the responsive attachments.  We have withheld the attachments that we view as nonresponsive.

THE COURT:  Thank you.

And I don't hold it against you in any way that you may have produced things in the past, even if they're nonresponsive. My role here is to evaluate what is attached and the fact that you might have overdisclosed in the past, if that's what I decide, then I won't hold it against you that you've overdisclosed in the past. And, of course, conversely, if they should be disclosed, then I'll order it.

Let me next move to what I'd like to speak with plaintiff first about and then hear a defense answer.

The most important factor for me is whether the substance of these attachments merit disclosure. I'm aware of the argument that you have an agreement to disclose all of the attachments to emails. I'll consider that. But I'd prefer to evaluate this on relevance and prejudice to the plaintiff if you don't get them and hear from the defense on what prejudice there would be in their disclosure and any other factors you want me to consider as well. So perhaps it is helpful to look at Doc. 281 and look at A through I, and address why those blocks of documents are relevant and should be disclosed.

If there's a different way that the plaintiff, Ms. Cocalis, you wish to have the Court address this, I'll be happy to do that as well.

So let me turn this over to the plaintiff.

MS. COCALIS: Thank you, Your Honor. This is Rachel Cocalis.

I'd like to address Garcia, Sr., and DriveTime's relevance arguments. That argument fails for three reason.

First of all, this is not an order. This is -- I mean, this is not an agreement. It is an ESI order. And that order forecloses their argument. The order clearly states if any part of a communication or its attachments is responsive, the entire communication and attachments will be produced except any attachments that must be held or redacted on the basis of privilege.

Garcia, Sr., admits he is withholding portions of responsive families. He also admits that the withheld attachments are not privileged. That ends the inquiry. The entire purpose of the ESI order entered by Judge Liburdi would be defeated if a party could unilaterally withhold the attachments for nonresponsiveness. The ESI order's rule is there for a good reason. It is consistent with the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and prevents disputes that waste judicial resources. That is why courts have repeatedly held relevance arguments, like theirs here, must be rejected.

For example, in the *Virco* case, the Court stated that it did not welcome unilateral editing of responsive families, like we have here, because, quote, "even when implemented with restraints and in good faith, the process frequently gives rise to suspicion that relevant material, harmful to the producing

party, has been obscured," end quote.

*Virco* also made clear that it leads to collateral dispute and in-camera review of documents that waste the party and the Court's time.

This is a real concern here, Your Honor.  This case is already highly litigated.  Plaintiffs are attempting to move discovery forward, not relitigate settled orders.  If Garcia, Sr., is allowed to violate the ESI order, the other defendants will follow suit.  Discovery in this case will grind to a halt.  The Court will be pulled into disputes the order was designed to avoid regarding individual documents to responsive families.  This schedule will be completely and totally lost.

Similarly, the *Leon* case explains the ESI orders bright-line rule that we have here is necessary because without it, there's a real risk of, quote, a drain on the Court's and the parties' resources in violation of Federal Rule of Civil Procedure 1.

The *Leon* court identified three more reasons for the rule.  It allows plaintiff to review the document family as it was created and maintained in the ordinary course of business consistent with Rule 34.  It reflects the Sedona Conference's view that an email and its attachments are a single responsive document or message unit.  Any concern about the disclosure of a relevant or sensitive material is mitigated by a protective

order, which we have here.

Even Garcia, Sr's authority, his case from Abu Dhabi from New York, recognizes that the correct approach is for parties to agree in advance on how document families will be treated and then to follow that protocol.

That is exactly what the parties did a year ago.  And Judge Liburdi entered that order.  All plaintiffs are asking for is for Garcia, Sr., to comply with that order that he negotiated and stipulated to a year ago.

Second --

THE COURT:  Hold on.

MS. COCALIS:  -- this Court recently rejected --

THE COURT:  Ms. --

MS. COCALIS:  Yes?

THE COURT:  Let me just address number 1 since we're on it --

MS. COCALIS:  Yeah.

THE COURT:  -- and then we'll go to number 2.

There is --

MS. COCALIS:  Okay.

THE COURT:  The response I'm hearing from Mr. Grinblat is that the -- what he disclosed, these four emails, they were nonresponsive.  If I heard him correctly, his argument, then, is the attachments are also nonresponsive, carving out a reason that the order shouldn't be enforced.

Let's assume that's true.  Tell me why these four emails that were disclosed without the attachments, or without all of the attachments, tell me why the four emails were responsive.

MS. COCALIS:  Well, Your Honor, I -- I'd just like to clarify.  The -- and that is not correct.  So he -- what he is saying is he doesn't think the cover email is responsive, but he concedes that the attachments that they've produced to that cover email are responsive.  And so -- so that's kind of the rub of it.  Because that is precisely where the ESI order kicks in, because it says the parties agree that if any part of a communication or if attachments is responsive, the entire communications and attachments will be produced.

THE COURT:  Okay.  I understand that.

And for clarity --

MS. COCALIS:  Sure.  Okay.

THE COURT:  -- the case you referenced is spelled V-I-R-C-O, and the second was *Leon*.

You're welcome to continue with my answer or move to argument 2.

MS. COCALIS:  Sure.  Did I answer your question, then, Your Honor?

THE COURT:  You did.

MS. COCALIS:  Okay.  Great.

So Your Honor's ruling regarding -- in the hyperlink

order and the ESI order foreclosed their relevance arguments here.  Even still, their argument fails because the withheld attachments are relevant.  We know that because DriveTime produced some versions of these materials, some of these materials, and they discussed Carvana's related party transactions with Garcia, Sr.'s company that this Court has repeatedly held are relevant and discoverable.

Just to put it in perspective, one of these documents that was produced mentions Carvana 87 different times and explicitly references the alleged related party transaction that are part of the scheme claim and the retail statement claim.

Further, I note that this is not a proportionality or burden dispute.  The documents have already been collected, reviewed, and segregated.  There is no burden whatsoever. Garcia, Sr., just needs to produce the documents that he is withholding.

Garcia, Sr.'s reliance on Judge Liburdi's *Stoneridge* discussion is a red herring.  Judge Liburdi upheld plaintiffs' Section 28 claim against Garcia, Sr.  As the scope order made clear, Judge Liburdi also upheld plaintiffs' scheme claims and retail unit statement claims in full against Carvana.  And, therefore, discovery into the alleged related party transactions is relevant.  That conclusion was just reiterated again in the February 2 motion to compel order.  Frankly,

Garcia, Sr.'s argument regarding relevance underscores the issue as it confirms his responsiveness review was improperly narrow.

Next, their attempt to portray these documents as DriveTime's confidential documents is not accurate and unhelpful.  These are Garcia, Sr.'s, documents.  They came from his email accounts.  They were collected from him.  They were in his possession, custody, and control.  The discovery party rules apply.  And, to be clear, Garcia, Sr., is DriveTime. It's his wholly owned company.

The ESI order does not allow any party to withhold documents for confidentiality.  Confidentiality is not privileged.  That is what a protective order is for here.  We have a two-tiered protective order that the parties negotiated for this precise reason.  Neither Garcia, Sr., nor DriveTime has identified any defect in that protective order.  DriveTime has not made a motion to quash or a motion for additional protection, and DriveTime has already produced some of these very same materials under that protective order, which confirms that the -- that the appropriate action is to designate these documents as confidential or even highly confidential, not to withhold them.

If confidentiality alone allowed a party to withhold attachments from a responsive family, the ESI orders rule would be meaningless because virtually every internal board document

of a private company contains confidential information.

The timeline also undermines this argument. Garcia, Sr., withheld these documents from its November 2025 production on the fact that these were DriveTime confidential documents. But plaintiff later learned that Garcia, Sr., did not even provide these documents to DriveTime's counsel to evaluate for confidentiality until January of 2026, mere days before plaintiff filed their motion.

And, lastly, I note that Garcia, Sr., relies on the ESI orders provision stating that the parties will meet and confer about whether there is an appropriate basis for withholding a family document for reasons other than the attorney-client privilege and work product privilege. That provision does not allow unilateral withholding. It requires a meet and confer before withholding. And Garcia, Sr., violated that requirement, too. He did not meet and confer with plaintiffs before unilaterally withholding these attachments.

Now, plaintiffs drafted that provision. It exists so that the parties can rate and discuss the potential withholding of documents subject to privileges not previously contemplated. It is not there so that a party can do the exact opposite of what the ESI order requires.

In conclusion, this dispute should not be decided on confidentiality, relevance, burden, or proportionality. It is about compliance with a straightforward court order.

Garcia, Sr., stipulated to the ESI order, which required him to produce the responsive family absent privilege. That rule in the ESI order is supported overwhelmingly by the court -- by the courts in this circuit. He concedes that families are responsive and that the attachments are not privileged. His confidentiality concerns are fully addressed by the protective orders that the parties negotiated for this exact purpose.

Plaintiffs, therefore, respectfully request a -- the Court order Garcia, Sr., to comply with the ESI order and produce the withheld attachments to the responsive families subject to the appropriate confidentiality designations.

THE COURT: Your primary argument is the ESI order. Leave that aside for a moment. I also heard you talk briefly about these documents being relevant.

My question for you is --

MS. COCALIS: Uh-huh.

THE COURT: -- are these documents relevant? And I'm using the descriptions at 281, A through I.

MS. COCALIS: Yes, Your Honor. For the reasons I noted, we believe they're relevant.

Now, for example, they say these are documents about DriveTime's Silver Rock and Bridgecrest financial report -- financial performance. We received some of these documents, and they expressly relate to their alleged related party transactions with Carvana that are the subject of this case and

plaintiffs' claims, and they're relevant to Garcia, Sr., control at Carvana.

Internal audits would also cover the financial information that is relevant to the related party transactions.

The agreements with entity -- I can't, you know, go through every single one of them, and I reiterate that this is exactly the type of piecemeal discussion that we would get into and have to bring before the Court.

So, for example, if we don't follow the ESI order, Carvana will come in and say they don't have to produce any hyperlink attachments to certain families because they're not relevant, and I'm going to be sitting here going through, you know, 300 of these. But from what has been produced by DriveTime, it is confirmed that these documents are relevant.

THE COURT: I appreciate your point. I have a duty to acknowledge the defendants' response, and a big portion of their response is that these documents aren't relevant. So I appreciate the description you've given me.

Let me tell you all that I don't think I have a copy of the parent email in the attachments. If I do, let me know. I'd like to look at it. But I understand your points.

And I'll come back to you. I'll give each party at least two times to speak.

So with that, let me turn back to the defense who, Mr. Grinblat, pardon me, are you speaking first?

MR. GRINBLAT:  Yes.  Thank you, Your Honor.

THE COURT:  Go ahead.

MR. GRINBLAT:  And please allow me to attempt to answer your question and give the Court a rubric for evaluating the documents at issue.

I don't believe you have the produced versions of the documents.  There is that A through I enumerated list in Docket Number 281.  I think there's a better way to look at the documents if Your Honor had access to Document Number 278 on the docket.

THE COURT:  I -- give me a moment.

MR. GRINBLAT:  Sure.  Of course.

THE COURT:  I don't have it here.  And the screen I'm looking at is the transcript, which I'd prefer to keep looking at.

So regarding 278, what is it you'd like to refer to?

MR. GRINBLAT:  There's an attachment to Docket 278 which is a detailed log of all of the withheld documents broken out by tab, the document-by-document description.  So it goes through what each of the attachments is.

And as, Your Honor noted, there has been no serious discussion here about how almost all of these attachments are even remotely related to the plaintiffs' claims.  There's no discussion about how these documents could be used.  There's no discussion about how they advance the case.

For example, DriveTime's board minutes; actions taken by the DriveTime board of directors; presentations to the audit board; presentations to the compliance board; documents concerning compliance with statutory requirements of DriveTime and other associated companies.  No discussion whatsoever other than they were attached to other documents that may or may not be responsive.

The documents are also not related to each other because they were compiled as part of facts for board meetings. The plaintiffs don't need Attachment A to understand or interpret or give context to Attachment B.  They're completely disparate documents that were only pulled together because they were going to be discussed by the board in the context of a meeting.

So in terms of relevance, these are documents about unrelated portions of DriveTime's business.  And I will note that DriveTime is not a defendant in this case.  And Mr. Garcia, Sr., was not sued in his capacity as a DriveTime executive.  He was sued in his individual capacity.

I'm happy to keep discussing relevance or move on to other portions of the plaintiffs' argument, whatever would be most helpful to Your Honor.

THE COURT:  I have a few questions on relevance. Number 1, you have disclosed some attachments to the parent email for each of these four.  Am I correct?

MR. GRINBLAT:  That's correct, Your Honor.  And those documents were a news article that was specifically alleged in the complaint and certain contract with Carvana.

THE COURT:  This dovetails into the question about the ESI order itself.  Plaintiffs' position is that the order is clear.  "If any part of a communication or its attachments is responsive, the entire communication and attachments will be produced."

And if you've disclosed the email and some of the attachments, why should I not enforce that ESI order?

MR. GRINBLAT:  Oh, you mean the plaintiffs are reading from Section E of the ESI order on page 8?

The very next sentence is why.  The next sentence reads, and I quote, "The parties will meet and confer about whether there's an appropriate basis to withholding the family for any reason other than attorney-client or work product privilege."

And we believe that this is exactly such a reason.  This is a very limited circumstance.  We're dealing with documents that Mr. Garcia, Sr., has only because he is a DriveTime executive, even though he wasn't sued in that capacity in this case.

No party has made any claim other than in this very narrow couple of dozen document circumstance that parent emails and individual attachments should be individually viewed for

responsiveness.  Considering the substantial completion of document production that's impending, I don't see any documents being made or grinding anything to a halt.  We're talking about this one scenario, only because we have documents that belong to DriveTime, who's a non-party.

That's why we believe that this situation merits special consideration.  This is also why we produced the nonresponsive parent emails first, why we produced the responsive documents first, and then raised specifically with plaintiffs that we were withholding other nonresponsive attachments and invited to meet and confer.

So there wasn't any sandbagging.  There wasn't any noncompliance with the ESI order.  We provided plaintiffs the relevant context so we could have the prerequisite discussion.

THE COURT:  Give me one moment.  I'm making a few notes.

My next question for you is prejudice.  How are you harmed if there's an attorneys' eyes only review of these documents?  I have read cases that you supplied discussing certain scenarios where this highly confidential business information could, you know, cause damage.  Here I don't know that the documents that are listed in A through I scream out to me that this is going to be prejudicial if they're sent over attorneys' eyes only.

I'd like to hear your thoughts on that concern.

MR. GRINBLAT:  Of course, Your Honor.

If I may, since we are shifting gears from responsiveness, may I make one final point on that --

THE COURT:  Sure.

MR. GRINBLAT:  -- before answering your question?  Thank you.

The last time we were before the Court, the plaintiffs actually took a position that supports Mr. Garcia, Sr.  If you recall, Your Honor, there was an argument about the completeness or robustness of the Carvana defendants' document production.  In that argument, lead counsel for the plaintiffs, Mr. Drosman, was stating that the number of documents was not as robust as it seemed.  And if you were to look on -- on page 14 of the transcript, starting at line 18, I quote, Mr. Drosman said, "They're referring to families, a large portion of which did not hit on the search terms at all and may or may not be responsive," end quote.

That is exactly the heart of Mr. Garcia, Sr.'s argument here.  Just because these documents are part of a family doesn't necessarily mean that they're responsive.  And in this limited circumstance, they shouldn't be treated as such.

Now, going back to the prejudice one, Your Honor.  This was addressed in some detail in DriveTime's submission.  And the prejudice would be DriveTime's.  They are a non-party.

UNITED STATES DISTRICT COURT

They, by the way, are not covered by the ESI protocol requiring the production of family members.  But more to the point, the analysis should be a little bit different because they are a non-party.  We are dealing with business documents that are as confidential as it gets for a company of that sort.  These are documents that are summarizing the business units that are going to the board of directors.  And to move to prejudice without adequately dealing with relevance first kind of flips on its ear the relevance burden.

The plaintiffs were required in the first instance to make a prima facie showing of relevance.  And they haven't done it, so we really don't need to get to whether or not this would be prejudicial to DriveTime.  But if we go to that analysis, then we're still left with their most confidential documents on a tenuous at best claim of relevance and a confidentiality order that will not continue to protect these documents from disclosure if this case moves to trial.

THE COURT:  Well, there would be a subsequent court order required if they were going to be used in any way outside of attorneys' eyes only.  So you'd have that secondary protection, or at least DriveTime would, wouldn't they?

MR. GRINBLAT:  Assuming that the order -- the order would apply to these documents and that DriveTime would be covered.  But that is an additional burden to non-party DriveTime in order to protect the confidentiality of these

documents where a threshold showing of relevance has not been made.

THE COURT:  I understand that argument, and as I --

MR. GRINBLAT:  And --

THE COURT:  -- said to the plaintiff, my goal here is to advocate both positions, play devil's advocate, and hear the response.  So I appreciate your answering the prejudice question, but let me go back to it.

I don't know that there's anything -- if -- in this list that -- aside from hearing that it's highly confidential that its disclosure would be harmful and prejudicial to DriveTime or Carvana.

Do you have any answer to that?

MR. GRINBLAT:  Well, I think the answer to that is in the *Apple vs. Boston* case that was cited in DriveTime's submission.  That is 2019 Westlaw 183504 where the Southern District of California held that protective orders only provide protection from use and dissemination of relevant information provided in discovery, but they don't eliminate the requirement that that information be relevant to be disclosed.

The -- the risk here is that we are permitting disclosure solely because a protective order is in place, which eviscerates the relevance inquiry.  It's not enough for the plaintiffs to just wave a hand at that threshold requirement and say, oh, there's a protective order there.  Protect it.

Courts have told -- held that this is not enough, that relevance comes first, and then the balancing test occurs. And here the balancing test favors non-party DriveTime's confidential business records against a tenuous claim of relevance.

THE COURT: I understand your response. I led with relevance when I asked plaintiff those questions. I'll come back to Ms. Cocalis on the same point in a few minutes.

Is there anything else you want to address? As I said before, I'll give you another chance to respond, so this is your not -- this is not your last opportunity to speak.

MR. GRINBLAT: Yes, Your Honor.

THE COURT: Okay. I'll have you --

MR. GRINBLAT: I --

THE COURT: Oh, go ahead.

MR. GRINBLAT: Well, I don't believe there is at the moment subject to plaintiffs' subsequent argument.

THE COURT: Okay. Thank you.

Anyone else on the defense side who wants to address the Court?

Okay. Hearing no one, Ms. Cocalis, let me --

MR. GRINBLAT: Sure.

THE COURT: Did someone just jump in? All right. No one jumped in.

Ms. Cocalis, the two things I'd like to discuss are

that second line to the ESI order.  Mr. Grinblat's response is that the second line modifies the first line and allows this type of argument to be presented to the Court.

And the second is the -- anything you'd like to add on relevance.

Go ahead.

MS. COCALIS:  Thank you, Your Honor.

Yes.  So as I -- as I mentioned, that provision states that the parties will meet and confer about whether there is an appropriate basis for withholding a family document.  It in no way states that a party can unilaterally withhold a document for nonresponsiveness.  And it requires a meet and confer. They did not do that here.  They withheld the attachments and then buried that fact in a cover letter.  It wouldn't make any sense that we would have a sentence and then have a second sentence that completely undid the first.  And, as I mentioned, we were the ones that drafted that provision.  It exists so the parties can discuss the need to withhold documents subject to other privileges, such as the bank examiner's privilege, which other defendants in this case have raised.  There are other privilege issues, but confidentiality is not a privilege.

With regard to the relevance issue, I would note that I didn't believe I heard Garcia's counsel mention the fact that DriveTime produced some of these documents in response to a subpoena finding that they were relevant or that these

documents on their face relate to the claims at issue. These are not tangential relevance arguments. These are real. Further, these documents are relevant because they are part of a responsive and relevant family.

As noted in the *Karnoski v. Trump* case that we cited, "The Federal Rules of Evidence favor the complete production of non-privileged evidence if some portion of the evidence is deemed responsive," end quote.

Context matters. If you show a witness an email with only half of the attachments, that is going to be a problem. Out of fairness, they are going to demand to see the other attachments and the context that they were sent in. Even Garcia, Sr.'s case, the Abu Dhabi case, also mentioned the completeness standard of the Federal Rules of Evidence Rule 106.

Now, I'd also like to briefly address the fact that he said no party has done this yet so there is no reason to believe that this will happen with any other attachments that a party finds are nonresponsive. That makes no sense. No party has done it yet because we have a clear order that requires you to produce any attachments to a responsive family absent privilege. If we just say forget the ESI order, forget orders in this case, there is certainly going to be collateral disputes, and we will be before the Court on relevance-by-relevance determinations. And the case law

consistently holds in the Ninth Circuit that this is improper.

I would also note that there's -- I -- I'm unsure of what basis Garcia, Sr., is saying that the ESI order did not apply to non-parties. The ESI order is entered in this case. Nothing says that non-parties do not have to abide -- abide by it.

And, further, I'd note that, again, these are Garcia, Sr.'s documents. They were in his possession, custody, or control. These are not DriveTime's documents. There is no burden to DriveTime.

I would also note that the cases that you mentioned about highly confidential information are not relevant here, because in those cases where they were concerned the protective order wasn't sufficient, the -- the receiving party was a competitor. We are not a competitor. I am not in the used car business. There is no reason to believe that the protective order can't protect them.

And with that, unless you have any other questions, I'd just ask that the parties, Garcia, Sr., follow the ESI order that he stipulated and negotiated to a year ago.

THE COURT: I have a question about the actual email, and I'll start with 1789. I printed out Document 278. I'm looking at page 13. It has a list of the attachments. I don't know that I have a copy of the email anywhere.

Are you in a position to tell me what the email is for

1789?  What's -- what does the email itself discuss?  The reason I ask is --

MS. COCALIS:  So it's --

THE COURT:  -- is that --

MS. COCALIS:  It's an email -- oh, sorry.

THE COURT:  The reason I ask is just this relationship between the parent email and the attachments and your point that the law and these orders are designed to avoid these discovery disputes because if the email itself is relevant, then, as you described, there's an argument that everything that's in there should be discoverable so you can look at it to determine its relevance to the parent email.

Well, that's fine.  I don't have a copy of the parent email.  So do you have 1789?

MS. COCALIS:  I do, Your Honor.  And, you know, it's just a -- a greeting.  "All board members, here are the attached documents."

THE COURT:  What about 1834, 2470?

MS. COCALIS:  It's -- it's just -- it's -- it's actually the same email four times.

THE COURT:  Okay.

MS. COCALIS:  Or twice.  I'm sorry.  Excuse me.

THE COURT:  Okay.  Thank you.

All right.  Mr. Grinblat, you get, it appears, the final word.  Go ahead.

MR. GRINBLAT:  Thank you, Your Honor.  Briefly addressing a few of plaintiffs' points.

The concept that this issue was buried in a production letter, discussed it in passing previously, but I want to underscore the ESI order requires us to meet and comply, which is exactly what we did.  We didn't hide the ball.  We produced the irrelevant cover emails for context, we produced the relevant documents, and we flagged in the cover email to that production that we are withholding other attachments to those emails for responsiveness reasons.  And we invited a meet and confer.  So we did this specifically to provide context for a more robust meet and confer.

So it -- if plaintiffs were to have their way, they would have had no context for our withholding, and we would have had this dispute without the plaintiffs having the benefit of the cover emails and their responsive documents already in their possession.  So the argument seems to be we did more than what was required but somehow should be held accountable for it.

The second argument that these documents are relevant because DriveTime produced versions of them, as was clearly addressed in DriveTime's submission, DriveTime only produced those documents in an attempt to compromise and avoid a discovery dispute.  DriveTime's position is in lockstep with Mr. Garcia, Sr.'s, position that these documents are both

highly confidential and not relevant to any claims or defenses in this action.

In terms of the applicability of the ESI order to non-parties, page 1 of the ESI order is clear that this agreement and order will govern how the parties and the Court manage the production of documents, and so on.  There's nothing here that would apply to third parties, nor logically could third parties be compelled by this ESI order if they were not parties to the case at the time.

And, finally, the kind of parade of horribles argument that plaintiffs made regarding other parties clogging up the court docket, almost all of the discovery disputes have been initiated by the plaintiffs here; right?  And in large part, this is unfortunately because in many of the cases the meet and confer process resulted in a -- an intransigent position or all or nothing.  This was epitomized in the current dispute where Mr. Garcia, Sr., provided relevant context, flagged the withholding of documents for relevance purposes, and invited a meet and confer.  And the result of the meet and confer was a demand to produce everything without exception.  This is why we are continually before Your Honor, not because parties will selectively decide that certain documents are not responsive.

THE COURT:  Understood.  I don't fault either side for the disputes we've had.  You've both brought very good arguments, excellent briefing, and good analysis to this

UNITED STATES DISTRICT COURT

discussions, so I consider you on even ground.  For all of that, that's not before me right now anyway.

I would note your point about third-party documents. I don't really understand it because you have the documents. I'm not asking DriveTime to do anything.  So why -- why is that even something I should consider here?

MR. GRINBLAT:  Well, in large portion of the plaintiffs' argument is the requirement of the ESI protocol to produce parent emails and attachments.  The point was that DriveTime is not bound by it.  Your Honor is correct that these documents are in Mr. Garcia, Sr.'s possession, custody, and control, but the only reason that Mr. Garcia, Sr., has these documents is by virtue of his affiliation with DriveTime.  This is not the capacity in which he's sued, so it merits some consideration.

THE COURT:  Understood.

Okay.  Thank you all for calling in.  I understand these arguments very clearly.  I will review again your motions.  I'll look back at a couple of cases you referenced. I intend to get my order out by tomorrow afternoon hopefully. And with that, let me make sure there's nothing else to address.

From the plaintiffs, anything else to address today?

MS. COCALIS:  Yes, Your Honor.  My colleague, Tor Gronborg is going to address another matter.

THE COURT:  Please, Mr. Gronborg.

MR. GRINBLAT:  And, Your Honor, is --

MR. GRONBORG:  Yeah, this is -- has to do with the February 2nd, 2026, order.  It's on search terms, ECF 298.  And I don't think there's any representative of the Carvana defendants on the line, so I, as mutually as possible, make no argument about it.

But one -- one of these search terms that was rejected concerned Davis Polk, the law firm Davis Polk.  And the basis for that was -- was the Court's understanding that the string would seek communications that would be attorney-client privileged.  And we -- we may not have been clear enough in our briefing that Davis Polk actually is not a Carvana -- counsel for Carvana.  They're counsel for the underwriters, and so there is no attorney-client relationship between them.

And I guess the point being if that was the basis for deciding that was an inappropriate term, is -- is the vehicle you would recommend, is it a motion for clarification, reconsideration?

We're just trying to figure out the -- the cleanest way to raise that.

THE COURT:  I would meet and confer with Carvana, outline anything you disagree with, send that to me, as you have, in a paragraph email for each side, and I'll either rule on it promptly.  If I need to get on the phone, I will.  I

think that's an issue that if the facts are laid out in the email I could probably rule on if you don't agree.  So I would say confer and then --

MR. GRONBORG:  Understood.

THE COURT:  -- email as needed.  If you have a stipulation, advise me, and then I'll send a supplemental order.

MR. GRONBORG:  Understood. That'll work.  Great. Thank you.

THE COURT:  Okay.  Thank you.

All right.  Anything else from the defense today?

MS. COCALIS:  Not from plaintiff.

MR. GRINBLAT:  Nothing, Your Honor.

THE COURT:  All right.  Thank you all for calling in.

We are adjourned.  Have a good afternoon.

MS. COCALIS:  Thank you, Your Honor.

MR. GRINBLAT:  Thank you, Your Honor.  You as well.

(Proceedings conclude at 2:52 p.m.)

---oOo---

**C E R T I F I C A T E**

I, CATHY J. TAYLOR, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED at Phoenix, Arizona, this 9th day of February, 2026.

/s/Cathy J. Taylor

Cathy J. Taylor, RMR, CRR, CRC