UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| **United Association National** | ) | |
| **Pension Fund, et al.,** | ) | No. 2:22-cv-02126-MTL |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | February 23, 2026 |
| **Carvana Company, et al.,** | ) | 10:33 a.m. |
| | ) | |
| Defendants. | ) | |

**BEFORE:   THE HONORABLE MICHAEL T. LIBURDI, JUDGE**

**<u>REPORTER'S TRANSCRIPT OF PROCEEDINGS</u>**

**<u>HEARING ON MOTION TO COMPEL</u>**

Official Court Reporter:
**Cathy J. Taylor, RMR, CRR, CRC**
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 31
Phoenix, Arizona 85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

**A P P E A R A N C E S**

For the Plaintiffs:
    ROBBINS GELLER RUDMAN & DOWD, LLP
    By:  **Tor Gronborg, Esq.**
         **Sarah Fallon, Esq.**
    655 West Broadway, Suite 1900
    San Diego, California  92101

    ROBBINS GELLER RUDMAN & DOWD, LLP
    By:  **Scott Dion, Esq. (Telephonic)**
    225 NE Mizner Blvd, Suite 720
    Boca Raton, Florida  33432

For the Defendants Carvana, et al.:
    LATHAM & WATKINS, LLP
    By:  **Christian Word, Esq.**
         **Nathaniel Berry, Esq.**
    555 11th Street NW, Suite 1000
    Washington, DC  20004-1304

    LATHAM & WATKINS, LLP
    By:  **Kalana Kariyawasam, Esq. (Telephonic)**
    1271 Avenue of the Americas
    New York, New York  10020

For the Defendants Citigroup Global Markets, Incorporated, and J.P. Morgan Securities, LLC:
    PAUL WEISS RIFKIND WHARTON & GARRISON, LLP
    By:  **Kristina A. Bunting, Esq.**
    1285 Avenue of the Americas
    New York, New York  10019

For Defendant Ernest Garcia, Sr.:
    DLA PIPER, LLP
    By:  **Emma Caitlin Peplow, Esq. (Telephonic)**
         **Jordyn Cho, Esq. (Telephonic)**
    2000 Avenue of the Stars, Suite 400
    Los Angeles, California  90067

# **P R O C E E D I N G S**

(Court was called to order by the courtroom deputy.) Mr.

(Proceedings commence at 10:33 a.m.)

THE COURTROOM DEPUTY:  Civil Case 22-2126, United Association National Pension Fund vs. Carvana Company, and others.  This is the time set for hearing on motion to compel.

Please announce your presence for the record starting with the plaintiff.

MR. GRONBORG:  Good morning, Your Honor.  Tor Gronborg, Robbins Geller Rudman & Dowd, on behalf of the plaintiffs.  And with me is my colleague, Sarah Fallon.

THE COURT:  Good morning.

MR. WORD:  Good morning, Your Honor.  Christian Word of Latham & Watkins.  My colleague, Nathaniel Berry, is here with me.  And we represent the Carvana defendants.

THE COURT:  Good morning.

Good morning, Your Honor.  Kristina Bunting, Paul Weiss Rifkind Wharton & Garrison, on behalf of the underwriter defendants, Citigroup Global Markets and J.P. Morgan --

THE COURT:  Good morning.

MS. BUNTING:  -- Securities.

THE COURT:  Good morning.

Do we have anybody on the phone?  No?  Okay.

THE COURTROOM DEPUTY:  Yes, Judge.

THE COURT:  Oh, we do?  Okay.

Can any counsel on the phone please announce your presence.

MR. KARIYAWASAM:  Good morning, Your Honor.  Kalana Kariyawasam from Latham & Watkins on behalf of Carvana defendants.

MS. PEPLOW:  Good morning, Your Honor.  Emma Peplow and my colleague Jordyn Cho from DLA Piper on behalf of Defendant Ernest Garcia, II.

Is that everybody?

MR. DION:  Good morning, Your Honor.  Scott Dion on behalf of the plaintiffs from -- from the law firm Robbins Geller Rudman & Dowd.

THE COURT:  And anybody else?

Thank you.

Can I first ask who the individual defendants are who are the subject of the motion just so that I know specifically?

Mr. Gronborg, you could go first.

MR. GRONBORG:  Your Honor, yes.  It is -- it's all of the individual defendants.  And I assume you mean -- "individual defendants," you mean the Carvana executives.

And so I'm happy to go through.  There's a slight variation as you saw.  There's certain defendants who are defendants for the 33 Act claims, which are the claims around the stock offering.  And then the arguments, that's when we're referring to the due diligence defense.  And then there's an

overlapping, but a set of people who are defendants for the Section 10(b) claims.  That's the scheme and the statements over the entirety of the class period, which who we've, you know, generally referred to as the Exchange Act defendants in the briefs.

Do you want me to kind of --

THE COURT:  I would like to --

MR. GRONBORG:  -- read off their names?

THE COURT:  Yes.

MR. GRONBORG:  Is that what you were looking for?

THE COURT:  Yes.  I want to know who exactly are targeted by your motion.

MR. GRONBORG:  Okay.  And Mr. Word's going to help me out if I get any of them wrong.

It's Ernest Garcia, III, sometimes referred to as Ernest Garcia, Jr., is both of the claims.

Is that right?  He's on -- he's both?

It's Mark Jenkins, 34 Act only.

MR. WORD:  34 Act.

MR. GRONBORG:  34 Act only.  Stephen Palmer, Michael Maroone, Neha Parikh, Ira Platt, and Greg Sullivan.

And I believe all of those last names after Jenkins, they are 33 Act or due diligence only.

MR. WORD:  Correct.  That's correct.

THE COURT:  Okay.  All right.  Then, Mr. Gronborg, do

you want to lead us off?

MR. GRONBORG:  Yes.  Do you have a preference if I'm here or --

THE COURT:  Lectern, please.

MR. GRONBORG:  So, to a degree with the briefing, I don't -- there's not a huge amount of daylight, I think, between us and defendants given where defendants have stated their position, which is, we're just using the notion that the lawyers were retained both for the good-faith defense.  And that is a defense towards what are called the controlled person claims.  The Section 20(a) claims, there's a good-faith defense.  And then on the due diligence side.  And in the papers, there was the -- the defendants said:  All we need for those claims is to say we had lawyers.

So it's not what they did; it's not what they concluded.  And in that world, that's fine if all it is is retention of lawyers.  But then the papers also go on to talk about involvement and what the involvement of the lawyers was.  And the exhibits the defendants provided, and particularly we showed you Exhibit Number 5, are talking about what the lawyers did; what the lawyers concluded.

And so I think that's -- that's the choice that defendants have to make.  Are we just going to limit ourselves to the mere fact that we retained lawyers?

And that's all the information that the jury is going

to hear.  In this case it's Kirkland & Ellis, that they were retained as part of a process.  And that process language has to do with the good-faith defense.

THE COURT:  Doesn't -- don't the defendants answer that in their response?  Don't they essentially say that?

MR. GRONBORG:  They do essentially say that, but then they also talk about involvement.  And I think that's where -- that's where there is daylight.  It is why we did suggest in the reply that if there is an agreement on just it is only retention, it's fine.

We've been down this road before, I mean with Mr. Word, and I -- there's -- the daylight occurs when the defendants at trial are used -- are saying, well, the way we get to retention is by showing documents that are about what the lawyers are actually doing or documents that show what they did.  And there you get to the -- the part where the jury is -- is left with the unmistakable impression that the lawyers must have approved the statements at issue.  They must have approved the registration statements.

And -- and I -- I hate to sort of think of what the question -- you know, what you might ask.  I mean, the question -- I can see a question being, well, why are we here now?  You know, most of these cases are dealing with this subject right before trial.

And Mr. Word and I have both -- you know, we've dealt

with it before trial.  I think we're on probably a bit of the same page, is that the problem is when this is a motion in limine and dealing with it is the solutions become a little more draconian.  It's, well, you can waive privilege, but now I've got to give plaintiffs all the documents.  They're reopening depositions.

THE COURT:  I think we're here because you want the documents.  You want documents now.

MR. GRONBORG:  I want clarity.  So if they are making the choice that the only fact that matters is retention, and there's no other facts or arguments that come in other than retention, then I don't -- I don't have the right.  They've not waived privilege.  I -- you know, whether I want the documents or not probably isn't it.  It's whether there's been an implicit waiver.

And so I want the clarity now such that if we're going to get the documents -- if there is implicit waiver and we're going to get the documents, we get them now.  We can use them in depositions.  We don't run a risk of being on, you know, the eve of trial and then saying, here, you know, now the order is produce the documents.

And I won't speak for Mr. Word.  I think they'd probably prefer not to be on the eve of trial and have their strategy changed because of a motion in limine where, you know, a Court says you are limited to the bare fact that somebody was

retained, and they sort of plan to use documents that talked about the lawyers' involvement.

THE COURT:  Well, I could foresee either a stipulation or -- or maybe a motion in limine, if you can't get to a stipulation before trial, don't you think?

MR. GRONBORG:  It is typically -- more often than not this has been a motion in limine.  I think the reason we're here, and you saw, like, the *Musk* case recently, is I think those of us who have done these cases have just -- this issue and this defense over the last ten years, you know, we sort of call it, like, the process defense, which is it's not a waiver, but we want to talk about process, has become more common.

And so we've tried to accelerate when it gets resolved such that we don't end up in, for example, the *Broadcom*.  In that case, eve of trial the Court found waiver.  Now the plaintiffs had to go -- you know, all the documents had to be produced; thousands of documents.  Depos -- you know, the depositions were going to have to be reopened to talk about the information in those documents, what the -- what involvement meant for those lawyers with the key people.

Or the alternative -- you know, I can't speak for the defendants there, but there was *Twitter*, where, you know, eve of trial Judge Tigar said, no, you're not getting in -- you know, you're not going to get in anything that would suggest in any way to the jury that the lawyers did anything or approved

of anything.  And, again, I was -- I was on the plaintiff's side, not the defense side, but I do imagine it had some effect, given how close it was to trial, on what they were expecting to do.

So that's -- so the answer to your question is, and if you looked at the cases, it's more often than not the cases that we are citing involve motions in limine.  But I do think here other cases there's been an -- an interest in moving it forward such that on the eve of trial the choices aren't that. Because what you don't -- we don't want, I don't think the Court would want, is a week before trial, how -- whenever the motions in limine are being decided saying there's been waiver. Because it's now there's -- it would be impossible to get the documents produced, redo the depositions before trial.  So it effectively say, well, now -- now we're off trial.  And I don't think anyone wants that.

THE COURT:  I would agree.

MR. GRONBORG:  So that's where we are.  I think, like I said, what we're looking for is clarity.  Whether it's getting the documents now so we use them in deposition because there's implicit waiver, or we're getting certainty that we're not going to end up at trial and anything more than the lawyers were retained is coming in is fine.

And we put in our papers, and I should be clear, that the -- what defendants run, of course, is they get to say that

the lawyers are retained.  Plaintiffs -- so I'm not sandbagging in any way.  Plaintiffs, of course, get to argue to the jury evidence that, you know, there's no evidence -- there's nothing -- no indication the lawyers actually did or approved of anything.

So that's part of the choice.  And, you know, again, we don't want to be waiving until the end and have someone think, well, you -- you sandbagged us.  We thought the only fact coming in was retention and that you're bound as well. But that's --

THE COURT:  Okay.

MR. GRONBORG:  -- kind of -- that's the risk defendants, you know, run when they decide whether or not they want to, you know, implicitly waive the privilege and have a broader argument or not.

THE COURT:  Remind me of your position on Defense Exhibit 5, which is the email from Mr. Keeley at Kirkland & Ellis where he states, "Carvana and Kirkland &" -- he says "K&E," and we all know what that refers to -- "are signed off. Go ahead with this one.  Thanks."

So if the defendants seek to introduce this email at trial, or refer to the email or have somebody, maybe Mr. Keeley testify that -- that they sent this email, what would plaintiffs' position be?

MR. GRONBORG:  So -- so this would be, you know, if

not Exhibit 1, probably, you know, a high exhibit on a -- if we're at a motion in limine, and we would say clerically this goes -- you don't need this email to say Kirkland & Ellis was retained. You know, I mean, other than the fact they're emailing people. They are. The purpose of this would be the "signed off." That it would be impossible for a jury to see this, not come to the conclusion that, you know, at the time of the offering, Kirkland & Ellis had signed off on the registration statement.

THE COURT: Okay.

MR. GRONBORG: And that's -- so that's just -- and we would be stuck with never having been able to test what did Kirkland & Ellis do, what did they see, what were they told, what weren't they told, you know, what -- what all of it was. I'm going to trust Mr. Keeley -- you know, and I think Mr. Word would tell you. They'd never call him. I mean, sort of the point of this defense is you're never going to get to question Mr. Keeley or any lawyer. And we're not going to call them, because the minute we did, that would, of course, be waiver.

Now we're -- we're using what the -- we're having --

THE COURT: So then it would be an internal corporate rep witness who would say that they engaged Kirkland & Ellis; Kirkland & Ellis was tasked with reviewing material.

And, I guess, what did the lawyer say, that would be hearsay. I mean, we could --

MR. GRONBORG:  Right.

THE COURT:  -- we could -- we could sort through that when the time comes.  I'm just trying to work out how -- how would the defendants get that evidence in at trial?

MR. GRONBORG:  Sure.  And I don't want to --

THE COURT:  And, Mr. Word --

MR. GRONBORG:  -- steal Mr. Word's thunder about his strategy.

THE COURT:  He will get that opportunity.  Yes.

MR. GRONBORG:  What would normally happen is, yes, they would have one of the defendants or a corporate witness, and they would say:  What is the process you went through to assure that your state -- you know, that your statements complied with Carvana's process?

And then that person would say:  You know, we had the world's greatest lawyers and we had in-house lawyers and we had other experts, and we relied on them.

Now, I think in the defense, as they saw, really where the person could say is we -- we hired these lawyers.  They can't get to any of the next step:  What did they do?  What did they approve of?

Those are all -- once you do that, I believe even Mr. Word would say, yeah, now you've -- now you've moved into a different category.

The problem is is, you know, a document like this,

which, of course, doesn't say -- isn't limited to just they were retained.  And Mr. Word may well say, yeah, but this is just, you know, something that would help show that Kirkland & Ellis was involved in the due diligence process.

And even if they didn't have somebody read it, it would be impossible for a jury to get this exhibit and not come away with the conclusion that Kirkland & Ellis had signed off on something.

You know, that -- and that's -- that's the rub on all of this.  I don't think -- they're not going to ask anybody: Did Kirkland & Ellis do all the job and sign off on everything?

It's a matter of impression.  And Judge Tigar went through that a lot in his -- his opinion, which was, like I said, in *Twitter* right before trial, because defendants were really trying to thread this needle of, well, you know, it's part of the process.  We're just describing the process.  But, effectively, we can't describe the process if you don't let us sort of at least adjust what the conclusion -- you know, what the end of the process was.

And this is it.  And how are we supposed to ask witnesses what the process was without them truthfully describing to the lawyers that were involved and what -- and at least suggesting here is what the lawyers did and providing the suggestion that, of course, we never would have made a statement or signed a registration statement if the lawyers

hadn't signed off on it.

And it's that suggestion that is so problematic when plaintiffs, of course, have no evidence with which to say nobody told Kirkland & Ellis about problems with DriveTime, or Kirkland & Ellis really didn't, you know, review and approve the statements or some of the statements that were made.

Well, we don't have that evidence, so we have nothing to come back, the suggestion to the jury, that, you know, in fact, the lawyers did something.

So that's -- when I look at Exhibit 7, that's where it's highly problematic.  Even the other earlier emails -- again, none of those emails -- really none of them say we've retained Kirkland & Ellis.  You know, if there's an email in here and it just -- you know, here's an email to the board of directors that says we've retained Kirkland & Ellis for purposes of due diligence, I wouldn't have a problem with it. It's -- it's everything that moves beyond that fact.

THE COURT:  Thank you.  I understand.  You'll have an opportunity for rebuttal.

MR. GRONBORG:  Thank you.

MR. WORD:  Good morning, Your Honor.

THE COURT:  Good morning.

MR. WORD:  Christian Word, Latham & Watkins, on behalf of the Carvana defendants.

Would you like me to just dive in or --

THE COURT:  Just dive in.

MR. WORD:  Okay.  Perfect.

So what plaintiffs have done, Your Honor, is create what I like to refer to as an either/or fallacy.  They've suggested either we're limited to saying we simply hired lawyers, or you waived privilege if you say anything beyond that.  That's not the case.  That's not what the case law suggests, Your Honor.  So I'll go through that, but I do want to start by noting something important.

So plaintiffs' initial position was that the Carvana defendants couldn't refer to Kirkland & Ellis at all.  Any mention of lawyers was provocant.  Couldn't do it.  Too prejudicial for the jury to hear.

Now they've conceded the jury's going to hear something.  They will be able to hear that Kirkland & Ellis was involved.  They'd been hired by the company, the board of directors, to participate in this process.

So now the question really is not whether the jury's going to hear about Kirkland & Ellis, but just how much.  So it's a line-drawing exercise.

Now plaintiffs' position, as you just heard, was that we can't go anywhere beyond merely noting that they were engaged.  That's, again, not what the case law says.  In order to have an implicit waiver, the Ninth Circuit says you have to inject privileged material into the proceeding.

UNITED STATES DISTRICT COURT

There's no dispute.  We're not relying on any privileged communications.  The Carvana defendants will not introduce a single communication that actually discloses attorney-client communications.  What we will do, however, is intro- -- or intend to do is introduce evidence showing that through the due diligence process or the normal corporate processes, by which Carvana and the board of directors approve and file documents with the SEC, lawyers are involved.  Just going to start to talk about their involvement.  Again, purely non-privileged information that can be disclosed to the jury.

Our position is that the case law allows that because we're not putting at issue the performance of those lawyers.  We're not saying they did an A-plus job.  We're not saying we have the best lawyers in the world.  We're just saying lawyers were involved, along with a whole host of other folks.

Can you imagine if the director and officers asked, you know, what is your process for filing a 10-K with the SEC?

Well, they could start with, hey, we've got our accountants.  We look at it internally.  We have our external accountants.  We have our finance team.  We have our management team.  We go through subcertification.  We have outside lawyers look at it as well, as well as our in-house lawyers.

That's what they would say.  Not going to put in anything privileged or details about it.  They're merely noting that the lawyers are involved in that process.  Because that's

a crucial part of the story, as the cases have recognized, Your Honor.  And the three -- I mean, there's a -- and Mr. Gronborg recognized there's a number of cases, Your Honor, that have addressed this at the motion in limine stage.  And so you don't always get fulsome discussions of all the considerations that go into that decision.

But in the three key cases that have looked at this precise issue and this precise construct, the *Zymergen* case, *First Solar*, and *Chesapeake*, they've all come out our way. Each of those cases recognize that you're not limited to just disclosing engagement, but you can't go so far as to put the lawyers' performance at issues.  For example, in *Zymergen*, Your Honor -- I have to get my glasses to read this -- the Court says:  "There's no automatic implied waiver from asserting the due diligence defense where the assertion privilege is narrowly drawn to protect only communications of legal advice as distinguished from the counsel's non-privileged participation in the due diligence process."

"Participation."  That's the key word.  That's what we want to show.  They were participating.  They're not going to say anything else about it.

*First Solar's* the same.  They say the defendants may present -- and this is Judge Campbell.  "The defense may present evidence that counsel reviewed corporate disclosures and stock" -- "stock sale plans or attended meetings, but they

may not present evidence that counsel approved the disclosures or plans or the defense relied on what the lawyers said."

We're -- we're doing the former.  We're saying the lawyers were involved, but that's it.  We're not saying the lawyers said all the statements were true.  We're not saying we relied upon the lawyers' advice and signed the registration statement.  We're simply saying lawyers were involved.

And *Chesapeake*, Your Honor, is much the same.  Reaches the same conclusion.

I did also want to note the *Melendrez* decision from this district says the same thing, that, in general, disclosing that legal counsel was consulted, the subject about which advice were received, or that action was taken based upon that advice does not necessarily waive the privilege protect -- protection.

Again, we're not going quite that far.  We only want to be able to note and disclose to the jury the fulsome process that happens when you prepare a registration statement or SEC filing, and that lawyers are necessarily involved in that legal process in order to fulfill their fiduciary duties.  And why that's so important or why that sort of is special in these cases, Your Honor, is the two statutory defenses we have have a process element.  It's not like scienter or -- or a defense that requires you to demonstrate that you subjectively believe something.  In these specific cases, with the due diligence

defense which focuses on a reasonable investigation and the good-faith defense, which focuses on a process, the subjective process -- or the objective process is what matters.  You can go straight to the Ninth Circuit's model jury instruction for the good-faith defense.  It says:  "The defendant can prove good faith only by establishing that he/she maintained or enforced a reasonable and proper system of supervision and internal control."

There's nothing about saying what lawyers told you or what your lawyers did.  It's merely being able to prove to the jury that you put in place that system.

Now, Your Honor, I would submit that if you leave out the lawyers and you just didn't mention what they say and you say, hey, we engaged lawyers, but we're not going to tell you what they did, it sort of leaves open the question.  The jury's left to guess what were the lawyers here doing.

I don't think it takes a jury of much financial acumen to assume that if you're filing documents with the SEC or you're selling securities to public investors, you better have lawyers involved.  They better be a part of the process.  And that's what courts have allowed, is that you can disclose that part of the process as long as you're careful to not go too far, not to cross that line.

And that's where Mr. Gronborg's statement to the Court, I think, blurs that line.  He said -- and I might get

this wrong.  I apologize.  But you said that what we can't say is what the lawyers did or what they approved.

Now, I think that's the line.  We can say what the lawyers did.  They were involved.  They attended meetings. They were involved in the drafting process.  We can't say they looked at these particular statements, they told us those statements were true and correct, and we relied on those statements.  That's where you get too far.

And if there's any concern about maybe the jury's going to make that leap on their own, well, that's where the limiting instruction comes in, Your Honor.  And you could tell the jurors that, hey, Carvana defendants have not waived their attorney-client privilege.  They've not disclosed, and plaintiffs' not been able to test, what the lawyers said.  So you should not assume as a jury that the lawyers blessed or passed on these statements.

And that's really what's the difference between those three cases that I referred to, Your Honor, and the plaintiffs' cases.  Each of the plaintiffs' cases, what's happening is the defendants went too far.  They put at issue what the lawyers were doing, or they were answering a different question different than the Ninth Circuit.

For example, Your Honor -- I'll pull these up.  In *Broadcom*, the first of the cases, Your Honor, the sort of led this discussion in the Ninth Circuit, it talks about how the

defendants wanted to go too far and talk about how good their lawyers were and what all their lawyers were doing. And the Court said that's too far. You've gone too far. You've put at issue the performance of the lawyers.

I agree. If you go that far, you've stepped into the ground of implied waiver.

*Twitter*, same thing. We've looked at those issues and said, look, we're talking about scienter, state of mind. If you want to rely upon your lawyers to prove you did not have a certain state of mind, not process but state of mind, you're putting at issue what the lawyers told you.

We're not doing that. We're narrowly cabined inside two statutorily provided affirmative defenses that do not have that sort of subjective component. Or they do have that subjective component. It's a separate component, as the *Zymergen* case recognized.

And the same thing with *Valeant* and *Musk*, Your Honor. In both of those cases, they were considering something different. The law there with respect to a good-faith defense is somewhat different. There you do have to demonstrate a subjective belief. They don't have the process component the Ninth Circuit included in its final instruction. So, yeah, there the Court said this defense requires you -- if you want to assert this defense and you're going to mention lawyers, you have to waive the privilege because you're -- you have to prove

the subjective intent and your subjective reliance on your lawyers.

We don't have to do that in the Ninth Circuit, and that's not what our law provides. So for those reasons, that's why we think we can draw the line appropriately. And if there are particular documents that cross the line, Your Honor, we can deal with that in motions in limine or Rule 403 at trial.

And looking at specifically at the exhibit as cited by the plaintiffs where it says Carvana and K&E are signed off, go ahead with this one, right, we can quibble over what that means. I don't think that says that the lawyers are saying all the statements are true and correct and comply with the U.S. securities laws and the directors can rely on that. It's just saying, yeah, you can go ahead and proceed; right? Non -- not a confidential fact. Not privileged information. It's just a communication.

I would note as well, Your Honor, this document actually is referring to the registration statement at issue in this case. It's a separate offering memorandum. Once again, just shows lawyers being involved in the internal processes. With respect to our actual registration statement that's at issue in this case, that's not what's being discussed here. So it doesn't really disclose what the lawyers are doing with respect to our registration statement. Again, it just goes to process.

THE COURT: Okay. And you're welcome to respond to the colloquy I had with Mr. Gronborg about how -- how the -- the defendants might seek to offer this kind of information. If you don't want to, you don't have.

MR. WORD: No. I'm happy to, Your Honor. The -- nothing to hide here about this.

So you can imagine that at a deposition the plaintiffs might ask who participated in preparing the registration statement. Directors would say management, in-house counsel, external counsel, things like that. That's one way the information comes up. So now it says the directors have, then, said the lawyers were involved in that process. That's one way it could come up.

How they would use that the other way, Your Honor, did -- who attended board meetings at which the registration statement was approved or which a 10-K was approved?

Well, it was, again, in-house people, in-house counsel, outside counsel. Again, not difficult disclosing anything at all about what they said or did, just that they were there. They were part of the process.

Then the way that typically -- and at trial -- well, hesitant to speculate, Your Honor, because we haven't deposed any of the directors yet, so we don't know exactly what they'll say. My expectation is that they would say, and say on the stand, they would describe that process; who all was involved,

say what was happening, how you go about them -- how the directors go about making sure that Carvana had a system in place that provided them assurance that the statements they were issuing were true and correct.  Again, not mentioning attorney-client advice.

The added component of that, Your Honor, is because the good-faith defense and the due diligence defense have a reasonableness component, essentially that can pose a negligence standard.  And so you have to introduce evidence of the standard of care.  And so we would have a corporate governance expert discuss and provide evidence to the jury saying a director has to do X, Y, and Z in order to fulfill their fiduciary duties and create a system of reliable controls.  And, in my experience, here's how directors do that: They hire outside experts.  They have a robust system inside the company.  They have controls networks.

So all those sorts of details.  That expert will include and will testify to that, and that expert will surely point to the fact that almost in every situation a public company issuing securities or making a filing with the SEC involves lawyers.  And that expert would also rely upon then the non-privileged communications to establish that that's what the Carvana did -- defendants did here.  They had hired lawyers.  Those lawyers participated in a way that's customary and ordinary and consistent with what he or she believes is the

standard of care for which the jury can then decide did the directors' level of conduct reach that -- that standard such that they prove their defense.

THE COURT:  Thank you.

MS. BUNTING:  Your Honor, this is Kristina Bunting for the underwriter defendants.  Would you mind if I spoke briefly?

THE COURT:  I don't think that's necessary.

MS. BUNTING:  Okay.

THE COURT::  I've read your brief.

MS. BUNTING:  Okay.

THE COURT:  Thank you.

MS. BUNTING:  Thank you.

MR. GRONBORG:  Thank you, Your Honor.  I think there's two main points I'd like to make.

And, as I said, there's not a huge amount of daylight between, but it -- but it's critically important, sort of the light that is seeping through.

And so Mr. Word, again, consistent, I believe, with his brief, at one point sort of says, look, it's the retention of these lawyers.  It's not what they do.  It's not conclusion. It's retention.  But then he goes on to say, well, we sort of have this right to describe how the -- how fulsome the process was that happened.  You know, it was the words he used in there.  And that's the rub here.  It's -- it's the what happened.  And they can't get in evidence of what happened

without providing plaintiffs the opportunity to test what actually happened.  And the only way to give plaintiffs the opportunity to actually test what happened in any process is through the documents that are currently then withheld.

And this -- this is why all the cases cited are important.  Mr. Word was suggesting that *Twitter* was different or *SeaWorld* was different because the defendants there went too far.  I can tell you I argued the *Twitter* case and I was in the courtroom for the *SeaWorld* case when it was argued, and the defense lawyers there said the exact same thing when they were trying to discuss earlier cases.  So everyone says no, no, no, no, they just wanted to go too far.

And the issue here is too far really is anything past retention.  And there we've been consistent in our -- in our briefing.  But it's the moment you move past the retention.  And this word "involvement" is why it's sort of -- it's a tough word to use here, because involvement can be just retention involving -- you know, if you're plaintiffs' world, sure, you can say "involvement," which is they were retained.  And then defendants have this, no, it's a little amorphous because we're -- we are going to talk about what they did as part of process.

And that's why -- as I said, I think if you look at the brief, you listen to the argument here, there are two -- there's almost, like, two separate arguments.  And defendants

are saying, no, what we -- plaintiffs are right.  Just what we need is that they were retained, that a process was in place that a director could just say we had a process and Kirkland & Ellis was part of that process.  And in deposition, presumably if I asked other questions, I'd get an objection that they were privileged.  But in terms of the exhibits and how they want to argue, it goes beyond that and said, no, we should be allowed to use -- talk about the lawyers and how fulsome a process was that happened.  And so that really becomes the tension.

I will say with respect to the -- the cases, I do know counsel put a lot of effort -- reliance on *Zymergen*.  There's two *Zymergen* cases.  In the first one -- they're both the magistrate judge.  And in the first one, the holding was if due diligence defense is supported by counsel's participation in the investigation, not just retained, but we want to say that they participated, then there was a waiver of all the documents about that participation.

The second *Zymergen* case gets to sort of the second bigger issue, which is do you have to introduce an actual communication or advise of a lawyer to have implicit waiver of the privilege.

The Ninth Circuit is very clear that you do not need to rely on or cite to a communication some specific advice as long as you've made it unfair for the other side.  As long as you're using the privilege where you want to talk about a

fulsome process but you're not letting the other side delve into what that process was, that's the implicit waiver.  And where -- the reason why the Court shouldn't follow the *Chesapeake* case, and where *Zymergen*, frankly, went wrong is because the Tenth Circuit, which that case is out of, has a different standard for what waiver.  And the Tenth Circuit is much closer to a you're relying on a communication.  Ninth Circuit is very clear that that's not what the standard is.

And so all of it, again, is we are talking about this narrow line, but we think it's important to draw that line.  And we do think it's important to draw it, not wait until an MIL or an instruction, because we do just run this risk of the only choices being I'm drawing a line somewhere where someone's unhappy about how they argue a case or we're having waiver.

And so that's why we're -- we're really looking for it.  I don't think -- I'm not hear arguing saying you should just find waiver, because I think defendants have vacillated between all we need to do is say we retained somebody, which we're fine with.  And we want to talk about the process was fulsome.  We want to use documents that suggest somebody did approve of something, you know, be it a registration statement, something else, where it just becomes hard to unring that bell with the jury.

And, frankly, a -- you know, the instruction, which I'll appreciate and I'll be fighting to see where we are, but

the instruction almost reinforces. You know, an instruction that says, well, you've heard a lot about the lawyers, but don't assume one way or the -- another what the lawyers did is -- is hard. It's hard for a jury not to sort of come away from that being, like, well, they must -- you know, they must have done something as opposed to we're just part of a process.

THE COURT: Your motion doesn't seek any relief against the underwriter defendants; correct?

MR. GRONBORG: Correct.

THE COURT: Okay. All right. Thank you.

MR. GRONBORG: All right. Thank you.

I will deem the matter submitted. I -- I plan on having an order prepared and docketed very soon, certainly the early part of this week, because I understand where -- where we are on the timeline, and I don't want to delay anything. Okay?

Are there any other matters that we should discuss while everybody's here?

MR. GRONBORG: None from plaintiffs.

MR. WORD: None, Your Honor.

THE COURT: Okay.

MS. BUNTING: None, Your Honor.

THE COURT: Okay. Thank you all. Safe travels --

MR. WORD: Yep.

THE COURT: -- back home.

MR. WORD: Thanks for the time.

THE COURT:  Court is adjourned.

(Proceedings conclude at 11:10 a.m.)

---oOo---

UNITED STATES DISTRICT COURT

**C E R T I F I C A T E**

I, CATHY J. TAYLOR, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED at Phoenix, Arizona, this 23rd day of February, 2026.

*/s/ Cathy J. Taylor*
Cathy J. Taylor, RMR, CRR, CRC

UNITED STATES DISTRICT COURT