UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | |
|---|---|
| **United Association National Pension Fund, et al.,** ) | No. 2:22-cv-02126-MTL |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Phoenix, Arizona |
| ) | February 26, 2026 |
| **Carvana Company, et al.,** ) | 4:49 p.m. |
| ) | |
| Defendants. ) | |
| _____ ) | |

**BEFORE:   THE HONORABLE JOHN Z. BOYLE, MAGISTRATE JUDGE**

**TRANSCRIPT OF PROCEEDINGS**

**EMERGENCY HEARING RE:**

**CLARIFICATION NEEDED FOR DEPOSITIONS**

Transcriptionist:
**Kimberly Portik**
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 31
Phoenix, Arizona 85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

UNITED STATES DISTRICT COURT

**A P P E A R A N C E S (Telephonic)**

For the Plaintiffs:
     Robbins Geller Rudman & Dowd, LLP
     By:  **Daniel S. Drosman, Esq.**
     655 West Broadway, Suite 1900
     San Diego, California  92101

     Robbins Geller Rudman & Dowd, LLP
     By:  **Matthew Andrews, Esq.**
     420 Lexington Avenue, Suite 1832
     New York, New York  10170


For the Defendant Carvana:
     Latham & Watkins
     By:  **Andrew B. Clubok, Esq.**
          **William Tazewell Jones, Esq.**
     555 Eleventh Street NW, Suite 1000
     Washington, D.C.  20004-2200

     Fennemore Craig
     By:  **Andrea L. Marconi, Esq.**
     2394 East Camelback Road, Suite 600
     Phoenix, Arizona  85016


For the Defendant Ernest Garcia, II:
     DLA Piper, LLP
     By: **Yan Grinblat, Esq.**
     444 West Lake Street, Suite 900
     Chicago, Illinois  60606-0089


For the Witness:
     Law Offices of Joseph McMullen
     By:  **Joseph McMullen, Esq.**
     501 West Broadway
     San Diego, California  92101

**P R O C E E D I N G S**

THE COURTROOM DEPUTY:  Court is now in session.  The Honorable John Z. Boyle is now presiding.

This is Civil Case No. 22-2126, United Association National Pension Fund versus Carvana before the Court for an in-court hearing.

Will the parties please announce for the record, starting with the plaintiffs.

MR. DROSMAN:  Good afternoon, Your Honor.  Daniel Drosman and Matthew Andrews on behalf of Plaintiffs.

THE COURT:  Afternoon.

MR. CLUBOK:  Good -- good afternoon, Your Honor.  It's Andrew Clubok and Taz Jones from Latham & Watkins on behalf of Carvana.

MS. MARCONI:  And also Andrea Marconi from Fennemore Craig on behalf of Carvana.

MR. GRINBLAT:  And Yan Grinblat with DLA Piper on behalf of Ernest Garcia, II.

MR. McMULLEN:  Good afternoon, Your Honor.  This is Joseph McMullen.  I represent the third-party witness that is being deposed right now.

THE COURT:  Okay.  Good afternoon, everyone.

Who is in the best position to frame the question?  Is that you, Mr. McMullen?

MR. McMULLEN:  No, Your Honor.

THE COURT: Okay.

MR. DROSMAN: I think maybe Plaintiffs' counsel is going to take a stab at it. I'm going to let my colleague, Matthew Andrews, argue this.

THE COURT: Sounds good.

MR. ANDREWS: Yes. Thank you, Your Honor.

So we're in (unintelligible) in deposition of a witness Joe Terrie (phonetic), and -- sorry, not --

MR. DROSMAN: Terell Kluting (phonetic).

MR. ANDREWS: Sorry?

MR. DROSMAN: Terell Kluting's deposition.

MR. ANDREWS: Terell Kluting. My apologies.

And we are asking about communications between the defense counsel and the witness post filing of the complaint as we are allowed to under the Court's prior order at ECF 192, which the first -- it says, and I'll quote, Defendants shall not question any confidential witness, whether at deposition or otherwise, about his or her participation in Plaintiffs' prefiling investigation, including the manner, date, frequency or substance of the witnesses' contacts with Plaintiffs' counsel or anyone working at Plaintiffs' direction, end quote.

The order explicitly allows for the plaintiffs to ask for the communications between the defendants and the witness. And this has been fully litigated before the Court.

But Defendants at this time assert that their

communications with the witness are, A, not allowed to be asked about pursuant to the order, and, B, that is their work product that we cannot ask about.

THE COURT: Okay. Hold on. Let me grab my 192 --

MR. ANDREWS: Yep.

THE COURT: -- order. I need to print it out. If we're going to refer to it, I -- I need to review it. I can hear from you and I may have some more questions. So let me just hear from -- so I get a sense of the context, and then I do want to look at the order. And it is help for me to have that, and I don't have it yet.

Who wants to address this from Defendants?

MR. CLUBOK: Your Honor, this is Andrew Clubok from Latham. Thank you.

And I do think it's important for you to see the order because I think Counsel misspoke. When they said -- you were just told that the order explicitly allows Plaintiffs to ask these questions. That's just not true. Okay? And you can read your order for yourself; it doesn't matter how I characterize it or my colleague on the other side characterizes it.

The fact is that Your Honor issued an order in response to a claim of work product where the plaintiffs spoke with a number of ex-employees from Carvana before they filed this lawsuit, and they purported to quote from them in the

complaint, calling them Confidential Witness 1, 2, 3, 4, et cetera.  They claimed -- they argued that all those discussions they had with these potential witnesses was work product, and they convinced Your Honor to enter into an order that explicitly prohibits us, Defendants, from questioning these witnesses about the -- their participation in Plaintiffs', quote, prefiling investigation, including the substance of the discussions.  Okay?  And so they invoked work product, and they said that means, you know, when the lawyers talk to this potential witness we're not allowed to inquire about it.

It doesn't, though, explicitly say that they're allowed to ask about our investigation, regardless of whether it's pre or post filing.  It's silent on that.  And so when they started asking about our counsel's questions, we simply said, look, that -- you know, that wasn't addressed in this Court's order.  It certainly is not explicitly permitted as Counsel suggested.  It's just that issue hadn't come up.  But under the theory of work product you urged on the Court and you won on, that would apply equally, it has to we would think, to both sides.

And so that's our position, number one, is that it's got to be sauce for the goose -- the sauce-for-the-goose rule, a famous federal rule of civil procedure, and so we think that applies.

Also, not for nothing, there -- there were many questions, maybe dozens probably, most of what the plaintiffs did in their examination was they asked questions where they would go through the declaration and they would say is this sentence accurately -- that we have put into this -- into this complaint accurately ascribed to you, i.e. did you -- you know, basically did you tell us this during the investigation.

We think that constitutes waiver of work product.  It can't be sword and shield that you're allowed to refer to what you claim the discussions were and then -- and then through leading questions just have the witness agree to most of what was said in the complaint without us having the right to cross-examine.

So we think there's two issues here, one that this witness -- you know, if the work product rule applies, it's got to apply equally to both sides.  But, two, also it should be subject to waiver, and we think there has been a waiver by the questions that -- I should say they put it at issue.  They put at issue the prefiling discussions by trying to get this witness to say, oh, yes, that's exactly what I said prefiling in so many words.  So that's why we thought we should just call Your Honor for clarification.

MR. ANDREWS:  Judge, I was -- I'm a little (indiscernible).  This is Matt Andrews from Robbins Geller again.

This entire --

THE COURT:  Whoa, whoa.

MR. ANDREWS:  -- second issue --

THE COURT:  Whoa, whoa.  Hold on.  Hold on.

MR. ANDREWS:  -- that counsel just raised --

THE COURT:  Hold on.  Everyone is --

MR. ANDREWS:  Yes.

THE COURT:  -- speaking quickly now.  And I will listen to you, but I -- I want to know first -- Document 192, there was a reference to that.  I now have it in front of me. I just want to make sure I look at my order.  And then I want to start back, and I want to make sure who this witness is.

Appreciate your points.  You're coming at me cold. I'm getting half of it, and I want to get a hundred percent of it before, you know, I make a decision.  So I know you want to jump in.  Just hold your spot.  Everyone will get enough time. We'll do this quickly.

Document 192, what was the reference of my order that we're -- that is being discussed now?

MR. CLUBOK:  So your order at the end, on page -- I mean, the order part is 6 and 7.

THE COURT:  Okay.

MR. CLUBOK:  But most importantly, on Page 7, and this is the issue, you ordered that Defendants shall not question any confidential witness, whether at deposition or otherwise,

about his or her participation in Plaintiffs' prefiling investigation, including the manner, date, frequency or substance of the witnesses' contacts with Plaintiffs' counsel or anyone working at Plaintiffs' counsel direction.

And the issue is that the plaintiffs' lawyers have taken the position that this explicitly said the opposite, explicitly somehow blesses their questioning on the same subject.  And our position is that just wasn't addressed.  But now that they're trying to do it, we would invoke the same work product protection that they've invoked, and we should -- and we say the rule has to be the same for both regardless of whether it's pre or post filing, regardless of whether it's plaintiffs or defendants.  That's the fundamental position that we took -- or that we've taken that's led to this call.

And then there's this second issue of putting it at issue that I think Mr. Andrews was about to -- to reply to.

But that's the fundamental issue here.

THE COURT:  Okay.

MR. CLUBOK:  And then --

THE COURT:  Hold on.  If you're -- if you're changing speakers, I need to know --

MR. CLUBOK:  Oh, yes.

THE COURT:  -- whose speaking, first of all.

So is someone else speaking?

MR. CLUBOK:  Oh, I'm sorry.  And this was Andrew

Clubok on behalf of Carvana.

THE COURT:  Right.  Go ahead.

MR. CLUBOK:  Yeah.  So this -- that was -- that was my recitation on behalf of Carvana.  Andrew Clubok.

THE COURT:  Right.

I want to be clear too.  Who is the witness that we're talking about, or is this prospective for a number of witnesses?

MR. CLUBOK:  It's -- right now it is a witness named Mr. Terell Kluting, K-l-u-t-i-n-g.  He's identified in the complaint as Confidential Witness No. 9.

We -- this issue can -- and I think he may be the first confidential witness that's being deposed.  Okay?  So -- so this issue hasn't -- you know, we haven't had this issue, but presumably it will apply in the other confidential witness depositions, and so we thought it best to try to catch you.

We can also do briefing on this if it's better to do this kind of thing not on the fly.  But we did want to, you know, flag this issue before things went further so we didn't get accused of waiving, you know, by not letting -- not raising the issue.

MR. DROSMAN:  And, Your Honor, this is Daniel Drosman.

The other reason we wanted to flag this issue is because this is our one and only opportunity to examine the witness on his conversations, post-filing conversations,

conversations that occurred about two months ago with defense counsel.  And so if we don't receive a ruling from Your Honor during this deposition, we'll be deprived of that opportunity, assuming that Your Honor agrees with us that we're permitted to do that.

THE COURT:  Okay.  I have a better sense of this now.  You are feel --

MR. DROSMAN:  And --

THE COURT:  Hold on.  You're free to repeat yourselves.  But, you know, having a context of what the issue is, looking at the order, now I do want to hear again about one -- a one-paragraph summary just so I missed anything.

Mr. Andrews, I'm going to start back with you.  Give me your best argument again regarding your position.  Go ahead.

MR. ANDREWS:  Yes.  So the parties have previously briefed and argued over whether the plaintiffs' prior communications, prefiling communications, with the CWs were work product and whether that work product has been waived.  And the Court said that the plaintiffs' communications were work product and that they had not been waived; that these were communications that were made in anticipation of litigation that reflected the plaintiffs' specific mental processes and strategies in preparing for that litigation.

There is nothing within that order that ever contemplated the idea that the defendants would be able to

similarly have a work product protection because the defendants are not situated in the same way as they are as plaintiffs in that a work product protection contemplates that work product is waived when it is shared with somebody who could be a conduit for a potential litigation adversary.

And here it is quite clear that the -- when the defendants speak with a CW, the CW is a conduit for a potential litigation adversary because they have already spoken with Plaintiffs' counsel.  That was the creation of the complaint.

And all -- the waiver issue was previously briefed before with the Court, and the Court, on hearing the parties' arguments, made its order on Page 7, which only applies to the defendants and says the defendants shall not question any confidential witness, whether at deposition or otherwise, about his or her participation in Plaintiffs' prefiling investigation, including the manner, date, frequency or substance of the witnesses' contacts with Plaintiffs' counsel or anyone working at Plaintiffs' counsel direction.

And to be clear, Your Honor, you were contemplating what types of communications would be allowed to be asked about post filing because the rest of this order in the prior page to simply set forth the questions that the parties were required to ask a witness first, before being able to communicate with them.  So this was very much on Your Honor's mind just about what is fair game and what is not fair game post filing and

ultimately decided that the restriction would be on the commun- -- any -- the defendants asking for any communications between the plaintiffs and the CWs prefiling.

THE COURT:  Okay.  Mr. Jones, I'm going to come back to you, then.  I think --

Well, who wants to address this stance from the defense?  And you can repeat again.

MR. CLUBOK:  Sure, Your Honor.  This is Andrew Clubok from Latham & Watkins.

THE COURT:  Got it.

MR. CLUBOK:  Notably, Mr. Andrews, in his first argument to you, said that your order explicitly permitted this questioning.  Now he's changed it to the order contemplates this questioning.  I say neither are true.  Okay?

Your order was -- was provided in the context of Plaintiffs claiming work product protections over discussions they had.  And on Page 6, sort of generically you say communications between CWs and counsel or their agents are protected to the extent they reflect or contain counsels' thoughts, impressions, opinions, ideas, or anything that could be said to convey any aspect of counsel's litigation strategy.

Then in the specifics -- because in the context of what was before you was whether we could at these depositions or informally ask them about the substance of their discussions with Plaintiffs' counsel.  And Your Honor said, no, that work

product prevents us from doing it.

Your Honor did lay out some very specific guidelines for what we affirmatively have to say, and we have no problem with Plaintiffs' counsel confirming that that sort of mini *Miranda* or, you know, *Miranda* lite or whatever you want to call it was provided, which they did and it was.

And so your order is silent, though, on whether work product also applies to our communications with potential witnesses because it wasn't before Your Honor and it wasn't addressed as to what we're allowed to say or not.

And by the way, the plaintiffs are now saying, oh, you know, all so-called confidential witnesses should be -- or at least this one should be seen as a, quote -- as a conduit with potential litigation adversaries.  I mean, many of these people that they -- in many cases what happens is the people who are cited as so-called confidential witnesses are ex-employees who were called by -- by lawyers for one side or the other.  Those ex-employees of Carvana, many of them may want to testify on behalf of Carvana.  Many of them may not want to be associated with the plaintiffs, may -- some of them may not have known their -- their answers were going to be used in the complaint, or they may not have realized that they were being misused. And this witness already testified to a number of things that are inaccurate about the way his statements were articulated in the complaint.

So, you know, it -- it -- it's either -- our position is simply there should at least at a minimum be a categorical rule on both sides that neither side can inquire about these kinds of litigation-related conversations with potential witnesses whether it's pre or post filing.  That doesn't seem to be a distinction that any case I'm aware of recognizes.

But also that if, you know -- if one side or the other does waive it, and in this case we think that because they tried to get this -- or they did get this witness to affirm many of the things that supposedly this witness said to them in their prefiling investigation, that should also, by the way, now open the door to us being able to inquire further.

I just -- it just feels like in both ways they're trying to have their cake and eat it too.  They want to say that their conversations are protected work product; ours aren't.  They want to say that they're allowed to ask these witnesses about the prefiling discussions to, quote, confirm whether or not what's in the complaint is -- was accurately said, but we're not allowed to cross-examine on that.  I mean, both of those just have to and should be wrong, and neither of those issues were presented to Your Honor when you made this, you know, order that applies as a starting point but hopefully not as an ending point.

THE COURT:  Got it.  Oh, I understand.

I'm -- hopefully I don't have to address the waiver

issue on the consistent application of the work product issue.

Let me see if there's anyone else from the defense side who wants to speak before I turn back to Mr. Andrews. Anyone else on the defense side?

Okay.

MALE SPEAKER:  Your Honor, we think you ought to (indiscernible) --

THE COURT:  Oh, go ahead.

MALE SPEAKER:  -- (indiscernible) with the basic information that Mr. Clubok (indiscernible) --

THE COURT:  Hold on.  I can't hear you.  Either you have -- you are on speaker phone or it's too low.  Can you speak up, please?

MALE SPEAKER:  All right.  Your Honor, I apologize.  I am on speaker phone on a -- we echo the position of Mr. Clubok and have nothing further to add.

THE COURT:  Great.  I heard that clearly.  Thank you.

All right.  Turning to Mr. Andrews, tell me why I shouldn't enforce the -- it does make sense to me, an equal application of the work product rule on this case.  And I don't think the pre or post filing matters either.  I was silent as to it in 192.

Give me your best argument as to why, even though I was silent before, I shouldn't have a consistent application for both parties.  Mr. Andrews.

MR. ANDREWS:  Judge, then it would -- if you do find that the communications are work product, then the standard is whether the statements from counsel were communicated to a potential litigation adversary.  That's the standard for waiver of work product protections.  And it is abundantly clear in this case that these CWs have spoken with Plaintiffs' counsel before; that is why they are in the complaint to begin with.  But it's also the reason why courts in the past, including the specific court cited within the decision from the Middle District of Tennessee -- and that's on Page 4, Your Honor, that's *Grae versus Corr. of Am*, 326 F.R.D. 482.  That's the reason why that court as well found that communications between plaintiffs and the CWs are not waived even though those also are work product, because it depends on the relationship of the CW with the attorney that's speaking with them.

The defense's relationship is obviously very different given that the CW has served as a conduit for Plaintiffs' counsel before, and they spoke with us to begin with.  So even though the work product exception might apply, the application of waiver is very different between the two parties.

And as well, I want to just clarify, Your Honor, in response to the defendants' argument that somehow Plaintiffs have waived the application of this order, the plaintiffs asked the witness whether the statements in the complaint were accurate or inaccurate.  We did not ask did the statement --

what did you tell the plaintiffs.  We asked whether the statement was accurately or inaccurately attributed to you. That is very different from saying what did you tell Plaintiffs' counsel.

And to be clear, the defense did not make this argument or assertion at the time of the question nor did they raise it with us during our meet-and-confer prior to the call. The first time defense raised this argument that we have waived by asking those questions is when we got on the call with you, which I believe is contrary to Your Honor's rules governing how -- when and how we should bring disputes to your attention to begin with.

But we have never at any time asked the witness what did you tell us about the complaint.

MR. CLUBOK:  Your Honor, may I respond to that?

THE COURT:  Well, let me tell you what I'm thinking. I don't want to keep you in the middle of your deposition too long, and I right now am persuaded to enforce my prior order and make it consistent on the work product rule for all of you certainly for this witness.

Here's the reason for that.  Number one, I'm trying to protect the status quo, and I think this might be an issue, especially waiver on drafting the complaint and whether this CW is different than others -- you know, this is CI No. 9, but are they all the same?  Are we having the same issue for all of

them?  And I don't want you to read my order as applying to everyone ahead of time with, you know, on the spur-of-the-moment, ten-minute briefing and having this rule. Secondly, if there is a change, you know, you can have a telephonic deposition of this person and go down this road, and I can reopen for time.

But let me tell you that's how I am trending right now.  I generally believe in an equal application, of course, in the work product rule.  And this waiver issue is a little more complicated than I want to get into at 5:15 on this Thursday afternoon with five minutes' notice.

So, Mr. Andrews, let me tell you if I then am not ruling in your favor on this issue, do you want to address this with a little bit more time for me to review it, briefing on the other CWs, and give you a more robust order, which I typically do?

MR. ANDREWS:  Judge, I think we -- we'd want to confer both internally and with counsel before we make any decisions about how to proceed.

But it sounds like from what you're saying is whatever the rule is it should apply equally both to the plaintiff and the defense.  Is that correct?

THE COURT:  Correct.  And that will limit you --

MR. ANDREWS:  Okay.

THE COURT:  That will limit you for today.

If you want to revisit this on a broader scale, I'm glad to do it. And in all fairness, I think, you know, a little more robust preparation by everyone will be helpful if this is a larger issue for the case.

Let me turn -- Mr. Clubok, are you in any reason objecting to this approach and order from the Court?

MR. CLUBOK: I think that makes perfect sense. And I think what we can do is hopefully finish -- we were not that far, I think, from finishing the deposition, and we were on our way to finishing it early actually. So we'll try to do that, but we'll reserve -- on the extent that Your Honor does rule differently on waiver and maybe follow up with a short telephonic deposition if need be, if that's okay with Mr. McDonald.

MR. McMULLEN: Yeah. This is -- this is Mr. McMullen.

MR. CLUBOK: So I'm so sorry. I'm so sorry. I -- Mr. McMullen. I'm sorry.

MR. McMULLEN: Don't worry about it. Appreciate it.

If there's any additional testimony that my client can either provide or (indiscernible), we'll do that telephonically.

THE COURT: That's fine.

Mr. Andrews, I think that should clarify at least for today how you can go forward. And like I said, I'm available, as I was now, to do this promptly. And I think this -- at this

point I don't -- I'm making this ruling about waiver without prejudice. I just don't -- there are a lot of waiver issues here, and waiver is a little more complicated in my mind on this witness and others, that if you want to be heard more I'll be glad to hear from you.

Mr. Andrews, anything else you want to address --

MALE SPEAKER: Perfect.

THE COURT: -- today or any questions for me?

MR. ANDREWS: Nothing from Plaintiffs, Your Honor. Thank you very much.

THE COURT: Okay. As I said, I'm available. I'm --

MALE SPEAKER: Thank you very much, Your Honor. This is --

THE COURT: -- available throughout the month.

MALE SPEAKER: -- super helpful. We really appreciate it.

THE COURT: You're welcome.

I wish I could give you a more robust answer, as I said, but that's where I stand right now. Thank you all for calling in, and have a good evening. We are adjourned.

MALE SPEAKER: Thanks.

(Proceedings conclude at 5:15 p.m.)

---oOo---

22

**C E R T I F I C A T E**

I, KIMBERLY PORTIK, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

DATED at Phoenix, Arizona, this 27th day of February, 2026.


/s/ Kimberly Portik
Kimberly Portik

UNITED STATES DISTRICT COURT