ROBBINS GELLER RUDMAN
   & DOWD LLP
DANIEL S. DROSMAN (CA 200643)
TOR GRONBORG (CA 179109)
ERIKA L. OLIVER (CA 306614)
RACHEL A. COCALIS (CA 312376)
MATTHEW J. BALOTTA (CA 310303)
SARAH A. FALLON (CA 345821)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
ddrosman@rgrdlaw.com
torg@rgrdlaw.com
eoliver@rgrdlaw.com
rcocalis@rgrdlaw.com
mbalotta@rgrdlaw.com
sfallon@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re Carvana Co. Securities Litigation | No. CV-22-2126-PHX-MTL |
| This Document Relates To:<br><br>    All Actions. | PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF POINTS AND AUTHORITIES |

4937-0319-5545.v1

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   FACTUAL BACKGROUND ....................................................................... 1

III.  THE PROPOSED CLASS SATISFIES THE STANDARDS FOR CLASS CERTIFICATION UNDER RULE 23 ......................................................... 4

      A.    The Proposed Class Satisfies the Requirements of Rule 23(a) .................... 5

      B.    The Proposed Class Satisfies the Requirements of Rule 23(b)(3) ............... 8

            1.    Common Factual and Legal Questions Predominate ........................ 8

                  a.    The Securities Act Claims ......................................................... 8

                  b.    The Exchange Act Claims ......................................................... 9

                        (1)    Plaintiffs Are Entitled to a Presumption of Reliance ....................................................................... 10

                        (2)    Carvana's NYSE Listing Is Strong Evidence of Market Efficiency ......................................................... 11

                        (3)    The *Cammer* Factors ....................................................... 11

                        (4)    The *Krogman* Factors ..................................................... 13

                  c.    Plaintiffs' Damages Model Is Consistent with the Proposed Class's Theory of Liability ................................. 14

            2.    Superiority Is Established ................................................................. 16

      C.    Robbins Geller Should be Appointed Class Counsel ................................. 17

IV.   CONCLUSION ........................................................................................ 17

4937-0319-5545.v1

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .................................................................................................. 8

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ................................................................................... 4, 8, 9, 10

*Basic, Inc. v. Levinson*,
485 U.S. 224 (1998) ..................................................................................... 9, 10, 11

*Berner v. Lazzaro*,
730 F.2d 1319 (9th Cir. 1984), *aff'd sub nom.*,
*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) .................................................................................................. 4

*Binder v. Gillespie*,
184 F.3d 1059 (9th Cir. 1999) ................................................................................ 11

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) .................................................................................. 15

*Borteanu v. Nikola Corp.*,
348 F.R.D. 239 (D. Ariz. 2025) ....................................................................... *passim*

*Brown v. China Integrated Energy Inc.*,
2015 WL 12720322 (C.D. Cal. 2015) ..................................................................... 12

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1989) ................................................................. 11, 12, 13

*City of Mia. Gen. Emps.' & Sanitation
Emps.' Ret. Tr. v. RH, Inc.*,
2018 WL 4931543 (N.D. Cal. 2018) ....................................................................... 15

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .................................................................................................. 15

*Dickey v. Advanced Micro Devices, Inc.*,
2019 WL 251488 (N.D. Cal. 2019) ........................................................................... 6

*Epstein v. MCA, Inc.*,
50 F.3d 644 (9th Cir. 1995) ...................................................................................... 1

- ii -

**Page**

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ................................................................................................... 10

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ....................................................................................... 6

*Hatamian v. Advanced Micro Devices, Inc.*,
2016 WL 1042502 (N.D. Cal. 2016) .......................................................................... 10

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983) ..................................................................................................... 8

*Hodges v. Akeena Solar, Inc.*,
274 F.R.D. 259 (N.D. Cal. 2011) ............................................................................... 12

*HsingChing Hsu v. Puma Biotech., Inc.*,
2017 WL 6210803 (C.D. Cal. 2017) ........................................................................... 6

*Huberman v. Tag-It Pac. Inc.*,
314 F. App'x 59 (9th Cir. 2009) ................................................................................. 11

*In re Banc of Cal. Sec. Litig.*,
326 F.R.D. 640 (C.D. Cal. 2018) ............................................................................... 14

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
2015 WL 224631 (S.D. Cal. 2015) .............................................................................. 6

*In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*,
2013 WL 5789237 (C.D. Cal. 2013) .......................................................................... 16

*In re Cooper Cos. Inc. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009) ..................................................................... 1, 9, 16

*In re Countrywide Fin. Corp. Sec. Litig.*,
273 F.R.D. 586 (C.D. Cal. 2009) ............................................................................... 13

*In re Diamond Foods, Inc., Sec. Litig.*,
295 F.R.D. 240 (N.D. Cal. 2013) ............................................................................... 15

*In re Lendingclub Sec. Litig.*,
282 F. Supp. 3d 1171 (N.D. Cal. 2017) ....................................................................... 6

*In re Lyft Inc. Sec. Litig.*,
2021 WL 3711470 (N.D. Cal. 2021) ............................................................................ 8

- iii -

4937-0319-5545.v1

**Page**

*In re Mattel, Inc. Sec. Litig.*,
2021 WL 4704578 (C.D. Cal. 2021) .......................................................................... 4

*In re Snap Inc. Sec. Litig.*,
334 F.R.D. 209 (C.D. Cal. 2019) ............................................................................. 14

*Junge v. Geron Corp.*,
2022 WL 1002446 (N.D. Cal. 2022) .................................................................... 8, 13

*Karinski v. Stamps.com, Inc.*,
2020 WL 6572660 (C.D. Cal. 2020) ........................................................................ 17

*Katz v. China Century Dragon Media, Inc.*,
287 F.R.D. 575 (C.D. Cal. 2012) ........................................................................ 8, 16

*Krogman v. Sterritt*,
202 F.R.D. 467 (N.D. Tex. 2001) ................................................................. 11, 13, 14

*Lamartina v. VMware, Inc.*,
2024 WL 3286059 (N.D. Cal. 2024) .......................................................................... 7

*Levine v. SkyMall, Inc.*,
2001 WL 37118873 (D. Ariz. 2001)......................................................................... 12

*Leyva v. Medline Indus.*,
716 F.3d 510 (9th Cir. 2013) .................................................................................... 14

*Malriat v. QuantumScape Corp.*,
2022 WL 17974629 (N.D. Cal. 2022) .................................................................. 5, 14

*Milbeck v. TrueCar, Inc.*,
2019 WL 2353010 (C.D. Cal. 2019) ............................................................... 7, 9, 15

*Nguyen v. Nissan N. Am., Inc.*,
932 F.3d 811 (9th Cir. 2019) .................................................................................... 15

*Nguyen v. Radient Pharms. Corp.*,
287 F.R.D. 563 (C.D. Cal. 2012)........................................................... 11, 12, 14, 16

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ...................................................................................... 6

*Purple Mountain Tr. v. Wells Fargo & Co.*,
2022 WL 3357835 (N.D. Cal. 2022) ........................................................................ 14

- iv -

4937-0319-5545.v1

**Page**

*SEB Inv. Mgmt. AB v. Wells Fargo & Co.*,
  2025 WL 1243818 (N.D. Cal. 2025),
  *leave to appeal denied*,
  2025 WL 2028400 (9th Cir. 2025) ............................................................................. 7

*Sudunagunta v. NantKwest, Inc.*,
  2018 WL 3917865 (C.D. Cal. 2018) .......................................................................... 16

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007).................................................................................................... 4

**STATUTES, RULES, AND REGULATIONS**

Federal Rules of Civil Procedure
  Rule 23(a)................................................................................................................... 5
  Rule 23(a)(1).............................................................................................................. 5
  Rule 23(a)(2).............................................................................................................. 5
  Rule 23(a)(3).............................................................................................................. 6
  Rule 23(a)(4)........................................................................................................... 7, 8
  Rule 23(b)(3)........................................................................................................... 7, 16
  Rule 23(b)(3)(A) ...................................................................................................... 16
  Rule 23(b)(3)(B) ...................................................................................................... 16
  Rule 23(b)(3)(C) ...................................................................................................... 16
  Rule 23(b)(3)(D) ...................................................................................................... 16
  Rule 23(g)(1)............................................................................................................ 17
  Rule 23(g)(1)(A) ...................................................................................................... 17

4937-0319-5545.v1

Lead Plaintiffs United Association National Pension Fund ("UANPF") and Saskatchewan Healthcare Employees' Pension Plan ("SHEPP") respectfully move for class certification and request that the Court: (i) certify this case as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3); (ii) appoint Plaintiffs as the Class Representatives; and (iii) appoint Robbins Geller Rudman & Dowd LLP as Class Counsel.

## I.    INTRODUCTION

"As the Ninth Circuit has so aptly stated, securities fraud cases fit Rule 23 'like a glove.'" *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 632 (C.D. Cal. 2009) (quoting *Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995)).[1]  This action is no exception and is ideally suited to class treatment.

Plaintiffs seek certification of a Class consisting of:

> All persons who purchased or otherwise acquired Carvana common stock from May 6, 2020 through October 7, 2022, inclusive (the "Class Period"). Excluded from the Class are Defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

Certification of this action as a class action is appropriate under Rule 23 as each of the requirements of Rule 23(a) and (b)(3) are readily satisfied.

## II.    FACTUAL BACKGROUND

**Summary of the Allegations**.  This action is brought on behalf of investors who were damaged in connection with their purchase of Carvana common stock during the Class

---

[1]    Unless otherwise specified, all emphasis is added, citations are omitted, "¶¶__" citations are to Lead Plaintiffs' Amended Consolidated Complaint for Violations of the Federal Securities Laws (ECF 71) ("Complaint"), and "Ex. __" citations are to the Declaration of Tor Gronborg in Support of Plaintiff's Motion for Class Certification, concurrently filed herewith.  Unless otherwise stated, "Defendants" are: (i) Carvana Co. ("Carvana" or the "Company"), Ernest Garcia III ("Garcia Jr."), Mark Jenkins ("Jenkins"), Stephen Palmer, Michael Maroone, Neha Parikh, Ira Platt, and Greg Sullivan (collectively the "Carvana Defendants"); (ii) Ernest Garcia II ("Garcia Sr."); and (iii) Citigroup Global Markets Inc. and J.P. Morgan Securities LLC (the "Underwriter Defendants").  Carvana, Garcia Jr., Jenkins, and Garcia Sr. are referred to as the "Exchange Act Defendants."  The Carvana Defendants and Underwriter Defendants are referred to collectively as the "Securities Act Defendants."

- 1 -

Period at prices artificially inflated by Defendants' conduct. Plaintiffs and the putative Class allege that the Securities Act Defendants violated §§11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§77k, 77l(a)(2), and 77o, and that the Exchange Act Defendants violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5). ¶¶341-357, 428-448.

Plaintiffs allege that during the Class Period Defendants conducted a fraudulent scheme to convince investors that Carvana was a sustainable growth machine. *See, e.g.*, ¶¶1-8. Leading up to the Class Period, investors were concerned that Carvana's sales growth was slowing. ¶¶5, 126. In response, the Exchange Act Defendants employed unsustainable artifices to artificially boost Carvana's reported retail sales, including: (i) entering sham pass-through sales arrangements with DriveTime (¶¶7, 127-129); (ii) causing unsustainable purchasing and sales tactics to boost sales growth at the expense of profits (¶¶7, 130-143); and (iii) violating state title and registration laws to secure retail sales (¶¶7, 144-149).

Defendants Jenkins and Garcia Jr. also made materially misleading statements and omissions concerning Carvana's retail sales growth and compliance with title and registration laws. *See* ¶¶7, 150-158, 173-189, 211-215. For example, Defendants warned about what ***could*** happen ***if*** Carvana failed to comply with title and registration, without disclosing that those risks and harms had already come to fruition. ¶¶174-179, 182-187. And, once the truth began to leak out, Defendants misleadingly trivialized Carvana's title violations, characterizing them as "North Carolina specific" and occurring "'[i]n a very small percentage of a very small percentage of instances.'" ¶¶180-181, 188-189. Critically, throughout the Class Period, Defendants touted Carvana's retail sales growth and the purportedly organic drivers of such growth. ¶¶212, 214. But Carvana's growth was substantially fueled by the following unsustainable artifices: (i) flouting title and registration laws; (ii) pursuing "less profitable sales" in "markets with lower profitability due to long distance from inventory"; (iii) lowering Carvana's purchasing and verification standards to increase trade-ins; (iv) artificially lowering prices to seek "sales that were less profitable in

- 2 -

the immediate period"; and (v) sham related-party transactions with companies controlled by Garcia Sr. ¶¶213, 215.[2]

As a result of Defendants' conduct, Carvana's stock price skyrocketed. *See, e.g.*, ¶¶8, 159. Defendants individually cashed in, dumping nearly 14.3 million shares at artificially inflated prices, reaping proceeds of nearly $3.76 billion. ¶¶3, 8, 163, 261. Moreover, the fraudulent scheme allowed Carvana to sell 15,625,000 shares of common stock at the artificially inflated price of $80.00 per share, raising over $1,225,000,000 in desperately needed capital for the Company. ¶¶373-378.

When the ramifications and negative economic effects of Defendants' scheme and misrepresentations could no longer be concealed, the truth regarding Carvana's business was revealed through a series of partial disclosures. *See, e.g.*, ¶¶166-172, 307-328. In response, Carvana's stock price plummeted and caused investors to suffer substantial monetary damages. *Id.*

**The Proposed Class Representatives**. UANPF and SHEPP have each already expended substantial time and effort in informing themselves about and monitoring this case, working with counsel to vigorously prosecute this action on behalf of the Class, and participating in discovery. *See* Declaration of Toni C. Inscoe in Support of Lead Plaintiffs' Motion for Class Certification ("Inscoe Decl."), ¶6 (Ex. 1); Declaration of Pamela Peters in Support of Lead Plaintiffs' Motion for Class Certification ("Peters Decl."), ¶5 (Ex. 2). Each has expressed an understanding of and willingness to accept the responsibilities of a Class Representative. *See* Inscoe Decl., ¶¶7-9; Peters Decl., ¶¶6-8.

UANPF is a multi-employer defined benefit pension plan with approximately $8 billion in assets held for the benefit of approximately 150,000 participants. Inscoe Decl., ¶3. UANPF's administrative office is in Alexandria, Virginia. *Id.* During the Class Period,

---

[2] In April 2022, Carvana conducted a public offering (the "2022 Public Offering"). ¶¶373-375. In connection with that offering, the Company issued a registration statement that incorporated Carvana's 2021 Form 10-K, which: (i) described drivers of Carvana's retail unit growth while omitting that the growth was primarily driven by unsustainable practices; and (ii) warned of risks concerning violation of state regulations and laws while omitting that the risks had already come to fruition. ¶¶374, 383-391.

- 3 -

UANPF purchased Carvana common stock at artificially inflated prices, including stock purchased directly in and/or traceable to the 2022 Public Offering.  ¶22; ECF 71 at 325 (UANPF Certification); *see also* Inscoe Decl., ¶4.

SHEPP is the largest defined benefit plan in the Saskatchewan province of Canada, serving the healthcare sector with over 60,000 members and more than $10 billion in assets under management.  ¶23; Peters Decl., ¶2.  During the Class Period, SHEPP purchased Carvana common stock at artificially inflated prices, including stock purchased directly in and/or traceable to the 2022 Public Offering.  ¶23; ECF 71 at 330 (SHEPP Certification); *see also* Peters Decl., ¶3.

## III.    THE PROPOSED CLASS SATISFIES THE STANDARDS FOR CLASS CERTIFICATION UNDER RULE 23

The Supreme Court and the Ninth Circuit have repeatedly recognized the importance of securities class actions in redressing violations of the federal securities laws and serving as an enforcement mechanism to "supplement" government regulation of the securities markets. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007); *Berner v. Lazzaro*, 730 F.2d 1319, 1322-23 (9th Cir. 1984), *aff'd sub nom.*, *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299 (1985).  Thus, "'the law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws.'"  *In re Mattel, Inc. Sec. Litig.*, 2021 WL 4704578, at *3 (C.D. Cal. 2021).

To certify a class, Plaintiffs must satisfy the requirements of Rule 23.  *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).  Though the Court's certification analysis "must [be] 'rigorous,'" Rule 23 "'grants courts no license to engage in free-ranging merits inquiries at the certification stage.'"  *Borteanu v. Nikola Corp.*, 348 F.R.D. 239, 250 (D. Ariz. 2025) (quoting *Amgen*, 568 U.S. at 66).  Instead, "'[m]erits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'"  *Id.*  Rule 23(a) identifies four requirements for class certification: (1) the class is so numerous that joinder of

4937-0319-5545.v1

all members is impractical ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims of the representative parties are typical of the claims of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a). Once a proposed class meets these four requirements, the court then must determine whether the action can be maintained under one of the three subsections of Rule 23(b). Here, the proposed Class easily satisfies each requirement.

### A. The Proposed Class Satisfies the Requirements of Rule 23(a)

**The Class Is so Numerous that Joinder Is Impracticable**. Under Rule 23(a)(1), the Class must be so numerous that joinder is impracticable. "[C]ourts within the Ninth Circuit generally agree that numerosity is satisfied if the class includes forty or more members[,] . . . [a]nd courts '"may infer that, when a corporation has millions of shares trading on a national exchange," the numerosity requirement is met.'" *Malriat v. QuantumScape Corp.*, 2022 WL 17974629, at *3 (N.D. Cal. 2022).

Here, as Plaintiffs' expert, Dr. Matthew Cain, who holds a Ph.D. in finance and teaches at the New York University School of Law, explains, Carvana's stock was listed and actively traded on the New York Stock Exchange ("NYSE") – one of the most liquid and efficient forums for securities trading in the world – throughout the Class Period. Expert Report of Matthew D. Cain, Ph.D. ("Cain Report" or "Cain Rpt."), ¶¶6-11, 16, 38, 61-62 (Ex. 3). Carvana's common stock was held by more than 1,000 institutional investors during the Class Period and the average weekly trading volume of Carvana's stock was 19.46 million shares, meaning that every week nearly 20 million shares of Carvana common stock changed hands. *Id.*, ¶¶50, 63, 105. Thus, numerosity is easily satisfied here.

**Every Question Is Common to Each Class Member**. Rule 23(a)(2) requires that there be "questions of law or fact common to the class." *Id.* "Plaintiffs need not show . . . 'every question in the case, or even a preponderance of questions, is capable of class wide resolution. So long as there is "even a single common question," a would-be class can

- 5 -

4937-0319-5545.v1

satisfy the commonality requirement of Rule 23(a)(2).'" *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014).

Here, Plaintiffs' allegations easily clear the low threshold for commonality as there are no diverging facts, no individual issues, and no unique evidence.  Questions subject to common answers include whether: (1) Defendants made materially false or misleading statements or material omissions to investors; (2) Defendants engaged in a scheme to defraud; and (3) Defendants' fraud caused the putative Class damages.  Because the Class will depend on common proof in answering these critical questions and establishing the claims, commonality is established.  *See HsingChing Hsu v. Puma Biotech., Inc.*, 2017 WL 6210803, at *2 (C.D. Cal. 2017) ("'[c]onfronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest . . . which is not defeated by slight differences in class members' positions'"); *In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1179 (N.D. Cal. 2017) ("[A]llegations that investors were defrauded by the same misleading registration statement over the same period of time, and suffered similar losses as a result are sufficient to fulfill [Rule] 23(a)'s commonality requirement.").

**UANPF's and SHEPP's Claims Are Typical of the Class**.  Rule 23(a)(3) requires the "claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." *Id.*  "'The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Dickey v. Advanced Micro Devices, Inc.*, 2019 WL 251488, at *4 (N.D. Cal. 2019) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  "As long as the representative's claims are 'reasonably coextensive with those of absent class members[,] they need not be substantially identical.'"  *Borteanu*, 348 F.R.D. at 252.  When a proposed class representative's "claims arise from the same events and conduct that gave rise to the claims of other class members," they are "typical of the class." *In re Bridgepoint Educ., Inc. Sec. Litig.*, 2015 WL 224631, at *5 (S.D. Cal. 2015).

- 6 -

Here, Plaintiffs, like other members of the Class, allege that Defendants' conduct artificially inflated the trading prices of Carvana stock throughout the Class Period, causing injury to investors when the truth was revealed and the artificial inflation left the stock price. *See, e.g.*, ¶¶22-23, 166-172, 307-328. Typicality is therefore satisfied. *Milbeck v. TrueCar, Inc.*, 2019 WL 2353010, at *2 (C.D. Cal. 2019) (typicality satisfied in action alleging Exchange Act and Securities Act claims, where lead plaintiff and putative class members purchased stock at artificially inflated prices and suffered damages following disclosure).

**UANPF and SHEPP Will Fairly and Adequately Protect the Interests of the Class**. Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." *Id.* In assessing adequacy, courts consider: "'(1) whether there are conflicts within the class; and (2) whether plaintiffs and counsel will vigorously fulfill their duties to the class.'" *SEB Inv. Mgmt. AB v. Wells Fargo & Co.*, 2025 WL 1243818, at *4 (N.D. Cal. 2025), *leave to appeal denied*, 2025 WL 2028400 (9th Cir. 2025). Both prongs are met here.

***First***, no fundamental conflicts exist here – rather, the interests of Plaintiffs and the proposed Class are directly aligned. Like all proposed Class members, Plaintiffs purchased Carvana common stock at inflated prices during the Class Period, including in the 2022 Public Offering, and were injured by Defendants' misconduct. Thus, Plaintiffs and the Class "share the same incentive to establish Defendants' liability and to maximize any recovery in this case." *Lamartina v. VMware, Inc.*, 2024 WL 3286059, at *4 (N.D. Cal. 2024).

***Second***, the proposed Class Representatives have already demonstrated an ability to successfully represent the Class, and each has willingly taken an active role in zealously prosecuting this action on the Class's behalf. *See* Inscoe Decl., ¶6; Peters Decl., ¶5. Each of the proposed Class Representatives also understands the requirements and responsibilities of serving as a class representative, intends to continue to monitor this case, and intends to work with counsel to maximize the Class's recovery. *See* Inscoe Decl., ¶¶6-10; Peters Decl., ¶¶5-9.

- 7 -

4937-0319-5545.v1

The proposed Class Representatives have also demonstrated their adequacy by retaining qualified, experienced, and capable attorneys who have an excellent track record in prosecuting complex securities class actions such as this case. *See* Ex. 4 (firm resume). In short, Plaintiffs and Robbins Geller will continue to diligently prosecute this action and "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

**B.    The Proposed Class Satisfies the Requirements of Rule 23(b)(3)**

This action also satisfies Rule 23(b)(3)'s requirements that: (1) common questions of law and fact predominate over individual questions; and (2) a class action is the superior method to adjudicate this dispute. Fed. R. Civ. P. 23(b)(3).

**1.    Common Factual and Legal Questions Predominate**

"Predominance is a test readily met in certain cases alleging consumer or securities fraud . . . ." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623; *see also Junge v. Geron Corp.*, 2022 WL 1002446, at *3 (N.D. Cal. 2022) ("Class certification under Rule 23(b)(3) is proper when common questions represent a significant portion of the case and can be resolved for all members of the class in a single adjudication."). Accordingly, Rule 23(b)(3) "does ***not*** require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof,'" only "that common questions '***predominate*** over any questions affecting only individual [class] members.'" *Amgen*, 568 U.S. at 469 (alterations and emphasis in original).

**a.    The Securities Act Claims**

For the Securities Act claims, Plaintiffs "need not show scienter, reliance or loss causation." *Katz v. China Century Dragon Media, Inc.*, 287 F.R.D. 575, 582 (C.D. Cal. 2012). They "need only show a material misstatement or omission" in the 2022 Public Offering documents. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983). The questions raised by these claims – (i) whether there was an actionable misstatement or omission in the 2022 Public Offering documents and (ii) whether it was material – are "common questions that can be proven through evidence common to the class." *In re Lyft*

- 8 -

*Inc. Sec. Litig.*, 2021 WL 3711470, at *5 (N.D. Cal. 2021). Thus, predominance is readily satisfied. *Milbeck*, 2019 WL 2353010, at *4 ("In the context of the Securities Act claims, Lead Plaintiff 'need only show a material misstatement or omission' in the registration statement or prospectus, claims that are readily susceptible to class-wide proof."). As the Supreme Court recognized in *Amgen*, "[t]he alleged misrepresentations and omissions, whether material or immaterial, would be so equally for all investors composing the class." 568 U.S. at 459.

### b.    The Exchange Act Claims

Plaintiffs allege the Exchange Act Defendants violated §§10(b) and/or 20(a) of the Exchange Act both by making false and misleading statements in violation of Rule 10b-5(b) and by engaging in a scheme to defraud in violation of Rule 10b-5(a) and (c). Accordingly, Plaintiffs must establish: (1) Defendants made material misrepresentations and/or engaged in a scheme to defraud; (2) a connection with the purchase or sale of a security; (3) scienter; (4) reliance; (5) economic loss; and (6) loss causation. *Amgen*, 568 U.S. at 460-61. As the commonality analysis in §III.A, *supra*, demonstrates, the primary questions of law and fact in this case are common to the proposed Class Representatives and the Class. Issues such as whether the Exchange Act Defendants knowingly and/or recklessly engaged in a fraudulent scheme and/or made public material misstatements or omissions (*i.e.*, the scienter, falsity, and materiality elements) and whether the revelation(s) of the alleged fraud proximately caused the price of Carvana common stock to decline (*i.e.*, loss causation) involve common questions that predominate over individualized ones. *See Amgen*, 568 U.S. at 467, 475 (materiality, falsity, and loss causation "are common questions"); *Cooper*, 254 F.R.D. at 640 ("the critical questions of what Defendants said, what they knew, what they may have withheld, and with what intent they acted, are central to all class members' claims"). Finally, class-wide, rather than individual, issues regarding reliance will predominate because Plaintiffs are entitled to a presumption of class-wide reliance under *Basic, Inc. v. Levinson*, 485 U.S. 224 (1998)'s fraud-on-the-market theory. *Id.* at 241.

4937-0319-5545.v1

### (1) Plaintiffs Are Entitled to a Presumption of Reliance

The fraud-on-the-market theory premises that, "'"in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business. . . . Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.'"'" *Basic*, 485 U.S. at 241-42; *see also Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 270 (2014) ("'the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations'"). Accordingly, "'reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action.'" *Halliburton*, 573 U.S. at 268; *see also Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at *6 n.3 (N.D. Cal. 2016) (application of *Basic*'s "fraud-on-the-market theory obviates any need for class members to prove reliance individually – the relevant concern at this juncture under Rule 23(b)(3)").

The fraud-on-the-market presumption is available where: (1) the alleged misrepresentations were publicly known; (2) they were material; (3) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed (*i.e.*, during the Class Period); and (4) the stock traded in an efficient market. *Halliburton*, 573 U.S. at 278. These requirements are met here. First, Plaintiffs allege that Defendants made material misrepresentations and omissions publicly, including in earnings calls and SEC filings. *See* ¶¶150-159, 173-189, 211-215. Second, although materiality must ultimately be proved at trial, such "proof is not a prerequisite to class certification." *Amgen*, 568 U.S. at 459. Third, Plaintiffs purchased Carvana common stock between the time when these material misrepresentations and omissions were made and the end of the Class Period. *See* ECF 71 at 325-332. Fourth, as set forth in the Cain Report and below, the market for Carvana common stock was efficient during the Class Period. Cain Rpt., ¶¶4.a.-b., 38, 41-108, 140. And, because Defendants made misstatements as part of their scheme (*e.g.*, ¶¶150-159), the fraud-on-the-market presumption also applies to Plaintiffs' scheme allegations.

- 10 -

4937-0319-5545.v1

**(2)    Carvana's NYSE Listing Is Strong Evidence
of Market Efficiency**

In *Basic*, the Supreme Court noted that "[i]n drafting [the Exchange] Act, Congress expressly relied on the premise that securities markets are affected by information, and enacted legislation to facilitate an investor's reliance on the integrity of those markets." 485 U.S. at 245-46.  Here, because Carvana traded on the NYSE throughout the Class Period (Cain Rpt., ¶¶16, 38, 61-62) – one of the world's most efficient forums for stock trading – "there is a strong presumption in favor of market efficiency."  *Borteanu*, 348 F.R.D. at 255; *see also Huberman v. Tag-It Pac. Inc.*, 314 F. App'x 59, 63 (9th Cir. 2009) ("Here, where Tag-It was traded on a national exchange and the stock prices reflected public information an efficient market is present.").

Beyond market listing, courts also consider the factors outlined in both *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989), and *Krogman v. Sterritt*, 202 F.R.D. 467 (N.D. Tex. 2001) in evaluating market efficiency.  *See, e.g.*, *Borteanu*, 348 F.R.D. at 255.  These factors weigh heavily in favor of finding market efficiency.  *See* Cain Rpt., ¶4.b.

**(3)    The *Cammer* Factors**

The five *Cammer* factors are:

> [1] whether the stock trades at a high weekly volume; [2] whether securities analysts follow and report on the stock; [3] whether the stock has market makers and arbitrageurs; [4] whether the company is eligible to file SEC registration form S-3, as opposed to form S-1 or S-2; and [5] whether there are "empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price."

*Binder v. Gillespie*, 184 F.3d 1059, 1065 (9th Cir. 1999) (quoting *Cammer*, 711 F. Supp. at 1286-87).  Here, each of the *Cammer* factors supports a finding of market efficiency.

**Carvana Stock Had a High Average Trading Volume**.  "'[A]verage weekly trading of 2% or more of the outstanding shares would justify a strong presumption that the market for the security is an efficient one; 1% would justify a substantial presumption.'"  *Nguyen v. Radient Pharms. Corp.*, 287 F.R.D. 563, 571 (C.D. Cal. 2012) (quoting *Cammer*, 711 F.

- 11 -

4937-0319-5545.v1

Supp. at 1286).  On average during the Class Period, the average weekly trading volume for Carvana common stock was 19.46 million shares or 21.10%.  Cain Rpt., ¶¶49-50.  This heavy trading volume strongly supports the conclusion that the market for Carvana common stock was efficient during the Class Period.  *See Brown v. China Integrated Energy Inc.*, 2015 WL 12720322, at *16 (C.D. Cal. 2015) (quoting *Cammer*, 711 F. Supp. at 1286) ("the weekly trading volume here [of 7.7%] far exceeds the two percent that the court in *Cammer* found to favor market efficiency").

**Carvana Had Wide Analyst Coverage**.  Analysts facilitate the flow and digestion of information in the market.  *See* Cain Rpt., ¶52.  During the Class Period, approximately 44 analyst firms covered Carvana, collectively publishing 723 reports on the Company.  *Id.*, ¶53.  These figures readily support a finding of market efficiency.  *See, e.g.*, *Borteanu*, 348 F.R.D. at 256 (at least 9 analysts issuing over 140 reports during class period "'strongly support[ed] market efficiency'"); *Cammer*, 711 F. Supp. at 1283 n.30 (15 analyst reports issued in a one-year period surrounding the class period supported plaintiff's *prima facie* showing of an efficient market for the company's stock).

**Numerous Market Makers Support a Finding of Efficiency**.  "'A market-maker is one who helps establish a market for securities by reporting bid-and-asked quotations (the price a buyer will pay for a security and the price a seller will sell a security) and who stands ready to buy or sell at these publicly quoted prices.'"  *Nguyen*, 287 F.R.D. at 572.  During the Class Period, there were at least 137 active market makers and brokers trading the Company's common stock.  Cain Rpt., ¶61.  This strongly supports a finding that the market for Carvana's stock was efficient.  *See, e.g.*, *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 269 (N.D. Cal. 2011) (finding market efficiency with "over twenty" market makers); *Levine v. SkyMall, Inc.*, 2001 WL 37118873, at *6 (D. Ariz. 2001) (finding market efficiency with between 11 and 22 market makers).

**Carvana Was Eligible to File S-3 Registration Statements**.  Courts also consider eligibility to file a Form S-3 registration statement in assessing market efficiency.  *Cammer*, 711 F. Supp. at 1284.  Carvana met the requirements for Form S-3 registration during the

- 12 -

4937-0319-5545.v1

Class Period. *See* Cain Rpt., ¶¶67-68; *Borteanu*, 348 F.R.D. at 257 ("When a company meets the Form S-3 filing requirements, this indicates that the market for its securities is likely efficient.").

**Carvana's Stock Reacted to New, Company-Specific Information**. The fifth factor focuses on whether a company's stock price reacts quickly to new, company-specific information. *See Cammer*, 711 F. Supp. at 1287. To test Carvana's responsiveness to new information, Dr. Cain conducted an event study analyzing Carvana's stock price movements on days that Company-specific news was publicly released compared to movements to other days in the Class Period. Cain Rpt., ¶¶70-83. "Event studies are by far the most common test for a causal connection." *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 614 (C.D. Cal. 2009); *Borteanu*, 348 F.R.D. at 257 ("[t]he cause-and-effect relationship is often tested through an event study"). Dr. Cain's event study identified a cause-and-effect relationship between the release of new, Carvana-specific information and the movement in Carvana's stock price. Cain Rpt., ¶¶70, 84-90. Thus, the fifth *Cammer* factor supports a finding of market efficiency.

### (4)   The *Krogman* Factors

The *Krogman* factors are: (1) the company's market capitalization; (2) the stock's bid-ask spread; and (3) the stock's float. *See Krogman*, 202 F.R.D. at 467; *Borteanu*, 348 F.R.D. at 258. These factors also support a finding of market efficiency.

**Carvana's Market Capitalization**. Carvana's market capitalization averaged $15.2 billion during the Class Period, making it larger than at least 90% of all companies trading on the NYSE and Nasdaq markets from 2016-2018 and greatly exceeding the market capitalization found by other courts to support market efficiency. Cain Rpt., ¶93; *see, e.g.*, *Borteanu*, 348 F.R.D. at 258 (market capitalization averaging $230.5 million over the class period weighed toward market efficiency); *Junge*, 2022 WL 1002446, at *4 (market capitalization that "averaged $731.69 million and reached heights of more than one billion dollars" was sufficient).

- 13 -

4937-0319-5545.v1

**The Narrow Bid-Ask Spread for Carvana's Stock**.  The bid-ask spread is the difference between the prices at which investors are willing to buy and current stockholders are willing to sell shares, with a high bid-ask spread indicating a less efficient market.  *See Krogman*, 202 F.R.D. at 478 (identifying bid-ask spread of 5.6% as high).  Carvana's common stock had a narrow bid-ask spread, averaging 0.06% during the Class Period.  Cain Rpt., ¶97.  This factor supports a finding of market efficiency.  *See Malriat*, 2022 WL 17974629, at *13 (bid-ask spread between .02% and .06% met this *Krogman* factor); *Nguyen*, 287 F.R.D. at 574 (noting that a bid-ask spread of 2.44% was found to weigh in favor of market efficiency).

**Carvana's Public Float**.  A security's "float" is the number of shares outstanding that are available for trading and not held by insiders.  *See* Cain Rpt., ¶101.  "A high level of float weighs toward a finding of market efficiency."  *Borteanu*, 348 F.R.D. at 258 (citing *Krogman*, 202 F.R.D. at 478).  During the Class Period, the average float of Carvana's common stock was over 89% of shares outstanding.  *See* Cain Rpt., ¶102.  This further supports a finding of market efficiency.  *See Borteanu*, 348 F.R.D. at 258 (average public float of 55.1% weighs toward market efficiency); *Purple Mountain Tr. v. Wells Fargo & Co.*, 2022 WL 3357835, at *5 (N.D. Cal. 2022) (public float of approximately 90% was sufficient).

### c.    Plaintiffs' Damages Model Is Consistent with the Proposed Class's Theory of Liability

"Courts have 'generally found' that the requirement for Plaintiff to pose 'a workable class-wide damages model in relation to the predominance requirement' is not 'a significant obstacle to class certification in securities litigation.'"  *Borteanu*, 348 F.R.D. at 261.  Indeed, "[i]t's well settled that 'the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3).'"  *In re Banc of Cal. Sec. Litig.*, 326 F.R.D. 640, 651 (C.D. Cal. 2018) (quoting *Leyva v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013)); *In re Snap Inc. Sec. Litig.*, 334 F.R.D. 209, 216 (C.D. Cal. 2019) ("[I]n the Ninth Circuit, the need to engage in individualized damages calculations alone cannot defeat class certification.").

- 14 -

This longstanding rule was not altered by *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) – an antitrust case involving four disparate theories of liability and damages. As the Ninth Circuit has made clear, *Comcast* merely requires that "'plaintiffs . . . be able to show that their damages stemmed from the defendant's actions that created the legal liability.'" *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 817 (9th Cir. 2019); *Milbeck*, 2019 WL 2353010, at *4 (same). Here, as in virtually all securities cases, the damages arising out of the alleged Exchange Act claims and Securities Act claims can be calculated using well-established methodologies that can be applied class wide.

***Exchange Act Claims***. In securities cases alleging Exchange Act claims, the process of computing damages after liability is established is "'virtually a mechanical task.'" *In re Diamond Foods, Inc., Sec. Litig.*, 295 F.R.D. 240, 252 (N.D. Cal. 2013) (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)). This case is no exception.

As Dr. Cain's report describes, damages for all Class members can be calculated here using the same methodology: determining the difference between inflation on the security purchase date and inflation on the security sale date. Cain Rpt., ¶¶4.c., 109-126. This is commonly known as the "out-of-pocket" measure of damages. *Id.*; *see also Borteanu*, 348 F.R.D. at 261 (out-of-pocket methodology "is 'the standard method for calculating damages in virtually every Section 10(b) class action'"). Pursuant to the out-of-pocket measure of damages, a jury can determine the total inflation that was removed from Carvana's stock price based on the results of an event study similar to that performed by Dr. Cain in support of his analysis and opinion regarding the efficiency of the market for Carvana stock. *See*, *e.g.*, *Diamond Foods*, 295 F.R.D. at 251 ("'The event study method is an accepted method for the evaluation of materiality damages to a class of stockholders in a defendant corporation.'"); *City of Mia. Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*, 2018 WL 4931543, at *3 (N.D. Cal. 2018) ("Courts regularly reaffirm that the out-of-pocket, or event study, method matches plaintiffs' theory of liability under Section 10(b) of the Securities Exchange Act, making it the standard method for calculating damages in virtually every Section 10(b) class action.").

- 15 -

***Securities Act Claims***.  Damages for the Securities Act claims are capable of being calculated using a statutory methodology applicable to the entire Class.  Cain Rpt., ¶¶4.d., 127-139; *see also In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, 2013 WL 5789237, at *6 (C.D. Cal. 2013) (finding predominance satisfied for §§11 and 12(a)(2) claims because "the calculation of damages will be governed by statutory formulas" and "'the amount of damages is invariably an individual question and does not defeat class action treatment'"); *Sudunagunta v. NantKwest, Inc.*, 2018 WL 3917865, at *8 (C.D. Cal. 2018) ("damages under Section 11 are statutory and mechanical").  Predominance is therefore satisfied.

### 2.    Superiority Is Established

Rule 23(b)(3) also requires that class treatment be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "As the Ninth Circuit has so aptly stated, securities fraud cases fit Rule 23 'like a glove.'" *Cooper*, 254 F.R.D. at 632.  When assessing superiority, courts consider: (1) class members' interests in individually controlling separate actions; (2) whether other litigation has already commenced; (3) the desirability of concentrating claims in one forum; and (4) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).

First, for the majority of class members, their interests in individually prosecuting separate actions is minimal, as the trouble and expense of doing so would be prohibitive when weighed against the potential recoveries.  Second, the maintenance of a class action in this District ensures an efficient expenditure of resources and consistent rulings on the Class's claims.  *See Nguyen*, 287 F.R.D. at 575 ("Concentrating litigation in one forum is desirable where a company was listed on a national exchange, and no one has identified a meaningful difficulty in managing this class action.").  Third, this District is a desirable forum, as individual Class members are located in geographically dispersed areas, and Carvana is headquartered in this District.  Finally, Plaintiffs do not foresee any management difficulties that preclude this action from proceeding as a class action.

4937-0319-5545.v1

In short, certification of this action as a class action would not only be superior to other available methods in accordance with Rule 23(b)(3), it appears to be the sole method for fairly and efficiently litigating Class members' claims.

### C.    Robbins Geller Should be Appointed Class Counsel

A "court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). In appointing class counsel, courts consider: (i) counsel's work in "identifying or investigating potential claims"; (ii) "experience in handling class actions"; (iii) "knowledge of the applicable law"; and (iv) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Plaintiffs' chosen counsel, Robbins Geller, satisfies these requirements and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors, including in this District. *See* Ex. 4; *see Karinski v. Stamps.com, Inc.*, 2020 WL 6572660, at *9 (C.D. Cal. 2020) ("[T]he Court concludes that Robbins Geller will 'fairly and adequately represent the interests of the class.' . . . Robbins Geller has vigorously prosecuted this action and has substantial experience litigating similar types of class actions."). Robbins Geller is well-qualified to prosecute this case on behalf of Plaintiffs and the Class, and have already undertaken a vigorous prosecution of this action, including conducting an extensive investigation of the claims, defeating Defendants' motions to dismiss, and diligently pursuing discovery. Accordingly, Robbins Geller fulfills the requirements of Rule 23(g), and the Court should appoint the firm as Class Counsel.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Class Certification should be granted, UANPF and SHEPP should be appointed Class Representatives, and Robbins Geller should be appointed Class Counsel.

DATED:  April 6, 2026                          Respectfully submitted,

                                                                s/ Tor Gronborg
                                                           TOR GRONBORG

- 17 -

4937-0319-5545.v1

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN
(Admitted *pro hac vice*)
TOR GRONBORG
(Admitted *pro hac vice*)
ERIKA L. OLIVER
(Admitted *pro hac vice*)
RACHEL A. COCALIS
(Admitted *pro hac vice*)
MATTHEW J. BALOTTA
(Admitted *pro hac vice*)
SARAH A. FALLON
(Admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
ddrosman@rgrdlaw.com
torg@rgrdlaw.com
eoliver@rgrdlaw.com
rcocalis@rgrdlaw.com
mbalotta@rgrdlaw.com
sfallon@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ROBERT M. ROTHMAN
(Admitted *pro hac vice*)
DAVID A. ROSENFELD
(Admitted *pro hac vice*)
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
rrothman@rgrdlaw.com
drosenfeld@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
MATHEW ANDREWS
(Admitted *pro hac vice*)
420 Lexington Avenue, Suite 1832
New York, NY  10170
Telephone:  212/432-5100
mandrews@rgrdlaw.com

- 18 -

4937-0319-5545.v1

ROBBINS GELLER RUDMAN
  & DOWD LLP
SCOTT I. DION
(Admitted *pro hac vice*)
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdion@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

O'DONOGHUE & O'DONOGHUE LLP
DINAH S. LEVENTHAL
5301 Wisconsin Avenue, N.W., Suite 800
Washington, D.C.  20015
Telephone:  202/362-0041
202/362-2640 (fax)
dleventhal@odonoghuelaw.com

Additional Counsel for Lead Plaintiffs

BONNETT FAIRBOURN FRIEDMAN
  & BALINT PC
ANDREW FRIEDMAN
7301 N. 16th Street, Suite 102
Phoenix, AZ  85020
Telephone: 602/274-1100
602/274-1199 (fax)
afriedman@bffb.com

Local Counsel

- 19 -

4937-0319-5545.v1