ROBBINS GELLER RUDMAN
   & DOWD LLP
DANIEL S. DROSMAN (CA 200643)
TOR GRONBORG (CA 179109)
ERIKA L. OLIVER (CA 306614)
RACHEL A. COCALIS (CA 312376)
MATTHEW J. BALOTTA (CA 310303)
SARAH A. FALLON (CA 345821)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
ddrosman@rgrdlaw.com
torg@rgrdlaw.com
eoliver@rgrdlaw.com
rcocalis@rgrdlaw.com
mbalotta@rgrdlaw.com
sfallon@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re Carvana Co. Securities Litigation | No. CV-22-2126-PHX-MTL |
| This Document Relates To:<br><br>    All Actions. | LEAD PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED FOR *IN CAMERA* REVIEW AND TO APPOINT SPECIAL MASTER<br><br>ORAL ARGUMENT REQUESTED |

**[REDACTED]**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION.................................................................................................... 1

II.    LEGAL STANDARDS ........................................................................................... 3

    A.    The Attorney-Client Privilege .................................................................. 3

    B.    The Work Product Doctrine ...................................................................... 3

    C.    Privilege and Protection Assertions Must Be Specific and Unique ..................... 3

III.    RELEVANT BACKGROUND................................................................................ 4

    A.    Defendants Unjustifiably Delay Providing a Privilege Log................................. 4

    B.    Defendants Produce Woefully Deficient Amended Logs ..................................... 5

    C.    Defendants Concede Their Unreasonably Delayed Amended Logs Are Unreliable Due to a "Vendor" Error ........................................................................... 5

IV.    ARGUMENT ......................................................................................................... 6

    A.    Defendants Have Failed to Substantiate Their Privilege Claims........................... 6

        1.    Defendants Fail to "Clearly Show" that the Withheld Communications Were Made *Primarily* for Legal Advice ....................... 8

        2.    Defendants Are Withholding Non-Privileged Attachments................... 13

    B.    The Court May Review a Sample of Documents *in Camera* ........................... 15

V.    CONCLUSION ...................................................................................................... 17

4910-7677-7378.v1

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Aecon Bldgs., Inc. v. Zurich N. Am.*,
253 F.R.D. 655 (W.D. Wash. 2008) ............................................................................ 15

*Affinity Credit Union v. Apple Inc.*,
2026 WL 323303 (N.D. Cal. 2026) ............................................................................ 16

*Am. C.L. Union of N. Cal. v. U.S. Dep't of Just.*,
880 F.3d 473 (9th Cir. 2018) ..................................................................................... 3

*Briggs v. Cnty. of Maricopa*,
2021 WL 1192819 (D. Ariz. 2021) ............................................................................. 3

*Bruno v. Equifax Info. Servs., LLC*,
2019 WL 633454 (E.D. Cal. 2019) ............................................................................ 13

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for the Dist. of Mont.*,
408 F.3d 1142 (9th Cir. 2005) ............................................................................... 4, 8

*City of Roseville Emps.' Ret. Sys. v. Apple Inc.*,
2022 WL 3083000 (N.D. Cal. 2022) ....................................................................... 9, 11

*Clarke v. Am. Com. Nat'l Bank*,
974 F.2d 127 (9th Cir. 1992) ..................................................................................... 4

*Doe v. Intermountain Health Care, Inc.*,
2021 WL 425117 (D. Utah 2021) .............................................................................. 14

*Dolby Lab'ys Licensing Corp. v. Adobe Inc.*,
402 F. Supp. 3d 855 (N.D. Cal. 2019) ................................................................... 10, 16

*Earth Found. v. Nat'l Marine Fisheries Serv.*,
85 F. Supp. 3d 1074 (N.D. Cal. 2015) ...................................................................... 13

*Epic Games, Inc. v. Apple Inc.*,
781 F. Supp. 3d 943 (N.D. Cal.),
*aff'd in part, reversed in part on other grounds by*,
161 F.4th 1162 (9th Cir. 2025) ................................................................................. 17

*Fed. Trade Comm'n v. Qualcomm Inc.*,
2018 WL 11420853 (N.D. Cal. 2018) ...................................................................... 7, 9

4910-7677-7378.v1

**Page**

*Fisher v. United States*,
425 U.S. 391 (1976) ........................................................................................................ 14

*Fosbre v. L.V. Sands Corp.*,
2016 WL 183476 (D. Nev. 2016) ................................................................................ 3, 16

*Garner v. Amazon.com, Inc.*,
2024 WL 4266665 (W.D. Wash. 2024) ........................................................................... 12

*Hanson v. Wells Fargo Home Mortg., Inc.*,
2013 WL 5674997 (W.D. Wash. 2013) ........................................................................... 13

*In re Cal. Bail Bond Antitrust Litig.*,
778 F. Supp. 3d 1051 (N.D. Cal. 2025) .......................................................................... 11

*In re Chase Bank USA, N.A. "Check Loan" Cont. Litig.*,
2011 WL 3268091 (N.D. Cal. 2011) ............................................................................... 12

*In re Grand Jury*,
23 F.4th 1088 (9th Cir. 2021) ........................................................................................... 8

*In re Grand Jury Investigation*,
974 F.2d 1068 (9th Cir. 1992) ............................................................................... 4, 8, 16

*Kellman v. Whole Foods Mkt. Cal., Inc.*,
2021 WL 4476779 (N.D. Cal. 2021) ......................................................................... 13, 14

*Melendres v. Sheridan*,
2025 WL 3647977 (D. Ariz. 2025) .................................................................................... 7

*Merrell v. Tapestry, Inc.*,
2026 WL 797139 (C.D. Cal. 2026) ................................................................................... 3

*Oracle Am., Inc. v. Google, Inc.*,
2011 WL 3794892 (N.D. Cal. 2011) ............................................................................. 2, 8

*RG Abrams Ins. v. L. Offs. of C.R. Abrams*,
2022 WL 422824 (C.D. Cal. 2022) ................................................................................... 8

*RG Abrams Ins. v. L. Offs. of C.R. Abrams*,
342 F.R.D. 461 (C.D. Cal. 2022) ...................................................................................... 7

*Sell v. Country Life Ins. Co.*,
189 F. Supp. 3d 925 (D. Ariz. 2016) .............................................................................. 16

*Sidibe v. Sutter Health*,
2018 WL 783808 (N.D. Cal. 2018) ................................................................................. 14

- iii -

4910-7677-7378.v1

**Page**

*Stirratt v. Uber Techs., Inc.*,
  2024 WL 1723710 (N.D. Cal. 2024) ............................................................. 10, 11

*Tsantes v. BioMarin Pharm. Inc.*,
  2022 WL 17974487 (N.D. Cal. 2022) ..................................................................... 9

*United States v. Christensen*,
  828 F.3d 763 (9th Cir. 2015) ................................................................. 1, 4, 7

*United States v. Richey*,
  632 F.3d 559 (9th Cir. 2011) ......................................................................... 3

*United States v. Rite Aid Corp.*,
  2021 WL 1196250 (E.D. Cal. 2021)................................................... 7, 9, 10

*United States v. Ruehle*,
  583 F.3d 600 (9th Cir. 2009) ......................................................................... 3

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981)...................................................................................... 14

*Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*,
  647 F.2d 18 (9th Cir. 1981) ........................................................................... 3

**STATUTES, RULES, AND REGULATIONS**

Federal Rules of Civil Procedure
  Rule 26 ....................................................................................................... 3, 7

4910-7677-7378.v1

Lead Plaintiffs United Association National Pension Fund and Saskatchewan Healthcare Employees' Pension Plan move for an order: (i) finding Defendants' privilege log furnished on April 9, 2026 (the "Log") is insufficient to substantiate their claims; (ii) compelling Defendants to produce the improperly withheld documents identified in Appendix A (Ex. 1) ("App. A") and/or to submit these documents for *in camera* review; and (iii) appointing a Special Master to review Defendants' privilege assertions.[1]

## I.    INTRODUCTION

As with the scope of discovery and search-term processes, Defendants have misused the privilege process to withhold tens of thousands of relevant, non-privileged documents, thereby obstructing Plaintiffs' ability to obtain core merits discovery and prepare for depositions.  The record reveals a breakdown in Defendants' privilege review that is as stark as it is undisputed: (i) Defendants withheld more than 56,000 documents for privilege (absent families), yet initially logged only 2.5% of them; (ii) after Plaintiffs challenged obvious defects, Defendants were forced to produce ***more than 8,000*** supposedly "privileged" documents – an admitted error rate exceeding 11%; (iii) Defendants revised their privilege log ***nine times in eight weeks***; and (iv) Defendants concede their review process was compromised by a "vendor issue," yet never conducted an independent re-review of the affected documents, relying instead on limited spot-checking.  Though Plaintiffs' challenges have led Defendants to produce more than 8,000 improperly withheld documents and provide numerous amended logs, the Log remains facially deficient, internally inconsistent, and irreconcilable with Ninth Circuit law.  Defendants have done little more than apply "lipstick on a pig" to fundamentally defective privilege assertions.

***First***, the Ninth Circuit is clear that privilege claims "must be made and sustained on a . . . ***document-by-document basis*** [as] a blanket claim of privilege is unacceptable." *United States v. Christensen*, 828 F.3d 763, 803 (9th Cir. 2015).  But Defendants' Log does precisely what *Christensen* forbids: it indiscriminately lumps ***48,666*** documents into nine overbroad and

[1]    "Defendants" are Carvana Co. ("Carvana" or the "Company"), Ernest Garcia III ("Garcia Jr."), Mark Jenkins ("Jenkins"), Stephen Palmer, Michael Maroone, Neha Parikh, Ira Platt, and Greg Sullivan.  Unless otherwise specified, all emphasis is added, citations are omitted, and "Ex. __" citations are to the Declaration of Rachel A. Cocalis in Support of Lead Plaintiffs' Motion to Compel, concurrently filed herewith.

- 1 -

amorphous "categories," offering only nine vague, conclusory, and repetitive descriptions to substantiate their privilege claims in bulk.[2]  In practical terms, Defendants ask the Court to accept tens of thousands of privilege determinations on faith, without the information required to test even a single one.  Such *ipse dixit* assertions do not satisfy Defendants' burden and prevent Plaintiffs and the Court from testing the validity of any individual claim of privilege.

***Second***, Defendants' approach is particularly egregious given that the vast majority of the withheld materials concern Carvana's in-house counsel's communications.  The Ninth Circuit requires the privilege proponent to show each communication was made for a legal, as opposed to a business, purpose.  Thus, courts examine privilege claims involving in-house attorneys with "heightened scrutiny" as they "act as integral players in a company's ***business*** decisions or activities, as well as its ***legal*** matters." *See Oracle Am., Inc. v. Google, Inc.*, 2011 WL 3794892, at *4 (N.D. Cal. 2011).  Defendants do not attempt to meet this standard, reflexively labeling swaths of business communications as legal based solely on the presence of in-house counsel.

***Third***, Defendants take the same improper approach to email attachments, withholding thousands of plainly non-privileged documents without the required document-specific basis for doing so.  Instead, lacking evidence, Defendants claim that each parent email seeks legal advice and each corresponding attachment would reveal that advice.  But their Log does not provide the information necessary to test that blanket claim, and the record proves otherwise.  And even if a parent were privileged, it is black-letter law that facts are not privileged.  Defendants cannot categorically withhold otherwise discoverable business records just because they were attached to a purportedly privileged email.

***In sum***, Defendants' improper categorical assertions have proven unreliable time and again.  This is not a close call.  The undisputed record shows that Defendants' privilege claims are procedurally deficient and substantively unreliable, warranting *in camera* review of at minimum those exemplar documents identified in Appendix A.  Further, because the close of fact discovery is near and the Motion implicates thousands more documents, Plaintiffs request the appointment of

---

[2]   Defendants' Log includes tens of thousands of documents that are merely embedded images, *i.e.*, blank pages and logos.  While none of these embedded images could be privileged, Plaintiffs have not included them in their document counts.

- 2 -

4910-7677-7378.v1

a Special Master if the Court's review of the record and/or exemplar documents in Appendix A suggests Defendants "improperly asserted the attorney-privilege in a manner that calls into question the reasonableness of their assertion of attorney-client privilege to the remaining documents" on the Log. *Fosbre v. L.V. Sands Corp.*, 2016 WL 183476, at *11 (D. Nev. 2016).

## II.    LEGAL STANDARDS

### A.    The Attorney-Client Privilege

The attorney-client privilege protects only those confidential, attorney-client communications made to obtain or provide legal advice. *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). "'Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed.'" *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). The withholding party bears the burden of establishing each element of the privilege with competent evidence under the "well-established eight-part test":

> "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived."

*Id.* at 607-08; *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).

### B.    The Work Product Doctrine

The work product privilege protects "'mental impressions, conclusions, opinions, or legal theories of a party's attorney' that were 'prepared in anticipation of litigation or for trial.'" *Am. C.L. Union of N. Cal. v. U.S. Dep't of Just.*, 880 F.3d 473, 483 (9th Cir. 2018). A document is protected only if it was "'prepared in anticipation of litigation or for trial.'" *Id.* Documents with a "non-litigation (*e.g.*, business) purpose" are protected only if they "'would not have been created in substantially similar form but for the prospect of that litigation.'" *Merrell v. Tapestry, Inc.*, 2026 WL 797139, at *6 (C.D. Cal. 2026). The proponent bears the burden of substantiating the privilege, which cannot be "'asserted in a blanket fashion.'" *Briggs v. Cnty. of Maricopa*, 2021 WL 1192819, at *8 (D. Ariz. 2021).

### C.    Privilege and Protection Assertions Must Be Specific and Unique

Consistent with Rule 26, the Ninth Circuit has held that a privilege log must include for

- 3 -

each claim: (1) the attorney and client involved; (2) the nature of the document; (3) all persons or entities shown on the document to have received or sent the document; (4) the date the document was generated, prepared, or dated; and (5) information on the subject matter of each document sufficient for a party to meet its burden of demonstrating the asserted privilege. *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992). But "the court did not authorize general boilerplate objections as a proper method of asserting the privilege." *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for the Dist. of Mont.*, 408 F.3d 1142, 1148 (9th Cir. 2005). Rather, claims "must be made and sustained on a . . . ***document-by-document basis***." *Christensen*, 828 F.3d at 803; *see also Clarke v. Am. Com. Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) ("[t]he privilege must ordinarily be raised as to ***each record*** sought"). Thus, a log that relies on generalized descriptions, categorical groupings, or conclusory assertions – rather than document-specific facts – fails as a matter of law, as it deprives the opposing party of any meaningful ability to test the claim and prevents the Court from performing its gatekeeping function.

## III.    RELEVANT BACKGROUND

### A.    Defendants Unjustifiably Delay Providing a Privilege Log

Defendants served their responses and objections to Plaintiffs' document requests on April 10, 2025, and began their rolling document productions in June 2025, but did not provide corresponding rolling privilege logs.[3] In November 2025, Defendants told this Court they had been "working . . . since ***March***" ***2025***, with "over 70 contract reviewers" assisting "them in a ***privileged review***." ECF 215 at 42:3-4, 44:10-12. By December 2025, Defendants represented to Judge Liburdi that they had substantially completed productions for the first 18 custodians and informed Plaintiffs that they had withheld more than 56,304 documents (102,372 including families) from these productions for privilege review. *See* ECF 243 at 33:13; Ex. 4 at 3. But Defendants did not produce a log in December or January. *See, e.g.*, Ex. 4 at 1-2. On February 13, 2026, Defendants finally produced an "initial" "Categorical Privilege Log." Ex. 5 at 1. But

---

[3]    In connection with Plaintiffs' meet and confers with Kirkland & Ellis LLP in response to Plaintiffs' third-party subpoena, Defendants produced a limited categorical log on October 31, 2025 solely to allow Plaintiffs to assess Defendants' assertion of privilege over all communications with Kirkland & Ellis. *See* Ex. 2 at 1; Ex. 3 at 2. Plaintiffs were stunned that Defendants were only producing a Kirkland & Ellis log at that juncture. *See* Ex. 4 at 3-4.

this log reflected just 2.5% of their withheld documents and was in a categorical form flatly inconsistent with Ninth Circuit authority – a position Plaintiffs had raised *a year earlier* without *any* objection from Defendants.  *See* Ex. 6 at 4-5.

### B.    Defendants Produce Woefully Deficient Amended Logs

On February 28, 2026, Defendants produced an amended version of the February 13 "Categorical Privilege Log," and an additional, overlapping "Categorical Privilege Log." Ex. 7 at 1.  The amended logs did almost nothing to address the deficiencies identified in Plaintiffs' February 21, 2026 letter.  Indeed, ignoring Plaintiffs' concerns about categorical logging, the logs continued to rely on nine boilerplate descriptions to justify withholding thousands of documents and communications that, on their face, appeared to be related to business rather than legal concerns.  Each categorical description purported to describe hundreds or in some cases tens of thousands of documents as containing legal advice concerning generic topics like board materials and investor communications, without providing any document-specific facts to substantiate those claims.

Four days later, Defendants served more amended versions of their logs.  While they removed over 300 improperly withheld documents, Defendants stated they would not meaningfully amend the logs further, asserting that their logs were sufficient and did not contain communications with third parties.  Ex. 8; Ex. 9 at 3-4.  ***Tellingly, however, Defendants began removing the term "Categorical" from their log titles***, even as the logs still relied on the same impermissible, category-based assertions rather than document-by-document showings.

### C.    Defendants Concede Their Unreasonably Delayed Amended Logs Are Unreliable Due to a "Vendor" Error

Recognizing that their amended categorical logs were still woefully deficient, Defendants removed approximately 7% of the entries as a token gesture and served yet another categorical log on March 17, 2026.  This log was so inaccurate Defendants replaced it within hours.

During meet and confers on March 17 and March 20, 2026, Defendants conceded that even these amended logs were unreliable, as they were "putting out the fire" from a "vendor issue." Ex. 10 at 2.  Specifically, Defendants admitted to hiring a third-party vendor (the "Vendor") to review

- 5 -

communications for potential privilege. *Id.* They further admitted that the Vendor made systematic errors, including improperly designating third-party communications as privileged. *Id.* Defendants instructed the Vendor to re-review those improper designations but failed to provide correct guidance and information. *Id.* Worse yet, after the Vendor again returned materially flawed privilege determinations, Defendants did ***not*** conduct a full, independent re-review. *Id.* Instead, they merely performed a limited spot-check, leaving countless erroneous designations and forcing Plaintiffs to identify obvious defects themselves. *Id.* at 2. Put simply, Defendants knowingly relied on a review process they understood to be defective, then failed to correct it before asserting privilege over tens of thousands of documents.

In response to Plaintiffs' repeated challenges and the "vendor issue," Defendants agreed to produce a log reflecting their actual claims by March 30, 2026. As Defendants knew, Plaintiffs could not evaluate Defendants' privilege claims in earnest or bring a motion before the Court without one. But again, absent any explanation, Defendants did not timely produce a log. Defendants finally produced an amended log on April 7, 2026. But just two days later, they produced yet ***another*** version, confirming the unreliability of the April 7 log. Though Defendants removed thousands of improperly designated documents, the Log still suffered from the issues Plaintiffs raised months before. *See* Ex. 11 at 3-5.

At bottom, this record reflects that Defendants have never conducted a reliable privilege review. More than a year into discovery, and without addressing Plaintiffs' year-old objection to a categorical log, Defendants produced categorical logs riddled with errors, including more than 8,000 non-privileged documents – an error rate exceeding 11%. Worse, they continued to provide a new, equally deficient log every few days, effectively preventing Plaintiffs from identifying a stable set of privilege assertions to challenge and from seeking timely judicial relief. Thus, while Defendants still attempt to string Plaintiffs along to discovery's end by claiming they are re-reviewing documents Plaintiffs identified in February, Plaintiffs request the Court's immediate intervention to resolve this matter and prevent further prejudice to Plaintiffs.

## IV.    ARGUMENT

### A.    Defendants Have Failed to Substantiate Their Privilege Claims

- 6 -

4910-7677-7378.v1

Defendants cannot meet their burden to assert the privilege or protection with particularity as their categorical Log fails to provide sufficient information from which Plaintiffs can assess their claims.  In the Ninth Circuit, categorical privilege assertions are "'extremely disfavored.'" *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 494 (C.D. Cal. 2022).  Privilege claims "must be made and sustained on a question-by-question or ***document-by-document basis***; a blanket claim of privilege is unacceptable." *Christensen*, 828 F.3d at 803; *see also Melendres v. Sheridan*, 2025 WL 3647977, at *2 (D. Ariz. 2025) ("It is hornbook evidentiary law that a party asserting the privilege has the burden of establishing all the elements of the privilege for ***each specific communication***."); *see also* Ex. 6 at 4-6 (citing cases).

Here, Defendants rely entirely on blanket assertions, dividing 48,666 documents into nine "▮▮▮▮▮▮▮" and relying on a generalized "▮▮▮▮▮▮▮▮▮▮" to withhold documents within each one.  App. A at 1.  These "▮▮▮▮▮" simply restate that the categories consist of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (Category 1), "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (Category 4), and "▮▮▮▮▮▮▮▮▮▮" (Category 6). *Id.*; *see, e.g.*, *Fed. Trade Comm'n v. Qualcomm Inc.*, 2018 WL 11420853, at *4 (N.D. Cal. 2018) (finding that "stating that a communication 'discloses legal advice' regarding 'QC business plans' is insufficient" to establish the privilege); *United States v. Rite Aid Corp.*, 2021 WL 1196250, at *9 (E.D. Cal. 2021) ("vague" claim that "redactions reflect[ed] discussions involving in-house counsel 'regarding corporate governance matters' and 'legal advice regarding board members' compensation'" insufficient).

By design, these categorical descriptions eliminate the very information Rule 26 requires (who was involved, what was communicated, and why the communication was primarily legal), thereby preventing any meaningful evaluation of Defendants' claims.  Defendants fail to provide basic information, such as the title or author, for thousands of documents.  For instance, over 1,500 Slack communications lack a title, and often fail to identify the relevant attorney (*see, e.g.*, App. A at PLOG00049252) – leaving Plaintiffs with no means to test whether these are communications

- 7 -

4910-7677-7378.v1

"soliciting, containing, or reflecting legal advice." *See Grand Jury*, 974 F.2d at 1071 (requiring attorney identification and other information sufficient for a party to meet its burden). And the Log does not include all the documents they are withholding.

The practical consequence is straightforward: Defendants have asserted privilege over tens of thousands of documents without supplying the information necessary to carry their burden as to any of them. Regardless of their transparent attempt to relabel their "categorical" log, Defendants' blanket approach and nine conclusory categories are not only plainly insufficient to enable Plaintiffs to assess their claims, but also irreconcilable with Ninth Circuit authority. Thus, because Defendants still fail to substantiate their burden after months of delays, amendments, and admissions of error, they have waived their claims. *See RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 2022 WL 422824, at \*16 (C.D. Cal. 2022) (finding defendants had waived privilege where they "still had not complied with the obligation to provide information supporting the privilege as of . . . three and a half months after [they] served their responses"); *Burlington N.*, 408 F.3d at 1149 (affirming order finding waiver where defendants provided their privilege log "***five months***" after their discovery responses) (emphasis in original).[4] Further, as discussed below, this pervasive failure of proof is especially problematic for two types of withheld documents on the Log: in-house communications and email attachments.

### 1. Defendants Fail to "Clearly Show" that the Withheld Communications Were Made *Primarily* for Legal Advice

The vast majority of the Log entries reflect communications involving in-house counsel. Courts must apply the "'primary purpose'" test to determine whether communications such as these are privileged. *In re Grand Jury*, 23 F.4th 1088, 1092 (9th Cir. 2021). Thus, the privilege only applies if "the ***primary*** purpose of the communication is to give or receive ***legal*** advice, as opposed to ***business*** . . . advice." *Id.* at 1091. Further, courts apply "heightened scrutiny" to communications with in-house counsel, who "act as integral players in a company's business decisions or activities, as well as its legal matters." *Oracle*, 2011 WL 3794892, at \*4. There is

---

[4] As discussed below, Defendants should not be afforded the opportunity to generate a ***tenth*** log to cure deficiencies they have long known about. Plaintiffs put Defendants on notice more than a year ago that a categorical log was inappropriate, and there is now less than four months of discovery left for Plaintiffs to take 29 depositions.

- 8 -

"no presumption" that "in-house" counsel's "communications were made for the purpose of obtaining or providing legal advice." *Qualcomm*, 2018 WL 11420853, at *3-*4.

To satisfy this heightened scrutiny, Defendants "'must make a "***clear showing***" that the "speaker" made the communications for the purpose of obtaining or providing legal advice.'" *Id.* at *3; *City of Roseville Emps.' Ret. Sys. v. Apple Inc.*, 2022 WL 3083000, at *9 (N.D. Cal. 2022) (same); *Tsantes v. BioMarin Pharm. Inc.*, 2022 WL 17974487, at *1 (N.D. Cal. 2022) (same). "[V]ague and generic" descriptions are insufficient. *Qualcomm*, 2018 WL 11420853, at *4-*5 (finding assertions, such as "'email chain reflecting a request for legal advice' regarding some topic . . . [and] 'email chain disclosing a request for legal advice regarding . . . business plans'" insufficient); *see also Rite Aid*, 2021 WL 1196250, at *9 (claim that communication with counsel concerned "'corporate governance'" was insufficient).

Here, Defendants' categorical Log fails to make any showing – let alone a "clear showing" – that the withheld communications were made for the primary purpose of seeking legal advice. Instead, Defendants rely on sweeping labels applied to thousands of documents at once, without identifying the specific communication, participants, or context necessary to establish a legal purpose. That failure surfaces most egregiously in Categories 1, 4, 6, and 8-9, as set forth below and in Appendix A. In fact, as detailed below, many of the documents in these categories lack any indicia of legal advice.

Further, while preparing this Motion, Plaintiffs identified multiple documents that Defendants both produced in discovery and designated as privileged on their privilege log, creating an inconsistency in Defendants' privilege assertions. Although Plaintiffs dispute that these documents are privileged, and believe they do not reflect attorney-client communications or work product within the meaning of governing law, Plaintiffs have not used the documents substantively. Consistent with the Court's Protective Order, and to the extent it was reasonably apparent that Defendants were asserting privilege over these materials, Plaintiffs promptly notified Defendants and have sequestered the documents pending the Court's determination. Ex. 12. Plaintiffs have refrained from any further review beyond what was necessary to identify the issue.

This issue is not academic. Defendants should not be permitted to produce documents and

4910-7677-7378.v1

simultaneously shield them from use through unresolved privilege designations, as doing so prejudices Plaintiffs' ability to present a complete evidentiary record. Plaintiffs therefore respectfully request that the Court determine the privilege status of these documents and, if the Court concludes they are not privileged, permit Plaintiffs to rely on them in their reply.[5]

**Category 1**: Defendants claim all 2,772 documents in Category 1 reflect ████████ ████████████████████████████████████ App. A at 1. This overly-broad description is plainly deficient, as these subjects are quintessential business functions. Courts routinely find that defendants cannot meet their burden by invoking these identical labels. *See, e.g.*, *Rite Aid*, 2021 WL 1196250, at *9 (finding descriptions such as reflecting legal advice related to "'corporate governance'" insufficient as it "relate[s] to typical business operations"); *Stirratt v. Uber Techs., Inc.*, 2024 WL 1723710, at *5 (N.D. Cal. 2024) ("Board meeting minutes involving in-house counsel are not privileged ***unless*** the party asserting privilege can show that the communications were for the primary purpose of providing or obtaining legal advice.").

Further, a cursory review of entries in Category 1 confirms a majority of them do not contain any indicia of a primary legal purpose. To the contrary, the email subject lines and attachment titles are generic or reference business-related communications (*e.g.*, "████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████"). *See* App. A at PLOG00010487-488, PLOG00005332, PLOG00012756, PLOG00010028; *see also Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 864-65 (N.D. Cal. 2019) (finding business-related subject lines and generic descriptions, like "'email reflecting legal advice regarding the scope of the audit'" demanded *in camera* review). Accordingly, Plaintiffs' Motion should be granted.

**Category 4**: Defendants claim all 4,363 documents in Category 4 reflect ████████ ████████████████████████████████████████ App. A at 1. Again, Defendants cannot satisfy their burden by invoking this overly-broad description, as courts

---

5 While Plaintiffs challenge the sufficiency of Defendants' entire Log, at this juncture, they are not challenging entries related to Categories 2-3, 5, and 7. Plaintiffs reserve the right to raise entries in these categories with the Special Master, if appointed.

4910-7677-7378.v1

repeatedly recognize that investor communications and regulatory filings necessarily implicate business concerns. *See Roseville*, 2022 WL 3083000, at *9, *12 (reviewing withheld communications concerning investor letters for a "clear showing" of a legal purpose and ordering the production of certain documents); *In re Cal. Bail Bond Antitrust Litig.*, 778 F. Supp. 3d 1051, 1060 (N.D. Cal. 2025) (finding communications were not privileged as "[a]n attorney's advice does not constitute legal advice simply because it relates to regulatory activity").

In addition, the Log entries contain subject lines or attachment titles indicating a primary business purpose (*e.g.*, "███████████████████████████████," "██████████ ████████████████████████████████████"). *See, e.g.*, App. A at PLOG00046368, PLOG00043386, PLOG00055086-087. These examples, among others, suggest that Defendants have improperly cloaked emails not because they are privileged but because they are inculpatory.[6]  In sum, Defendants have failed to carry their burden with regard to the documents in Category 4.

**Category 6**: Defendants claim these 2,401 documents reflect ██████████████ █████████████████████████ App. A at 1.  But Defendants cannot meet their burden by relying on this blanket assertion, as corporate transactions invariably involve discussions of business-related information such as revenue projections and financing costs. As such, courts have routinely held that there is no presumption of privilege for communications with in-house counsel about such transactions. *See, e.g.*, *Stirratt*, 2024 WL 1723710, at *6 ("General Counsel West may have led the board's discussion about the business transaction, but there is no presumption that

[6] ██████████████████████████████████████ ████████████████████████████ describ ████████████ ████████████████████████████████████████ asis in original).  ████████████████ "Carvana has not heard from the SEC on this investigation since April of 2020," and categorically denied that any SEC "investigation may have been continuing" during the Class Period, asserting "there's no basis behind that, and that's just not the case." ECF 257 at 44:9-24; *id.* at 48:2-6 ("SE ███████████████████████████

discussions led by in-house counsel involve legal advice.").  Moreover, the email subject lines and attachment titles for log entries are useless or indicate that the communications were sent for business purposes (*e.g.*, "████████████████████████████ ████████████████████████████").  *See* App. A at PLOG00057927, PLOG00058003.  In sum, Plaintiffs' Motion should be granted as Defendants' *ipse dixit* cannot substantiate their claims that all the withheld communications were made **primarily** for legal purposes.

**Category 8**: Defendants claim these documents entail legal advice related to ██████████ ████████████████  App. A at 1.  But this blanket assertion cannot establish the requisite "clear showing" as the resolution of customer queries or complaints is a business function.  *See, e.g.*, *In re Chase Bank USA, N.A. "Check Loan" Cont. Litig.*, 2011 WL 3268091, at *3 (N.D. Cal. 2011) (granting motion to compel because "[f]orwarding 'draft customer service training materials' to a lawyer does not create a privilege when the exact same materials are being forwarded to a significant number of non-legal personnel"); *id.* at *5 ("[d]rafts of a guide 'prepared to assist customer service representatives in their conversations with customers' that were previously 'subject to legal review' are not privileged . . . without a context suggestive of a legal purpose").  And again, the email subject lines indicate that the communications were sent primarily, if not solely, for business purposes (*e.g.*, "████████████████████████████ ████████████████████████████████████████████████████ ████████████").  *See, e.g.*, App. A at PLOG00062968, PLOG00063385.  Defendants' theory would effectively immunize routine customer service communications from discovery whenever counsel is copied, an outcome the law does not permit.

**Category 9**: Defendants allege all 1,062 withheld documents entail legal advice related to ████████████████████████████████████  App. A at 1.  But media communications are a core business function of a public company.  Thus, Defendants' mere inclusion of in-house counsel (if at all) on such conversations cannot satisfy the primary purpose test.  *See, e.g.*, *Garner v. Amazon.com, Inc.*, 2024 WL 4266665, at *4 (W.D. Wash. 2024) ("Including an attorney on a distribution list or requesting that he or she 'advise' on a business, operational, technical, strategic, or public relations document is insufficient to confer the privilege.").  Further, the subjects and

- 12 -

attachment titles indicate that the communications were sent for business purposes (*e.g.*, "███████ ██████████████████████████████," "███████████████████ ██████████████████████████"). *See, e.g.*, App. A at PLOG00066236-239, PLOG00066224. Simply put, the Log reflects form-based withholding untethered to the substance of the communications.

In sum, Defendants' categorical Log provides nowhere near the level of specificity required to show that the withheld communications were primarily made for legal rather than business purposes. Indeed, none of the documents listed in Appendix A appear to have any conceivable legal purpose at all. The Motion should be granted.

### 2. Defendants Are Withholding Non-Privileged Attachments

Defendants are improperly withholding tens of thousands of non-privileged email attachments without identifying any document-specific basis for privilege or protection. District courts in this Circuit consistently hold that "'[a]ttachments which do not, by their content, fall within the realm of the [attorney-client] privilege cannot become privileged by merely attaching them to a communication with the attorney.'" *Our Child.'s Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1088 (N.D. Cal. 2015) (alteration in original); *see also Hanson v. Wells Fargo Home Mortg., Inc.*, 2013 WL 5674997, at *4 (W.D. Wash. 2013) ("Documents attached to or included in an attorney[-]client communication are not automatically privileged, and the party asserting privilege must prove that each attachment is protected by privilege."); *Kellman v. Whole Foods Mkt. Cal., Inc.*, 2021 WL 4476779, at *3 (N.D. Cal. 2021) (holding attachment "created a year before the parent email was authored" to a privileged communication did not necessarily confer privilege as to the attachment).

Here, Defendants are improperly withholding, *inter alia*, third-party analyst reports, public filings and shareholder letters, and Board presentations. *See, e.g.*, App. A at PLOG00005332, PLOG00046369, PLOG00045702-709, PLOG00050592-593, PLOG00051083-084. To start, as shown *supra*, Defendants failed to "prove that each attachment is protected by the privilege" through their blanket, categorical descriptions. *Bruno v. Equifax Info. Servs., LLC*, 2019 WL 633454, at *8 (E.D. Cal. 2019) (ordering defendant to produce attachments "sent in relation to

- 13 -

4910-7677-7378.v1

privileged emails," as it failed to make its required showing that "the information in each email attachment is protected"). That failure alone is dispositive. Regardless, Defendants have claimed "that every time someone is emailing an attachment to in-house counsel, they're asking in the body of the email for legal advice about the attachment," and thus production of the attachment would reveal the legal advice sought. Ex. 14 at 2. That sweeping assertion is both factually incorrect and legally untenable.

First, the countless de-designations, email subject lines, and attachment titles clearly show that Defendants undeniably withheld attachments regardless of whether the parent email reflected a request for legal advice.[7] Second, even if the non-privileged documents were attached to emails seeking legal advice (they weren't), those documents do not automatically become privileged as "[t]he privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). The Supreme Court made clear "pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice." *Fisher v. United States*, 425 U.S. 391, 403-04 (1976). Thus, "a document that was not privileged in the client's hands cannot magically become privileged merely by sending it to an attorney in search of legal advice." *Doe v. Intermountain Health Care, Inc.*, 2021 WL 425117, at *2 (D. Utah 2021); *see also Kellman*, 2021 WL 4476779, at *3 (rejecting similar claim that attaching documents "created a year before the parent email was authored" conferred privilege as to the attachment).

This rule makes good sense. Without it, an executive could attach any non-privileged attachment to a privileged email – regardless of the attachment's relevance to his legal request – just to cloak it in secrecy. That is precisely what Defendants' position would permit. Tellingly, they have agreed to produce a standalone version of a withheld attachment but only if it "is in the

---

[7]    Relatedly, Defendants also improperly withheld entire email chains as opposed to redacting the purportedly privileged portion of the chain. *Sidibe v. Sutter Health*, 2018 WL 783808, at *3 (N.D. Cal. 2018) (ordering defendant to produce redacted email chain, as several emails in the chain involved "business strategies"); Ex. 6 at 7-8.

- 14 -

possession of a custodian, hits on a search, and is responsive" (just not attached to a purportedly privileged email). Ex. 15 at 6. That concession is fatal: it acknowledges that the document itself is not privileged yet attempts to withhold it based solely on the manner in which it was transmitted. If an attachment is on the privilege log, it is because it is relevant and responsive to Plaintiffs' document requests. Defendants cannot withhold it by either attaching it to a purportedly privileged email or by claiming that the document must otherwise independently meet the additional hurdles of being in a custodian's possession, including a search term, and meeting Defendants' additional responsiveness determination.

Because Defendants have repeatedly failed to substantiate their privilege claims as to broad swaths of attachments, they have demonstrated that they improperly and indiscriminately designated attachments as privileged absent an independent basis.

### B.    The Court May Review a Sample of Documents *in Camera*

To the extent that the Court does not find that Defendants have failed to substantiate their privilege claims and thus waived any claims of privilege (they have), Plaintiffs respectfully request that the Court review the documents *in camera*, rather than allow the Defendants yet another opportunity to amend the Log. A tenth revision would not cure the problem; it would only further delay production of concededly non-privileged documents and compound the prejudice Defendants have already caused. And there is no time for Defendants to materially amend their log, produce the countless non-privileged documents currently on it, and allow Plaintiffs to raise any disputes related thereto before the close of fact discovery. Plaintiffs have less than four months to complete fact discovery, including taking 29 depositions. Thus, absent immediate intervention, Plaintiffs' ability to assess and test asserted privileges in deposition will be materially impaired and has already been prejudiced. *Aecon Bldgs., Inc. v. Zurich N. Am.*, 253 F.R.D. 655, 659 (W.D. Wash. 2008) (finding defendants' "failure to produce, until the eleventh hour, a privilege log documenting those portions of the claim file attributable to [a deponent] that it withheld on the basis of privilege, [to be a] clear violation[] of the discovery rules").

Further, Plaintiffs have readily met the low bar for an *in camera* review. Courts may review documents *in camera* if a party meets the "minimal threshold" of showing "a factual basis

- 15 -

sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *Grand Jury*, 974 F.2d at 1074-75. A party may meet its burden by pointing to deficient log entries (*Adobe*, 402 F. Supp. 3d at 864), or raising "doubts about [the proponent's] care in asserting the attorney-client privilege." *Fosbre*, 2016 WL 183476, at *9 (ordering *in camera* review, as "Defendants' withdrawal of privilege assertions with respect to a significant number of documents raises legitimate doubts about its care in asserting the attorney-client privilege").

Here, Defendants have already been forced to de-designate more than 8,000 documents, confirming that their assertions are over-inclusive and unreliable. In addition, Defendants' ninth categorical log still fails to provide the information necessary to carry Defendants' burden. To the contrary, when provided, the email subject lines and attachment titles suggest that the withheld materials are mere business communications. Accordingly, because the record "demonstrate[s] that rather than evaluate the content of a communication involving a company attorney to determine whether it was privileged, Defendant[s] simply withheld such communications solely because a company attorney was named on the email," Plaintiffs have readily satisfied the modest showing required for *in camera* review. *Sell v. Country Life Ins. Co.*, 189 F. Supp. 3d 925, 936 (D. Ariz. 2016).

For the same reasons, Plaintiffs further request the appointment of a Special Master if the Court's review of the record and/or Appendix A *in camera* indicates Defendants have "improperly asserted the attorney-privilege in a manner that calls into question the reasonableness of their assertion of attorney-client privilege to the remaining documents." *Fosbre*, 2016 WL 183476, at *11; *Affinity Credit Union v. Apple Inc.*, 2026 WL 323303, at *1 (N.D. Cal. 2026) (appointing special master given plaintiffs' "high-level challenges to tens of thousands of entries" and "to resolve such a dispute in a timely fashion"). That relief is particularly warranted here, where Defendants' shifting logs, admitted review failures, and repeated withdrawal of improper designations have called into question the reliability of the remaining privilege assertions across tens of thousands of documents. Further, to expedite review in advance of depositions, the Special Master should start with tranches of "priority documents" identified by Plaintiffs or the Court.

- 16 -

*See, e.g., Epic Games, Inc. v. Apple Inc.*, 781 F. Supp. 3d 943, 959 (N.D. Cal.) (initial review of 1,000 "priority documents"), *aff'd in part, reversed in part on other grounds by*, 161 F.4th 1162 (9th Cir. 2025).

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be granted.

DATED:  April 27, 2026

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP

s/ DANIEL S. DROSMAN
DANIEL S. DROSMAN

DANIEL S. DROSMAN
(Admitted *pro hac vice*)
TOR GRONBORG
(Admitted *pro hac vice*)
ERIKA L. OLIVER
(Admitted *pro hac vice*)
RACHEL A. COCALIS
(Admitted *pro hac vice*)
MATTHEW J. BALOTTA
(Admitted *pro hac vice*)
SARAH A. FALLON
(Admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
ddrosman@rgrdlaw.com
torg@rgrdlaw.com
eoliver@rgrdlaw.com
rcocalis@rgrdlaw.com
mbalotta@rgrdlaw.com
sfallon@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ROBERT M. ROTHMAN
(Admitted *pro hac vice*)
DAVID A. ROSENFELD
(Admitted *pro hac vice*)
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
rrothman@rgrdlaw.com
drosenfeld@rgrdlaw.com

- 17 -

4910-7677-7378.v1

ROBBINS GELLER RUDMAN
  & DOWD LLP
MATHEW ANDREWS
(Admitted *pro hac vice*)
420 Lexington Avenue, Suite 1832
New York, NY  10170
Telephone:  212/432-5100
mandrews@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SCOTT I. DION
(Admitted *pro hac vice*)
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdion@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

O'DONOGHUE & O'DONOGHUE LLP
DINAH S. LEVENTHAL
5301 Wisconsin Avenue, N.W., Suite 800
Washington, D.C.  20015
Telephone:  202/362-0041
202/362-2640 (fax)
dleventhal@odonoghuelaw.com

Additional Counsel for Lead Plaintiffs

BONNETT FAIRBOURN FRIEDMAN
  & BALINT PC
ANDREW FRIEDMAN
7301 N. 16th Street, Suite 102
Phoenix, AZ  85020
Telephone: 602/274-1100
602/274-1199 (fax)
afriedman@bffb.com

Local Counsel

- 18 -