# EXHIBIT 6
# [Redacted]

**Robbins Geller Rudman & Dowd LLP**

| | | | | |
|---|---|---|---|---|
| Chicago | Melville | Nashville | San Diego | Wilmington |
| Boca Raton | Manhattan | Philadelphia | San Francisco | Washington, D.C. |

Mathew Andrews
mandrews@rgrdlaw.com

February 21, 2026

<u>VIA EMAIL</u>

Matthew J. Peters
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004
matthew.peters@lw.com

Re:   *In re Carvana Co. Securities Litigation*,
No. CV-22-2126-PHX-MTL (D. Ariz.)

Dear Matt:

I write regarding the February 12, 2026 privilege log produced by the Carvana Defendants ("Privilege Log" or "Log").[1]  As detailed below, the Privilege Log is facially deficient, procedurally improper and substantively unsupported, and it fails to satisfy Rule 26(b)(5)(A) or governing Ninth Circuit authority.  Unless promptly corrected, Plaintiffs will seek relief from the Court.

## I.   The Carvana Defendants' Privilege Log Is Untimely and Prejudicial

The Carvana Defendants' delay in producing a complete Privilege Log is improper and prejudicial.  Nearly two months ago, the Carvana Defendants represented that they were withholding *102,372* documents, including families, on privilege grounds.  *See* C. Word 12-23-25 Email.  Yet this February 12 Privilege Log accounts for only approximately *7,110* documents.  In other words, well over 90,000 withheld documents remain unlogged.

The timing is equally troubling.  The Log was produced:

- Nearly one year into discovery;

- More than ten months after the Carvana Defendants served their responses to Plaintiffs' requests for production;

---

[1]   The "Carvana Defendants" are Carvana Co., Ernest Garcia III, Mark Jenkins, Stephen Palmer, Michael Maroone, Neha Parikh, Ira Platt, and Greg Sullivan.  Unless otherwise noted, all emphasis is added and citations are omitted.

**Robbins Geller**
**Rudman & Dowd** LLP

Matthew J. Peters
February 21, 2026
Page 2

- More than two months after the Carvana Defendants' substantial completion date for the first 18 custodians; and

- Just 15 days before the Carvana Defendants' substantial completion date for the additional seven custodians.

This delay cannot be reconciled with the Carvana Defendants' November 17, 2025 representation to the Court that counsel had been "working . . . since March" collecting and reviewing documents for the first 18 custodians, with "over 70 contract reviewers" assisting "them in a privileged review."  11-17-25 Hr'g. Tr. at 42:3-4, 44:10-12.

Courts routinely reject precisely this type of eleventh-hour logging.  *See, e.g.*, *Bullion Monarch Mining, Inc. v. Newmont USA Ltd.*, 271 F.R.D. 643, 652 (D. Nev. 2010) (finding it "disturbing" that defense counsel "told the court at the October 5, 2009 hearing that as many as six lawyers had spent the summer reviewing the many thousands of documents for relevance and ***privilege***" and yet the log was not reviewed for another three months) (emphasis in original).  The concern here is not theoretical.  Judge Liburdi has already warned Defendants against "sitting on thousands, maybe ten thousands of documents that they're going to dump on plaintiffs on [the substantial completion deadline]."  12-22-25 Hr'g. Tr. at 19:4-9.  That same prohibition applies with equal force to privilege logs.

As previously explained, if Plaintiffs have to begin depositions before privileged documents are logged and Plaintiffs have had a fair opportunity to review the entries and meet and confer with the Carvana Defendants regarding (and, if necessary, move on) any challenged entries, the prejudice is concrete: witnesses will have to be recalled once privilege disputes are resolved.  Courts recognize that such delay violates the discovery rules.  *Aecon Bldgs., Inc. v. Zurich N. Am.*, 253 F.R.D. 655, 659 (W.D. Wash. 2008) (finding defendants' "failure to produce, until the eleventh hour, a privilege log documenting those portions of the claim file attributable to [a deponent] that it withheld on the basis of privilege, [to be a] clear violation[] of the discovery rules"), *clarified on denial of reconsideration* (2008).  That prejudice is particularly acute here because the withheld set of documents for just the first 18 custodians on a limited number of search terms – 102,372 documents – approaches (and may exceed, when including families) the volume of documents the Carvana Defendants have produced to date (85,354 total documents, including families).

Accordingly, Plaintiffs request that the Carvana Defendants produce: (i) a complete document-by-document privilege log for all documents withheld for the first 18 custodians by February 27, 2026; and (ii) bi-weekly rolling, document-by-document privilege logs for all subsequently withheld documents.  This process will allow Plaintiffs to have a fair opportunity to review the log entries and meet and confer with the Carvana Defendants regarding (and, if necessary, move on) challenged entries, thus allowing Plaintiffs to proceed with depositions without doing so

**Robbins Geller
Rudman & Dowd** LLP

Matthew J. Peters
February 21, 2026
Page 3

from a materially prejudiced position from the start.[2]  Please confirm agreement to this process by February 24, 2026.

## II.   The Privilege Log Fails to Offer Sufficient Support for the Privilege Claims

Even setting aside completeness, the Log is facially deficient.  The Log fails to identify the authors of more than 5,100 withheld documents.  When authors are identified, the Log fails to specify whether the individual is an attorney, whether in-house or outside counsel, or a third party.  Compounding matters, the Privilege Log improperly relies on barebones entries and only three boilerplate, categorical descriptions for approximately 7,110 documents.  This is insufficient under the Federal Rules of Civil Procedure and well-established Ninth Circuit law.

### A.   The Privilege Log Fails to Identify the Attorneys Involved in the Purportedly Privileged Documents and Communications

The Privilege Log is woefully insufficient as it fails to identify the attorneys involved in each allegedly privileged document and communication.  The Carvana Defendants assert privilege over thousands of documents and communications involving approximately ***750 unique individuals***.  Yet the Log does not identify a single person as an attorney.  That failure to "indicate whether either the sender or recipient was an attorney or client" is a "plain violation of Rule 26(b)(5)(A)." *Morgan Hill Concerned Parents Ass'n v. Cal. Dep't of Educ.*, 2017 WL 445722, at *9 (E.D. Cal. 2017) (finding the logs "failed to provide even the minimal information plaintiffs and the court would need 'to assess the claim' of privilege"); *see also Smith v. Tex. San Marcos Treatment Ctr., LP*, 2010 WL 11508319, at *5 (D. Alaska 2010) ("Defendants must also provide Plaintiffs with the information about each author or recipient needed to determine whether the claimed privilege applies, including the individual's title, organizational or committee affiliation, and whether or not he or she is an attorney.").[3]

---

[2]   Plaintiffs reserve all rights to seek a modification of the schedule based on Defendants' unjustified delay.  *See* S. Fallon 01-28-26 Email.  Further, Plaintiffs reserve all rights to argue waiver to the extent that the Carvana Defendants' Privilege Log still does not address all of the 102,372 withheld documents identified on December 23, 2025.  *See RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 2022 WL 422824, at *16 (C.D. Cal. 2022) (finding defendants had waived privilege where they "still had not complied with the obligation to provide information supporting the privilege as of . . . three and a half months after [they] served their responses"); *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (affirming district court's ruling that defendants had waived privilege where they provided their privilege log "***five months***" after their discovery responses) (emphasis in original).

[3]   The Log entries should specify whether the attorney is ***in-house*** counsel or outside counsel.  This distinction is critical as it is well-established that communications involving in-house counsel

**Robbins Geller**
**Rudman & Dowd** LLP

Matthew J. Peters
February 21, 2026
Page 4

Worse yet, the Privilege Log fails to identify an author for more than ***5,100 withheld email attachments***. Without author, recipient, and role information, Plaintiffs – and the Court – cannot assess whether privilege applies. *See Jefferies Funding LLC v. Dasagroup Holdings Corp.*, 2025 WL 2611922, at *3 (N.D. Cal. 2025) (ordering defendant to amend privilege log to provide "author(s), recipient(s), date, and . . . sufficient textual description of the nature" of each attachment); *Helm v. Alderwoods Grp., Inc.*, 2010 WL 2951871, at *1 (N.D. Cal. 2010) ("The court agrees with plaintiffs that, without the names of the author(s) and recipient(s) of each document, plaintiffs cannot determine whether the attorney-client privilege applies.").

Accordingly, by no later than February 24, 2026, please confirm that for each withheld document in the Privilege Log and for all logs going forward, the Carvana Defendants will identify: (i) the authors, senders, and/or recipients of the document or communication; (ii) which of those individuals, if any, are attorneys (and whether in-house or outside counsel); (iii) which individuals are third parties, if any; and (iv) the specific privilege asserted (*e.g.*, attorney-client or work product).

**B.      The Privilege Log Improperly Relies on Boilerplate Categorical Descriptions**

The Log asserts privilege over more than 7,110 responsive documents using only three boilerplate ▌▌▌▌▌▌▌▌▌▌▌ That approach does not satisfy Defendants' burden to make a *prima facie* showing of privilege. *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992).

As an initial matter, Plaintiffs objected to the Carvana Defendants' assertion that a categorical log may be appropriate ten months ago. *See* R. Cocalis 04-16-25 Letter at 6 (objecting to the Carvana Defendants' suggestion that an appropriately tailored "categorical privilege log" is proper). Despite Plaintiffs' repeated requests that the Carvana Defendants address Plaintiffs' objections, the Carvana Defendants ignored Plaintiffs and never attempted to justify a categorical log. *See, e.g.*, R. Cocalis 05-15-25 Letter at 1 (noting the Carvana Defendants' failure to "address ***any*** of Plaintiffs' inquiries and/or proposals regarding the Carvana Defendants' R&Os" in its April 2024 letter, including Plaintiffs' objection to their use of a categorical log); *see also* R. Cocalis 06-04-25 Email (inquiring

---

"warrant[] heightened scrutiny" because "[i]n-house counsel may act as integral players in a company's business decisions or activities." *Oracle Am., Inc. v. Google, Inc.*, 2011 WL 3794892, at *4 (N.D. Cal. 2011); *accord Wisk Aero LLC v. Archer Aviation Inc.*, 2023 WL 2699971, at *4 (N.D. Cal. 2023). When "attempting to demonstrate that an internal communication involving in-house counsel deserves privileged status, a party therefore 'must make a "clear showing" that the "speaker" made the communication[] for the purpose of obtaining or providing ***legal*** advice.'" *Oracle Am.*, 2011 WL 3794892, at *4 (emphasis in original); *accord Wisk Aero*, 2023 WL 2699971, at *4. As discussed below, the Log's categorical descriptions fail to meet that burden.

**Robbins Geller**
**Rudman & Dowd** LLP

Matthew J. Peters
February 21, 2026
Page 5

about response to letters); L. Bays 06-10-25 Email (same); E. Oliver 06-11-25 Email (same); E. Oliver 06-17-25 Email (same); R. Cocalis 06-30-25 Letter (same). The Carvana Defendants' refusal to respond or even meet and confer with Plaintiffs about this issue (while secretly intending to produce a categorical log months after the substantial completion date) is inappropriate and prejudicial.[4]

> Second, blanket or categorical descriptions are "'extremely disfavored'" in the Ninth Circuit.
>
> [T]he Ninth Circuit has recognized that one method of expressly claiming attorney-client privilege or work product protection is a ***document-by-document*** privilege log. *See In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992) . . . . Blanket assertions of the attorney-client privilege are ***"extremely disfavored" in the Ninth Circuit***. *Clarke v. Am. Com. Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992). Rather, "[t]he privilege must ordinarily be raised as to ***each record*** sought to allow the court to rule with specificity." *Id.*; *see also United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982) (rejecting attempt to invoke privilege due in part to the failure to "particularize its assertion of the privilege" for ***each specific document***).

*RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 494 (C.D. Cal. 2022); *see also Clark v. City of L.A.*, 2023 WL 9687608, at *3 (C.D. Cal. 2023) (same and ordering defendant to provide a new privilege log).[5]

---

[4]   Tellingly, the Carvana Defendants watched and said nothing as the Underwriter Defendants and Plaintiffs continued their meet-and-confer discussions regarding the appropriateness of a categorical log. And, as you know, the Underwriter Defendants agreed to produce a document-by-document log.

[5]   While courts have authorized categorical logs in unique circumstances, Defendants have not and cannot show that this matter falls within any exception to the general rule that categorical logs are extremely disfavored. For example, courts have authorized categorical logs when a party requests the "'wholesale production'" of "ordinarily privileged" documents, such as "all communications between defense counsel concerning the litigation" or "every document in [an attorney's] client file." *Games2U, Inc. v. Game Truck Licensing, LLC*, 2013 WL 4046655, at *7 (D. Ariz. 2013); *see also Smith*, 2010 WL 11508319, at *3 (explaining categorical logs are appropriate only where "documents are ***likely privileged, and there is a risk that a detailed privilege log will reveal privileged or protected information***"). None of Defendants' categories involve these types of documents. For instance, Category No. 1 consists largely of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓. But there is no presumption that communications with in-house counsel about corporate governance or Board materials are privileged merely because an attorney is involved. *See, e.g., Wenzel v. Klamath Cnty. Fire Dist. No. 1*, 2016 WL 11664612, at *5 (D. Or. 2016) ("Defendants may not shield . . . Board meetings . . . merely by involving an attorney, especially when that attorney

4923-3914-3825.v1

**Robbins Geller
Rudman & Dowd** LLP

Matthew J. Peters
February 21, 2026
Page 6

Even if categorical logging were permissible (it is not), the Log's categorical descriptions are impermissibly conclusory. They provide no "'concrete facts'" about subject matter, participants, or purpose sufficient to assess privilege. *See Trauscht v. Villa Lafayette Assocs. Inc.*, 2025 WL 2695621, at *1 (D. Ariz. 2025) (finding log "far too conclusory" because it "'fail[ed] to provide any concrete facts about the nature or subject matter of the withheld documents, which would allow an individual reviewing the log to assess the appropriateness of the privilege claim'"); *Fed. Trade Comm'n v. Qualcomm Inc.*, 2018 WL 11420853, at *4 (N.D. Cal. 2018) ("stating that a communication 'discloses legal advice' regarding 'QC business plans' is insufficient" to establish the privilege); *LD v. United Behav. Health*, 2022 WL 4878726, at *6-*7 (N.D. Cal. 2022) (finding "boilerplate assertion[s] of privilege," such as "'[c]ommunication reflecting impressions and strategy of MultiPlan legal department concerning legal matter'" was insufficient to carry the defendant's burden).

Indeed, the Log does not differentiate between attorney-client privilege and work-product. This is plainly inappropriate. Those doctrines require different showings. Lumping them together prevents meaningful challenge and fails to carry Defendants' burden. *See In re Renco Grp. Inc.*, 164 F.4th 1336, 1345 (11th Cir. 2026) (affirming that categorical privilege log was improper where, among other things, the log "improperly lumped numerous documents together, offering only a blanket assertion of privilege or protection").

---

appears to have a role in daily operations"); *Stirratt v. Uber Techs., Inc.*, 2024 WL 1723710, at *5 (N.D. Cal. 2024) ("Board meeting minutes involving in-house counsel are not privileged unless the party asserting privilege can show that the communications were for the ***primary purpose*** of providing or obtaining legal advice."). Likewise, Category Nos. 2 and 3, which purportedly concern ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████ respectively are not "ordinarily" or "likely" privileged. To the contrary, courts have consistently held that highly-regulated companies "'cannot reasonably conclude from the fact of pervasive regulation that virtually everything sent to the legal department, or in which the legal department is involved, will automatically be protected by the attorney-client privilege.'" *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 631 (D. Nev. 2013) (citing *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 800-801 (E.D. La. 2007)) (rejecting argument the communications about drug company's compliance with FDA regulations were presumptively privileged). Thus, the burden remains on "the withholding party to demonstrate that the 'primary purpose' was the rendering of legal advice on a ***document-by-document basis***." *Id.* Likewise, an attorney's mere participation "in a decision regarding public relations, and therefore business more generally" is not sufficient to establish that the primary purpose of the communications was to obtain legal assistance. *Slocum v. Int'l Paper Co.*, 549 F. Supp. 3d 519, 525 (E.D. La. 2021). Finally, Defendants cannot claim the withheld documents are so voluminous so as to justify failing to adequately support each of their claims of privilege. 5,000 of the so-called privileged materials appear to be non-privileged embedded files (*e.g.*, logos).

4923-3914-3825.v1

**Robbins Geller
Rudman & Dowd LLP**

Matthew J. Peters
February 21, 2026
Page 7

Accordingly, Defendants must produce a document-by-document privilege log.

## III.    The Carvana Defendants Improperly Withheld Documents Disclosed to Third Parties

Although difficult to ascertain in light of the Log's deficiencies, it appears that the Carvana Defendants improperly withheld communications with and disclosed to third parties. *See, e.g.*, PLOG00006708; PLOG00007424-7425; PLOG00008087; PLOG00008099-8100; PLOG00009196; PLOG00009197-9204; PLOG00007361-7362; PLOG00008874-8879; PLOGPLOG00008892-8893; PLOG00008940-8942. "[V]oluntary disclosure of privileged communications to third parties will generally result in a waiver of the privilege." *Creative Power Sols. v. Energy Servs. Grp.*, 2025 WL 691665, at *1 (D. Ariz. 2025); *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126-27 (9th Cir. 2012) ("[V]oluntarily disclosing privileged documents to third parties will generally destroy the privilege.").

That waiver extends to "other communications relating to the same subject matter that, in fairness, ought to be considered together." *Weil v. Inv./Indicators Rsch. & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981); Fed. R. Evid. 502(a). Accordingly, even if the Carvana Defendants had shown that these communications were attorney-client privileged (they have not), their voluntary disclosure of these materials would waive any protection. *See United States v. Ruehle*, 583 F.3d 600, 612 (9th Cir. 2009) ("***any*** voluntary disclosure of information to a third party waives the attorney-client privilege, regardless of whether such disclosure later turns out to be harmful") (emphasis in original); *see also United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1075 n.6 (N.D. Cal. 2002) (sending an "otherwise privileged" email string to a third party waives privilege over "that e-mail ***and all of the attached e-mails***" because each email "consists of the text of the sender's message as well as all of the prior e-mails that are attached to it") (emphasis in original).

Accordingly, by no later than February 24, 2026, please confirm that the Carvana Defendants will produce all documents disclosed to or exchanged with a third party (including, but not limited to, those identified in this letter) by March 13, 2026.

## IV.    The Carvana Defendants Are Improperly Withholding Entire Email Chains

Finally, the Carvana Defendants are improperly withholding entire email chains and attachments rather than producing non-privileged portions. For example, the Privilege Log does not distinguish between whether the parent email or its attachments contain allegedly privileged information. The Carvana Defendants have simply withheld the entire chain, even while admitting that some of these chains are only partially privileged. *See* N. Salazar 02-12-26 Email (noting the Log "reflects responsive documents and communications that are protected in whole or in part by the attorney-client privilege or attorney work product doctrine"). This is inappropriate. "'Attachments which do not, by their content, fall within the realm of the [attorney-client] privilege cannot become privileged by merely attaching them to a communication with the attorney.'" *Our Child.'s Earth*

4923-3914-3825.v1

**Robbins Geller
Rudman & Dowd LLP**

Matthew J. Peters
February 21, 2026
Page 8

*Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1088 (N.D. Cal. 2015); *see Hanson v. Wells Fargo Home Mortg., Inc.*, 2013 WL 5674997, at *4 (W.D. Wash. 2013) ("Documents attached to or included in an attorney-client communication are not automatically privileged, and the party asserting privilege must prove that each attachment is protected by privilege.").

Moreover, the Carvana Defendants have failed to show that withholding rather than redacting entire email threads and attachments is appropriate. A "single email of a 'legal nature' does not privilege the entire email thread" and "'subsequent emails in the thread should only be withheld if they reveal legal advice or a request for such.'" *In re Chase Bank USA, N.A. Check Loan Cont. Litig.*, 2011 WL 3268091, at *6 (N.D. Cal. 2011); *see Wagner Aeronautical, Inc. v. Dotzenroth*, 2022 WL 4004188, at *4 (S.D. Cal. 2022) (holding that "just because that earlier email is privileged does not mean the remaining responses are"). As such, redactions are the "appropriate remedy [rather] than withholding the entire email chain." *Custom Foods of Am., Inc. v. Cal. Garlic Co., Inc.*, 2024 WL 5036652, at *2 (S.D. Cal. 2024), *reconsideration denied*, 2025 WL 875918 (S.D. Cal. 2025); *Chase Bank*, 2011 WL 3268091, at *5 ("Defendants can redact protected communications within an email string but may not simply withhold the entire string because of one protected communication or piece of a communication."); *Sidibe v. Sutter Health*, 2018 WL 783808, at *3 (N.D. Cal. 2018) (ordering defendant to produce redacted version of email chain withheld on privilege grounds, as several emails in the chain involved "discussions of business strategies, not communications seeking legal advice").

Accordingly, by no later than February 24, 2026, please confirm that the Carvana Defendants will provide redacted versions of these improperly withheld chains and/or attachments by March 13, 2026.

## V.    Conclusion

To avoid motion practice, please confirm by February 24, 2026 that Defendants will:

1.    Produce a complete document-by-document privilege log for the first 18 custodians by February 27, 2026;

2.    Produce bi-weekly rolling document-by-document logs thereafter;

3.    Include complete author, recipient, and role information for each entry;

4.    Produce all documents disclosed to or exchanged with third parties; and

5.    Produce redacted versions of improperly withheld email chains and attachments where only a portion of the document is privileged.

4923-3914-3825.v1

**Robbins Geller
Rudman & Dowd** LLP

Matthew J. Peters
February 21, 2026
Page 9

If Defendants refuse to provide this relief, please provide your availability to meet and confer during the week of February 23, 2026.  If the issues cannot be resolved informally, Plaintiffs will move to compel and seek appropriate relief, including waiver, cost-shifting, and other available remedies.

Best Regards,

s/ Mathew Andrews

MATHEW ANDREWS

MA:cc

4923-3914-3825.v1