**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

United Association National Pension Fund, et al.,

          Plaintiffs,

v.

Carvana Company, et al.,

          Respondents.

No. CV-22-02126-PHX-MTL

**ORDER**

Pending before the Court is Plaintiffs' "Motion to Compel Production of Documents Withheld as Privileged for *In Camera* Review and to Appoint Special Master."[1] (Doc. 363.) In their Motion, Plaintiffs seek a court order finding that Defendants' April 9, 2026, privilege log is insufficient, necessitating either a broad disclosure of documents Defendants have categorized as privileged, or submission of those documents for *in camera* review by either this Court or a special master. (*Id.* at 6.) In particular, Plaintiffs assert that Defendants have "lump[ed] 48,666 documents into nine overbroad and amorphous 'categories,'" which they allege violates Ninth Circuit precedent. (*Id.* at 6–7.) Defendants oppose the Motion, asserting that they have already broadly disclosed over 100,000 documents, and that any errors within their privilege log may be remedied by additional requests for review by Plaintiffs. (Doc. 397 at 6–8.)

Considering the parties' written submissions, and in light of the parties' agreement on the appointment of a special master during oral arguments conducted on May 22, 2026,

---

[1] Discovery matters in this action have been referred to this Court by the presiding United States District Judge. (Doc. 125.)

this Court holds as follows. First, although the Court does not find that Defendants' privilege log is insufficient to the degree warranting broad waiver of their privilege assertions, the Court finds that their privilege log's error rate paired with the fact that, after nine revisions in eight weeks, the issue remains unresolved, necessitates *in camera* review to determine whether all of the documents in the log are privileged. Second, in balancing the parties' needs to expeditiously address discovery matters by the August 18, 2026, deadline to complete fact discovery, (doc. 239 at 4), with the Court's finite judicial resources and inability to review potentially 48,666 documents by the discovery deadline, the Court finds the appointment of a special master pursuant to Fed. R. Civ. P. 53 warranted here.[2]

## I.   BACKGROUND.

This action, in which Plaintiffs aver that Defendants violated the Securities Exchange Act of 1934, is based on an alleged "pumping" and "dumping" of stock by Defendants. (Doc. 105 at 2–3.) Following the Presiding Judge's December 16, 2024, order granting Defendants' Motion to Dismiss Plaintiffs' Amended Complaint in part, (doc. 105), the parties have been engaged in a contentious discovery campaign. During this time, this Court has chimed in on multiple disputes, including disputes on confidential witnesses and their depositions (docs. 192, 394, 395, 432) hyperlinked attachments (docs. 196, 255), search terms to be applied (doc. 298), and electronically stored information custodians (doc. 212), to name a few.

Now, before the Court is a discovery dispute regarding Defendants April 9, 2026, privilege designations within their privilege log. (Doc. 363.) The privilege log encompasses over 60,000 documents over nearly 2,000 pages of minute font. *See generally* (doc. 366-7.) The log itself lumps together all withheld documents into nine broad categories, ranging from only 251 documents in one category to 19,628 in another. (*Id.* at 2.) This is not Defendants' first privilege log. In fact, Defendants have revised their privilege log nine times since they disclosed their initial version on February 13, 2026.

---

[2]   This second matter is one that the parties agreed upon during oral arguments.

(Doc. 363 at 6, 9.) A number of the revisions were prompted by Plaintiffs upon finding potential errors within Defendants' privilege log. (Doc. 440 at 7.) This included an instance where Defendants, at Plaintiffs' request, reviewed 211 documents that they labeled privileged, only to find that none of the 211 were actually privileged. (*Id.*)

Because of the allegations of error in Defendants privilege log that this matter has come before the Court.

## II.   LEGAL STANDARDS.

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures." *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) (cleaned up). The privilege's "purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 389. In other words, "[c]lients must be able to consult their lawyers candidly, and the lawyers in turn must be able to provide candid legal advice." *United States v. Christensen*, 828 F.3d 763, 802 (9th Cir. 2016). "A communication from the attorney to the client that does not contain legal advice may be protected if it 'directly or indirectly reveals communications of a confidential nature by the client to the attorney." *Id.* (quoting *In re Fischel*, 557 F.2d 209, 212 (9th Cir. 1977)) (cleaned up).

Under federal law, the attorney-client privilege has eight essential elements:

(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Fischel*, 557 F.2d at 211.

"The party asserting the attorney-client privilege has the burden of proving that the

privilege applies to a given set of documents or communications." *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992). Additionally, the party asserting the attorney-client privilege "must provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection." *Burlington N. & Santa Fe Ry. v. United States Dist. Court*, 408 F.3d 1142, 1148 (9th Cir. 2005) (citation omitted) (cleaned up).

"The claim of privilege must be made and sustained on a question-by-question or document-by-document basis; a blanket claim of privilege is unacceptable." *Christensen*, 828 F. 3d at 802 (citation omitted). Regarding assertions of privilege in a privilege log, the "objecting party must produce a privilege log that 'expressly makes the claim' and 'describes the nature of the documents' being withheld with enough information to 'enable other parties to assess the claim.'" *Scanlon v. Curtis Int'l, Ltd.*, No. 1:19-cv-00937-, 2020 U.S. Dist. LEXIS 235758, at *24 (E.D. Cal. Dec. 15, 2020) (quoting Fed. R. Civ. P. 26(b)(5)(A)) (cleaned up).

In short, "[t]he scope of the privilege should be strictly confined within the narrowest possible limits." *Id.* (citation omitted).

**III.    DISCUSSION**.

Plaintiffs ask the Court for two potential remedies for the alleged flaws in Defendants' privilege log. First, they ask that the Court waive Defendants' privilege over all documents listed as privileged in Defendants' privilege log and order their disclosure. (Doc. 363 at 18–20.) Alternatively, Plaintiffs request either the Court or a special master review 48,666 of the documents withheld *in camera* to determine if they are being improperly withheld. (*Id.* at 20–22.)

Regarding Plaintiffs' first request, the Court does not find that this situation warrants such an extreme remedy. Based upon a "holistic reasonable analysis"[3] of the situation, the

---

[3]    In *Burlington*, the Ninth Circuit Court of Appeals noted that the a court should consider the following factors in determining whether waiver of the attorney-client privilege in a case like this is warranted:

the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld

- 4 -

Court neither finds that Defendants' privilege log is wholly devoid of detail on Defendants' assertions of privilege nor that the alleged defects in Defendants privilege log warrants the disclosure of nearly 50,000 documents. Finally, the Court does not find that the flaws in Defendants' privilege log were intended to "nedless[ly] waste [the parties'] time" nor were a "tactical manipulation of the rules and the discovery process[.]" *Burlington*, 408 F.3d at 1149. Given this, the Court shall not order a sweeping waiver of Defendants' privilege assertions over 48,666 documents.

As for the request for *in camera* review, the Court agrees that such process is warranted. "To empower the district court to review the disputed materials *in camera*, the party opposing the privilege need only show a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *In re Grand Jury Investigation*, 974 F.2d at 1075. "If the party makes such a showing, the decision whether to conduct the review rests within the discretion of the district court." *Id.* Circumstances to consider when deciding whether to engage in *in camera* review include, "among other things, the volume of materials the district court has been asked to review [and] the relative importance to the case of the alleged privileged information[.]" *United States v. Zolin*, 491 U.S. 554, 572 (1989).

Plaintiffs have met their burden here. Based upon the high error rate found in prior reviews of Defendants' privilege log, paired with the fact that Defendants have already revised the log nine times, is a sufficient factual basis "to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is

---

documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient); the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy (such as, here, the fact that many of the same documents were the subject of discovery in an earlier action) or unusually hard.

*Burlington*, 408 F.3d at 1149.

not privileged." *See In re Grand Jury Investigation*, 974 F.2d at 1075. Upon reviewing the *Zolin* considerations, the Court finds that the volume does not prohibit *in camera* review—especially if Plaintiffs select certain, high emphasis, documents to review first—and that the documents in question may be highly relevant and valuable to Plaintiffs' claims and Defendants' defense. Hence, the Court shall order Plaintiff's are entitled to *in camera* review of the 48,666 documents Plaintiffs have identified in Defendants' privilege log.

While the Court shall order *in camera* review of these documents, due to finite judicial resources, the Court would be unable to address all 48,666 documents before the close of discovery in this action. The volume of work on other matters in this case, along with the Court's substantial docket, prevents this Court from reviewing this volume of documents. Given this, the appointment of a special master pursuant to Fed. R. Civ. P. 53 is warranted here. *See* Fed. R. Civ. P. 53(a)(1)(C) ("[A] court may appoint a master . . . to: address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district."). Because Plaintiffs are the moving party here, they shall bear the cost of the special master. But Plaintiffs are entitled to request the special master review fewer than 48,666 documents at Plaintiff's discretion to reduce the cost.

The parties shall meet and confer by May 28, 2026, at 5:00pm, to attempt to mutually agree to appoint an individual as a special master. If the parties cannot reach an agreement, on or before June 1, 2026, they shall provide notice to the Court. In that notice, they shall provide the names of two individuals each that the Court may choose from. During the parties' meet and confer, they shall discuss the timeframe for special master review.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion to Compel Production of Documents Withheld as Privileged for In Camera Review and to Appoint Special Master (doc. 363) is **GRANTED IN PART** as to Plaintiffs' request for *in camera* review by a special master of the 48,666 documents referenced in Plaintiff's Motion.

- 6 -

**IT IS FURTHER ORDERED** that Plaintiffs, as the moving party, shall bear the costs of the special master. Plaintiffs are entitled to reduce the number of documents to be reviewed.

**IT IS FURTHER ORDERED** that the parties shall meet and confer by **MAY 28, 2026, at 5:00pm**, to attempt to mutually agree upon an individual to appoint as special master. If the parties agree upon an individual to appoint as special master, they must notify the Court by **JUNE 1, 2026**. The parties shall submit a **proposed order** that **(1)** certifies that that the special master does "not have a relationship to the parties, attorneys, action, or court that would require disqualification of a judge under 28 U.S.C. § 455," Fed. R. Civ. P. 53(a)(2); **(2)** outlines an appropriate timeline for special master review; and **(3)** provides for a three-day objection period for Defendant's to object to any disclosure by the special master, with any objection to be filed *ex parte* with this Court for *in camera* review.

**IT IS FURTHER ORDERED** that, if the parties cannot mutually agree upon an individual to appoint as a special master, they shall provide, at most, two individuals each for a total of four potential special masters on or before **JUNE 1, 2026, at 5:00pm**. The parties shall each provide a *brief* statement of the background of their candidates and a statement of the basis for any objection to the opponent's candidates. The brief statement in opposition must be four pages in length or less and may include a discussion of the cost of any specific special master.

Dated this 22nd day of May, 2026.

Honorable John Z. Boyle
United States Magistrate Judge