**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

United Association National Pension Fund, et al.,

Plaintiffs,

v.

Carvana Company, et al.,

Respondents.

No. CV-22-02126-PHX-MTL

**AMENDED ORDER**[1]

Pending before the Court is Plaintiffs' "Renewed Emergency Motion to Enforce the Court's May 8, 2026 Order (ECF 395), for a Protective Order, or, in the Alternative, to Stay Confidential Witness Depositions Pending District Court Review" ("Renewed Emergency Motion").[2] (Doc. 460.) Defendants have timely filed a Response to Plaintiffs' Motion. (Doc. 478.) Seeing as an oral argument will not assist the Court, the Court shall adjudicate the matter based upon the parties' briefings. For the following reasons, the Court shall deny Plaintiffs' Renewed Emergency Motion.

## I.    SUMMARY OF CONCLUSIONS.

Presently before the Court is a novel discovery question for the District: whether a party must seek leave of court to conduct so-called 'Rule 11 discovery.' Specifically in the context of this matter, the issue is whether Defendants must obtain leave of court to question Confidential Witnesses ("CWs") about statements attributed to them in a party's

---

[1]    The only amendment contained herein is an update of the language granting (doc. 508) on page 14 of this Order.

[2]    Discovery matters in this action have been referred to this Court by the presiding United States District Judge. (Doc. 125.)

complaint. Based upon a review of case law within this Circuit and its sister Circuits, and upon analyzing contemporaneous legal commentary at the time of Fed. R. Civ. P. 11's amendments in 1983, this Court finds that Rule 11 discovery pertains solely to motions seeking Rule 11(c) sanctions. That is, where a party's explicit purpose is seeking sanctions under Rule 11, that party must receive leave of court to conduct discovery that is solely related to investigating alleged sanctionable conduct. Conversely, where a party intends to obtain discovery that is relevant to their claims or defense—even if it unearths matter that may be used in a prospective Rule 11(c) motion—that discovery falls within the ambit of Rule 26.

Given the foregoing, the Court finds that Defendants' deposition of CWs in this action, even if they may unearth materials that may be used in a hypothetical Rule 11 motion, falls within the ambit of Rule 26. Hence, the Court shall neither enter a protective order nor stay CW depositions in this action.

## II.    BACKGROUND.

As the Court previously noted:

> This action, in which Plaintiffs aver that Defendants violated the Securities Exchange Act of 1934, is based on an alleged "pumping" and "dumping" of stock. (Doc. 105 at 2–3.) Part of Defendants' alleged misdeeds was the sale of vehicles before Defendants possessed the titles to such vehicles. (*Id.* at 2–3, 45.) Such acts, Plaintiffs have alleged, relates to Defendants' scienter—an element of a security fraud claim. (*Id.* at 41–42, 45–48.) Grounding Plaintiffs' T&R allegations were confidential witness accounts from a number of CWs, including CW-4. (*Id.* at 45–48.)
>
> While the Presiding Judge dismissed portions of Plaintiffs' Amended Complaint [("AC")], the T&R allegations that Defendants sold cars before they possessed those cars' titles remained. (*Id.* at 69–73.) This decision was based, at least in part, upon a finding that the CWs' accounts were "probative of Defendants' scienter by suggesting precisely what Plaintiffs allege—that Carvana's noncompliance with title and registration requirements was widespread and persistent, and Defendants were well aware of the issue." (*Id.* at 48.)
>
> In the intervening time between the Presiding Judge's Order and today, the parties have embarked upon an aggressive discovery process. Recently, the parties have begun to depose the CWs in this action. (Doc. 372 at 2–3.)

(Doc. 394 at 2.)

While the depositions of CWs are still ongoing, the ones that have already occurred are, to put the matter bluntly, contentious. The instant controversy first arose during the April 11, 2026, deposition of CW-4. (Doc. 374-1.) At this deposition, Defendants questioned CW-4 about the statements attributed to him in the AC, about the underlying facts of those statements, and about the veracity of those statements. *See, e.g.*, (doc. 378-1 at 6.) Following the deposition, the parties filed a Joint Discovery Motion. (Doc. 377.) In the Joint Discovery Motion, "Plaintiffs assert[ed] that Defendants [were] engaging in unauthorized Rule 11 discovery[.]" (Doc. 395 at 2.) Defendants asserted that "they [were] attempting to conduct discovery into information underlying the allegations contained in the AC." (*Id.* at 3.)

Following the parties' briefing, and upon hearing oral arguments on the matter, (doc. 386), this Court issued its May 8, 2026 Order. (Doc. 395.) The Order allowed CW depositions to continue, finding that "the underlying facts of the CWs' statements on Defendants' alleged fraudulent acts are merits discovery within the ambit of Rule 26, not Rule 11 discovery." (*Id.* at 5.) In reaching this finding, the Court strove to balance Defendants' right to discovery with the notion that the Court need-not "pave the way— absent extraordinary circumstances—for satellite litigation and discovery solely related to a prospective Rule 11 sanctions motion." (*Id.* at 4.)

On May 13, 2026, Plaintiffs filed their original Emergency Motion to Enforce the Court's May 8, 2026 Order. (Doc. 406.) In their Motion, Plaintiffs requested that the Court enter a protective order precluding Defendants from asking certain lines of questioning that would facilitate a *post hoc* investigation into the sourcing of the AC and to strike portions of the CW-12 deposition. (Doc. 432 at 1.) This Motion followed Defendants' deposition of CW-12 on May 12, 2026. (*Id.* at 6.) During the deposition, Defendants—using the AC as an exhibit—lightly paraphrased the allegations attributed to CW-12 in the AC as questions. *See* (doc. 408 at 8.) Following Defendants Response to this Emergency Motion, (doc. 418), the parties conducted oral arguments before the Court on May 14, 2026. (Doc.

423.)

Following oral arguments, and seeing that the record was too limited to properly adjudicate the matter, this Court denied the Emergency Motion without prejudice of refiling on May 15, 2026. (Doc. 432 at 2, 4.) The Court specifically informed the parties that it was permitting "the deposition to go forward, have a record, have some time to consider it, and address motions to strike future depositions or to strike the depositions for any Rule 11 purpose." (Doc. 474 at 26.)

Before the Court issued its written order on May 15, 2026, the Defendants conducted a deposition of CW-5 on May 14, 2026. (Doc. 462 at 8.) This deposition was delayed so that the Court could issue a verbal order during the May 15, 2026 hearing. *See* (Doc. 437.) During this deposition, Defendants again used the AC as an exhibit, (doc. 462 at 9), both parties questioned CW-5 about the allegations attributed to them in the AC, (doc. 481 at 8), and Defendants again paraphrased the AC's allegations into questions directed at the CW. (Doc. 462-3 at 2–3.)

The parties, on the same date that the Court denied Plaintiffs' original Emergency Motion without prejudice, notified the Court of Plaintiffs' intent to file a Renewed Emergency Motion. (Doc. 436 at 1.) Thereafter, this Court issued a briefing schedule.[3] (*Id.*) Additionally, the Court vacated the parties' May 20, 2026, CW deposition pending the adjudication of the Renewed Emergency Motion. (*Id.*) This matter is now fully briefed and addressable without oral argument.

## III.    THE PARTIES' ARGUMENTS.

### A. Plaintiffs.

In the instant Motion, Plaintiffs "request that the Court enter an order precluding Defendants from using the deposition testimony of CW-5, CW-12, or any future CW for any Rule 11 purpose or to otherwise attack the AC." (Doc. 462 at 20.) In the alternative, Plaintiffs "request a stay of all remaining CW depositions to preserve the status quo while

---

[3]    The Court held a hearing on this matter on May 15, 2026. (Doc. 437.) During this hearing, the Court requested the parties to conduct their own research to find a Ninth Circuit test on this matter. (Doc. 476 at 43.) Neither party has found a controlling Ninth Circuit test on the issue of Rule 11 discovery.

- 4 -

they seek review of that ruling under Rule 72(a)." (*Id.* at 21.)

Plaintiffs proffer four arguments in support of their Motion. First, that—in the absence of a Ninth Circuit test—the Court need not adopt a brightline test to find that Defendants' line of questioning is improper under Rule 11. (*Id.* at 10–12) (cleaned up). Second, and in any event, district courts have established "reasonable principles for defining improper Rule 11 discovery," which Defendants line of questioning falls under. (*Id.* at 12–13.) Third, that "Defendants have repeatedly violated the Court's May 8 Order by linking CWs to specific allegations in the AC." (*Id.* at 13–17) (cleaned up). Fourth, that "Defendants' stated motive for conducting depositions shows they are engaging in Rule 11 discovery" because Defendants have noted that "CWs are all low-level employees who lack any reliable personal basis to report about Defendant's state of mind[.]" (*Id.* at 17–18) (citation omitted).

**B. Defendants**.

Defendants oppose Plaintiffs' Motion and requested relief. (Doc. 481 at 5–7.) In support of their opposition, Defendants assert five arguments. *See generally* (*Id.*) First, Defendants assert that "Rule 26 and due process entitle Defendants to conduct discovery into the allegations in [the AC], including CW allegations. (*Id.* at 10–12) (cleaned up). Second, Defendants assert that "Rule 11 does not modify the scope of discovery under Rule 26." (*Id.* at 12–14) (cleaned up). Third, that the CW depositions that Defendants have already conducted "confirm[] their relevance to the merits of this case." (*Id.* at 14.) Specifically, Defendants aver "that the CWs are consistently undermining allegations in the Complaint is obviously relevant to the defense of this case—it is certainly persuasive at summary judgment or trial that testimony from Plaintiffs' own witnesses contradicts their allegations." (*Id.* at 15.)

Fourth, Defendants aver that they "have complied with the Court's May 8, 2026, Order." (*Id.* at 15–18) (cleaned up). Particularly, Defendants stated that their questioning of CWs was designed to avoid the "risk that the CW [at issue] would reveal what they explained or said to Plaintiffs pre-filing." (*Id.* at 17) (cleaned up). Further, Defendants

stated that "[t]he Court did not prohibit Defendants from asking CWs about the [AC]; it instead drew a distinction between 'the factual basis that the CWs based their allegations upon' and CWs' participation in counsel's 'prefiling investigation.'" (*Id.* at 16) (quoting (doc. 395 at 5 n.3)). Finally, Defendants assert an *ad hominin* attack against Plaintiffs' counsel and prior class action litigation in which they were involved.[4] (Doc. 481 at 19–20.)

## IV.    LEGAL STANDARDS.

The court has broad discretion regarding whether to permit or deny discovery via a motion to compel. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). Generally, discoverable evidence is "any nonprivileged matter that is relevant[5] to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).

While a party's right to discovery is broad, that does not mean that it is limitless. *See* Fed. R. Civ. P. 26(b)(2). Courts will limit discovery where:

> (a) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (b) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii).

Presently, Plaintiffs seek a protective order precluding Defendants from conducting further CW depositions and "from using the CW testimony for any rule 11 purpose" due to alleged violations of this Court's May 8, 2026 Order. (Doc. 462 at 19) ("That remedy fits the violation and tracks the principle this Court already adopted in the May 8 Order[.]"). Generally, a party seeking a protective order must establish "good cause" for such an order to issue. *See Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 629 (C.D. Cal. 2005); *see also Sequoia Prop. & Equip. Ltd. P'ship v. United States*, 203 F.R.D. 447, 451 (E.D. Cal.

[4] The Court reminds the parties of its prior admonition cautioning the parties to avoid *ad hominin* attacks in this action. *See* (doc. 471 at 5 n.4.)
[5] Evidence is considered relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Further, a court may exclude relevant evidence where its probative value is substantially outweighed by the danger of confusing the issue in the present case. Fed. R. Evid. 403.

- 6 -

2001) ("To obtain a protective order, the party resisting discovery or seeking limitations must show 'good cause' for its issuance."). However, a party seeking issuance of a protective order "has a 'heavy burden' to show why discovery should be denied and a strong showing is required before a party will be denied the right to take a deposition." *Sequoia Prop.*, 203 F.R.D. at 451 (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("[A] strong showing is required before a party will be denied entirely the right to take a deposition.")).

The Court has "the authority to impose sanctions where a party has violated a discovery order, including a protective order," under Rule 37. *Banga v. Kohl's Dep't Stores, Inc.*, No. C 13-00275 SBA, 2013 U.S. Dist. LEXIS 179225, at *6 (N.D. Cal. Dec. 20, 2013) (citing *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 910 (9th Cir. 1986)). Additionally, "Rule 37(b)(2)(A) also allows the issuance of evidentiary sanctions "'prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence.'" *Lanier v. San Joaquin Valley Officials Ass'n*, No. 1:14-CV-01938-EPG, 2016 U.S. Dist. LEXIS 123485, at *20 (E.D. Cal. Sep. 12, 2016). "Under this rule, trial courts are entitled to preclude the introduction of evidence or issues following a failure to comply with discovery orders." *Lanier*, 2016 U.S. Dist. LEXIS 123485, at *20 (citing *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 843 (9th Cir. 1976)). However, the exclusion of evidence due to a party's failure to comply with a discovery order is "an extreme sanction," a sanction that courts hesitate to grant. *See Elizondo v. Seaworld Parks & Entm't, Inc.*, No. 20-cv-00829-GPC-BGS, 2021 U.S. Dist. LEXIS 91700, at *28 (S.D. Cal. May 13, 2021) (citation omitted).

## V.    DISCUSSION.

The crux of the instant dispute is the exact bounds of the so-called Rule 11 discovery. To understand whether Defendants have impermissibly waded into the murky waters of Rule 11 discovery, this Court shall first identify what Rule 11 discovery is. Thereafter, the Court shall analyze whether Defendants line of question in the depositions of CW-5 and CW-12 remains within the realm of Rule 26 discovery, or if Defendants have

impermissibly conducted Rule 11 discovery.

**A. Rule 11 Discovery**.

The first issue is a novel one in this district. Neither the parties nor the Court have found a controlling Ninth Circuit test nor a preeminent source of legal authority detailing the bounds of the so-called Rule 11 discovery. However, in analyzing our sister district precedent in light of scholarship on the 1983 amendment to Rule 11, the proper scope appears to be the following: Rule 11 discovery is limited to the discovery of materials or matters that are unambiguously intended to be used in support of or opposition against a Rule 11 sanctions motion.

Fundamentally, Rule 11 is designed "to deter baseless filings . . . [and] streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). By leveraging the threat of "appropriate sanction[s]" like the sword of Damocles over litigants who may file baseless pleadings, Rule 11 ensures "the just, speedy and inexpensive determination of cases in federal court." *Id.* at 410 (Stevens, J., dissenting).

To further the speedy adjudication of matters before a district court, "[t]he advisory committee comments to Rule 11 caution that courts are discouraged from using Rule 11 as a basis for discovery." *Hall v. Marriott Int'l, Inc.*, No. 3:19-cv-01715-JO-AHG, 2022 U.S. Dist. LEXIS 155625, at *10 (S.D. Cal. Aug. 29, 2022). as the advisory committee explained regarding the 1983 amendment to Rule 11:

> To assure that the efficiencies achieved through more effective operation of the pleading regimen will not be offset by the cost of satellite litigation over the imposition of sanctions, the court must to the extent possible limit the scope of sanction proceedings to the record. Thus, discovery should be conducted only by leave of the court, and then only in extraordinary circumstances.

*Id.* (quoting Fed. R. Civ. P. 11 Advisory Committee Notes to the 1983 Amendment).

The drafters of the 1983 amendment, by announcing the foregoing, cautioned courts from too readily permitting "time-consuming satellite litigation," and instead should, "to

the extent possible, limit the scope of sanction proceedings to the record." *Pelgrift v. CitiMortgage, Inc.*, No. 3:24-CV-00474 (JCH), 2025 U.S. Dist. LEXIS 107762, at *6 (D. Conn. June 6, 2025) (cleaned up). "This view of the Committee was based upon the perceived need to reduce satellite litigation over sanctions as well as the reality that, in most cases, the facts are already before the court due to the judge's participation in the main case." Arthur W. Andrews, *Rule 11 and the Nondeductibility of Monetary Sanctions Imposed upon Attorneys*, 32 ARIZ. L. REV. 279, 300 (1990); Michael J. Mazurczak, *Critical Analysis of Rule 11 Sanctions in the Seventh Circuit*, 72 MARQ. L. REV. 91, 111 (1988) ("In the usual case, sanction proceedings are limited to the record; discovery . . . [is] allowed only under extraordinary circumstances. Any expanded procedural approach would defeat the goals of Rule 11 to promote judicial economy and deter the filing of future frivolous actions.").

Given this, "courts are generally unsympathetic to discovery **specifically** dealing with Rule 11 motions" due to the risk of time-consuming satellite litigation that, in most cases, is unnecessary given the judge's familiarity with the underlying facts. *See Estate of Alvarez v. Johns Hopkins Univ.*, No. TDC-15-950, 2019 U.S. Dist. LEXIS 145462, at *29 (D. Md. Aug. 27, 2019) (emphasis added) (quoting Thomas Geisler, Jr., *Proof of Violation of Federal Rule of Civil Procedure 11 and of Sanctions Thereunder*, 47 AM. JURIS. PROOF OF FACTS 3d ed. 241 § 13 (2019)). But, the same cannot be said of "general discovery which uncovers Rule 11 violations." *Estate of Alvarez*, 2019 U.S. Dist. LEXIS 145462, at *29 (cleaned up). This distinction is important, because it evinces the key difference between Rule 11 discovery and a Rule 26 discovery: party purposes.

Upon review of the limited cases law on the matter—including the cases upon which the parties rely in their briefing—it appears that party purpose is the key in resolving Rule 11 versus Rule 26 discovery disputes. For example, in *Vasudevan Software, Inc. v. IBM*, where the court denied defendant's motion to compel for failure to seek leave of court pursuant to Rule 11, the purpose behind defendant's discovery inquiry was to probe the plaintiff's pre-filing investigations due to a belief that plaintiff "did not meet its Rule 11

obligations with respect to its pre-filing investigation." *See Vasudevan Software, Inc. v. IBM*, No. C09-05897 RS (HRL), 2011 U.S. Dist. LEXIS 33132, at *14 (N.D. Cal. Feb. 18, 2011). *Vasudevan Software* is not a one-off decision. Rather, party-purpose appears to be the key difference between Rule 26 and Rule 11 discovery in many decisions.[6] *See Estate of Alvarez*, 2019 U.S. Dist. LEXIS 145462, at *33–36 (denying defendants' request for additional discovery where their purpose was to "investigate the full scope of the abuses that have occurred and identify all individuals responsible for those abuses") (cleaned up); *see also In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 346 (N.D. Cal. 1985) (denying a party's interrogatories where the defendant "insists . . . that it is entitled to learn . . . the scope of the plaintiffs' investigation into the factual basis for each allegation" because the inquiry "on the nature of the homework plaintiffs and their counsel did before filing the complaint, would be appropriate not under normal discovery rules, but only under rule 11"); *In re Commodity Exch., Inc. Gold Futures & Options Trading Litig.*, No. 14-MD-2548 (VEC), 2021 U.S. Dist. LEXIS 113760, at *39 (S.D.N.Y. June 17, 2021) (denying depositions appearing to be "geared towards a potential Rule 11 sanctions motion, not to a defense of [p]laintiffs' claims on the merits"); *Kajeet, Inc. v. Qustodio, LLC*, No. SA CV 18-1519-JAK (PLAx), 2019 U.S. Dist. LEXIS 227979, at *15 n.8 (C.D. Cal. Oct. 22, 2019) (permitting discovery because the "defendant ha[d] not filed a Rule 11 motion, or made any assertion that it anticipates doing so"); *Emerson Elec. Co. v. Suzhou Cleva Elec. Appliance Co.*, No. 4:13-CV-01043 SPM, 2014 U.S. Dist. LEXIS 155404, at *15 (E.D. Mo. Nov. 3, 2014) (noting that case law "support[s] that a defendant may not conduct broad discovery regarding pre-filing investigation for purposes of a Rule 11 motion, at least where no Rule 11 motion has been filed").

---

[6] In fact, the quote announced in *In re BofI* upon which the parties—and this Court in its prior Order—rely supports a finding that the purpose of an inquiry governs whether it seeks Rule 11 or Rule 26 discovery. Specifically, the *In re BofI* court announced that "there is a difference between information that is relevant to the disposition of the action (which is discoverable) and information that would facilitate a *post hoc* investigation into the sourcing of a complaint's allegations (which is not)." *In re Bofi Holding Sec. Litig.*, No. 15-cv-2324-GPC-KSC, 2021 U.S. Dist. LEXIS 156966, at *11 (S.D. Cal. July 27, 2021) (cleaned up). Hence, *In re BofI* supports the finding that, where a party's purpose is to collect discovery relevant towards the disposition of the action, as opposed to the adjudication of a Rule 11 sanctions motion, the party is conducting Rule 26 discovery.

Furthermore, by limiting Rule 11 discovery to those situations where a party's unambiguous purpose is collecting matters to support a Rule 11 sanctions motion, courts avoid having to adjudicate discovery disputes based solely on an infinitesimal risk that a given inquiry would result in a Rule 11 motion. Hence, this finding is in harmony with Rule 1's command that the Federal Rules of Civil Procedure "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

For the foregoing reasons, the Court finds that a party's purpose in conducting a given inquiry defines whether it seeks Rule 11 or Rule 26 discovery.[7]

**B. Deposition of CWs**.

Applying the aforementioned findings to the case at hand, the Court does not find that Defendants have engaged in an unauthorized inquiry into Rule 11 discovery matters nor violated this Court's May 8, 2026 Order. The reasons for this finding are twofold.

The Court neither finds that Defendants—based on the record—have violated the Court's May 8, 2026 Order nor conducted the CW depositions with an unambiguous goal of uncovering matters to be used in a Rule 11 sanctions motion. First, the Court is not persuaded by Plaintiffs' argument that Defendants' linkage of CWs to allegations in the CW violated the May 8, 2026 Order. The Court notes that in its August 13, 2025 Order, the Court had ordered Plaintiffs to comply with Defendants' interrogatory 4, which directed Plaintiffs to "[i]dentify the name and, if known, contact information for each Confidential Witness, including specifying which number You assigned to each CW." (Doc. 192 at 2 n.2, 6.) Hence, Defendants were not required 'shield their eyes' from this Court's prior Order and waste the deponents, Plaintiffs, and their own time asking questions about matters they already knew the deponent was unaware of.

Second, the Court is not persuaded by Plaintiffs argument that Defendants were prohibited from using the AC as an exhibit during the deposition. As an initial matter, the

---

[7]    Hence, where a party conducts discovery for a purpose unrelated to a Rule 11 motion, they have not embarked upon Rule 11 discovery—even if they may, as a biproduct, unearth materials relevant to a prospective Rule 11 motion.

Court notes that nowhere in its May 8, 2026 Order did it prohibit the use of the AC as an exhibit. *See generally* (doc. 395.) Instead, the Court noted that it was "***considering***" precluding Defendants from using "the AC as an exhibit during CW depositions." (Doc. 432 at 2–3.) Therefore, the usage of the AC as an exhibit was not prohibited.

Third, the Court does not find Plaintiffs recitation of Defendants' prior statements availing as a means to prove that Defendants only motive is to obtain Rule 11 discovery. It is undisputed that Plaintiffs have correctly quoted Defendants' statements that the "CWs are all low-level employees who lack any reliable personal basis to report about Defendant's state of mind" and that they "cannot provide the insight to company-wide information of Carvana's leadership that is relevant to this litigation." (Doc. 462 at 17–18) (quoting (docs. 82, 215)). However, these statements do not negate the fact that the CWs may very well possess relevant information for this action. As an initial point, numerous courts have found that "CWs possess discoverable information." *In re Marsh & McLennan Cos.*, No. 1744, 2008 U.S. Dist. LEXIS 57542, at *11 (S.D.N.Y. July 30, 2008). By using a CW's statements in their complaint, that party has signaled that the CW's knowledge is important. *See In re Harmonic, Inc. Sec. Litig.*, 245 F.R.D. 424, 428 (N.D. Cal. 2007) ("Plaintiffs have already revealed their legal strategy by including the CWs' statements in the SAC. It is obvious that Plaintiffs considered these five CWs' knowledge important."); see also *In re Marsh*, 2008 U.S. Dist. LEXIS 57542, at *11 ("Because Lead Plaintiffs relied upon the CWs in drafting the SAC, the CWs possess discoverable information.").

Here, Plaintiffs used CW allegations in their AC to support their claim that Defendants engaged in securities fraud. By doing so, Plaintiffs have signaled that the CWs possess knowledge that is relevant to their claims. Consequently, Defendants are permitted to question the CWs on "any nonprivileged matter that is relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), even if they had previously disputed the relevancy of each CWs' knowledge. In short, "CWs unquestionably have relevant information, and defendants are entitled to question them about the basis for their statements[.]"[8] *In re*

---

[8] Moreover, "[i]t is also reasonable to expect that Defendants would pursue leads from information provided by the C[W]s, and that this might yield other admissible

*Amgen Sec. Litig.*, No. CV 07-2536-PSG (PLAx), 2013 U.S. Dist. LEXIS 201428, at \*14 (C.D. Cal. Dec. 2, 2013).

Finally, the Court is unable to find that Defendants' unambiguous intent[9] in conducting depositions of the CWs is to prepare a Rule 11 sanctions motion. Although Plaintiffs are correct that Defendants have dangled the notion of filing a Rule 11 motion and have asserted that the Private Securities Litigation Reform Act of 1995 requires such, (doc. 462 at 17–18, 18 n.2), the Court also does agree with Defendants that they have discovered matter that may in fact be "relevant to the defense of this case." (Doc. 481 at 15.) Because Defendants have not unambiguously noted that they are conducting CW depositions to obtain matter for a Rule 11 sanctions motion, they have not conducted impermissible discovery here.

"All discovery rulings require line drawing, based on an understanding of the parties' core positions, including the plaintiffs' claims and the defendants' defenses, and a need to balance the defendants' right to defend themselves with the plaintiffs' right to proceed with this litigation, all without undue burden or prejudice to any party." *In re Commodity Exch.*, 2021 U.S. Dist. LEXIS 113760, at \*39–40. While the issue presented is novel, and the facts present a close call, the Court does not find that Defendants have violated this Court's May 8, 2026 Order.

**VI.    CONCLUSION.**

In conclusion, Plaintiffs have neither met their burden of establishing a strong showing to prohibit CW depositions nor shown that Defendants acts warrant the extreme sanction of excluding evidence. Furthermore, seeing as the Court possess "wide discretion in controlling discovery," *Little v. Seattle*, 863 F.2d 681, 685 (9th Cir. 1988), and based upon the expedited deadlines established by the Presiding Judge, the Court does not find a stay of CW depositions warranted.[10]

evidence." *Schueneman v. Arena Pharm., Inc.*, No. 10cv1959-CAB (BLM), 2017 U.S. Dist. LEXIS 114187, at \*16 (S.D. Cal. July 21, 2017)

[9]    *See supra* section V.A.

[10]    As a final matter, this Court shall grant the Motion to Seal and Motion to Redact related to discovery motions (docs. 480, 508) because of good cause shown. This finding of good cause is based upon this Court's prior Order (doc. 192) that prohibited the

Accordingly,

**IT IS ORDERED** that Plaintiffs' Renewed Emergency Motion (doc. 460) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Seal (doc. 480) is **GRANTED**. The Clerk of Court is kindly directed to file (doc. 481) **UNDER SEAL**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Redact (doc. 508), in which Defendants request the May 15, 2026 hearing transcript (doc. 476) be redacted, is **GRANTED**. The Clerk of Court is kindly directed to file (doc. 391) **UNDER SEAL**. Furthermore, the Clerk of Court is kindly directed to strike (doc. 531) from the docket.

Dated this 16th day of June, 2026.

_____
Honorable John Z. Boyle
United States Magistrate Judge

---

disclosure of CW identities in publicly filed documents in this action. *See, e.g.*, *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1214 (9th Cir. 2002) ("When a court grants a protective order for information produced during discovery, it already has determined that "good cause" exists to protect this information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality."). Additionally, because the District Court granted a Protective Order which rationally covers a number of the documents at issue, see (doc. 136), the District Court has, *ipso facto*, determined that good cause exists to protect these documents. *Id.*

Finally, regarding the hearing transcript, the Court is mindful that the May 15, 2026, hearing transcript does relate to a hearing held open to the public. Generally, in this district, courts are wary to, *ex post facto*, seal transcripts of public hearings because "the parties have already voluntarily 'let the cat out of the bag,'" making those courts "unwilling, let alone able, to undo what [was] already done." *TriQuint Semiconductor, Inc. v. Avago Techs. Ltd.*, No. CV-09-1531-PHX-JAT, 2012 U.S. Dist. LEXIS 58227, at *22 (D. Ariz. Apr. 25, 2012). However, seeing as some of this Court's sister districts have found that "after-the-fact redactions of the transcripts of open hearings may be desirable in limited instances concerning highly sensitive and confidential information," *Cahill v. Nike Inc.*, No. 3:18-cv-01477-AB, 2025 U.S. Dist. LEXIS 20560, at *16 (D. Or. Feb. 5, 2025) (citation omitted), the Court shall grant Defendants' request.