**WO**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United Association National Pension Fund, et al., | No. CV-22-02126-PHX-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| Carvana Company, et al., | |
| Respondents. | |

Pending before the Court are Plaintiffs' "Motion to Compel Production of Documents from Related Third Parties" ("Motion to Compel Third-Party Subpoenas") (doc. 495) and the parties' "Joint Discovery Motion" (doc. 522).[1]

I.    **SUMMARY OF CONCLUSIONS.**

Pending before the Court are two matters involving third-party subpoenas. The first matter requires the Court to balance a party's interest in discovering relevant material with the potential fiscal burden that would be incurred by a third party. The second matter requires the Court to consider whether communications and draft memoranda between a defendant and allocants who are—at this point in the litigation—strangers to this action, but may become class members at an unspecified future date, are protected by the work-product doctrine.

Beginning with the first matter, the Court finds the proper course to balance benefit versus harm is to limit the subpoena to a test run of 5,000 potential documents to determine

---

[1]    Discovery matters in this action have been referred to this Court by the presiding United States District Judge. (Doc. 125.)

whether any further disclosure would indeed present an undue burden upon the implicated third parties. Turning to the second matter, seeing as this matter was necessarily implicated by this Court's prior Order (doc. 192), and considering that this Court "should be loathe to" revisit its prior decision absent "extraordinary circumstances," *see Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988), the Court finds the proper answer to be the following. First, due to the diminutive risk that memoranda and communications between attorneys about the strengths and weakness of each allocant would be disclosed to Plaintiffs, the Court finds that Defendants' work-product protections have not been waived as to those communications. Second, any draft declarations that preceded the final allocant declarations submitted by Defendants are not protected by the work product doctrine and must be disclosed. Finally, while communications from Defendants to allocants are protected by the work product doctrine, communications from allocants to Defendants are not.

**II.    BACKGROUND.**

As the Court previously noted:

> This action, in which Plaintiffs aver that Defendants violated the Securities Exchange Act of 1934, is based on an alleged "pumping" and "dumping" of stock. (Doc. 105 at 2–3.) Part of Defendants' alleged misdeeds was the sale of vehicles before Defendants possessed the titles to such vehicles. (*Id.* at 2–3, 45.) Such acts, Plaintiffs have alleged, relates to Defendants' scienter—an element of a security fraud claim. (*Id.* at 41–42, 45–48.) Grounding Plaintiffs' T&R allegations were confidential witness accounts from a number of CWs, including CW-4. (*Id.* at 45–48.)
>
> While the Presiding Judge dismissed portions of Plaintiffs' Amended Complaint [("AC")], the T&R allegations that Defendants sold cars before they possessed those cars' titles remained. (*Id.* at 69–73.) This decision was based, at least in part, upon a finding that the CWs' accounts were "probative of Defendants' scienter by suggesting precisely what Plaintiffs allege—that Carvana's noncompliance with title and registration requirements was widespread and persistent, and Defendants were well aware of the issue." (*Id.* at 48.)

(Doc. 394 at 2.)

At issue today are two sets of subpoenas *duces tecum* Plaintiffs have issued. The

first set of subpoenas were issued as to three entities—DriveTime Automotive Group, Inc, Bridgecrest Credit Company, LLC, and Verde Investments, Inc. (collectively, "Related Third Parties")—related to Defendant Garcia Sr. (Doc. 495 at 2.) The second set of subpoenas were issued as to 24 capital management and investment companies. (Doc. 524-1 at 4–6.)

Turning first to the subpoena issued as to the Related Third Parties, the subpoenas requested broad categories of documents, including: (a) documents and communications regarding transactions between Related Third Parties and Carvana during the "Relevant period"; (b) "[a]ll documents and testimony that you have produced or provided to, or received from, any regulatory or government agency, or federal or state law enforcement agency concerning your transactions with Carvana"; (c) "[d]ocuments sufficient to show Garcia Senior's and Garcia Junior's control and/or ownership" of Related Third Parties, *etc. See, e.g.*, (doc. 495-5 at 12–13.) Since the subpoenas—in their original iteration—were issued on July 22, 2025, (doc. 495-1 at 2), Plaintiffs and Related Third Parties have met and conferred in an attempt to resolve this issue, *see* (docs. 495-8 to -15), but to no avail.

Turning to the second tranche of subpoenas, Plaintiff has issued these to 24 allocants who have communicated with Defendants and submitted declarations that were used in connection with Defendants' Opposition to Plaintiffs' Motion for Class Certification. (Doc. 522 at 2.) Plaintiffs' subpoenas upon these allocants, in Request for Production ("RFP") No. 7, request the production of "[a]ll documents and communications concerning this Action or the Plaintiffs that you had with counsel for any Defendant . . . . This Request extends through the present." *See, e.g.*, (doc. 524 at 22.)

Following briefing by the parties, the Court conducted a telephonic discovery hearing on June 26, 2026. (Doc. 549.)

III.    **LEGAL STANDARDS**.

"The discovery process in theory should be cooperative and largely unsupervised by the district court." *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1219 (9th Cir. 2018). However, where theory does not reflect realty—such as when "disclosures aren't made or

cooperation breaks down"—Rule 37 and 45 provide the proper mechanisms to compel the disclosure of discovery from parties and non-parties alike. *See id.*

The court has broad discretion regarding whether to permit or deny discovery via a motion to compel. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). Generally, discoverable evidence is "any nonprivileged matter that is relevant[2] to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).

While a party's right to discovery is broad, that does not mean that it is limitless. *See* Fed. R. Civ. P. 26(b)(2). Courts will limit discovery where:

> (a) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (b) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii).

Pursuant to Rule 45, a party may issue a subpoena upon a non-party to obtain the production of documents. *See* Fed. R. Civ. P. 45(a)(1)(A)(iii). "[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules, which in turn is the same as under Rule 26(b)." *ATS Prods. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 530 (N.D. Cal. 2015) (citation omitted). "Rule 45 provides that 'on timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden.'" *Id.* at 531 (quoting Fed. R. Civ. P. 45(d)(3)(A)(iv)). "Underlying the protections of Rule 45 is the recognition that 'the word non-party serves as a constant reminder of the reasons for the limitations that characterize third-party discovery.'" *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006) (cleaned up) (quoting *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980)). "Thus, a court determining the propriety of a subpoena balances the relevance of

---

[2] Evidence is considered relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Further, a court may exclude relevant evidence where its probative value is substantially outweighed by the danger of confusing the issue in the present case. Fed. R. Evid. 403.

the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Gonzales*, 234 F.R.D. at 680.

"[T]he court that issued the subpoena . . . can entertain a motion to quash or modify a subpoena." *Sec. Exch. Comm'n v. CMKM Diamonds, Inc.*, 656 F.3d 829, 832 (9th Cir. 2011). The issuing Court must quash or modify a subpoena that:

> (i) fails to allow a reasonable time to comply;
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A).

The Court has "broad latitude to control discovery matters," *AFGE v. Trump*, 155 F.4th 1082, 1093 (9th Cir. 2025), and its discovery rulings "will not be overturned unless there is a clear abuse of discretion." *Little v. Seattle*, 863 F.2d 681, 685 (9th Cir. 1988).

**IV.    DISCUSSION.**

**A. Related Third Party Subpoenas**.

Because Plaintiffs' subpoena seeks matters that are relevant to their claims, the Court shall permit their subpoena to proceed against the Related Third Parties. Nevertheless, seeing as their subpoena may inflict an undue burden upon the Related Third Parties, the Court shall modify the subpoenas, permitting Plaintiffs to receive 5,000 documents from the Related Third Parties.

Rule 45(d)(3)(A) sets out several grounds in which the Court "must quash or modify a subpoena," including where the subpoena would inflict "undue burden" upon the subpoenaed third party. *See* Fed. R Civ. P. 45(d)(3)(A)(iv). "[T]he undue burden language is limited to harms inflicted by complying with the subpoena," not the "adjudication of related follow-on issues, such as whether the subpoenaed information is potentially protected by a privilege." *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 428 (9th Cir. 2012).

In opposing Plaintiffs' Motion to Compel Third-Party Subpoenas, the Related Third

Parties assert three arguments. First, the Related Third Parties assert that Plaintiffs' requests are irrelevant to this litigation. (Doc. 527 at 2, 4–7.) Second, they assert that the discovery sought is both unreasonably cumulative and duplicative. (*Id.* at 2–3, 7–9.) Third, the Related Third Parties assert that Plaintiffs' requests are unduly burdensome. (*Id.* at 3, 9–13.) Specifically regarding Related Third Parties' claims of undue burden, they point to the fact that Plaintiffs' requested search term would "return nearly 200,000 hits," (*id.* at 9), and might result in a total cost "between $170,056 to $557,968 depending on the review methodology employed, plus ongoing monthly hosting costs of $920 per month." (Doc. 572-2 at 4.)

The Related Third Parties' first two arguments are unavailing. As to their first argument, the Court notes that "[t]he same broad scope of discovery set out in Rule 26 applies to the discovery that may be sought pursuant to Rule 45." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014) (citation omitted). Here, as Plaintiffs have noted during oral arguments, the documents sought may represent how Defendants "understood, approved, implemented, and benefited from transactions." (Doc. 549.) Because the requested documents go towards Plaintiffs' security fraud claims, they are relevant, and consequently, discoverable. Regarding Related Third Parties' second argument, the Court finds that the requested documents are not unduly cumulative, because it does not appear that these documents are in Defendants' possession, especially considering that Plaintiffs have "excluded communications with Carvana, (*id.*), mitigating the risk that the search would hit communications to and from Defendants that have already been covered in Plaintiffs' requests to Defendants.

As to the Related Third Parties' undue burden argument, the Court does express concern with the potential half-a-million-dollar cost of this search. (Doc. 572-2 at 4.) "In determining whether a subpoena poses an undue burden, courts 'weigh the burden to the subpoenaed party against the value of the information to the serving party.'" *Amini Innovation*, 300 F.R.D. at 409 (quoting *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005)). In other words, "[c]ourts should consider the need of the requesting

party for the information, the burden on the non-party in complying with the subpoena, the relevance of the requested information, and the breadth or specificity of the request." *Aecom Tech. Servs. v. Zachry Constr. Corp.*, No. 2:19-mc-00201-JAK (RAOx), 2020 U.S. Dist. LEXIS 72150, at *7 (C.D. Cal. Feb. 3, 2020).

Here, the Court must balance Plaintiffs' valid need in these documents—as these documents are not possessed by Defendants and are relevant to their security fraud claims in this action—with the potential fiscal burden that Related Third Parties would incur. Additionally, the Court is mindful of the breadth of Plaintiffs' request. Taking these considerations in mind, the Court does not find that the subpoena would cause such an undue burden as to require this Court to quash it. However, the Court, ever mindful that "[t]he The Federal Rules . . . afford nonparties special protection against the time and expense of complying with subpoenas," *Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 98 (D. Ariz. 2022) (quoting *Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994)), finds the prospective of the Related Third Parties incurring costs in excess of $500,000 unpalatable. Consequently, the Court finds that this situation necessitates a modification of the subpoena, at this time, to require the Related Third Parties to conduct a test run of 5,000 documents to mitigate the risk of any undue fiscal burden. *See United States v. McKesson Corp.*, No. 21-mc-80065-JCS, 2021 U.S. Dist. LEXIS 97037, at *57 (N.D. Cal. May 21, 2021) (requiring the parties and third parties to meet and confer and narrow an "extremely broad" subpoena request that would have inflicted an undue burden upon the third parties); *see also Thompson v. Mukilteo Sch. Dist. No. 6*, No. 2:25-cv-00529-JNW, 2026 U.S. Dist. LEXIS 78028, at *7–9 (W.D. Wash. Apr. 8, 2026) (quashing subpoenas except as to "two narrow categories" that were relevant to the plaintiff's claims, and limiting those two categories further). Plaintiffs and Related Third Parties shall be directed to meet and confer on this 5,000 document search—*i.e.*, whether all custodians will have their Electronically Stored Information ("ESI") data searched, or whether the search will be limited to certain custodians and how to limit the search of their ESI data.

**B. Work Product Doctrine**.

The next issue the Court shall address is whether the Court shall quash or modify RFP No. 7 within the subpoenas issued by Plaintiffs.[3]

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). While the Federal Rules of Civil Procedure provide a wide berth for discovery, it does provide certain express limitations on what a party generally cannot discover, including documents covered by the attorney work product doctrine. *See* Fed. R. Civ. P. 26(b)(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[.]").

"Federal law governs the application of the work product doctrine." *United Specialty Ins. Co. v. Dorn Homes, Inc.*, 334 F.R.D. 542, 544 (D. Ariz. 2020). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975); *Dorn Homes*, 334 F.R.D. at 544 ("This protection applies to documents prepared 'by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).'") (quoting *Bickler v. Senior Lifestyle Corp.*, 266 F.R.D. 379, 383 (D. Ariz. 2010)). "The work-product rule is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. United States Dist. Ct. for Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989). This doctrine "shields both opinion and factual work product from discovery." *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008).

---

[3] As a general rule, a party has "no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought." *Thompson v. Mukilteo Sch. Dist. No. 6*, No. 2:25-cv-00529-JNW, 2026 U.S. Dist. LEXIS 78028, at *3 (W.D. Wash. Apr. 8, 2026). Because Defendants are asserting that all documents and communications at issue are work product protected, they have standing to challenge the subpoenas. *See Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 643 (E.D. Cal. 2014) (finding that the plaintiffs had standing to move to quash a subpoena issued to third parties on work product grounds).

"Generally, discoverable facts are not protected by the work-product doctrine." *ARA Inc. v. City of Glendale*, No. CV-17-02512-PHX-GMS, 2018 U.S. Dist. LEXIS 94074, at *2 (D. Ariz. June 5, 2018). Rather, "To qualify for work-product immunity, documents must: (1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared 'by or for another party or by or for that other party's representative.'" *Id.* (quoting *United States v. Torf (In re Grand Jury Subpoena)*, 357 F.3d 900, 907 (9th Cir. 2003)). "The party asserting the work-product immunity has the burden of demonstrating that the at-issue documents are work-product." *Id.* at *2–3.

The work product doctrine protection may be waived by a party. *See Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010). For example, attorney work product protections may be waived "when an attorney attempts to use the work product as testimony or evidence, or reveals it to an adversary to gain an advantage in litigation." *Hatamian v. Advanced Micro Devices, Inc.*, No. 14-cv-00226-YGR (JSC), 2016 U.S. Dist. LEXIS 60551, at *7 (N.D. Cal. May 6, 2016) (citation omitted). Pertinent to the situation at hand, "[i]f a document otherwise protected by work-product immunity is disclosed to others with an actual intention, or reasonable probability, that an opposing party may see the document, the party who made the disclosure cannot subsequently claim work-product immunity." *Skynet Elec. Co. v. Flextronics Int'l, Ltd.*, No. C 12-06317 WHA, 2013 U.S. Dist. LEXIS 176372, at *9–10 (N.D. Cal. Dec. 16, 2013) (citing *In re Imperial Corp. of Am.*, 167 F.R.D. 447, 456 (S.D. Cal. 1995) *aff'd*, 92 F.3d 1503 (9th Cir. 1996)). However, the "attorney work-product protection is not automatically waived upon disclosure to third parties." *Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 645 (E.D. Cal. 2014). Instead, disclosure to third parties "generally does not waive the work product immunity unless it has substantially increased the opportunities for potential adversaries to obtain the information." *Id.* (citation omitted). Additionally, a party may expressly waive their work-product protections over material where they are directly disclosed to an adversary. *See United States v. Sanmina Corp. & Subsidiaries*, 968 F.3d 1107, 1123 (9th Cir. 2020).

When such a waiver occurs, the work product protection is waived "only as to that subject." *Hernandez*, 604 F.3d at 1100. "The party asserting immunity from production bears the burden of establishing that the work product doctrine applies and has not been waived." *Hatamian*, 2016 U.S. Dist. LEXIS 60551, at *7 (citing *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002)).

Specifically at issue here are three categories of documents and communications identified by the Court during the telephonic discovery hearing: (1) memoranda between the attorneys about the allocants and the strengths and weaknesses of each; (2) draft allocant declarations; and (3) communications from Defendants' counsel to allocants, and *visa versa*. The Court shall address each in turn.

Starting with memoranda and communications between attorneys about the strengths and weakness of allocants, the Court finds that these documents are work product protected, and that protection has neither been voluntarily nor implicitly waived. First, such memoranda and communications originating from counsel are, of course, work product protected, as they were prepared in anticipation of litigation and were prepared by Defendants' counsel. Second, these documents, as they contain information regarding counsel's beliefs as to each allocants strengths and weakness, understandably contain opinion work product. Unquestionably, discussions regarding such opinion work product between Defendants' counsel has not been waived, either expressly nor implicitly, as such communications have not been shared with allocants or their counsel. Consequently, Defendants' communications and memoranda between the attorneys' regarding each allocants strengths and weaknesses are work product protected without waiver and are non-discoverable.

While the first category is clearly protected by the work product doctrine and is without waiver, the second category is less clear. Defendants contend that the fact that they have filed the final versions of allocants' declarations "does 'not waive protections for the drafts and correspondence leading up to the final declaration.'" (Doc. 522 at 3) (cleaned up) (*Grano v. Sodexo Mgmt.*, No. 18cv1818-TWR(BLM), 2021 U.S. Dist. LEXIS 196337,

at *20 (S.D. Cal. Oct. 12, 2021)). Plaintiffs contend that Defendants have waived any work product protections as to draft allocant declarations. (Doc. 522 at 4–5.) On this matter the Court need not address questions of waiver, because Defendants have not met their burden of establishing that draft declarations are work product protected under this District's case law. *See ARA Inc.*, 2018 U.S. Dist. LEXIS 94074, at *2–3. Specifically, this Court is persuaded by this District's precedent establishing that "a draft affidavit is a 'statement of facts within the personal knowledge of the witness, and not an expression of the opinion of counsel.'" *Altschuler v. Chubb Nat'l Ins. Co.*, No. CV-21-00119-TUC-DCB, 2023 U.S. Dist. LEXIS 32169, at *6 (D. Ariz. Feb. 24, 2023). Specifically, as noted by the court in *ARA Inc.*, "[a]lthough changes in draft affidavits might reveal the drafting lawyer's mental impressions and strategy, they may reveal nothing more than that an attorney phrased factual statements for a witness to adopt." *ARA Inc.*, 2018 U.S. Dist. LEXIS 94074, at *4. Like the courts in *ARA Inc.* and *Altschuler*, this Court finds "that draft affidavits are not protected by the work-product doctrine to the extent that they reveal that the attorney has put words describing facts in the witness's mouth." *Altschuler*, 2023 U.S. Dist. LEXIS 32169, at *6.

Given that Defendants bear the burden of establishing that these documents are work-product protected, and that all they provide in support of this assertion are "mere categorical assertion[s] that [these] draft affidavits are work-product," which "is insufficient to meet th[eir] burden," *Altschuler*, 2023 U.S. Dist. LEXIS 32169, at *6–7, the Court finds that the allocant draft declarations are not work-product protected and are discoverable.

The last category at issue is communications from Defendants' counsel to allocants, and the allocants' response to Defendants' communications. This matter presents the Court with a novel question: whether communications with allocants who are putative—*i.e.*, absent—class members may implicitly waive work product protections as to communications between a defendant and the allocant. To address this question, the Court finds it necessary to first bifurcate the communications at issue between those

communications originating from an allocant and those originating from Defendants' counsel. Although doing so may appear "odd" at first glance, "it is possible to do so" and is necessary to arrive a clear answer on this issue. *See Depina v. FedEx Ground Package Sys., Inc.*, 730 F. Supp. 3d 954, 957 (N.D. Cal. 2024) (finding that bifurcating between counsel's survey and responses was warranted in the court's analysis).

Turning first to communications from allocants to Defendants' counsel, the Court notes that these clearly do not equate documents "prepared in anticipation of litigation" be prepared "by or for another party or by or for that other party's representative." *In re Grand Jury Subpoena*, 357 F.3d at 907. In fact, the allocants' communications "are not work product [at all], as they are the thoughts and impression of the putative class members and not [Defendants'] lawyers' thoughts and impressions." *See Depina*, 730 F. Supp. 3d at 957; *see also United States EEOC v. Il Fornaio Am. LLC*, No. CV 22-5992-SPG(Ex), 2026 U.S. Dist. LEXIS 101743, at *4 (C.D. Cal. May 6, 2026) ("The Recipients' responses to the questionnaire constitute the verbatim statements of witnesses, which do not constitute attorney work product."). Hence, allocants' responses to Defendants' requests for communication are discoverable.

Turning next to Defendants' counsel's communications, the Court notes that this presents a closer call. Such communications were prepared for Defendants' defense in this action, and were prepared by and for Defendants' by their counsel. *See United States EEOC v. ABM Indus.*, 261 F.R.D. 503, 512 (E.D. Cal. 2009) ("This questionnaire was clearly prepared by the EEOC's legal staff during the course of this litigation in order to pursue the interests it sought to vindicate by way of its lawsuit. As such, the questionnaire itself is covered by the attorney work product doctrine."). The crux of the issue is whether their disclosure to the allocants who are putative—*i.e.*, absent—class members amounted to a waiver of Defendants' work-product protections.

As an initial matter, due to the timing of Defendants' communication with the allocants, Defendants could not have expressly waived their work-product protection over their communications. This is because express waiver generally requires "disclosure to an

adversary," *Sanmina Corp.*, 968 F.3d at 1123, which the allocants, as putative class members, are not. Rather, the focus of this matter is whether Defendants have implicitly waived their work-protections over these communications. Defendants assert that they have not, both under the auspices of the law of the case doctrine[4] and because it has not substantially increased the opportunities for Plaintiffs to obtain the information in the communication. (Doc. 522 at 3.) Specifically, Defendants point to the fact that Plaintiffs have had to issue subpoenas as to these allocants as evidence that it is not likely that adversaries would be able to obtain these communications. (*Id.*) Plaintiffs disagree with Defendants' assertion. Rather, Plaintiffs assert that Defendants communications were with "conduit[s] to adversary[ies]" and has "substantially increased the opportunities for potential adversaries to obtain information." (*Id.* at 4) (quoting *Sanmina Corp.*, 968 F.3d at 1121). Because Defendants' communications with the allocants, who are currently third parties to this action, did not substantially increase the opportunities for Plaintiffs to obtain the information at this time, the Court does not find that Defendants have implicitly waived their work-product protections over their communications.

In reaching this finding, the Court has considered whether Defendants' disclosure "is inconsistent with the maintenance of secrecy from the disclosing party's adversary," *Labbe v. Dometic Corp.*, No. 2:20-CV-1975-DAD-DMC, 2024 U.S. Dist. LEXIS 15314, at *16 (E.D. Cal. Jan. 29, 2024), and has found that, at this time, such disclosure was not inconsistent with the maintenance of secrecy. First, the Court is persuaded by the argument that Plaintiffs' reliance upon subpoenas establishes that there is not a substantial increase of the opportunity for Plaintiffs to gain Defendants' communications. Second, the Court is not persuaded that communications with allocants, as putative class members, would substantially increase the opportunity for Plaintiffs to obtain these communications. In other words, at this time, the Court has insufficient evidence upon which to formulate a view whether Plaintiffs will or will not succeed on class certification. So, just as there is a possibility that allocants will become active—not prospective—class members were

---

4    Or in Defendants' counsel's locution, the proverbial 'what's good for the goose is good for the gander.' *See* (doc. 549.)

Plaintiffs to succeed on class certification, it is also possible that class certification may be denied, ending the possibility that allocants would become present class members in this action. In short, the possibility that allocants may become adversaries is too far attenuated for this Court to find that Defendants' communications to them have substantial increased of the opportunity for Plaintiffs to gain those communications. *Cf. Grano v. Sodexo Mgmt.*, No. 18cv1818-TWR(BLM), 2021 U.S. Dist. LEXIS 196337, at *19-20 (S.D. Cal. Oct. 12, 2021) ("The current record does not support [defendant's] position that all of the requested information is obtainable via a FOIA request and that, therefore, [p]laintiffs' communications substantially increased the opportunity for [defendant] to obtain the information.").

Finally, and importantly, this finding appears congruent with the Court's prior discovery order. *See* (doc. 192.) "The law-of-the-case doctrine is a discretionary doctrine" applying "when the issue in question was 'decided explicitly or by necessary implication in [a] previous disposition.'" *Concurrent Ventures, LLC v. Advanced Micro Devices Inc.*, No. 25-cv-09567-JST (LB), 2026 U.S. Dist. LEXIS 75011, at *7 (N.D. Cal. Apr. 6, 2026) (quoting *Lower Elwha Band of S'Klallams v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000)). While this doctrine is discretionary, because stability in the rules of law announced in a case is crucial to avoid the piecemeal litigation of an action due to conflicting orders, the Court shall apply the doctrine here. Just as the Court's prior order permitted Defendants to question confidential witnesses about the facts underlying their statements, (doc. 192 at 7), this Court shall permit Plaintiffs to obtain allocants responses to Defendants' questions as they contain the thoughts and impressions of the allocants. And, just as the Court did not permit the Defendants to question the confidential witnesses about Plaintiffs' counsel's prefiling investigations, (*id.*), this Court shall prohibit allocants from providing the communications they have received from Defendants' counsel.

For the foregoing reasons, the Court shall grant the parties' Joint Discovery Motion (doc. 522) as to Plaintiffs in part and as to Defendants in part. Specifically, the Court finds that: (a) Defendants' counsel's memoranda and communications regarding allocants

strengths and weaknesses is work-product protected; (b) draft allocant declarations are not work-product protected; and (c) while allocants' responses to Defendants' counsel's communications are not work-product protected, Defendants' counsel's communications to allocants are, a protection that has not been waived.[5]

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion to Compel Third-Party Subpoenas (doc. 495) is **GRANTED IN PART**. Plaintiffs' subpoena is **MODIFIED** at this time, to a test run of 5,000 documents from the Related Third Parties and their ESI custodians. Counsel for Plaintiffs and the Related Third Parties are directed to meet and confer so that production may occur on or before **JULY 24, 2026** pursuant to this Order.

**IT IS FURTHER ORDERED** that the parties' Joint Discovery Motion (doc. 522) is **GRANTED** as to **PLAINTIFFS IN PART** and as to **DEFENDANTS IN PART**. Particularly, the Court finds that: (a) Defendants' counsel's memoranda and communications regarding allocants strengths and weaknesses is work-product protected; (b) allocant draft declarations are not work-product protected; and (c) while allocants' responses to Defendants' counsel's communications are not work-product protected, Defendants' counsel's communications to allocants are, a protection that has not been implicitly waived.

**IT IS FURTHER ORDERED** that Defendants' Motions to Seal (docs 523 & 546) are **GRANTED**. The Clerk of Court is kindly directed to file (doc. 524) **UNDER SEAL**.

Dated this 15th day of July, 2026.

Honorable John Z. Boyle
United States Magistrate Judge

---

[5]   As a final matter, the Court shall grant the Defendants Motions to Seal (docs. 523 & 546.) The Court shall do so because the District Court granted a Protective Order which rationally covers these documents. *See* (doc. 136.) Hence, the District Court has, *ipso facto*, determined that good cause exists to protect these documents. *See, e.g., Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1214 (9th Cir. 2002) ("When a court grants a protective order for information produced during discovery, it already has determined that "good cause" exists to protect this information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality.").