**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| United Association National Pension Fund, *et al.*, | ) ) ) | CASE NO. CV-22-02126-PHX-MTL |
| Plaintiffs, | ) ) | SPECIAL MASTER COHEN |
| v. | ) ) | **UPDATED RULING IN LIGHT OF CARVANA'S OBJECTION TO** |
| Carvana Company, *et al.*, | ) ) | **PRIOR TRANCHE ONE DOCUMENT RULINGS** |
| Defendants. | ) | |

On June 26, 2026, the undersigned filed a "Ruling Regarding Tranche One of Carvana Documents" ("Tranche One Ruling") (docket no. 552). In that Ruling, the Special Master assessed Carvana's privilege claims over 84 "parent documents" and sustained fully or in part the privilege claim for 40 of them. Carvana then filed an objection to the Special Master's rulings on eight of those 40. *See* docket no. 562. To at least some extent, the objection contained information about the eight documents, as well as some general background discussion, that had not been submitted to the Special Master. (The Special Master was aware of some of this contextual material by virtue of having read the complaint and numerous other docket entries, but the new information in the objection was more thorough, concise, and focused.)

The Court responded by directing the undersigned "to Review Defendants' Objection (doc. 562) and exhibits attached thereto" and "file an updated ruling." Docket no. 567 at 1 ("Re-Review Order"). The Court reiterated that "any and all materials related to the Special Master's review of Defendants' privilege log should—if not already—be timely provided to the Special Master." *Id.*; *see also* Order Appointing Special Master at 3 ("The parties shall not include—and the Court will not consider—any evidence or argument that was not presented to the Special Master."). The

1

Special Master understands the Court's Re-Review Order to require the undersigned to re-examine the eight documents listed in Carvana's objection in light of the additional information and argument provided, and also understands that the Court will only rarely allow for or request such re-review of documents following provision of additional information.

The Special Master's updated conclusions regarding Carvana's privilege claims over the eight documents are set out below. For the reasons stated, the Special Master re-affirms the original rulings for seven of the challenged documents and changes the original ruling for one document. To facilitate any additional review by the Court, the Special Master provides more detailed and thorough explanations than would normally appear in an original Ruling. Unless otherwise directed, going forward the Special Master does not intend to provide the parties with meticulous discussions for each of the tens of thousands of documents Carvana has listed on its privilege log.

Finally, before turning to the analysis of each of the eight documents, the Special Master highlights an issue discussed in footnotes 2 and 3 below—that is, changes to redactions by Carvana within a given document. As noted in the Tranche One Ruling, Plaintiffs originally identified 364 documents for review in Tranche One; Carvana responded by dropping its privilege claims for all but 157 of those documents; and the Special Master upheld about half of Carvana's privilege claims. Given this roughly 20% Tranche One "success rate," the Special Master "strongly suggest[ed] Carvana should undertake an additional, careful assessment of *all* of the documents listed in its privilege log and remove those where the privilege claim is not appropriate." Tranche One Ruling at 9. As of this writing, Carvana has stated it is undertaking this re-assessment, but it has not produced to Plaintiffs a modified privilege log nor any documents removed from the log.

As explained in footnotes 2 & 3 below, the Special Master has some concern that, during re-assessment, Carvana is not just "*remov[ing]*" those [documents or redactions from the log] where

2

the privilege claim is not appropriate," it may also be *adding* redactions. The Court may want to inquire about this issue.

The Special Master's additional analysis and re-review of the eight documents listed in Carvana's objection follows.

*    *    *    *

**PLOG00070245 ("Exhibit 1")**. Exhibit 1 is an email chain that begins with an unprivileged email announcing a change to one of Carvana's title and registration ("T&R") business practices. There follows a redacted exchange between two non-lawyers regarding implementation of that change. During the redacted exchange between "Jessica Brand, the non-lawyer who sent the initial [non-privileged] email" and "Jefferson Davis, a Carvana employee located in Utah," Brand copies members of Carvana's Regulatory Operations Support ("ROS") team, and one of the ROS team members subsequently weighs in to clarify the announced change. Objection at 10.

Carvana asserts the widely-shared redacted exchange between Brand, Davis, and the ROS team constitutes the provision of "legal advice on a specific practice under specific state laws," and "[t]hat advice, based on legal analysis and in response to a specific legal issue, serves a primarily legal purpose." *Id.* at 10–11. For the reasons stated below, the Special Master disagrees and declines to reverse the original ruling on Exhibit 1.

Carvana asserts its ROS team "transmits legal advice addressing specific T&R issues from Carvana's counsel to the employees *implementing* that advice." *Id.* at 10, n.2 (emphasis added). Carvana also acknowledges, however, that, when there are "communications among non-attorney employees that merely *implement* legal advice; those communications are not privileged." Peters

3

7/10/26 Ltr. Br. at 7 (citing *Hudock v. LG Elecs. U.S.A., Inc.*, 2019 WL 5692290, at *3 (D. Minn. Nov. 4, 2019) (emphasis added)). That is precisely what is going on here. Carvana announced a change to its T&R business practices. The change was understandably vetted by Carvana's legal department. It was then conveyed to Carvana's front-line employees for implementation. That there was a concern from one of those front-line employees about how to ***implement*** the announced change does not constitute a request for or the provision of ***legal advice***, even if the employee's concern was addressed by the ROS team. The primary purpose of the email change is provision of advice on how Carvana should implement the new T&R ***business*** practice; this is not privileged.

**PLOG00074294, PLOG00074288, and PLOG00074278 ("Exhibits 2, 3, & 4").** These documents are three versions of an email chain between two Carvana in-house lawyers. Carvana quotes the Special Master's original ruling—"Primary purpose is business, not legal. Does not reflect a request for or provision of legal advice."—and asserts the ruling "did not explain how a lawyer's question to another lawyer about [the redacted subject matter] was 'not legal' advice." Objection at 7.

Carvana is correct that the email in question touches upon legal advice. However, the essence of the original ruling was that the ***primary purpose*** of the colloquy between attorneys was to carry out a business function, with legal questions appearing as a secondary issue and not the thrust or animating reason behind the communications. The Special Master reaffirms his prior rulings on Exhibits 2–4, because the subject matter about which the lawyers were conferring was fundamentally to determine an effective means to solve a business problem.

**PLOG00028996 ("Exhibit 5").** Exhibit 5 is an email exchange between in-house counsel conveying facts and data trends regarding temporary permit issuances in certain States. Carvana asserts this factual information was "crucial to these lawyers' ability to advise Carvana on"

compliance with Title and Registration laws "on the heels of the Michigan Department of State Placing Carvana's Novi, MI dealership on probation due to alleged title and registration violations." *Id.* at 13-14.

The Special Master understood this context in the original ruling and concluded the predominant purpose of the communication was the dispensing of business advice, not legal advice. For the reasons explained below, the Special Master declines to reverse the original ruling.

In a heavily regulated industry, a business must necessarily navigate the regulatory framework to carry out its normal business functions. When lawyers advise on compliance with regulations, or communicate data to inform such advice, the communications commonly involve a request for mixed business and legal advice. However, an "attorney's advice does not constitute legal advice simply because it relates to regulatory activity." *In re Cal. Bail Bond Antitrust Litig.*, 778 F. Supp. 3d 1051, 1060 (N.D. Cal. 2025). Here, Carvana's submissions do not indicate the presence of any pending or threatened litigation or regulatory action ***in the States in question***. Instead, Carvana points to a regulatory action taken in Michigan to support a claim of privilege over communications relating to regulatory compliance in other States. And Carvana does not disclose any information linking the Michigan action to any regulatory action taken in those other States. This latter point bears repeating: Carvana's submissions provide no connection between the discussion between in-house counsel regarding everyday business functions in Exhibit 5 and the Michigan probation.

As stated in the original ruling, two of the legal touchstones the Special Master must apply are: (1) attorney-client privilege should be narrowly and strictly construed, and (2) the party asserting the privilege bears the burden of establishing each of its elements. The Special Master reaffirms the prior ruling that Carvana has not carried its burden of demonstrating that the primary

purpose of the email was to provide legal advice. Carvana did not do so with its original submission and did not do so with the additional information provided with its objection.

**PLOG00050078 ("Exhibit 6").** Exhibit 6 is an email from General Counsel Paul Breaux to Carvana CEO Ernest Garcia III. In its objection, Carvana notes that lawyers for a public company "are often involved when making public statements to ensure that information cannot be misconstrued and spark litigation—especially when the public statements are about stock sales." Objection at 14. Carvana also notes (*for the first time, in its objection*) that it has "already produced the final email Breaux shared with the *Wall Street Journal* reporter, withholding only internal emails reflecting the legal advice that informed that third-party communication." *Id.*

Having re-reviewed Exhibit 6, the Special Master reverses the original ruling and sustains Carvana's assertion of attorney-client privilege.[1] A full explanation for this change is not provided here because doing so would require disclosing privileged matters. It suffices to say that the additional contextual material and document-specific discussion provided by Carvana change the Special Master's conclusion regarding whether Carvana carried its burden of proof.

---

[1]   Carvana further faults the Special Master's original rulings on Exhibits 5 and 6 because the original analysis did not consider whether the documents were entitled to attorney work product protection. Carvana states it "argued before the Special Master that Exhibits 5 and 6 were privileged *and work product* because they reflected "attorneys' mental thoughts, impressions, and opinions" on "anticipated or pending litigation." *Id*. at 14-15 (emphasis added). In fact, Carvana did *not* designate these two documents as attorney work product. The Excel spreadsheet Carvana submitted to explain and support its privilege designations included a field (Column T) titled "Privilege Type," in which Carvana could indicate "ACP" (for attorney-client privilege), "AWP" (for Attorney Work Product), or both. Only one of the eight documents that are subject to this Objection (indeed only one of the 157 documents in Tranche One) included the notation AWP, and that is Exhibit 8, which is discussed below. Accordingly, the Special Master declines to reconsider this aspect of his rulings on Exhibits 5 and 6.

**PLOG00043555 ("Exhibit 7")**. Exhibit 7 is a 225-page Board-of-Directors presentation. Carvana seeks to redact two slides titled "Compliance Updates" and "Regulatory & Litigation Trends/Update."[2]

The district court's analysis in *United States v. Rite Aid Corp.*, 2021 WL 1196250 (E.D. Cal. Mar. 30, 2021), is helpful to explain the Special Master's evaluation of the redacted slides. In *Rite Aid*, the court examined Board presentation materials and upheld Rite Aid's privilege claims, stating:

> Review of the documents confirms Rite Aid's representations that these documents consist of legal updates and ***strategies*** for addressing various legal issues. These regulatory ***risks assessments*** highlight various regulatory issues known to Rite Aid; the ***level of concern*** (or priority status) for each issue; and, in some instances, the ***legal consequence*** that could potentially result from the issue and/or ***recommendations*** to address the problem area. They also reflect information about specific legal matters—including ongoing litigation, governmental investigations,

---

[2]    Carvana's Exhibit 7 contains multiple additional highlighted slides—indicating proposed redactions—that were not proposed to be redacted in the *in camera* documents submitted to the Special Master. *See* Decl. of Matthew Peters at 2 ("The highlighted portions of Exhibit 7 (pages 130-31, 213-14, 220, 222) represent material Carvana has redacted for privilege." In the document provided to the Special Master, consisting of bates nos. CVNA_CA_00005838–6062, only two slides were shown as redacted, not six slides. *See* CVNA_CA_00006049–6050 (corresponding to Ex. 7 pp. 213–214).

     The origin of this discrepancy is unclear. Carvana does not acknowledge these new redactions in any of its briefing. In its Objection, for example, Carvana only discusses Exhibits 7–8 in broad, generalized terms and does not discuss any specific redaction with particularity. *See* Objection at 8 ("The redacted material—which was prepared and presented by Carvana's in-house lawyers—discussed updates on [three broad categories of information Carvana asserts reflect legal analysis].").

     Had the Special Master sustained Carvana's redactions at the outset, there would have been nothing about which Carvana could object, and the document would have been (and should already have been) produced without the additional proposed redactions Carvana now seeks. Further, because Exhibit 7 was specifically identified by Plaintiffs and reviewed and produced by Carvana for *in camera* examination, there can be no argument that Carvana's initial omission of the proposed new redactions was inadvertent.

     While the Court's Order directing the undersigned to re-review the new information contained in Carvana's Objection expressly contemplates review of ***materials*** presented for the first time in the Objection—noting "[m]aterials **SHOULD NOT** be provided, for the first time, in a party's objection"—the Court's Order cannot be read to permit Carvana to add ***new redactions*** that were not asserted previously. *See* docket no. 567 at 1. Thus, Carvana's privilege assertions over the proposed new redactions on pages 130–31, 220, and 222 of Exhibit 7 are waived.

and consent decrees—and Rite Aid and its counsel's ***strategies and efforts*** to address these matters.

*Id.*, at *10 (emphasis added).

Comparing the *Rite Aid* court's findings to the redacted information in Exhibit 7, there are some similarities but also notable differences. For instance, while Carvana's presentation does consist of "legal updates" on compliance, regulatory, and litigation trends, it does not contain ***any*** "strategies for addressing [those] legal issues." *Id.* Similarly, Carvana's presentation does "highlight various regulatory issues known to [Carvana]," however, it does not: (1) offer any "risk assessments;" (2) express a "level of concern (or priority status) for [any] issue;" (3) identify "the legal consequence that could potentially result from the issue;" or (4) provide "recommendations to address [any] problem area." *Id.* Finally, while Carvana's presentation does reflect "[factual] information about specific legal matters—including ongoing litigation [and] governmental investigations," it does not reflect Carvana's or "its counsel's strategies and efforts to address these matters." *Id.*

In sum, as in *Rite Aid*, Carvana's presentation in Exhibit 7 ***does*** present ***underlying facts*** about legal matters. Unlike in *Rite Aid*, however, Carvana's Board presentation ***does not*** present any ***legal analysis, risk assessment, strategy, recommendation, potential consequence, or level of concern about those facts.*** "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981).

Having re-reviewed the document, the Special Master again concludes the primary purpose of the redacted slides was to provide Carvana's Board with compliance, regulatory, and litigation ***status updates*** and information for a business purpose; the primary purpose was not provision of legal advice. Accordingly, the Special Master reaffirms the original ruling on Exhibit 7.

**PLOG00049576 ("Exhibit 8")**. Exhibit 8 is also a Board presentation and, like Exhibit 7, Carvana asserted its privilege claim in the form of specific redactions rather than withholding the entire document.[3] Exhibit 8 is unique however, in that, of the 157 documents the Special Master reviewed in Tranche One, it was the only one over which Carvana also asserted work product protection.

Regarding attorney client privilege, the analysis of Exhibit 8 is the same as for Exhibit 7. The slides present unprivileged facts divorced from any meaningful legal analysis and thus are primarily for a business purpose and not protected by the privilege. Accordingly, the Special Master reaffirms that aspect of the original ruling on Exhibit 8.

Carvana's assertion of work product protection over this document does not change the Special Master's conclusion. As described in the Special Master's first ruling, to qualify for work product protection, the party seeking the protection has the burden to show the document was: "(1)

---

[3]    Also, like Exhibit 7, Carvana seeks to redact from Exhibit 8 more information in its Objection than it sought to redact before the Special Master in the first instance. *Compare* Decl. of Matthew Peters at 2 (noting redactions at "pages 121, 123-26, 129, and 146-50"); *with* CVNA_CA_00006738–6891 (only containing redactions at *corresponding* pages 121, 123–24, 129, 146, and 149). [*Note: For the avoidance of ambiguity, the actual page numbers in the Special Master's redacted copy were all lower by one, because of the addition of a cover page on Exhibit 8. In other words, the redactions in the Special Master's original redacted copy, because it does not have a cover sheet, are at 120, 122–23, 128, 145, and 148. In this footnote 3, except for this Note, all page numbers correspond to those in Exhibit 8 and not the Special Master's redacted copy.*]

Further, the Special Master notes that, in addition to the three newly redacted slides in Exhibit 8, Carvana also broadened its redactions on two slides. Specifically, on page 121, Carvana originally redacted only bullets 1 and 4, but changed its submission to the Court to redact the entire slide; and on page 146, Carvana expanded from initially redacting only bullets 1, 2, and 3 (excluding sub-bullets) to again redacting the entire slide.

The Special Master is very concerned that, if the Court had simply reviewed Carvana's Objection without referring the matter back to the undersigned, the Court could not have known it was being asked to review different redactions than what had been originally presented to the Special Master. The expanded redactions on pages 121 and 146 are especially problematic because Carvana reviewed those slides, made affirmative redaction decisions before submitting them to the undersigned, and then altered those redaction decisions when objecting to the Special Master's Ruling—with no acknowledgement of the change. This was not simple inadvertence and is troubling. It is also confusing, because the Special Master understands Carvana already produced to Plaintiffs the original, less-redacted version of this document.

Returning to the merits, for the same reasons set forth in footnote 2, above, the Special Master finds Carvana's privilege assertions over the proposed new redactions on pages 121, 125–26, 146–148, and 150 of Exhibit 8 are waived.

[] 'prepared in anticipation of litigation or for trial' and (2) [] prepared 'by or for a party or that party's representative.'" Docket no. 192 at 3 (quoting *In re Grand Jury Subpoena (Torf)*, 357 F.3d 900, 907 (9th Cir. 2003)); *Hernandez v. Tanninen*, 604 F.3d 1095, 1102 (9th Cir. 2010) (recognizing the burden is on the party invoking work-product doctrine).

Beyond asserting, generally, that it was subject to various investigations, Carvana does not attempt to describe how this document or any redaction in it was created in response to any of those investigations or in anticipation of any legal action that might be taken against Carvana. The slides' purpose is plainly and only to report to the Board the status of the company's legal postures and to inform the Board regarding the day-to-day business operations of the company.

There is simply no basis to conclude these slides would not have been created but for the prospect of litigation. *See In re Grand Jury Subpoena (Torf)*, 357 F.3d at 908 (work product protection afforded if a "document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation[.]") (quoting *United States v. Adlman*, 134 F.3d 1194, 1195 (2nd Cir.1998)). Accordingly, the Special Master fully reaffirms the original ruling on Exhibit 8.

**RESPECTFULLY SUBMITTED,**

**/s/ David R. Cohen**
**David R. Cohen**
**Special Master**

**Dated:** July 20, 2026

10