**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

United Association National Pension Fund, et al.,

Plaintiffs,

v.

Carvana Company, et al.,

Respondents.

No. CV-22-02126-PHX-MTL

**ORDER**

Pending before the Court are four Rulings issued by Special Master Cohen ("Special Master") (docs. 552, 574, 585, and 587).[1] Of these Rulings, the parties have only objected to the Special Master's June 26, 2026, "Ruling Regarding Tranche One of Carvana Documents" (doc. 552). *See* (doc. 562). But, the Objection—filed by Carvana Defendants ("Defendants")—also indirectly implicates the Special Master's July 20, 2026, "Updated Ruling in Light of Carvana's Objection to Prior Tranche One Document Ruling" (doc. 574). *Compare* (doc. 562) *with* (doc. 574). Given this, the Court shall review both the June 26, 2026, and July 20, 2026, Rulings in light of Defendants' Objections.

Because the Court finds that the Special Master's reasoning in (doc. 552) and (doc. 574) is persuasive, and given that the Court independently reaches the same conclusions, the Court shall overrule Defendants' objections and adopt the Rulings. Furthermore, given that no objections were filed as to the Special Master's July 28, 2026 (doc. 585) and July 29, 2026 (doc. 587) Rulings, and seeing that the Special Master's reasoning is persuasive

[1] Discovery matters in this action have been referred to this Court by the presiding United States District Judge. (Doc. 125.)

and well-articulated, the Court shall adopt these Rulings in their entirety.

## I. Legal Standards.

### A. Objections to Special Master Rulings.

"Pursuant to Federal Rule of Civil Procedure 53(f), the court must decide de novo all objections to the findings of fact or conclusions of law made or recommended by a special master."[2] *Cal. Expanded Metal Prods. Co. v. Klein*, No. C18-0659JLR, 2022 U.S. Dist. LEXIS 120812, at *4 (W.D. Wash. July 8, 2022) (citing Fed. R. Civ. P. 53(f)(3)–(4)). "On matters of procedure, the Special Master's rulings are reviewed for abuse of discretion." *J.K. v. Humble*, No. CV 91-261 TUC-AWT, 2013 U.S. Dist. LEXIS 95456, at *4 (D. Ariz. July 9, 2013) (citing Fed. R. Civ. P. 53(f)(5)).

"In acting on a master's order, report, or recommendations, the court must give the parties notice and an opportunity to be heard; may receive evidence; and may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1).

### B. Attorney-Client Privilege.

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice as well as an attorney's advice in response to such disclosures." *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) (cleaned up) (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992)). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "Because the attorney-client privilege is in derogation of the search for truth, it is 'narrowly and strictly construed.'" *Verizon Cal. Inc. v. Ronald A. Katz Tech. Licensing, L.P.*, 266 F. Supp. 2d 1144, 1147 (C.D. Cal. 2003) (quoting *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir. 1989)). In the Ninth Circuit, Courts apply an eight-part test to determine whether a

---

[2] The Order appointing Special Master David Cohen contains no provision modifying the de novo standard for deciding objections. *See* (doc. 500 at 3.) Although the Court did not modify the de novo standard, it did deviate from Fed. R. Civ. P. 53(f)(2) by allocating only 14 days to file an objection to a ruling by the Special Master. (*Id.*)

document or communications is, in fact, privileged:

> (1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (cleaned up).

Additionally, in the Ninth Circuit, "the primary-purpose test applies to attorney-client privilege claims for dual-purpose communications." *Greer v. Cnty. of San Diego*, 127 F.4th 1216, 1224 (9th Cir. 2025) (quoting *In re Grand Jury*, 23 F.4th 1088, 1092 (9th Cir. 2022)). "Under the 'primary purpose' test, courts look at whether the primary purpose of the communication is to give or receive legal advice, as opposed to business . . . advice." *In re Grand Jury*, 23 F.4th at 1091 (citation omitted). Notably, under the Ninth Circuit's "current formulation" of the primary purpose test, "a dual-purpose communication can only have a single 'primary' purpose." *Greer*, 127 F.4th at 1224 (citation omitted).

The "party asserting the attorney-client privilege has the burden of establishing the relationship and the privileged nature of the communication." *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997). "Moreover, an assertion of privilege without evidence to support it will not prevail." *Verizon Cal. Inc.*, 266 F. Supp. 2d at 1147 (citations omitted).

**C. Work-Product Doctrine**.

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). While the Federal Rules of Civil Procedure provide a wide berth for discovery, it does provide certain express limitations on what a party generally cannot discover, including documents covered by the attorney work-product doctrine. *See* Fed. R. Civ. P. 26(b)(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[.]").

"Federal law governs the application of the work product doctrine." *United*

*Specialty Ins. Co. v. Dorn Homes, Inc.*, 334 F.R.D. 542, 544 (D. Ariz. 2020). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975); *Dorn Homes*, 334 F.R.D. at 544 ("This protection applies to documents prepared 'by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).'") (quoting *Bickler v. Senior Lifestyle Corp.*, 266 F.R.D. 379, 383 (D. Ariz. 2010)). "The work-product rule is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. United States Dist. Ct. for Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989). This doctrine "shields both opinion and factual work product from discovery." *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008).

"Generally, discoverable facts are not protected by the work-product doctrine." *ARA Inc. v. City of Glendale*, No. CV-17-02512-PHX-GMS, 2018 U.S. Dist. LEXIS 94074, at *2 (D. Ariz. June 5, 2018). Rather, "To qualify for work-product immunity, documents must: (1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared 'by or for another party or by or for that other party's representative.'" *Id.* (quoting *United States v. Torf (In re Grand Jury Subpoena)*, 357 F.3d 900, 907 (9th Cir. 2003)). "The party asserting the work-product immunity has the burden of demonstrating that the at-issue documents are work-product." *Id.* at *2–3.

## II. DISCUSSION.

In their Objection, Defendants challenge the Special Master's June 26, 2026 Ruling as to eight documents only. (Doc. 562 at 5.) Specifically, Defendants asserts five arguments why the Special Master erred in finding that the eight documents at issue are not attorney-client protected. (*Id.* at 6.)

First, Defendants assert that the Special Master erred by distinguishing "between in-house and outside counsel when assessing privilege." (*Id.*) Second, Defendants challenge that the Special Master, "based on out-of-circuit district court cases, . . . incorrectly found

that legal advice addressing specific regulatory questions was unprivileged 'everyday regulatory advice[.]'" (*Id.*) Third, Defendants assert that the Special Master improperly "required that communications contain 'actual advice' to be privileged[.]'" (*Id.*) Fourth, Defendants aver that "the Special Master failed to consider whether certain documents are work product[.]" (*Id.*) Fifth, Defendants argue that "the Special Master overruled privilege determinations based not on the content of the document reviewed, but on perceived deficiencies in Carvana Defendants' privilege log." (*Id.*) The Court does not find any of Defendants' arguments availing.

Beginning with Defendants' first argument, the Court does not find that the Special Master erred in distinguishing between in-house and outside counsel when assessing privilege claims. Here, Defendants contend that the Special Master, who—in the attorney-client privilege context—applied a heightened standard to in-house counsel communications, (doc. 552 at 4), erred because the heightened standard "has never been recognized or applied by the Ninth Circuit or the District of Arizona." (Doc. 562 at 11.) Defendants argue that the heightened standard applied by the Special Master is "justified . . . by . . . two unpublished district court opinions, one of which was out-of-circuit." (*Id.*) Hence, Defendants claim that the heightened standard employed by the Special Master is erroneous and contrary to law. (*Id.*) Defendants rely, in pertinent part, on the Ninth Circuit's decision in *United States v. Rowe*, 96 F.3d 1294 (9th Cir. 1996) and *ASU Students for Life v. Crow*, No. CV-06-1824-PHX-MHM, 2007 U.S. Dist. LEXIS 102443 (D. Ariz. July 11, 2007), *report and recommendation adopted*, 2007 U.S. Dist. LEXIS 69003 (D. Ariz. Sep. 14, 2007), to support their position.

The Court overrules this argument for three reasons. First, to the extent that Defendants argue that a footnote in *ASU Students for Life* is mandatory authority on this Court, they are mistaken, as that decision is "only ever persuasive authority" on courts within this District. *See Longhini v. Thornell*, No. CV-24-00785-PHX-DJH, 2026 U.S. Dist. LEXIS 135896, at *3–4 (D. Ariz. June 18, 2026) (noting that decisions from another court in this District "are only ever persuasive authority on other federal courts, including

other district courts. . . . [whereas] United States Court of Appeals rulings from each circuit are binding on the district courts in the same circuit"). Second, Defendants' reliance on *Rowe*, wherein the Court of Appeals stated that "[i]n determining the existence of a privilege, no attempt is made to distinguish between inside and outside counsel," *Rowe*, 96 F.3d at 1296 (cleaned up), is likewise unavailing. This is because:

> [t]he *Rowe* decision did not address the 'clear showing' standard or any other standard for establishing privilege. Rather, the cited portion of *Rowe* found that attorneys conducting an internal investigation at their own law firm were, effectively, in-house counsel and therefore in an attorney-client relationship with their employer. The decision did not address the standard for determining whether the existence of an attorney-client privilege had been shown[.] Requiring a clear showing of privilege in light of [an attorney's] role as in-house counsel was not clearly erroneous or contrary to law.

*Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 U.S. Dist. LEXIS 121446, at *23–25 (N.D. Cal. Oct. 20, 2011).

Third, the Court notes that the Special Master's 'clear showing' standard has been applied on multiple occasions by courts throughout the Ninth Circuit—including in published opinions. *See United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002) ("With respect to internal communications involving in-house counsel, Chevron must make a 'clear showing' that the 'speaker' made the communications for the purpose of obtaining or providing legal advice"); *see also Oracle Am., Inc. v. Google, Inc.*, No. C-10-03561-WHA (DMR), 2011 U.S. Dist. LEXIS 96121, at *17–18 (N.D. Cal. Aug. 26, 2011) ("When attempting to demonstrate that an internal communication involving in-house counsel deserves privileged status, a party therefore must make a clear showing that the speaker made the communication for the purpose of obtaining or providing legal advice.") (cleaned up); *In re Cal. Bail Bond Antitrust Litig.*, 778 F. Supp. 3d 1051, 1058 (N.D. Cal. 2025) (same); *City of Roseville Emps. Ret. Sys. v. Apple Inc.*, No. 19-cv-02033-YGR (JCS), 2022 U.S. Dist. LEXIS 139843, at *61 (N.D. Cal. Aug. 3, 2022) (same). Hence, the Court does not find that the Special Master's

distinction was neither erroneous nor contrary to law.[3]

Regarding Defendants' second argument, the Court is likewise unpersuaded. As noted by the Court in *In re Cal.*:

> An attorney's advice does not constitute legal advice simply because it relates to regulatory activity. There is no bright-line rule that communications related to regulatory compliance are per se business or legal communications. Rather, the content and context of such communications must be considered in order to determine the primary purpose of the communication.

*In re Cal.*, 778 F. Supp. 3d at 1060 (cleaned up).

Defendants contend that the Special Master incorrectly found that an email chain contained in (doc. 562-2) was everyday regulatory advice. (Doc. 562 at 13–16.) The Court disagrees. The instant exhibit contains several emails, wherein Defendants have redacted several. *See* (doc. 562-2.) Notably, the redacted emails are between non-attorneys where there is expressed skepticism on how to implement a company T&R change. *See* (*id.*) Here, the Court does not find that the primary purpose of the instant communications was to seek legal advice. Because the primary purpose was not to obtain legal advice on regulatory matters, the Court finds the document at issue not privileged. *See Shenwick v. Twitter, Inc.*, No. 16-cv-05314-JST (SK), 2018 U.S. Dist. LEXIS 185714, at *6 (N.D. Cal. Oct. 30, 2018) (noting that certain communications were not privileged because, "[a]lthough in-house lawyers are listed as recipients of the email messages, the contents of many of the email messages indicate that the purpose of seeking comment is not for legal advice"). Further, while it is true that the attorney-client privilege "protects from disclosure communications

---

[3] Even assuming, *arguendo*, that an equal standard between in-house and external counsel were applied, the Court finds that the Special Master's Ruling as to (docs. 562-3 to -5, and 562-8 to -9) complied with the equal standard. Regarding (docs. 562-3 to -5) the Court independently finds, as the Special Master has, that the primary purpose of these communications between in-house counsel on title and registration matters was to carry out a business function, not to provide legal advice. Likewise, the Court finds that (docs. 562-8 to -9), which contain slides for Carvana Board presentations, the Court likewise finds that these slides did not address any legal analysis, recommendations, potential legal consequences, or recommendations to address legal problems. Consequently, these materials do not "reflect information related to counsel's legal advice and are therefore [not] covered by the attorney-client privilege." *United States v. Rite Aid Corp.*, No. 2:12-cv-1699-KJM-EFB, 2021 U.S. Dist. LEXIS 61421, at *32 (E.D. Cal. Mar. 30, 2021).

among corporate employees that reflect advice rendered by counsel to the corporation[,]" *Miller v. Ariz. Pub. Serv. Co.*, No. CV-19-03397-PHX-DWL, 2020 U.S. Dist. LEXIS 183520, at *8 (D. Ariz. Oct. 2, 2020) (citation omitted), the communications at issue here do not appear to expressly reflect advice rendered by counsel to the corporation. *Miller v. Ariz. Pub. Serv. Co.*, No. CV-19-03397-PHX-DWL, 2020 U.S. Dist. LEXIS 183520, at *8 (D. Ariz. Oct. 2, 2020). For the foregoing reasons, Defendants' second argument is overruled.

Turning to Defendants' third argument, the Court notes that, as an initial matter, the argument as it pertains to (doc. 562-7) is moot considering the Special Master's Updated Ruling. (Doc. 574 at 6.) As the argument pertains to (doc. 562-6)—which contains an email exchange between Defendants' in-house counsel containing data trends regarding temporary permit issuances in certain states—the Court finds the Special Master's Ruling persuasive. Additionally, the Court, upon its own independent review, reaches the same conclusion as the Special Master. Although Defendants are correct that "investigation—that is, discovering what happened—is a necessary predicate to assessing liability for that past event and thus is not separate from the provision of legal advice," (doc. 562 at 17) (quoting *Greer*, 127 F.4th at 1224), information obtained during an investigation is attorney-client protected where it relates to "avoiding future legal liability[.]" *Greer*, 127 F.4th at 1224. The communication in (doc. 562-6) does not appear to address any pending or future legal or regulatory action regarding the states involved in the data trends. Consequently, Defendants' third argument is overruled.

The Court shall likewise overrule the Defendants' fourth argument. Defendants complain that the Special Master failed to recognize that (docs. 562-6 to -7) were work-product protected. (Doc. 562 at 18.) But, Defendants did not previously assert that these documents were work-product protected. *See* (doc. 574 at 6 n.1.) As noted by the Federal Rules of Civil Procedure, to be entitled to work product protection, a party must "expressly make the claim" that the matter is work product protected. Fed. R. Civ. P. 26(b)(5)(A)(i). Because Defendants did not expressly make the claim as to these documents, and given

that they bore the "burden of demonstrating that the at-issue documents are work-product," *ARA Inc.*, 2018 U.S. Dist. LEXIS 94074, at *2–3, the Court finds the instant objection unpersuasive. Thus, it is overruled.[4]

Turning to Defendants' fifth argument, the Court is unconvinced. Here, Defendants object to the Special Master's ruling because—in Defendants' position—he "improperly overruled privilege determinations based on perceived deficiencies in . . . Defendants' privilege log." (Doc. 562 at 20.) While it may be true that, during an *in camera* review of documents, a deficient entry in a privilege log may be insufficient to overrule a party's entitlement to a privilege, *cf. Vargas v. United States*, No. 5:23-cv-00380-JWH-SPx, 2025 U.S. Dist. LEXIS 147065, at *12 (C.D. Cal. June 9, 2025), the Special Master's decisions were not based solely on the privilege log. *See* (doc. 552 at 10.) Nothing in the June 26, 2026 Ruling or the July 20, 2026 Updated Ruling evince that the Special Master relied solely on a deficient privilege log to make his determinations. Instead, the Special Master appears to be sufficiently carrying out his duties to review materials *in camera* and in light of additional or more detailed explanations provided by Defendants' counsel. Hence, the Fifth argument is overruled.[5]

For the foregoing reasons, the Court does not find any of Defendants' arguments availing. Therefore, their objections are overruled, and the Special Master's Rulings are adopted.

Accordingly,

**IT IS ORDERED** that Defendants' Objections (doc. 562) are overruled.

---

[4] Of the communications at issue, the Court notes that (doc. 562-9) is the only document that Defendants have asserted is protected by the work product doctrine. *See* (doc. 574 at 9.) Because this document—which contains slides of a report to Carvana's Board—were not "prepared in anticipation of litigation or for trial[,]" they are not work product protected. See *Torf (In re Grand Jury Subpoena)*, 357 F.3d at 907.

[5] As a final matter, the Court shall grant the Defendants' Motions to Seal (doc. 563 & 582.) The Court shall do so because the District Court granted a Protective Order which rationally covers these documents. *See* (doc. 136.) Hence, the District Court has, *ipso facto*, determined that good cause exists to protect these documents. *See, e.g.*, *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1214 (9th Cir. 2002) ("When a court grants a protective order for information produced during discovery, it already has determined that "good cause" exists to protect this information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality.").

**IT IS FURTHER ORDERED** that the Special Master's June 26, 2026 Ruling (doc. 552), as updated by his July 20, 2026 Updated Ruling (doc. 574), July 28, 2026 Ruling (doc. 585), and July 29, 2026 (doc. 587) Ruling are **ADOPTED** for the reasons stated herein.

**IT IS FURTHER ORDERED** that Defendants' Motions to Seal (doc. 563 & 582) are **GRANTED**. The Clerk of Court is kindly directed to file (docs. 564 & 583) **UNDER SEAL**.

Dated this 31st day of August, 2026.

Honorable John Z. Boyle
United States Magistrate Judge