ROBBINS GELLER RUDMAN
& DOWD LLP
DANIEL S. DROSMAN (CA 200643)
TOR GRONBORG (CA 179109)
SARA B. POLYCHRON (CA 244685)
ERIKA L. OLIVER (CA 306614)
MATTHEW J. BALOTTA (CA 310303)
RACHEL A. COCALIS (CA 312376)
CHRISTOPHER R. KINNON (CA 316850)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
ddrosman@rgrdlaw.com
torg@rgrdlaw.com
spolychron@rgrdlaw.com
eoliver@rgrdlaw.com
mbalotta@rgrdlaw.com
rcocalis@rgrdlaw.com
ckinnon@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re Carvana Co. Securities Litigation<br>______________________________<br>This Document Relates To:<br>All Actions.<br>______________________________ | No. CV-22-2126-PHX-MTL<br><br>LEAD PLAINTIFFS' MOTION FOR SANCTIONS<br><br>**ORAL ARGUMENT REQUESTED** |

**[REDACTED]**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1
II. DISCOVERY BACKGROUND ........ 2
A. Defendants Concealed the [redacted] Record While Assuring the Court that Production Was Substantially Complete ........ 2
B. [redacted] ........ 4
C. Defendants Used Improper Privilege Designations to Delay Production ........ 5
1. Defendants Weaponized Privilege to Bury Evidence for Months ........ 5
2. The Special Master's Bellwether Review Confirmed Systemic Overdesignation and Delayed Production ........ 7
3. Defendants' Belated Re-Review Released Documents Only After Relevant Witnesses Testified ........ 8
III. LEGAL STANDARD ........ 9
IV. ARGUMENT ........ 10
A. Defendants' Concealment of the [redacted] Lacked Substantial Justification, Constituted Bad Faith, and Prejudiced Plaintiffs ........ 11
B. Defendants' Privilege Designations Lacked Substantial Justification, Were Made in Bad Faith, and Independently Warrant Sanctions ........ 13
C. Defendants' Other Discovery Obstruction Prejudiced Plaintiffs ........ 15
D. The Requested Relief Is Remedial, Proportional, and Necessary ........ 16
V. CONCLUSION ........ 17

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods., Inc.*, 2020 WL 7342724 (S.D.N.Y. 2020) ........ 11

*BlackRock Balanced Cap. Portfolio (FI) v. Deutsche Bank Nat'l Trust Co.*, 2018 WL 3584020 (S.D.N.Y. 2018) ........ 13

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*, 408 F.3d 1142 (9th Cir. 2005) ........ 13, 17

*Centerline Hous. P'ship I, L.P.-Series 2 v. Palm Cmtys.*, 2021 WL 4895746 (C.D. Cal. 2021) ........ 11

*Chevron U.S.A., Inc. v. United States*, 116 Fed. Cl. 202 (2014) ........ 14

*EEOC v. Fry's Elecs., Inc.*, 287 F.R.D. 655 (W.D. Wash. 2012) ........ 16

*Fast v. GoDaddy.com LLC*, 340 F.R.D. 326 (D. Ariz. 2022) ........ 9

*Heath v. F/V ZOLOTOI*, 221 F.R.D. 545 (W.D. Wash. 2004) ........ 14

*Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175 (9th Cir. 2008) ........ 9

*Hudgins v. Total Quality Logistics, LLC*, 2024 WL 1618363 (N.D. Ill. 2024) ........ 17

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 12647879 (N.D. Cal. 2014) ........ 11

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899 (N.D. Cal. 2023) ........ 10, 12, 14, 17

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217 (9th Cir. 2006) ........ 12

**Page**

*Jackson v. Nassau Cnty.*,
350 F.R.D. 227 (E.D.N.Y. 2025) .................................................. 14

*Key v. Qualcomm Inc.*,
129 F.4th 1129 (9th Cir. 2025) .................................................. 9

*Munoz v. PHH Corp.*,
2013 WL 684388 (E.D. Cal. 2013).................................................. 11

*N.M. Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*,
2017 WL 3535293 (D.N.M. 2017) .................................................. 14

*Payne v. Exxon Corp.*,
121 F.3d 503 (9th Cir. 1997) .................................................. 10

*PlayUp, Inc. v. Mintas*,
2026 WL 1079397 (D. Nev. 2026) .................................................. 13

*Primus Auto. Fin. Servs., Inc. v. Batarse*,
115 F.3d 644 (9th Cir. 1997) .................................................. 10

*Surowiec v. Cap. Title Agency, Inc.*,
790 F. Supp. 2d 997 (D. Ariz. 2011) .................................................. 16

*Turner v. City of Chi.*,
2016 WL 11940558 (N.D. Ill. 2016) .................................................. 16

*Valley Eng'rs Inc. v. Elec. Eng'g Co.*,
158 F.3d 1051 (9th Cir. 1998) .................................................. 12

*Vieste, LLC v. Hill Redwood Dev.*,
2011 WL 588145 (N.D. Cal. 2011) .................................................. 14

*Watson v. City of Henderson*,
2024 WL 1514983 (D. Nev. 2024) .................................................. 9

*World Nutrition Inc. v. Advanced Supplementary Techs. Corp.*,
2022 WL 2111226 (D. Ariz. 2022).................................................. 13

*Zaccardo v. Horne Motors of Gilbert LLC*,
2026 WL 1392238 (D. Ariz. 2026).................................................. 10

**Page**

**STATUTES, RULES, AND REGULATIONS**

Federal Rules of Civil Procedure

Rule 16(b)(4) ..... 17
Rule 26 ..... 5, 9, 10, 11
Rule 26(g)(1)(B)(ii) ..... 10
Rule 26(g)(3) ..... 10, 17
Rule 26(b)(5) ..... 13
Rule 26(b)(5)(A) ..... 13
Rule 26(b)(5)(A)(ii) ..... 5
Rule 26(e)(1)(A) ..... 9
Rule 26(g) ..... 10
Rule 30(b)(6) ..... 8, 16
Rule 34 ..... 5, 11
Rule 37 ..... 10
Rule 37(b)(2)(A)(i) ..... 9
Rule 37(b)(2)(A)(ii) ..... 9
Rule 37(b)(2)(A)(iii) ..... 9
Rule 37(b)(2)(A)(iv) ..... 9
Rule 37(b)(2)(A)(v) ..... 9
Rule 37(b)(2)(A)(vi) ..... 9
Rule 37(c)(1)(C) ..... 17
Rule 37(c)(1) ..... 9, 17
Rule 53(g)(3) ..... 17

## I. INTRODUCTION[1]

On December 16, 2025, Defendants urged this Court to preserve the discovery schedule because production was "substantially complete" and there was "no reason" depositions could not begin. ECF 229 at 12. They did not disclose that, for [redacted]. That record directly supports falsity and scienter. Yet Defendants concealed its scope, findings, and underlying evidence.

Plaintiffs relied on Defendants' representations and began taking depositions. Four key T&R witnesses testified before Defendants' first meaningful [redacted] production on June 11, 2026. Defendants produced the [redacted] only after Carvana's Deputy General Counsel testified, 14,413 more documents only after its Senior Vice President of Customer Care testified, then declared the production complete before producing another 940. Defendants later called the evidence "incremental" and "marginal," said they had "prioritized" other discovery, and suggested production occurred only because the Court might compel it. The delay was deliberate, not a collection failure.

In addition to concealing the [redacted], Defendants also used a grossly deficient privilege log to withhold tens of thousands of responsive non-privileged materials. They

---

[1] "Defendants" herein refer to Carvana Co. ("Carvana"), Ernest Garcia III ("Garcia Jr."), Mark Jenkins ("Jenkins"), Stephen Palmer, Michael Maroone, Neha Parikh, Ira Platt, and Greg Sullivan. Unless otherwise stated, all "¶" or "¶¶" references are to Lead Plaintiffs' Amended Consolidated Complaint for Violations of the Federal Securities Laws ("Complaint") (ECF 71), terms not defined herein have the same meaning as in the Complaint all "Ex. __" references are to the Declaration of Daniel S. Drosman, filed concurrently herewith, and all emphasis is added; citations are omitted.

grouped documents into nine boilerplate categories, defended the log as properly reviewed, and surrendered claims only when Plaintiffs or the Special Master forced scrutiny. Defendants have now withdrawn or lost privilege claims over at least ***42,000 documents***. In every Special Master tranche, they abandoned most challenged claims before review, and the Special Master rejected many others as business communications or "no actual advice at all." ECF 552 at 10. Those productions came after at least eight key witnesses testified. On August 28 and 31 alone, Defendants released more than 23,000 documents totaling approximately 106,000 pages, weeks before the close of fact discovery and senior-executive depositions, with more still to come.

The prejudice is concrete. Plaintiffs examined witnesses without their contemporaneous documents, litigated facially defective privilege claims for months, briefed class certification on an incomplete record, and now cannot review the volume produced within the remaining schedule. The Federal Rules of Civil Procedure (the "Rules") and the Court's inherent authority authorize relief to cure these harms, including reopening necessary depositions at Carvana's expense, allowing targeted discovery and supplemental class-certification briefing, awarding the fees and costs caused by Defendants' misconduct, shifting the Special Master's costs, and finding waiver across the defective categorical log. Anything less lets Defendants keep the advantage gained by withholding evidence until the clock nearly expired.

## II. DISCOVERY BACKGROUND

### A. Defendants Concealed the [redacted] Record While Assuring the Court that Production Was Substantially Complete

The [redacted]. Ex. 9 at -849.



4925-1309-9213.v1

Two months later, Defendants moved to dismiss the Complaint, telling this Court that Carvana's T&R problems were "*de minimis*," "insignificant, isolated," and "immaterial." ECF 82 at 2, 15, 44; *see also* ECF 50 at 19 (chiding Plaintiffs for a "made-up scheme … to violate the law nationwide"). In August, Defendants described the problems as "patently *de minimis*" (ECF 96 at 4) and affecting no "more than a 'small percentage' of Carvana customers" (*id.* at 6).

On [redacted] *Id.* at -889.

Plaintiffs served their first document requests ("RFPs") on March 11, 2025, after those [redacted]. Ex. 11. Carvana had [redacted]. *See, e.g.*, Ex. 10; Ex. 12. RFP No. 2 requested all documents Carvana gave to or received from any regulator or government agency concerning the Complaint's allegations and expressly "extend[ed] through the present." Ex. 11 at 11. Defendants agreed to produce responsive, nonprivileged documents after a "reasonable search." Ex. 13 at 8. They needed no search to identify materials already exchanged with the [redacted] but neither produced nor disclosed them during negotiations over RFPs, search terms, custodians, the discovery period, and noncustodial sources. They remained silent even when Plaintiffs [redacted] investigation under the same RFP.

Carvana [redacted] but not to Plaintiffs. On April 22, 2025, it produced another [redacted]. Ex. 14 at -902. By August 2025, its [redacted] productions exceeded [redacted]. Ex. 15. Yet by the December 8 substantial-completion deadline (ECF 128, ¶3(b)), Defendants had produced only stray duplicates that revealed none

of [redacted]. On December 16, Defendants opposed a four-month extension, representing that production was "substantially complete" and there was "no reason" depositions could not begin. ECF 229 at 12. One week later, Defendants reiterated that they had performed "significant analysis … to ensure that discovery is substantially complete" and that nothing prevented "the deposition of custodians for which documents have been produced." ECF 243 at 27:13-15, 29:6-10. Those assurances concealed [redacted].

**B. [redacted]**

Relying on Defendants' representations, Plaintiffs deposed four key witnesses between May 21 and June 11, 2026, including Carvana's Head of Public Policy and Government Affairs Wilson Munsil ("Munsil"), Regulatory Operations Director Jonathan Greer ("Greer"), Regulatory Operations Support Associate Director Mark Murphy ("Murphy"), and Engineering Director Josh Johnson ("Johnson"). They testified without [redacted].

On June 11, 15 months after discovery began and six months after their substantial completeness representations, Defendants produced [redacted] without identifying their significance. [redacted].

[redacted]. The accompanying letter claimed Defendants were "not presently aware" of other responsive, nonprivileged documents. [redacted]

[redacted]. Plaintiffs immediately responded that "present awareness" did not satisfy the reasonable search required by Rules 26 and 34. Ex. 22 at 1-2.

Three weeks later, after Senior Vice President of Customer Care Teresa Aragon ("Aragon") testified, Defendants produced [redacted] documents. Ex. 23. [redacted]. The materials bore directly on Aragon's responsibilities. Defendants again declared [redacted] complete. [redacted].

Defendants retracted that claim six days later and made two more productions totaling [redacted]. On July 28, they reported finding additional [redacted]. Ex. 27 at 2. They then produced over [redacted] one week after Associate Director of Strategy Stephen Keim ("Keim") testified and on the eve of Vice President of Inventory Strategy Brian Boyd's ("Boyd") deposition. Exs. 28-29.

Defendants explained the delay only after Plaintiffs threatened sanctions, then shifted positions. On August 20, counsel called the [redacted] "incremental," "marginal," and secondary to "prioritized" discovery. Ex. 30 at 2. The next day, counsel said the documents fell outside the Relevant Period and were produced because the Court might compel them "'given the lay of the land.'" Ex. 31 at 1-2. Neither position justified withholding responsive records through eight depositions and repeated completeness claims.

**C. Defendants Used Improper Privilege Designations to Delay Production**

**1. Defendants Weaponized Privilege to Bury Evidence for Months**

The [redacted] concealment fit a larger pattern. Defendants ignored Plaintiffs' repeated requests for a privilege log until February 2026, when they logged tens of thousands of documents. ECF 414 at 4-5. Instead of providing information sufficient to assess each claim under Rule 26(b)(5)(A)(ii), Defendants sorted documents into nine conclusory

categories. Ex. 32 at 3-7. The Special Master later stated he "could not divine a basis for the privilege claim despite concerted attempts" and described the entries as "simple boilerplate in an Excel spreadsheet." ECF 552 at 10.

Plaintiffs identified examples of improperly withheld materials, met and conferred, and urged a full re-review and Rule 26-compliant log. Defendants called those objections "knee-jerk," "speculation," and "meritless." Ex. 33 at 2 n.2, 4-6; Ex. 34 at 7. Defendants insisted the log "properly applies the attorney-client privilege" (Ex. 35 at 7), yet Plaintiffs' challenges forced them to withdraw over 8,000 claims and revise the log nine times between February 21 and April 9, 2026. ECF 414 at 1.

The log remained deficient. It grouped roughly 48,000 documents into nine boilerplate categories, including third-party communications, nonprivileged attachments, and thousands with no identifiable privilege basis. Ex. 36 at 3-4. On April 27, Plaintiffs moved for *in camera* review of over 200 entries and appointment of a Special Master. ECF 414; ECF 516. Before review, Defendants ***withdrew every challenged claim*** and de-designated over 1,000 more, raising total withdrawals above 11,270. ECF 516 at 1-2. [redacted]. ECF 443 at 2-4; ECF 444, Exs. 16-33.

Plaintiffs then identified more than 100 additional entries in reply. ECF 443 at 4; ECF 444, Ex. 34. Defendants ***withdrew those claims too***, releasing them about ten hours before the hearing. ECF 477 at 10:13-18. Judge Boyle identified "a pattern that when the plaintiffs point out that there are likely more documents, the defendants search, and they find more documents." *Id.* at 4:18-24. Although crediting Defendants' good faith then, he appointed a Special Master "to end" the "trend" and ensure Plaintiffs "are getting the information they need." *Id.*; *see also* ECF 467 at 5 (appointing Special Master based on the "high error rate" and nine log revisions); ECF 513 at 1 (denying Defendants' request to limit the Special Master's review to a subset of the documents). Neither Judge Boyle nor Plaintiffs knew Defendants had [redacted]

[redacted]. Nor could he have known Defendants would later abandon or narrow most claims in every tranche, including 80.9% of Tranche Four, and de-designate over 30,000 more documents, including over 23,000 on the eve of the discovery cutoff.

**2. The Special Master's Bellwether Review Confirmed Systemic Overdesignation and Delayed Production**

The Special Master directed Plaintiffs to select bellwether documents to guide review of remaining claims. ECF 552 at 1. Each time Plaintiffs identified a set, Defendants abandoned or narrowed most claims before the Special Master could review them.

Plaintiffs submitted 364 entries for review on June 9, 2026 ("Tranche One"). Ex. 37. Defendants withdrew 207, or 56.9%, before review. ECF 552 at 9. The Special Master then rejected privilege, at least in part, for 47 of the remaining 84 non-embedded files because many reflected "***only*** business advice, or even no actual advice at all." *Id.* at 1, 9-10; ECF 552-1, as modified by ECF 574. He urged "an additional, careful assessment" of the entire log. ECF 552 at 9-10. Judge Boyle overruled Defendants' objections to the Tranche One rulings because he found none "availing." ECF 656 at 9. Despite an order to "promptly produce" the withdrawn and overruled documents, Defendants waited until July 14, more than a month after identification, and 18 days after the rulings. ECF 552 at 11.

Tranches Two through Four repeated the pattern. Defendants withdrew 56 of 102 Tranche Two selections prior to the Special Master's review and lost, at least in part, on 13 of the remaining 46 reviewed, for a total failure rate of 67%. ECF 587 at 1; ECF 587-1. For Tranche Three, Defendants delayed giving the Special Master the documents for nearly a month, withdrew or downgraded ***74.1%*** before review, and produced 292 documents on the eve of Plaintiffs' class-certification reply deadline and Keim's August 6 deposition. Exs. 38-39. For Tranche Four, Defendants withdrew 678 of 838 submissions, or 80.9%, before the Special Master could review a single document. Exs. 40-41.[2]

---

[2] T[redacted]



4925-1309-9213.v1

### 3. Defendants' Belated Re-Review Released Documents Only After Relevant Witnesses Testified

Despite Plaintiffs' and the Special Master's repeated requests for a full review of the deficient log, Defendants only agreed on July 1. Ex. 45. Six weeks later, on August 14, they produced 2,003 documents spanning 7,700 pages ("Production 87"). Ex. 46. The production included 367 Slack messages and ***1,099*** documents listing a prior deponent as a custodian. [redacted] (Ex. 48 at -828; Ex. 49 at -606).

During ongoing depositions, Defendants withheld the re-review's parameters and status, instead accusing Plaintiffs of "knowingly accept[ing] the risk" (Ex. 30 at 3-4) of later de-designations following privilege challenges (Ex. 50 at 5 (requesting parameters and status)). On August 24, 2026, only after the Special Master asked directly, did Defendants disclose plans to produce "upwards" of "20 thousand" more improperly withheld documents by August 31 and still more documents with withdrawn redactions by September 4. Ex. 51 at 28:3-18.

On August 28 and 31, Defendants produced more than 23,000 documents less than 30 days before the fact-deposition cutoff and nine days before senior-witness depositions began. Those depositions included former Investor Relations head Levin on September 9, General Counsel Breaux on September 17, defendant Garcia Sr. on September 18, CFO and defendant Jenkins on September 23, Carvana's Rule 30(b)(6) representatives on September 24, CEO and defendant Garcia Jr. on September 25, and Board members between September 13 and 25. The productions included more than 13,000 custodial documents from prior

---

[redacted] Plaintiffs had raised these very categories of deficiencies months earlier. Defendants again withdrew claims only after Plaintiffs did the work to identify them.

deponents and more than 5,000 for witnesses scheduled within three weeks.[3] Defendants claimed to have produced "the vast majority" but admitted more remained. Ex. 52.

These materials show a pattern of obstruction, not stray errors.[4] Plaintiffs lost the chance to confront witnesses with contemporaneous communications and test professed memory failures. They also cannot meaningfully review over 23,000 additional documents in the final three weeks of fact depositions while examining Carvana's senior executives and Individual Defendants. Section IV.C describes still more delayed discovery beyond the [redacted] and privilege abuses.

## III. LEGAL STANDARD

"For Rule 26 to play its proper part . . . discovery must not be allowed to degenerate into a game of cat and mouse." *Watson v. City of Henderson*, 2024 WL 1514983, at *6 (D. Nev. 2024). Rule 26(e)(1)(A) requires timely supplementation of materially incomplete or incorrect discovery responses. Rule 37(c)(1) "gives teeth to [Rule 26's] requirements" through "self-executing" and "automatic" sanctions unless the noncompliant party shows "the failure was substantially justified or is harmless." *Key v. Qualcomm Inc.*, 129 F.4th 1129, 1143 (9th Cir. 2025). Although exclusion is Rule 37(c)(1)'s default sanction, "[b]locking the use of information [at] trial is, of course, no penalty when the withheld information is unfavorable to the party that failed to disclose it." *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 336 (D. Ariz. 2022). Accordingly, "Rule 37(c)(1) also permits a court to order the payment of reasonable expenses caused by the failure, to inform the jury of the party's failure, or to impose 'other appropriate sanctions,' including a variety of sanctions listed in Rule 37(b)(2)(A)(i)-(vi)." *Id.* Rule 37(c)(1) does not require bad faith. *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008).

---

[3] These figures are in addition to prior productions that occurred after depositions.

[4] Plaintiffs' sampling shows that the [redacted].



4925-1309-9213.v1

Rule 26(g) separately requires counsel, after "reasonable inquiry," to certify that a discovery response or objection is "not interposed for any improper purpose," including unnecessary delay or needless litigation costs. Fed. R. Civ. P. 26(g)(1)(B)(ii). "The reasonableness of counsel's inquiry is measured by an objective standard and does not require a showing of bad faith." *Zaccardo v. Horne Motors of Gilbert LLC*, 2026 WL 1392238, at *2 (D. Ariz. 2026). If a certification violates Rule 26(g) without substantial justification, the Court "must impose" an appropriate sanction on the signer, the represented party, or both, including the expenses and fees caused by the violation. Fed. R. Civ. P. 26(g)(3).

The Court also has inherent authority to impose sanctions for conduct that "constituted or was tantamount to bad faith," including when a party's conduct "delay[s] or disrupt[s] the litigation or hamper[s] enforcement of a court order." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648-49 (9th Cir. 1997); *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 934 (N.D. Cal. 2023) (imposing sanctions for the "delay and unnecessary expense resulting from repeated frivolous arguments, obfuscation, and reflexive opposition"). The Court may use that authority both to "vindicate the court's authority and the integrity of the judicial process" and "to compensate the opposing party for the expense incurred as a result of the misconduct." *Facebook*, 655 F. Supp. 3d at 925. In selecting a sanction, the Court "may properly consider all of a party's discovery misconduct." *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997).

## IV. ARGUMENT

Defendants' systematic and prejudicial [redacted] and privilege misconduct warrants sanctions under Rules 26 and 37 because it lacked substantial justification, and under the Court's inherent authority because, viewed in totality, it constitutes bad faith.

### A. Defendants' Concealment of the [redacted] Lacked Substantial Justification, Constituted Bad Faith, and Prejudiced Plaintiffs

The [redacted] documents were responsive, central, and readily available. Defendants nevertheless withheld them for more than a year, claimed discovery was substantially complete, and forced four key T&R depositions without them.

Rules 26 and 34 do not permit a party to withhold responsive discovery merely because it considers other discovery more important. *See Centerline Hous. P'ship I, L.P.-Series 2 v. Palm Cmtys.*, 2021 WL 4895746, at *4 (C.D. Cal. 2021) (a party may not "unilaterally decide which responsive documents to produce" and must "produce all responsive nonprivileged documents in their possession, custody, or control"); *Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods., Inc.*, 2020 WL 7342724, at *12 (S.D.N.Y. 2020) (rejecting unilateral decisions to withhold responsive documents). That obligation is particularly clear where, as here, the documents were already collected, reviewed, [redacted]. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 12647879, at *2 (N.D. Cal. 2014) (finding no "significant burden" as to documents that had "already been collected, reviewed and produced" to a regulator).

RFP No. 2 expressly sought regulatory materials through the present, and other RFPs [redacted]. Before Defendants served Objections and Responses, Carvana had made at least [redacted] productions and supplied [redacted]. *See Munoz v. PHH Corp.*, 2013 WL 684388, at *4 (E.D. Cal. 2013) (finding "[t]here can be no serious dispute" as to relevance of a regulatory investigation into the "same alleged wrongful conduct").

Defendants produced no meaningful [redacted] records by the December 2025 substantial-completion deadline and falsely told the Court production was substantially complete. ECF 229 at 12; ECF 243 at 27:13-15, 29:6-10. Relying on that representation, Plaintiffs deposed key witnesses before Defendants produced [redacted] documents six months later. Defendants still withheld thousands more, forcing Plaintiffs to identify missing materials and challenge Defendants' serial completeness claims while additional depositions, including Olson's and Aragon's, proceeded.[5]

Defendants' delay concealed evidence central to falsity and scienter. Defendants touted 2021 retail unit sales ("RUS") of "425,237, an increase of 74%" (¶¶40, 214, 281, 383), but [redacted]. Ex. 8 at -102. Defendants also told the August 11, 2021 J.P. Morgan Auto Conference that T&R delays affected "quite a small fraction of customers" and called the North Carolina suspension "unprecedented," "relatively unusual," and "pretty small in scope." ¶¶180-181. [redacted]. Ex. 10 at -887-893.

That delay hampered discovery negotiations, witness examinations, and development of the factual record, and warrants sanctions. *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1236 (9th Cir. 2006) ("Prejudice from unreasonable delay is presumed."); *Facebook*, 655 F. Supp. 3d at 927-28 (sanctioning defendant and its counsel for delays in producing documents from an investigation into the subject matter of the

[5] Had Defendants conferred about the [redacted], Plaintiffs would have corrected their objectively unreasonable view that the [redacted] materials were not relevant. Defendants deliberately avoided that conference. *See Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1055 (9th Cir. 1998) (willfully hiding a memorandum "in a purposeful evasion of discovery obligations" is "evidence of a shocking betrayal of obligations to the court and opposing counsel").

litigation); *see also World Nutrition Inc. v. Advanced Supplementary Techs. Corp.*, 2022 WL 2111226, at *2 (D. Ariz. 2022) (unexplained, high-volume late production is sanctionable even if unintentional).

### B. Defendants' Privilege Designations Lacked Substantial Justification, Were Made in Bad Faith, and Independently Warrant Sanctions

Defendants' privilege abuses independently warrant sanctions. They buried tens of thousands of documents in a boilerplate log, resisted re-review despite notice of systemic defects, abandoned frivolous claims as judicial review approached, and released documents only after key witnesses testified.

Under Rule 26(b)(5)(A), a withholding party must "'provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection.'" *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1148 (9th Cir. 2005). That requirement "ensures not just that there is a means for the opposing party and the Court to test the privilege contention, but it also ensures that counsel has carefully reviewed documents being withheld." *PlayUp, Inc. v. Mintas*, 2026 WL 1079397, at *2 n.5 (D. Nev. 2026). A party cannot assert privilege first, wait for a challenge, and review documents only after. *BlackRock Balanced Cap. Portfolio (FI) v. Deutsche Bank Nat'l Trust Co.*, 2018 WL 3584020, at *5 (S.D.N.Y. 2018). Simply put, "[a] privilege log is not an iterative process." *Id.*

Defendants used that forbidden iterative process. Boilerplate descriptions prevented Plaintiffs from assessing tens of thousands of claims. Even after Plaintiffs identified widespread defects, Defendants reviewed only the claims Plaintiffs could discern and challenge, then withdrew many as judicial scrutiny approached. That shifted Defendants' Rule 26(b)(5) burden to Plaintiffs, consumed the Court's resources, and forced Plaintiffs to fund Special Master review of frivolous claims Defendants should have vetted before logging.

The results were systemic. In eight weeks, Plaintiffs' challenges forced nine log revisions and over 8,000 withdrawals. Once Plaintiffs sought relief, Defendants abandoned every claim submitted to Judge Boyle for *in camera* review and over 1,500 more while the motion was pending. Before the Special Master, Defendants withdrew most claims in every tranche and lost many others, yielding an aggregate failure rate above 70%. After five months of challenges, Defendants finally re-reviewed the rest, producing 2,003 improperly withheld documents on August 14 and over 23,000 more on August 28 and 31. They have now withdrawn or lost privilege claims over nearly ***42,000*** documents.

Defendants' widespread improper privilege assertions demonstrate a lack of substantial justification and warrant sanctions under the Rules. *Vieste, LLC v. Hill Redwood Dev.*, 2011 WL 588145, at *3 (N.D. Cal. 2011) (imposing sanctions for lack of substantial justification where defendants "persisted in withholding clearly non-privileged documents"); *Jackson v. Nassau Cnty.*, 350 F.R.D. 227, 235 (E.D.N.Y. 2025) (holding same). The scope of Defendants' improper privilege assertions further demonstrates bad faith and warrants sanctions under the Court's inherent authority. Courts have found bad faith at materially lower error rates than those here. *See Facebook*, 655 F. Supp. 3d at 923 ("over 63%"); *Chevron U.S.A., Inc. v. United States*, 116 Fed. Cl. 202, 232 (2014) ("at least 42%").[6] Defendants' error rates and post-deposition productions exceed those in each case and cannot be dismissed as ordinary quality control.

The latest production of more than 23,000 improperly withheld or redacted documents also contradicts Defendants' representations to the Court. Defendants called the log "the product of a comprehensive process" with "extensive quality checks on the contract attorneys' privilege calls," and its de-designations "a self-correcting process" and "a functioning privilege-review process." ECF 397 at 7, 13, 17. Yet on August 17, 2026,

---

[6] Analogous decisions also support sanctions. *N.M. Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 2017 WL 3535293 (D.N.M. 2017), imposed costs when re-reviews and a Special Master exposed over-designation after depositions. *Id.* at *4-*7. In *Heath v. F/V ZOLOTOI*, 221 F.R.D. 545 (W.D. Wash. 2004), the court sanctioned frivolous privilege claims that delayed production until a deposition near the cutoff. *Id.* at 549, 550-52.

Carvana told the Special Master that roughly 21,000 of approximately 50,000 logged documents had still not been re-reviewed. Ex. 57 at 1. Two weeks later, Defendants released another 23,000 improperly withheld or redacted documents. Ex. 51 at 28:3-18. That result belies "extensive quality checks." The Court had expressed concern about Defendants "sitting on thousands, maybe ten thousands of documents that they're going to dump on plaintiffs on [the revised substantial-completion deadline]." ECF 243 at 19:4-9. Defendants made precisely that dump months after substantial completion, after written discovery closed, and weeks before the discovery cutoff.

The resulting prejudice continues. Plaintiffs spent seven months litigating deficient privilege claims over nearly 42,000 documents and cannot now question eight past deponents about 13,231 documents from their custodial files. [redacted]). Nor can Plaintiffs meaningfully review 23,000 documents spanning over 106,000 pages during the three weeks left for fact depositions. Sanctions are needed to restore Plaintiffs to the position they would have occupied absent Defendants' delay.[7]

### C. Defendants' Other Discovery Obstruction Prejudiced Plaintiffs

Defendants also withheld [redacted] from *Jennings v. Carvana, LLC*, a pending consumer class action involving the same T&R issues. No. 5:21-cv-05400 (E.D. Pa. 2022). Plaintiffs' requests covered materials falling into this category, and Carvana agreed to produce them. Ex. 13. Defendants neither produced nor disclosed them until Plaintiffs

---

[7] Defendants blame de-designations on "additional guidance" from the Special Master about "'mixed' documents that implicate business and legal considerations." Ex. 57 at 2. But he merely applied settled rules that counsel's participation does not privilege business or everyday regulatory advice and that the proponent bears the burden on each privilege claim. ECF 552 at 9-10; ECF 552-1, as modified by ECF 574. He found only business advice or "no actual advice at all" supported by "simple boilerplate in an Excel spreadsheet." *Id.* Plaintiffs identified those defects in February 2026. The re-review exposed Defendants' failure to apply ***existing*** law, not new law. Only the imminence of Special Master review and sanctions changed.

independently discovered [redacted]. Ex. 59 at 3. Defendants then waited two-and-a-half months, until Plaintiffs followed up again, before producing the [redacted]. Ex. 60.

[redacted]; *see EEOC v. Fry's Elecs., Inc.*, 287 F.R.D. 655, 657 (W.D. Wash. 2012) (sanctioning late production that placed "the value of depositions . . . that had gone before" in doubt).

**D. The Requested Relief Is Remedial, Proportional, and Necessary**

The requested relief is narrowly tailored to cure the prejudice Defendants caused and restore Plaintiffs to the position they would have occupied had Defendants complied.

***First***, Plaintiffs request limited reopening of completed depositions to address documents Carvana produced only afterward. Reopening and cost-shifting are appropriate when withheld documents surface after testimony. *See, e.g.*, *Surowiec v. Cap. Title Agency, Inc.*, 790 F. Supp. 2d 997, 1011 (D. Ariz. 2011); *Turner v. City of Chi.*, 2016 WL 11940558, at *6 (N.D. Ill. 2016).

***Second***, Plaintiffs cannot analyze more than 23,000 documents totaling over 106,000 pages while taking or defending 16 depositions in three remaining weeks. They request leave, if necessary, to reopen September depositions of current and former Carvana employees and directors and Carvana's Rule 30(b)(6) witness for limited questioning about documents produced on or after August 28, 2026 (or continue depositions that have not yet been taken). That examination should not count against deposition limits, should occur at Defendants' expense, and may follow existing deposition and discovery cutoffs.[8]

---

[8] Defendants' offer of only two additional hours to re-depose Greer does not cure the harm. They refused to reopen any other deposition despite producing each witness's documents afterward and refused to pay the reasonable expenses their misconduct caused. Ex. 31 at 2-4.

***Third***, Plaintiffs should recover fees and costs caused by Defendants' and Latham's misconduct, including reopening or continuing depositions and litigating the [redacted] record, privilege logs, Special Master process, and this Motion. Fed. R. Civ. P. 37(c)(1); Fed. R. Civ. P. 26(g)(3); *see Hudgins v. Total Quality Logistics, LLC*, 2024 WL 1618363, at *6 (N.D. Ill. 2024). The Court should also shift the full cost of the Special Master's ongoing review, which Plaintiffs have borne, to Defendants. Fed. R. Civ. P. 53(g)(3) (requiring allocation based in part on "the extent to which any party is more responsible than other parties for the reference to a master"); *see Facebook*, 655 F. Supp. 3d at 935.

***Fourth***, Plaintiffs should be permitted to serve targeted interrogatories, document requests, and requests for admission by October 2, 2026. Defendants withheld tens of thousands of documents beyond the written-discovery deadline, preventing informed follow-up discovery. Plaintiffs should also have leave to supplement class-certification briefing by October 2. Fed. R. Civ. P. 16(b)(4); Fed. R. Civ. P. 37(c)(1)(C).

***Finally***, the *Burlington* factors warrant log-wide waiver. 408 F.3d at 1149. Defendants' late log used nine "simple boilerplate" categories, underwent more than nine revisions, and shed claims whenever challenged. Tested claims failed at rates of 67% to 100%; Defendants concede at least 42,000 did not belong there.

## V. CONCLUSION

For the foregoing reasons, the Court should grant the Motion in its entirety.

DATED: September 4, 2026

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP

s/ Daniel S. Drosman
DANIEL S. DROSMAN

DANIEL S. DROSMAN
(Admitted *pro hac vice*)
TOR GRONBORG
(Admitted *pro hac vice*)
SARA B. POLYCHRON
(Admitted *pro hac vice*)
ERIKA L. OLIVER
(Admitted *pro hac vice*)
MATTHEW J. BALOTTA
(Admitted *pro hac vice*)
RACHEL A. COCALIS
(Admitted *pro hac vice*)
CHRISTOPHER R. KINNON
(Admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
ddrosman@rgrdlaw.com
torg@rgrdlaw.com
spolychron@rgrdlaw.com
eoliver@rgrdlaw.com
mbalotta@rgrdlaw.com
rcocalis@rgrdlaw.com
ckinnon@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
ROBERT M. ROTHMAN
(Admitted *pro hac vice*)
DAVID A. ROSENFELD
(Admitted *pro hac vice*)
JONATHAN A. OHLMANN
(Admitted *pro hac vice*)
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
rrothman@rgrdlaw.com
drosenfeld@rgrdlaw.com
johlmann@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
MATHEW ANDREWS
(Admitted *pro hac vice*)
CRISTELLE R. RABBAN
(Admitted *pro hac vice*)
420 Lexington Avenue, Suite 1832
New York, NY 10170
Telephone: 212/432-5100
mandrews@rgrdlaw.com
crabban@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
ELIZABETH A. SHONSON
(Admitted *pro hac vice*)
SCOTT I. DION
(Admitted *pro hac vice*)
LUKE GOVEAS
(Admitted *pro hac vice*)
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
eshonson@rgrdlaw.com
sdion@rgrdlaw.com
lgoveas@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

O'DONOGHUE & O'DONOGHUE LLP
DINAH S. LEVENTHAL
5301 Wisconsin Avenue, N.W., Suite 800
Washington, D.C. 20015
Telephone: 202/362-0041
202/362-2640 (fax)
dleventhal@odonoghuelaw.com

Additional Counsel for Lead Plaintiffs

BONNETT FAIRBOURN FRIEDMAN
& BALINT PC
ANDREW FRIEDMAN
7301 N. 16th Street, Suite 102
Phoenix, AZ 85020
Telephone: 602/274-1100
602/274-1199 (fax)
afriedman@bffb.com

Local Counsel