ROBBINS GELLER RUDMAN
& DOWD LLP
DANIEL S. DROSMAN (CA 200643)
TOR GRONBORG (CA 179109)
SARA B. POLYCHRON (CA 244685)
ERIKA L. OLIVER (CA 306614)
MATTHEW J. BALOTTA (CA 310303)
RACHEL A. COCALIS (CA 312376)
CHRISTOPHER R. KINNON (CA 316850)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
ddrosman@rgrdlaw.com
torg@rgrdlaw.com
spolychron@rgrdlaw.com
eoliver@rgrdlaw.com
mbalotta@rgrdlaw.com
rcocalis@rgrdlaw.com
ckinnon@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re Carvana Co. Securities Litigation<br>This Document Relates To:<br>All Actions. | No. CV-22-2126-PHX-MTL<br>REPLY IN SUPPORT OF REQUEST FOR EXPEDITED CONSIDERATION OF LEAD PLAINTIFFS' MOTION FOR SANCTIONS |

**[REDACTED]**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1
II. ARGUMENT .......... 3
  A. Defendants' Conduct Created the Urgency .......... 3
  B. Plaintiffs Exhausted the Meet-and-Confer Process .......... 5
  C. The Upcoming Depositions Demand Expedited Relief .......... 6
  D. Defendants' Civility Charge Is Meritless .......... 7
III. CONCLUSION .......... 9

Lead Plaintiffs United Association National Pension Fund and Saskatchewan Healthcare Employees' Pension Plan (together, "Plaintiffs") respectfully submit this Reply in support of their Request for Expedited Consideration of Lead Plaintiffs' Motion for Sanctions (the "Request") (ECF 675).[1]

## I. INTRODUCTION

This Request poses a single question: Whether Defendants may profit from the delay they created. For more than a year, Defendants concealed a [redacted] and buried tens of thousands of responsive documents behind a boilerplate privilege log, all while assuring the Court that discovery was "substantially complete." Then, on August 28 and 31, after at least eight key witnesses had testified, Defendants dumped on Plaintiffs more than 23,000 documents totaling approximately 106,000 pages. ECF 668 ("Sanctions Motion") at 1-2, 8. Senior-executive and Rule 30(b)(6) depositions began just days later and run through September 25, the deposition cutoff. Fact discovery closes October 2. Request at 1. Defendants still have improperly withheld materials to produce (Ex. 1), which they will not produce until ***September 16*** (Ex. 9 at 1), and as of September 8, the Special Master still awaited Defendants to provide him with Tranche Four documents he "expected by now" (Ex. 2 at 1).

Good cause for expedited consideration is not a close question; it is overwhelming. Unless the Court decides the Sanctions Motion before those depositions and the discovery cutoff, it will lose any practical ability to grant meaningful relief, and Defendants will keep the advantage they gained by withholding evidence until the clock nearly expired.

Plaintiffs propose an opposition on September 11 and a reply on September 15, before many remaining senior-witness depositions. Request at 2. Defendants propose an opposition

[1] "Opposition" or "Opp." refers to the Opposition to Motion for Expedited Consideration (ECF 680). "Defendants" refers to Carvana Co. ("Carvana"), Ernest Garcia III ("Garcia Jr."), Mark Jenkins ("Jenkins"), Stephen Palmer, Michael Maroone, Neha Parikh, Ira Platt, and Greg Sullivan. "Ex. __" citations are to exhibits attached to the Declaration of Daniel S. Drosman in Support of Reply in Support of Request for Expedited Consideration of Lead Plaintiffs' Motion for Sanctions, filed concurrently herewith. Unless otherwise stated, undefined terms have the meanings given in the Request, all emphasis is added, and citations are omitted.

on September 18. Opp. at 5. Under the LRCiv 7.2(c) schedule Defendants invoke, briefing would not close until September 25, the day of defendant Garcia Jr.'s deposition (the last-scheduled deposition in the case), and the deposition cutoff. By then, Plaintiffs will have examined Carvana's General Counsel, several directors, and other senior witnesses on an incomplete record. A later order could authorize additional sessions, but it cannot prevent duplicated preparation and travel, restore the lost sequence of examinations, or let Plaintiffs use one witness's answers to examine the next. Defendants' schedule would impair the practical value of the Court's relief.

Plaintiffs did not create that timetable. They first learned on August 24 that Defendants planned to release "upwards" of "20 thousand" documents by August 31 (it turned out to be more than 23,000 documents). Sanctions Motion at 8. Defendants delivered the productions on August 28 and 31, and Plaintiffs filed four days later. *Id.*; Request at 1-2. Defendants, by their own admission, continued to withhold nonprivileged materials on the day Plaintiffs filed their Sanctions Motion and Request. Exs. 1-2, 9. The Opposition's claim that Plaintiffs "sat on their hands" (Opp. at 1, 8) ignores the controlling chronology. Plaintiffs sought relief promptly after Defendants disclosed the production's scale and delivered it.

Defendants identify no actual prejudice from the expedited schedule in the Request. They had notice of potential sanctions on August 16, responded in detail on August 27, and conferred twice before the filing. Request at 1-2. The proposed schedule required no holiday filing and gave Defendants seven days to oppose issues they had already addressed. Their remaining objections dispute the Sanctions Motion's merits, relabel late production as voluntary discovery, demand further conferral after impasse, and mischaracterize limited remedial examination as "endless discovery." Opp. at 4. None defeats good cause. The expedited schedule changes only the briefing dates. It leaves Defendants free to address every issue and the Court free to scrutinize the requested relief. The Court should grant the Request.

## II. ARGUMENT

Defendants agree that good cause controls. Opp. at 1. The record defeats each reason they offer to withhold expedited consideration.

### A. Defendants' Conduct Created the Urgency

Defendants' manufactured-urgency theory depends on shifting responsibility for their own delays to Plaintiffs. Opp. at 2-3. The record forecloses this blame-the-victim tactic.

Defendants describe the [redacted] productions as "voluntary" and "in July," and blame Plaintiffs for any later production. *Id.* at 3. The record says otherwise. By December 2025, Defendants had represented to the Court that production was "substantially complete," yet they had withheld [redacted]. Sanctions Motion at 1, 4. They produced [redacted] on June 11, after four key witnesses testified; [redacted] on June 29, after Deputy General Counsel Chris Olson testified; and 14,413 more documents after Senior Vice President Teresa Aragon testified. *Id.* at 4-5. After again declaring production complete, Defendants produced another 940 documents. *Id.* Plaintiffs filed the August 19 discovery motion because Defendants continued withholding responsive [redacted] materials. ECF 639. On September 2, Defendants admitted they had identified [redacted]. Ex. 1 at 1. Production after relevant depositions does not become timely or harmless because Defendants call it voluntary.

Defendants also omit that Plaintiffs' requests sought responsive documents through the present, and Carvana possessed existing [redacted] production sets when Plaintiffs served the requests. Remarkably, Defendants fail to acknowledge that [redacted] and did not need search terms to recognize the existence, relevance, and centrality of those documents. Nonetheless, Defendants did not collect [redacted] documents from locations indisputably known to

[redacted] and never proposed "[redacted]" as a search term despite knowing the [redacted] relevance and their obligation under the Court's March 12, 2025 Order to do so. Ex. 3 at 1-5; Sanctions Motion at 11; ECF 137 at 3-4.

The privilege record likewise refutes Defendants' claim that Plaintiffs knew "since June" that the re-review would yield tens of thousands of documents. Opp. at 3 (citing ECF 484). The Joint Stipulation to Extend Certain Pre-Trial Deadlines (Second Request) reported only that Defendants had logged approximately 48,000 documents and the parties were contesting roughly 14,000 privilege claims. ECF 484 at 1. It did not disclose that Defendants would withdraw or lose privilege claims over nearly 42,000 documents or suddenly produce more than 23,000 documents totaling approximately 106,000 pages at the end of August. Sanctions Motion at 1-2, 8, 14. Defendants did not agree to re-review the log until July 1, and did not disclose the production's scale or timing until August 24. *Id.* at 8. Knowledge that privilege claims were disputed did not give Plaintiffs advance notice that Defendants would abandon tens of thousands of them weeks before the cutoff.

Defendants' compliance with the Special Master's August 31 deadline does not answer good cause. Opp. at 3. That deadline required Defendants to finish a corrective re-review based on Defendants' forfeiture of the majority (or all) of their privilege claims every time Plaintiffs identified documents on the log for Judge Boyle's or the Special Master's review. It did not approve the preceding months of improper withholding, make the resulting 23,000-document production harmless, or give Plaintiffs advance knowledge of its contents. A deadline to correct Defendants' log did not transfer the resulting prejudice to Plaintiffs.

Defendants also ignore that the delays that produced the present crisis, including their failure to provide ***a categorical*** log for internal communications until February 2026 – deficient logs that required motion practice and a Special Master – and delays in providing challenged documents for review. Sanctions Motion at 5-7. The delays continue. Yesterday, on September 8, the Special Master asked when he would receive from Defendants the Tranche Four documents he "expected by now." Ex. 2 at 1. And today, Defendants confirmed they will not complete production of improperly withheld nonprivileged materials

until September 16. Ex. 9. Defendants' August productions, improper withholding of tens of thousands of nonprivileged documents, and unfinished review – not Plaintiffs' timing – created the calendar problem. Defendants cannot invoke those delays to postpone the Court's review.

**B. Plaintiffs Exhausted the Meet-and-Confer Process**

Defendants' meet-and-confer argument fails. As an initial matter, Defendants' position is internally contradictory: They fault Plaintiffs for moving sooner while also faulting Plaintiffs for not conferring longer. Opp. at 1-3. Plaintiffs met and conferred in good faith and the parties had reached an impasse. Plaintiffs raised sanctions on August 16, Defendants responded on August 27, and the parties conferred twice. Request at 1-2. Earlier, Plaintiffs' July 15 letter sought answers to six questions about Defendants' [redacted]. Ex. 3 at 10-12. Defendants simply stonewalled, refusing to answer those questions: "Defendants will not respond to the six interrogatories Plaintiffs purport to propound via letter." Ex. 4 at 3. That history defeats Defendants' claim that Plaintiffs abandoned a productive process.

Defendants' conditional offer to "***consider***" selected depositions was illusory and did not narrow the dispute. Opp. at 3. ***First***, the offer vested Defendants with sole discretion to decide whether Plaintiffs had shown "enough" to reopen any given deposition, even though Defendants had already rebuffed Plaintiffs' showing. *See* Ex. 5 at 3-5.

***Second***, it demanded a detailed preview and justification of the documents Plaintiffs intended to use with each deponent, including why those documents contained new material information: "We will reconsider our position with respect to these documents if Plaintiffs choose to explain why they contain new material information that justifies additional examination (including the relevant witnesses)." *Id.* at 5.

***Third***, the "offer" exploited the very prejudice Defendants created: It required Plaintiffs to identify newly produced documents before Defendants' own August 28 and 31 dump of more than 23,000 documents totaling approximately 106,000 pages. That condition required Plaintiffs to review the entire production while preparing for and taking 16

depositions well in advance of the September 25 cutoff, making meaningful compliance impossible. Defendants' only concrete concession was two additional hours for Jonathan Greer, while refusing to pay the resulting costs. Sanctions Motion at 16 n.8. An offer that Defendants' own timing made impossible to invoke did not resolve the dispute.

***Fourth***, on its face, the offer addressed only reopening depositions; it did not address the other relief sought in the Sanctions Motion, including cost- and fee-shifting, Special Master cost-shifting, targeted discovery, supplemental class-certification briefing, and log-wide waiver. Ex. 5 at 3-5. Only the Court can grant that relief. Defendants cannot extend Court-ordered deadlines, allocate costs, authorize supplemental briefing, or adjudicate waiver. Their promise to "consider" selected depositions could not produce an enforceable, comprehensive remedy. Those four defects made further conferral futile.

**C. The Upcoming Depositions Demand Expedited Relief**

The ordinary schedule Defendants prefer would defeat significant relief. Defendants' observation that the Court can reopen depositions later proves authority, not the absence of urgency. Opp. at 4. Plaintiffs must review more than 23,000 new documents while preparing for 16 depositions by September 25. A later order cannot restore the examination sequence, avoid duplicative preparation and travel, or let Plaintiffs use each answer in the next deposition. Prompt consideration could permit limited continuations rather than repeated depositions after the cutoff. The Court's power to award relief later does not make delay harmless now.

Defendants' "blanket reopening" accusation misstates the requested relief. Opp. at 4. The Sanctions Motion seeks limited examination, if necessary, concerning documents Defendants produced after a completed deposition and, for September witnesses, only documents Defendants produced on or after August 28. Sanctions Motion at 16. Defendants' agreement to two additional hours for Jonathan Greer confirms that post-deposition production can require further examination. It does not resolve the other witnesses, allocate costs, or eliminate the need for an enforceable remedy.

The dates of Plaintiffs' deposition notices do not change the analysis. Plaintiffs kept the depositions on calendar because the September 25 cutoff required it. Compliance with that cutoff does not waive the prejudice from the August 28 and 31 productions or turn limited remedial examination into "gameplaying." Opp. at 4. Nor does the seriousness of the requested relief justify a schedule that defeats it. An expedited briefing schedule changes only the briefing dates. Defendants remain free to address every issue, and the Court retains full scrutiny over the merits and scope of any relief.

**D. Defendants' Civility Charge Is Meritless**

Defendants' civility charge fails on the law and the facts. Opp. at 1. The District's professional standard addresses papers timed to limit an adversary's opportunity to respond. Defendants identify no known absence, impaired response, or other prejudice caused by Plaintiffs' filing date. Plaintiffs filed the Sanctions Motion in response to Defendants' latest tactic: Dumping more than 23,000 documents totaling approximately 106,000 pages on August 28 and 31, only weeks before the close of fact discovery and the depositions of senior executives, with more documents still to come. Plaintiffs did not "time" the Sanctions Motion "to limit their adversary's 'opportunity to respond'" or "'to take advantage of an opponent's known absence.'" Opp. at 1. Defendants' out-of-district authority is inapplicable.[2]

The chronology disproves gamesmanship. Plaintiffs notified Defendants of contemplated sanctions on August 16, received their detailed response on August 27, conferred twice, received the decisive productions on August 28 and 31, and filed four days

[2] The Central District of California's Oath of Civility and Professional Guidelines does not categorically prohibit filing on Friday afternoons or the days preceding a holiday – it addresses doing so unnecessarily, "in a manner ***designed*** to inconvenience an adversary." ECF 678-2, §B.3. No such purpose exists here. And while the Oath is not binding in this District, Plaintiffs note that Defendants' conduct violates many of its promises. *See, e.g.*, *id.* §B.5 (promising to "not strain to interpret the [document] request in an artificially restrictive manner to avoid disclosure of relevant and non-privileged documents" and to "withhold documents on the grounds of privilege only where it is appropriate to do so"); *id.* §B.8 ("Unless directly and necessarily in issue, we will not disparage the intelligence, morals, integrity, or personal behavior of our adversaries before the court . . . . We will not, absent good cause, attribute bad motives or improper conduct to other counsel . . . .").

later, on September 4. Request at 1-2. The proposed schedule required no holiday filing and allowed seven days for a response on issues Defendants had addressed for weeks.

Defendants' accusations are particularly unconvincing given their own conduct regarding holidays. They unilaterally withdrew Jenkins's (Carvana's Chief Financial Officer and an Individual Defendant) September 15 deposition date, which had been set since June, offered only September 22, and then refused for a week to provide an alternative after Plaintiffs explained that the examining attorney would need to travel on Yom Kippur, the holiest day of the Jewish calendar. *See* Ex. 6 at 1-9; Ex. 8 at 1. Defendants disparaged Plaintiffs' counsel ("Plaintiffs' invocation of 'professional courtesy' is ironic, to say the least") while insisting on a remote deposition or substitute counsel. Ex. 6 at 3. Plaintiffs then raised the issue with Judge Boyle's chambers, which directed Defendants to provide four workable dates between September 10 and 25, and confirmed that Plaintiffs need not accept September 22, a remote deposition, or substitute counsel. Ex. 7 at 1. Only then did Defendants offer September 23, the very date Plaintiffs originally requested. Ex. 8 at 1, 11. Defendants' refusal to accommodate a religious observance without a court order defeats their claim that filing on the Friday before a long weekend violated counsel's obligations.

When Plaintiffs raised Defendants' unwillingness to accommodate Plaintiffs' counsel's religious observance with Judge Boyle, Defendants feigned "disappoint[ment]" and accused Plaintiffs of "gamesmanship and manufactured disputes." Ex. 7 at 2. The Opposition repeats that tactic, claiming Plaintiffs "abandoned" the meet-and-confer process and accusing counsel of misconduct. *See* Opp. at 1, 3-4. Simply put, Defendants' own scheduling conduct defeats their appeal to civility.

Plaintiffs' expedited schedule also requires Plaintiffs to work through a weekend. When Defendants previously invoked "summer vacations" to excuse delay, the Court admonished them that "this is a federal case" and that counsel may need to work during vacation, "even when they're on the beach or in Park City." ECF 243 at 25:12-24. The Court concluded: "That's my expectation." *Id.* at 26:2. A filing made four days after Defendants' mass production, under a schedule burdening both sides equally, is not an ethical violation.

Finally, Rule 12 does not support Defendants' accusation. Defendants are represented by Latham, one of the largest law firms in the world. A request of fewer than 1.5 pages filed on a Friday could not conceivably deprive that firm of a fair opportunity to respond, particularly under the proposed schedule. The proposed schedule gave Defendants until September 11, 2026 to respond, and Plaintiffs until September 15, 2026 to reply, placing the Sanctions Motion in posture by September 17. Defendants instead seek a September 18 response date under LRCiv 7.2. Nothing about the proposed schedule deprived Defendants of a fair opportunity to respond.

## III. CONCLUSION

Defendants created the urgency, the parties exhausted the meet-and-confer process, and Defendants' preferred schedule would carry briefing through the remaining depositions and the deposition cutoff. Defendants identify no actual prejudice from an expedited schedule. The Court should grant the Request and set September 11 for Defendants' opposition and September 15 for Plaintiffs' reply.

DATED: September 9, 2026

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
DANIEL S. DROSMAN
(Admitted *pro hac vice*)
TOR GRONBORG
(Admitted *pro hac vice*)
SARA B. POLYCHRON
(Admitted *pro hac vice*)
ERIKA L. OLIVER
(Admitted *pro hac vice*)
MATTHEW J. BALOTTA
(Admitted *pro hac vice*)
RACHEL A. COCALIS
(Admitted *pro hac vice*)
CHRISTOPHER R. KINNON
(Admitted *pro hac vice*)

s/ Daniel S. Drosman
DANIEL S. DROSMAN

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
ddrosman@rgrdlaw.com
torg@rgrdlaw.com
spolychron@rgrdlaw.com
eoliver@rgrdlaw.com
mbalotta@rgrdlaw.com
rcocalis@rgrdlaw.com
ckinnon@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
ROBERT M. ROTHMAN
(Admitted *pro hac vice*)
DAVID A. ROSENFELD
(Admitted *pro hac vice*)
JONATHAN A. OHLMANN
(Admitted *pro hac vice*)
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
rrothman@rgrdlaw.com
drosenfeld@rgrdlaw.com
johlmann@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
MATHEW ANDREWS
(Admitted *pro hac vice*)
CRISTELLE R. RABBAN
(Admitted *pro hac vice*)
420 Lexington Avenue, Suite 1832
New York, NY 10170
Telephone: 212/432-5100
mandrews@rgrdlaw.com
crabban@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
ELIZABETH A. SHONSON
(Admitted *pro hac vice*)
SCOTT I. DION
(Admitted *pro hac vice*)
LUKE GOVEAS
(Admitted *pro hac vice*)
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
eshonson@rgrdlaw.com
sdion@rgrdlaw.com
lgoveas@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

O'DONOGHUE & O'DONOGHUE LLP
DINAH S. LEVENTHAL
5301 Wisconsin Avenue, N.W., Suite 800
Washington, D.C. 20015
Telephone: 202/362-0041
202/362-2640 (fax)
dleventhal@odonoghuelaw.com

Additional Counsel for Lead Plaintiffs

BONNETT FAIRBOURN FRIEDMAN
& BALINT PC
ANDREW FRIEDMAN
7301 N. 16th Street, Suite 102
Phoenix, AZ 85020
Telephone: 602/274-1100
602/274-1199 (fax)
afriedman@bffb.com

Local Counsel