LATHAM & WATKINS LLP
Andrew B. Clubok (*pro hac vice*)
J. Christian Word (*pro hac vice*)
Susan E. Engel (*pro hac vice*)
Matthew J. Peters (*pro hac vice)*
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Email: andrew.clubok@lw.com
Email: christian.word@lw.com
Email: susan.engel@lw.com
Email: matthew.peters@lw.com

Jeff G. Hammel (*pro hac vice*)
Kalana Kariyawasam (*pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: jeff.hammel@lw.com
Email: kalana.kariyawasam@lw.com

Meryn C. Grant (*pro hac vice*)
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: (424) 653-5500
Email: meryn.grant@lw.com

[*Additional counsel on signature page*]

*Counsel for Defendants Carvana Co., Ernest Garcia III, Mark Jenkins, Stephen Palmer, Michael Maroone, Neha Parikh, Ira Platt, and Greg Sullivan*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re Carvana Co. Securities Litigation | CASE NO. 2:22-cv-02126-PHX-MTL<br><br>**CARVANA DEFENDANTS' OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR SANCTIONS** |

# REDACTED

# TABLE OF CONTENTS


Page

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 5

A. The [redacted] Materials Do Not Support Plaintiffs' Motion ........ 5

1. The [redacted] Documents Were Not Concealed ........ 5

2. The [redacted] Documents Are Largely Irrelevant ........ 6

B. Carvana Defendants Did Not Over-Designate Privileged Materials ........ 7

1. Carvana Defendants Made Privilege Designations In Good Faith In The Context Of A Highly Complex Regulatory Landscape ........ 7

2. Carvana Defendants Voluntarily Applied The Special Master's Rulings Across Their Entire Privilege Log ........ 9

3. Carvana Defendants Devoted Extraordinary Resources To Timely Complete Their Comprehensive Privilege Log Re-Review ........ 10

4. Formerly Logged Documents are Immaterial and Cumulative ........ 10

C. Plaintiffs' Demanded Sanctions Lack Any Factual Or Legal Basis ........ 11

1. Plaintiffs' Motion Reveals A Problem of Their Own Making ........ 11

2. Plaintiffs Do Not Need To Reopen Depositions ........ 12

3. Plaintiffs' Request for Fee and Cost Shifting Is Equally Baseless ........ 13

4. Additional Written Discovery Is Unwarranted ........ 14

5. Plaintiffs' Demand for Log-Wide Privilege Waiver is Facially Absurd ........ 15

III. CONCLUSION ........ 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Burlington N. & Santa Fe Ry. Co. v. United States Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142 (9th Cir. 2005) ........ 15

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ........ 13

*In re Grand Jury*, 23 F.4th 1088 (9th Cir. 2021) ........ 8

*PlayUp, Inc. v. Mintas*, 344 F.R.D. 429 (D. Nev. 2023) ........ 13

*Rouse v. H.B. Fuller Co.*, 2024 WL 4973028 (D. Minn. Dec. 4, 2024) ........ 15

*S.G.D. Eng'g Ltd. v. Lockheed Martin Corp., Inc.*, 2013 WL 2297175 (D. Ariz. May 24, 2013) ........ 7

*Tajikkhaveh v. Genuine Parts Co.*, 2026 WL 2474498 (D. Ariz. Aug. 4, 2026) ........ 13, 14

*Wheatcroft v. City of Glendale*, 2021 WL 1056398 (D. Ariz. Mar. 19, 2021) ........ 14

*Zaccardo v. Horne Motors of Gilbert LLC*, 2026 WL 1392238 (D. Ariz. May 19, 2026) ........ 14

Defendants Carvana Co. ("Carvana" or the "Company"), Ernest Garcia III ("Garcia Jr."), Mark Jenkins, Stephen Palmer, Michael Maroone, Neha Parikh, Ira Platt, and Greg Sullivan (collectively, "Carvana Defendants") respectfully submit this response in opposition to Lead Plaintiffs' Motion for Sanctions (Dkt. 688) (the "Motion").

## I. INTRODUCTION

Plaintiffs' Motion reveals their strategy in this lawsuit: pursue endless discovery and create endless discovery disputes to use as a lever to drag out the schedule so Plaintiffs can continue to seek documents and depositions in search of support for a claim. Extensive discovery over the past 19 months—including Carvana Defendants' production of nearly 245,000 documents spanning more than 1.8 million pages—has yet to uncover evidence supporting Plaintiffs' claims. So Plaintiffs resort to litigation gamesmanship: using a sanctions motion as their vehicle, they (wrongly) accuse Defendants of discovery delays and seek, among other things, to prevent discovery from ending and to reopen *all* depositions they have taken or will take (over two dozen).

Discovery has *debunked* Plaintiffs' claims. To take just one example, Plaintiffs' Amended Complaint represented that unnamed former Carvana employees ("CWs") had personally alleged Carvana "routinely sold cars before receiving title." Dkt. 105 at 45. But in depositions, those same CWs have disavowed the statements Plaintiffs attributed to them. *See, e.g.*, Dkt. 372-3 at 263:19-266:25; *see also* Ex. 1 (CW-3 Dep. Tr.) at 218:10–13 [redacted]).[1]

Nor has discovery uncovered support for the allegation that Carvana misled investors by concealing its title and registration issues with local DMVs. On the contrary, this was well-known: Lead Plaintiff Saskatchewan Healthcare Employees' Pension Plan's own investment advisor testified that it knew, *before investing*, of "numerous news articles regarding . . . issues Carvana faced related to compliance with state title and registration laws." Ex. 2 at 142:22–143:7. Lead Plaintiff United Association National Pension Fund's

---

[1] Citations to "Ex." are to the Declaration of Matthew J. Peters (the "Peters Decl.") attached hereto.

financial advisor similarly was "[redacted]" to learn about Carvana's regulatory challenges. Ex. 3 at 155:12–19, 200:15–22. [redacted] Dkt. 453-1 at 1–2, 9–13; *see also id.* at 16. These details doom Plaintiffs' case.

So Plaintiffs continue to look for something they can call fraud and with this Motion claim they need more time and discovery to do so. They point to a [redacted] that arose ***after this lawsuit was filed*** and cannot possibly have caused the stock price drops at issue. *See* Ex. 10. Plaintiffs have shifted the focus of their claims to this inquiry and assert (without cogent explanation) that this is now their most important evidence. But only a portion of the [redacted] concerns Carvana's T&R practices, and the Carvana Defendants long ago produced millions of pages of documents about its T&R practices, and Plaintiffs have every document produced to [redacted] (and more).

Plaintiffs assert that "Defendants Concealed the [redacted] Record While Assuring the Court that Production Was Substantially Complete" in December 2025. Mot. at 2. This is untrue. As of the December 2025 hearing they cite, the Relevant Period for discovery ended on February 28, 2023. Dkt 196 at 6. Defendants' agreed-upon search protocol identified a [redacted] document, which was produced. *See* Ex. 4. Later, Magistrate Judge Boyle's January 2026 ruling requiring the production of documents Carvana gave the SEC after the Relevant Period, Dkt. 264 at 10, Carvana ***voluntarily*** decided to produce documents it had turned over to the [redacted] after the Relevant Period. To that end, on June 11, 2026, Carvana produced to Plaintiffs [redacted] documents consisting of 1,500 pages, primarily involving letters exchanged between [redacted] Dkt. 663-6. With respect to T&R, that production included [redacted]

[redacted] *See* Peters Decl. at ¶20. Approximately a week later, Carvana produced copies of presentations that Carvana made to the [redacted] concerning, for example, [redacted] *Id.* In July 2026, Carvana then re-produced to Plaintiffs every document it had produced to the [redacted]—regardless of whether those documents were relevant to T&R issues. Peters Decl. at ¶ 22.

Many of the [redacted] documents have nothing to do with this case. For example, Plaintiffs note Carvana produced to the [redacted] "30,000 pages" on April 22, 2025. Mot. at 3 (over 60% of the total pages produced to [redacted] and reproduced to Plaintiffs). What Plaintiffs omit, however, is that those 30,000 pages contain a large volume of random [redacted]. Peters Decl. at ¶ 22. Plaintiffs have had—and will continue to have—the opportunity to question key witnesses about the [redacted] including Carvana's CEO, CFO, General Counsel, and its 30(b)(6) witness, and they have suffered no prejudice.

Plaintiffs also claim they need more time for discovery because the Carvana Defendants produced documents previously withheld on the grounds of privilege that the Special Master determined not to be privileged under the primary purpose test. Magistrate Judge Boyle and the Special Master have acknowledged that the application of privilege review in this case has been complicated. Carvana's regulated business and its counsel's pervasive involvement in operations generated numerous "dual-purpose" communications requiring document-by-document assessment—a process the Special Master acknowledged "can quickly become messy in practice." Dkt. 552 at 3. Critically, Magistrate Judge Boyle found: "I don't think this is done in bad faith by the defense. I think they've been trying to comply." Dkt. 477 at 13:1–12. Following the Special Master's review of the first set of approximately 90 logged documents, in July 2026 the Carvana Defendants agreed—***again voluntarily***—to re-review at their expense all approximately 50,000 logged documents and apply the Special Master's rulings across the entire log and

produce documents that were now non-privileged under those rulings. Peters Decl. at ¶ 23. That re-review consumed over 960 attorney hours and for which Carvana has borne the entire cost. *Id.*

To the extent Plaintiffs complain that some documents from the privilege log were produced shortly before depositions, that comes as no surprise to them—they knew about it since July. Any discovery timing difficulty now is a problem of their own making. They delayed in scheduling depositions for almost the entire discovery period—they *still* have not taken the deposition of any Defendant. They then waited until the eve of the close of fact discovery and brought a motion for "sanctions" that is really just a motion to extend the discovery schedule, to re-open the depositions of an unspecified number of witnesses, to be allowed to continue for more than one day depositions that they haven't even started—including of Carvana's most senior executives—and to force Carvana to pay for it all. All on the basis of discovery that Carvana has provided voluntarily and at great expense. Plaintiffs have offered no case law supporting such a remedy in these circumstances and there is none.

Nor have they identified any prejudice. The Motion offers no evidence that these [redacted] or privilege log documents contained anything new or significant beyond the hundreds of thousands of documents Plaintiffs already possess. To the contrary, these productions consist largely of duplicates and substantively comparable materials—precisely because Carvana's prior productions already provided their substance. They are now pursuing Carvana's lawyers' communications about the [redacted] in a motion before Magistrate Judge Boyle—obviously privileged information and another fishing expedition. *See* Dkt. 639. During the meet and confer process on these issues, the Carvana Defendants asked Plaintiffs to identify new non-cumulative information contained in these documents that would justify re-opening depositions. Plaintiffs initially attempted to do so but failed because the documents they identified had either been produced in a non-privileged version or concerned information contained in numerous other documents that Plaintiffs are well

aware of. *See* Dkt. 680-3 at 3–4. The Carvana Defendants invited Plaintiffs to try again, but they did not respond, instead opting to file this Motion.

Plaintiffs' Motion seeks endless discovery and a series of increasingly absurd "sanctions," including re-opening every deposition they have taken, continuing for multiple days depositions they have not yet started, and requiring Carvana to pay for it all—plus a complete waiver of Carvana's attorney-client privilege. None of this is supported by any case law. All of it should be rejected. It is time for discovery to end and to move on to litigating the merits of this case.

## II. ARGUMENT

### A. The [redacted] Materials Do Not Support Plaintiffs' Motion

#### 1. The [redacted] Documents Were Not Concealed

The documents concerning the [redacted] inquiry, which arose after this lawsuit was filed and after any challenged statement was made, were not "concealed" from Plaintiffs, are not "central" to this litigation, and were not produced too late.

To be clear, Plaintiffs have every T&R-related document that was produced in the [redacted]. They also have more documents relating to the [redacted] such as a presentation about [redacted]. Ex. 11. Their argument that Carvana "concealed" [redacted] materials when indicating that discovery was substantially complete as of December 2025, Mot. at 1, is wrong. Carvana's representation was accurate: the disputed materials fell outside the agreed search terms, discovery parameters, and Relevant Period. What fell within the agreed discovery parameters was a letter from [redacted] to the [redacted] regarding any complaints from [redacted] Ex. 4 (CVNA_CA_00095649). That letter was produced in November 2025, prior to the December 2025 substantial completion deadline for document production. After that substantial completion deadline, Magistrate Judge Boyle ordered Carvana to collect *from its counsel* the *counsel's communications* with the SEC that occurred *after* the Relevant Period. *See* Dkt. 264. Recognizing that Magistrate Judge Boyle had taken a broader view of discovery relating to such regulatory matters,

Carvana then voluntarily applied that same methodology to material produced to the [redacted] and since at least March 2026, have been producing documents concerning the [redacted] matter—including productions exclusively containing [redacted] documents. *See, e.g.*, Ex. 5 (produced Mar. 1, 2026); Ex. 6 (produced Apr. 7, 2026). And as early as July, Plaintiffs have known that Carvana Defendants produced all materials Carvana had provided to the [redacted] body, including many documents from well outside the Relevant Period, and still more documents responsive to Plaintiffs' other demands. *See* 671-2 at 2, 3.[2]

Depositions and Plaintiffs' Motion further confirm that Plaintiffs have long had the relevant [redacted] materials. Plaintiffs made the [redacted] matter a focus of their July 2026 deposition of Carvana's Deputy General Counsel, *see, e.g.*, Ex. 8 (C. Olson Dep. Tr.) at 288:23–301:11, and have devoted considerable time to the [redacted] in at least ten other depositions. That Plaintiffs have had these documents for months is underscored by the fact that all but two of the [redacted] documents attached to their Motion was produced on June 11, 2026.

Plaintiffs cannot credibly feign surprise that they now have these documents or that they need more time to prepare to question witnesses about them.

**2. The [redacted] Documents Are Largely Irrelevant**

Tellingly, Plaintiffs' Motion ignores the [redacted] documents are not central to this securities case. The [redacted] is a [redacted]—only the last of which has any arguable connection to the claims here. Indeed, approximately 39,000 of the 49,000 pages Carvana provided to the [redacted] (and provided to Plaintiffs) consist of [redacted]

[2] Having received all materials Carvana provided to the [redacted] body, Plaintiffs have pivoted to target Carvana's internal, privileged materials. Specifically, in parallel with this Motion, Plaintiffs are seeking to compel Carvana Defendants to collect, search, review, and produce [redacted] documents from March 1, 2023 through the present—i.e., after the Relevant Period—from Carvana's General Counsel, two Carvana in-house attorneys, and a Carvana employee who works at the direction of counsel. Dkt. 639 at 1.

[redacted] Mot. at 3. That Plaintiffs now characterize these documents as "central" to their case only underscores how weak it is.

To the extent Plaintiffs do cite documents in their Motion, they do so selectively and misleadingly. For example, Plaintiffs cite the [redacted] erroneous allegation that [redacted] Mot. at 12, but omit [redacted]. *E.g.*, Ex. 7 at Section II. They also emphasize the [redacted], Dkt. 687 at 3, but omit that [redacted]. Dkt. 640-13. In short, Plaintiffs have not identified a single [redacted] document that materially impacts this case—much less one produced so recently that it impacts their ability to take depositions.

**B. Carvana Defendants Did Not Over-Designate Privileged Materials**

**1. Carvana Defendants Made Privilege Designations In Good Faith In The Context Of A Highly Complex Regulatory Landscape**

Carvana Defendants' privilege designations—and the voluntary supplemental review that followed—are eminently reasonable within the context of complex litigation involving a heavily regulated business entity with scores of internal and outside legal counsel. Carvana's lawyers were deeply embedded in the Company's operations throughout the Relevant Period, particularly with respect to title and registration processing and regulatory compliance, SEC filings and other matters, and investor communications—the very areas at issue in this case. *See, e.g.*, Dkt. 562 at 3–4. Where, as here, the application of privilege is complex and involves large volumes of documents "it is not usual for the privilege proponent to revise the details of its privilege log." *S.G.D. Eng'g Ltd. v. Lockheed Martin Corp., Inc.*, 2013 WL 2297175, at *8–9 (D. Ariz. May 24, 2013).

Carvana Defendants' privilege log reflects this reality. Logged communications involving in-house and outside counsel, plus related support teams operating at their direction, show that Carvana's operations during the Relevant Period demanded near-constant input from legal counsel. *See, e.g.*, Dkt. 562 at 3 ("Layering COVID-19 on top

of an already uncertain legal landscape, Carvana's lawyers navigated a patchwork of state laws governing Carvana to answer a simple question: How could Carvana provide the best possible car buying experience, and comply with the law, given these unprecedented circumstances?"). Often, these same communications overlapped with commercial discussions—thus amounting to "dual-purpose" communications. *See, e.g.*, Dkt. 587-1 (sustaining Carvana Defendants' privilege assertions over dual-purpose communications because the communications showed "advice that is predominantly legal"). Answering the question whether a communication primarily relates to legal advice or commercial discussions is neither an easy nor quick undertaking in the context of this case. Doing so requires, as Plaintiffs know, a document-by-document assessment. The Special Master has acknowledged as much too: "'Even though it theoretically sounds easy to isolate 'the primary or predominant' purpose of a communication, the exercise can quickly become messy in practice.'" Dkt. 552 at 3 (quoting *In re Grand Jury*, 23 F.4th 1088, 1094 (9th Cir. 2021)); *see also* Dkt. 477 at 21:19–24 (showing the Court's acknowledgment that this Action is a "complicated case").

Given these considerations, Magistrate Judge Boyle has already refuted Plaintiffs' fundamental premise on this Motion that the size of Carvana Defendants' initial log, by itself, somehow evidences a systematic and sanctionable abuse of privilege, *see* Mot. at 5-7. *See* Dkt. 477 at 13:1–12 ("I don't think this is done in bad faith by the defense. I think they've been trying to comply."). Indeed, the Court expressly rejected Plaintiffs' current assertion that "the revisions" to Carvana Defendants' privilege log "or removal of documents from the Privilege Log suggest 'any bad faith' by Carvana Defendants." *Id.* at 21:19–24; *see also id.* (explaining such amendments are "expected" and "[n]ormal for a case of this size"). Similarly, although Special Master Cohen initially disagreed with certain privilege claims, he has never once suggested those privilege claims represented bad faith.

**2. Carvana Defendants Voluntarily Applied The Special Master's Rulings Across Their Entire Privilege Log**

The Special Master's first assessment of the privilege log involved the review of a sample of approximately 80 documents selected by Plaintiffs from the log (referred to as "Tranche One"). His Tranche One ruling on June 26, 2026, found that nearly half of the 100 documents were not privileged. Dkt. 552 at 9. The Special Master suggested "Carvana [should] carefully review [logged] documents where the privilege claim is overruled and apply the Special Master's reasoning to all other documents listed," explaining that such an approach "should lead to the removal of documents from the privilege log." *Id.* at 11. The Special Master also observed that he does not have the authority to require Carvana to do so. *See* Dkt. 562 at 6. Although Carvana disagreed (and would appeal) portions of the Special Master's ruling, by July 1, 2026, Defendants had voluntarily commenced a comprehensive re-review of their log to conform Carvana's privilege application to the Special Master's ruling. *See* Dkt. 552 at 9. Plaintiffs of course were well aware of this. *See* Dkt. 672-9 at 2 ("On July 1, 2026, [counsel] advised me that Defendants would re-review the log."). This re-review resulted in fewer documents designated as privileged, reducing the size and scope of the privilege log and the production of documents no longer deemed privileged. By the time the Special Master ruled on the "Tranche Two" documents from the privilege log, Carvana Defendants' proactive efforts resulted in the Special Master sustaining privilege designations, either fully or in part, on more than 90% of all challenged documents. *See* Dkt. 587-1. This trend has only continued. *See* Dkt. 650-1 (showing the Special Master's August 25, 2026, Tranche Three ruling wherein the Special Master fully sustained over 90% of Carvana Defendants' privilege designations).

Yet, Plaintiffs effectively ask the Court to sanction Carvana Defendants for complying with, voluntarily and proactively facilitating, and effectively paying for what Plaintiffs demanded. Doing so would flip this entire process on its head. Far from "show[ing] a pattern of obstruction," Mot. at 9, Carvana Defendants' supplemental productions resulted from a review process that *Plaintiffs demanded* and Carvana

Defendants voluntarily and timely completed. And, of course, since Plaintiffs have known of the voluntary re-review process since early July they cannot pretend to be surprised that documents were produced as the result of that process.

**3. Carvana Defendants Devoted Extraordinary Resources To Timely Complete Their Comprehensive Privilege Log Re-Review**

The privilege log review was no small undertaking. Carvana Defendants warned that a manual re-review of approximately 50,000 documents "would be expensive, time-consuming, and burdensome" and "would flip the costs of this exercise back onto the Defendants, contrary to this Court's order that 'Plaintiffs bear the costs' and 'focus only upon those documents that appear particularly relevant and proportional.'" Dkt. 562 at 6 (quoting Dkt. 513 at 4–5). Both the Court and the Special Master recognized this would be a "technologically difficult," "costly and time-consuming effort." Dkt. 513 at 4; Dkt. 562 at 4; Dkt. 667-1 at 8:4–9. Yet Carvana Defendants voluntarily undertook the re-review regardless. *See* Dkt. 680 at 3. Across multiple law firms, a dozen or more experienced attorneys personally reviewed all approximately 50,000 documents, logging over 960 hours at a substantial cost.

Plaintiffs, of course, paid nothing for it. But they would have the Court believe that this voluntary expenditure is sanctionable. Clearly, when it comes to trying to appease these Plaintiffs, "no good deed goes unpunished." They have certainly cited no court that has imposed sanctions in a comparable situation.

**4. Formerly Logged Documents are Immaterial and Cumulative**

Plaintiffs' Motion also fails because the documents produced following the privilege log re-review are largely immaterial and cumulative of earlier discovery—further undermining any claim of prejudice.

The documents de-designated from Carvana Defendants' privilege log consist largely of duplicates and substantively comparable materials to what was produced previously. This is no surprise: when a communication was logged because it contained privileged legal advice intertwined with business information, the non-privileged substance

had often already been produced in other forms. Defendants had already provided large volumes of substantively identical information, and Plaintiffs conducted extensive deposition examination on the same topics. Take [redacted] when Plaintiffs demanded to re-open the deposition of Carvana's Associate Director of Strategy following the production of additional discovery concerning [redacted] Carvana Defendants demonstrated—weeks prior to this Motion—that Carvana had already produced more than 300 documents specifically involving this deponent and topic, all prior to his deposition. Dkt. 680-1 at 8.[3] Plaintiffs *did* examine this topic extensively throughout the deposition. *See, e.g.*, Ex. 9 (S. Keim Dep. Tr.) at 182:10–187:7; 218:4–220:11.

By the same token, in August Carvana Defendants provided Plaintiffs a detailed side-by-side accounting of documents Plaintiffs claimed supplied new information necessitating further discovery. Each was a carbon copy of information available months earlier. The very email Plaintiffs cited in correspondence to Defendants as grounds to reopen depositions had been produced in a non-privileged version in November 2025. Dkt. 680-3 at 3–4 (comparing CVNA_CA_01737273 to CVNA_CA_00081319 (produced Nov. 7, 2025))). The same was true for documents produced in March and April 2026. *See id.* at 4–5 (first discussing CVNA_CA_01738418 and CVNA_CA_00653166 (produced Mar. 13, 2026); then discussing CVNA_CA_01740453 and CVNA_CA_00728138 (produced Apr. 7, 2026)).

Plaintiffs simply have not identified information in the de-designated materials that would justify reopening depositions.

### C. Plaintiffs' Demanded Sanctions Lack Any Factual Or Legal Basis

#### 1. Plaintiffs' Motion Reveals A Problem of Their Own Making

Plaintiffs have a large team of lawyers staffed on this case, yet claim they are incapable of reviewing Carvana Defendants' documents while preparing to "tak[e] or

---

[3] Carvana Defendants likewise had already produced scores of documents pursuant to sweeping search terms overlapping with the substantive details of these materials, including—for example—any responsive, non-privileged materials involving the word "title" within 30 words of "registr*" and any such materials containing the word "unregistered" within three words of "car" or "vehicle*."

defend[] 16 depositions in the remaining weeks" of fact discovery. Mot. at 16. But, as discussed above, these documents were produced and, to the extent there is now a rush to complete depositions it was caused by Plaintiffs' waiting until the last minute to even schedule many depositions.

Plaintiffs waited until the final month of fact discovery to depose even ***one*** Defendant.[4] As a result of that choice, Carvana's most senior executives and many directors[5]—have not had their depositions taken as the discovery deadline approaches—yet Plaintiffs pretend this is Carvana's fault. Making matters worse, they claim they need to "continue" those depositions (*i.e.*, begin them one day and then require the witness to return again on a later day) so that they can ask them about the [redacted] and privilege log documents. This is nonsense. Plaintiffs knew about and have had these documents plenty long enough to ask questions about them on one deposition day.

Plaintiffs' delays and postponements of depositions is part of a pattern. For instance, despite first serving deposition notices in early May 2026 on Carvana's former Vice President of Investor Relations and General Counsel, Plaintiffs stalled those depositions for months. Each has or will now take place within the last few weeks of fact discovery. *See* Dkt. 598 at 1 (rescheduling Levin's deposition to September 9, 2026, and rescheduling Breaux's deposition to September 17, 2026).

That Plaintiffs chose to wait to take these depositions is no reason to now let them take the depositions over two days. Plaintiffs here again cite no case allowing such relief in this circumstance.

### 2. Plaintiffs Do Not Need To Reopen Depositions

If there was any doubt that Plaintiffs are seeking through this Motion to prolong discovery so they can endlessly search for evidence that might support a claim, it is put to rest by their remarkable request that ***every one of the 10 depositions they have already***

---

[4] Plaintiffs compounded these delays by postponing depositions, including many noticed months ago. *See, e.g.*, Dkt. 659 at 1 (rescheduling Defendant Garcia Jr.'s deposition, first noticed May 12, 2026, for late-September 2026).

[5] Mark Jenkins (Chief Financial Officer), Ben Huston (Chief Operating Officer), Earnest Garcia III (Chief Executive Officer), Michael Maroone (Director), and Ira Platt (Director).

***taken be re-opened***. The scale of this request is enormous, as would be the waste of time and resources involved. It is utterly without merit.

And Plaintiffs make no serious effort to justify it. They fail to identify any particular witness who they need to ask about any recently produced document that is new, non-cumulative or prior testimony, or even relevant to this case.

As Plaintiffs' own cases confirm, "[t]he mere fact that documents are produced after a deposition is by no means automatic grounds for a second deposition." *PlayUp, Inc. v. Mintas*, 344 F.R.D. 429, 436–37 (D. Nev. 2023) (collecting cases). Rather, "[t]he discovery materials must reveal 'new' information that was previously unknown and could not have been addressed at the prior deposition." *Id.* And "[a]ssertions that newly produced documents contradict earlier testimony are generally insufficient, standing alone, to justify a second deposition." *Id.* Moreover, as the Motion acknowledges, Plaintiffs have not yet deposed any named Defendant, nor conducted Carvana's Rule 30(b)(6) deposition. Plaintiffs will have the opportunity at these future depositions to leverage the entirety of the enormous discovery record in this Action. There is no need to re-open 10 depositions for Plaintiffs.

**3. Plaintiffs' Request for Fee and Cost Shifting Is Equally Baseless**

Plaintiffs not only seek endless discovery—they want Defendants and/or their counsel to pay for it. Mot. at 16–17. This is ridiculous.

As this Court has explained, "the threshold for sanctions pursuant to the Court's inherent authority is high," that such authority "must be exercised with restraint," and will not be ordered unless "the court specifically finds bad faith or conduct tantamount to bad faith." *Tajikkhaveh v. Genuine Parts Co.*, 2026 WL 2474498, at *3 (D. Ariz. Aug. 4, 2026) (Liburdi, J.) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)). Fee shifting is an extraordinary remedy, *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991), and Rules 26(g)(3) and 37(c)(1) require evidence that challenged conduct lacked substantial justification. Plaintiffs cannot come close to meeting this standard.

Plaintiffs cannot point to any Court Order that Carvana has violated (and there is none). On the contrary, both of the basis for Plaintiffs' Motion—the production of the [redacted] and privilege log documents—were done by Carvana voluntarily. Moreover, Magistrate Judge Boyle has recognized that Carvana's privilege applications were made in good faith. Dkt. 477 at 21:19–24. And, as discussed above, there is no prejudice to Plaintiffs because they were aware of these document productions and created this timing crunch themselves. There is no basis whatsoever for cost-shifting here. *See Zaccardo v. Horne Motors of Gilbert LLC*, 2026 WL 1392238, at *2 (D. Ariz. May 19, 2026) (explaining that sanctions under Fed. R. Civ. P. 26(g) are inappropriate where, as here, the "investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances") (citation omitted); *Wheatcroft v. City of Glendale*, 2021 WL 1056398, at *2 (D. Ariz. Mar. 19, 2021) (Liburdi, J.) (holding that Rule 37 sanctions are inappropriate where, as here, there is no "prejudice or surprise to the party against whom the evidence is offered" and no evidence of "bad faith or willfulness involved in not timely disclosing the evidence"); *Tajikkhaveh*, 2026 WL 2474498, at *3 (rejecting fee-shifting). Plaintiffs once again cite zero law supporting this extraordinary relief here.[6]

**4. Additional Written Discovery Is Unwarranted**

Plaintiffs' demand for more written discovery is similarly baseless (and needless). The Motion fails to identify even one document warranting follow-up through written discovery. Plaintiffs have already served scores of written discovery requests and received many thousands of documents from Carvana Defendants. Their desire to further extend the case schedule is not a basis for sanctions. Courts routinely reject such demands for

[6] Plaintiffs also wrongly assert that the "Court should [] shift the full cost of the Special Master's ongoing review, which Plaintiffs have borne, to Defendants." Mot. at 17. Noted already, Carvana Defendants have expended nearly [redacted] in legal resources to the Special Master process. As early as January of this year, Carvana Defendants had already expended approximately [redacted] in legal resources to facilitate document review and productions in this case. *See* Dkt. 261 at 4. Even setting aside the Special Master process, that figure has ballooned by way of Plaintiffs' continual discovery demands.

"'rolling discovery,'" particularly where, as here, those demands are sweeping. *See, e.g.*, *Rouse v. H.B. Fuller Co.*, 2024 WL 4973028, at *3 (D. Minn. Dec. 4, 2024).

**5. Plaintiffs' Demand for Log-Wide Privilege Waiver is Absurd**

Plaintiffs' assertion that Defendants have waived the attorney-client privilege and work product protections for all entries on their privilege log is frivolous. *See, e.g.*, Mot. at 17. Plaintiffs falsely state that Carvana Defendants' log is "grossly deficient," Mot. at 1, and fails to "provid[e] information sufficient to assess each claim under Rule 26(b)(5)(A)(ii)," supplying instead just "nine conclusory categories." Mot. at 5–6. In reality, this privilege log contains a document-by-document accounting of standard metadata fields supplied in any privilege log, including a unique Privilege Log ID for each document, document date, document custodian, document author, email sender, all email recipients, email subject line, file name, file extension, privilege designation, privilege type, and a designation specifying whether each document is a parent, attachment, or standalone item. These are precisely the "particulars typically contained in a privilege log" that Plaintiffs' own case holds to constitute a "presumptively sufficient" log, thus precluding the very relief they demand. *Burlington N. & Santa Fe Ry. Co. v. United States Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005). These critical details likely explain Plaintiffs' complete failure to even engage the *Burlington* factors when arguing this absurd and facially untrue assertion. *See* Mot. at 17.[7]

Magistrate Judge Boyle has already rejected this demand. Applying the *Burlington* factors to Carvana Defendants' privilege log, and using the holistic reasonableness analysis required by the Ninth Circuit, that ruling "neither f[ound] that Defendants' privilege log is wholly devoid of detail on Defendants' assertions of privilege nor that the alleged defects in Defendants' privilege log warrants the disclosure of nearly 50,000 documents," Dkt.

---

[7] Carvana Defendants went further than Ninth Circuit precedent requires, by supplying additional identifiers throughout the log specifically denoting attorneys associated with in-house counsel, outside law firms, and Carvana personnel operating at the direction of counsel. Carvana Defendants did so to enable Plaintiffs to more easily discern whether a listed individual is an attorney or operating at an attorney's direction, including whether that individual is affiliated with a specific outside law firm. Plaintiffs' inaccurate characterization of Carvana Defendants' privilege log obviously seeks to hide these details and mislead the Court. Mot. at 5–6.

467; *see also id.* at 5 ("[T]he Court does not find that the flaws in Defendants' privilege log were intended to needlessly waste the parties' time nor were a tactical manipulation of the rules and the discovery process." (internal quotation marks, brackets, and citation omitted)). Plaintiffs have offered no basis to change these findings now. They have certainly offered no case law support for doing so.

## III. CONCLUSION

Plaintiffs' Motion for sanctions lacks any factual or legal basis. It should be denied.

Dated: September 16, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

*/s/ Jeff G. Hammel*
Andrew B. Clubok (*pro hac vice*)
J. Christian Word (*pro hac vice*)
Susan E. Engel (*pro hac vice*)
Matthew J. Peters (*pro hac vice*)
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Email: andrew.clubok@lw.com
Email: christian.word@lw.com
Email: susan.engel@lw.com
Email: matthew.peters@lw.com

LATHAM & WATKINS LLP

Jeff G. Hammel (*pro hac vice*)
Kalana Kariyawasam (*pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: jeff.hammel@lw.com
Email: kalana.kariyawasam@lw.com

Meryn C. Grant (*pro hac vice*)
10250 Constellation Blvd., Suite 1100

Los Angeles, CA 90067
Telephone: (424) 653-5500
Email: meryn.grant@lw.com

FENNEMORE CRAIG, P.C.
Douglas C. Northup (No. 013987)
Andrea L. Marconi (No. 022577)
2394 E. Camelback Road, Suite 600,
Phoenix, AZ 85016
Telephone: (602) 916-5000
Email: dnorthup@fennemorelaw.com
Email: amarconi@fennemorelaw.com

*Counsel for Defendants Carvana Co., Ernest Garcia III, Mark Jenkins, Stephen Palmer, Michael Maroone, Neha Parikh, Ira Platt, and Greg Sullivan*