**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

United Association National Pension Fund, et al.,

Plaintiffs,

v.

Carvana Company, et al.,

Respondents.

No. CV-22-02126-PHX-MTL

**ORDER**

Pending before the Court is the parties' "Joint Motion for Discovery." (Doc. 639.)

**I. SUMMARY OF CONCLUSIONS.**

The instant discovery dispute involves a non-public State Investigative Matter (the "Investigation"). The Investigation, which began in October of 2022, involves alleged Title and Registration ("T&R") violations committed by Defendant Carvana—in and amongst other alleged violations. Although this Investigation began only two months after the instant action arose, its existence was not disclosed to Plaintiffs until, in Defendants' view, November of 2025, and in Plaintiffs' view, June of 2026. Although the date Plaintiffs were made aware of the Investigation remains contested, what is clear is that Investigation materials were incrementally produced by Defendants between January 2026 to June 2026, followed up by a large-scale disclosure in July of 2026. A majority of these documents were not produced until after Plaintiffs conducted depositions of several deponents.

What is presently before the Court is a Joint Discovery Motion filed by the parties. In the Motion, Plaintiffs seek to compel the production of materials related to the

Investigation that are in the custody of Defendants' in-house counsel and non-attorneys working at their direction. Defendants oppose the instant request, mainly arguing that these matters are protected by the attorney work-product doctrine. The Court finds that materials containing attorney impressions and opinions, as well as those materials of non-attorneys created at the direction of attorneys, fall under the ambit of the attorney work-product doctrine and are not discoverable. But, any materials already provided to the Investigation, as well as the underlying facts relied upon in disclosed and undisclosed materials, are not work-product protected, and are consequently discoverable. Thus, the Court shall grant the Joint Discovery Motion in part as to Plaintiffs and in part as to Defendants.

The effect of this ruling, the schedule of the case, and the Motion for Sanctions will be addressed by the District Court.

## II. BACKGROUND.

As the Court previously noted:

> This action, in which Plaintiffs aver that Defendants violated the Securities Exchange Act of 1934, is based on an alleged "pumping" and "dumping" of stock. (Doc. 105 at 2–3.) Part of Defendants' alleged misdeeds was the sale of vehicles before Defendants possessed the titles to such vehicles. (*Id.* at 2–3, 45.) Such acts, Plaintiffs have alleged, relates to Defendants' scienter—an element of a security fraud claim. (*Id.* at 41–42, 45–48.)
>
> * * *
>
> While the Presiding Judge dismissed portions of Plaintiffs' Amended Complaint [("AC")], the T&R allegations that Defendants sold cars before they possessed those cars' titles remained. (*Id.* at 69–73.)

(Doc. 394 at 2.)

At issue today is the non-public State Investigative Matter. (Doc. 639 at 2.) This Investigation began in October of 2022—two months after the instant action commenced. (Doc. 668 at 7)[1]; (doc. 640-1.) While the investigation touched upon several different matters irrelevant to the instant action, it also addressed T&R violations similar to those at issue in the instant action. (*Id.* at 6.) While the Investigation remains ongoing, it appears—

[1] Given that the circumstances underlying the instant discovery dispute are the same as those involved in Plaintiffs' Motion for Sanctions (doc. 661), the Court shall rely upon the exhibits and briefings contained in both disputes to address the instant dispute.

based on the parties' pleadings and exhibits—that its focus on T&R violations is substantially limited to those occurring from 2019 to 2024. *See* (doc. 668 at 7); *see also* (doc. 712 at 5–6); (doc. 669-3 at 2); (doc. 669-8); (doc. 669-10 at 7.) During this timeframe, the Investigation asserted that Defendants failed to provide timely T&R in thousands of transactions each year. *See* (doc. 640 at 2); *see also* (doc. 669-10 at 7); (doc. 669-8 at 13.) Defendants have disputed those statistics in communications with the Investigation. (Doc. 712-6 at 3–5.)

Particularly at issue today are materials in the custody of Christoper Olson, Wilson Munsil, Paul Breaux, Mark Murphy, and Maggie Hawn—all of whom are employed by Defendants. (Doc. 701.) Of the five, Olson, Munsil, and Breaux are in-house counsel for Defendants. *See* (*id.*) The remaining two are non-attorneys who worked at the direction of Defendants' in-house counsel. *See* (*id.*); *see also Carvana Defendants' Position on Responses and Objections to Lead Plaintiffs Second Set of Requests for Production to the Carvana Defendants* ("*Defendants' Objections to Plaintiffs' Second Set of RFPs*"). The materials in question were created or provided to the aforementioned individuals, and include materials such as presentations provided to the Investigation, response to Investigation correspondences, statistics and data used to create those presentations and correspondences, attorney scripts, notes, internal communications, previous drafts of presentations and correspondences provided to the Investigation, *etc*. *See* (doc. 701); *see also Defendants' Objections to Plaintiffs' Second Set of RFP*.

## III. THE PARTIES' ARGUMENTS.

The heart of the instant dispute is whether the Court should compel the production of documents, materials, and presentations, alongside the underlying facts used to create those materials, created on or after March 1, 2023. (Doc. 639 at 2.) Particularly, Plaintiffs request Defendants produce documents that are currently in the custody of Olson, Munsil, Breaux, Murphy, and Hawn.[2] (*Id.*)

---

[2] Although Plaintiffs did not request Hawn's custodial files in the Joint Discovery Motion, *see generally* (doc. 639), Plaintiffs added her to their request following the parties' telephonic oral argument.

To understand the parties' arguments, the Court must first detail each side's recitation of events. Thereafter, the Court shall address the parties' legal arguments.

**A. Procedural Background of Instant Dispute**.

Although the Investigations has remained ongoing since October of 2022, the parties disagree on the exact date in which Plaintiffs were made aware of its existence. *See* (*id.*) Consequently, the Court shall summarize both parties' interpretations of the procedural timelines.

***1. Plaintiffs***.

Starting with Plaintiffs, they assert that the course of events began as follows. First, Plaintiffs assert that the triggering event of the instant dispute was its propounding of its First Set of Requests for Production ("RFP") on March 11, 2025. (Doc. 701.) Particularly, the Plaintiffs point to RFP No. 2 as the catalyst of this dispute. *See* (*id.*); *see also* (doc. 668 at 8.) Particularly, RFP No. 2 requested:

> [a]ll documents and testimony that any of the Carvana Defendants have produced or provided to, or received from, any regulatory or government agency, federal or state law enforcement agency or representative, or state or local official concerning the allegations in the Complaint. This Request extends through the present.

(Doc. 245-1 at 13.)

Between propounding RFP No. 2 upon Defendants to June 11, 2026, Plaintiffs state that "there was [only] one [Investigation] document we saw before [Plaintiffs] took at least one of those deponents, the [T&R] deponents." (Doc. 701.) It appears that, based on Plaintiffs' other filings, the T&R deponents were Defendants' Head of Public Policy and Government Affairs Wilson Munsil ("Munsil"), Regulatory Operations Director Jonathan Greer, Regulatory Operations Support Associate Director Mark Murphy ("Murphy"), and Engineering Director Josh Johnson. (Doc. 668 at 9.) These depositions occurred between May 21 to June 11, 2026. (*Id.*)

The second event in Plaintiffs' prospective is a partial production of Investigation materials on June 11, 2026—15 months after discovery began. (Doc. 639 at 3); (doc. 661

at 9.) Third, Plaintiffs note that a presentation pertaining to the Investigation's findings was produced on June 29, 2026. (Doc. 639 at 3); (doc. 668 at 9.) Fourth, Plaintiffs assert that Defendants slowly produced more Investigation documents and materials over the course of the month of July 2026. (Doc. 639 at 3); (doc. 661 at 10.)

***2. Defendants.***

Defendants disagree with Plaintiffs' recital of events triggering the instant dispute. Defendants assert that the procedural history began with their production of several documents that "referred" to the Investigation in November of 2025. (Doc. 701.) In fact, Defendants assert that, given the applicable relevant period ran from January 1, 2020, to February 28, 2023, *see* (doc. 196 at 5–6), that the Investigation materials—except for one document—fell outside of Plaintiffs' RFPs, including RFP no. 2. *See* (doc. 640 at 3–4); *see also* (doc. 712 at 5); (doc. 671-6 at 3.)

While Defendants assert that Plaintiffs were made aware of the Investigation through these 2025 productions, *see* (doc. 701), the catalyst to the large-scale production of Investigative materials was this Court's January 14, 2026, Order requiring the production of Securities and Exchange Commission materials post-dating the relevant time period. (Doc. 264.)[3] Based upon this Order, Defendants began to "voluntarily . . . produce documents it had turned over to the [Investigation] after the [r]elevant [p]eriod." (Doc. 711 at 5); (doc. 640 at 4); (doc. 701); (doc. 671-9 at 3.) This included the production of a document "commencing the [I]nvestigation" in February of 2026, *see* (doc. 701), a further production of 1,500 pages of materials on June 11, 2026, *see* (doc. 711 at 5), and a 'complete'[4] production of all "responsive documents" in July of 2026. (Doc. 639 at 4.)

***3. Party Agreement.***

In sum, the parties disagree about what event triggered Defendants' production of Investigation documents and when those documents were provided to Plaintiffs. But, the parties do agree that the vast majority of Investigation documents were produced in July of

---

[3] The Court ordered the production of these materials because they directly related to conduct occurring during the relevant period. *See* (doc. 264 at 8–9.)

[4] The parties disagree on whether Defendants have in fact provided a complete production of all relevant and non-privileged Investigation documents.

2026—months after this Court's January 14, 2026, Order, and over a year after Plaintiffs propounded their First Set of RFPs propounded on March 11, 2025.

**B. Arguments.**

Although the parties' dispute as to the timeline remain contentious, their legal arguments are rather straightforward.

***1. Plaintiffs.***

Turning first to Plaintiffs, they argue that Investigation materials, though they may be produced after the relevant period, "concern [c]lass [p]eriod transactions, data, and T&R practices," rendering them relevant to the instant action. (Doc. 639 at 2–3.) Specifically, Plaintiffs request the Court compel Defendants to produce documents that are responsive to the following RFPs:

> **REQUEST FOR PRODUCTION NO. 43:**
> All presentations to the [Investigation] on any date, including the May 13, 2024 and June 6, 2024 presentations, along with all drafts, redlines, comments, and notes used to prepare or revise those presentations, and internal communications concerning what Carvana presented to regulators.
>
> **REQUEST FOR PRODUCTION NO. 44:**
> All documents used or relied on in any presentation to the [Investigation] during Zooms or phone calls, on any date, including agendas, talking points, notes, data summaries, follow-up correspondence, and materials transmitted before or after those calls.
>
> **REQUEST FOR PRODUCTION NO. 45:**
> All documents in Mark Murphy's and Maggie Hawn's custodial files from January 1, 2024 to September 30, 2024 concerning the [Investigation].

*Lead Plaintiffs' Second Set of Requests for Production of Documents to the Carvana Defendants* ("*Plaintiffs' Second Set of RFPs*").

Plaintiffs aver that these materials "bear on whether Defendants' [relevant period T&R] statements were false, the T&R issues were material, and what Defendants knew" during the relevant period. (Doc. 639 at 2.)

***2. Defendants.***

Defendants assert three arguments in opposition to Plaintiffs' discovery request.

First, Defendants aver that all relevant Investigation materials have already been produced to Plaintiffs. (Doc. 639 at 3–4.) Second, Defendants assert that all remaining materials not already produced are protected by the attorney work-product doctrine. *See* (*id.* at 5); *see also* (doc. 701); *Defendants' Objections to Plaintiffs' Second Set of RFPs*. Third, Defendants contend that Plaintiffs' discovery requests are overbroad, would inflict an undue fiscal burden, and are disproportionate to the needs of the case. *See Defendants' Objections to Plaintiffs' Second Set of RFPs*.

## IV. LEGAL STANDARDS.

### A. Motion to Compel.

"The purpose of discovery is to make trial 'less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest extent possible,' . . . and to narrow and clarify the issues in dispute." *U.S. Equal Emp. Opportunity Comm'n v. ABM Indus.*, 261 F.R.D. 503, 506 (E.D. Cal. 2009) (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)). In theory, the discovery process "should be cooperative and largely unsupervised by the district court." *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1219 (9th Cir. 2018). However, where theory does not reflect realty—such as when "disclosures aren't made or cooperation breaks down"—Rule 37 provides the proper mechanism to compel the disclosure of materials from a party involved in the litigation. *See id.*

The court has broad discretion regarding whether to permit or deny discovery via a motion to compel. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). Generally, discoverable evidence is "any nonprivileged matter that is relevant[5] to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).

While a party's right to discovery is broad, that does not mean that it is limitless. *See* Fed. R. Civ. P. 26(b)(2). Courts will limit discovery where:

[5] Evidence is considered relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Further, a court may exclude relevant evidence where its probative value is substantially outweighed by the danger of confusing the issue in the present case. Fed. R. Evid. 403.

> (a) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (b) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii).

Generally, the party seeking to compel additional discovery bears the burden of showing that the additional discovery is relevant under Rule 26(b)(1). *See Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). Thereafter, the opposing party carries "a heavy burden" in showing why such discovery request should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

**B. Work Product Doctrine**.

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). While the Federal Rules of Civil Procedure provide a wide berth for discovery, it does provide certain express limitations on what a party generally cannot discover, including documents covered by the attorney work-product doctrine. *See* Fed. R. Civ. P. 26(b)(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[.]"). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). "The work-product rule is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. United States Dist. Ct. for Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989).

To qualify for work-product protection, a document must "have two characteristics: (1) [it] must be prepared in anticipation of litigation or for trial, and (2) [it] must be prepared by or for another party or by or for that other party's representative." *United States v.*

*Christensen*, 828 F.3d 763, 805 (9th Cir. 2016) (citation omitted). This protection is not solely limited to materials created by an attorney. Rather, the protection necessarily includes materials created by an attorneys' investigators and agents. *See Nobles*, 422 U.S. at 238–39 ("One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself."). This doctrine "shields both opinion and factual work product from discovery." *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008).

Nonetheless, materials necessarily encompassed within the attorney work product ambit may be discoverable by an opposing party if it were "otherwise discoverable under Rule 26(b)(1) . . . [and] the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(i)–(ii). "If the court orders discovery of [attorney work product] materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

"The party asserting immunity from production bears the burden of establishing that the work product doctrine applies and has not been waived." *Hatamian v. Advanced Micro Devices, Inc.*, No. 14-cv-00226-YGR (JSC), 2016 U.S. Dist. LEXIS 60551, at *7 (N.D. Cal. May 6, 2016) (citing *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002)).

## V. DISCUSSION.

Based upon the parties' briefing and discussions at oral argument, the Court's analysis proceeds as follows. First, the Court shall analyze whether the materials requested by Plaintiffs are protected from disclosure by the attorney work-product doctrine.[6] Next,

[6] Defendants do not "dispute[] that the T&R portion [of the Investigation materials] is relevant." (Doc. 701.) Therefore, the relevancy of these materials as they pertain to T&R violations—even though the materials were created after the relevant period—is not in dispute. And, suffice to say, were the relevancy of Investigation materials pertaining to T&R violations in dispute, given that Rule 26 is "to be accorded a broad and liberal treatment," *In re Toyota Motor Corp. Sec. Litig.*, No. CV 10-922 DSF (AJWx), 2012 U.S.

the Court shall address Defendants arguments that the discovery requests are overbroad, are disproportionate to the needs of the case, and would inflict an undue fiscal burden.

**A. Work Product Doctrine**.

The first matter the Court shall address is whether the requested Investigation materials are protected from disclosure by the attorney work-product doctrine.[7] Based upon Plaintiffs' written submissions—including RFPs 43–45 listed above, *see supra* section III.B.1—and statements at oral argument, the Court simplifies Plaintiffs' requests into four categories of materials. Specifically, those categories are: (1) all materials already provided to the Investigation by Defendants; (2) materials used to prepare for Investigation presentations and meetings, including prior drafts of presentations, attorneys' notes, internal communications regarding those presentations, *etc.*; (3) the underlying facts, data, and statistical analysis Defendants relied upon in creating presentations for the Investigation and/or used during meetings before the Investigation; and (4) documents created by or provided to non-attorneys who work at the direction of Defendants in-house counsel. For the following reasons, the second and fourth categories of documents are protected by the attorney-work product doctrine and are not discoverable.

***1. Materials provided to and communications with the Investigation***.

The production of the first category of materials is not substantially in dispute by the parties. Moreover, any argument that materials provided to the Investigation remained attorney work-product protected would be unavailing under Ninth Circuit precedent.

---

Dist. LEXIS 124438, at *19 (C.D. Cal. Mar. 9, 2012) (citations omitted), it is clear that these materials are relevant to Plaintiffs' claims. *See In re Bard IVC Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016) (citing Fed. R. Civ. P. 26(b)(1)). This is true even when considering that some of these materials were created after the relevant period, because: (a) the bounds of the relevant period are not absolutely impermeable; and (b) because these facts may "confirm what a defendant should have known during the class period." *In re Toyota Motor Corp. Sec. Litig.*, 2012 U.S. Dist. LEXIS 124438, at *23.

[7] Although Defendants briefly mentioned the attorney-client privilege in their written submission and at oral argument, the Court shall solely focus upon the attorney work-product doctrine here. This is because the attorney-client privilege "encourages 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *In re Grand Jury*, 23 F.4th 1088, 1093 (9th Cir. 2021) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). Because these matters fall under the ambit of the work-product doctrine, the Court shall not address the attorney-client privilege.

"[T]o qualify for [work-product] protection against discovery[,] documents must have two characteristics: (1) they must be prepared in anticipation of litigation or for trial, and (2) they must be prepared by or for another party or by or for that other party's representative." *In re Cal. Pub. Utils. Com.*, 892 F.2d 778, 780–81 (9th Cir. 1989) (citation omitted). The "[a]ttorney work-product privilege is not absolute and may be waived" by a party. *Erwin v. OBI Seafoods, LLC*, No. 2:22-cv-00893-JHC, 2024 U.S. Dist. LEXIS 2144, at *5 (W.D. Wash. Jan. 4, 2024); *See Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010). For example, attorney work-product protections may be waived "when an attorney attempts to use the work product as testimony or evidence, or reveals it to an adversary to gain an advantage in litigation." *Hatamian*, 2016 U.S. Dist. LEXIS 60551, at *7 (citation omitted). When such a waiver occurs, the work-product protection is waived "only as to that subject." *Hernandez*, 604 F.3d at 1100. Explained differently, "[w]aivers come in various sizes and shapes," *Garcia v. Stemilt AG Servs., LLC*, No. 2:20-cv-00254-SMJ, 2022 U.S. Dist. LEXIS 133093, at *32 (E.D. Wash. Mar. 25, 2022) (citation omitted), so the "court must be careful to impose a waiver no broader than needed to ensure the fairness of the proceedings before it." *United States v. Sanmina Corp. & Subsidiaries*, 968 F.3d 1107, 1122 (9th Cir. 2020).

Here, the documents, presentations, and communications Defendants provided in response to the Investigation—excluding the underlying facts, *see infra* section V.A.3—clearly fall under the attorney work-product doctrine's ambit. First, these materials were clearly created in anticipation of litigation.[8] *See In re Grand Jury Subpoena*, 357 F.3d 900, 904–05 (9th Cir. 2003) (finding that documents created in anticipation of an impending litigation are protected by the attorney work-product doctrine); *see also Owens v. Wesco*

[8] To the extent that Defendants have relied upon *Bickler v. Senior Lifestyle Corp.*, 266 F.R.D. 379 (D. Ariz. 2010) to support their assertion that materials provided to the Investigation remain privileged, the Court is unconvinced. In *Bickler*, the Court found that that the defendants' disclosure of materials to the Arizona Department of Health Services did not "substantially increased the likelihood of their disclosure to [p]laintiffs" due, in part, to the fact that the Department regulated defendants. *Bickler*, 266 F.R.D. at 384. In other words, the Department could discipline the defendants or revoke licensure. This is not the case here. Rather, the Investigation, should settlement negotiations fail, would likely need to raise the matter in a court of law, which would substantially increase the likelihood of disclosure to the Plaintiffs here.

*Aircraft Hardware Corp.*, No. CV 19-06097-GW (AGRx), 2020 U.S. Dist. LEXIS 194852, at *7 (C.D. Cal. Apr. 6, 2020) (citations omitted) ("Courts have found that the attorney work-product privilege extends to documents prepared in anticipation of administrative litigation, partially because administrative litigation certainly can beget court litigation and may in many circumstances be expected to do so."). Second, these materials were clearly prepared by Defendants' representatives to assist in its defense against the Investigation.

Though these materials fall under the attorney work-product doctrine's ambit, Defendants have waived their privilege claims over these materials by disclosing them to the Investigation. *See Hatamian*, 2016 U.S. Dist. LEXIS 60551, at *7 (noting that the work-product protection over a document is waived when the party "reveals it to an adversary to gain an advantage in litigation"). Put differently, because the Investigation was an adversary in an anticipated litigation, any document, communication, or presentation provided to the Investigation is no longer protected by the attorney work-product doctrine.

For the foregoing reasons, to the extent that there are any remaining materials in the identified custodians'[9] possession that were squarely provided to the Investigation, any claims to work-product protections have been waived. Hence, they must be produced should Defendants' remaining objections be overruled.

***2. Attorney Materials Excluding Underlying Facts and Data*.**

The next category of materials Plaintiffs seek are drafts, comments, notes, and internal communications concerning Defendants' presentations and communications with the Investigation. These materials are clearly work-product protected, a protection that has not been waived.

To address this issue, the Court need not reinvent the wheel. Suffice to say, for the same reasons as *supra* section V.A.1, that these materials were created in anticipation of litigation by Defendants' representatives—*i.e.*, in-house counsel and their agents. Not only is this information attorney work product, it is opinion work product. That is, these materials contain Defendants' attorneys' mental impressions and/or legal strategies. *See*

---

9 Those being Olson, Munsil, Breaux, Murphy, and Hawn.

*United States ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 563 (C.D. Cal. 2003) (noting that opinion work product "consists of the mental impressions, conclusions, opinions, or legal theories" of counsel) (citation omitted). Pursuant to precedent, such opinion work product "enjoys nearly absolute immunity and can be discovered only in very rare circumstances." *Merrell v. Tapestry, Inc.*, No. 5:25-cv-02510-RGK-MAR, 2026 U.S. Dist. LEXIS 63286, at *17 (C.D. Cal. Mar. 19, 2026).

The party seeking to discover opinion work product bears a hefty burden in seeking its disclosure. Specifically, opinion work product may be discoverable "'when mental impressions are the pivotal issues in the current litigation and the need for the material is compelling,' which requires a showing from the requesting party 'beyond the substantial need/undue hardship test' otherwise required for disclosure under Rule 26." *Colonies Partners LP v. Cnty. of San Bernardino*, No. 5:18-cv-00420-JGB (SHKx), 2019 U.S. Dist. LEXIS 128874, at *28 (C.D. Cal. May 1, 2019) (quoting *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992)).

Here, Plaintiffs have failed to establish that the mental impressions of Defendants' in-house counsel are at issue in the case. Nor have Plaintiffs established that their need for such materials is compelling. Rather, Plaintiffs' interest in the instant category of documents appears to be in obtaining Defendants' in-house counsels' mental impressions and opinions regarding the Investigation's inquiry into Defendants T&R violations.[10] Although counsels' beliefs on the strengths or weaknesses of their defense, and opinions on the merits or lack thereof of the claims against them, may be useful in Plaintiffs' prosecution of this action, "Not even the most liberal of discovery theories can justify

[10] To the extent that Plaintiffs seeks these materials based upon the belief that there may be facts and data scattered throughout the pages and slides of these materials, the Court nonetheless finds these materials opinion work product protected. This is because such an attempt by Plaintiffs "to ascertain facts[] which inherently reveal the attorney's mental impressions" does not overcome the work product protections which, in such a situation, would "extend to the underlying facts." *Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 644 (E.D. Cal. 2014) (citation omitted). Because such facts are inextricably intertwined with counsels' mental impressions here, they are protected by the attorney work-product doctrine. Put differently, the Court will not compel the production of opinion work product based upon the slight chance one or several facts may be contained within the work product.

unwarranted inquiries into the files and the mental impressions of an attorney." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947).

For the foregoing reasons, Defendants' in-house counsels' materials—excluding the underlying facts and data used to create such materials—is protected by the attorney work-product doctrine. Consequently, these materials are not discoverable.

***3. Underlying Facts and Data.***

The third category of materials Plaintiffs seek are the underlying facts, data, and statistics used by Defendants' in-house counsel and their non-attorney agents in communications with, presentations made for, and meetings with the Investigation. Put differently, Plaintiffs seek materials containing the underlying facts, data, and statistics Defendants' used in their dealings with the Investigation.

"The purpose of the [work-product] doctrine is to prevent one party from exploiting the other party's efforts to prepare for litigation and to give the parties the freedom and incentive to develop their own cases." *ABM Indus.*, 261 F.R.D. at 511. "However, because the work product doctrine is intended only to guard against the divulging of attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within the work product." *Garcia v. City of El Centro*, 214 F.R.D. 587, 591 (S.D. Cal. 2003) (emphasis omitted).

Here, Plaintiffs are not attempting to cast a wide net so as to obtain counsels' mental impressions and opinions. Rather, Plaintiffs are attempting to discover documents containing the facts and data points that counsel used to create presentations and respond to the Investigation communications. These matters are purely factual in nature and are not inextricably intertwined with counsels' mental impressions and opinion work product. For example, in one of the Investigation presentations provided to Plaintiffs, one slide contains year-over-year statistics on T&R matters from 2019 to 2023. *See* (doc. 669-8 at 13.) The documents and materials counsel relied upon to formulate this slide would be discoverable given that the work-product doctrine "does not protect facts concerning the creation of work product." *Garcia*, 214 F.R.D. at 591. Consequently, the underlying facts used by

Defendants' counsel to formulate materials responsive to the Investigation—whether they be disclosed to the Investigation or not—are not attorney work-product protected and must be disclosed should Defendants' remaining objections be overruled.

***4. Documents in the Custody of Laypersons Working at the Direction of Attorneys*.**

The last work-product doctrine issue is whether materials in the custody of Mark Murphy and Maggie Hawn, two employees of Defendants, are protected by the work-product doctrine. Obfuscating the instant matter is the fact that both are non-attorneys who "performed their work on the [Investigation] at the direction of counsel." *Defendants' Objections to Plaintiffs' Second Set of RFPs*. Specifically, these individuals "provid[ed] research and analysis in support of [Defendants'] response to the [Investigation]." *Id.*

In some ways, the moniker 'attorney work-product doctrine' is a misnomer considering that the doctrine does not solely protect materials created by attorneys. Rather, "[t]he work product doctrine affords a qualified protection from discovery for material obtained and prepared by an attorney ***or an attorney's agent*** 'in anticipation of litigation.'" *BofI Fed. Bank v. Erhart*, No. 15cv2353 BAS (NLS), 2016 U.S. Dist. LEXIS 55669, at *9 (S.D. Cal. Apr. 26, 2016) (emphasis added and citation omitted); *Bozzuto v. Cox*, 255 F.R.D. 673, 677 (C.D. Cal. 2009) ("Under the work product doctrine, material obtained and prepared by an attorney ***or the attorney's agent*** in anticipation of litigation or preparation for trial may be immune from discovery.") (emphasis added and citations omitted). The reason the attorney work-product doctrine protects an attorney's agent is that is a realty that "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial." *Nobles*, 422 U.S. at 238. Thus, it is "necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney [themselves]." *Id.* at 238–39.

Here, it appears that both Murphy and Hawn, albeit non-attorneys, are agents of Defendants' in-house counsel. The Court finds as such because these individuals assisted Defendants' in-counsel in preparing and compiling materials for an anticipated litigation

with the Investigation. Given this, materials in their custody relating to the Investigation are protected by the attorney work-product doctrine as they were created in anticipation of litigation on the behalf of Defendants. *See supra* section V.A.2. And, given that Plaintiffs have neither established a substantial need for these materials nor proven that they would incur an undue hardship in seeking substantially equivalent materials, the Court finds the materials in their custody pertaining to the Investigation are undiscoverable pursuant to the attorney work-product doctrine.

**B. Overbreadth and Disproportionality of Requests**.

To the extent that Defendants' instant objections are not already remedied by the Court's findings above, considering that these objections are best classified as boilerplate or generalized objections given the lack of any detailed explanation or analysis, the Court shall overrule them. *See BofI Fed. Bank*, 2016 U.S. Dist. LEXIS 55669, at *13 (overruling a party's objections as to vagueness, ambiguity and breadth due to boilerplate and generalized objections); *see also Makaeff v. Trump Univ., LLC*, No. 10-CV-0940-GPC (WVG), 2013 U.S. Dist. LEXIS 34974, at *18 (S.D. Cal. Mar. 12, 2013) ("Where, as here, the responding party provides a boilerplate or generalized objection, the 'objections are inadequate and tantamount to not making any objection at all.'") (quoting *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999)).

**C. Undue Fiscal Burden**.

The Court is likewise unconvinced with Defendants' undue fiscal burden assertion. "Courts may prevent discovery that exposes a party to an 'undue burden or expense, . . . which requires a specific showing of the nature and extent of the burden, usually by affidavit or other reliable evidence[.]" *Playup, Inc. v. Mintas*, 344 F.R.D. 429, 439 (D. Nev. 2023) (quoting Fed. R. Civ. P. 26(c)(1)). "When considering the burden, 'the touchstone of discovery remains relevance, however broadly that term may be construed.'" *BofI Fed. Bank*, 2016 U.S. Dist. LEXIS 55669, at *14 (quoting *Visto Corp. v. Smartner Info. Sys.*, 2007 U.S. Dist. LEXIS 8481, at *12 (N.D. Cal. Jan. 29, 2007)). "Conclusory or speculative statements of harm, inconvenience, or expense are plainly insufficient" to establish an

undue burden." *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 334 (D. Nev. 2016). "When determining whether the probative value outweighs the burden to produce documents, the court must balance the parties' competing interests." *BofI Fed. Bank*, 2016 U.S. Dist. LEXIS 55669, at *14.

Here, Defendants allege that Plaintiffs' instant discovery request would inflict a $400,000 burden. (Doc. 639 at 5.) Defendants have attached a declaration from their e-discovery vendor substantiating this number. *See* (doc. 640-15.) However, this predicted expense has likely been diminished substantially by the Court's abovementioned findings on the application of the attorney work-product doctrine to the Investigation materials. And, in any event, the relevancy of the Investigation matters to be produced outweighs the fiscal burden placed upon Defendants.[11] Consequently, Defendants' undue burden argument is overruled.

## VI. CONCLUSION.

For the foregoing reasons, the Court finds that materials created by Defendants' in-house counsel and their non-attorney agents are protected from disclosure by the attorney work-product doctrine. However, materials already provided to the Investigation and the underlying facts, data, and statistics used in formulating materials related to the Investigation's inquiry into T&R matters—whether those materials were produced to the Investigation or not—are discoverable and not protected by the attorney work-product doctrine. Thus, the parties' Joint Discovery Motion is granted in part as to Plaintiffs and in part as to Defendants.[12]

---

[11] Furthermore, the Court is not persuaded by an argument where in one breath Defendants assert that $400,000 is a major fiscal burden while in the previous breath assert the fact that they are an $82 billion company. *See* (doc. 639 at 4–5) (stating on the last paragraph on page four that Defendant Carvana is an $82 billion company while stating on the first full paragraph on page five that $400,000 is an undue fiscal burden).

[12] As a final matter, the Court shall grant Defendants' Motion to Seal (doc. 660.) The Court shall do so because the District Court granted a Protective Order which rationally covers these documents. *See* (doc. 136.) Hence, the District Court has, *ipso facto*, determined that good cause exists to protect these documents. *See, e.g.*, *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1214 (9th Cir. 2002) ("When a court grants a protective order for information produced during discovery, it already has determined that "good cause" exists to protect this information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality.").

Accordingly,

**IT IS ORDERED** that the parties' Joint Discovery Motion (doc. 639) is **GRANTED IN PART** as to Plaintiffs and **GRANTED IN PART** as to Defendants for the reasons stated herein.

**IT IS FURTHER ORDERED** that Defendants shall produce any remaining materials not already disclosed to the Investigation relating to T&R, and the underlying facts, data, and statistics relied upon in defending against and responding to the Investigation within **FOURTEEN (14) CALENDAR DAYS**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Seal (doc. 660) is **GRANTED**. The Clerk of Court is kindly directed to file (doc. 640) and the enclosed exhibits **UNDER SEAL**.

Dated this 21st day of September, 2026.

Honorable John Z. Boyle
United States Magistrate Judge